# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

**Madhuri Trivedi**

     **Plaintiff,**

    v.

**General Electric Company, GE Healthcare, Larry Culp in his individual and official capacity, GE board of directors, AND**
Michael Swinford; Carl Conrath; John Dineen; David Mehring; Nicole Boyle; Adam Holton; Michael Truman; Ayesha Khan; Jeffrey Immelt; Timothy Kottak; David Elario; Robert Swieringa; Susan Hockfield;  Diane Smith; Dipti Patel; Nathan Davis; Gregory Stratton; William Barbiaux;  Reema Poddar; Ward Bowman and Michael Harsh (collectively referred to as "GE Defendants" in their individual and official capacity)
**Address: General Electric Company,** Necco Street ,Boston, MA 02210

**Fragomen, Del Rey, Bernsen & Loewy, LLP** & **Jenny Schrager**, Partner at Fragomen, Del Rey, Bernsen & Loewy, LLP in her individual and official capacity (Fragomen defendants)
**Address:** 1400 Broadway, New York, NY 10018,

**Foley & Mansfield law firm** & Seymour Mansfield, Andrew Shedlock in their individual and official capacity
**Address:**
86 Chambers Street Suite 202  New York, NY 10007

**U.S. Department of Labor, and Secretary Martin Walsh and** Daniel Koh**,** in their official & individual capacity
**ADDRESS**:200 Constitution Ave. NW Washington, DC 20210-0001

**Case No.:**

**COMPLAINT AND REQUEST FOR INJUNCTION**

**1)** Securities Exchange Act of 1934,15 U.S.C. 78j(b),Rule 17 C.F.R. 240.10b-5

**2)** Whistleblower Retaliation under Dodd-Frank Act, 15 U.S.C. §78u-6(h); SEC Rule17 CFR § 240.21F-2
**3)** Violations of whistleblower protections under Sarbanes-Oxley Act ,8 U.S.C.   § 1514A, et seq. ,Pub. L. 107-204

**4)** Disparate treatment, intentional discrimination and retaliation in violation of Title VII,

Violations of civil rights act of 1991….( damages in cases of intentional discrimination ),

42 U.S.C. 2000e et seq. ,

Violations of Civil Rights Act of 1866, Section 1981(a),
42 U.S.C. 1981 (Section 1981),
Sexual harassment,
Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 - 9 U.S.C. §§ 401-402
**5)** Wrongful termination in violation of public policy

**6)** Breach of the implied covenant of good faith and fair dealing Breach of contract good faith, Breach of

1

**OSHA, and –** Anthony Rosa, Frederick James, Doug Parker, Tamara Simpson, Robert Kuss, Willaim Donovan, Denise Keller, Nathan Terwilliger, William Trepanier in their official & individual capacity
**Address:** Room N-4618, FPB
200 Constitution Ave., N.W.
Washington, DC 20210

**Office of the Administrative Law Judge, And ALJ Timothy McGrath** in official & individual capacity
**Address:** Office of the Administrative Law Judges, 800 K Street, N.W., Suite 400
Washington, DC 20001-8002

**Administrative Review board, and** TAMMY L. PUST, SUSAN HARTHILL, THOMAS H. BURRELL at DOL in their official & individual capacity
**Address:** 200 Constitution Ave. NW
Washington, DC 20210-0001
**office of the Solicitor -SOL –and FTCA employee  Stefan Babich , Sarah Naji** in their official & individual capacity
**Address:** Office of the Solicitor, Division of Fair Labor Standards
200 Constitution Ave, NW
Room N2474 ,Washington, DC 20210

**US district court of District of Massachusetts,** and judges Patti B Saris, M Page Kelley in their official & individual capacity
**Address:**1 Courthouse Way
Boston, Massachusetts 02210

**First circuit court of appeals, and judges** -David J. Barron, Bruce M. Selya, Norman H. Stahl, Kermit V. Lipez,  Jeffrey R. Howard,  O. Rogeriee Thompson, William J. Kayatta, Jr., Gustavo A. Gelpí, Sandra Lynch  - in their official & individual capacity
**Address:** John Joseph Moakley U.S. Courthouse, 1 Courthouse Way, Suite

fiduciary duty

7) 9 U.S.C. § 12, 9 U.S.C. § 10(a)(3) ,9 U.S.C.§ 10(a)(2) 9 U.S.C.§ 10(a)(1) and challenging arbitration award under common law

8) The Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b) ; 29 CFR Subpart B - Claims Against the Government Under the Federal Tort Claims Act  **29 CFR § 15.100** (a) against DOL
9) Aiding & abetting fraud, Conspiracy
10) Foley & Mansfield, Fragomen related malpractice claims - Breach of fiduciary, duty breach of the implied covenant of good faith and fair dealing ,breach of contract good faith, negligence
11) **5 U.S.C. § 702 under the Administrative Procedures Act ("APA")5 U.S. Code § 706**
12) 31 U.S.C. §3729 et.seq. AND 31 U.S.C. § 3802 AND RELATED WHISTLEBLOWER REPRISAL ; 31 U.S.C. § 3730(h)(3) under ongoing fraud and ongoing violations
13) Claims for violations of constitutional rights pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 396-97 (1971) against DOL individuals named here
14) The Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b) ; 29 CFR Subpart B - Claims Against the Government Under the Federal Tort Claims Act  **29 CFR § 15.100** (a) against USCOURTS
15) Claims for violations of constitutional rights pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of

2

1  2500, Boston, MA 02210

2      **Defendants.**

Narcotics, 403 U.S. 388, 396-97
(1971) against USCOURTS
individuals named here
**AND
CLASS ACTION COMPLAINT
FOR DAMAGES, EQUITABLE,
DECLARATORY AND
INJUNCTIVE RELIEF**

**Jury trial demanded.**
**Date Action filed:**

# Table of Contents

Table of Contents .................................................................................................................... 3

1    After our January 2019 email, GE removed remote connectivity section after ten years, from sec.gov 10-K filing ............................................................................................................................................ 11

2    Trivedi's SEC.gov whistleblower and GE fraud complaint & SEC FOIA acknowledgement that investigation is still ACTIVE and ONGOING ......................................................................................... 11

3    SEC.gov cybersecurity rulemaking & Trivedi's comment EXHIBIT 4 ...................................... 12

4    In securities fraud cases, courts have observed that inadequacy of internal [] controls "are probative of scienter [defendant's intent to deceive, manipulate, or defraud] Basic Inc. v. Levinson, 485 U.S. 224, 231–32 (1988) ........................................................................................................................................................ 12

5    After my fight, GE started putting word "cybersecurity" in its SEC filings. .............................. 12

6    GE public alert in 2018 Cybersecurity vulnerability ................................................................. 12

7    GE fraud related ........................................................................................................................ 16

7.1    "InsiteEXC" "Insite2" ......................................................................................................... 17

7.2    These INSITE EXC service contracts play a significant role in GE healthcare annual revenue ........ 20

7.3    As Trivedi got such a PANIC call where customer mentioned to TRIVEDI that MRI COIL temperature that medical device sends back to GE server–it was corrupted, inaccurate, faulty( this problem was consistent for more than six months to year) ........................................................................... 20

7.4    Insite Exc application in production was vulnerable for online attacks and there were security issues. 21

7.5    Once Madhuri realized amount of defects and performance/maintenance issues .............................. 21

8    Litany of GE's cybersecurity vulnerabilities;NIST.gov and CISA.gov cybersecurity vulnerabilities public disclosure occurred on June 2022 related to INSITE EXC ............................................................... 22

9    GE abandoned Stack ranking after Trivedi arbitration ............................................................. 24

9.1    Sjunde AP-Fonden, et al., v. General Electric Company, et al. -  1:17-cv-08457-JMF  --Hon. Jesse M. Furman denied GE's MTD; holding GE CFO's culpable participant in the alleged fraud by GE ............ 24

1

2

9.2    In re GE/CBPS DATA BREACH LITIGATION (1:20-cv-02903-KPF) District Court, S.D. New York  25

9.3    In my Trivedi v. GE lawsuit - I have mentioned about above SEC settlement in ECF 150 and ECF 150-1 ..and GE healthcare also has service contract...................................................................... 25

9.4    Trivedi -I READ =James Grant's book chapter – "hotlight on GE"..way back in 90s he saw things -- for 58 years GE's credit rating was not changed....that's the point................................................ 27

10    Background & highlights at GE ............................................................................ 28

10.1    GE Intelligent Platforms/GE Transportation LCA in 2010 and Full time job –HR manager, H1 B visa at Boston in 2010 ......................................................................................................................... 29

10.2    History, relationship between GEIP, Boston and GEHC, Waukesha, WI .......................................... 30

10.3    INSTEAD GE under new initiative by Jeff Immelt was working on developing JUST.................... 35

10.4    About H1 B visa, immigration withdrawal while arbitration pending, Thermo fisher job offer, GE & Jenny's email that Trivedi can't use PERM elsewhere so she can extend her H1 B after getting fired ......... 36

10.5    I already had a full time JOB OFFER in June 2013 from Life Technology/Thermo Fisher scientific at Madison, Wisconsin facility working of DRUG DISCOVERY JUST TWO WEEKS after I was fired by GE  37

10.6    My First Project "Insite EXC" , manager's review where Dave Sallis wrote that it is GE's problem. Also GE fired Dave Sallis just a month ( April 2014)before my arbitration hearing on May 2014… ........... 39

10.7    Holding that the "assignment of a disproportionately heavy workload" can constitute an adverse employment action);" ....................................................................................................................... 39

10.8    Retaliation and fraudulent integration of InsiteEXC when Trivedi reports to management, executive Dave Elario who further threatens to take Trivedi off job and more aggressively releases Insite ................. 40

10.9    With Second project RSVP GEIP project , there was lots of stress and tension between team leads/managers/members and overall..as there were three companies-GEHC, GEIP and GE Energy; hence different approaches, directions, priorities and it was not working well(even before Madhuri joined the team)  42

10.10    the PIPs and similar criticism could qualify as adverse actions where they materially impact the terms and conditions of the plaintiff's employment. .................................................................... 45

10.11    Below press release shows that GE CEO Larry Culp HIMSELF has admitted that GE has infighting problems and problem of its products' quality… ........................................................................ 45

10.12    GE's wrongful termination, SEC fraud and all allegation has caused continued HARM that have caused WORSENING CONDITIONS ................................................................................................ 46

10.13    Below events I did as a volunteer at vlab- several known companies pitched at vlab when they were new/smaller such as google( to give idea about vlab) Security: High Stakes for Billions of Devices... 46

10.14    GE is ENRON like. ................................................................................................................ 47

4

10.15    GE's solutions policy which is ADR- mediation, arbitration and it states Dodd Frank, quitam, SOX and other excluded claims as stated above..but none of these attorneys told me anything regarding this Law firms attorneys never mentioned my rights and laws related to GE violations...................................... 47

10.16    Foley and Mansfield (foleymansfield.com) ............................................................................ 48

11    GE said that Diane Smith investigated & interviewed, She selectively interviewed those whom; she could gather document against Trivedi and excluded those who will say positive things about Trivedi.. ......... 48

12    GEHC Chief technology officer Mike Harsh told me on phone in 2017( he came to my arbitration hearing in 2014 and after hearing he left GE after 35 years of service.) NO ATTORNEY will bring up laws that in my situation as GE pays a LOT to attorneys ...................................................................................... 49

13    Trivedi came to know about mandatory arbitration , when immigration attorney Jeff Goldman sent a letter to GEHC services CEO Mike Swinford; and GE attorney replied that Trivedi is bound by arbitration ... 49

14    Trivedi filed EB1 person of extra ordinary ability employment based -petition with USCIS; when arbitration was pending  - as Jenny canced H1 B while mediation was pending.............................................. 50

15    GE declined government arbitrator; who told that he will RULE in Plaintiff's FAVOUR if selected..... 51

16    In Arbitrator's award(EXHIBIT B in ECF 28 - Case 1:19-cv-11862-PBS Document 74-2 Filed 10/24/19 )in district of Massachusetts lawsuit declaration by Bruce Falby ; on page 50 arbitrator Peter MEYERS mentioned that Trivedi hasn't given testimony herself about hostile environment ( based on this statement by corrupt arbitrator – entire award in favor of GE must be vacated)(and all judges also MUST be jailed for dismissing Trivedi's claims and taking judicial notice of arbitrator award) ...................................... 51

16.1    Deposition of Bill B and Madhuri ; where Madhuri testified about hostile work environment. Arbitrator didn't entered Bill B deposition into arbitration hearing as EVIDENCE. Arbitrator didn't entered Trivedi deposition into arbitration hearing as EVIDENCE. .................................................................... 52

16.2    Because despite Trivedi testified multiple times in her testimonies about hostile environment she suffered including but not limited to even at hearing; same for being a woman, based on her gender .. ........ 55

16.3    Because I have stated even several times in motions at MAD court; EXCERPTS OF DEPOSITIONS where I did testified that I was subject to hostile environment and gender based .................................... 55

16.4    EXHIBIT  (Case 1:19-cv-11862-PBS Document 51-4 Filed 10/10/19 Page 1-8 )and EXHIBIT (Case 1:19-cv-11862-PBS Document 51-5 Filed 10/10/19 Page 1-7); .................................................................. 55

17    White House Office of Science and Technology Policy (OSTP)director Dr. John Holdren referred my matter to General counsel at White house................................................................................................ 55

18    FDA FOIA response has communication from Quitam division attorney at DOJ San Francisco...Page 15 … FOIA gave only email DOJ attorney sent to FDA and NOT what FDA responded..US attorney said ONLY FDA investigates QUITAM and then they bring charges – attorney office do not have investigative resources nor they ever do that.. ................................................................................................................ 56

18.1    FDA general counsel email , March 2015- "Typically we do not share any info involving an open investigation. Is this matter different?".......................................................................................... 56

19    FDA December 15, 2013 ; under process Trivedi whistleblower complaint .......................................... 57

20    MA saving statute and tort statutes..How judges illegally dismissed claims …................................... 58

5

20.1    Savings provision under Mass. G.L.c. 260, § 32, would apply to an action duly commenced in another jurisdiction ...................................................................................................................... 59

20.1.1    TRIVEDI v. GENERAL ELECTRIC COMPANY (1:19-cv-01479) District Court, District of Columbia 59

21    PARTIES ............................................................................................................................ 65

21.1    BIVENS and FTCA ........................................................................................................ 67

22    PLAINTIFF'S AND CLASS MEMBERS' DAMAGES ...................................................... 68

22.1    The "GE stock Class" ................................................................................................... 69

22.2    The "WHISTLEBLOWER CLASS" .............................................................................. 70

22.3    The "TITLE VII discrimination & Retaliation Class" ................................................. 70

22.4    EEOC Midwest has been given 50 plus class members information but EEOC has declined to open systemic enforcement action ........................................................................................................ 70

22.5    Also, January 2021 OFCCP (Department of labor agency)was also presented 50 plus GE employees information for group / class investigation. They also didn't investigate. Full corruption at the agency ....... 71

23    Trivedi claims under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 396-97 (1971) , court to extend a *Bivens* remedy to Trivedi; for DOI & USCOURTS individual defendants named in this complaint .......................................................................................................... 72

23.1    Moreover: When a plaintiff asserts constitutional rather than statutory rights, the Court is more willing to imply a private right to sue, both on the theory that defining the means for the enforcement of constitutional rights is the federal judiciary's special focus, and because these cases lack the separation-of-powers concern Davis v. Passman, 442 U.S. 228, 241 (1979)........................................................... 74

23.2    When a judge acts intentionally and knowingly to deprive a person of his constitutional rights he exercises no discretion or individual judgment; he acts no longer as a judge, but as a " minister" of his own prejudices. [386 U.S. 547, 568]. [This is what has been happening with Trivedi] ......................................... 75

23.3    Should a judge not disqualify himself, then the judge is violation of the Due Process Clause of the U.S. Constitution. United States v. Sciuto, 521 F.2d 842, 845 (7th Cir. 1996) ("The right to a tribunal free from bias or prejudice is based, not on section 144, but on the Due Process Clause.")................................. 75

24    VENUE AND JURISDICTION ........................................................................................... 75

24.1    FEDERAL JUDGE ANDREW HANEN IN BROWNSVILLE TEXAS ........................................... 78

24.2    BIVENS ......................................................................................................................... 80

24.3    Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b) ;29 CFR Subpart B - Claims Against the Government Under the Federal Tort Claims Act  29 CFR § 15.100 (a) ............................................... 80

24.4    Additional jurisdiction [how MAD dismissed Foley claims by citing personal jurisdiction – when It was subject to nationwide service. This is corruption…This paragraph also applies to all DEFENDANTS in this lawsuit by Trivedi, for jurisdiction purpose as well .............................................................. 81

25    TIMELINE & PROCEDURAL HISTORY ............................................................................... 82

PLEASE see EXHIBIT 3 – for detailed DATE wise history & timeline............................................. 82

26    EQUITABLE TOLLING ................................................................................. 82

27    CAUSES OF ACTION ................................................................................. 83

27.1    FIRST COUNT

Whistleblower Retaliation under Dodd-Frank Act, 15 U.S.C. §78u-6(h); SEC Rule 17 CFR § 240.21F-2 ... 83

27.1.1    "an omission is actionable under the securities laws when the corporation is subject to a duty to disclose the omitted facts. ......................................................................... 86

*27.1.2    Web content inadvertently be considered an offer to sell or solicitation to buy Securities; and GE engaged into Several Deceptive Marketing practices* ......................................... 86

27.1.3    GE's omission of facts pertaining to an actual, known risk could violate the requirements of Regulation S-K Item 303 and Rule 10b-5 ...................................................... 88

27.2    SECOND COUNT ................................................................................. 91

Securities Exchange Act of 1934,15 U.S.C. 78j(b),Rule 17 C.F.R. 240.10b-5 ................... 91

27.3    THIRD COUNT                                        Violations of

whistleblower protections under Sarbanes-Oxley Act,8 U.S.C. §1514A, et seq. ,Pub. L. 107-204 ............. 95

27.3.1    Daniel Koh, OSHA, ROSA , 2021 complaint ......................................... 96

27.3.2    ARB ............................................................................. 99

27.3.3    FTCA ........................................................................... 99

27.3.4    OIG DOL referral to OSHA ....................................................... 99

27.3.5    OSHA SOX claims of Trivedi ..................................................... 101

27.4    FOURTH COUNT                                        Disparate treatment,

intentional discrimination and retaliation in violation of Title VII, VIOLATIONS OF CIVIL RIGHTS ACT OF 1991, 42 U.S.C. 1981 (Section 1981),42 U.S.C. 2000e et seq. ,42 U.S. Code § 1981a - Damages in cases of intentional discrimination in employment, hostile work environment, 42 U.S.C. § 2000e-3a, 42 USC § 2000e 2(a)(1) , Civil rights violation hostile work environment,  Sexual harassment,  Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 - 9 U.S.C. §§ 401-402 ................................................ 103

27.4.1    InsiteEXC internal customers struggle for months to establish connectivity and Trivedi found short term fix .......................................................................... 106

27.4.2    My email to CTO Tim Kottak. I met Tim in person and went over everything .I requested Tim to change my reporting manager .......................................................... 110

27.4.3    That's why I am presenting this lawsuit as CLASS ACTION ............................. 110

27.5    FIFTH COUNT                                        Wrongful

termination in violation of public policy .......................................................... 111

27.6    SIXTH COUNT                                        Breach of the

implied covenant of good faith and fair dealing Breach of contract good faith, Breach of  fiduciary duty, 17 CFR § 229.406 -Code of ethics ,tort, Other common-law limitations including actions based on the (1)intentional infliction of emotional distress(claim also already in MAD lawsuit), (2)intentional interference with a contract (claim also already in MAD lawsuit) ............................................ 111

27.7    SEVENTH COUNT                                                                          9 U.S.C.
§ 12, 9 U.S.C.§ 10(a)(3),9 U.S.C. § 10(a)(2) 9 U.S.C.§ 10(a)(1) and challenging arbitration award under
common law AND Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 -9 U.S.C. §§
401-402 ........................................................................................................................................ 117

    27.7.1    In *Move, Inc. v. Citigroup Global Markets, Inc.*, the Court, for the first time, held that equitable
estoppel can toll the Section 12 three-month limitations period. .............................................. 122

27.8    EIGHTH COUNT                                                                              31 U.S.C.
§3729 et.seq. AND 31 U.S.C. § 3802 AND RELATED WHISTLEBLOWER REPRISAL ; 31 U.S.C. §
3730(h)(3) under ongoing fraud and ongoing violations ( ALL defendants)................................ 122

    27.8.1    Allegations of ongoing fraud should not be dismissed on the basis of the statute of limitations;
when Trivedi allege "ongoing fraudulent scheme"...................................................................... 125

    27.8.2    Trivedi's retaliation claim under 31 U.S.C. § 3730(h) (2) ; can proceed Pro Se and ongoing
fraud makes claim timely ............................................................................................................ 126

    27.8.3    Outside three year statute period conduct helps to establish a scheme for false claims .......... 128

    27.8.4    Individual Retaliation Claim is not subject to the FCA procedural requirements [Trivedi has met
pleading requirement at motions to dismiss level for this claim] ................................................ 128

    27.8.5    Nonconforming product & service by GE .................................................................... 129

    27.8.6    Pleading requirement for retaliation claim.................................................................... 129

27.9    NINTH COUNT                                                                             Breach of
fiduciary, duty breach of the implied covenant of good faith and fair dealing ,breach of contract good faith,
negligence .................................................................................................................................... 130

27.10    TENTH COUNT                                                                              CIVIL
LIABILITY FOR AIDING AND ABETTING FRAUD, AIDING-ABETTING BREACH OF FIDUCIARY
DUTY AND CONSPIRACY (All defendants).................................................................................. 135

27.11    ELEVENTH COUNT                                                                         Claims for
FTCA ;28 U.S.C. §1346(b) ; 29 CFR Subpart B - Claims Against the Government Under the FTCA 29 CFR
§ 15.100 (a) .................................................................................................................................. 137

    27.11.1    Intentional infliction of emotional distress is not one of the intentional torts listed in section
2680(h) for which the United States retained its sovereign immunity. *See* 28 U.S.C. § 2680(h)................. 137

    27.11.2    Negligence ........................................................................................................ 141

    27.11.3    Negligence per se ............................................................................................. 143

    27.11.4    Misfeasance and non feasance under tort.................................................................. 145

    27.11.5    Intentional Tort -fraud...................................................................................... 145

    27.11.6    Malfeasance .................................................................................................... 145

    27.11.7    "Conspiracy Actionable Under 42 U.S.C. § 1985 (2) Obstructing justice; intimidating party,
witness, or juror  AND (3) Depriving persons of rights or privileges "  individual capacity ................. 145

    27.11.8    Reasonable reliance- found in the tort of fraud.................................................... 146

27.11.9    Continuing violation, FTCA , and they dictate that the statute of limitations does not start to run "any earlier than the last day of the ongoing injury from 2014 to present...........................................146

27.12    TWELFTH COUNT                                                        Claims for violations of constitutional rights pursuant to  Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 396-97 (1971)(All DOL Employees Named Individually In This Complaint as defendants)...............................................................................................................................151

27.13    THIRTEENTH COUNT                                                        The Federal Tort Claims Act, 28 U.S.C. §1346(b) ; 29 CFR Subpart B - Claims Against the Government Under the FTCA 29 CFR § 15.100 (a) (USCOURTS & Judges Defendants) ..........................................152

27.13.1    If one federal judge  (federal judge Andrew Hanen of Texas ) can find my material worthy to do grand jury criminal investigation – how come another federal judge Donato – dismiss claims – I am saying as it was related to GE's retaliation – even if we not fight for extra ordinary ability portion because my 2016 lawsuit was against department of homeland security for EB1 – a person of extra ordinary ability.    153

27.13.2    And same thing if one federal judge  (federal judge Andrew Hanen of Texas ) can find my material worthy to do grand jury criminal investigation – how come another federal judges such as judge Saris, judge Kelley and first ciruit judges - David J. Barron, Bruce M. Selya, and Rogeriee Thompson TOTALLY TRASH TRIVEDI's claims and dismiss it at MOTION to dismiss stage. ............................154

27.13.3    More than a century old case law- "Ex Parte Virginia, 100 U.S. 339 (1880)", supreme court stated that judges are not immune from criminal prosecution ..................................................154

27.13.4    Continuing TORT – judge Donato to judge Saris –no one wants to address fraud by GE- but only wants to act as GE's general counsel ...........................................................................155

27.13.5    Tort by judges, sadistic pleasure. .......................................................................155

27.13.6    Intentional infliction of emotional distress against the United States pursuant to the Federal Tort Claims Act (FTCA) , 28 U.S.C. § 2671–2680. .....................................................156

27.13.7    Negligence ..................................................................................................158

27.13.8    Negligence per se .........................................................................................160

27.13.9    Misfeasance and non feasance under tort..............................................................162

27.13.10    Intentional Tort -fraud..................................................................................162

27.13.11    Malfeasance ...............................................................................................163

27.13.12    Depriving persons of rights or privileges "  individual capacity...........................163

27.14    FOURTEENTH COUNT                                                        Claims for violations of constitutional rights pursuant to  Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 396-97 (1971) .........................................................................163

27.15    FIFTEENTH COUNT                                                        5 U.S.C. § 702 under the Administrative Procedures Act ("APA"), 5 U.S. Code § 706 ................................166

27.16    IRREPARABLE INJURY, INJUCTION ................................................................166

9

28    PRAYER FOR RELIEF............................................................................................167

29    JURY DEMAND ...................................................................................................169

30    EXHIBITS ..........................................................................................................171

# **COMPLAINT AND REQUEST FOR INJUNCTION**

Note: I have crated bookmarks in PDF – expands by clicking on ICON in RED OVAl. Thank you.



Plaintiff Madhuri Trivedi("Plaintiff"), for causes of action against all defendants **in this Complaint for Damages as follows:**

**1.** GE put profits over people by misleading investors about the functioning of remote connectivity platform –preinstalled on 99% of medical devices GE made... But public companies and their executives must provide accurate and complete information when they make disclosures to investors. If not then they must be held accountable. And for not joining GE's fraud scheme, hardworking Madhuri was terminated – with pretext of "NOT a team player".. This whole egregiousness MUST end with Trivedi getting all the relief and making Trivedi whole again.

# 1   After our January 2019 email, GE removed remote connectivity section after ten years, from sec.gov 10-K filing

**2.  So GE REMOVED/STOPPED putting BELOW SECTION entirely from February 24, 2019 till present 2022 in SEC 10-K filing with securities & exchange commission; after  Trivedi sent email  - on January 2019 to Culp – GE CEO, GE board of directors..... Since February 2019- one month after Trivedi's email – GE stopped --**

**--------------------------SEC.gov website; searching GE's public filing with SEC**

**Filing 10-K - For year 2007 ,2008,2009,2010,2011,2012,2013,2014,2015,2016, 2017 mentions INSITEEXC as follow**

> **Item 7 operations..SIGNIFICANT TRENDS & DEVELOPMENTS MD&A Healthcare SEGMENT - Our product services include remote diagnostic and repair services for medical equipment manufactured by GE and by others, as well as computerized data management and customer productivity services.**

> **OR**

> **Healthcare systems also offers product services that include remote diagnostic and repair services for medical equipment manufactured by GE and by others.**

# 2   Trivedi's SEC.gov whistleblower and GE fraud complaint & SEC FOIA acknowledgement that investigation is still ACTIVE and ONGOING

**3.**  Plaintiff Trivedi incorporates by reference SEC letter below, as though fully set forth

herein, as well as facts currently unknown in this complaint

SECURITIES AND EXCHANGE COMMISSION (SEC) ENFORCEMENT ACTION –COMPLAINT RELATED TO GE HEALTHCARE

**SEC File #████████████1/GE Healthcare**

From: ████████████@*sec.gov>*
02/13/2019 (3 months ago)
**To**: Madhuri Trivedi

Dear Madhuri Trivedi:

 We are taking your complaint very seriously, and have referred it to the appropriate people within the SEC.

Please understand that the SEC generally conducts its investigations on a confidential basis and neither confirms nor denies the existence of an investigation unless we bring charges against someone involved.  We do this to protect the integrity and effectiveness of our investigative process and to preserve the privacy of the individuals and entities involved.  As a result, we will not be able to provide you with any future updates on the status of your complaint or of any pending SEC investigation.

I've attached a flyer that describes our policy as it will apply to your complaint.  Please contact me if you have other questions. Sincerely,

## 3   SEC.gov cybersecurity rulemaking & Trivedi's comment EXHIBIT 4

**4.** https://www.sec.gov/comments/s7-09-22/s70922-20127840-289033.pdf
**5.**

## 4   In securities fraud cases, courts have observed that inadequacy of internal [] controls "are probative of scienter [defendant's intent to deceive, manipulate, or defraud] Basic Inc. v. Levinson, 485 U.S. 224, 231–32 (1988)

 . . . and can add to the strength of a case based on other allegations." Crowell v. Ionics, Inc., 343 F. Supp. 2d 1, 12, 20 (D. Mass. 2004) (citations omitted). Significant deficiencies in internal controls, at least when combined with other substantial issues, would constitute a circumstance likely to be "viewed by the reasonable investor as having significantly altered the 'total mix' of information made available."

## 5   After my fight, GE started putting word "cybersecurity" in its SEC filings.

...and GE board of director with biology background was overseeing cybersecurity as per sec.gov filings..I contacted her right when I was terminated and she replied that she is too high to deal with INDIVIDUAL complaints. What shameless people.

## 6   GE public alert in 2018 Cybersecurity vulnerability

**6.** Frank Abagnale, the infamous impostor from Catch Me If You Can, said

"Every breach, without exception, happens because somebody in that company did something they

weren't supposed to do or somebody failed to do something they were supposed to do—didn't fix its

tech, it didn't update patches, so the hackers got millions of pieces of data."

Plaintiff  Madhuri who didn't work for the government nor had union protections,

12

blowing whistle given that it could impact her career;  ===with all this consequences She boldly and courageously STOOD up for doing what she believed was legal for her to do , not to join GE fraud scheme, cyber security vulnerabilities , product defects, violations ---TOOK high risk road and suffered backslash, retaliation.

**7.**  Trivedi's position is corroborated by Scott Erven, an independent cybersecurity Researcher. Finally GE and Department of homeland security(DHS) CISA.gov  issued ICERT ALERT in February/March 2018 for cybersecurity vulnerabilities related to many types of GE medical devices. (Case 1:19-cv-11862-PBS Document 51-3 Filed 10/10/19 Page 1 -16)

https://www.cisa.gov/uscert/ics/advisories/ICSMA-18-037-02

**AFFECTED PRODUCTS**

The following GE Healthcare products are affected:

- Optima 520, which are medical imaging systems, all versions,
- Optima 540, which are medical imaging systems, all versions,
- Optima 640, which are medical imaging systems, all versions,
- Optima 680, which are medical imaging systems, all versions,
- Discovery NM530c, which is a nuclear medical imaging system, versions prior to Version 1.003,
- Discovery NM750b, which is a dedicated breast imaging system, versions prior to Version 2.003,
- Discovery XR656 and Discovery XR656 Plus, which are digital radiographic imaging systems, all versions,
- Revolution XQ/i, which is a medical imaging system, all versions,
- THUNIS-800+, which is a stationary diagnostic radiographic and fluoroscopic X-ray system, all versions,
- Centricity PACS Server, which is used to support a medical imaging archiving and communication system, all versions,
- Centricity PACS RA1000, which is used for diagnostic image analysis, all versions,
- Centricity PACS-IW, which is an integrated web-based system for medical imaging, all versions including Version 3.7.3.7 and Version 3.7.3.8,
- Centricity DMS, which is a data management software, all versions,
- Discovery VH / Millenium VG, which are nuclear medical imaging systems, all versions,
- eNTEGRA 2.0/2.5 Processing and Review Workstation, which is a nuclear medicine workstation for displaying, archiving, and communicating medical imaging, all versions,

- CADstream, which is a medical imaging software, all versions,
- Optima MR360, which is a medical imaging system, all versions,
- GEMNet License server (EchoServer), all versions,
- Image Vault 3.x medical imaging software, all versions,
- Infinia / Infinia with Hawkeye 4 / 1, which are medical imaging systems, all versions,
- Millenium MG / Millenium NC / Millenium MyoSIGHT, which are nuclear medical imaging systems, all versions,
- Precision MP/i, which is a medical imaging system, all versions, and
- Xeleris 1.0 / 1.1 / 2.1 / 3.0 / 3.1, which are medical imaging workstations, all versions.

**IMPACT**

Successful exploitation of this vulnerability may allow a remote attacker to bypass authentication and gain access to the affected devices.

Impact to individual organizations depends on many factors that are unique to each organization. NCCIC recommends that organizations evaluate the impact of this vulnerability based on their operational environment and specific clinical usage.

**VULNERABILITY CHARACTERIZATION**

**VULNERABILITY OVERVIEW**

IMPROPER AUTHENTICATION CWE-287

For the affected products, a CVSS v3 base score of 9.8 has been calculated; the CVSS vector string is (AV:N/AC:L/PR:N/UI:N/S:U/C:H/I:H/A:H)

**VULNERABILITY DETAILS**

**EXPLOITABILITY**

This vulnerability could be exploited remotely.

**EXISTENCE OF EXPLOIT**

Vulnerability information about the affected products is publicly available.

**DIFFICULTY**

An attacker with a low skill level would be able to exploit this vulnerability.

**END of CIS.gov alert……………………………………………………..**

8. *Scott Erven reported these cyber vulnerabilities to GE in 2014.*

9. Plaintiff Trivedi started bringing up severity and sense of urgency/liability/ to fix

address/stop integrating and shipping medical devices with InsiteEXC to GE from 2011.

*10. Insider threat mitigation didn't exist..as Bill Baribux –GE architect*

*testified (EXHIBIT - **Case 1:19-cv-11862-PBS Document 51-3 Filed 10/10/19 Page 100 - 125** )*

*InsiteEXC  failed all security tests on day ONE in year 2008 ;so they moved it from public facing to*

*inside GE network but GE has 300,000 employees and  as Scott Erven proved that InsiteEXC was*

*vulnerable from hospital/outside GE network as well.*

14

**11.** From my phone conversation with Scott on Feb 22nd 2019 he was also wondering

that how come GE not address it/(no fix, patch or recall) despite having lots of press around it for 4

years and many security researchers knew about it and wrote. After Scottt report in 2014 ;

vulnerabilities were unpatched even though it was wide open to be hacked and manipulated

**12.** (Somehow all of a sudden GE released a patch in Feb/March 2018.)This is just a tip of an

icerburg –vulnerability Scott reported ;was few of 465 total critical defects.

**13.** GE knowingly conspired, deceived, fraudulently sold medical device products and

services to customers, investors and government by not publicly disclosing defects, cybersecurity

vulnerabilities, also serious hackable –for years for sake of generating revenue, money while putting

public health and safety at risk and mercy/hands of hackers. GE made numerous press releases,

released you tube video, product brochures for surgery, ultrasound and all kind of medical devices

with misleading, false information.

**14.** On January 03 and Jan 05,2019; J P Morgan wall street analyst covering GE Mr.

Stephen Tusa  contacted GE ,CEO- Larry Culp and sent them my 2017 email to Mr. Flannery and

board of directors - EXHIBIT (Case 1:19-cv-11862-PBS Document 51-3 Filed 10/10/19 Page 19 -24  of

201 ) along with my email. But GE didn't reply to Mr. Tusa nor to me ever.

**15.** On January 24, 2019 , Trivedi sent, this same, email to Larry Culp and Ge board of

director , GE general counsel Mike Holston along with JPM analyst Steve Tusa. And as stated above,

just one month after these emails, GE removed REMOTE CONNECTIVITY section from sec.gov

10-K filings.

**16.** <u>On the day Trivedi was terminated by GE, GE architect Bill Barbiuax told Trivedi
that "you did the RIGHT thing, but GE is BIG. Nothing will happen to GE.  Bill and GE sending a
message" MIGHT is RIGHT" Also by sending a message to all current and future employee that if
"you speak up against GE for any/all wrongdoing GE is DOING; We RETALIATE like what we Did
to Madhuri Trivedi." Then GE created "FILE TO FIRE" – generate paper trails to frame her to show
her firing.( Few attorneys told Trivedi that "GE did was File to FIRE)</u>

**17.** Several immigration attorneys mentioned to Trivedi over phone right at the time

when she was fired that

> "GE has finance/accounting cooked books, checked history. Since next step in my
> immigration while I was at GE was to file form I140 with DHS/USCIS I 140 ; in I 140
> form GE was required to show their finances and total number of US based employees.
> GE didn't want to SUBMIT TRUE finances to government. So GE got rid of plaintiff and
> made up PRETEXT issues of relationship skills to fire."
>
> 1.   I was deprived from my rights to litigate these claims earlier along with several

other reasons IMPORTANT REASON as due to withdrawal of my H1B; lawyers earlier DIDNT

provide proper legal advice .

# 7   GE fraud related

**18. Connectivity –lucrative money making service contracts ( which generates annual
recurring revenue for GEHC( in terms of upto $8 billion per year) instead of ONETIME sale of
medical device) was better than critical defects-bugs-security vulnerabilities-design
nonconformance –all of these put public health, safety, security and privacy of their data at risk
and exposure. Poorly protected & patched , Internet Network connected with No proper and
adequate detection & alerting, Vulnerabilities of devices are RECIPE of DISASTER in
hospital, & health system .**
**When Plaintiff mentioned  that "why we are still shipping defective Insite2 product" ; David
Mehring mentioned that during a group meeting that "Connectivity is better than Insite2
product" (means at least medical device will have connectivity).**

**19. Whistleblower Trivedi had reason to believe that by telling authorities about a**

**cybersecurity problem, or a company's failure to disclose one, they would be reporting a**

**securities-law violation.**

**20.** The company's "scheme to defraud its customers by knowingly selling defective

and potentially dangerous remote control product on most of all their medical devices". GE

fraudulently induced, to buy its defective product through both misstatements and material

omissions. Each of us has the right to expect any medical equipment used for our medical care to be

safe and effective, but we are all placed at great risk when medical equipment companies violate our

trust and knowingly sell equipment that is defective," the evidence shows GE's callous disregard for

the fact that these defective product(s)—which they consciously, aggressively sold after knowing

16

existence defects—could mean life or death for unsuspecting patients, loss/theft of their protected health information(PHI), wrong diagnosis of life threatening disease or not having timely diagnosis due to cyber security vulnerabilities/defects. This case is not just about recouping money for taxpayers—**it is an indictment of a company that placed a higher premium on profits than public health and safety.**"- Public policy violation as well.

## 7.1  "InsiteEXC" "Insite2"

**21.** At GE Healthcare, remote service and connectivity medical device "InsiteEXC" / "Insite2" was remotely communicating and controlling 100,000 medical devices. Medical devices were **ultrasound, MRI, surgery , Lunar, radiology servers** and more. (Most of the GE medical devices were SOLD with INSITE EXC PREINSTALLED; InsiteEXC was part of service contract offerings.

**22.** There were defects in terms of 465-2000 total bugs and **465 defects(EXHIBIT** Case 1:19-cv-11862-PBS Document 51-3 Filed 10/10/19 Page 57 – 64 ) **in category of critical design non conformances in PRODUCTION (means already in USE at hospitals);** unresolved for several years and medical  Device  Insite Exc was launched in 2004.

# SPR Trends

| Count of id | | Classification | | |
|---|---|---|---|---|
| Year | State | Defect-Design NC | Improvement Opportunity | Grand Total |
| 2004 | Assigned | 2 | 2 | 4 |
| | New | 4 | 4 | 8 |
| 2005 | Assigned | 5 | 8 | 13 |
| | New | 6 | 4 | 10 |
| | Resolved | 1 | 1 | 2 |
| 2006 | Assigned | 45 | 14 | 59 |
| | New | 32 | 9 | 41 |
| | Resolved | 27 | 7 | 34 |
| 2007 | Assigned | 27 | 5 | 32 |
| | New | 258 | 52 | 310 |
| | Resolved | 18 | 8 | 26 |
| 2008 | Assigned | 9 | 1 | 10 |
| | New | 6 | 1 | 7 |
| | Resolved | | 1 | 1 |
| 2009 | Assigned | | 1 | 1 |
| | New | 5 | 2 | 7 |
| 2010 | New | 12 | 2 | 14 |
| 2011 | Assigned | 3 | | 3 |
| | New | 5 | 2 | 7 |
| Grand Total | | 465 | 124 | 589 |

**Changes in 3Q:**
- 15 SPRs closed
- Reviewed and "dispostioned with justification" 12 Unacceptable Risk sprs imported incorrectly from DDTS

5.2 release

**Open Issues:**
- 465 Design Non-Conformances
- 124 Improvement Opportunity
- Will be closed with justification when RSvP program retires Questra back-office

**23.** It lacked security features, audit trails, activity logging and security reporting.. (i) the design and technology of Insite EXC were flawed as they were plagued with 465 critical defects unresolved for several years including severely deteriorating performance ---including but limited to that online engineers could not do remote connection to check, fix medical device( remote connection was a SELLING POINT for this product and all service contracts for insite EXC were signed based on remote connectivity; (ii) GE didn't publicly disclosed this issues; (iii) the Company lacked adequate management controls to report/fix/address these issues; and (iv) as a result of the foregoing, GE's public statements were materially false and/or misleading and/or lacked a reasonable basis. It is also fraudulent inducement.

**24.** GE performed sham quality tests and "willfully concealed the existence, frequency and severity of the products' defects," with "grossly inadequate testing procedures". Tech leads/seniors were skipping quality steps, testing needed.

18

**25.** For knowingly selling defective, life threatening medical devices used by Department

of Defense, Veterans Hospitals; medicare, Medicaid ; state government programs, other public

government programs.

*26.* GE SEC filings 10-K state that *"Our products are subject to regulation by numerous government agencies, including the U.S. Food and Drug Administration (U.S. FDA), as well as various laws that apply to claims submitted under Medicare, Medicaid or other government funded healthcare programs.*

**27.** For bringing this fraud and defects to management's attention and NOT willing to

participate in their fraudulent scheme. Madhuri- I was harassed, received abusive treatment and

wrongly accused of insubordination . She was also ostracized and marginalized by management.

Since then I have been suffering terrorizing acts due to GE and their influence at all level

**28. EXHIBIT** (Case 1:19-cv-11862-PBS Document 51-3 Filed 10/10/19 Page 126 - 133)

- for many GE devices, they are making claims that it has HIPPA /HITECH robust, security, audit

trails, reporting which is false.

**29.** While doing public release—intentionally hide information from shareholders and

SEC as per section 302 and 402  public release, inside and outside-company sales, marketing and

customer brochures with/for various medical devices such as surgery arm, cardio etc. Sales

information online for medical devices and public press release----and elsewhere where GE omitted

and misstated /failed to disclose any InsiteEXC issues/facts/truth --instead bolstered it ..

**30.** the company is required to disclose all "material information" –information that

an investor would consider important in the evaluation of an investment decision.

**31.** Several Finance managers at GE knew it and they work with internal and external

auditors...

**32.** Laws prohibit deceptive practices for use, benefits of company business, revenue,

profit...Failing to disclose material information concerning its usage, operation, maintenance

not as advertised, sold and mentioned in contract agreement; with intentional inducement ..failed to

willfully disclose and actively concealed defects for upto years( last 5-7 years where hundreds of

critical defects). Fraudulent Concealment by GE.

## 7.2    These INSITE EXC service contracts play a significant role in GE healthcare annual revenue

**33.** GE was negligent, lacked sense of urgency to correct this conduct or to report it to stakeholders;

because doing so would have adversely affected the large profit from service contracts' revenue and

fraudulent inducement from sales of GE healthcare medical devices . This would have adversely

affected company image in eyes of investors, and many other repercussions; would have significantly

reduced or eliminated bonus compensation and other stock based compensation for GE executives to

ensure that its officers would earn compensation related to economic performance, that stock options

and other stock-based compensation would be maximized …..and also GE would have impact on

public private purchase of medical devices and service contracts. Further disclosure of this fraudulent

defective medical devices/remote service would have significantly reduced GE's revenue and

reputation . . ., and a wide range of related conduct all based on fraudulent data and the failure to

report this material information of medical devices fraud and related cybersecurity RISK and

VULNERABILITIES.

## 7.3    As Trivedi got such a PANIC call where customer mentioned to TRIVEDI that MRI COIL temperature that medical device sends back to GE server–it was corrupted, inaccurate, faulty( this problem was consistent for more than six months to year)

**34.** Another example InsiteEXC sends health and diagnostics information from medical devices
back to GE server. And on number of occasions; GE customers and online engineers contacted
Trivedi directly as no one from front line support team was resolving their issues. As Trivedi got such
a PANIC call where customer mentioned to TRIVEDI that MRI COIL temperature that medical
device sends back to GE server–it was corrupted, inaccurate, faulty( this problem was consistent for
more than six months to year) because that data is somewhere getting corrupted; 4 degree Celsius is
showing 40 degree Celsius and vice versa. He was concerned as this could affect GE to address issues
on MRI machine from SERVICE point of view. Trivedi mentioned this MRI customer call to her

reporting manager David Mehring and instead of addressing this David started continually harassing Trivedi and asking her to improve relationship skills

## 7.4    Insite Exc application in production was vulnerable for online attacks and there were security issues.

**35.** Madhuri reported ( as frustrated internal customers and online engineers came to Madhuri , asking her help and opening support tickets) June 2012 that Insite Exc code needs to build with newer version with security update to address memory/online attack issue.. **"Enable memory protection to help mitigate online attacks" which was required to be unchecked in settings in order to establish/install remote connectivity. (EXHIBIT 6** ). Interesting is that given GE has enormous amount of money and resources; as shown in **EXHIBIT 6** it used out of date ACTIVE X controls.

**36.** At GE; ActiveX controls were built without SECURITY update . ActiveX control were required to be built using Visual Studio C++ 2005 or higher and it was June 2012—It shows GE used old, out of date, STONEAGED cybersecurity components.

**37.** ActiveX in itself poses several cyber securities threats and is not considered very good/ INSECURE PROTOCOL…Microsoft has stopped providing support to ActiveX ; It is considered DEPRICATED for SECURITY reasons too given it's attack vector..

## 7.5    Once Madhuri realized amount of defects and performance/maintenance issues

**38.** Insite Exc was having which was violation of FDA rule, quality code, HIPPA and HITECH violations and risk to public health and safety –patient data; it was a fraud and conspiracy to continue release/ integrate those Insite Exc agents on products like Surgery OEC for example (where Madhuri was doing testing). Given it is regulated environment and Madhuri was concerned to continue work on Insite Exc surgery integration in a reckless way manager/lead wanted. Madhuri informed managers  Dave Mehring/ Dave Saliis that she would consider working on another project and this is not proper. This happened in March 2012.

**39.** GE had consistently reported/misled public and customers that InsiteEXC**quality, HIPPA,**

HITECH, robust cyber security (EXHIBT 17 and insite brochure, various medical device manuals) while intentionally concealing that InsiteEXC is NOT in compliance FDA's 21 CFR § 820.90 - Nonconforming product, product non conformances, defects and cybersecurity vulnerabilities, aging platform that was falling apart and Scott Erven's report.

## 8   Litany of GE's cybersecurity vulnerabilities;NIST.gov and CISA.gov cybersecurity vulnerabilities public disclosure occurred on June 2022 related to INSITE EXC

**40. some of GE cybersecurity links---spanning all the way till 2022**

No judge, no court would allow GE to get away from what they have done to ME/Madhuri--there is no defense for that..**Latest in June 2022 - why to arrest all at this moment**

1)    A vulnerability classified as problematic has been found in GE Voluson S8. Affected is the file /uscgi-bin/users.cgi of the Service Browser. The manipulation leads to improper authentication and elevated access possibilities. It is possible to launch the attack on the local host.
https://nvd.nist.gov/vuln/detail/CVE-2020-36548
2)  A vulnerability was found in GE Voluson S8. It has been rated as critical. This issue affects the Service Browser which itroduces hard-coded credentials. Attacking locally is a requirement. It is recommended to change the configuration settings.
https://nvd.nist.gov/vuln/detail/CVE-2020-36547
**CVE Dictionary Entry:** CVE-2020-36548**NVD Published Date:**06/17/2022
**NVD Last Modified:**06/30/2022

**41.** Other relevant cisa.gov alerts
**Advisory (ICSMA-18-037-02) GE Medical Devices Vulnerability** Original release date: March 13, 2018
https://us-cert.cisa.gov/ics/advisories/ICSMA-18-037-02

2. **ICS Medical Advisory (ICSMA-19-190-01)** GE Aestiva and Aespire Anesthesia (Update A)release date: July 09, 2019 |
https://us-cert.cisa.gov/ics/advisories/icsma-19-190-01

3. **ICS Advisory (ICSMA-20-023-01) GE CARESCAPE,** ApexPro, and Clinical Information Center systems release date: January 23, 2020

https://us-cert.cisa.gov/ics/advisories/icsma-20-023-01
4. **ICS Medical Advisory (ICSMA-20-343-01) GE Healthcare Imaging** and Ultrasound Products Original release date: December 08, 2020
https://us-cert.cisa.gov/ics/advisories/icsma-20-343-01

5. **ICS Medical Advisory (ICSMA-20-049-02)** GE Ultrasound products Original release date: February 18, 2020
https://us-cert.cisa.gov/ics/advisories/icsma-20-049-02

6. **ICS Advisory** (ICSMA-18-128-01) Silex Technology SX-500/SD-320AN or GE Healthcare MobileLink (Update B) release date: May 08, 2018

7. ICS Advisory (ICSA-18-275-02) GE Communicator release date: October 02, 20181
https://us-cert.cisa.gov/ics/advisories/ICSA-18-275-02

**42.** Press

1) https://www.zdnet.com/article/mdhex-vulnerabilities-impact-ge-patient-vital-signs-monitoring-devices/

2) https://www.zdnet.com/index.php/category/2381/index.php/article/account-with-default-creds-found-in-100-ge-medical-device-models/

3) https://www.forbes.com/sites/thomasbrewster/2015/07/10/vulnerable-breasts/#62a219406b5a

4) https://www.zdnet.com/article/vulnerabilities-found-in-ge-anesthesia-machines/

5) https://www.modernhealthcare.com/cybersecurity/cybersecurity-flaw-discovered-100-ge-medical-devices

6) https://us-cert.cisa.gov/ics/advisories/ICSMA-18-037-02

7) https://us-cert.cisa.gov/ics/advisories/icsma-20-343-01

8) https://www.healthcareitnews.com/news/cisa-says-security-vulnerability-found-ge-imaging-and-ultrasound-devices

9) https://techcrunch.com/2020/12/08/researchers-say-hardcoded-passwords-in-ge-medical-imaging-devices-could-put-patient-data-at-risk

10) https://www.cyberscoop.com/ge-healthcare-dhs-alert/

11) https://www.medtechintelligence.com/news_article/fda-announces-cybersecurity-vulnerabilities-in-certain-ge-healthcare-systems/

12) https://healthitsecurity.com/news/feds-alert-to-critical-vulnerabilities-in-ge-patient-monitoring-products

13) https://khn.org/morning-breakout/security-flaws-found-in-ge-medical-devices/

14) https://www.medtechdive.com/news/fda-cyber-vulnerabilities-PTC-Axeda-medical-device-software-/620075/

15) https://threatpost.com/critical-unpatched-bug-ge-radiological-devices/162012/

16) https://www.techradar.com/news/ge-healthcare-patient-monitors-are-hit-by-potentially-easy-to-exploit-security-flaw

17) https://www.csoonline.com/article/3600164/publicly-known-support-credentials-expose-ge-healthcare-imaging-devices-to-hacking.html

18) https://cybersecuritymarket.com/fda-informs-health-care-providers-facilities-and-patients-about-potential-cybersecurity-vulnerabilities-for-certain-ge-healthcare-clinical-information-central-stations-and-telemetry-servers/

19) https://control.com/news/cisa-discovers-vulnerabilities-in-ge-healthcare-radiological-devices/

20) https://www.biospace.com/article/releases/fda-informs-health-care-providers-facilities-and-patients-about-potential-cybersecurity-vulnerabilities-for-certain-ge-healthcare-clinical-information-central-stations-and-telemetry-servers/

21) https://www.zdnet.com/article/vulnerabilities-found-in-ge-anesthesia-machines/

## 9   GE abandoned Stack ranking after Trivedi arbitration

**43.** From: madhuritrivedi@hotmail.com To: charlotte.doll@ge.com; sean.scullen@quarles.com CC: neil.stekloff@ge.com; madhuritrivedi@hotmail.com; carolplacella@adr.org Subject: During my second week at GEHC(Dec 2011) Date: Sat, 15 Feb 2014 21:41:13 -0600
Dear Charlotte,
While working at GEHC; I have met you during meeting. I needed to reach out to you to confirm following paragraph.
Currently I am in Arbitration with GEHC. And you were present during this meeting. It would help me. You are a woman and I thought you would be able to confirm this...Because Adam asked you my name and you replied him with my name..in Dec 2011; so I figured .
" During my second week at GEHC(Dec 2011) when Mike Truman( HR manager ) was giving presentation on GE's performance appraisal system(15 or so people were present) and Charlotte Doll (Human Resources Manager)
and Adam Holton(Senior HR manager ) was present(I did not know who was Adam Holton because it was my second week.).

### 9.1   Sjunde AP-Fonden, et al., v. General Electric Company, et al. -  1:17-cv-08457-JMF  --Hon. Jesse M. Furman denied GE's MTD; holding GE CFO's culpable participant in the alleged fraud by GE

**44.** Judge Furman ruled January 2021 that-- ECF 206; GE motion to dismiss denied
"as to (1) Plaintiffs' Section 10(b) and Rule 10b-5 claims concerning (a) factoring in GE's 2016 Form 10-K and (b) GE's failure to disclose factoring in its Class Period financial

1    statements from 2015        on, which survive against GE and Bornstein; and (2) Plaintiffs'
2    corresponding Section 20(a) control person claims against Bornstein.
        Bornstein [GE CFO] was, in some meaningful sense, a culpable participant in the alleged
3    fraud by GE.finds that Plaintiffs' allegations with respect to Bornstein suffice even under the
     heightened        standard. Indeed, the Court has already found that Plaintiffs adequately
4    plead Bornstein's scienter as to both remaining factoring primary violations..("Allegations
     sufficient to plead scienter for the        purposes of primary liability pursuant to Section
5    10(b)'necessarily satisfy' the culpable participation pleading requirement for Section 20(a)
     claims."  Therefore, Defendants' motion to dismiss these        surviving Section 20(a)
6    claims against Bornstein is denied."
7    **********************************************

**45.** So in Trivedi's case – culpable participation element is present, for claims against
8

9    DEFENDANTS. And during trial, discovery – more light will come on these fraud and corruption.

10   ## 9.2   In re GE/CBPS DATA BREACH LITIGATION (1:20-cv-02903-KPF)
                                District Court, S.D. New York
11   **46.** On February 21, 2022 GE reached a settlement for this class action lawsuit. Atleast one judge was
12        doing her job.
         "[T]he Supreme Court has made clear that 'allegations of possible future injury' or even an
13       'objectively reasonable likelihood' of future injury are insufficient to confer standing."
         McMorris, 995 F.3d at 300 (quoting Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409-10
14       (2013)). Rather, a future injury may support standing only if "the threatened injury is certainly
         impending, or there is a substantial risk that the harm will occur." Id. (quoting Susan B.
15       Anthony List v. Driehaus, 573 U.S. 149, 158 (2014)).
16       Judge Katherine Polk Failla's order denying GE's motion to dismiss –dated August 4, 2021.
         **In this ruling--- "at risk " ,"future injury" has been shown enough to prove injury and
17       thus ARTICLE III standing...  [This applies to Trivedi's FTCA claims against
         USCOURTS defendants from 2016 to 2022- defendants knew that Trivedi was/is "at
18       risk" of ongoing as well as future injury regarding her career, her own safety and life as
         a whistleblower, as well as immigration, life of her family member being at risk]**
19

20   **47.** GE's stone-aged style approach and attention to cybersecurity --this was what they did in my
21
     case... As suffering retaliation for raising serious cybersecurity issues has put me into bad situation by
22
23   GE.Because even these device and patient data being "at risk" and "future injury" ; given that most of
24   vulnerabilities were 9.8 out of 10 –highly exploitable. **[This applies to Trivedi's FTCA claims**
25   **against  USCOURTS defendants from 2016 to 2022]**
26   ## 9.3   In my Trivedi v. GE lawsuit - I have mentioned about above SEC settlement
                   in ECF 150 and ECF 150-1 ..and GE healthcare also has service contract..
27
     **48. ECF 150 page 4**
28   When GE got wells notice from SEC in October 2020 –

https://www.reuters.com/article/us-ge-sec-idUSKBN28J345

"The inquiry, which initially focused on long-term service agreements for maintenance of power plants, jet engines and other industrial equipment, was later expanded to include GE's review of its insurance business. "

11) Remember my claims also states that GE's on going fraud for medical devices and related service contracts – and I Madhuri worked as a lead engineer for GEHC's global service division -where GE not having division wise financial disclosure and service contracts' cost and future cost for service /parts can be adjusted –for overall cost—aka manipulated in finance for earning, cash flows, showing future revenue- cost figures –these are considered as variables which is used by GE tweak/manipulate for their own advantage given GE's opaque finances.

## 9.4   Trivedi -I READ =James Grant's book chapter – "hotlight on GE"..way back in 90s he saw things -- for 58 years GE's credit rating was not changed....that's the point...

| GENERAL ELECTRIC CO.—TIME MARCHES ON SELECTED HISTORICAL DATA AND RATIOS (IN $ MILLIONS, EXCEPT PER-SHARE DATA) | | | | | |
|---|---|---|---|---|---|
| | 1932 | 1957 | 1974 | 1982 | 1989 |
| Net sales | $147.2 | $4,335.7 | $13,598.9 | $26,500.0 | $54,574.0 |
| EBIT[1] | 14.7 | 521.7 | 1,180.8 | 3,097.0 | 12,210.0 |
| Net income | 14.4 | 247.9 | 608.1 | 1,817.0 | 3,939.0 |
| Earnings per share | $0.41 | $2.85 | $3.34 | $8.00 | $4.36 |
| Total assets | 405.1 | 2,346.6 | 9,369.1 | 21,615.0 | 128,344.0 |
| Long-term debt | 2.0[2] | 300.0[3] | 1,195.2[4] | 3,099.0 | 16,110.0 |
| Total equity | 345.4 | 1,216.6 | 3,704.3 | 10,198.0 | 20,890.0 |
| EBIT margin | 10.0% | 12.0% | 8.7% | 11.7% | 22.4% |
| Net income margin | 9.8% | 5.7% | 4.5% | 6.9% | 7.2% |
| Long-term debt/assets | 0.5% | 12.8% | 12.8% | 14.3% | 12.6% |
| Long-term debt/equity | 0.6% | 24.7% | 32.3% | 30.4% | 77.1% |
| Current ratio | 2.3x | 1.9x | 1.3x | 1.3x | 0.8x[5] |
| EBIT/interest | 46.8x | 46.5x | 6.6x | 9.0x | 1.9x |
| Return on assets | 3.6% | 10.6% | 6.5% | 8.4% | 3.1% |
| Return on equity | 4.2% | 20.4% | 16.4% | 17.8% | 18.9% |
| Net income of GECC as % of parent | — | 3.2% | 7.0% | 11.3% | 20.7%[6] |

[1] Earnings before income and taxes; includes all income sources.
[2] GE gold debenture 3½s, due 1942; Aaa-rated, 40-year-bonds.
[3] GE debenture 3½s, due 1976; Aaa-rated, 20-year bonds.
[4] Five issues, including $300 million of GE 8½s, due 2004; Aaa-rated, 30-year bonds.
[5] Current assets include only those time sales, loans and rental receivables of GEFS that mature in 1990. Including all GEFS receivables, current ratio is 1.2x.
[6] No doubt, GECC has grown in relative importance over the past several years, but the parent company no longer separately discloses its net income.

source   James Grant  Mending Mr. Market  Times Books  Random House  1993  page 361

GE has been debt financed for decades...done financial engineering, fraud and manipulation... Under Jack Welch, GE Capital delivered double-digit earnings gains, year in & out, regardless of what was going on. To his credit, Jeff Immelt reined in free-wheeling culture at **GE**..that's the problem….and that's the contributing factor for Trivedi's

27

termination….GE's fraudulent mindset…and that applies to medical device fraud GE healthcare was doing- and Trivedi didn't join GE's fraud scheme.

## 10 Background & highlights at GE

**49.** Plaintiff has bachelor in electronics and telecommunication engineering with distinction grade from India, Post graduate diploma in business administration(PGDBA) from India, Masters in Computer Information science from Cleveland state university, Ohio; and has done graduate certificate course( equivalent to Masters level but not a degree) in Systems design and management from Massachusetts institute of technology, Cambridge, MA. She has prior to joining GE worked in multiple domains including in enterprise solutions, biotech, enterprise security and healthcare IT;for big corporation as well as do or die entrepreneurial startups.

**50.** **Plaintiff joined GE healthcare in Waukesha, Wisconsin in 2011 as a Lead engineer- fulltime GE employee.**

**51.** ....prior to that I worked for GE intelligent platforms in 2010..GE interviewed me in 2009 and next day offered job on phone as a fulltime GE employee. After few weeks VP of engineering Reema Poddar mentioned that as GE has taken from government TARP(Troubled asset relief program) money; hence GE can't do my H1-hence would bring me on board first as a consultant-employed through Adecco-noramtec consulting(have them to H1B) and then after 2-3 months will do H1…I believed in their scheme and agreed. (At GE Intelligent Platforms in Boston; as part of a two engineer team reporting to Chief Technology Officer of GE Transportation Steve Edner, Plaintiff did Application development /support for remotely monitoring GE assets. This solution generated multi million in revenues for GE Intelligent platforms).GE emailed that they are happy and will do my H1 B transfter to GE (from Adecco/Noramtec consulting) as fulltime job with GE. GE filed my H1 B LCA with labor department- attached approved copy(by mistake lawyer wrote my

OLD married name as 'Shukla') (EXHIBIT Case 1:19-cv-11862-PBS Document 51-3 Filed 10/10/19 Page 138 -144 ) –I left GE intelligent platforms as GE told me shortly after this that they are terminating my contract. I didn't fight back then –At that time also immigration attorney for GE was Fragomen Del Rey, Bernsen & Loewy, LLP law firm's Jenny S. Schrager.

### 10.1 GE Intelligent Platforms/GE Transportation LCA in 2010 and Full time job –HR manager, H1 B visa at Boston in 2010

**52.** After GE intelligent Platforms in Boston ; I joined State of Indian –department of Disability and rehabilitation.I was getting paid less at State of Indiana then what GE healthcare offered but I was contended at State of Indiana; it was also low stress job. I resigned from state of Indiana job as GE Healthcare induced me into giving a greencard, permanent residency, more salary as while at state of Indiana I was on my fifth year of H1 B( approaching total six year of h1B time).

**53.** It was my mistake to move from Indiana to remote , cold place where GE had no real intention to give me permanent job which I needed in order for my greencard but I was INDUCED by GE(lots and lots –one can SAY MOST of product development-software firmware is outsourced and not done in USA or /and in Waukesha ) .

**54.** .It was my mistake that I moved to Waukesha from State of Indian –department of Disability and rehabilitation job.

**55.** Later GE healthcare came back in 2011 for Waukesha, WI full time job; even before in-person interview I emailed GE manager David Mehring and architect Nate Davis ( EXHIBIT Case 1:19-cv-11862-PBS Document 51-3 Filed 10/10/19 Page 145 -148) that my PERM (with department of labor)for greencard needs to be filed at least 365 days before My total 6 years of H1 runs out( H1 B expires) in order for me to get 1 year extension for my H1 B until I get greencard.(.But after HIRING me, knowingly GEHC didn't file PERM at least 365 days before my H1 so even when GEHC was terrorizing me I could left GE and work at another company –so this was a conspiracy.). Jenny Schragger  Fragomen immigration attorney should be in jail along with GE

1  people._____

2  From: George.Harmon@ge.com > To: madhuritrivedi@hotmail.com

3  Date: Wed, 16 Jun 2010 15:46:13 -0400

4  Madhuri

5

6  The attached Labor Condition Application is associated with your H-1B
   Filing. Please keep this with your records and acknowledge receipt by

7  dating and signing the top page. Then return the top page to me via
   e-mail or fax 814-690-1760.

8  Please note that the filing associated with the attached LCA has been
    reviewed, endorsed, and returned to Fragomen via UPS for further

9  processing with USCIS.

10 **From:** Trivedi, Madhuri (GE Intelligent Platforms, Non-GE)
   **Sent:** Friday, May 14, 2010 10:31 AM

11 **To:** Collins, Melanie (GE Intelligent Platforms)

12 **Subject:** RE: Today's Discussion
   HI Melanie

13 I am happy to be on board and for this offer. I will fill out the forms soon.
    Regards and thanks Madhuri

14

15 **From:** Collins, Melanie (GE Intelligent Platforms)
   **Sent:** Thursday, May 13, 2010 2:40 PM

16 **To:** Trivedi, Madhuri (GE Intelligent Platforms, Non-GE)
   **Subject:** Today's Discussion

17 Hi Madhuri,

18 I just wanted to send you a recap of our discussion today. We'd like to extend you a full time offer
   with base salary of $84,000 with a start date of "TBD". This is due to the fact that it will take a week

19 or two to transition you to full time employment as it pertains to our systems, payroll, etc. Start date
   should be early June timeframe.

20  I've also attached an overview of our benefits for your review.We are so happy to have you on board
   and appreciate all of the great work you've done for us.

21  Kind Regards,Melanie

22  **Melanie Collins**Human Resources Manager GE - Intelligent Platforms  □:: +1 508-698-7566 l Dial
   Comm: *309-7566□ :: Melanie.Collins@ge.com

23 *************END of email

24   ### 10.2 History, relationship between GEIP, Boston and GEHC, Waukesha, WI

   **56.**Same GE intelligent platforms people from BOSTON, MA including Reema Poddar-my

25 former senior Boss was driving new platform that Jeff Immelt was developing –and he bet billion of
   it—At Boston I worked on and I was first handful of engineers who developed asset management

26 platform NOW it became PREDIX –jet engine , energy electric grid, locomotive rail engine—GE ,
   Reema Poddar did best by humiliating me as a consultant and giving HIGHEST degree of tension

27 about converting my consulting role into full time –Below are GEIP, Boston projects I worked on- Ge

28 transportation one was developed from ground up.





**57.** Soon after joining GE healthcare in Waukesha, WI;  I realized that GE healthcare

HIRED ME as they wanted to get ahead of GE Boston people, playing internal GE subsidiary politics

; BECAUSE THEY WANTED INSIDER INFORMATION ABOUT GE BOSTON AND ALSO MY

EXPERIENCE IN REMOTE SERVICE AT GE BOSTON APART FROM OTHER EXPERIENCE

AND SKILLS BUT SOME OF THE FACTOR WAS ME WORKING IN SAME REMOTE

SERVICE (also I worked in remote service at United Technology corporation in Connecticut; UTC is

a competitor of GE in jet engine business ).GE healthcare in waukesha wanted to get GE corporate

funding that GE Boston people were allocated and Boston people were Driving that remote asset

management project—which GE healthcare people were MAD at because GE healthcare people

thought that we have already been doing Remote Service for some years while GE boston people

have no experience in remote service…(I have email communication some of it to prove this)Plus GE

healthcare people thought and believed that as being in healthcare GEHC have more knowledge of it

than GE Boston people—how the Hell GE Boston got the funding and HOW TO GET all the GE

CORPORTE FUNDING and attention back to GE healthcare in terms of REMOTE SERVICE and

REMOTE Asset management..so I was a SCAPEGOAT of GE division infighting and this intra

subsidiary politics…

**58.** I worked super hard in Boston, MA hoping that if I do so GE will hire me as a full

time as GE has promised and I did delivered…But again during our last couple of meetings;

engineering manager himself started discussing –and it came up that lots of work needed to be done

in terms cybersecurity  – needed LOT more TIME, money and Schedule than Rapid application

development GE Boston was doing; especially for GE aviation jet engines and GE energy Electric

grids, GE locomotives , GE water tanks--GE Intelligent Platforms in Boston –Reema Poddar,

Engineering managers and program mangers didn't care to allot time, resources to address this and

kept deploying these solutions for various GE divisions and GE customers.. Plaintiff Trivedi's role

was different and there were separate Cybersecurity effort/people( Trivedi didn't mean NOR wanted

to Step in Toes of those cybersecurity efforts/people –do their job instead of what she was assigned

and Trivedi was not assigned on cybersecurity work PLUS TRIVEDI needed scheduling permission

in terms of Time and Tasks to do from PROGRAM MANAGERS for example Ken Paiva  and

General manager who allocate finances in order to do and several people were required to do this

instead of JUST ONE PERSON TRIVEDI)--- I didn't fight and was 100% polite –I was focused on

delivering what GE Boston told me to do..

**59.** … Reema Poddar and all those Boston People came to know that I have joined GE

healthcare in Waukesha…

**60.** Coming back to GE healthcare in Waukesha, WI –as I alleged in my complaint

"Insite exc" was falling apart--with 465 critical defects –and GE retaliated, framed me for not joining

GE healthcare's fraudulent scheme for SIGNING OFF on Test plans that Insite EXC is working fine

(so GE healthcare can release it for SURGEY MOBILE ARM OEC 9900) and other medical

devices—I declined and I wrote to managers that GE is not following quality procedures, it has

security defects, vulnerabilities , GE's massive mountain size EGO was hurt plus I was an

IMMIGRANT WOMAN WHOSE IMMIGRATION WAS IN GE's HAND –exposing GE and it's

managers about such wrongdoing –Despite such a desperate cry, calls, emails and including but not

limited to threats by GE's internal divisions to SUE GE- as GE was not fulfilling it's service contract

obligation –GE signs with hospital and doctors when they buy GE healthcare medical devices---I am

aware of email sent to general manager David Elario  by GE division ( for example X Ray, Surgery

divisions) that they would Sue Global service Technology –GST( I worked at GST division who

provided SERVICE technology and support to GE medical devices)..

**61.** GE healthcare and it's management were NOT at ALL SERIOUS to replace Insite

EXC (replacing it totally with new remote service and control platform..)—…NORE GE healthcare

was working on either fixing Insite EXC critical defects, cybersecurity vulnerabilities, performance,

quality and more. ZERO sense of doing it Immediately or as soon as POSSIBLE>

### 10.3 INSTEAD GE under new initiative by Jeff Immelt was working on developing JUST

**62.** ONE PLATFORM THAT WORKS FOR ALL GE DIVISIONS- at Waukesha, WI – we were

working with GE intelligent platforms in FOXBOURO, Boston< MA , GE Energy, GE digital in Detroit, GE transportation in Pennsylvania and bunch of other division who on daily basis wrote bad, GE internal divisions' infighting, insulting email to each other, fought daily –diverted blame on each other—and wanted to get all or as much as financial funding from GE corporate and also CREDIT, recognition, politics and appreciation etc for developing new platforms –so wanted to show other GE division as stupid and incompetent…and again it was same Immigration attorney handling my

immigration case in Waukesha < WI Jenny Schrager **EXHIBIT 17** [ AND Exhibit 20 (Case 1:19-cv-11862-PBS Document 51-3 Filed 10/10/19 Page 138) ) , 23(Case 1:19-cv-11862-PBS Document 51-3 Filed 10/10/19 Page 150 ) of plaintiff complaint ECF 51) ---ONE REMOTE SERVICE PLATFORM that FITS all GE assets such as GE energy,GE intelligent platforms, GE transportation, GE healthcare medical devices—was not going anywhere for more than two years PRIOR to me joining GE Healthcare and also while I was at GE –it was number of issues and was stagnant --- Reema Poddar and others from GE Boston were driving this one REMOTE platform FITS all GE assets --new initiative --SO GE healthcare thought that along the line after unknown number of years , at one point of time –hopefully we will replace "Insite EXC" when this new BIG platform that works for all GE ASSETS will be developed.

**63.** During Trivedi's First project insite exc integration; Trivedi uncovered cyber

securities issues, quality issues and defects , fraud ---GE manager moved second half my duration at

GEHC but at that time –customers, support group would still call me/email for insite exc support as

no one was helping them and they couldn't do their job –including MRI—I mentioned that to manger

in one on one and manager continued retaliation…second project had lots of infighting , disfunction

and chaos…GE was failing and when lead systems designer were not able to do technical job they

diverted his blame to me..sachin kendale -naresh wrote code that took 20-40 minute on screen to load

1000 devices---second project I was assigned to FIX BUGS/defects –there were more than 250-300

open defects and design issues on second project that Trivedi was assigned to test and FIX…While I

was doing testing again it opened can of worms for which technically incompetent GEHC Greg

Stratton, Nate Davis, Sachin Kendale, Naresh , some staff in India was responsible along with other

GE energy, GE transportation, GE digital..Gregg statton was LSD and he was responsible for

replacing Insite where he couldn't---In code review also I found out was he was doing wrong so he

was exposed.(these emails are part of arbitration record.).he would fight daily on phone with other

GE managers, write abusive emails—Trivedi was sitting right next to him..when sitting next to him

due his such hostile behavior ; Trivedi was disturbed..and right round the time of sikh temple

shooting in MILWAUKEE ( Gregg Statton had valid gun license and he routinely when for

HUNTING DEERS etc); as (mentioned in Mediations statement and letter by immigration attorney to

CEO GE) that Gregg Stratton pointed fingers to me "shaping gun" ---**due to all this I moved my**

**desk temporarily away from Greg as it was unproductive, hospital and imtimidatin..GE**

**manger** made big issue of how it will look and soon put me on PIP…at this same time I was asking

senior management that my manager is retaliation because of my first project insite exc related ,

raising security concerns ..and I should be given a another reporting manager and management kept

denying while aggressively integrating and releasing insite exc..

### 10.4 About H1 B visa, immigration withdrawal while arbitration pending, Thermo fisher job offer, GE & Jenny's email that Trivedi can't use PERM elsewhere so she can extend her H1 B after getting fired

**64.** Jenny **worked on my H1B visa and department of labor certification related to H1 B in 2010 when I was employed at GE, Boston.**

**65. Later Jenny worked on my H1 B visa when I joined GE healthcare in** Waukesha, WI. Jenny also sent Exhibit  (Case 1:19-cv-11862-PBS Document 51-3 Filed 10/10/19 Page 138) ) , (Case 1:19-cv-11862-PBS Document 51-3 Filed 10/10/19 Page 150 ) of plaintiff complaint ECF 51)– permanent residency letter. And Exhibit 17 when my arbitration was pending that she and GE has cancelled my H1 B visa and won't pursue filing I 140 after my PERM in May 2013 was approved as

"a person of extra-ordinary ability". Jenny has shown a cold, pre planned , heartless, illegal unethical actions with similar intent to be part of GE's scheme of retaliation as mentioned.

**66. Because Jenny intentionally and knowingly  didn't file my PERM certificate 365 days before my H1 B visa EXPIRE; so** that I can EXTEND my H1 B BEYOND total SIX years( even when GE fired me illegally and cancelled H1 B). So if Jenny would have filed my PERM with department of labor 365 days before my H1B was expiring even when I got fired by GE in 2013; I could have got my H1 B extended at some other employer.

**From:** Jenny Schrager [mailto:JSchrager@Fragomen.com]
**Sent:** Wednesday, July 03, 2013 2:18 AM
**To:** Madhuri Trivedi
**Cc:** Holton, Adam (GE Healthcare); barbara.tremel@med.ge.com
**Subject:** Re: copy of certified PERM
We need GE's authorization to provide you with this. It is generally not provided to employees. Note that you will not be able to use the PERM with another employer to extend your H-1B status.
Jenny S. Schrager
Partner
Fragomen, Del Rey, Bernsen & Loewy, LLP
7 Hanover Square
New York, NY 10004-2756
Main - 212.688.8555
Direct - 212.230.2883
E-mail - jschrager@fragomen.com
https://www.fragomen.com

From:        Madhuri Trivedi <madhuritrivedi@hotmail.com>
To:          "Holton, Adam (GE Healthcare)" <adam.holton@ge.com>,
Cc:          "jschrager@fragomen.com" <jschrager@fragomen.com>, "barbara.tremel@med.ge.com"
<barbara.tremel@med.ge.com>
Date:        07/02/2013 04:45 PM
Subject:     copy of certified PERM

Jenny,
I don't have copy of PERM.
Would you please email copy of certified PERM.Tnx.

### 10.5 I already had a full time JOB OFFER in June 2013 from Life Technology/Thermo Fisher scientific at Madison, Wisconsin facility working of DRUG DISCOVERY JUST TWO WEEKS after I was fired by GE

**67.** But Life tech/Thermo fisher job got stuck on H1 B visa as there was no time left to extend H1

B and file a BRAND NEW PERM with department of labor by another employer –thanks to

conspiracy by GE, GE manager David Mehring (**EXHIBIT** Case 1:19-cv-11862-PBS Document 51-3

Filed 10/10/19 Page 145  shows  I emailed David Mehring and Nate Davis prior to joining GEHC that

GE must file PERM 365 before H1 expires), GE architect Nate Davis, Jenny and Fragomen.

**68. Life Tech/Thermo Fisher job related true and correct excerpts of emails for H1 B visa transfer:**

From: Madhuri Trivedi [mailto:madhuritrivedi@hotmail.com]
All visa petitions and PERM attached.
From: madhuritrivedi@hotmail.comTo: bryan.nguyen@lifetech.comDate: Mon, 29 Jul 2013 13:14:51 -0500
Sending visa docs.. Will send anotehr email with rest. Could I be in touch with your immigration people. Tnx.

From: Nguyen, Bryan [mailto:Bryan.Nguyen@lifetech.com]
Sent: Tuesday, July 23, 2013 1:27 AM
To: Madhuri Trivedi
Subject: RE: madhuri
If you're willing….can you provide our legal with the following information?  Thanks.

a.     All of her H-1B approval notices
b.     A copy of her most recent H-1B petition.
c.      A copy of her PERM labor certification, if available.
d.     A copy of her I-140 receipt or approval notice, if available.
e.     A copy of her I-485 receipt notice, if available.

-Bryan
From: Nguyen, Bryan [mailto:Bryan.Nguyen@lifetech.com]
Sent: Saturday, July 20, 2013 5:17 AM
To: madhuritrivedi@hotmail.com
Subject: RE: madhuri
Madhuri,
I'm sorry but my phone has no more battery life. I will forward this to legal and will wait for their approval.
-Bryan

From: Nguyen, Bryan [mailto:Bryan.Nguyen@lifetech.com]
Sent: Friday, July 19, 2013 8:52 PM
To: madhuritrivedi@hotmail.com
Hi Madhuri,
Our legal team is educating us on the transfer process. When did you leave GE exactly?
-Bryan

### 10.6 **My First Project "Insite EXC" , manager's review where Dave Sallis[1] wrote that it is GE's problem. Also GE fired Dave Sallis just a month ( April 2014)before my arbitration hearing on May 2014…**

**69. EXHIBIT 21 hearing transcript of arbitration – first 9 pages- filed  by GE attorney- show that "Sean Scillen Quarles and Bradley attorney who represented GE at arbitration- he knowingly didn't provide ; Trivedi's performance review by Dave ; EXHIBIT (Case 1:19-cv-11862-PBS Document 51-3 Filed 10/10/19 Page 149);** where manager Dave Sallis "gave good rating in my performance review and wrote that it is GE's problem"-Sean didn't give this document during discovery(otherwise I would called Dave Sallis as WITNESS in hearing—and gave on the day of hearing –seconds before hearing began.."



### 10.7 **Holding that the "assignment of a disproportionately heavy workload" can constitute an adverse employment action);"**

**70.** Valenti v. Massapequa Union Free School District, No. 09-CV-977 (JFB) (MLO), at *5-7 (E.D.N.Y. Feb. 5, 2010) ("Little v. NBC, 210 F. Supp. 2d 330, 384 (S.D.N.Y. 2002); see also, e.g., Feingold v. N.Y., 366 F.3d 138, 152-53 (2d Cir. 2004) ")

**71.** Trivedi was right in the beginning of her job  at GEHC when she asked Dipti Patel for testing related matter for Insite EXC and Dipti replied with email that she should be fired and David Mehring and HR manager Mike Truman made a Big deal out of this email, started threatening---

---

[1] GE attorney at arbitration withheld performance review that Dave Sallis gave and never submitted that during discovery Instead as stated in complaint, withheld till the day of hearing--despite my objections at hearing arbitrator didn't take any action, impose sanctions...Trivedi could have called Dave Sallis as WITNESS for hearing if GE would have given that performance review---this shows that GE was obstructing and arbitrator didn't give

Trivedi was assigned unusual high workload (As **EXHIBIT** **Case 1:19-cv-11862-PBS Document 51-3 Filed 10/10/19 Page 176**) by GEHC manager David Mehring and project lead **;scheduled 23 days**

> **of converting 1000 page test document written for Windows operating system related to insite EXC –>develop brand NEW test procedure equivalent of all tests mentioned in 1000 page document to work on Linux operating system**
> **to convert into test procedure that would work on Windows and linux operating systems**

### 10.8 Retaliation and fraudulent integration of InsiteEXC when Trivedi reports to management, executive Dave Elario who further threatens to take Trivedi off job and more aggressively releases Insite

**72.** Plaintiff suffered disparate treatment, retaliation harassment including sexual in nature for not joining GE's fraud scheme. Plaintiff Trivedi was working on a project "integration of Insite2/Insite EXC on surgery platform"; Ms. Trivedi found and investigated issues of product being vulnerable for security attacks/hacking. Security vulnerabilities were agent was accessible by multiple ports.

**73.** When I pointed out deficiency on systems; manager/leads got upset and treated me discriminatory. Other employees who were doing this kind of work were not held accountable. They were not making waves. I was retaliated for coming out/coming forward. Manager differentiated between them and Ms. Trivedi in treatment when it came from a minority woman who is a hard working engineer. Ms. Trivedi was put on a PIP to **improve relationship** There are several factual evidences including but not limited to that Ms. Trivedi was working with dedication to quality, technical rigor, Inclusiveness and clear thinking.

**74.** When I requested a meeting with Dave Elario; he did not come as her mother got sick he said. I sent information to him regarding what was happening via email. After sometime to find a solution; in early February I requested Dave Elario's boss Mike Swinford to meet and help. Mike sent Dave Elario to meet with me. Dave Elario got very upset at me as I went to his boss and told me that

even if his boss Mike wants to transfer me to another group/manager, Dave E. won't let that happen and he will advise Mike Swinford against that and against supporting me. Also Dave Elario threatened that he will take me out of job. (Ms.Trivedi thought there would be an open door policy.) After a week of this they put me on a Performance improvement plant(PIP). During PIP also managers lied of what we discussed my progress, manipulated discussion and kept harassing me; beating me up no matter what I did..I was also all burnt out and exhausted- mentally, emotionally and physically due to their torture and such disperate treatment, retaliation.

**75.** My email to Dave Elario with highlights paragraph relevant this cause of

actions and allegation here. And Dave Elario's response email that I work on my relationship skills.

**EXHIBIT (Case 1:19-cv-11862-PBS Document 51 Filed 10/10/19 Page 65 –68  paragraph 162 -165)**

**76.** Despite internal GE groups writing emails to Dave Elario that they can't fulfill

contract obligation that they sign with customers( private , public and government hospitals , doctors who use these medical devices). I Madhuri also informed managers/Dave Elario about these issues. Dave Elario-General manger at GE bragged how aggressively GE is integrating Insite

Exc( name of defective medical device) in couple dozen medical device types. This was audio video recorded during quarterly internal townhall for all employee meeting. Despite all these; He and GE kept integrating, installing and releasing into production and to costumers(hospitals) on all kinds of medical devices(aka ultrasound,); ..And were proud to finish modality integrations on as many modality as fast and as quickly and as they can. While beating Madhuri and working on systematically to get rid of her. Even after Dave Elario was made aware of issues and that it is misleading, false and omission by not disclosing these issues as well as GE was saying that it was HIPPA-HITECH complaint but Insite EXC lacked adequate controls for this; --most critical is Insite EXC failed security tests from DAY 1 and knowingly GE released it on all kind of medical devices for years..It is Conspiracy and false case made against Madhuri to end her employment with

GEHC . When GE kept harassing me when I was doing my job, tests failed and as GE knew defects but knowingly didn't tell me about them instead tortured me that I am slow and stupid. but the truth was I did understand but they were technically incompetent and were doing fraud by concealing these material defects to me, customers and public- stakeholders and stockholders, regulator)

10.9 **With Second project RSVP GEIP project , there was lots of stress and tension between team leads/managers/members and overall..as there were three companies-GEHC, GEIP and GE Energy; hence different approaches, directions, priorities and it was not working well(even before Madhuri joined the team)**

**77.** In Second project ;GE Digital manager Joe Purcell in Detroit and GE Digital team lead Barry in Detroit had concerns/conflicts with/about GE healthcare and Greg Stratton.

**78.** Mohieddine Barhoumi included me in defect review meeting where all leads/mangers/test engineers involved to help defect fixing . My contribution was impressive in those meeting and overall defect fixing. Joe Purcell, Barry and test engineers from GEIP appreciated and thanked my approach, communication, collaboration and technical skills. Test engineers wanted to do what Madhuri was suggesting and they were delighted. In Second Project Joe Purcell, Barry also gave excellent performance review including soft skills and relationship but GE healthcare manager David Mehring and GEHC managers swalloped that and excluded any positive review I got about my "getting along" and "relationship" ..

**79. How CORRUPTLY JUDGES, ALJ, ARB issue order..As stated in Case 1:19-cv-11862-PBS Document 51 Filed 10/10/19 Page 2**

**"Sachin and other were responsible for 200 defects in development for a second project Trivedi was assigned to & told to fix defects sachin & other created—this is not illegal, hostile but violation of human right and pure retaliation of my whistleblower activities)"**

✓ **This same 200 defects on second project was part of ; Trivedi reply to GE brief at first circuit - Case: 21-1434 Document:**

**00117794269 Page: 20-24 Date Filed: 10/05/2021 Entry ID: 6450573.**

✓ **I have attached Trivedi reply brief as EXHIBIT 10 in this SDNY complaint.  Despite this fact – GE framed me as "NO GETTING along even on second project & put me on PIP to improve my skills.**

**From:** Trivedi, Madhuri (GE Healthcare) **Sent:** Wednesday, May 15, 2013 4:41 PM**To:** Mehring, David T (GE Healthcare); Conrath, Carl (GE Healthcare) **Cc:** Khan, Ayesha (GE Healthcare); Trivedi, Madhuri (GE Healthcare) **Subject:** RE: Coverity errors and compilation warning

> But when I joined old RSVP; the day I joined there were **200 plus defects/redesign work**..all these work was done by GEHC/GEIP engineers/architects/leads/LSDs.. …They are fine even if they do such work…and as they/managers failed, Greg yelled and all made it my inclusiveness thing and made up clear thinking issues..After joining RSVP I did integration testing and feature work..I took all the directions they gave, followed all review

**From:** Trivedi, Madhuri (GE Healthcare) **Sent:** Wednesday, May 15, 2013 1:07 PM **To:** Mehring, David T (GE Healthcare); Conrath, Carl (GE Healthcare)**Cc:** Khan, Ayesha (GE Healthcare); Trivedi, Madhuri (GE Healthcare) **Subject:** FW: Coverity errors and compilation warning**Importance:** High

These are the defects……I am working on server integrations so I haven't been involved in it at all.

But it's to show how project is managed may be developers need more time to complete their task..something else ..I don't know..

But later they should not bring me into the picture as I am not even involved(zero contribution of mine in these defects…)

Best,

Madhuri Trivedi

Software Engineer

**From:** Bayi, Prasad (GE Healthcare) **Sent:** Tuesday, May 14, 2013 3:45 AM **To:** @HEALTH GST-ENG-RSvP**Subject:** RE: Coverity errors and compilation warning**Importance:** High

Dear Team, Coverity defects are piling up. Waiting on individual to comment on from your respective developments by eod today. Do let me know if we need to update the rules with reasons so that we can review and make necessary changes.

http://olc-app-dev-04.am.health.ge.com/jenkins/view/RSvP/job/RSvP/



**80. I believe it is marital discrimination as well as I am divorced so illegaly and**

**pointing finger based on "relationship"---spouse of GE Executive lacked technical** executives

and were driving product quality at GEHC..GEHC architect Ofir Dahan fought with GEHC managers

including my managers that "why these technical incompetent spouses of GE managers and

executives are driving quality of medical devices when she/they have no clue what she/they are

doing". Ofir resigned from GEHC in April 2013(one month before I left)..GEHC managers Carl

Conrath and David Mehring lied that Ofir was fired for not getting along and fighting but Ofir told

me months back that he is leaving GEHC and ofir did RESIGN but GEHC manager Carl Conrath and

David **M**ehring thought that Madhuri wouldn't know true reason why Ofir left so best is to LIE..

**81. During Second project other GE division (such as GE corporate, GE Energy,**

**GE Transportation, GE digital)project leads and managers were happy with me but GE**

**healthcare Wisconsin manager continuously retaliating and harassing me ---for no reasons –**

**diverting their failure and blame onto me..**

**82.** GE PRETEXT explanation is that I was transferred into second project);

into which GE managers all across country and in outside of USA where writing abusive emails,

verbal abusiv**e phone calls, infighting and blaming each other –were totally dysfunctional with**

44

**1% productivity** as for two plus years didn't produce anything. During my last month at GEHC,

GEHC was looking **to BUY READYMADE Software/firmware from OUTSIDE Company.**

10.10          the PIPs and similar criticism could qualify as adverse actions where they materially impact the terms and conditions of the plaintiff's employment,

**83. the PIPs and similar criticism could qualify as adverse actions where they materially impact the terms and conditions of the plaintiff's employment, as Trivedi was put on PIP**

**84.** *see Tse v. UBS Fin. Servs., Inc.*, 568 F. Supp. 2d 274, 283-84, 288 (S.D.N.Y. 2008) (denying summary judgment because jury could have found performance plan impacted terms of employment where, among other things, it laid out revised, objective performance targets for plaintiff to meet, or risk termination), Plaintiff allege sufficient facts that demonstrate that the PIPs materially impacted the terms and conditions of his employment.

Pimentel v. City of New York, No. 00 Civ. 326, 2002 U.S. Dist. LEXIS 8454, 2002 WL 977535, at *4 (S.D.N.Y. May 14, 2002). See Bernheim v. Litt, 79 F.3d 318, 325 (2d Cir. 1996) (holding that a change that harms a plaintiff's reputation, opportunities for advancement, and earning potential may constitute adverse employment action); see, e.g., Casale v. Reo, 522 F. Supp. 2d 420, 2007 WL 3353217, at *6 (N.D.N.Y. 2007) (holding that an adverse employment action has occurred even where  [**18] it is "likely" that the action will have a "material impact" on the employee).

10.11          Below press release shows that GE CEO Larry Culp HIMSELF has admitted that GE has infighting problems and problem of its products' quality…

**85. Press release:---**

https://www.cnbc.com/2019/05/22/reuters-america-update-2-ge-needs-to-end-infighting-fix-quality-tighten-management-ceo.html

UPDATE 2-GE needs to end infighting, fix quality, tighten management -CEO
Published Wed, May 22 2019 2:49 PM EDT Reuters    Alwyn Scott
(Recasts with comments about fixing GE's internal problems)
May 22 (Reuters) - General Electric Co, once seen as the epitome of corporate greatness, is trying to end infighting between its divisions, tighten up management and fix quality problems in its products, Chief Executive Officer Larry Culp said on Wednesday.

*****************************************************

**86. Plaintiff  Trivedi alleges here in this complaint that these two factors play important role**

**in GE getting rid of her while Madhuri was doing her job. There was no issue of my poor skills**

**–the issue was my insite exc speaking up , GE's failure on second project to develop product**

within all GE divisions---Larry culp himself recently said that GE has to improve quality and stop infighting

### 10.12 GE's wrongful termination, SEC fraud and all allegation has caused continued HARM that have caused WORSENING CONDITIONS

### 10.13 Below events I did as a volunteer at vlab- several known companies pitched at vlab when they were new/smaller such as google( to give idea about vlab) Security: High Stakes for Billions of Devices

**87.** I volunteered at vlab. Since GE harassed me and messed up with me because GE was recklessly putting medical devices on internet. And recklessly putting technically incompetent people on -IOT platform

**88. My father died on Feb 22, 2017(India time) & Feb 21(USA time) in India time/ in forest when he went for pilgrimage. He was traveling in a BUS not by foot though..**

**89. On Feb 21 2017 in USA, I had organized in a team IOT security high stake of billions of devices event as shown below at 6 pm PST (event was fully packed.).**

**90. As GE and Jeff Immelt connecting all kind of GE assets on internet ;VLAB group wanted to raise this concern before it is too late as hearing my STORY..So we did this event..**

**91.** At the networking session an hour prior to this event –there was a GE digital manager from San Ramon who was attending this event(she bought ticket).  I was standing in a group and she came and had little chit chat with group.

------------------------------------

**As event started my family called me from India and informed me that my father has died--I didn't put my phone on silence and it was fully packed DARK auditorium...panels were introduced..and as phone was ringing--someone from back raw(it was a guy's voice ) said that ''he is gone''.....these sentence makes me so restless. so someone knew that my father is dying and is dead in india while event for exposing GE was ongoing...I left the event , talked with my**

family on phone and went to home crying ........so this same date of IoT event and my father's death is mind boggling.

## IoT Security: High Stakes for Billions of Devices
**February 21, 2017 6:00 p.m. to 8:30 p.m.** https://vlab.org/events/iot-security-high-stake-billions-devices/

The speed of Internet of Things (IoT) adoption is creating opportunities for startups developing IoT security solutions. Many industries such as healthcare, energy, automotive, and consumer products are being transformed using insights gained from the real-time data that IoT provides. As new online devices continue to be added at exponential rates, the frequency of sophisticated cyber attacks targeting consumers, businesses, and public services is also increasing.

Startups are competing against large corporations to establish themselves as leaders in IoT security. And the rewards leading the charge to protect against security breaches, hijacking, and individual privacy concerns is enormous. According to KBV Research, the IoT Security market expected to reach $29.2B by 2022.

- Is the Internet of Things making us more vulnerable to attacks?
- Given the anticipated growth in connected devices, will security solutions be able to keep pace?
- What are the biggest challenges for startups working on IoT Security?

**92.** After my father's death I kind of lost healthcare mojo...and my startup was in healthcare...

**93.** After my father's death I stopped volunteering at vlab as it gave me bad memory--

10.14 **GE is ENRON like.**

10.15 **GE's solutions policy which is ADR- mediation, arbitration and it states Dodd Frank, quitam, SOX and other excluded claims as stated above..but none of these attorneys told me anything regarding this Law firms attorneys never mentioned my rights and laws related to GE violations**

**94.** and Law firms, attorneys' plaintiff retained with PAID FEES didn't provide legal advice nor brought up to GE, mediator, arbitrator-- SOX, Dodd Frank, Quitam, NDDA DOD and several other laws, Whistleblower protection laws. Nor the ones who did free review.

*95.* Jeff Goldman sent a letter to GE but he was just an immigration attorney so it is understood that He can't bring up employment rights.
**96.** But other attorneys who I paid were. All of the below mentioned attorneys READ –
CROSS LAW Firm in Waukesha, WI(**www.crosslawfirm.com**)I paid this law firm .Cross law firm represented me at mediation and prepared mediation statement and sent to GE.Cross law firm attorney should lose their attorney license and disbarred for what
they have done; they didn't bring up any laws ,whistleblower rights other than simple discrimination. They didn't even mention retaliation after reporting discrimination, unlawful employment practice

(42 USC § 2000e-3(a) )or anything. Law they cited was 42 USC § 2000e-2(a)(1)..Hence their mediation statement was flawed and they intentionally DID THIS. Later Cross law started threatening me to settle with GE by taking one month salary (I have those emails) and waive all my rights and claims against GE. Cross law firm left.**David Rosenow told me that as GE is his neighbor in little town Waukesha, WI ; He won't mention that GE was doing fraud in my mediation statement.** (cross law firm was fired by me) **after they forced me to settle and even didn't bring any claims.** I did mediation alone.  Cross law firm didn't bring up Quitam claims in mediations statement , SEC Dodd Frank act Section 718, 10 U.S.C. §2409  Subpart 203.9,SOX –OSHA,  obvious as black and white clarity **that they were SOLD**. (Other attorneys were not willing to work on alternate dispute resolution as they litigate in court and hated GE ADR plus said that they are not experts etc etc.; so I was stuck with Cross law firm as clock was ticking)

### 10.16 Foley and Mansfield (foleymansfield.com)

**97.** I paid this law firm for all the work they did. Later I contacted Foley..I told them for Quitam matter..Look at the letter they sent to GE on July 16,2014 ..They also didn't bring Dodd Frank act whistleblower, SOX, any  claims mentions here when they sent a letter to GE, later negotiated with GE nor afterwards. Immigration right ( ) –was included in a leter to GE because I emailed them about this as I read.

**98.** Foley didn't  mention which to me appears as (intentional omission or /and negligence) on any steps related to OSHA complaint, SOX whistleblower even though I gave them what I submitted to OSHA, OSHA complaint and OSHA response. I wrote an email to Seymour Mansfield in 2016 –that law firm failed to provide me legal service and bring up laws..

**99.** I also sent arbitrator final award to them in August 2014 (to entire Mansfield law firm team- David Haron, Andrew Shedlock and Seymour Mansfield along with other) and they didn't provide any guidance on going to court after arbitration award. Also Foley didn't mention/bring up any rights related to appealing arbitration or going to court .And as my lack of legal knowledge I relied on them and assumed/believed that there was nothing I can do..But later I learnt than one can go to court shortly after arbitration to challenge arbitrator award.

### 11 GE said that Diane Smith investigated & interviewed, She selectively interviewed those whom; she could gather document

48

### against Trivedi and excluded those who will say positive things about Trivedi..

GE said that Diane Smith – HR manager investigated & interviewed- But Diane didn't interview all the individuals Trivedi requested such as Dave Salis, Debbie Babula, Joe Purcell, Barry Turner, Ofir Dahan. surgery manager in Saltlake city –UTAH, Glyn Livermore, Mathews Matson ,InsiteEXC customer Missy Polak, InsiteEXC global service leaders( John Farrow, Peters Evelyn,Charles Pollum, Jon Love,Sara Zieher, Sal Astarita)She selectively interviewed those whom ;she could gather document against Trivedi and excluded those who will say positive things about Trivedi..This was a fake internal investigation just to generate some data. MA court can ask GE to submit whom Diane interviewed & what she looked. She was already employed by GE. ONLY outsider with no financial, social, networking or other interest can do SOME INDEPENDENT INVESTIGATION which Diane didn't do. Daine did BEST to COVER up FRAUD as it was her job as GE employee.

### 12 GEHC Chief technology officer Mike Harsh told me on phone in 2017( he came to my arbitration hearing in 2014 and after hearing he left GE after 35 years of service.) NO ATTORNEY will bring up laws that in my situation as GE pays a LOT to attorneys

### 13 Trivedi came to know about mandatory arbitration , when immigration attorney Jeff Goldman sent a letter to GEHC services CEO Mike Swinford; and GE attorney replied that Trivedi is bound by arbitration

**100.    Portion of Email-------------**
**From:** Stekloff, Neil (GE Healthcare) [mailto:Neil.Stekloff@ge.com]
**Sent:** Wednesday, August 14, 2013 11:51 AM
**To:** Jeff Goldman
**Subject:** RE: Madhuri Trivedi

**CONFIDENTIAL – FOR SETTLEMENT PURPOSES ONLY**
Mr. Goldman:

I am in receipt of your letter to Mike Swinford regarding Madhuri Trivedi.  As I suspect you are aware given that I was cc'd on your e-mail, I am labor & employment counsel for GE Healthcare.  You can direct all further correspondence regarding this matter to me.
…………………………………………..
I also must point out that Ms. Trivedi agreed, as a condition of employment, to GE's alternative dispute resolution (ADR) process, called Solutions.  See her signed Solutions acknowledgment, attached, which requires binding arbitration as its last step (Level IV).  The step before arbitration, Level III, is non-binding mediation before a neutral mediator – which GE pays for.
***********End of email here

## 14 Trivedi filed EB1 person of extra ordinary ability employment based -petition with USCIS; when arbitration was pending  - as Jenny canced H1 B while mediation was pending

**101.**    After GE terminated me illegally I filed EB1 –person of extra ordinary ability employment based -petition with USCIS(govt. agency);along with Harvard medical executive creating job for me at Harvard (job was after I get my EB1 approved as earlier Harvard said that they won't do H1 B ) ; and my innovative startup orangehealth for peer to peer crowdsourced support , management and actions for health conditions---and along with other credible evidences –I also mentioned National interest waiver EB2 category in that petition; but USCIS declined …

**102.**    Since I used up almost all of my H1 B time and there was no time left for another employer to do PERM with labor department in order for me to get further H1 B extension..Life technology/thermo fisher scientific offered me fulltime job just two weeks after I was fired from GE but got stuck at H1 B level as I mentioned I had no time on H1 for employer to do PERM.

**103.**    GE immigration attorney and HR email that GE canceled my H1 B visa while mediation and arbitration is PENDING. And won't pursue any immigration I 140 paperwork.(EXHIBIT 17) –same Jenny Schrager –Mean fragomen lw firm attorney.

Trivedi filed Mediation statement through Cross Law firm(Waukesha, WI).
GE offered ONE MONTH salary-that's it-nothing related to immigration at mediation in return for plaintiff to waive all her rights/claims/cause of actions against GE. Plaintiff declined to settle at mediation.
Trivedi filed arbitration complaint with American Arbitration association.
(**EXHIBIT** Case 1:19-cv-11862-PBS Document 51-3 Filed 10/10/19 Page 26). She was pro-se / representing herself ;and prepared arbitration statement.

Arbitrator was insulting and continuously cutting me off from asking questions during hearing ..when manager did perjury on second day morning of hearing I quit arbitration hearing and GE finished it alone. .Arbitrator didn't rule in my favor.

After that Foley and Mansfiled sent a letter without bring up laws as I mentioned earlier in this lawsuit. I wrote an email to Seymour Mansfield in 2016 –that law firm failed to provide me legal service and bring up laws.

Sean Scillen Quarles and Bradley attorney who represented GE at arbitration- he knowingly didn't provide EXHIBIT Case 1:19-cv-11862-PBS Document 51-3 Filed 10/10/19 Page 149; where manager Dave Sallis "gave good rating in my performance review and wrote that it is GE's problem"-Sean didn't give this document during discovery(otherwise I would called Dave Sallis as WITNESS in hearing—and gave on the day of hearing –seconds before hearing began and I have that in hearing transcript.

Neil Stekloff ; GE's internal counsel  for employment and labor(EXHIBIT (Case 1:19-cv-11862-PBS Document 51-3 Filed 10/10/19 Page 19 -24  of 201 )) was involved. As a lawyer he also violated obstruction of justice.

17 CFR § 205 and (15 U.S.C. 7245) Case 3:15-cv-02356-JCS Document 132 SEC amicus brief on attorney code of conduct Section **307 of** the Sarbanes-Oxley Act of 2002 (the "Act") (15 U.S.C. 7245)

It was GE counsel's legal duty to report SEC violations but Sean Scullen-quarles and Bradley, Neil and all others teamed up to cover-they should not be practicing law anymore.

## 15 GE declined government arbitrator; who told that he will RULE in Plaintiff's FAVOUR if selected.

**104.**    Peter Davis- a chief arbitrator/legal counsel at Wisconsin Employment relations commission. peterg.davis@wisconsin.gov .He mentioned to me on phone that if he is selected as an arbitrator for my case with GE, he will make sure to fix my immigration and he will rule in my favor. He told me this on Dec 2013 that I is willing to talk about this to anyone...GE attorney declined via email (**EXHIBIT 20**) to have him as arbitrator (GE argued that if Peter is selected then arbitration documents would have become public documents as he was a PUBLIC ARBITRATOR hence GE is declining).

## 16 In Arbitrator's award(EXHIBIT B in ECF 28 - Case 1:19-cv-11862-PBS Document 74-2 Filed 10/24/19 )in district of Massachusetts lawsuit declaration by Bruce Falby ; on page 50 arbitrator Peter MEYERS mentioned that Trivedi hasn't given testimony herself about hostile environment ( based on this statement by corrupt arbitrator – entire award in favor of GE

### must be vacated)(and all judges also MUST be jailed for dismissing Trivedi's claims and taking judicial notice of arbitrator award)

**105.**

The competent and credible evidence in the record does not support the Claimant's allegations that she was subjected to a hostile work environment. There is no testimony, even from the Claimant herself, that establishes that the Claimant experienced any treatment that may be deemed hostile, discriminatory, harassing, or otherwise inappropriate because of her gender and/or national origin. I find that the Claimant therefore has failed to establish the most fundamental element of her claim of a hostile work environment, and that claim therefore must be denied in its entirety.

16.1 **Deposition of Bill B and Madhuri ; where Madhuri testified about hostile work environment. Arbitrator didn't entered Bill B deposition into arbitration hearing as EVIDENCE. Arbitrator didn't entered Trivedi deposition into arbitration hearing as EVIDENCE.**

**106.**                                        In Bill B deposition she alleged and examined Bill B that she suffered hostile work environment, gender based. Following excerpts

**Page 163**

Q Do you remember when we broke up with GEIP,Greg got angry at me and he was kind of hostile. I was concerned about this wholebehavior that he did. And it was in September, 2012, right after Milwaukee temple shooting, which happened in August, 2012. And you -- I told you to -- I told you about this briefly, and you mentioned that Greg was kind of not speaking for two, three days in all of your coding meetings, and he was just -- something was going on?
MR. SCULLEN: Object as compound.

**Page 164**

Q And that he was -- Because of this disagreement in requirements he had with GEIP, he unnecessarily got angry at me, and basically he was hostile. And I expressed --
And you mentioned that he was not talking in all of the meetings where you were present?

**Page 165**

Q Do you remember you -- and I was concerned that -- I was really concerned about me sitting next to him and his hostile behavior, and you kind of mentioned that he's a dormant volcano. Not kind of, but –

**Page 153**

The main concern was how the females were perceived by peers and manager, as well as
measured in terms of their behavior, communication and soft skills. And the
training was geared towards educating men and women on the differences that -- how men
communicate is different than how female communicate, and both sides should understand
these differences and work on accepting and basically working it out?

# 107. Deposition of Trivedi

**In her deposition she testified that she suffered hostile work environment, gender based.
Following excerpts**

page 140

Greg was behaving hostile manner, so I was stressed………………

Page 162

And then he's stone, he was very angry, he was already showing intimidating and
hostile behavior prior

Page 145

A Hostile. He was just being hostile.

Page 146

A I did say it about his hostile behavior, hostile and unprofessional behavior.

Page 147

A I said he's threatening me to take me off the Project

Page 175

A You can see that, you know. As a woman when you are in a threatening situation -- you are
not a woman, so you wouldn't understand how  woman instinct work.

Page 184 -185

So I said all those things that you are diverting blame. I am scapegoat. You are not
being objective, and it's clearly a gender bias.

Q What else did you discuss during that meeting?

A I asked him that -- I said that it was discriminatory, I was treated less favorably.
Those individuals are responsible for negative and poor product quality. I said that I was
discriminated and retaliated for all of the concerns I raised. And I also said that because I was a
woman, Dave Mehring was showing a gender bias and stereotype in my performance rating.
Successful and talented women are perceived and measured by peers and manager as
less liked and not good team player. It's common theme.

So I said that you picked up something for me, but you picked up a wrong thing
because this is a very common phenomena going on for women. And he said, Oh, so you mean
that, you know -- He was kind of -- He got defensive. And I said in that meeting about gender bias,
discrimination and retaliation. And it was partly retaliatory to me complaining about Greg's behavior
and his hostility. And also GEIP project, we broke up with them, so they wanted a scapegoat. So it
was easy for them to divert blame.

Q Who blamed you for the breakup of GEIP and GEHC?

A Dave Mehring said the RSVP was your second chance.

Q And you understood that to mean that you were being held responsible for the decision by
GEHC to break up with GEIP?

A Partially. It was blame game.

**Page 255**

A He did tell me that you bite your tongue.

Q Is that a feminine trait?

A And he said that sometime you -- I mean, when he said Greg is a guy, after shooting thing, that was, you know -- He's a guy. You know, we all know that guys do that. And so that's another thing.

Q You would agree that you were asked to work on communications, interpersonal skills, including establishing stronger team dynamics, conflict management negotiations?

A He just vaguely, as I already stated, that manager did not clearly communicate, growth value issues, which means the soft skill issues, with documented examples of specific behaviors that didn't meet expectation. I met Nicole Boyle after my mid-year review, and she observed the same thing that Dave Mehring is saying of criticizing your performance, about your communication

page 259

Q Did you tell Nicole Boyle about the incident involving him pointing a gun two feet with his fingers --

A Briefly -- I said briefly, and I said -- I had been told that he's a dormant volcano.

Page 260-261

A She didn't, but she said that it's guy versus girl thing. And I said Dave Mehring said you are overreacting. So she said, Okay, if Greg does this, it's fine. Madhuri has a problem.

That's guy versus girl thing.

She was upset because she was not getting promoted as a general manager, and they were interviewing for a general manager. They eventually hired Josh Hanna, so she said that they are already interviewing other people. They are not promoting me, even though I was

Q I thought you said she was a GM.

A She was acting GM. So she said that the gender diversity training is geared towards retaining female engineer. The training is for all GE Healthcare employee, and it's about how peers and managers perceive and measure female engineer about their soft skills, behavior and communication.

Because men and women are different --how they communicate is different, and there should be -- It's a big problem right now. I have given you some documents. It's hard -- hard evidence all across, and that's what it is.

Page 59

Q But what is your being more qualified have to do with the fact that you're both women?

A Women, but she has a green card, so that's a huge difference. We both are not in the same category.

Q So why would she need to undermine you here based on the fact that you didn't have your green card status?

A Because if she starts making issues about me,company will eventually get rid of me.

**Page 156**

Q So do you agree that the manager unconsciously reflected -- my case manager unconsciously reflected a stereotype when they judged my performance saying that she's good at her job,

but, well, she's just not well liked –

16.2 **Because despite Trivedi testified multiple times in her testimonies about hostile environment she suffered including but not limited to even at hearing; same for being a woman, based on her gender ..**

16.3 **Because I have stated even several times in motions at MAD court; EXCERPTS OF DEPOSITIONS where I did testified that I was subject to hostile environment and gender based**

16.4 **EXHIBIT (Case 1:19-cv-11862-PBS Document 51-4 Filed 10/10/19 Page 1-8 )and EXHIBIT (Case 1:19-cv-11862-PBS Document 51-5 Filed 10/10/19 Page 1-7);**

where I emailed GE CEO Jeff Immelt, GEHC CEO John Dineen(later John became CEO of GE), and

GEHC services CEO Mike Swinford ; that "Trivedi was subject to Hostile and unprofessional

treatment by co workers-manager" === **these emails were sent prior to ARBITRATION hearing**

**in 2013.**

**NOTE:-**When Trivedi left hearing due to arbitrator's hostility and all on second day ; GE and entered Ex Parte evidence into hearing..I never threw PIP at David Mehring; it is one of the many lies/perjuries GE and GE managers and GE attorney has done.
  I request that court ask/ORDER GE to submit TRUE review about who said that I was not getting along—and why and when ;specifics-their level of interaction with me ..instead of throwing that I was not getting along.

## 17 White House Office of Science and Technology Policy (OSTP)director Dr. John Holdren referred my matter to General counsel at White house...

**108.**   ---------- Forwarded message ----------
From: Leonard, Rachael L. EOP/OSTP <RLeonard@ostp.eop.gov>Date: Tue, Sep 13, 2016 at 1:40 PMTo: "Madhuri Trivedi>Dear Ms. Trivedi,
Thank you for your note, which Dr. Holdren referred to me. OSTP is a small agency that addresses science policy. OSTP does not address immigration or consumer fraud issues. For those topics, you may wish to contact:
The Department of Homeland Security, Office of the Inspector General:
https://www.oig.dhs.gov/index.php?option=com_content&view=articl
e&id=51&Itemid=133

The Department of Justice, The Executive Office for Immigration Review:
https://www.justice.gov/eoir , or
The Consumer Products Safety Commission: http://www.cpsc.gov/
Best regards,
Rachael Leonard
General Counsel

Office of Science and Technology Policy

**18 FDA FOIA response has communication from Quitam division attorney at DOJ San Francisco...Page 15 ... FOIA gave only email DOJ attorney sent to FDA and NOT what FDA responded..US attorney said ONLY FDA investigates QUITAM and then they bring charges – attorney office do not have investigative resources nor they ever do that..**

**109.    From:** Smith, James – OCC **Sent:** Thursday, February 18, 2016 8:56 AM
**To:** Myers, Charles F
**Subject:** Question ref: complaints about a GE software interfacing program
Charles—

The US Attorneys Office in San Francisco contacted me yesterday asking about whether there had been an FDA investigation into allegations of safety issues with the GE Insite Exc, which appears to me, from the GE Healthcare website information, to be some sort of software which allows a GE tech to remote into ultrasound displays to help troubleshoot issues with those devices. The allegations come from someone who contacted the USAO and asked them to investigate GE Healthcare for health care fraud based on the purported problems with the GE Insite Exc.

I've attached (below) what appears to be an email from you to the complainant, Madhuri Trivedi, from February 2014, as well as what appears to be a letter to the same person from you in April 2015 about the complainant's reporting of purported problems with this software.

I could not find anything in the Device Master Database for this software, so I am wondering whether it is even considered a medical device, or if it is cleared as part of some other device made by GE Healthcare.Do you have 10-15 minutes to discuss this today?

Jim Smith
Senior Counsel
Office of the Chief Counsel
US Food and Drug Administration
White Oak Bldg. 32
Room 4374
10903 New Hampshire Avenue
Silver Spring, MD 20993-0002
Telephone: 301.796.8718
cell: 202.510.4283
fax: 301.847.8618
james.smith@fda.hhs.gov

**18.1 FDA general counsel email , March 2015- "Typically we do not share any info involving an open investigation. Is this matter different?"**

**110.    From:** Woods, James L.
**Sent:** Monday, March 16, 2015 2:56 PM
**To:** Pastel, Mary; Myers, Charles F; Ochs, Robert
**Subject:** FW: Information about GE Healthcare
Typically we do not share any info involving an open investigation. Is this matter different? Thanks

**From:** Madhuri Trivedi [mailto:mcis99@gmail.com]
**Sent:** Monday, March 16, 2015 2:32 PM
**To:** Woods, James L.
**Cc:** Myers, Charles F
**Subject:** Re: Information about GE Healthcare
Forgot to CC Mr. Myers in previous email..
Okay. I have a question: Can we know what is the status/details of this investigation. It would help QuiTam attorney for the analysis related to it.Thanks.

## 19 FDA December 15, 2013 ; under process Trivedi whistleblower complaint

**111.     From:** Kangoma, Prince P* **To:** Myers, Charles F **Cc:** Ochs, Robert
**Subject:** FW: information about GE Healthcare
**Date: Wednesday, February 05, 2014 11:44:42 AM**
**Attachments:** RE information about GE Healthcare.msg
Good morning Charles,
This is assigned COR14000050-000.
Thanks,
Peter
**From:** Myers, Charles F
**Sent:** Tuesday, February 04, 2014 3:44 PM
**To:** Kangoma, Prince P*
**Cc:** Ho, Michelle M*; Ochs, Robert; Boyd, Sean M
**Subject:** FW: information about GE Healthcare
Hello Peter,
Please scan this chain of e-mails and the attachment into CTS as a Trade Complaint, assign a COR number, and please assign to me. I spoke with the complainant and will receive this as an assignment so I can make notes in CTS.
Please use Product Code 16 – Medical diagnostic X-ray equipment (LLZ).
Thanks,Charles
Charles F. Myers
FDA/CDRH/OIR/DRH
Phone: 301-796-5619
E-mail: Charles.Myers@fda hhs.gov


**From:** Silverman, Steven
**Sent: Sunday, December 15, 2013 11:23 AM**
**To:** Engleman, Donna **Cc:** Woods, James L.; MacFarland, William C; Welch, Jan
**Subject:** FW: information about GE Healthcare
Donna,
Please log and triage this information as a compliant.
James – cc'ing you in case these devices are OIR regulated. Thanks
-- Steve
Steve Silverman
Director, Office of Compliance Center for Devices and Radiological Health

(301) 796-5500

**From: Engleman, Donna   To: Silverman, Steven**
**Sent: Sunday, December 15, 2013 6:43 PM**
**Cc:** Woods, James L.; MacFarland, William C; Welch, Jan; OC Medical Device Complaints and Responses
**Subject:** RE: information about GE Healthcare
Thanks and I'll wait to hear back from James before processing this complaint further in OC.
Donna
http://www.volusonclub.com/emea/insite

**From:** Myers, Charles F
**Sent:** Tuesday, February 04, 2014 3:44 PM
**To:** Kangoma, Prince P*
**Cc:** Ho, Michelle M*; Ochs, Robert; Boyd, Sean M
**Subject:** FW: information about GE Healthcare
Hello Peter,
Please scan this chain of e-mails and the attachment into CTS as a Trade Complaint, assign a COR number, and please assign to me. I spoke with the complainant and will receive this as an assignment so I can make notes in CTS.
Please use Product Code 16 – Medical diagnostic X-ray equipment (LLZ).
Thanks,Charles
Charles F. Myers
FDA/CDRH/OIR/DRH
Phone: 301-796-5619 E-mail: Charles.Myers@fda hhs.gov

**From:** Engleman, Donna
**Sent:** Thursday, January 16, 2014 10:52 AM
**To:** Myers, Charles F
**Cc:** OC Medical Device Complaints and Responses
**Subject:** FW: information about GE Healthcare
Hello Charles,
As always, going through some older stuff. Is this one that James Woods may have sent to your group by any chance? Please let me know if you have this complaint and/or accept it.
Thanks!!Donna

**112.**

## 20 MA saving statute and tort statutes..How judges illegally dismissed claims ...

Trivedi had these two state law claims in district of Columbia lawsuit as

well…Massachusetts savings statute also apply..and also Segal v. Sacco, 136 Ill. 2d 282, 288 (Ill.

1990) (" Because the delay was inadvertent, plaintiff argues he was not undermining, or attempting to

circumvent, the statute of limitations.")

**113.   I was not concerned about GE's motion to dismiss when I voluntarily dismissed District of Columbia lawsuit (GE's and Judge Kelley's corrupt and silly argument )** – but because- when I met special agent in charge - David Johnson- - at FBI lobby in 2017- And I told him that I am going to Washington DC to meet USCIS / DHS top brass or someone in that capacity to discuss my lawsuit- he said to stay away from that PLACE. Ignoring what he said about staying away– I filed lawsuit in District of Columbia on May 2019- thinking that my claims were for greater good of society- of  importance and judges will pay attention. But soon I realized that David Johnson's sentence to stay away from that political place –must have deep meaning –may be beyond I could literally see and/or comprehend ; and I was concerned ;so I dismissed it. That lawsuit was not dismissed on MERITS- thus GE attorneys and judges should be jail for dismissing these claims.

**114.**

20.1 **Savings provision under Mass. G.L.c. 260, § 32, would apply to an action duly commenced in another jurisdiction**

**Case 1:19-cv-11862-PBS Document 105 Filed 11/19/19 Page 30**
Regarding Six year statute of limitations as defendant mentioned, Trivedi did started by filing District of Columbia lawsuit on May 21, 2019.

> **Trivedi Case 1:19-cv-11862-PBS Document 105 Filed 11/19/19 Page 30**
> Regarding Six year statute of limitations as defendant mentioned, Trivedi did started by filing District of Columbia lawsuit on May 21, 2019
>
> *Rodi v. S. New Eng. Sch. of Law,* 389 F.3d 5, 18 (1st Cir. 2004). Under Massachusetts law, if an action is commenced within the limitations period and then dismissed for "any matter of form," the plaintiff is entitled to "commence a new action for the same cause within one year after the dismissal." Mass. Gen. Laws ch. 260, § 32;

**115.**

## 20.1.1    TRIVEDI v. GENERAL ELECTRIC COMPANY (1:19-cv-01479) District Court, District of Columbia

**20.1.1.1    ORDER show cause why DC court & Not Massachusetts court**

1    Case 1:19-cv-01479-TJK Document 12 Filed 06/17/19 Page 1 of 2

2
           Plaintiff filed her complaint in this Court on May 21, 2019, bringing various claims
3    under federal whistleblower statutes, federal securities law, Title VII, and common law breach
     of contract. ECF No. 1 ("Compl."). None of the factual allegations in her complaint, however,
4    mention conduct that occurred in the District of Columbia. Indeed, Plaintiff merely states, in a
     single paragraph of her complaint, that "venue is proper since GE has office(s), reside[s], and
5    ha[s] operations in this district." Id. ¶ 22. It appears that much if not all of the relevant conduct
     in her complaint occurred during Plaintiff's employment with a subsidiary of General Electric
6    Company in either Boston, Massachusetts, or Waukesha, Wisconsin. See, e.g., id. ¶¶ 35–38.
           Accordingly, it is hereby ORDERED that Plaintiff shall, no later than June 26, 2019,
7    show cause in writing why this case should not be transferred to either the United States
     District Court for the Eastern District of Wisconsin or the ==United States District Court for the==
8    ==District of Massachusetts pursuant== to 28 U.S.C. § 1404(a). It is further ORDERED the
     Defendants shallfile a response to both this Order and Plaintiff's response no later than July 3,
9    2019.SO ORDERED.
10   /s/ Timothy J. Kelly United States District Judge Date: June 17, 2019

11
12   **116.**

13   **20.1.1.2        Aug 9, 2019  Judge Timothy ORDER on show cause:**

14
        Finally, upon consideration of the parties' responses to the Court's 12 Order to show cause
15   why the case should not be transferred to a more appropriate venue, the Court determined to
     take no action. If Plaintiff now believes that venue is more appropriate elsewhere, she may
16   either voluntarily dismiss this action under Federal Rule of Civil Procedure 41(a)(1)(A)(i) and
     refile her complaint in a different district, or file a motion with this Court requesting that it
17   transfer the case pursuant to 28 U.S.C. *vs* 1404(a) and demonstrating that the requisite factors
     to warrant transfer are met. Absent voluntary dismissal, however, nothing in this Order
18   relieves Plaintiff of her obligation to respond to Defendants' 17 Motion to Dismiss by August
     30, 2019. Signed by Judge Timothy J. Kelly on 8/9/2019.
19

20   **117.**

21
22   **20.1.1.3        GE's Motion to dismiss in DC court-**
     Case 1:19-cv-01479-TJK Document 17-1 Filed 07/29/19 Page 27 of 30
23   IX. THE STATE LAW CLAIMS FOR BREACH OF CONTRACT OR
     IMPLIED COVENANT OF GOOD FAITH (COUNT 9) AND TERMINATION
24   IN VIOLATION OF PUBLIC POLICY (COUNT 11) SHOULD BE
     DISMISSED BECAUSE THEY ARE PRECLUDED BY THE PRIOR
25   ARBITRATION AWARD.
     Ms. Trivedi's state law claims for (i) breach of contract or of the implied covenant of good
26   faith and fair dealing, and (ii) termination in violation of public policy are
27

28   **118.**

## 20.1.1.4        Trivedi's voluntary dismissal August 30, 2019

 Plaintiff Trivedi hereby files notice of voluntarily dismiss of this action under FRCP 41(a)(1)(A)(i), all claims against all defendants (General Electric Company, GE Healthcare, Larry Culp, CEO of GE in his individual and official capacity, GE board of directors) dismissed without prejudice.
Dated: August 30th , 2019

 ***************************************************************

**119.**    *Kulinski v. Medtronic Bio-Medicus, Inc.*, 577 N.W.2d 499, 502 (Minn. 1998) ("Most states have "savings" statutes — also known as "renewal" or "extension" statutes — which allow plaintiffs to bring new actions within a certain period of time when their original actions have "failed for some reason other than a decision on the merits," although the applicable statute of limitations has run.")

    *Gaines v. City of New York*, 215 N.Y. 533, 539 (N.Y. 1915) ("he statute is designed to insure to the diligent suitor the right to a hearing in court till he reaches a judgment on the merits. Its broad and liberal purpose is not to be frittered away by any narrow construction. The important consideration is that by invoking judicial aid, a litigant gives timely notice to his adversary of a present purpose to maintain his rights before the courts. ")

    *Cannonball Fund, Ltd. v. Dutchess Capital Management, LLC*, 84 Mass. App. Ct. 75, 88 (Mass. App. Ct. 2013)

    ("In sum, we see nothing in our case law to indicate that the savings statute applies only where the first action is involuntarily dismissed by a court. Instead, our cases indicate that we are to look to the specific facts and circumstances surrounding the termination of the first suit to determine whether " *the plaintiff* has been defeated by some matter not affecting the merits, some defect or informality, which he can remedy or avoid by a new process" (emphasis added). *Woods v. Houghton*, 1 Gray at 583, quoting from *Coffin v. Cottle*, 16 Pick. at 386. The inquiry does not turn solely on whether the first suit was voluntarily or involuntarily dismissed, although that is certainly a factor to be considered. . ' We emphasize that nothing in our opinion should be taken to endorse the strategic initiation or dismissal of litigation for the purpose of taking advantage of the extension provided by the savings statute. There must be "no indication in the record that the plaintiff attempted for dilatory purposes to prolong the limitations period by reliance on the statute." "[A] touchstone for what constitutes dismissal for reasons of matter of form is whether, within the original statute of limitations period, the defendant had actual notice that a court action had been initiated" (footnote omitted). *Liberace v. Conway*, 31 Mass.App.Ct. 40, 44, 574 N.E.2d 1010 (1991). There is no dispute that the defendants had notice of the Delaware action ' ")

    *Cannonball Fund, Ltd. v. Dutchess Capital Management, LLC*, 84 Mass. App. Ct. 75, 76-77 (Mass. App. Ct. 2013) ("The primary issue on appeal is whether the plaintiffs are entitled to the benefit of the **Massachusetts savings statute, G.L. c. 260, § 32,** which permits claims that were timely when originally filed to be refiled (despite the subsequent running of the limitations period) within one year after being dismissed "for any matter of form." We conclude that voluntary dismissals are not per se excluded from the scope of the savings statute. ")
"the **savings statute** must be given a broad and liberal construction" to achieve its purpose:

"administering the law fairly between litigants without binding them to minor and technical mistakes..

"The provisions of G.L. c. 260, § 32, are to be construed liberally, in the interest of determining the parties' rights on the merits." Chao v. Ballista, 630 F. Supp. 2d 170, 175 (D. Mass. 2009)

**120.**

**After district court of district of Columbia- issued show cause notice to Trivedi that while that court should hear her cue- she was shaken, though she replied to that order- it occurred to tha**t she would most likely run into problem for jurisdiction of DC court- and hence it was a defective pleading that Trivedi filed within statutory time limit] Trivedi meets saving statute of Massachusetts under G.L. c. 260, § 32, as record indicate that as matter of form,, DC lawsuit was voluntary dismissed.

*Trivedi case Judge Kelley in her R&R ECF 135,* page 16, 18, 19
has dismissed Trivedi's two pendant claims  (1)"wrongful termination in violation of public policy. (2) breach of contract, breach of the implied covenant
of good faith and fair dealing citing " Mass. Gen. L. c. 260, § 2 .

Note that  **Under Massachusetts law, a plaintiff "may commence a new action for the same cause within one year" of dismissal of an action that fails "for any matter of form." Mass. Gen. L. c. 260, § 32 (the "renewal statute"). An action is dismissed for form, as opposed to substance, where it has not been decided on the merits and where the defendant was on notice of the action within the limitations period.**  *see Chao v. Balista*, 645 F. Supp. 2d 51, 55 (D. Mass. 2009) (no requirement of actual notice to defendants, so long as the original suit was timely filed). In *Liberace*, the court expressly determined that the renewal statute applies to pendent state claims dismissed from federal court, and such a dismissal is "for... form." 31 Mass. App. Ct. at **45.**

**121.**

# Here, Defendants GE and Fragomen, as active

**participant in the Washington DC federal litigation, had notice of the proceedings within the statutory period. (***See***,** (summons),  (notice of appearance of Defendant's counsel), *and*

(motion to dismiss).) The dismissal would also be procedural and not substantive.

Trivedi has successfully tolled statute of limitations for these two pendent claims by filing first lawsuit in Washington DC.

**GE's motion to dismiss in Washington DC court- doesn't mentioned statute of limitation for public policy and breach of contract claims…but only arbitration res judicata…While GE's Massachusetts motion to dismiss says statute of limitation expire…so it is the same law firm that represents GE in DC and MA. Since DC filing for these claims was timely- merely voluntarily dismissing it withi**n two months and refiling it same day- doesn't make it out **of time…This is corrupt on GE, judge Kelley, Judge Saris.**

**[This applies to Trivedi's lawsuit filed in March 2016, in Northern district of California-** as GEE has mentioned in their motion to dismiss that though GE was not a defendants, but it did mentioned GE- even the heading of lawsuit had "GE", and violations of law by GE, whistleblowing and more) –In a way , Trivedi did give a notice. **And Fragomen email to Jenny in 2017]**

*Patterson v. Novartis Pharm. Corp.*, 909 F. Supp. 2d 116, 120 (D.R.I. 2012) ("the Massachusetts legislature enacted the savings statute to ensure that "where [a] plaintiff has been defeated by some matter not affecting the merits ... which he can remedy or avoid by a new process, the statute of limitations shall not prevent him from doing so") (internal quotation marks and citation omitted) (emphasis added).")

*Loomer v. Dionne*, 338 Mass. 348, 351-52 (Mass. 1959) ("Its broad and liberal purpose is not to be frittered away by any narrow construction. The important consideration is that by invoking judicial aid, a litigant gives timely notice to his adversary of a present purpose to maintain his rights before the courts. When that has been done, a mistaken belief that the court has jurisdiction, stands on the same plane as any other mistake of law. . . . There is nothing in the reason of the rule that calls for a distinction between the consequences of error in respect of the jurisdiction of the court and the consequences of any other error in respect of a suitor's rights" (pp. 539-540). The great weight of authority is in accord. See note in 17 B.U.L. Rev. 900 and cases collected in 145 A.L.R. 1185. Applying these principles to the facts of the present case, the error in bringing the action in the Superior Court, which lacked jurisdiction ( *Couto* v. *Trustees of N.Y., N.H. H.R.R.* 312 Mass. 23, 24-25), did not prevent the action from being "duly commenced," or from being "avoided or defeated . . . for any matter of form." The first action notified the defendant that resort was to be made to the courts. There was no default or other neglect in the prosecution of a case legally pending in court, as in *Cumming* v. *Jacobs*, 130 Mass. 419. This is not a situation where the first action was intentionally brought in the wrong court. See *Gaines* v. *New York*, 215 N.Y. 533, 541.")

63

*Gaines v. City of New York*, 215 N.Y. 533, 540-41 (N.Y. 1915) ("A suitor who invokes in good faith the aid of a court of justice and who initiates a proceeding by the service of process, must be held to have commenced an action within the meaning of this statute, though he has mistaken his forum.")

**Trivedi was t**erminated by GE on May 31, 2013.Trivedi filed in May 2019, a federal lawsuit against GE, in Washington DC, District of Columbia federal court. It had public policy claim, Breach of the implied covenant of good faith and fair dealing claims…These claims had supplemental jurisdiction. As per supreme court ruling, first Trivedi filed DC lawsuit timely within six year statute of limitations for these claims. Second, when Trivedi filed DC lawsuit, statute of limitations tolled-clock stopped. And August 30, 2019; Trivedi voluntarily dismissed her lawsuit in DC- hence supplemental jurisdiction claims were tolled. Given  **The  Artis v. District of Columbia ruling..Trivedi ha**s met statute of limitations burden for her claims related to** public policy claim, Breach of the implied covenant of good faith and fair dealing.

**122.**

## 20.1.1.5    Breach of fiduciary duty

**Judge Kelley R&R -ECF 135-**page 17 footnote 15
The claim for breach of fiduciary duty sounds in tort………15. . . The same outcome would result under Wisconsin law. *See* Wis. Stat. § 893.43(1) ("[A]n action upon any contract, obligation, or liability, express or implied . . . shall be commenced within 6 years after the cause of action accrues or be barred.");.");

Under G.L. c. 260, § 32, Supreme court case- Artis v. District of Columbia 583 US _ (2018) the tolling provision in 28 U.S.C. § 1367(d) suspend the limitations period for the state-law and A**s Trivedi** has stated that her Washington DC lawsuit; this claim, court is already applying its jurisdiction for citing Wisconsin law- then it is under time limit .

*Carroll v. Worcester*, 42 Mass. App. Ct. 628, 629 (Mass. App. Ct. 1997) (" Rather, § 32 speaks to "an action duly commenced within the time limited in this chapter" (emphasis supplied), which, as set out in § 2A of c. 260, is three years. ") [Trivedi's fiduciary duty claims under 2A}

DC lawsuit did alert **GE, GE board of directors, GE healthcare** about this tort, any contract,

obligation, or liability, express or implied, actions of contract to recover for personal injuries,---

Trivedi was terminated on May 31, 2013 and filed this lawsuit with this claim on August 30, 2019.

Plus Scott Erven's alert with INSITEEXC vulnerabilities came out in 2018. Given tons of legal

argument **Trivedi** provided in support of tolling. It would be within time limit.

### Trivedi Case 1:19-cv-11862-PBS Document 105 Filed 11/19/19 Page 29

*Acharya* v. Carroll, 152 Wis. 2d 330, 334 (Wis. Ct. App. 1989) ("An action against
an attorney for malpractice may sound in tort or in contract……….. Acharya alleges
negligence. His case sounds in tort. ") ("Because Acharya commenced this action within six years
after he discovered the alleged negligence, he timely commenced this action. We reverse the order of
the trial court dismissing his action on the basis of a three-year statute of limitations. "
("Lewandowski v. Continental Casualty Co., 88 Wis.2d 271, 277, 276 N.W.2d 284, 287 (1979). The
establishment of causation and injury may, as here, involve allegations that the attorney's negligence
deprived the plaintiff-client of a successful prosecution or defense of a prior claim. Glamann v. St.
Paul Fire Marine Ins., 144 Wis.2d 865, 870, 424 N.W.2d 924, 926 (1988) **[As this applies to
Fragomen, Jenny Schrager]**

## 21 PARTIES

**123.**   Madhuri Trivedi is a plaintiff.

**124.**   Madhuri worked for GE in Boston, MA and Waukesha, Wisconsin.

**125.**   Defendant General Electric is a corporation incorporated in New York, currently

Headquartered in Boston and during Plaintiff's employment was HQ in Connecticut and GE is a

multinational corporation.

**126.**   Larry Culp, CEO of GE, GE board of directors, GE general counsel Mike Holston

**127.**   I sent email to former CEO Jeff Immelt in 2013,2014. Jeff Immelt, Former CEO of GE

**128.**   I emailed **EXHIBIT (Case 1:19-cv-11862-PBS Document 51-3 Filed 10/10/19 Page**

**19 -24  of 201** )  to John Flannery in 2017. I also called John Flannery assistant and she

acknowledged that Mr. Flannery has my email and have read it. —Ed Garden of Train partners who

became GE board of directors around that time was also copied in this email- along with

directors@corporate.ge.com...

**129.**    Mike Swinford, former CEO of GEHC services knew this matter even before I was

illegally terminated.. Mr. Swinford and GEHC CTO Mike Harsh came to my arbitration hearing.

**130.    GE boards of directors are body governing public company are hence they are**

**defendants.** Robert did inquiry and GE stonewalled ,didn't do anything an on top of that

GE complained to arbitrator that I have contracted GE board of director and arbitrator became more

hostile after learning this. ---------- Forwarded message ----------

---------- Forwarded message ----------
From: **Robert J. Swieringa** <rjs22@cornell.edu> Date: Tue, Dec 3, 2013 at 12:23 PM
Subject: RE: what happened at GEHC To: Madhuri <mcis99@gmail.com>
Madhuri,
In response to your emails to me and our phone conversation today, I have made inquiries with
people at GE and will let you know about any developments. Thanks, Robert Swieringa
Robert J. Swieringa
Professor of Accounting
Anne and Elmer Lindseth Dean Emeritus
Johnson Graduate School of Management
337 Sage Hall
Cornell University
Ithaca, NY 14853-6201
Phone: 607-255-0422
Fax: 607-255-6889
Email: rjs22@cornell.edu

**131.**    I contacted Susan Hockfield via emails that I sent her to her MIT email address and

her assistant acknowledged (I spoke with Susan's assistant on phone )she read and after responded

mentioning that "she is too high as a director to get involved in an individual matter of mine "; Even

though I was MIT alum. But she chose not to take any action and didn't fulfill her fiduciary and other

duty obligation.

**132.    GE boards of directors are body governing public company; hence they are**

**defendants.** Including but not limited to SEC. 101<15 USC 7211>Establishment; Administrative

Provisions. (c)Duties of the Board -. Also board of directors like Robert Swireinga and Susan

Hockfield both knew this matter since 2013-2014.

**133.**    I emailed Larry Culp  and GE board of directors; I forwarded JPM analyst Stephen

Tusa's email.–on January 22nd 2019 and again on January 24th 2019.

**134.    Jenny Schrager, Partner at Fragomen, Del Rey, Bernsen & Loewy, LLP ,**Jenny's

law firm Fragomen, Del Rey, Bernsen & Loewy, LLP is a defendant in this lawsuit.

**135.**    Carl conrath was a senior engineering manager, involved through out from

hiring to firing me, hence he is party in this case

**136.    Foley & manfield was a lawfirm hired** and paid to send GE letter, look into quitam

and provide legal advice including immigration for my matter, **they are party in this case.**

**137.**    John Dineen –Former CEO of GE and Former CEO of GEHC,Mike Hash, former

CTO of GEHC, David Mehring, engineering manager GEHC, Dave was Trivedi's reporting

manager.Nicole Boyle, Program manager GEHC, Adam Holton, senior HR manager GEHC, Mike

Truman,  HR manager GEHC, Ayesha Khan, HR manager GEHC.Tim Kottak, CTO of GEHC

services, David Elario, General Manager of GEHC services ,Robert J. Swieringa, , Former Board of

director of GE, Susan Hockfield, Former director of GE, Diane Smith, HR manager GEHC,Dipti

Patel, Project lead, GEHC, Nate Davis, Architect, GEHC, Greg Stratton, Lead system Integrator

,GEHC, Bill Barbiuax, architect, GEHC, Ward Bowman, Engineering manager, GE intelligent

platforms, for GE Boston and Reema Poddar, Senior leader of GE intelligent platforms-GE Boston.

## 21.1 **BIVENS and FTCA**

**138.**    FTCA Claims against USCOURTS – US federal agency as an entity, and
**139.**    BIVENS - against -Individual federal employees – district judge Patti Saris,

Mark G. Mastroianni , magistrate judge Page M Kelley, first circuit judges David J. Barron, Bruce M.

Selya, Norman H. Stahl, Kermit V. Lipez,  Jeffrey R. Howard,  O. Rogeriee Thompson, William J.

Kayatta, Jr., Gustavo A. Gelpí, Sandra Lynch  - in their official & individual capacity..Starting from

federal judge Donato in my department of homeland security – since 2016--- as he knew that GE was

doing fraud through my filing..he made my life and case miserable by finding alwayer – as he didn't

like my filings..and since GE was desperately spying on me – and not me have win the lawsuit – there was ZERO chance that I would have got any lawyer to represent me- especially when I mentioned to alwyers billions in lobbyng, whitehosue etc..none of the lawyer thought that they can win this case against corruption..so my FTCA claims since 2016…how come my claims are untimely..when federal judge- USCOURTS employee since 2016 was involved and knew/aware of GE fraud.

**140.**    As per 29 CFR § 15.101(b), Trivedi is the injured person. And as per 29 CFR § 15.101(e) claims involve acts or omissions of USCOURTS employees.

**141.**    Trivedi suffered / has been suffering injuries due to wrongful acts of USCOURTS and DOL employees.

**142.**    FTCA Claims against DOL – US federal agency as an entity, and

**143.**    BIVENS claims - against -Individual federal employees –

**DOL Secretary Martin Walsh, chief of staff Daniel Koh,** in their official & individual capacity ,**OSHA and – Anthony Rosa, Frederick James, Doug Parker, Tamara Simpson, Robert Kuss, Willaim Donovan, Denise Keller, Nathan T**erwilliger**, William Trepanier** in their official & individual capacity --- **Office of the Administrative Law Judges And ALJ – Timothy McGrath** in official & individual capacity. **Solicitor office SOL –and FTCA employee  Stefan Babich , Sarah Naji** in their  official & individual capacity, Administrative Review board, and TAMMY L. PUST, SUSAN HARTHILL, THOMAS H. BURRELL at DOL in their official & individual capacity.

**144.**    As per 29 CFR § 15.101(b), Trivedi is the injured person. And as per 29 CFR § 15.101(e) claims involve acts or omissions of DOL employees.

## 22 PLAINTIFF'S AND CLASS MEMBERS' DAMAGES

**145.**    Bringing class action requires a big lawfirm….I have spoken with Jordan Thomas – former SEC.gov attorney – who now represents whistleblowers and have recouped hundreds of millions in attorney fees for whistleblower award.. I had contacted him during Massachusetts lawsuit..and after

looking at it – he said his lawfirm doesn't take cases – ALREADY in progress, aka ALREADY

FILED in COURT…; even though my case has MERTIS.. (1)Court can certify this as class action,

(2)consider my mitigating circumstances…( NOTE that GE has in past STOLE my quitam attorney

Andrew Beato, of Washington DC…by spying on me..and contacting Andrew's partner to represent

GE – so Andrew left my case after two months) (3) or appoint an attorney if court wish  (only for

class action PURPOSE – I am happy to fight my individual case as Pro Se-- because these claims

involve public safety, health, data, greater good of society.**(4) class action claims are presented by**

**Trivedi here and, as this complaint show that these claims HAVE MERIT, are valid, genuine –**

**then Trivedi's INDIVIDUAL COMPLAINT aka INDIVIDUAL CLAIMS are also with**

**MERITS, valid & genuine; and dismissal of those by corrupt judges and DOL employees  - was**

**done under corruption** … **Thus Trivedi prevails in this NEW LAWSUIT, INDIVIDUAL level**

**complaint filed with Southern district of New York court.**

**146.    Plaintiff brings this action on behalf of herself and on behalf of all other persons
Similarly situated ("the Class").**

**Plaintiff proposes the following Class definition, subject to amendment as appropriate:**

### 22.1 The "GE stock Class"

Class members are GE  shareholders; who owned, held GE stock…All persons who suffered loss;

directly or indirectly due to GE's securities related omissions, misleading statement – leaving

material information being and keeping stakeholders in DARK,  as mentioned **in this lawsuit related**

**to remote connectivity, InsiteEXC disclosures – starting from 2014 when Scott Erven's finding**

**was reported to GE & was in media but GE choose not to FIX these vulnerabilities – NOR**

**make public disclosure…, internet of things' ROSY fake picture by GE.(the "GE stock Class").**

**…GE has not denied securities fraud – nor Judge Kelley/ Saris--- but both GE/ judges combo**

**have said that Trivedi should not have relied on GE's misleading statement if Trivedi KNEW**

1  GE was doing fraud. But what about similarly situation class members…they didn't know

2  about GE's fraud.

### 22.2 The "WHISTLEBLOWER CLASS"

All persons who suffered retaliation by GE, adverse action(s), including but not limited to leading to

termination; as a result of engaging in protected activities aka whistleblower acitivites; starting from

2011 to PRESENT (the **"WHISTLEBLOWER CLASS")**.

### 22.3 The "TITLE VII discrimination & Retaliation Class"

All persons who suffered discrimination by GE, because of their gender, race, nationality, marital

status, pregnancy; were not promoted ,received equal pay as to their male counter parts because of

these factors - starting from 2011 to PRESENT (the "equal opportunity & affirmative action Class").

All persons who suffered retaliation because they reported to GE above mentioned discriminatory

treatment by GE; starting from 2011 to PRESENT (the**"TITLE VII discrimination & Retaliation**

**Class")**.

**147.    GE and judges from district court of Massachusetts and first circuit are already**

**aware of the class action allegation related to this class – but have ignored it..and illegaly**

**dismissed Trivedi's claims with prejudice – just as UNTIMELY.. but under class litigation – it**

**would be under class period from 2011 to present.**

**148.    Plaintiff hereby reserves the right to amend or modify the class definitions with**

greater specificity or division after having had an opportunity to conduct discovery. The proposed

Class meets the criteria for certification under Rule 23(a), (b)(2), (b)(3) and (c)(4).

### 22.4 EEOC Midwest has been given 50 plus class members information but EEOC has declined to open systemic enforcement action

**22.5  Also, January 2021 OFCCP (Department of labor agency)was also presented 50 plus GE employees information for group / class investigation. They also didn't investigate. Full corruption at the agency**

**149.    In that case – OFCCP related regulation.**41 CFR 60-1.21.   ====7B00 Continuing Violation

https://www.dol.gov/agencies/ofccp/manual/fccm/7b-timeliness-and-continuing-violation/7b00-continuing-violation

The courts developed the continuing violation concept to address the fact that some employment practices are not discrete incidents, beginning and ending at particular points in time. For example, a policy or practice of paying lower wages to women rather than to men for the same or similar work is discriminatory and the contractor repeats the violation each time the contractor pays the women. When evaluating such violations, the courts will consider the entire time period during which the violations occurred or the time period since the effective date of the law, whichever is later. For example, a continuing violation which is grounded in racial discrimination is actionable from the date the continuing practice began or the effective date of Executive Order 11246 (September 1965), whichever is later. This is provided, of course, that the other requirements of coverage are met.

In compensation cases, contractors will be in violation of Executive Order 11246 any time they pay wages, benefits or other compensation that result, in whole or in part, from application of any discriminatory decision or practice.

a. Application of Continuing Violation Theory. OFCCP applies the continuing violation theory in compliance evaluations and complaint investigations. The theory is applicable to the following situations:

1. Series of Individual Discriminatory Acts. A continuing violation may occur when the discrimination involves a series of closely related acts. The acts must be sufficiently related to form a pattern of discrimination. The last of these acts must have occurred within the two-year period preceding the date of the Supply and Service Scheduling Letter or the Construction Compliance Evaluation Notice; or, in the instance of a complaint investigation, within the complaint filing period (i.e., 180 or 300 days).

2. Maintenance of a Discriminatory Policy or System. A continuing violation may occur when a contractor maintains a discriminatory policy or practice into the two-year, 180-day period or 300-day period. The violation may focus on one particular employment practice, such as promotions or compensation; or it may deal with discrimination in a series of areas, including initial placement, promotions, transfers and salary. It is not necessary under this approach for OFCCP to show that a discrete act applying the alleged discriminatory policy occurred during the two-year period, 180-day period or 300-day period. It is sufficient to show that the policy or system continued into the period and that, if there had been a personnel action, the policy or system would have been applied in the alleged discriminatory manner.

b. Remedies Under a Continuing Violation. Once the CO establishes that there is a continuing violation by showing a series of related acts, one of which occurred within the liability period, or a continuing employment policy that extended into the liability period, then the contractor must remedy all acts that are part of the continuing violation since the effective date of the law under which relief is sought or from the start of the violation, whichever is later. This is so whether they occurred within or outside of the 180-day or 300-day filing period (complaint investigation), or two-year (compliance evaluation) period.

From:Madhuri Trivedi <orangeinc@protonmail.com>

ToOFCCP-MW-CC4 - ESAOFCCP-MW-CC4@dol.govMadhuri
Trivediorangeinc@protonmail.comKraak, Margaret - OFCCPKraak.margaret@dol.gov
Date:Monday, June 21st, 2021 at 2:02 PM
Hello Ms.Karaak let's set up time to talk this week
Sent with ProtonMail Secure Email.

**150.**

## 23  Trivedi claims under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 396-97 (1971) , court to extend a *Bivens* remedy to Trivedi; for DOl & USCOURTS individual defendants named in this complaint

**In Bivens, The Supreme Court has recognized an implied private action against federal officials -- In so holding**, the Court spoke directly to the government's power and the attendant harm that such power can cause when abused:

*151.*    the FTCA imposes liability on the United States, not individual federal actors, and thus does not have the same deterring effect as a *Bivens* remedy. *Smith v. United States*, 561 F.3d 1090, 1101 (10th Cir. 2009). This is because a *Bivens* claim allows for the possibility of punitive damages and a jury trial—neither of which is available under the FTCA. *See id.*

**152.**    Butz v. Economou, 438 U.S. 478 (1978), reaffirmed this holding, stating that "the decision in Bivens established that a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal-question jurisdiction of the district courts to obtain an award of monetary damages against the responsible federal official." Id., at 504.

**153.    DOL and USCOURTS individual defendants; constitutional violations involved heightened mens rea elements,  Trivedi has  plead that defendants had both personal knowledge of the allegedly unconstitutional  acts and  discriminatory intent.**

**154.**    [Due process] tends to secure equality of law in the sense that it makes a required minimum of protection for every one's right of life, liberty and property,The Fifth Amendment due process clause extends this prohibition to the federal government when [THEIR ACTIONS] violates due process of law.

**155.    Bivens cause of action: of Trivedi**

  ✓    Plaintiff Trivedi has  constitutionally protected right (s);

✓    Federal officer (s) acting under color of federal law/authority violated that right;
✓  Plaintiff lacks a statutory cause of action, **or an available statutory cause of action does not provide a meaningful remedy;** and
✓   An appropriate remedy, namely damages, can be imposed.

**Trivedi allege two elements: (1) that a recognized liberty or property interest has been interfered with by the DOL and USCOURTS  Defendants, and (2) that the procedures attendant to that deprivation were not constitutionally sufficient.**

A Bivens remedy is available unless: (1) Congress has displaced the remedy with an alternative that is "equally effective in the view of Congress," or (2) a balance of "special factors counseling hesitation" weighs against relief.  [As Trivedi ahs explained]

**DOL & USCOURTS are CITING each other's dismissals and rulings – which is false, incomplete ---to dismiss Trivedi's claims…Done without DISCOVERY, JURY , TRIAL..Trivedi is deprived of a FAIR trial, opportunity to be heard, gave 100% consideration to GE's perjury based filings, disregarded all MATERIALLY DISPUTED FACTS, and mountain fo EVIDENCE in FAVOR of Trivedi….This is clear cut DEPRIVATION**

**156.**    Trivedi's claim of deprivation of property—another enumerated interest protected by the Fifth Amendment; that she was deprived of: (1) her business, career, financial loss and reputation (though this could be construed as a property/liberty hybrid)…

Her startup is killed… While Trivedi has been FIGHTING this corruption and this lawsuits - .Google bought FITBIT…and Orangehealth was for bridging GAP between FITBIT and facebook..Trivedi has suffered loss while she worked very hard.

**157.**    *Davis v. Passman*, 442 U.S. 228 (1979) ("(a) The equal protection component of the Fifth Amendment's Due Process Clause confers on petitioner a federal constitutional right to be free from gender discrimination that does not serve important governmental objectives or is not substantially related to the achievement of such objectives. Pp. 234-235. *Craig* v. *Boren*, 429 U.S. 190, 197 (1976)." *Califano* v. *Webster*, 430 U.S. 313, 316-317 (1977). ")

[20]    The Fifth Amendment provides that "[no] person shall be . . . deprived of life, liberty, or

property, without due process of law . . . ." In numerous decisions, this Court "has held that the Due Process Clause of the Fifth Amendment forbids the Federal Government to deny equal protection of the laws. E. g., Hampton v. Mow Sun Wong, 426 U.S. 88, 100 (1976); Buckley v. Valeo, 424 U.S. 1, 93 (1976); Weinberger v. Wiesenfeld, 420 U.S. 636, 638 n. 2 (1975); Bolling v. Sharpe, 347 U.S. 497, 500 (1954)." Vance v. Bradley, 440 U.S. 93, 95 n. 1 (1979). "To withstand scrutiny under the equal protection component of the Fifth Amendment's Due Process Clause, 'classifications by gender must serve important governmental objectives and must be

**158.**   **Trivedi's legal argument in amended complaint, under, Private cause of action -  Case 1:19-cv-11862-PBS Document 51 Filed 10/10/19 Page**

**101 – 108 – would apply to count I.**   ( As it shows that judges –including ALJ, ARB judges -want to dismiss claims – one way or another – then private cause of action would apply to all defendants(GE, Fragomen,Foley& govt). For government defendants under BIVENS REMEDY as well)

**159.**   **The Supreme Court has recognized an implied private action against federal officials in**

(**1**)   *Bivens*, 403 U.S. at 396 (providing a *Bivens* remedy for violations under the Fourth Amendment);

(**2**)   *Davis v. Passman*, 442 U.S. 228, 248-49 (1979) (providing a *Bivens* remedy for gender discrimination under the Fifth Amendment Due Process Clause);

(**3**)   *Carlson v. Green*, 446 U.S. 14, 18-21 (1980) (providing a *Bivens* remedy for failure to provide adequate medical treatment under the Eighth Amendment Cruel and Unusual Punishments Clause).

(**4**)   *Farmer v. Brennan*, 511 U.S. 825 (1994), which concerned a claim under the Eighth Amendment against prison officials for failure to protect a prisoner from violence by another prisoner. *Shorter*, 12 F.4th at 371-373 ("*Farmer* made clear[] . . . that an Eighth Amendment *Bivens* remedy is available to a transgender prisoner who has been assaulted by a fellow inmate.")

23.1 **Moreover: When a plaintiff asserts constitutional rather than statutory rights, the Court is more willing to imply a private right to sue, both on the theory that defining the means for the enforcement of constitutional rights is the federal judiciary's special focus, and because these cases lack the separation-of-powers concern Davis v. Passman, 442 U.S. 228, 241 (1979)**

As the Supreme Court explained in Davis: Statutory rights and obligations are established by Congress, and it is entirely appropriate for Congress, in creating these rights and obligations, to determine in addition, who may enforce them and in what manner. For example, statutory rights and

obligations are often embedded in complex regulatory schemes, so that if they are not enforced through private causes of action, they may nevertheless be enforced through alternative mechanisms, such as criminal prosecutions or other public causes of actions. In each case, however, the question is the nature of the legislative intent informing a specific statute . . . . The Constitution, on the other hand, does not "partake of the prolixity of a legal code." McCulloch v. Maryland, 17 U.S. 316, 407 (1819). It speaks instead with a majestic simplicity. One of "its important objects," ibid., is the designation of rights. And in "its great outlines," ibid., the judiciary is clearly discernible as the primary means through which these rights may be enforced. Id. (internal citations omitted)

23.2 **When a judge acts intentionally and knowingly to deprive a person of his constitutional rights he exercises no discretion or individual judgment; he acts no longer as a judge, but as a " minister" of his own prejudices. [386 U.S. 547, 568]. [This is what has been happening with Trivedi]**

When the state is one of the perpetrators and violators, there can be no expectation of just, indeed any, relief from it. The State cannot cause a federal violation, and then try to prohibit litigants from seeking redress in the federal courts for those same violations (i.e. the state cannot violate our fundamental rights, and then try to have us dismissed out of federal court for seeking vindication of those rights) ' "We have long recognized that a state cannot create a transitory cause of action and at the same time destroy the fight to sue on that transitory cause of action in any court having jurisdiction", Tennessee Coal, Iron & R, Co. v. George, 233 U.S. 354, 360 (1914)' cited in Marshall v. Marshall (2006).Judges' oath of office includes the undertaking to uphold the laws and Constitution of the United States. Any Judge violating such undertakings loses jurisdiction, resulting in his orders being VOID, and he himself commits a treasonable offense against the United States.

Title 18, U.S.C., Section 242 -Deprivation of Rights Under Color of Law

23.3 **Should a judge not disqualify himself, then the judge is violation of the Due Process Clause of the U.S. Constitution. United States v. Sciuto, 521 F.2d 842, 845 (7th Cir. 1996) ("The right to a tribunal free from bias or prejudice is based, not on section 144, but on the Due Process Clause.").**

Judge Saris nor Judge Kelley recused themselves.

## 24 VENUE AND JURISDICTION

**160.**    Because first circuit and Massachusetts district court – have corruptly – dismissed

claims – I have filed this lawsuit – where judges, OSHA, DOL, GE , Fragomen and Foley &

Mansfield – all as codefendants. Looking at THE BIG PICTURE, systemic issues, CONNECTING

DOTS – in this lawsuit complaint…it clearly, genuinely, legally proves that GE got rid of Trivedi –

because Trivedi didn't join GE fraud scheme…and government defendants have acted as GE's

attorney instead of serving taxpayers who pay their salary.

**161.**    28 U.S.C § 1391 venue is proper since GE has office(s), reside and have operations in

this district. Thus, 28 U.S.C. §1391 permits a corporation to be sued in any judicial district in

which it is licensed to do business or is doing business in that such judicial district is regarded as the

residence of such corporation for venue purposes.

**162.**    As noted above, under 28 U.S.C. §1391, venue against a corporation will

lie in any judicial district in which it is incorporated, licensed to do business or is doing business.

**163.**    Defendant General Electric and GE healthcare – are considered "corporation" and are

"multistate" corporations. GE is incorporated in New York. GE and GE healthcare is licensed to do

business and are doing business in judicial district of district of NEW YORK; as such it is regarded as

the residence of GE and Ge healthcare for VENUE purposes.

**164.**    Complaint alleges violations of federal securities laws in connection with GE's public

filings. As per 15 U.S.C.§ 78aa. The Exchange Act's venue provision establishes nationwide service

of process and, this Court also has jurisdiction over her remaining claims as well.

**165.**    Jenny Schrager, Partner at Fragomen, Del Rey, Bernsen & Loewy, LLP considered

GE business partners and GE defendants –located in New York; Hence VENUE is proper for jenny

and Fragomen defendants.

**166.**    VENUE can be agreed upon by CONSENT.

*167.*    This court has jurisdiction pursuant to Sarbanes-Oxley Act, PUBLIC LAW 107–204.

This court has jurisdiction over plaintiff's claims pursuant to Whistleblower

Retaliation under Dodd-Frank Act 15 U.S.C. §78u-6(h)(B)(i)-An individual who alleges discharge or

other discrimination in violation of subparagraph (A) may bring an action under this subsection in the

appropriate district court of the United States for the relief provided in subparagraph (C).

As per 15 U.S.C. §78u-6(h)(1)(B) (iii) ;within six  to ten years after the date on which the violation of subparagraph (A) occurred. **GE can't force mandatory arbitration agreement under this/whistleblower provisions.**

**168.**    **Plaintiff has bought these claims within statute of limitations  after the date on which violations occurred/ she became aware. Therefore, this court has original Jurisdiction of this matter..as district of Massachusetts court and judges have corruptly ignored everything related to this and all Trivedi's claims.**

**169.**    This court has jurisdiction over Securities Exchange Act of 1934,15 U.S.C. 78j(b), and Rule 17 C.F.R. 240.10b-5

**170.**    **This court has jurisdiction over all defendants' (mentioned in this complaint)violation of common law.**

**171.**    **Court has supplemental jurisdiction for claims arising out of related this matter.**

**172.**    This Court has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1331 (federal question statue), 28 U.S.C. § 1343

**173.**    This case arises, in part, under federal statutes including Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000C, et. seq. Therefore this court has original jurisdiction.  First circuit was presented with Right to Sue Notice issued by EEOC **(EXHIBIT 14)** Chicago in 2021; while appeal was PENDING at the first circuit. EEOC considered TRIVEDI' EEOC CHARGE timely..GE submitted 2 PAGE RESPONSE to Trivedi's EEOC charge **(EXHIBIT 15)** – GE wrote that there was an arbitration I PAST..and ARBITRATOR awarded GE and dismissed Trivedi's claims. While in District court of Massachusetts – magistrate judge Kelley – dismissed d Trivedi's VII claims as failure to timely exhaust administrative REMEDIES. First circuit judges ignored NEW EVIDENCE..

EEOC director didn't initiate systemic investigation, enforcement – even though 50 plus former GE employees information was submitted to EEOC for group / class action complaint.

**174.**    Google **ended arbitration requirement for ALL of the employee disputes/claims.** Earlier google allowed only sexual harassment claims to be taken to court but then Google changed.

**175.**    Goal of arbitration was to have resolution of disputes in alternate way and have access but then has become one of the tool for employers to get away with illegal, wrongdoing, misconduct, violations. Arbitration is systemically designed for employers and not for employees; also arbitrator gets PAID by an Employer (in my case GE paid arbitrator $40,000. So it is a BUSINESS for arbitrator and American arbitration association. )Big corporations have a way to get away in such private environment. Employer especially company like GE can SPEND INFINITE/ENDLESS TIME, RESOURCES and MONEY on LITIGATION/Legal fight (any such activities)which employees can't even imagine to afford to. In end result it HURTS society and all of us.

**176.**    This court along with original jurisdiction for other claims ; here **9 USC § 10(a)(3)** FAA allow for vacatur  for other arbitrator misconduct that leads to an unfair arbitration hearing, including (2) a refusal to hear evidence pertinent and material to the controversy, or (3) other misbehavior that substantially prejudices the "rights of any party."

**177.    Trivedi also assert that she has good faith basis for challenging the arbitral award.**

**178.**    Foley & Mansfield lawfirm -defendants Through their business operations in this District, intentionally avail themselves of the markets within this District to render the exercise of jurisdiction by this Court just and proper. Foley & Mansfield law firm is doing business in this judicial district; as such it is regarded as the residence for VENUE purposes.

## 24.1 FEDERAL JUDGE ANDREW HANEN IN BROWNSVILLE TEXAS

**179.    Judge Hanen READ my ENTIRE GE and DHS/immigration file for a person of extra ordinary ability...I contacted his chambers and they forwarded 6 pound of material to judge which he himself read. He wrote to Department of justice attorney Rick Lara to do GRAND JURY CRIMINAL INVESTIGATION about GE and also concluded that I have met**

**burden to prove that I am a person of extra ordinary ability..His finding have DICTA weight and importance as a FEDERAL Judge...** Judge Hanen Read my GE file for whistleblower retaliation and arbitration and found illegal , criminal conduct so he wrote to do GRAND JURY criminal investigation about GE, GE medical devices, my termination, fraud, violations and this whole things.

And I also sent him my Immigration petition EB1 file that I petitioned with USCIS –(United states citizenship and immigration services)..He separately concluded that I am a person of Extra ordinary ability and in national interest waiver as that's what the petition I filed with immigration after I was illegally( including but not limited to in retaliation and for not joining GE's fraud scheme) terminated by GE…I screwed up by not filing in Brownsville, TEXAS where federal Judge Hanen was Presiding and instead filed DHS lawsuit in California and got stuck with judge Donato. Judge Hanen would have ruled in my favor in my DHS case (he told me that when I told his chambers that my father had died ) and also in my favor in GE matter---he would have ordered grand jury criminal investigation though court order, and held GE responsible for all the things they did

FBI agent in Brownsville Texas were judge wrote to do GRAND JURY investigation--
--- Shaun Owen FBI agent wanted to put GE as a criminal organization ---

           ---------- Forwarded message ----------
           From: **Lara, Rick (USATXS)** <Rick.Lara@usdoj.gov>
           Date: Thu, Oct 1, 2015 at 1:08 PM
           Subject: FW: Fwd:
           To: "Owen, Shaun H. (SA) (FBI)" <Shaun.Owen@ic.fbi.gov>
           Cc: Madhuri Trivedi

           Shaun, I am forwarding the e-mail as discussed in our phone conversation.
           Thanks,RL

**180.    This Court has subject matter jurisdiction over this action under the Class Action**

Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million,

exclusive of interest and costs. Upon information and belief, the number of class members is in the hundreds of thousands, many of whom have different citizenship from Defendants, including the named Plaintiff here.

## 24.2 BIVENS

**181.** District Court had jurisdiction under 28 U.S.C. § 1331 (a) for Trivedi's claim. *Bell* v. *Hood*, 327 U.S. 678 (1946) -- Claims for violations of constitutional rights pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 396-97 (1971); US Supreme Court ruled that an implied cause of action existed for AN INDIVIDUAL whose violation of constitutional rights. So this court has jurisdiction for individual capacity claims against government officials.

**182.   Trivedi's imply a cause of action under *Bivens*  EXISTS for claims against federal judges – because " Congress has NOT provided, 'an alternative remedial structure '"..**

### 24.3 Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b) ;29 CFR Subpart B - Claims Against the Government Under the Federal Tort Claims Act  29 CFR § 15.100 (a)

**183.   SF -95 form has been filed with USCOURTS agency..and FTCA claims are pending
184.** SF-95 form has been filed with DOL. And on August 2022- DOL denied Trivedi's FTCA claims.

**185.** Since I am bringing FTCA and BIVENS claims against first circuit court – second circuit court is appropriate venue and has jurisdiction. I am asking chief justice Roberts – my circuit justice to transfer the case. I have sent several emails to judicial conference, made up of circuit judges and district judges about these issues- starting from the time when magistrate judge Kelley was being reappointed. And judicial conference secretary Katie Simon is aware of this whole ugly fight. Why

transfer ? Because --- corruption – negligence. Securities fraud, total harassment and this list goes on, & on & on.……

**186.**    The Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b) ; 29 CFR Subpart B – Claims Against the Government Under the Federal Tort Claims Act - USCOURTS agency, Federal courts have jurisdiction over these claims if they are "actionable under §1346(b)." Meyer, 510 U. S., at 477.  FTCA, 28 U.S.C. §§ 2671-2680

### 24.4    Additional jurisdiction [how MAD dismissed Foley claims by citing personal jurisdiction – when It was subject to nationwide service. This is corruption…This paragraph also applies to all DEFENDANTS in this lawsuit by Trivedi, for jurisdiction purpose as well

**187.**    Securities fraud and representing for SEC allows nationwide service and process .

The court further reasoned that the judicial powers of the federal courts are not limited by boundaries of particular district.. Due Process requires only that a defendant in a federal question suit have minimum contacts with the United States, the sovereign that has created the court.

**Therefore, this Court can exercise personal jurisdiction over defendants because they have minimum contacts with the United States.**

"*See, e.g., Busch v. Buchman, Buchman O'Brien, Law Firm,* 11 F.3d 1255, 1257-58 (5th Cir. 1994) (holding that a court can exercise personal jurisdiction over a defendant in a federal question case if the defendant has minimum contacts with the United States); *United Liberty Life Ins. v. Ryan,* 985 F.2d 1320, 1330 (6th Cir. 1993) (concluding that a federal district court can exercise personal jurisdiction over defendants when the federal statute in question provides for nationwide service of process); *United Elect. Workers v. 163 Pleasant Street Corp.,* 960 F.2d 1080, 1085-86 (1st Cir. 1992) (holding that in federal question cases sufficient contacts to justify the assertion of personal jurisdiction exist whenever the defendant is served within the sovereign of the United States);.. The national contacts analysis requires that defendants have national contacts with the United States, not the State of[]. *Jim Walter,* 651 F.2d at 256-57. Defendants are within the territorial boundaries of the United States, residing in the State []. Therefore, this Court can exercise personal jurisdiction over defendants because they have minimum contacts with the United States.  ")

# 25 TIMELINE & PROCEDURAL HISTORY
# PLEASE see EXHIBIT 3 – for detailed DATE wise history & timeline

# 26EQUITABLE TOLLING

**188.**    Below is excerpt from GE"ADR "Solutions" manual- PAGE 8 -it says while

arbitration is proceeding, agency filing deadline stops.

> *Where a party's initial submission of a Covered Claim to Solutions occurs before the expiration of the applicable statute of limitations for filing in court, the opposing party agrees to stop the further running of the statute of limitations while the parties complete the Solutions process. In the case of administrative agency filing deadlines, the Company agrees to request that the agency treat the running of filing deadlines as having been stopped.*

**189.**    Equitable tolling is a common principle of law stating that a statute of

limitations shall not bar a claim in cases where the plaintiff, despite use of due diligence, could not or

did not discover the injury until after the expiration of the limitations period.

**190.**    statute of limitations on the remedies not being pursued will be equitably tolled if

the plaintiff can show: Lack of prejudice to the defendant, Reasonable good faith conduct on part of

plaintiff.

**191.    [E]quitable tolling is available when 1) "the plaintiffs were prevented from**

**asserting their claims by some kind of wrongful conduct on the part of the defendant," GE**

**defendants including Fragomen and jenny –by withdrawing H1**

**B, conspiring to not being able to extend H1 B because GE and Jenny knowingly didn't file**

**PEM 365 day**s before expiry..—Trivedi ended up studying laws, became law student and almost a

legal professional from the day she was illegally fired till date(in the interim she worked on her

startup "orangehealth" and fought DHS lawsuit….Pat Hale MIT professor mentioned and advised

82

Trivedi that GE has lots of influence everywhere and GE would spend endless time money and resources fighting and dragging lawsuit..while if I sue DHS then government has not as much resources in terms of time, money, number of lawyers ; hence Pat hale said that I have better luck fighting DHS lawsuit..due to GE's influence and lobbying…plus I was so frustrated with CORRUPTION during arbitration and lawyers told me that perjuries that GE manager did during arbitration same they will/can do in a federal lawsuit---plus I had to do tons of research on my own to fight GE lawsuit to find out..The mistake I made was I should have GE as a codefendant in my DHS lawsuit but I didn't know at that time that one can have codefendants as government and corporation GE—no attorney told me so as well..– Similarly, a plaintiff's claim of equitable tolling cannot be defeated merely because she could have filed her tort claim within the ordinary limitation period. Hopkins v. Kedzierski, 225 Cal. App. 4th 736 Court:  4th District Court of Appeal Date:  April 16, 2014

**192.**    Hence Plaintiff Trivedi incorporates by reference, as though fully set forth herein Equitable tolling as it applies to cause of actions brought here in this complaint.

## 27 CAUSES OF ACTION

**193.**    Plaintiff  realleges, reasserts, and incorporates by reference the facts and allegations stated **in the previous lawsuit(s) Trivedi v. General electric at district court and at first circuit**; also DHS lawsuit filings in district court, ninth circuit, supreme court, as though fully set forth herein, as well as facts currently unknown.

### 27.1 FIRST COUNT
### Whistleblower Retaliation under Dodd-Frank Act, 15 U.S.C. §78u-6(h); SEC Rule 17 CFR § 240.21F-2
**(GE Defendants, Fragomen Defendants As GE Business Partners)**

**194.**    Plaintiff  realleges, reasserts, and incorporates by reference the facts and

1  allegations stated in the previous paragraphs; as though fully set forth herein, as well as facts

2  currently unknown.

3  **195.**    Class action claims for securities fraud – as Trivedi and similarly situated owner/ holders of

4  GE stock.

5

6  **196.**    Private cause of action -  Case 1:19-cv-11862-PBS Document 51 Filed 10/10/19 Page

7  101 – 108 – would apply to count I.  ( As it shows that judges –including ALJ, ARB judges -want to

8  dismiss claims – one way or another – then private cause of action would apply to all defendants(GE,

9  Fragomen,Foley& govt). For government defendants under BIVENS REMEDY as well)

10

11  **197.    Following Cases that held misleading product and service information to be the**
   **basis for Rule 10b-5 liability** include *Warshaw v. Xoma*, 74 F.3d 955 (9th Cir. 1996); *In re Apple*

12  *Computer Sec. Litig.*, 886 F.2d 1109 (9th Cir. 1989); and *In re Carter-Wallace Sec. Litig.*, 150 F.3d
   153 (2d Cir. 1988).

13  17 C.F.R. § 229.303(a)(3)(ii); *see also* Donald C. Langevoort & G. Mitu Gulati, *The Muddled Duty to*
   *Disclose Under Rule 10b-5,* 57 Vand. L.Rev. 1639, 1680 *(2004)*. *It follows that Item 303 imposes the*

14  *type of duty to speak that can, in appropriate cases, give rise to liability under Section 10(b).*

15  **198.**    "an omission is actionable under the securities laws when the corporation is

16  subject to a duty to disclose the omitted facts." *In re Time Warner Inc. Sec. Litig.,* 9 F.3d 259, 267 (2d
   Cir.1993); *see Glazer v. Formica Corp.,* 964 F.2d 149, 157 (2d Cir.1992). Such a duty may arise

17  when "statute or regulation requiring disclosure," or a corporate statement that would otherwise be
   "inaccurate, incomplete, or misleading." *Glazer,* 964 F.2d at 157 (quoting *Backman v. Polaroid*

18  *Corp.,* 910 F.2d 10, 12 (1st Cir.1990) (en banc)); *accord Oran v. Stafford,* 226 F.3d 275, 285-86 (3d
   Cir.2000).

19

20  **199.**    As required elements of those filings, Item 303 disclosures "**give GE investors** an

21  opportunity to look at the registrant through the eyes of management by providing a historical and
   prospective analysis of the registrant's financial condition and results of operations. Due to the

22  obligatory nature of these regulations, a reasonable investor would interpret the absence of an Item
   303 disclosure to imply the nonexistence of "known trends or uncertainties

23

24  **200.    Trivedi allege that as per SEC rule 10b(5) ;GE's failure to make adequate**

25  **disclosures under**

26  ✓ **Cybersecurity risks, Regulation SK Item 503 (**17 CFR § 229.503-Prospectus summary
        and risk factors)**,**

27  ✓ **Management discussion of cybersecurity issues under Regulation S-K Item 303**
     ✓ Material weaknesses in internal controls under SOX Sections 302 and 404 addressing

28       cybersecurity

✓ *GE failing to disclose cyber security, information security issues,465 critical defects could be committing shareholder fraud or violating SEC rules relating above items*
✓ InsiteEXC issues that materially affect the operations.

**may serve as basis for a Section 10(b) claim against GE.**

**201.**    GE as a public company required to address cybersecurity issues in its public

filings pursuant to its requirement to disclose significant risks to its business. If in doing so GE("

company") omits known, actual threats, it may violate the securities laws. See *Matrixx Initiatives,*

*Inc. v. Siracusano*, 131 S.Ct. 1309 (2011) –

**202.**    Had defendants performed their fiduciary duties, GE stock owner / holders would not have

suffered over losses from conducted actions that ended up jeopardizing its employees' retirement

benefits.GE violated the law by not informing and protecting GE 401(k) participants' best interests

when GE did securities fraud related to Remote connectivity platform, Insite EXC, not disclosing to

SEC.gov, investors –misleading, painting fake rosy picture, not disclosing liability, defects from 2013

onwards --Scott Erven reported in 2014 to GE. Later when Trivedi sent email to Larry Culp in 2019 –

within one month GE removed section from sec.gov 10-k filing.

**203.    I didn't HIRE OR PAY David Nelson.** He looked at my claims free as a FELLOW

MIT alumni like me. He was SEC regional director prior to that) reviewed my matter in 2013-2014

**but he didn't mention to me which whistleblower laws, which SEC laws, what needs to be done**

**next ,-**only things he mentioned after reviewing along with his assitant was that I have valid, SEC

claims against GE but his law firm represents defendants and also they change hundreds of thousands

in retainer and lot more to represent me in SEC matter.

> **From: David Nelson <dnelson@bsfllp.com>**
> Date: Mon, Jun 23, 2014 at 9:21 AM Subject: RE: should I send my deposition ?
> To: Madhuri Trivedi <mcis99@gmail.com>Cc: Aaron Marcus <amarcus@bsfllp.com>
> Madhuri, today is hectic and I have some meetings tomorrow.  Is Wednesday possible for you at some point?  Dave  David Nelson
> BOIES, SCHILLER & FLEXNER LLP
> 401 East Las Olas Blvd.  Suite 1200 Fort Lauderdale, FL 33301
>        (Ph)  954.356.0011  (Direct) 954.377.4233(Cell) 954.213.8810

### 27.1.1    "an omission is actionable under the securities laws when the corporation is subject to a duty to disclose the omitted facts.

" *In re Time Warner Inc. Sec. Litig.,* 9 F.3d 259, 267 (2d Cir.1993); *see Glazer v. Formica Corp.,* 964 F.2d 149, 157 (2d Cir.1992). Such a duty may arise when "statute or regulation requiring disclosure," or a corporate statement that would otherwise be "inaccurate, incomplete, or misleading." *Glazer,* 964 F.2d at 157 (quoting *Backman v. Polaroid Corp.,* 910 F.2d 10, 12 (1st Cir.1990) (en banc)); *accord Oran v. Stafford,* 226 F.3d 275, 285-86 (3d Cir.2000).

**204.**    GE as a public company required to address cybersecurity issues in its public filings

pursuant to its requirement to disclose significant risks to its business. If in doing so GE(" company")

omits known, actual threats, it may violate the securities laws. See *Matrixx Initiatives, Inc. v.*

*Siracusano*, 131 S.Ct. 1309 (2011) –

**205.**    company may violate SEC Rule 10b-5 when making public disclosures if it misstates

or omits a material fact See 17 C.F.R. § 240.10b-5 – that's what GE did for it's 465 defects, shity

InsiteEXC and cybersecurity issues.

**206.**    If GE would have disclosed InsiteEXC material information ; it would have given GE

shareholders; TRUE STORY and STATE;about their connectivity. It would have made investors take

into consideration HIGH STAKE and RISKS< LIABILITIES that connecting GE assets to internet

brings.

### 27.1.2    Web content inadvertently be considered an offer to sell or solicitation to buy *Securities; and GE engaged into Several Deceptive Marketing practices*

**207.    The SEC has acknowledged the role of company websites and social media platforms in communicating with investors (e.g., for purposes of Regulation Fair Disclosure, or "Regulation FD")**

*According to the SEC in the May 2000 Release (see Section II(B)(1)), a company may be subject to the antifraud provisions of the federal securities laws for any page on its website if the page "reasonably could be expected to reach investors or the securities markets regardless of the medium through which the statements are made, including the Internet."*

**208.    By continuously releasing even after Plaintiff raised and reported retaliation that "Insite is defective" – GE continued releasing "InsiteEXC". 18 U.S. Code § 1343. Fraud by wire, radio, or television -includes any writings, signs, signals, pictures or sounds transmitted by wire, radio**

*or television in interstate or foreign commerce.(EXHIBIT* Case 1:19-cv-11862-PBS Document 51-3 Filed 10/10/19 Page 126 -133) *GE product).*

*209.    GE on*

- ✓ *it's website,*
- ✓ *on internet,*
- ✓ *youtube video ( https://www.youtube.com/watch?v=xUOw2A0t9vE  ) which was uploaded to youtube on January 30,2013 touting instant connection, data protection, proactive monitoring, remote maintenance, system security,maximized up-time while omitted defects;*

**GE Healthcare**
Published on Jan 30, 2013

A service platform engineered for a fast, efficient response.

GE has developed a unique technology which allows its service engineers to look into the heart of any equipment linked by a broadband connection. From a distance they can examine the error log, check functioning of individual parts, and diagnose what actions are needed to fix the problem.

- ✓ *sales, marketing and while using product in hospitals product manuals concealed InsiteEXC defect, cybersecurity vulnerabilities- hence plaintiff allege that GE committed fraud.*
- ✓ Sales information online for medical devices and public press release----and elsewhere where GE ommitted and misstated /failed to disclose any Insite issues/facts/truth --instead bolstered it .youtube video *(EXHIBIT* Case 1:19-cv-11862-PBS Document 51-3 Filed 10/10/19 Page 126 -133).

**210.**    Plaintiff states that, to the best of her knowledge, "this false data related Insite2 has been reported "as accurate" by GE in wire communications such as the Internet. Hence it is wire fraud.

**211.**    A company should assume that all or substantially all of its web content may expose it to liability under the securities laws. Material misstatements or omissions in web content may be violations of Rule 10b-5 under the Securities Exchange Act of 1934. In addition, as the definition of the term "offer" in Section 2(a) of the Securities Act of 1933 is interpreted broadly, many web pages,

including web pages intended to serve market or promotional functions, might be considered to

contain an offer under the Securities Act.

### 27.1.3    GE's omission of facts pertaining to an actual, known risk could violate the requirements of Regulation S-K Item 303 and Rule 10b-5.

**212.**    Thus, reporting an information security issue that contradicts or undermines the

company's management discussion and analysis of cybersecurity could be protected under SOX.

**213.**    It also seems GE's failure to state on its Form DEF 14A filings anything related to InsiteEXC may be an omission of material fact the disclosure of which would have made the proxy statements "not false or misleading." *Id.* § 240.14a-9(a). Thus, in complaining that relevant information did not appear in these SEC filings as required, Plaintiff allegedly implicates SEC rules **violations; which are sufficient to state a plausible claim under SOX.**

**Along with filings in 10-K, 8-K ,10-Q and violations of 15 U.S.C. § 7213(a)(2)(A)(iii)(III) a description, at a minimum, of material weaknesses in such internal controls, and** of any material noncompliance found on the basis of such testing and;

 Sec¬tion 302 of SOX requires a corporation's CEO and CFO to personally certify the accuracy and completeness of financial reports, and they must assess and report on the effectiveness of internal controls around financial reporting.( 16 15 U.S.C. § 7241)

**214.    To best of plaintiff's knowledge and search using -EDGAR Search Tools on SEC.gov website; searching GE's public filing with SEC including since 2007 to 2018;type of filings 10-Q, 10-K, 8-K, DEF 14-A…**

**215.**    Also in SEC filings dated 2013 till date; it shows that GE painted ROSY picture , look

trendy and cool--of it's digital solutions (Internet of Things platform where Jeff Immelt put billions).

Mentioned that "it's market is up to $8 billion and wants everybody using it" as stated in 8-K form;

but totally failed to consider RISKs, liability –even that putting many GE assets such as (Trivedi

worked on jenbacher gas engines – internet of things platform in Boston)—Because many GE assets

are age OLD, due to several limitations of computing processing power, processing memory

available, unable to get cyber security patches and upgrades due to these reasons.. This is misleading

given that GE has lessons to be learned from INSITE EXC where GE recklessly connected medical

devices on internet…Making cyber security vulnerabilities FOOTPRINT wider and Broader.

**216.   GE DEF 14A –annual reports from 2012, 2014,2011,2013 has no mention of broken InsiteEXC( period related to Trivedi's employment and arbitration)**

**217.**   All of these filings 10-Q, 10-K, 8-K, DEF 14-A has no mentioning about cyber

security before and since Madhuri was doing mediation/ arbitration in 2013 /2014—

**218.   In 2015 --DEF 14A says they care paying attention to cybersecurity in**

**GENERAL while no mention of InsiteEXC ..**because after reading DEF 14 A it looks nice that how

GE is doing in digital world – internet of things –but at the same time have not addressed and kept

public vulnerable to hacking attacks; and in effect CIRCA STONEAGE.

**219.**   Later in 2016- 2017 filings GE included generic disclosures in their management

discussion and analysis about cybersecurity issues that could materially affect the corporation's

financial condition and operations.

**220.**   Also ---but intentionally not disclosing that still their CYBERSECURITY for these connected

devices is in STONEAGE; vulnerable to hack, exploit and manipulation by a LOW SKILLED

person(anyone with a low skill could hack and attack, take full control of medical device, stop device

from functioning, change setting and more of such attack vector) which GE knew since 2014..But

never made it public, nor filed any SEC filing in terms of 10-K, 10-Q, 8-K , DEF 14-A.  No mention

in **Item 7. Management's Discussion and Analysis of Financial Condition and Results of**

**Operations,** SIGNIFICANT TRENDS & DEVELOPMENTS MD &A,Forward-Looking Statements,

"Risk Factors"  , Item 7  operations.. Forward-Looking Statements" in BHGE's most recent earnings

release or SEC filings; and●   the other factors that are described in "Risk Factors"

**221.**   But GE's omission of facts pertaining to an actual, known risk since 2007 about

InsiteEXC cybersecurity vulnerabilities and Scott Erven's hacking exploit report from 2014, my

internal reports from 2011 to 2013 to GE and later in 2014 during arbitration, and even when I sent

email to Mr. Flannery in 2017 violate the requirements of Regulation S-K Item 303 and Rule 10b-5.

Thus, reporting an information security issue that contradicts or undermines the company's

management discussion and analysis of cybersecurity is protected under SOX, Dood Frank act.

**222.**    Misleading statements or omissions of fact are included in forward-looking statements,

the corporation GE may not be insulated. Required forward-looking disclosure including totality of

the company activity."

**223.**    As GE made NO mention of cybersecurity vulnerabilities till date in its public Filings.

**224.**    GE  violate Sections 302 and 404 of the Sarbanes-Oxley Act as it fails to disclose

material weaknesses in its internal controls related to information security. From 2007 to 2014 till

Trivedi's arbitration ; GE had not mentioned such cybersecurity related controls and it's weakness.

Section 404 of SOX requires a corporation to assess the effectiveness of its internal controls in its

annual reports, and an outside auditing firm must evaluate that assessment. Material weaknesses in

those internal controls must be identified. 15 U.S.C. § 7213

**225.**    Section 302 of SOX requires a corporation's CEO and CFO to personally certify the

accuracy and completeness of financial reports, and they must assess and report on the effectiveness

of internal controls around financial reporting.( 16 15 U.S.C. § 7241)

**226.**    All these years from 2007 to 2014 (Jeff Immelt certify ) and later upto 2018 other

CEO including Jeff Immelt.

**227.**    Plaintiff also allege that GE "knowingly failed to comply with its Business Code

of Ethics, an internal control relied upon by both its auditors and shareholders," and that such failure

"renders the signature of its Chairman of the Board and Chief Executive Officer on its annual report a

violation of the Securities and Exchange Act and SOX.

**228.**    Trivedi has alleged "a strong inference of scienter" with respect to GE's failure to

disclose..Trivedi has pleaded scienter adequately, satisfying statute requirement. Plaintiff Trivedi

allege facts giving rise to a "strong inference that the GE acted with the required state of mind." *Id.* §

78u4(b)(2)(A). Trivedi has  "alleged facts (1) showing that the GE had both motive and opportunity

to commit the fraud (2) GE 's action constituting strong circumstantial evidence of conscious

misbehavior or recklessness."   Intent so GE can continue sale/ service contracts by not getting

exposed to corporate credibility, loose their market share, sales, revenue and more".

## 27.2  SECOND COUNT
### Securities Exchange Act of 1934,15 U.S.C. 78j(b),Rule 17 C.F.R. 240.10b-5

**(GE Defendants, Fragomen Defendants As GE Business Partners)**

**229.**    Plaintiff  realleges, reasserts, and incorporates by reference the facts and allegations

stated in the previous paragraphs; as though fully set forth herein, as well as facts currently unknown.

**230.**    As alleged in First cause of action violations related to SECURITIES EXCHANGE

ACT OF 1934, 15U.S.C. 78j(b), AND 17 C.F.R. 240.10b-5 ;The second cause of action regarding

Dodd Frank Whistleblower protections establishes that GE was violating **EXCHANGE ACT OF

1934, 15U.S.C. 78j(b), AND 17 C.F.R. 240.10b-5;** making  misleading statements and HENCE

plaintiff Trivedi is dodd frank whistleblower  under **18 U.S.C.§ 15 U.S.C. § 78u-6(h) ;SEC Rule17

CFR § 240.21F-2..** (including but not limited to other statutes, rules, laws mentioned in this second

cause of 1.

[Dodd-Frank], which had a six-year statute of limitations – Trivedi was terminated on May 31,

2013 – Trivedi filed District of Columbia lawsuit May 2019 – within SIX years. As per 15

U.S.C. §78u-6(h)(1)(B) (iii) ;within six  to ten years after the date on which the violation of

subparagraph (A) occurred.action along with first cause of action)

***231.    Protected Activity Need Not Describe an Actual Violation of the Law .***

**232.**    Madhuri reported to her lead, manager David Mehring, senior manager Carl

Conrath, CEO Mike swinford, general manager david elario, HR manager Mike Truman and later Mike Truman's place/role was taken by a new HR manager Ayesha Khan so to her, architect Bill Barbiaux, architect nate davis, manager dave sallis, Chief financial officer , Program manager Nicole Boyle, CTO Tim kottak and few others. She did written communication via emails, note memo, and personal meetings.

**233.**    Trivedi made disclosures that were required or protected under the Sarbanes-Oxley Act of 2002 (15 U.S.C. 7201 et seq.), the Securities and Exchange Act of 1934, including 15 U.S.C. section 78j-1 (m), section 1513 (e) of title 18, and other laws, rules, or regulations subject to the jurisdiction of the SEC.Trivedi had both a subjectively and objectively reasonable belief that the conduct being reported violated a listed law, rule, or regulation.

**234.**    A **material defect** is one that the Seller is aware of and would have materially impacted your **terms of** purchase and which the Seller was aware. GE as a SELLER has been fully aware of Remote connectivity related material defect….

**235.**    Since GE & Judges take JUDICIAL notice of Trivedi's DHS lawsuit – Trivedi had asked a QUESTION in her WRIT of CERTIORARI " if DODD FRANk whistleblower protections apply to internal whistleblowers ?" – in her January 2018 filings.. And one month after that in February 2018 Digital Realty v. Somers case supreme court ruling came out..So Trivedi's count under 15 U.S.C. 78j(b) is timely – this is one fo the reson to consider it timely..

**236.**    SEC rule 21F-2 was not changed in 2019 to incorporate Digital Realty..and Trivedi filed MAD lawsuit in 2019..so claim under SEC rule 21F- 2..

**237.**    GE managers, senior management knew or recklessly failed to ascertain whether those statements were false and misleading. this behavior, in violation of the Securities and Exchange Act. SEC. 302. <<15 USC §7241.>> CORPORATE RESPONSIBILITY FOR FINANCIAL REPORTS.

**238.**    *SEC's expectations highlights the role of "cybersecurity whistleblowers," those*

*reporting internally, in building the type of improved corporate culture necessary to discover and*

*remediate cybersecurity risks. (* GE including its CEO, CTO,CFO and others, knew or suspected that

Trivedi engaged in such protected activity. Trivedi was terminated after being framed to improved

her relationship skills.[2]

**239.**

**Prout case, where dismissal of malpractice claims were DENIED in 2019( after supreme court's Digital Realty ruling) – Foley Lawyers didn't advise Trivedi for SEC internal whistleblower claims [Even if some courts had held as of May 2014 that Dodd-Frank covered internal whistleblowers like Prout (TRIVEDI)]; Foley never advised Trivedi.**

Arbitrator award was given in August 2014, **the day Trivedi received arbitration email- she emailed it to Foley & Mansfield** partners , but , instead of mentioning Trivedi right to file motion to vacate under 9 U.S. Code § 12; these lawyers forwarded me to Quitam lawyers.. **..Hence I request this court to CONSIDER MITIGSTING CIRCUMSTANCES THAT WERE BEYOND CONTROL AND KNOWLEDGE OF TRIVEDI that this**.

# Trivedi can't PAY 20 LAWFIRMS to advise her..she had paid Foley & Mansfield…and at that time –in 2014 **Dodd-Frank covered internal whistleblowers like Trivedi.**

Later for DHS lawsuit– Trivedi studied/read those laws – but there was no way that "NOT being an attorney" – Trivedi would have known about her right to go to court for Dodd Frank...DHS lawsuit was to SUCCEED in my startup..and I already contributed…by fixing immigration..

Searching EDGAR, reading SOX, sec.gov filings - was something not **LAYMAN like**

**Trivedi skilled at the time of DHS lawsuit**..this has been a journey – **to be a law student and**

---

[2] In 2015, the Securities and Exchange Commission (SEC) settled charges that R.T. Jones Capital Equities Management violated the "safeguards rule" ; regarding its failure to adopt reasonable policies and procedures. Even though no one appeared to be harmed, the SEC censured R.T. Jones and fined the firm $75,000. Justifying the enforcement, the SEC said, "Firms must adopt written policies to protect their clients' private information and they need to anticipate potential cybersecurity events and have clear procedures in place rather than waiting to react once a breach occurs." In the Matter of R.T. Jones Capital Equities Mgmt. Inc., Investment Advisers Act Release No. 4204 (Sept. 22, 2015), available at https://www.sec.gov/litigation/admin/2015/ia-4204.pdf

The Voya settlement represents a substantial step forward in the SEC's regulation of cyber-related activities. In the Matter of Voya Financial Advisors Inc., Exchange Act Release No. 84288, Investment Advisers Act Release No. 5048, at 3 (Sept. 26, 2018), available at https://www.sec.gov/litigation/admin/2018/34-84288.pdf.

1   enhancing my legal skills…Pat Hale – **former director of Massachusetts institute of technology**

2   **– Sloan school of management's system design & management program – had asked in person –**

3   **to MIT office of general counsel, to FIGHT my DHS lawsuit by REPRESENTING me in**

4   **court…after that – I had emailed Office of general counsel attorneys – and when I called**

5

6   **attorney of Office of General counsel attorney Dahlia Fetouh -for follow up..she said that there**

7   **are so many students – MIT would end up fighting…so MIT declined to represent me… But**

8   **attorney Dahlia Fetouh said that– she had READ my court filings. So she TOLD ME that - it is**

9   **like "you/ Madhuri getting honorary LAW degree" – I understand what she meant to say – that**

10  **she REALLY appreciated how being an ENGINEER – I was doing all LEGAL fight Pro se..**

11

12   **All these reason support equitable tolling to Trivedi's claims.**

13  ==**Prout v. Vladeck, 371 F. Supp. 3d 150. 156,157, 159 (S.D.N.Y. 2019)**==

14  ("Second, VRC argues that it always believed "that Prout's 'whistleblower' retaliation claim, to the
    extent he even had one and ever wanted to sue, could be **pursued to equal if not greater effect via**
    **[Dodd-Frank], which had a six-year statute of limitations." <u>Id.</u> at 5. Although the Supreme**
15  **Court ultimately held in <u>Digital Realty Trust, Inc. v. Somers</u> that Dodd-Frank does not cover**
    **internal whistleblowers like Prout,** —— U.S. ——, **138 S.Ct. 767, 772-73**, **200 L.Ed.2d 15** (**2018**),
16  VRC argues that "numerous district courts within the Second Circuit and elsewhere had" come to the
    opposite conclusion at the time VRC chose not to prosecute Prout's SOX claim, VRC SJ Mem. 5. As
17  such, VRC argues, it was reasonable to pursue only the
18
    Dodd-Frank claim. <u>Id.</u> at 6.")**("he Court finds that VRC**
19
20  **has not demonstrated the absence of a triable issue. Even**

21  **if some courts had held as of May 2015 that Dodd-Frank**

22  **covered internal whistleblowers like**

23  **Prout,…**.................These are genuine disputes to resolve at

24  trial, and they preclude the Court from granting summary

25  judgment for VRC on the issue of whether its handling of

26  Prout's SOX claim was negligent.")

27  *Prout v. Vladeck*, 371 F. Supp. 3d 150, 161,163 (S.D.N.Y. 2019) (" Given this evidence, the
28  Court finds that there is a triable issue as to whether Prout believed he was reporting a violation of
    federal law…….whether Prout would have been better off if he had pursued all four of his claims,

rather than pursuing only two." Prout v. Vladeck, 319 F.Supp.3d 741, 746 (S.D.N.Y. 2018). "A plaintiff who brings a legal malpractice claim must show that he or she suffered actual and ascertainable damages." Schutz, 2013 WL 3357921, at *7. The Court agrees that Prout has raised a triable issue as to damages. Mazurek's opinion, Prout's testimony, and common sense all suggest that the answer is yes, and this is enough for a reasonable jury to find that Prout suffered damages. Conclusion In sum, the Court concludes that Prout has created a triable issue as to each element of his malpractice claim. For these reasons, the Court, in its Order of March 26, 2019, denied VRC's motion for summary judgment in its entirety.")

**240.**    Trivedi's protected activity discussed above was a contributing factor—and

indeed the reason for—her termination.

## 27.3 THIRD COUNT
### Violations of whistleblower protections under Sarbanes-Oxley Act,8 U.S.C. §1514A, et seq. ,Pub. L. 107-204
#### ( GE Defendants, Fragomen Defendants As GE Business Partners)

**241.**    Plaintiff  realleges, reasserts, and incorporates by reference the facts and

allegations stated in the previous paragraphs; as though fully set forth herein, as well as facts

currently unknown.

**242.**    OSHA history -As Plaintiff filed OSHA department of labor complaint

with Wisconsin-Chicago regional office via fax on May 3rd, 2014(EXHIBIT Case

1:19-cv-11862-PBS Document 51-3 Filed 10/10/19 Page 33, EXHIBIT Case 1:19-cv-11862-PBS

Document 51-3 Filed 10/10/19 Page 44).. OSHA erroneously responded on July 14, 2014 that it

doesn't fit any of their 22 statutes. (EXHIBIT Case 1:19-cv-11862-PBS Document 51-3 Filed

10/10/19 Page 56)..in 2021 GE aviation engineer Alexanria Horne contacted Trivedi about her firing

from GE – for reporting cybersecurity violations..Trivedi advised her to file OSHA SOX and other

fight—later Ms Horne wrote to Trivedi that she had ongoing OSHA SOX matter and that she has

submitted 50 GE victims – information to dol.gov agency OFCCP…so – after this – Trivedi

contacted OFCCP regional director…who informed Trivedi via email, phone conference that they

haven't open systemic investigation and confirmed that Ms. Horne has submitted 50 GE former

employees' data..and OFCCP director wrote Trivedi that they consider Trivedi's individual complaint as untimely..

**243.** Trivedi also contacted via email – OSHA regional supervisor William Donovan – who assigned Trivedi's matter to Denise Keller and Nathan – OSHA supervisor and OSHA investigator. Nathan told Trivedi on phone that he is afraid to investigate BIG company GE, because in doing so, he could / would lose his job…and if Trivedi tells this to Donovan – he will dismiss her claims and sent dismissal to GE. Trivedi emailed this to Donovan..Denise Keller on a conference call with Nathan- said even if Nathan told being afraid thing—she would not consider Trivedi claims of 2014- and she informed Trivedi that her 2014 complaint was closed administratively – so there was NO RIGHT TO APPEAL to ALJ was mentioned in dismissal letter..and there is no record as it has been destroyed.

**244.** Trivedi contacted OSHA in 2021 because of Alexandria Horne – but GE has painted and wrote in court filings, ALJ & ARB filings – that for not having success at first circuit , district court – she came to OSHA again….total lie, manipulation..

### 27.3.1    Daniel Koh, OSHA, ROSA , 2021 complaint

**245.** after that.. Trivedi emailed Daniel Koh…chief of staff of Martin Walsh, DOL secretary, on July 2, 2021 –..asking KOH to forward Trivedi's letter to Mr. Walsh to consider Trivedi's OSHA SOX claims timely and what happened in 2014.

**246.** now Koh works at white house..it is – a reward to Koh for his bad behavior, actions and corruption. and for covering up GE's fraud… Jeff Immlet was Obama job czar during 2008 financial crisis– fox watching henhouse..and in my 2022 filings at first circuit and ARB – I had mentioned below paragraph about Immelt – faking false job created DATA –now Koh at WHITEHOUSE  these actions speaks thousands of words..

"when I moved to GE healthcare –in Wisconsin --- Jeff Immlet was OBAMA's job czar – overseeing creating jobs- and actually he didn't create jobs at GE …GE people who were

seeing I was being abused then – were talking to me that Immelt is just creating some contract jobs – for six months – and showing that jobs are created at GE… some were even for outsourcing ….it was all fake… – – actual number of jobs created even after taking taxpayers free bail out money …..was not happening"

247.    After sending 100 emails to Daniel Koh, Anthony Rosa , Frederick James – nothing came out. Rosa also asked Trivedi on phone about how GE was doing WIRE FRAUD, MAIL FRAUD – and in that same phone call told Trivedi that he will dismiss Trivedi complaitn as untimely.

248.    September 2021- Rosa dismissed Trivedi's 2014 complaint as not having record and defended Keller , Nathan ..

249.    After that, Trivedi filed a new OSHA complaint under SOX – via ONLINE PORTAL…mentioned ongoing fraud and violations, equitable tolling in online portal complaint..

250.    Later in September, without informing GE – and without asking GE's response. Same OSHA investigator – **Nathan dismissed Trivedi's 2021 complaint as untimely. And in dismissal letter – wrote FALSE statement about what happened…false statement about merits of Trivedi's claims. Meanwhile all in food chain were copied in emails – but choose to participate in this corruption and watch..and not act, intervene -**

251.    Trivedi filed objections to ALJ.

252.    ALJ McGrath related history is in Exhibit 9. ALJ issued order to show cause on timeliness..He denied Trivedi's limited discovery to answer timeliness and motion to stay pending discovery (exhibit 9)to answer his order to show cause on timeliness…He also didn't rule on Trivedi's motion to amend GE ENRON..**EXHIBIT 8** of this SDNY lawsuit is motion to amend ENRON. ALJ also didn't consider lengthy and legitimate evidence, argument of Trivedi about timeliness .

253.    Trivedi filed with ALJ that she would pursue FTCA claims against ALJ McGrath.

**254.**     Later using fractured, pieces, of FALSE statements – and citing judge Kelley's R&R

and Judge Saris dismissal in his ORDER- he dismissed Trivedi claims as untimely on January

2022…this was totally hostile and ROGUE.

**255.**     Trivedi filed petition for review  with ARB..and ARB general counsel granted

it..meanwhile Trivedi was putting all this OSHA , ALJ progress in first circuit court filings..so GE's

lobbying money – as it shows working extremely well..that these ARB judges, OSHA, Daniel

Koh…all politically connected –  were working hard to get Trivedi's claims dismissed.

**256.     After ARB general counsel – granted Trivedi's petition for review… Susan Harthill –**
**was appointed  (DARK FORCES behind ? )– as a new chief ARB judge.** Judge Susan Harthill

along with other two ARB judges affirmed ALJ McGrath's dismissal…ARB order also contains

false, untrue, half true – fractured pieces. And not TRUE picture..total corruption.

**257.     How OSHA, ALJ, ARB LIE – despite writing 20 times..OSHA, ALJ, ARB hasn't**

   **mentioned this in their dismissal letter ( they mentioned lawyer malpractice not eligible and**

   **that Triveid had two law firms etc) – that's why all of them, along with GE- to eb put in**

   **JAIL**

Mitigating circumstances and beyond control of trivedi. Trivedi filed OSHA complaint as
her MIT  alumni contact emailed her about the same and that's all he knew Jason Kap who was a
Vice president at Microsoft earlier..I didn't know that I can sue under SOX or Dodd Frank earlier;
and I didn't know how to litigate these claims ..It was big ocean for me. Plus I trusted Foley &
Manfield and other attorneys.

                    From: Jason Kap [mailto:jkap@MIT.EDU]
                    Sent: Sunday, May 04, 2014 6:34 AM  To: Madhuri Trivedi; Madhuri Trivedi
                    Subject: RE: whistleblower
                    I am praying for you ,Sent via smartphone
                    -------- Original message --------
                    From: Madhuri Trivedi
                    Date:05/03/2014 8:05 PM (GMT-05:00)
                    To: Jason Kap Subject: whistleblower
                    Thanks for whistleblower.gov idea..
                    I think it is good.

1
2

      Sincerely,
      Madhuri

**258.**

3

### 27.3.2     ARB

4
5

Currently as of October 2, 2022 – Trivedi's motion & petition for rehearing en banc with ARB is

6
7

pending. Last filing was done in last couple of weeks of September 2022. Exhibit 9 has ARB filings

8

attached in this lawsuit.

9

**259.**

10

### 27.3.3     FTCA

11

After ALJ dismissed Trivedi's claims – Trivedi filed FTCA administrative claims – on February

12

2022…with DOL

13

### 27.3.4     OIG DOL referral to OSHA

14

    OIG at DOL referred matter to OSHA management on April 2022.

15
16

**260.**  ------- Original Message -------
On Friday, September 2nd, 2022 at 12:36 AM, Madhuri Trivedi <orangeinc@protonmail.com> wrote:

17
18

Mr. Rosa,From the beginning I had written to Daniel Koh , Frederick - that you were / are a highly corrupt OSHA director ( but they both are also equally corrupt like you)...And you violated your own manual...and still have a job -- dismissal letter you wrote last year  - didn't mention about - administratively closing against oSHA's own manual...and that letter you yourself signed...second dismissal you had signed by Nathan..who told me ( and it was confirmed with his boss also)- that he was afraid of losing his job if he investigates big company GE..

19
20
21

One of the several examples of corrupt handling -- OSHA investigation manual clearly says that even though complaint under SOX untimely or doesn't meet prima facie case - it should be docketed..and not administratively closed..while my first complaint was corruptly - administratively closed..and later OSHA , DOL came up with SOX 180 days and docketed...while ignoring that it was not docketed first time...

22
23
24

Sent with Proton Mail secure email.

25
26

------- Original Message -------
On Friday, September 2nd, 2022 at 12:28 AM, Madhuri Trivedi <orangeinc@protonmail.com> wrote:

27

OIG has sent referral April 8 -
Sent with Proton Mail secure email.

28

------- Original Message -------

On Thursday, September 1st, 2022 at 2:40 PM, Madhuri Trivedi <orangeinc@protonmail.com> wrote:

**From Madhuri Trivedi <orangeinc@protonmail.com>**

**ToRosa, Anthony - OSHA<Rosa.Anthony@DOL.GOV>, Frederick, James S. - OSHA<Frederick.James.S@dol.gov>, Mikulka, Michael - OIG<mikulka.michael@oig.dol.gov>, Madhuri Trivedi<orangeinc@protonmail.com>, turner.larry@oig.dol.gov, Griffin-Blalock, Valerie - OIG<griffin-blalock.valerie@oig.dol.gov>**

DateThursday, September 1st, 2022 at 2:40 PM

Mr. Mikulka, Valerie,

would you please ask OSHA to give response..ask them that next steps are based on that..and can't wait and sit as a VICTIM of their corrupt acts – and wait for them to response for infinite time..months and months..there should be ZERO tolerance for such task..and not sit and wait..
_____

Ms. Rosa, Mr. Frederick,

Please reply to OIG's referral in couple of days..you both are highly corrupt people along with other DOL people..and should be in jail

.just so you know that I am not going to be a victim of thier corruption but take solid action......

I am filing a brand new lawsuit against GE, OSHA, DOL – government officials – for Bivens individual capacity and FTCA all in one lawsuit as

codefendants. So GE and government people together…in one single new lawsuit. Intentionally ignoring critical documents.. I am also asking congressional inquiry into this systemic corruption – where instead of addressing fraud by GE and corruption- aiding and abetting fraud and citing each other's corrupt order…so as to enjoy sadistic pleasure.

So this corruption is out in public…

Mr. Rosa has guts to ask me about wire fraud and mail fraud in a phone call - but in that same call say that regardless of fraud he will dismiss it as untimely.

Sent with Proton Mail secure email.

------- Original Message -------

On Friday, August 19th, 2022 at 8:12 PM, Griffin-Blalock, Valerie - OIG <griffin-blalock.valerie@oig.dol.gov> wrote:

Good afternoon Ms. Trivedi,

This is a follow-up regarding your most recent contact with senior management with the DOL-OIG office, regarding a complaint you submitted, via email, to OIG officials, regarding the improper handling of a Whistleblower Retaliation complaint you filed with OSHA against General Electric and GE Healthcare.

Please be advised that I reached out to OSHA today to get a status update of the OIG's referral to OSHA management regarding your allegations against OSHA's handling of your Whistleblower Retaliation complaint. I am currently awaiting their response. If you have new information that you would like to provide regarding OSHA, please submit an additional statement of complaint with respect to this matter. You can email me directly at griffin-blalock.valerie@oig.dol.gov.

Respectfully,

Valerie Griffin-Blalock

OIG Hotline Team

### 27.3.5    OSHA SOX claims of Trivedi

SOX protects corporate whistleblowers for engaging in protected activities

includes wire fraud, mail fraud, healthcare fraud and a violation of any SEC rule or regulation.

**261.**    To be protected under SOX, the employee's report need not "definitively and specifically" relate to one of the listed categories of fraud or securities violations in Section 806 of SOX.  The focus is "on the plaintiff's state of mind rather than on the defendant's conduct." *Guyden v. Aetna, Inc.*, 544 F.3d 376, 384 (2d Cir. 2008).

**262.**    OSHA notes that a complaint of retaliation filed with OSHA under SOX is not a formal document and need not conform to the pleading standards for complaints filed in federal district court articulated in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 556 U.S. 662 (2009). **See Sylvester v. Parexel Int'l, Inc., ARB No. 07–123, 2011 WL 2165854,at \*9-10 (ARB May 25, 2011) (holding that whistleblower complaints filed with OSHA under analogous provisions in the Sarbanes-Oxley Act need not conform to federal court pleading standards). Rather, the complaint filed with OSHA under this section simply alerts OSHA to the existence of the alleged retaliation and the complainant's desire that OSHA investigate the complaint.**

**263.**    Trivedi while employed at GE reported to management that GE is not adhering following in regards to highly defective InsiteEXC medical device.

## 264. Where Sylvester case was VIOLATION of GCP – good clinical practice…while TRIVEDI reported ( in writing right from 2012 via emails, meeting to several GE people responsible – as required by SOX)

❖ 21 CFR § 820.90 - Nonconforming product ( This FDA statute is under cGMP – quality regulation)
 (FDA's cGMP – good manufacturing product, Under precedent set by Administrative Review Board ARB of Department of Labor's Sylvester v. Parexel Int'l, Inc., ARB No. 07–123, 2011 - Trivedi case clear cut exactly similar to Sylvester. In Sylvester – whistleblowers reported violations of cGCP – good clinical practice.) OSHA complaint in 2014 , GE in 2013-2014, arbitrator. Trivedi's attorneys – all had information about violation of this statute. Trivedi provided this statute 21 CFR § 820.90 - Nonconforming product; then , in writing…but no one did anything…total malpractice, corruption…

- ❖ *HIPAA 45 C.F.R. § 164.530 (g). HIPPA* 164.306 Security standards:
- ❖ HIPAA 45 C.F.R. §164.308(a)(1): Security Management Process
     -Implement security measures sufficient to reduce risks and vulnerabilities to a reasonable and appropriate level to comply with § 164.306(a).
- ❖ HIPPA  164.312(b) Technical safeguards – Standard: Audit controls
     Audit controls refer to the capability to record and examine system activity.
- ❖ Security management process   **HIPPA 164.308(a)(1)(ii) Information System Activity Review –Required.** ==The company's security controls are seriously lacking which is part of SOX internal controls.==
- ❖ Medical devices are vulnerable to cybersecurity related ; hackable Lacks proper quality control, testing, automated static analysis of software/code for InsiteEXC is not being used.

**265.    18 U.S.C.§ 1514A(a)(1), including when the employee provides information or assistance to someone with "supervisory authority over the employee" or with authority to "investigate, discover, or terminate misconduct"**

==**as CLEAR CUT WRITTEN EVIDENCE proves that Plaintiff Trivedi did report in writing- these issues to GE management – food chain. Significantly, SOX protects internal disclosures.**==

**266.**    Technical leads, architect and manager lack proper technical understanding, lack technical knowledge, lack big picture /systems level , lack  cyber security knowledge.

**267.**    In FIRST & SECOND CAUSE OF ACTION; plaintiff alleged violations of SEC rules and regulations.

**268.**    GE knew in July 2014 that I spoke with FBI and FBI said it is quitam.

**269.**    Trivedi met SOX standard because the managers' and GE's alleged concealment of defects, deceptive sales and marketing of medical devices and services, fraudulent inducement, was intended to, and likely would, affect the revenue, profit, sales amount for GE; and bonus and executive pay/stock options to GE executives and pay to managers/employees.

**270.**    Therefore Trivedi/plaintiff had an objectively reasonable belief that [the GE employees, managers, GE executives and GE company were] engaged in a scheme to defraud government, consumers, patients and investors and violating such laws."

**271.**    Plaintiff Trivedi made objective reasonableness," "subjective good faith," or a

disclosure that is "not knowingly false( WESTMAN & MODESITT, *supra* note 11, at 81; *see also* Cherry, *supra* note 53, at 1047.  ) ; about GE's fraud.

**272.**    Plaintiff Trivedi(1)she engaged in <u>protected activity</u>;(2)the employer GE knew that she engaged in the protected activity;(3)she suffered an <u>unfavorable personnel action</u>; and(4)the protected activity was a <u>contributing factor in the unfavorable action</u>.

**273.    Plaintiff engaged in protected activity under SOX related to reporting**

**Cybersecurity vulnerabilities, defects, quality issues, fraud .**GE took unfavorable

personnel/professional action due to plaintiff's protected behavior or conduct.

## 27.4 FOURTH COUNT
**Disparate treatment, intentional discrimination and retaliation in violation of Title VII, VIOLATIONS OF CIVIL RIGHTS ACT OF 1991, 42 U.S.C. 1981 (Section 1981),42 U.S.C. 2000e et seq. ,42 U.S. Code § 1981a - Damages in cases of intentional discrimination in employment, hostile work environment, 42 U.S.C. § 2000e-3a, 42 USC § 2000e 2(a)(1) , Civil rights violation hostile work environment,  Sexual harassment,  Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 - 9 U.S.C. §§ 401-402**

**(GE Defendants, Fragomen Defendants As GE Business Partners, Because Of My Gender, Nationality, Marital Status, Race) & All Defendants For Violations Of Civil Rights)**

**274.**    Plaintiff  realleges, reasserts, and incorporates by reference the facts and allegations stated in the previous paragraphs; as though fully set forth herein, as well as facts currently unknown.  a

**275.    Class action claims for Trivedi and similarly situated, victims from 2011 to present. Lots of arguments presented at first circuit but it was trashed as Trivedi didn't mark it as CLASS ACTION.**

**276.    42 U.S.C. 1981 (Section 1981) doesn't require EEOC exhaustion --- and equitable tolling applies…as Trivedi has been victim of GE, judges one way of another, in hostile , corrupt, illegal manner – work together to dismiss HER CLAIMS>**

**277.    Since federal judges, ALJ, ARB happily TAKE FULL JUDICIAL NOTICE of my department of homeland security lawsuit…in DHS complaint ..Trivedi already had claim under VIOLATIONS OF CIVIL RIGHTS ACT OF 1991….(  DAMAGES IN CASES OF INTENTIONAL DISCRIMINATION ).. Jury trial is available ("(c) JURY TRIAL. - If a complaining party seeks compensatory or punitive damages under this section -    "(1) any party may demand a trial by jury; ) Punitive damages.**

**278.**    42 U.S. Code § 1981a ( a)(1) Civil rights,
         42 U.S. Code § 1981a ( b) Compensatory and punitive damages,
         42 U.S. Code § 1981a ( c) Jury Trial,

**279.    Case 1:19-cv-11862-PBS Document 51 Filed 10/10/19 Page 16 of 240** ( how all defendants trashed this legal argument)( in ECF 51 , Trivedi mentioned "intentional discrimination" 6 times)

United States Supreme Court DESERT PALACE, INC., dba CAESARS PALACE HOTEL & CASINO v. COSTA(2003) No. 02-679
For instance, in Reeves v. Sanderson Plumbing Products, Inc., 530 U. S. 133 (2000), **we recognized that evidence that a defendant's explanation for an employment practice is "unworthy of credence" is "one form of circumstantial evidence that is probative of intentional discrimination." Id., at 147 (emphasis added).** The reason for treating circumstantial and direct evidence alike is both clear and deep-rooted: "Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." Rogers v. Missouri Pacific R. Co., 352 U. S. 500, 508, n. 17 (1957). **See Furnco, supra, at 580. The ultimate question in every disparate treatment case is whether the plaintiff was the victim of intentional discrimination. This lawsuit and treatment Trivedi received shows that GE was engaged in intentional discrimination.**

**280.**    42 USC § 2000e-3(a) where I did clearly opposed employment practices by GE and suffered discrimination.

**281.**    Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 -9 U.S.C. § 401-402 – while GE, judges bring TIMELINESS , one way or another  - in totally ROGUE, HOSTILE manner…– I allege this claim because it shows "CONGRESS INTENT" , need , my contribution to make this law( may be a drop in the OCEAN)..but it proves that I am not a stupid person – who

is fighting lawsuit and not going anywhere..as painted by GE and judges…me and thousands

other fought for this. This has been part of #MeToo journey.

**282.**    For DHS lawsuit,  When Trivedi went to district court and met judge James Donato's court deputy.—Lisa R. Clark ..she commented that "we are not doing woman thing in your case--- and you don't go to bed with them..but some women do use being women as TOOLS..so we are not doing woman thing".( since Judge Donato was not ruling for more than six month on pending motions..I attended HEARING in Judge Donato's courtroom for some big antitrust case..then met his deputy Clark when hearing was over)

**283.**    It is well established that gender combined with a second characteristic may constitute

a protected group for purposes of Title VII. Schallop v. New York State Dept. of Law 20 F. Supp. 2d

384 (N.D.N.Y. 1998)

**284.**    My email to Gregg stratton(who was a lead systems designer )for Insite EXC

where I reiterated cybersecurity issues, slacker way for quality**(EXHIBIT Case 1:19-cv-11862-PBS**

**Document 51-3 Filed 10/10/19 Page 164)**, as was being exposed of technically incompetent and

fraud related to InsiteEXC became aggressive, abusive language, behavior, shifting blame and daily

fights via emails phones to other GE managers and I was sitting next to him..I moved my desk and

GE manager david mehring made a big issue of it..gave me negative rating in performance review

regarding my desk move and forced me to have regular meeting with Greg to improve relationship…

**285.**    Title VII also has protection for anti-retaliation –when a person complains about

desperate treatment despite GE retaliated…Plaintiff was concerns about her H1B and hence trying to

be polite and as adjustable to GE as she can as long as her H1 B is not screwed. I was discriminated ,

retaliated based on her nationality- as it relates to

immigration status H1B. Because once GE takes adverse, discriminatory action and terminates me –

they can cancel my H1 B-after H1 B cancellation. That's what GE exactly did. Compared to others

who were not on H1B and not similarly situated ( plus I didn't keep my mouth shut and joined GE's

fraud scheme).

**286.     Trivedi may prevail as she has shown that the employer GE's response is merely**

**a pretext for behavior actually motivated by discrimination and retaliation.**Used my divorce as a

tool to falsely accuse me on relationship, blackmailing as GE thought it as my weakness.

**287.**     Trivedi was a THREAT and challenge to these male managers and  coworkers David

Mehring, Carl Conrath, Greg Stratton, Nate , Bill Barbiaux as she was smart and no nonsense person.

While Trivedi was making waves right from second week of joining.. None of the internal customers

DIRECTLY went ahead and begged for HELP for TONS of INSITE EXC support issues they were

having for a LONG TIME but these internal customers contacted Trivedi.

### 27.4.1     InsiteEXC internal customers struggle for months to establish connectivity and Trivedi found short term fix

**288.**     While after joining GEHC in 2011, right on my 2nd week on joining GEHC I found a

work around where earlier online engineers ( internal customer Missy Polak Ryan also

complained)couldn't do remote connection to medical devices in hospitals and hence couldn't fulfil

service contract OBLIGATIONS WITH CLIENTS/signed with DOD-department  of defense/other

hospitals—for months they were struggling and engineering staff couldn't find solution to problems.

On my 2nd week I found a work around and send document first to Glen Livermore which was used

by hundreds of online engineers/service engineers, was CRITICAL globally to do remote

connectivity -it was a bandage –short term fix ( to stop bleeding in operations and remote service and

allow online engineer to do their jo and HENCE fulfil SERVICE CONTRACT OBLIGATIONS

WITH CLIENTS). Long term fix was to developed new platform from ground up.

**289.**     A plaintiff may state a claim for Title VII employment discrimination using either

the "direct method" or "indirect method.

**290.**     Because the acts taken toward Plaintiff were carried out by, condoned by and or

ratified by managerial employees or managing agents acting in a deliberate, cold, callous,

fraudulent, malicious, oppressive, and intentional manner in order to injure and damage Plaintiff,

"while other engineers including Male technical staff Sachin Kendale (Sachin wrote code that it took 40 minutes to lead 1000 devices on webpage and he and Naresh wrote such badly and defectively by initializing each device object in memory after they get query result from database. Database was also not tuned and written badly. They never used Database performance management tool and David Mehring sucked so much of my blood and I had to convince him a lot to get $30 Database management tool (**EXHIBIT Case 1:19-cv-11862-PBS Document 51-3 Filed 10/10/19 Page 177  perjury**)because GE didn't have license and these incompetent engineers never used—despite that Sachin got good performance review— **EXHIBIT** (Case 1:19-cv-11862-PBS Document 51-12 Filed 10/10/19 Page 1 -8) is Sachin's performance review. During arbitration discovery, GE didn't release Naresh and Nate Davis performance review..because GE said Naresh was a contractor  - and Nate they just won't and bullied.

Naresh, Nate Davis, Greg Stratton and several others wrote bad product, bad buggy, defective software/code( I have proof of that) despite GE treated them favorably and discriminated plaintiff as GE can't tolerate , a female engineer coming out strong and also whistleblowing these male engineers technical incompetence. "

**291.**  Mike harsh , CTO of GEHC sent email in late 2012  that managers

and employees should take training on how they perceive communication from female engineers; **SO GE had problem about perceiving and measuring performance, communication of female engineers**

EXHIBIT 18

**Sent:** Tuesday, October 16, 2012 4:19 PM

**Subject:** GenderSpeak Diversity Awareness Training coming

Science & Technology Colleagues:

GE Healthcare has always been very active in creating a culture of diversity awareness and we are continuing this strong value by rolling out a critical GE Corporate game-changing workshop focused on gender diversity that will be offered across all of GE's Technology community globally.

The Global Science & Technology Organization's **Carol Murawski** and **Paul Wangerin** are certified trainers for GenderSpeak, and will co-lead these interactive sessions. The GenderSpeak materials have been customized for GE, and will be introduced by Carol & Paul in each workshop.

The research presented in this training program notes that men's and women's behavior

is based on two separate sets of cultural rules about what "right" is. Learning the cultural differences that define what is "right" for men and women – together with a good sense of humor – is the first step leading to meaningful inter-gender communication.

Following the workshop, participants will be equipped to return to both their professional and personal lives seeing the world through the lenses of the other gender's culture, and encouraged to shape their messages in new ways.

The rollout of these workshops will start with the Milwaukee, Madison and Barrington locations in the United States in the fourth quarter of 2012 and will continue across all locations globally in 2013. A note with additional details for employees in those locations who will be invited to participate will be sent shortly.

While the goal is that all Science & Technology employees attend a workshop, the 2012 sessions will begin with Executive Band- and Senior Professional Band-level employees and will include the Human Resources function that supports each science & technology team. Workshops for all employee band levels will be offered in 2013.

Operationally, a myLearning course will be assigned to the initial target audience this quarter, with scheduled sessions available for registration. Sessions will fill up quickly, so please enroll early. A waitlist will be established for additional sessions as needed to complete the initial target audience in 2012.

This is a tremendous undertaking, and its success will depend upon a high level of engagement, participation, and support from employees at all levels in the organization. The workshops promise to be enlightening, inspiring and educational. Please make your participation in one of these sessions a priority as they become available.

Mike Harsh                         Clarissia (C.J.) Jackson

VP & Chief Technology Officer      Senior Human Resources Manager

GE Healthcare                      GE Healthcare Global Science &
Technology

                                   Organization

© 2012 General Electric Company. All rights reserved.

*"Men's and women's behavior is based on two different sets of cultural rules about what " right" is . Learning the cultural differences define what is "right" for men and women- together with a good sense of humor –is the first step leading meaningful inter-gender communication.*
*Following the workshops, participants will be equipped to return to both their professional and personal lives seeing the world through the lenses of the other gender's culture and encouraged to shape their message in new ways. "*

**292.** There was one female project lead Dipti Patel who was responsible for integrating InsiteEXC on various medical devices and she fraudulent and knowingly PASSED quality tests and signed them saying product is OKAY while it was defective and whole management was part of this FRAUD scheme in which one female project lead was there. Dipti Patel terrorized me but it was that she was getting exposed of fraud.

**293.** Madhuri is victim being a female engineer from India and working for a large

organization whose managers took advantage of these conditions/systems and systematically worked

on discriminating, retaliating and treating Madhuri badly, giving false negative evaluation and finally

getting rid of her, beating her about soft skills and continuously making false  case, comments ,

character attacks, using such inappropriate tactics, selectively filtering most of positive things about

her, stopping her from fixing defects, doing proper design for Despite those similarly situated

employees who are not in Ms. Trivedi's protected

group were doing such poor job were treated more favorably or did not receive the same adverse

treatment. (Madhuri needs to work on her relationship despite doing good work for company and

going above and beyond for project success).

**294.**    Male GE engineering staff looked (was obvious to they were incompetency)

technically incompetent after above incident and as I started making waves.. Soon after that which

Madhuri was hired and paid to do.

**295.**    GE didn't put on PIP Greg Strattton, Nate Davis white American nationality MALE.

Nor Sachin Kendale, Naresh Asian Indian nationality MALE.

**296.**    David Promoted Namita Joshi Indian American nationality ( she was born in India but

had USA greencard , citizenship),FEMALE and she was a wife of GEHC general manger Vivek

Bhatt so her relationship with GEHC executive was a driving factor that despite as Ofir fought 20

people that she lacked technical skills as to when code would fail; she was never put on PIP nor got

negative performance review –on top of that was prompted as stated by arbitrator in his award.

Marital status is different from Trivedi as well as her relationship—who knows who is all what makes

promotion at GE(sky is the limit if you have family member and/or personal connections/ at times

professional connections as well to get promoted and retained at GE… not your skills, education,

experience----

**297.    Dipti Patel was never put on PIP as she was part of fraud herself..**

## 27.4.2    My email to CTO Tim Kottak. I met Tim in person and went over everything .I requested Tim to change my reporting manager.

## 27.4.3    That's why I am presenting this lawsuit as CLASS ACTION.

## 27.5  FIFTH COUNT
### Wrongful termination in violation of public policy
#### ( GE Defendants, Fragomen Defendants As GE Business Partners)

**298.**    Plaintiff  realleges, reasserts, and incorporates by reference the facts and

allegations stated in the previous paragraphs; as though fully set forth herein, as well as facts

currently unknown

**299.**    Plaintiff alleges that Plaintiff's termination was wrongful because it was in

Violations of the public policy of the United States in that Plaintiff's termination was in retaliation for

Plaintiff's opposing and reporting illegal activity, as described in preceding allegations for -----Under

the public-policy an employee is wrongfully discharged when the termination is against an explicit,

well-established public policy (allowing an exception to the at-will doctrine serves to equalize the

imbalance of power that exists in an employment relationship in terms of public policy exception)

**300.**   at-will employee MADHURI stated a cause of action for wrongful discharge
where the employee would have been forced to violate the law in order to avoid
being terminated.

**301.**   District court of Massachusetts judges and first circuit intentionally, to terrorize
Trivedi, didn't apply Massachusetts Savings statute…in order to make this claim –
timely….This claim was timely .. entire legal argument has been trashed
illegally..Trivedi's objections to R&R ECF 143 and first circuit opening brief have
legal arguments, facts for this.

## 27.6 SIXTH COUNT
### Breach of the implied covenant of good faith and fair dealing Breach of contract good faith, Breach of  fiduciary duty, 17 CFR § 229.406 -Code of ethics ,tort, Other common-law limitations including actions based on the (1)intentional infliction of emotional distress(claim also already in MAD lawsuit), (2)intentional interference with a contract (claim also already in MAD lawsuit)

#### ( GE Defendants, Fragomen Defendants As GE Business Partners Foley & Mansfield Defendants)

**302.**    Plaintiff  realleges, reasserts, and incorporates by reference the facts and

allegations stated in the previous paragraphs; as though fully set forth herein, as well as facts

currently unknown.

**303.**    Breach of fiduciary duty applies to plaintiff as well as GE stockholders, shareholders.

**304.**    Covenant-of-good-faith that terminations made in bad faith or motivated by

malice are prohibited. That's what exactly GE did- terminated plaintiff Trivedi in bad faith and was

motivated by malice, conspiracy as she didn't participate in GE fraud scheme, opposed and spoke up.

**305.**    GE is required by SEC rule to include code of business conduct and ethics

including in its Annual report form. And comply with it. **17 CFR § 229.406 -Code of ethics.**

**306.**    <u>**Rules enacted by the major stock exchange NYSE**</u>

 The NYSE requires each publicly traded company to publish a Code of Business Conduct

and Ethics promising not to retaliate against employees; <u>**GE to promise broad whistleblower**</u>

<u>**protection;**</u> protect employees/plaintiff Trivedi who made whistleblower disclosures in "good faith,",

fair dealing as well. Madhuri Trivedi protected under the whistleblower protection policies in

corporate codes of ethics as she was following that.

    First, the stock ex-changes, NYSE require their listing issuers to adopt a Code that

applies to all employees.  Second, the Code must provide for an enforcement mechanism to

encourage prompt, internal reporting of violations of the Code.( *See* NYSE LISTING MANUAL §

303A.10) .The NYSE listing requirements specifically mandate that the Code include corporate

assurances that it will not retaliate against an employee for reporting violations of the Code;

NYSE requires that companies protect employees who make reports in "good faith," ***Encouraging***

***the reporting of any illegal or unethical behavior.***

**NOTE:General policies about whistleblowing are not enough; these corporate governance**

**standards require *promises* not to retaliate**

*307.*   **Plaintiff Trivedi signed as a condition of employment at the time of joining GE**

**policies-The Spirit and the letter.** ( letter is also part of SEC filing DEF 14A)— it states that *"You do not need to be certain that a violation has occurred. At the same time, you have an obligation to promptly raise a concern when you see a situation in which our integrity principles or policies are not being followed. "*
*"RESPONSIBILITIES OF EMPLOYEES*
  - ✓ *Know and comply with the laws and regulatory requirements that affect your job responsibilities.*
  - ✓ *Be the Voice of Integrity and promptly escalate any potential issues that may lead to a regulatory compliance breach."*

**NOTE- GE has itself done so much fraud, scandals, cooked account books and more that these policies spirit. Policy Letter is merely a letter new employee required to read and sign and follow but company itself is not following.**

**308.**   GE Corporate Code, on the other hand, also promised to protect an employee who

discloses *any* illegal or unethical activity occurring within the corporation; hence such claims to go

forward under a breach of contract theory based on the employer GE 's anti-retaliation policy as it

stated on **GE policies-The Spirit and the letter** page 13 "GE absolutely prohibits retaliation".

**309.**   **Plaintiff Trivedi fulfilled her "Duty to Report Violations,"** which stated in

GE policies: The spirit and the letter(SEC filing DEF 14A):*" Penalties for violations >>Employees and leaders who violate the spirit or letter of GE's policies are subject to disciplinary action up to and including termination of employment. Misconduct that may result in discipline includes: • Violating GE policy, Failure to promptly raise a known or suspected violation of GE policy , Retaliation against another, employee for reporting an integrity concern,• Failure to demonstrate leadership and diligence to ensure compliance with GE policies and law.*

*310.*   <u>GE SEC filing DEF 14A-Code of Conduct</u>. *All directors, officers and employees of GE must act ethically at all times and in accordance with the policies comprising GE's code of conduct set forth in the company's integrity policy*

**311.**   <u>GE's Anti-retaliation Promise as an Express Contract as well==also answer to</u>

<u>GE's defense that it was at-will employment.</u>**These anti-retaliation protections supersede any**

**private ordering between parties GE and plaintiff Trivedi, including an at-will arrangement,**

**that would permit an employer GE to fire or otherwise retaliate against a plaintiff Trivedi for**

**reporting misconduct.**

113

**312.    Implied contract**

Plaintiff had an implied contract of employment for so long as Plaintiff performed

Plaintiff's job in a satisfactory manner.Trivedi performed her job in a satisfactory manner. Even in

her performance appraisal ( **(technical performance as well) (EXHIBIT Case 1:19-cv-11862-PBS**

**Document 51-3 Filed 10/10/19 Page 66- 71**)) –GE manager rated her performance as "meeting

expectations" but made up that it is her communication skills, relationship skills which needs to be

improved and as a result of PRETENSE/made up false/retaliatory.

**313.    GE made Good faith implied job contract that GE will do H1, yearly extension of**

**H1 and  her greencard** As plaintiff was on her sixth year of H1B..After SIXTH year on H1B unless

employer timely files greencard paperwork ,H1 B can't be extended nor can one work for another

employer/change job..That's what exactly GE did.

         Also despite several requests during mediation, and arbitration and a letter to CEO

of GEHC by immigration attorney Jeff Goldman(EXHIBIT Case 1:19-cv-11862-PBS Document
51-3 Filed 10/10/19 Page 78 -80 ) –GE didn't file I 140 which would have allowed her to extend
her H1B and leave GE and work for another employer.

         We requested at that time that GE keep me on leave without pay and just do
paperwork. But GE didn't care. It is also illegal to cancel H1 B while mediation and arbitration is
pending because without H1 B I had no way to be in country legally which was a weakness –GE and
arbitrator used that (H1 B cancellation ) **(EXHIBIT** Case 1:19-cv-11862-PBS Document 51-3
Filed 10/10/19 Page 78 -80 **)**as tools.

**314.**    Defendant breached its contract with Plaintiff by: Terminating Plaintiff in breach

of the promises made to Plaintiff; terminating plaintiff in violations of public policy ,state and federal

statutes, regulatory agencies including but not limited to DOD, FDA, SEC, DOL rules and

regulations. Also in violation of all other anti-retaliation, whistleblower protection laws .Cause of

action claim -----stated here. Terminating Plaintiff without good cause as she did meet her

performance **(technical performance as well) (EXHIBIT Case 1:19-cv-11862-PBS Document 51-**

**3 Filed 10/10/19 Page 66- 71)**

**315.**    The company induced Ms. Trivedi; and that GEHC would make good faith efforts

to pursue permanent residency **(EXHIBIT** Case 1:19-cv-11862-PBS Document 51-3 Filed 10/10/19

Page 150**)**for her, only to fall far short on this promise. What is particularly frustrating is the fact that

GEHC did get past the most difficult part of the green card process—the US Department of Labor did

certify a Labor Certification Application for her ( Immigration has approved Ms. Trivedi's petition as

a person with exceptional ability/advanced degree individual).

**316.**    " **Federal Court cases have clearly faulted employers for this kind of inducement**

**and failure to use good faith in following up with this process. (EXHIBIT** Case 1:19-cv-11862-

PBS Document 51-3 Filed 10/10/19 Page 150**)**Also, the company **neglected to file the PERM labor**

**certification on timely manner (despite Ms. Trivedi requesting) (EXHIBIT** Case 1:19-cv-

11862-PBS Document 51-3 Filed 10/10/19 Page 78 - 80 **), which has resulted in that she could**

**not work for other employer**(preemptive) **in US**.

**317.**    Ms. Trivedi had emailed both ;Manager Dave Mehring and lead Nate Davis

mentioning this even before joining GEHC(EXHIBIT Case 1:19-cv-11862-PBS Document 51-3 Filed

10/10/19 Page 167) .So, they are not letting Ms. Trivedi go on with her own life. Knowing these

matters from beginning.  Also by cancelling H1  B so I can't proceed in arbitration or any other

court.( preemptive)"

**318.    Breach of contract**

**I**mplied covenant of good faith and fair dealing to GE and plaintiff's implied contract. As

stated above; Trivedi and GE created contractual rights, Trivedi relied on anti-

retaliation promise in the GE policies letter (which had **GE anti-retaliation policy which  created**

**an implied contract.)** she SIGNED as an condition of employment and followed duty to report

violations as expressed in GE policy, federal , state laws and rules, along with other courses at GE

that she was required to take as GE was in regulated environment.

**319.    An employer GE has a fiduciary duty to the employee Trivedi .** A fiduciary

relationship may be created by agreement of the parties. Trivedi and

GE created such relationship at the time Trivedi joined GE and when any of violations that Trivedi

believes and had proof that violated laws, statutes, regulations as stated in cause of actions in this

complaint along with violation of "GE Polices"; Trivedi objected, wrote to management , told them

in=person…While GE defendants ,Fragomen defendants BREACHED such fiduciary duty.

**320.**    courts have long recognized that when an employee is in a position of

management and conducts the business of an employer, he owes that employer a fiduciary

duty.(holding that employees "vested with policy-making authority [with]the ability to make

decisions which bind the company" owe a fiduciary duty). This fiduciary duty encompasses a duty of

care, loyalty, and good faith. [Trivedi and defendants here apply in this analogy]

**321.**    GE argument that Trivedi had POOR soft skills is not anything but PRETEXT and

bullying that management did ; GE falsely generated some emails and selectively solicited inputs

from few GEHC employees(these employees themselves where involved in Insite EXC fraud and

were failing TECHNICALLY either to FIX INSITE EXC OR to DEVELOP new platform that would

replace INSITE EXC) who would say Trivedi had soft skill issues ..GEHC management never

solicited/took into consideration/account feedback from DAVE SALLIS, JOE PURCELL, BARRY,

MOHEDDINE and several other managers, technical leads who were happy with Trivedi's technical

as well as SOFT SKILLS.

**322.**    The breach is actionable as there is proof that the plaintiff  Trivedi suffered damages

as a result of the breach any failure on part of the fiduciary to act ..a breach of fiduciary duty can be

any behavior that is not in the best interest of the client;

**323.    GE's breach of an anti-retaliation policy in a Code of Ethics give rise to a**

**breach of contract claim.** *Federal district court held that an employer's anti-retaliation policy created [3]legally enforceable rights.* As alleged above on several elements; GE breached contract.

District court of Massachusetts judges and first circuit intentionally, to terrorize Trivedi, didn't apply Massachusetts Savings statute…in order to make this claim – timely….This claim was timely .. entire legal argument has been trashed illegally..Trivedi's objections to R&R ECF 143 and first circuit opening brief have legal arguments, facts for this.

### 27.7 SEVENTH COUNT
### 9 U.S.C. § 12, 9 U.S.C.§ 10(a)(3),9 U.S.C. § 10(a)(2) 9 U.S.C.§ 10(a)(1) and challenging arbitration award under common law AND Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 -9 U.S.C. §§ 401-402 (ALL defendants)

**324.**    Plaintiff  realleges, reasserts, and incorporates by reference the facts and

allegations stated in the previous paragraphs; as though fully set forth herein, as well as facts

currently unknown.

**325.    Arbitration carries no right to trial by jury that is guaranteed by the Seventh Amendment**

**326.**    This court has supplemental jurisdiction as it related to claims bought in here.

**327.**    The FAA's vacatur  provision"show[s]a desire of Congress to provide not merely for

any arbitration but for an impartial one."  Commonwealth Coatings Corp. v. Cont'l Cas. Co., 393 U.S.

145, 147 (1968).

**328.    the award was procured by corruption, fraud, or undue means**

**329.    Corp Couns Gd to ADR Techniques § 2:93 –(Corporate Counsel's Guide to Alternative Dispute Resolution Techniques)The arbitration award in the courts—Concerns about the**

---

[3] https://www.zuckermanlaw.com/code-of-ethics-whistleblower-protection-lawyer/

==arbitrator—Arbitrator misconduct, (The general rule is that refusal by arbitrators to hear pertinent and material evidence is sufficient misconduct to justify vacating an award.)==

– as Trivedi already filed in District of Massachusetts and first circuit court filings 10 times, that **arbitrator didn't include deposition of Madhuri Trivedi and GE architect Bill Barbiuax into EVIDENCE as hearing; along with other material. Arbitrator also didn't enter into evidence exhibit 57– futility of stack ranking ..**(A fair hearing involves notice, an opportunity to present relevant and material evidence and the arbitrators were not infected with bias.)… First 9 PAGES (

==EXHIBIT 5== - Hearing transcript that PROVES that depositions were not entered; has already been part of first circuit and district of Massachusetts court record. But none of the judges CARES>>>this is bullying, bias, and intentional harassment where JUDGES OMISSIONS, **Overlook, IGNORE, not mention – crucial evidence that would lead to denial of GE's motion to dismiss. That's why these judges should be in jail. Because they** are intentionally being corrupt- thinking that there is NO ONE ABOVE THEM…

**As GE choose private arbitrator** mentioning that public arbitrator Peter David from Wisconsin Workforce development who works for government hence arbitration record will become public so GE doesn't want Peter Davis to be an arbitrator and choose a PRIVATE ARBITRATOR…Email from GE attorney Sean Scullen CONFIRMING that GE won't allow public arbitrator is already part of this courts' case RECORD –but who cares..

        Arbitrator Peter Meyers didn't allow deposition of GE architect  into evidence at arbitration hearing. where Bill testified that GE product was insecure and defective for years and lot more...The whole arbitration was illegal and I even left hearing on second day and GE did arbitration hearing alone without me-GE and arbitrator on second day for whole day finished arbitration..

**Arbitrator also didn't enter into arbitration hearing evidence "deposition of plaintiff Madhuri Trivedi" where I alleged retaliation, discrimination, whistleblowing, hostile, offensive,**

intimidating work environment and more. **Arbitrator was picking and choosing selective documents, testimony into hearing evidence that would benefit GE( from whom he was getting PAID so he has vested interest to) and not employee Trivedi; along with LINE of QUESTIONING that went at hearing.**

**330.    Some of the items from Bill Barbiuax deposition(There are several other items Bill admitted as well) – full deposition is part of district of Massachusetts lawsuit – which has been ignored by corrupt judges.**

     1.  Deposition of GE architect Bill Barbiux taken by Madhuri.

Q Did I treat you with respect when I was withGE?

A Yes.

Q You had good working relationship with me , right?

A Yep.

Page 61 Q So in your opinion, the work I did for – I did for security VNC server issues on Surgery was good work, and it was good for GST given that I was a couple of months old within the company, and it was -- I was bringing tons of issues, and it was too much for them.I was expressing tons of concerns, and it was truth. It was not just -- It was happening. Things were not working the way they were supposed to.

Q Good work for GST.

A Yes. Technically, I thought what you were doing -- a lot of what you were doing Made sense………………

Page 107 Q Do you have knowledge that there were design nonconformances, means defects in Insite ExC in production?

A Yes.

Q Do you have any idea of how many of them?

A I don't recall. I know there were several hundred or more.

Q So it says 465.

A Okay.

Q So your -- I'm talking about -- I'm just consolidating everything in one sentence. Your point was connectivity is better than defects in Insite ExC. At the least we wouldhave connectivity?

A Right.

Page 168 Q At the time of Insite ExC release, when it was public facing, it failed a security test or had the security concerns?

A Yes.

Page 170 Q Insite ExC in production had security issues. Is that correct?

A The user interface, which is a little bit different, yes, had some security vulnerabilities found during Scabba testing. Our mitigation was several things: One of them was to move the user interface inside GE.

Q So some of the security vulnerability still exist today?

A Yes

Q So any GE employee inside GE network can potentially try to exploit that vulnerability?A Depends on the vulnerability.

Q So is this -- Do you consider that's insider threat detection, and not having Proper insider threat detection in place? Its considered insider threat detection, right? ………………Given those security issues still exist where an insider can try to potentially – or can try to exploit those.

Q Is it considered good security strategy or is it --

A To move the interface to the inside?

Q And keep those security vulnerability as --

A That was one of our only options. ……………..The user interface was upgraded from 4.1 to 5.2. That's where a lot of the vulnerabilities came in, so –

**331.**    9 U.S. C. § 12. Notice of motions to vacate or modify; service; stay of proceedings; though Foley and Mansfield law firm I hired to send a letter to GE in July 2014. Arbitrator award was given in August 2014, Foley& Mansfield had that award next day; but instead of mentioning 9 U.S. Code § 12. motion to vacate; these lawyers forwarded me to Quitam lawyers and  c**losed employment file.. ..Hence I request this court to CONSIDER MITIGSTING CIRCUMSTANCES THT WERE BEYOND CONTROL AND KNOWLEDGE OF TRIVEDI that this** 9 U.S. Code § 12. Notice of motions to vacate or modify was not filed in district court earlier.

**332.**    Forsythe Int'l, S.A. v. Gibbs Oil Company of Texas , 915 F.2d 1017, 1023 (5th Cir. 1990)  - To vacate an arbitration award based on the refusal to hear and material evidence, the evidentiary error "must be one that is not simply an error of law but which so affects the rights of a party that it may be said he was deprived of a fair hearing."  Forsythe Int'l, S.A. v. Gibbs Oil Company of Texas, 915 F.2d 1017, 1023 (5th Cir. 1990); **Hence arbitrator in Trivedi's case deprived Plaintiff Trivedi of a fair hearing as mentioned above and to be proved at discovery and trial.**

**333.**    FAA a catch all clause allowing vacatur for any other misbehavior  resulting  in substantial  prejudice  to  the  rights  of  any  party.   This  clause  has  been  successfully  invoked, for  example,  when  the  arbitrators  received  and  relied  on  evidence  on  an  ex  parte  basis  outside  the presence of the opposing party.

New York Article 75 "Judicial review of an arbitration award and vacatur to instances where the award is violative of a strong public policy, is irrational.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**334.**   9 U.S. Code § 9. Award of arbitrators; confirmation; jurisdiction; procedure ; GE and

Trivedi has not confirmed award of arbitrator TILL DATE AUGUST 2019 in any district court

through JUDGEMENT.

**335.**   Trivedi didn't know what "Solutions" was when she joined GE company and signed

that as a condition to get GE job offer. It is not proper for GE to later FORCE "solutions" like they

did when GE never provided copy of "Solution" at the time to condition of employment.  Trivedi

came to know about mandatory arbitration when immigration attorney Jeff Goldman sent a letter to

GE CEO Mike Swinford; and GE attorney replied that Trivedi is bound by arbitration.

**336.**   as a matter of public policy, various claims brought in this Trivedi's complaint. Does

arbitrator has authority to hear in a PRIVATE HOTEL ROOM in A PRIVATE RECORD FOR

ABITRATION PROCEDINGS AND HEARING SUCH COMPLEX causes of action involving

cyber security, public health, safety, consumer finance, Department of defense contracts, security and

exchange commission law …Though Dodd Frank act, SOX claims, False claims act claims and

CFPA-finance related claims are PRECLUDED form GE's mandatory arbitration…

**337.**   the manifest disregard of law doctrine on her disregard of

the law.See, e.g.,In re Wal-Mart Wage and Hour Emp't Practices Litig., 737 F.3d 1262,1267 n.7 (9th
Cir. 2013) ("Courts may also vacate arbitration awards on the
basis of an arbitrator's manifest disregard for law. . . . 'Although the words "manifest disregard for
law"do not appear in the FAA, they have come to serve as a judicial gloss on the standard for vacatur
set forth in FAA § 10(a)(4).'" (quoting Johnson v. Wells Fargo Home Mortg., Inc., 635 F.3d 401, 414
(9th Cir. 2011))); Wachovia Secs., LLC v. Brand, 671 F.3d 472,483 (4th Cir. 2012) ("We read this
footnote [in Stolt-Nielsen] to mean that manifest disregard continues to exist either as an independent
ground for review or as a judicial gloss on the enumerated grounds for vacatur set forth at 9 U.S.C. §
10." (quotation marks omitted));
There is CIRCUIT CONFLICT about manifest disregard of law.

**338.**   First Circuit's decision in Hoteles Condado Beach, La
Concha & Convention Ctr. v. Union De Tronquistas Local 901, 763 F.2d 34, 38 (1st Cir. 1985).The
First Circuit found that the arbitrator's failure to give any weight to this testimony violated 9 U.S.C. §
10(a)(3), since the transcript of the testimonywas relevant and the sole evidence available to establish
the employee's culpability.  In reaching this decision, thecourt noted that a federal court may vacate

an arbitrator's award only if the arbitrator's refusal to hear pertinent and material evidence prejudices the rights of the parties to the arbitration proceedings,"

Gulf Coast Indus. Workers Union v. Exxon Co., USA, 70 F.3d 847, 850 (5th Cir. 1995), the Fifth Circuit upheld a district court's order to vacate an arbitration award pursuant to 9 U.S.C. § 10(a)(3)based on the arbitrator's improper conducting misleading a party as to the admission of certain pieces of key evidence. However, the arbitrator had prevented Exxon from presenting evidence regarding the chemical analysis of the ciga The D.C. Circuit has similarly noted that petitionersseeking to invoke 9 U.S.C. § 10(a)(3) must demonstrate that the excluded evidence was pertinent and material to the controversy, and that the exclusion of the evidence deprived the petitioners of a fundamentally fair hearing. SeeLessin v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,481 F.3d 813, 817-18 (D.C.Cir.2007)rette,

**339.    Trivedi's deposition, deposition of Bill barbiux, deposition of Mehoddine was**

**not entered into evidence; not arbitrator allowed Trivedi to question various witnesses where it**

**would help Trivedi to prove her case and instead continuously insulted and interrupted Trivedi**

**; stopped her from asking questions..**[Similarly for Trivedi case]

## 27.7.1    In *Move, Inc. v. Citigroup Global Markets, Inc.*, the Court, for the first time, held that equitable estoppel can toll the Section 12 three-month limitations period.

**340.    The court of appeals panel held that the plaintiff's motion was not**

**untimely because the Federal Arbitration Act is subject to equitable tolling.. Details in**

**EXHIBIT 11**

## 27.8  EIGHTH COUNT
## 31 U.S.C. §3729 et.seq. AND 31 U.S.C. § 3802 AND RELATED WHISTLEBLOWER REPRISAL ; 31 U.S.C. § 3730(h)(3) under ongoing fraud and ongoing violations ( ALL defendants)

**341.    Plaintiff  realleges, reasserts, and incorporates by reference the facts and**

allegations stated in the previous paragraphs; as though fully set forth herein, as well as facts

currently unknown.

**342.    It is also equitable estoppel as due to my immigration hardships attorneys where**

not able to file Quitam …And immigration that GE screwed prevented me from fighting for clause of

action  mentioned here..

1

Ms. Trivedi's claim of ongoing fraud

2

Trivedi came to know about Scott Erven's 2018 dhs.gov , cisa.gov  alert on February 2019– Trivedi filed lawsuit in May/ August 2019.. Text message communication to Scott Erven is PROOF that Trivedi came to know about this alert on February 2019

3

**343.**    I found out about Scott Erven's GE alert, on my father's death anniversary February

4

22…while I was browsing internet. I found Scott's cell phone from his firm- Pricewaterhouse cooper.

5

6

I immediately called and left his a message. And below is his reply. He was shocked hiring my story.

7

And he said GE didn't do any release since 2014 that he reported to GE. (Calling Scott as a witness

8

would prove a lot)**Message by (\*\*9) 3\*2-66\*\*: I just landed. Have a layover so could call you**

9

**quick here in like 5-10 minutes. Does that work?, February 22 2019, 10:02 PM.**

10

11

**344.**    I am requesting whistleblower protection and reprisal relief under these laws as well.

12

GE violated <u>FEDERAL FALSE CLAIMS ACT ,</u>31 U.S. Code § 3802 ; False

13

claims and statements; Liability- to the actions of government contractor by failing to disclose

14

15

product defects. General Electric is a government contractor.

16

**345.**    GE violated Civil False Claims Act (31 U.S.C. §3729 et seq.) by knowingly

17

presenting false or fraudulent medical device SALES and service contract submitted to government,

18

conspired to defraud the government. GE conspired and "knowingly" defrauded government because

19

20

GE had actual knowledge of the information about InsiteEXC defects, design non conformances,

21

performance issues, cyber security vulnerabilities and potential  risks these vulnerabilities posed to

22

insider attacks as well as attacks from outside network that could affect/affect patients possible

23

diagnosis of Imaging scan, and much more unspecified attack vector, acted in deliberate ignorance of

24

the truth, falsified of the  InsiteEXC information ; continuously selling and integrating InsiteEXC of

25

all kinds of GE medical devices for years to generate revenue and earn millions worth of medical

26

device purchases and service contracts by government. As per 31 U.S.C. §3729 et seq. Plaintiff

27

28

Trivedi claims here in -Not proof of specific intent of GE to defraud is required .It is also fraudulent inducement.

**346.**    Plaintiff  Trivedi engaged in protected activity; GE had knowledge that Plaintiff Trivedi was engaged in protected activity; GE took an action that had a negative effect on the terms, conditions, or privileges of employment, such as termination,  harassment and any other act that would dissuade a reasonable person from reporting violations of the False Claims Act; and GE retaliated against Plaintiff  Trivedi because of this conduct.

**347.    Plaintiff has alleged properly all the elements as stated above in this complaint.**

**348.**    Further stopping me from pursing Quitam and/or any other claims by cancelling my immigration H1B. Because quitam attorneys said that given Trivedi's immigration situation they were hesitant to invest million in the quitam lawsuit if they take on contingency basis.

**349.    I didn't HIRE OR PAY Andrew Beato-** He looked at my claims free. Andrew Beato was looking himself into Quitam matter but somehow GE found out and GE contacted Andrew's partner to represent GE in another matter..So Andrew left saying that as his law firm partner is going to represent GE ,he can't work on my quitam /false claims act case.

> From: Andrew M Beato <ABeato@steinmitchell.com>Date: Tue, Sep 9, 2014 at 3:27 PMSubject: Re: Call To: Madhuri Trivedi <mcis99@gmail.com>, "James R. Kelly" <JKelly@steinmitchell.com>
> Thank you Madhuri. I appreciate your clarification.    If there are any other reporting or disclosures you made to government agencies or to attorneys, please let us know so that we are aware of it.  In the meantime, we appreciate your patience.
>  Andrew M. Beato ,Stein Mitchell Muse Cipollone & Beato LLP
> 1100 Connecticut Avenue, NW Suite 1100 Washington, DC 20036(202) 737-7777 (Main Number) (202) 296-8512 (Fax) ABeato@SteinMitchell.com
> From: Madhuri Trivedi <mcis99@gmail.com>Date: Tue, 9 Sep 2014 17:03:39 -0500
> To: James Kelly <JKelly@steinmitchell.com>Cc: Andrew Beato <abeato@steinmitchell.com>
> Subject: Re: Call
> Attorney Andrew, thanks for your time. I had reported to OSHA-whistleblower.gov.
> They looked in to it. and said it does not fit into their 22 statues. They have device

manufacturing related statue but it excludes medical device and drug manufacturers. THey said it is a valid concern, And employee does not have to prove , as long as have believed reasonably that there was a violation and reported. But in my case I had evidence which was good.

**350.**    Andrew Beato who is a quitam attorney in Washington  DC; in 2014 after reading

deposition of GE architect Bill Barbiux( Plaintiff Trivedi took Bill's deposition at conference room at

her apartment building during arbitration)..Andrew mentioned after reading deposition I took that "

Madhuri was an attorney preparing or doing work for you because deposition you took is professional

work –similar to what and how a lawyer would do"

**351.**    GE's above mentioned conduct with scienter , directly or indirectly made untrue

statements of material fact and omitted to state material facts necessary in order to make the

statements made, in light of the circumstances under which they were made; harmed investors as they

relied on false, misleading, untrue statemetns GE made in order for them to make investment decision

regarding GE.

**352.**

## 27.8.1    Allegations of ongoing fraud should not be dismissed on the basis of the statute of limitations; when Trivedi allege "ongoing fraudulent scheme"

Scott Erven's alert in 2018, specifically mentions "INSITE EXC" as alleged in Trivedi case ;ECF 51-3 Page 1 to 16

✓  Trivedi didn't know what FDA was doing, to the extent that US attorney from SanFrancisco for

Quitam contacted FDA(as shown in FOIA from August 2019)..

Trivedi ECF 51 FDA FOIA Note 7 page 119-122

_____

**From:** Smith, James - OCC
**Sent:** Thursday, February 18, 2016 8:56 AM
**To:** Myers, Charles F
**Subject:** Question ref: complaints about a GE software interfacing program
Charles—
The US Attorneys Office in San Francisco contacted me yesterday asking about whether there had been an FDA investigation into allegations of safety issues with the GE Insite Exc,

1

2        Jim Smith
Senior Counsel
Office of the Chief Counsel
US Food and Drug Administration
Telephone: 301.796.8718
cell: 202.510.4283

3

4

5  **353.**   United States ex rel. Campie v. Gilead Scis., Inc., 862 F.3d 890, 902 (9th Cir. 2017)

6  applying to **Trivedi's** case (Under all three theories the essential elements
of False Claims Act liability are: (1) GE made false statement or fraudulent course of conduct, (2)

7  made with scienter, (3) that was material, )

8       United States ex rel. Sperandeo v. Neurological Inst. & Specialty Centers PC, No. 2:14-CV-
158-JVB-JEM, 2021 WL 1177071, at *4 (N.D. Ind. Mar. 29, 2021) ("Spe**randeo counters that**

9  **allegations of ongoing fraud should not be dismissed on the basis of the statute of limitations. "**)

10

11     *United States ex rel. Fischer v. Cmty. Health Network, Inc.*, No. 1:14-cv-01215-RLY-DLP, at
*12-13 (S.D. Ind. Nov. 25, 2020) ("**thus, because the second amended complaint**

12  **alleges ongoing FCA violations beginning in 2009, the applicable statute of limitations does not
bar the claims**. (Id. at 11-12)")

13  ("31 U.S.C. § 3731. Under Federal Rule of Civil Procedure 8(c)(1), **a statute of limitations
argument is an affirmative** defense, not an attack against the sufficiency of the pleadings. *U.S. ex*

14  *rel. McGee v. IBM Corp.*, 81 F. Supp. 3d 643, 656 (N.D. Ill. 2015); Fed. R. Civ. P. 8(c)(1).")

15

16  **354.**    (Here, the Second Amended Complaint alleges Campie was told it was "none of his concern"
    when he discussed contamination and adulteration problems on multiple occasions) **[As GE has

17     treated Trivedi similar way, that it is none of her concern]**

18  **355.**   United States ex rel. Rush Univ. Med. Ctr., 929 F. Supp. 2d 807, 815–16 ,826, 827 (N.D. Ill.
2013) ("[A] plaintiff is not required to plead facts in the complaint to anticipate and defeat

19  affirmative defenses." *Indep. Trust Corp. v. Stewart Info. Servs. Corp.,* 665 F.3d 930, 935 (7th
Cir.2012). ")A statute of limitations is an affirmative defense. Fed.R.Civ.P. 8(c)(1). Dismissing a

20  claim as untimely at the pleading state is an "unusual step, since a complaint need not anticipate and
overcome affirmative defenses, such as the statute of limitations." *Cancer Found., Inc. v. Cerberus*

21  *Capital Mgmt., LP,* 559 F.3d 671, 674 (7th Cir.2009). "[A] federal complaint does not fail to state a
claim simply because it omits facts that would **\*816** defeat a statute of limitations

22  defense." *Hollander v. Brown*, 457 F.3d 688, 691 n. 1 (7th Cir.2006).

23  ("Here, R**elators allege an ongoing fraudulent scheme that Defendants allegedly** continued to
execute after June 21, 2004. (*See* R. 168, Fourth Am. Compl., ¶¶ 110, 137, 145.) **Accordingly,**

24  **dismissal based on the statute of limitations is premature.** *See Upton*, 900 F.Supp.2d at 831–32.")

25  **356.**

## 27.8.2     Trivedi's retaliation claim under 31 U.S.C. § 3730(h) (2) ; can

26          proceed Pro Se and ongoing fraud makes claim timely

27

28       31 U.S.C. § 3730(h) (2)**Relief.**—Relief under paragraph (1) shall include reinstatement
with the same seniority status that employee, contractor, or agent would have had but for the

discrimination, 2 times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees. An action under this subsection may be brought in the appr**opriate district court of the United States for the relief** provided in this subsection.

District court is not letting trial or calling witness. Because Dave Sallis- manager with whom Trivedi worked (he did stated to me that department of defense was complaining to him about not having proper encryption)(Sallis said Ge has paid him to keep his mouth shut)

**Trivedi** has stated several times, ongoing violations and vulnerabilities; entitle me to still be within time limit. Though, I would admit that I am Pro Se. But given the highest degree of corruption, even at federal judge level; it is in my best interest to represent myself. GE can buy any lawyer. So first circuit must waive the requirement that FCA cases can only be litigated by attorneys. I am almost an attorney now. Plus I am fighting serious corruption.

Trivedi's individual retaliation claims for doing protected activity under 31 U.S.C. § 3730(h)(2) ( it does not say anywhere that pro se person can't bring retaliation claim); for that Trivedi can file a lawsuit Pro Se.

**Judge Kelley ECF 135 page 17** "Her retaliation claim is time-barred because it was not filed within three years of her termination from GE Healthcare. *See* 31 **U.S.C. § 3730(h)(3)"**

<mark>**Trivedi ECF 51 page 220**</mark>[4]
**357.**    Plaintiff Trivedi engaged in protected activity; GE had knowledge that Plaintiff
**358.**    Trivedi was engaged in protected activity; GE took an action that had a negative effect

---

[4] Harrington v. Aggregate Indus., 668 F.3d 25, 31 (1st Cir. 2012) ("The McDonnell Douglas approach fits comfortably with the test that courts generally apply to retaliation claims under section 3730(h)(1). This test requires an employee to show that (i) he was engaged in conduct protected under the FCA; (ii) the employer had knowledge of this conduct; and (iii) the employer retaliated against the employee because of this conduct. See Mann v. Heckler & Koch Def., Inc., 630 F.3d 338, 343 (4th Cir.2010); Maturi v. McLaughlin Research Corp., 413 F.3d 166, 172 (1st Cir.2005). ")

on the terms, conditions, or privileges of employment, such as termination, harassment and any other act that would dissuade a reasonable person from reporting violations of the False Claims Act; and GE retaliated against Plaintiff Trivedi because of this conduct.

*Mello v. Stop & Shop Cos.,* 402 Mass. at 560 n. 6, 524 N.E.2d 105 ("We assume ... that an at-will employee who 'blew the whistle' within his company on wrongdoing is entitled to protection [even **\*\*1019**] though before discharge he did not complain to public authorities]"). Falcon v. Leger, 62 Mass. App. Ct. 352, 364, 816 N.E.2d 1010, 1018–19 (2004)

**359.**

## 27.8.3    Outside three year statute period conduct helps to establish a scheme for false claims

Nor does the FCA statute bar an employee from using prior acts as background evidence to support a claim. If (outside three year statute period)conduct helps to establish a scheme for false claims for payment from the United States, then the conduct may still be included and considered in the pleading as background information. Therefore, the court can still consider **Trivedi case's Scott erven's 2018 global** alert, **June 2022 CISA.GOV alert related to remote connectivity,** conduct described in the pleading to the extent that it provides background for the alleged scheme of presenting false claims for payment to the United States after **Trivedi termination, May 31, 2013.**

**360.**

## 27.8.4    Individual Retaliation Claim is not subject to the FCA procedural requirements [Trivedi has met pleading requirement at motions to dismiss level for this claim]

**Below is a case, in which district judge Patti B Saris ruled….**

Sheppard v. 265 Essex St. Operating Co., LLC, 299 F. Supp. 3d 278, 281, 282, 283, 284(D. Mass. 2018) ("

### II. Individual Retaliation Claim

6Sheppard also seeks to bring an individual retaliation claim under Section 5J of the MFCA. There is little case law construing the MFCA's provisions. See Scannell v. Attorney Gen., 70 Mass.App.Ct. 46, 872 N.E.2d 1136, 1138 n.4 (2007). But "the MFCA was modeled on the similarly worded Federal False Claims Act" ("FCA"), and therefore courts "look for guidance to cases and treatises interpreting the [FCA]" when interpreting the MFCA. Id.; cf. Univ. of Mass., Worcester, 80 F.Supp.3d at 304 n.9 (describing scope of protected conduct under retaliation provisions of MFCA and FCA as "nearly identical"). ")

("Furthermore, retaliation actions under the analogous FCA provision "are not subject to the **[FCA] procedural requirements"** of filing in camera and serving the government. **United States ex rel. Pilon v. Martin Marietta Corp., 60 F.3d 995, 1000 (2d Cir. 1995). As such, Sheppard's failure to meet the particularity requireme**nt of Fed. R. Civ. P. 9(b), and her noncompliance with the procedural requirements of Mass. Gen. Laws ch. 12, § 5C(3), do not—on their own—make her motion to amend to include a retaliation claim futile.")

Morris shared concerns with Zarella about Sheppard's performance. Docket No. 51–1 ¶ 16. On November 18, 2014, Essex presented Sheppard with a Performance Warning **\*282** an**d Plan for Improvement ("PIP"),**

## [Trivedi was put on a PIP by GE for not joing fraud scheme]

Docket No. 51–1 ¶ 20, which she did not sign because she disagreed with the way Essex characterized her responsibilities with respect to the MMQ project, Sheppard Dep. at 111:4–113:22. Sheppard's PIP expressly states that her failure to immediately improve her performance could lead to termination. Docket No. 51–9 at 2.

Internal reporting and objecting to employer directives fall within the scope of "protected conduct," as required to support a retaliation claim . **[Trivedi reported first internally]**

See Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson, 545 U.S. 409, 416, 125 S.Ct. 2444, 162 L.Ed.2d 390 (2005) (stating that plaintiff "need not allege that the defendant submitted a false claim" to state FCA retaliation claim).
**\*at 278, 286**
The retaliation provision of the MFCA mandates that an employee shall be entitled to be made whole if she is terminated "because of lawful acts done by the employee... in furtherance of an action under [the MFCA], or other efforts to stop a violation of [the MFCA]." Mass. Gen. Laws ch. 12, § 5J(2).

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**361.**
## 27.8.5    Nonconforming product & service by GE
There is ample evidence presented which makes GE liable for FCA.
**362.**
## 27.8.6    Pleading requirement for retaliation claim

United States ex rel. Karvelas v. Tufts Shared Servs., Inc., 433 F. Supp. 3d 174 (D. Mass. 2019), appeal dismissed sub nom. Karvelas v. Tuft Shared Servs., Inc., No. 20-1616, 2020 WL 7587147 (1st Cir. July 24, 2020)
 (A False Claims Act (FCA) retaliation claim need not meet the heightened pleading-with-particularity requirements for a fraud claim. 31 U.S.C.A. § 3730(h); Fed. R. Civ. P. 9(b). )

 ( The retaliation provision of the MFCA is nearly identical with respect to the scope of protected conduct. See M.G.L. c. 12 § 5J(2) (protecting employees that engage in "lawful acts ... in furtherance of an action under" the MFCA). ")

Massachusetts ex rel. Powell v. Holmes, No. CV 18-11336-FDS, 2021 WL 2685330, at \*12 (D. Mass. June 30, 2021) Plaintiff-relators nonetheless contend that "[g]iven the close relationship between the federal False Claims Act and the Massachusetts Act, we begin by looking to the federal

Act and its understood meaning and application at the time the General Court took action."

## 27.9 NINTH COUNT
### Breach of fiduciary, duty breach of the implied covenant of good faith and fair dealing ,breach of contract good faith, negligence
#### (Foley & Mansfield, Fragomen Defendants)

**363.**    Plaintiff realleges, reasserts, and incorporates by reference the facts and allegations stated in the previous paragraphs; as though fully set forth herein, as well as facts currently unknown.

**364.**    District court of Massachusetts dismissed Trivedi's claims as not having personal

jurisdiction in Massachusetts over Foley & Mansfield. While these corrupt judges stayed BLIND to

Foley & Mansfield's malpractice – that led to Trivedi not able to bring claims earlier..and these

judges didn't applied equitable tolling, fraud, aiding & abetting fraud to Foley defendants.

**365.**    A fiduciary duty is a duty or responsibility to act in the best interest of someone else. The person who is duty bound to another person, in a fiduciary relationship, is called a fiduciary. Such relationship existed between Foley and Trivedi.The fiduciary (defendant Foley) had duties such as acting good faith, being transparent with pertinent information, and being loyal to the plaintiff.Facts here as Trivedi stated prove that the defendant  Foley failed their duty by withholding pertinent information,  failing in their responsibilities or misrepresenting the statement of fact/ laws related to advising Trivedi on challenging arbitration in court, SOX, Dodd Frank SEC whistleblower claims and other claims (nor added in GE letter any of such information)

**366.**    I have mentioned history related to Foley's failure in previous section named "facts related to allegation" ; so Trivedi realleges, reasserts, and incorporates by reference the facts and allegations stated in the previous paragraphs

**367.**    **Foley didn't mention in letter sent to GE that Trivedi can legally challenge arbitration award; nor  made strong argument about claims brought here in this complaint.**  Though partner Seymour was employment, labor and arbitration specialist. Seven or so attorneys at Foley reviewed my file. None of them mentioned ever in LETTER SENT TO GE or LATER TO ME "**about going to district court for vacating arbitration award nor claims as mentioned in this complaint.**"

**368.**    David Haron referred me to another quitam law firm in Texas as shown here.

David Haron also asked me to call Patrick Burns in Washington DC; Patrick is director of Taxpayers

Against **Fraud**  https://taf.org  (**EXHIBIT 13**) .At that time as David said that Maro E. Bush,

1    Mercedes Varasteh Dordeski were partners with David Haron on Quitam side and David said they

2    both were PREGNANT. )

3    **369.    Even though next day of receiving arbitration award I forwarded award**

4    **(EXHIBIT 13) to David Haron,  Seymour Mansfield and Andrew Shedlock along with other.**

5

6    **And they all read it.**

7    **370.**    In 2016 Trivedi sent Email to Foley & Mansfield that **law firm failed to**
     **mention motion to vacate arbitration award at any time which cause Trivedi** significant

8    damages, financial loss.
     **371.**    the existence of a fiduciary relationship is not dependent solely upon a statute or

9    contractual relation. See EBC I, Inc. v. Goldman, Sachs & Co., 5 N.Y.3d 11, 20 (2005). Rather, the

10   actual relationship between the parties determines the existence of a fiduciary duty (e.g., the second
     type of fiduciary relationship). Id.In Meinhard v. Salmon, 164 N.E. 545, 546 (N.Y. 1928), Justice

11   Cardozo provided the "classic formulation" of a fiduciary duty:

12   **372.**    New York Court of Appeals has described the duty as arising from a relationship

13   "'between two persons when one of them is under a duty to act for or to give advice for the benefit of
     another upon matters within the scope of the relation.'" See EBC I, 5 N.Y.3d at 19, quoting

14   Restatement (Second) of Torts § 874, Comment a

15   **373.**    As shown here Foley & Mansfield acted in negligence, had a fiduciary duty,

16   breach this duty and duty breach of the implied covenant of good faith and fair dealing ,breach of
     contract good faith,. Trivedi suffered damages and financial loss due to that.

17   As their website states national law firm—any person would construe that they would be representing
     clients in any states , nationwide… www.foleymansfield.com/locations/minneapolis/

18

19   

20

21

22

23   https://www.foleymansfield.com/about/

24   

25

26   As a national law firm with more than 170 attorneys in offices from coast to coast, Foley & Mansfield
     provides legal expertise, creative solutions and extensive trial experience across multiple

27   jurisdictions. We are committed to a value-based business model, delivering results-oriented and
     cost-effective legal solutions that best meet our clients' needs.

28

131

Foley website did attempt to establish contact to MA residents by stating that it is national reach..
*Greenbroz, Inc. v. Laeger Built, LLC*, Case No.: 3:16-cv-2946-CAB (BLM), at *6 (S.D. Cal. Apr. 21, 2017) ("*See 3D Systems*, 160 F.3d at 1379 (holding that unsuccessful activities directed to residents of the forum state are sufficient to establish the first prong-Purposefully Directed Activities.) "……………….. Any actions in promoting and selling the Product in California relates to Plaintiff's allegations.

[ Thus, Plaintiff has satisfied this prong.( Arises Out Of Or Relates To))  As stated here Trivedi has satisfied first prong-Purposefully Directed Activities and Arises Out Of Or Relates To as Foley did try to sell, promote itself to MA residents thorugh it's website mentioning national reach. ]

Trivedi sent Foley a letter that Mass lawyer sent to **GE Jeff Goldman Exhibit (**Case 1:19-cv-11862-PBS Document 51-3 Filed 10/10/19 Page 78 -80 ) **in**

**amended complaint who has office 125 Washington street suit 204 Salem MA 01970**—which Foley reviewed.

Foley failed to ---it was gross negligence and HARM caused by Foley despite being paid for their service by Trivedi –is irreparable and irreversible as the damages and loss Trivedi suffered…

**374.**    Foley failed to bring up "at-will employment" exception to public policy –any

competitive attorney would have written a strong letter mentioning some or all of it…

Foley also failed to mention WFEA in their letter nor mention such claims as WFEA  for nationality,

gender,

Dear Mr. Stekloof and Mr. Krammer,

Please be advised that this firm represents Madhuri Trivedi ("Client" or "Ms. Trivedi") in requesting reinstatement to the position from which she was wrongfully terminated by GE Healthcare. We have thoroughly investigated this matter. In addition to our extensive interviews of our Client and review of voluminous documentation, including e-mails and various documents relating to the projects which Ms. Trivedi worked on while employed by GE, we have reviewed the pertinent documents relating to Ms. Trivedi's arbitration proceedings, deposition transcripts, mediation statements and communications with GE Healthcare Counsel..

**375.**    *Acharya v. Carroll*, 152 Wis. 2d 330, 334, 338 (Wis. Ct. App. 1989) ("An action against an attorney for malpractice may sound in tort or in contract. *Boehm v. Wheeler*, 65 Wis.2d 668, 676, 223 N.W.2d 536, 540 (1974). Acharya alleges negligence. His case sounds in tort. ") ("Because Acharya commenced this action within six years after he discovered the alleged negligence, he timely commenced this action. We reverse the order of the trial court dismissing his action on the basis of a three-year statute of limitations. "   ("*Lewandowski v. Continental Casualty Co.*, 88 Wis.2d 271, 277, 276 N.W.2d 284, 287 (1979). The establishment of causation and injury may, as here, involve allegations that the attorney's negligence deprived the plaintiff-client of a successful prosecution or defense of a prior claim. *Glamann v. St. Paul Fire Marine Ins.*, 144 Wis.2d 865, 870, 424 N.W.2d 924, 926 (1988).")

**376.**    Trivedi has pleaded in her  complaint pleading legal malpractice must allege (1) the

existence of the relationship of attorney and client, (2) the acts or omissions constituting the alleged negligence, (3) cause, and (4) injury.

**377.**    Explaining that, with respect to a breach-of-contract claim, we focus on "the parties' 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing'" (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 479 (1985))

**378.**    As shown here Foley & Mansfield acted in negligence, had a fiduciary duty,

breach this duty and duty breach of the implied covenant of good faith and fair dealing ,breach of

contract good faith,. Trivedi suffered damages and financial loss due to that.

Given that Foley is a defense law firm –for them defending big corporate clients who can pa them

hundreds of thousands in representation and litigation is more of business model than providing legal

service to Trivedi. Given that Andrew Shedlock who spent time and looked matter in lots of details

and Andrew is the one representing clients in SEC investigations –mostly Defendants who violates

SEC laws that Andrew represent –He had a clear motive –to get corporate clients at Foley and/or

another law firm –where he wouldn't go on and expose GE of securities fraud such as to he will lose

FUTURE Corporate clients who are like GE-SEC law violators but Andrew would represent them in

future as to ---

**379.**    As stated on Andrew's law firm website  kutakrock.com

*Andrew's practice includes securities litigation, commercial litigation, business and corporate law and general civil litigation. He has been actively involved in multiple securities litigation matters. Additionally, Andrew regularly counsels clients on business formation issues and corporate structuring. He has also defended clients involved in investigations by the Securities and Exchange Commission, FINRA and state regulators.*

*380.*    Despite this as Andrew who read entire file of Trivedi, he totally neglected SEC claims.. 17 CFR § 205 and (15 U.S.C. 7245) Case 3:15-cv-02356-JCS Document 132 SEC

amicus brief on attorney code of conduct Section **307 of** the Sarbanes-Oxley Act of 2002 (the "Act")

(15 U.S.C. 7245)

though Andrew was not presenting an ISSUER/GE but Trivedi…But the point is attorneys have legal/professional obligations.. Andrew and other attorneys had legal obligations kind of related to 15 U.S.C. 7245- not aid and abet in fraud.

Tort action here is that of negligence on Foley attorneys that led to economic loss, emotional distress..

**381.    Appeals Court OKs Fraud Claims Against Lawyer Included in Investors' Lawsuit**
https://www.law.com/dailyreportonline/2019/06/21/appeals-court-oks-fraud-claims-against-lawyer-included-in-investors-lawsuit/?slreturn=20190927150842
The Court of Appeals agreed with the trial judge that a lawyer who worked for man accused of swindling investors out of $3.5 million could be named as a co-defendant and face claims for aiding and abetting a fraud.
By **Greg Land** | June 21, 2019 at 10:41 AM

*see Markowits v Friedman,* 144 AD3d at 996). "[T]he mere inaction of an alleged aider or abettor constitutes substantial assistance only if the defendant owes a fiduciary duty directly to the plaintiff" (*Markowits v Friedman,* 144 AD3d at 996 [internal quotation marks omitted]). [ Foley & Mansfield had Fiduciary duty towards plaintiff Trivedi]

**382.**    ("Bonilla v. Abbott, 113 A.D.2d 861, 493 N.Y.S.2d 592, 594 (2d Dep't 1985) (concluding that a reasonably jury could find legal malpractice defendants were negligent in handling of wrongful death action because defendants "fail[ed] to proceed promptly, for no apparent reason, thereby risking and ultimately forfeiting the rights and interests of" decedent's beneficiaries).")

**383.**    (""In order to demonstrate proximate cause, [a] plaintiff must establish that but for the attorney's negligence, [the] plaintiff would have prevailed in the matter in question or would not have sustained any ascertainable damages." Schwartz v. Olshan Grundman Frome & Rosenzweig, 302 A.D.2d 193, 753 N.Y.S.2d 482, 486 (1st Dep't 2003). "A plaintiff claiming legal malpractice must meet a case within a case requirement, and must demonstrate that a reasonable fact-finder [in this case] could conclude that a reasonable fact-finder in the underlying suit would have arrived at a different result but for the attorney's negligence." Schutz v. Kagan Lubic Lepper Finkelstein & Gold, LLP, No. 12 Civ 9459 (PAE), 2013 WL 3357921, at *6 (S.D.N.Y. July 2, 2013), aff'd, 552 F. App'x 79 (2d Cir. 2014).")

*384.*    the aider and abettor) provided assistance that was a substantial factor in causing the harm suffered including **but not limited to file Dodd Frank whistbleblower claims, Vacate arbitrator's award. [   Trivedi here can establish that Foley's false representations** *with a present intent not to perform, were designed to induce [Trivedi] to act or refrain from acting( pursuing SEC claims, vacating arbitrator award and other claims mentioned here), and resulted in damage to [Trivedi] as a result of their justifiable reliance."]*

**385.**    Securities fraud and representing for SEC allows nationwide service and process

1  .Foley is also involved in other cause of actions as because of their malpractice Trivedi have these

2  cause of action --including vacating arbitrator award claims---So cause for actions arbitration ,

3  common law and securities fraud applies to Foley as  well for aiding and abetting fraud.

4

5  ## 27.10 TENTH COUNT

6  ## CIVIL LIABILITY FOR AIDING AND ABETTING FRAUD, AIDING-ABETTING BREACH OF FIDUCIARY DUTY AND CONSPIRACY (All defendants)

7

8  **386.**    Plaintiff  realleges, reasserts, and incorporates by reference the facts and

9  allegations stated in the previous paragraphs; as though fully set forth herein, as well as facts
currently unknown.

10

11  **387.**    Since apart from GE defendants – all defendants are attorneys themselves in their

12  professional duties– except OSHA investigators, Rosa, Frederick, Parker, Daniel Koh..so these claims

13  are more valid because despite being ATTORNEYS themselves – they have continued to participate

14  in this obstruction of justice.

15  **388.**    Fraud arises from the making of a misrepresentation or the commission of some other
16  deception, whereas aiding-abetting may involve a degree of assistance that in no way (by itself )
deceives anyone.

17  **389.**    A "liberal notice pleading" standard should govern aiding-abetting claims, pursuant to FED.
R. CIV. P. 8(a). *See* Linde v. Arab Bank, PLC, 384 F. Supp. 2d 571, 579–80 (E.D.N.Y. 2005).

18

19  **390.**    It also has been held that one may be subject to aiding-abetting liability if one "gives
20  substantial assistance to the other in accomplishing a tortious result and the person's own conduct,
separately considered, constitutes a breach of duty to the third person."Fiol v. Doellstedt, 58 Cal.
21  Rptr. 2d 308, 312 (Cal. Ct. App. 1996); Saunders v. Superior Ct., 33 Cal. Rptr. 2d 438, 446 (Cal. Ct.
App. 1994). *See also* RESTATEMENT (SECOND) OF TORTS § 876(c) (1979).

22  **391.**    " Civil liability for aiding and abetting arises when one knows the other's conduct constitutes
23  a breach of duty "and gives substantial assistance or encouragement to the other so to conduct
himself . . . ." (*Id.* at 415 n.3 (quoting RESTATEMENT (SECOND) OF TORTS § 876(b)
24  (1964)). )

25  **392.    While aiding and abetting may not require a defendant to agree to join the wrongful
26  conduct, it necessarily requires a defendant to reach a conscious decision to participate in
tortious activity for the purpose of assisting another in performing a wrongful act. Trivedi
27  plaintiff's object in asserting such a theory is to hold those who aid and abet in the wrongful
act responsible as joint tortfeasors for all damages ensuing from the wrong.**

28

135

**393.** Trivedi has established Loss causation between the primary fraud and the victim's losses throughout this complaint.

**394.** **Enabling Fraud to Proceed by Failing to Speak When Obligated**

**395.** An aider and abettor of a fraud is regarded as equally responsible, in terms of civil liability, with the perpetrators of the scheme. However, because aiders and abettors, unlike conspirators, do not agree to commit, and are not subject to liability as joint tortfeasors for committing, the underlying tort, they may be subject to liability irrespective of whether they owed to the plaintiff the same duty as the primary violator. (*Neilson*, 290 F. Supp. 2d at 1135.)

**396.** Aiding and abetting gross negligence was held actionable, for example, in a case where the defendants were attorneys who had advised an S&L institution that later failed. (Resolution Trust Corp. v. Farmer, 823 F. Supp. 302 (E.D. Pa. 1993).)
, the knowledge requirement for aiding and abetting liability may be satisfied by proof that a defendant acted recklessly(*See* Tew v. Chase Manhattan Bank, N.A., 728 F. Supp. 1551 (S.D. Fla. 1990), *amended on reconsideration*, 741 F. Supp. 220 (S.D. Fla. 1990); *see also* Levine v. Diamanthusel, Inc., 950 F.2d 1478, 1483 (9th Cir.1991); FDIC v. First Interstate Bank of Des Moines, N.A., 885 F.2d 423, 432–33 (8th Cir. 1989).).

**397.** Where facts are known to the defendant from which the conclusion objectively follows that a fraud is being perpetrated (and assisted by defendant), aider-abettor liability may exist even if the defendant lacked "actual knowledge." *See generally* Javitch v. First Montauk Fin. Corp. 279 F. Supp. 2d 931, 941 (N.D. Ohio 2003).

***398.*** *"[T]he mere inaction of an alleged aider or abettor constitutes substantial assistance only if the defendant owes a fiduciary duty directly to the plaintiff" (*Markowits v Friedman, *144 AD3d at 996 [internal quotation marks omitted]).*

**399.** **Plaintiff Trivedi has plead that the actions of the aider-abettor "proximately**

**caused the** harm on which the primary liability is predicated. Such causation has been mean the

injury was "a directly reasonably foreseeable result of the conduct." (the aider and abettor) provided

assistance that was a substantial factor in causing the harm suffered.

**Statutory provision for nationwide service of process and defendants have sufficient contacts**

**with united states, not the state in which the federal court sits.**

**400.** The national contacts doctrine provides that in federal question cases, the court has

personal jurisdiction over defendants when there is a statutory provision for nationwide service of

process and defendants have sufficient contacts with united states, not the state in which the federal

court sits. *Federal trade commission v. Jim walter corp.,* 651 f.2d 251, 256-57 (5th cir. Unit a july

1981).

## 27.11 ELEVENTH COUNT
### Claims for  FTCA ;28 U.S.C. §1346(b) ; 29 CFR Subpart B - Claims Against the Government Under the FTCA 29 CFR § 15.100 (a)
### (Against DOL – ARB, ALJ, OSHA, SOL Government Employees Defendants)

**401.**    Plaintiff  realleges, reasserts, and incorporates by reference the facts and

allegations stated in the previous paragraphs; as though fully set forth herein, as well as facts

currently unknown.

**402.    Exhibit 3- TIMELINE has details about OSHA, ALJ, ARB, FTCA at DOL.**

**403.**    Stefan Babich – DOL FTCA attorney ; who adjucated & DENIED Trivedi's FTCA

claims against DOL, OSHA, ALJ – sent Trivedi an email (**EXHIBIT 16**)– and Stefan didn't know

what OSHA SOX is …

**From:Babich, Stefan - SOL <Babich.Stefan@dol.gov>**

**ToMadhuri Trivedi<orangeinc@protonmail.com>**
Date:Thursday, March 31st, 2022 at 10:17 PM

Hello, Ms. Trivedi,

………………I wanted to let you know I received your attachments that you emailed while I was out of the office and have had a chance to look at them, including the 2014 complaint.

 I did have a couple of questions to make sure I interpreted the facts of your complaint accurately.
  Similarly, I was a bit unsure about how the Sarbanes Oxley Act related to your claims. As far as I understand, the Sarbanes Oxley Act relates to retaliation for reporting violations of corporate financial reporting/recordkeeping laws, and my impression was that you were saying you were retaliated against for complaining about defects in medical software.

**404.**
### 27.11.1    Intentional infliction of emotional distress is not one of the intentional torts listed in section 2680(h) for which the United States retained its sovereign immunity. *See* 28 U.S.C. § 2680(h).
**According to Massachusetts and Wisconsin tort law, plaintiff Trivedi can recover damages for the intentional infliction of emotional distress**
137

# 405. False reports are sufficiently extreme and outrageous to state a claim of IIED = DOL defendants' false statements in 2014 and 2021 administratively closed and dismissal letter; intentionally caused distress and harm, injury – all enumerated in detail here. As shown here, Trivedi has sufficiently pleaded IIED claims.

**406.**    DOL defendant possessed the requisite intent for purposes of an IIED claim as they desire to cause consequences of their act, or they believed that the consequences are substantially certain to result from it--------DOL Defendants believed that severe emotional distress was substantially certain to result from it. *Id.* Trivedi claim that the DOL Defendants knew with substantial certainty that (1)administratively closing Trivedi's OSHA complaint in 2014 ; by FALSELY, ILLEGALLY, PERJURY stating that Trivedi claims doesn't fit any of 22 statutes ; and (2) by administratively closing means there was no need to put Trivedi's right to Appeal to ALJ, DOL defendants knew that Trivedi lacked legal knowledge and no legal attorney was advising her – so by not putting her right to Appeal to ALJ – Trivedi in her ignorance would believe what OSHA wrote and DOL's fraud won't be disclosed anywhere as Trivedi won't be appealing to ALJ ( **Robert Kuss and Tamara- must be arrested the moment this FTCA claim form is received**)would cause severe emotional distress, harm, uncertainly, injury, financial loss….it was pre calculated, with full intention and total disregard – as it Terrorizing.

**407.**    Another mind boggling fact is- Denise Keller from Midwest told Trivedi on phone that OSHA closed it administratively so, they didn't mention that in OSHA letter about Trivedi's right to appeal to ALJ…Trivedi wrote in email about Denise's these statements to Daniel Koh –Anthony Rosa, Frederick James- and immediately Frederick replied via email that they would be happy to dismiss my complaint and put my right to appeal to ALJ---Rosa Anthony sent a letter to dismiss Trivedi's OSHA complaint as untimely and appeal to ALJ…all DOL defendants must be restricted from working for government for rest of their life. Their corruption has crossed all the boundaries.

Intentional infliction of emotional distress is designed to protect Trivedi's normal and equable state of mind. Limone v. U.S. 579 F.3d 79 (1st Cir. 2009)  [district courts have] subject matter jurisdiction to adjudicate ... claims for intentional infliction of emotional distress" under the FTCA.

*Intention* =Conduct is intentional if the DOL actors know of the consequences of their acts with substantial certainty- **A matter of whether the act was intended, not whether the final outcome was intended;** an innocent act or mistaken belief are not defenses- this acts by DOL defendants is 100& certainly  a voluntary act: DOL defendants acted individually as well as a TEAM – to conspire. The essence of DOL conduct is intentional conduct, by way either of commission or of omission where there is a duty to act, which conduct involves a high degree of likelihood that substantial harm will result to another..

**408.**    DOL defendants in 2021 and ALJ in 2022 acted with "freshly formed intention" to cause emotional distress; --- because in 2021 –OSHA DOL people knew that Trivedi had sued GE in a federal court …..and also as Nathan threatened me to dismiss my claims if I email his boss Donovan that Nathan is afraid of losing his job for investigating big company GE. (Men' rea- intent

138

and Keller Denise 's her food chain knew – GE being public company- so this is a new fresh motive to cause IIED and continuing pattern which was showed by 2014 DOL defendants.

**409.    Intentional infliction of emotional distress, a claim of IIED Trivedi meets following elements:**

(1) the DOL defendants acted intentionally, The defendants intended to cause emotional distress, or knew or should have known that emotional distress would result from their actions; (D acts)

(2) the DOL defendant's conduct was extreme or Outrageous; and in a manner that we would describe as beyond the bounds of decency –DOL D Tamara and Robert knew that Trivedi's immigration was limbo, the country USA where she invested her life , career since 2003 was jeopardized by GE's illegal acts…on top of that Tamara threatened Trivedi on phone that "you were terminated on May 2013—and you're still here filing OSHA complaint"….when Trivedi told Tamara crying about what GE did to her and her immigration was in limbo. A jury could reasonably find it constituted the "most clearly desperate and ultra-extreme conduct"---

also cybersecurity issues, vulnerabilities- that Scott Erven..

**410.    Trivedi has established a pattern of outrageous conduct by DOL employees, a pattern of misconduct, series of offensive acts.**

The DOL officials at the time **of such acts or omissions were acting within the scope of their official duties or employment.** Their Conduct towards Trivedi and handling her whistleblower complaint, twice, qualifies as extreme and outrageous, as it "go[es] beyond all possible bounds of decency, and [is] regarded as atrocious, and utterly intolerable in a civilized community. Trivedi had already suffered IIED by her employer GE wrongfully terminating her for not joining GE's fraud scheme…and preexisting emotional distress- which in itself was ongoing—was worsened by DOL employees when Trivedi filed OSHA complaint in 2014. And because Trivedi kept fighting despite being in a distress. It is like army core of engineers – who go through long battle and despite being in distress do what they have to do..that is the case here for Trivedi…Trivedi is a fighter.

DOL defendants' conduct is "extreme and outrageous" because it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Degree of corruption, tyranny and egregiousness by DOL employees, goes beyond the level, that Trivedi or any reasonable person

can TOLERATE…unless there is a dictatorship and DOL employees enjoy dictator status. DOL

employees' Conduct, towards Trivedi is so outrageous as rise to the level of terrorizing.

Courts have allowed IIED claims based on forms of alleged harassment to proceed under the

FTCA.

**411.**    Another example of HOW DOL caused Emotional distress…Trivedi w**as threatened
by Nathan to dismiss OSHA SOX claims if she writes an email to his boss Donova**n and let GE

know by dismissing claims…This was a direct threat…Tamara also threatened and only lie detector

would prove that she did threatened Trivedi about her immigration when she was talking to Tamara

on phone. Her words were enough THEAT that Trivedi didn't want to contact OSHA again…as

Tamara threatened her about immigration…at that time Trivedi has not filed her domestic violence

visa or person of extraordinary visa.. This sentences here enough to cause emotion distress as to

threat…

(3) Plaintiff Trivedi suffered severe emotional distress; and also monetary losses, wage losses,

immigration hurdle, her startup got trashed, and list goes on..all the way to ALJ Judge McGrath

continue torturing Trivedi.

Plaintiff Trivedi may recover for mental anguish, humiliation, emotional disturbance, fright, terror,

alarm and anxiety.  Recovery also include damages –economical loss and distress caused by

immigration issues- not to fund her startup - suffered loss of income, emotional damages and other

personal injuries – career has been sabotaged, mental anguish, humiliation alarm and anxiety.

Resulting from emotional distress, immediately after DOL employees Robert Kuss, Tamara behavior

in 2014; and all DOL people since 2021 such as upset stomach , …as OSHA's behavior created

ACUTE distress and she was shocked ,—and which lasted for some time( eventually I recovered and

decided to fight back and thus filing this FTCA claim) - tension headaches, muscle tenderness ,

<u>Withdrawn, feeling hopeless and despair, affected sleep schedule, dreadful…</u> emotional disturbance,

fright, terror, discomfort, worry, anxiety, , concern, distressed and agitation … **embarrassment**

**and also "sexual harassment  ---pattern of -----such conduct.**

**  –but had to mediate, exercise – speak to number of friends, family, counselling**

**center people..** Counseling center sister had given hours of talk.  Trivedi watched hours of

video by spiritual teaching, read books….but DOL defendants has continued to inflict the

emotion distress upon Trivedi by their corrupt acts – all the to now ALJ judge McGrath and

his assistant Kristen.

 **(4) DOL defendants' extreme and outrageous conduct caused Trivedi to suffer severe
emotional distress.** No reasonable person should be expected to suffer the emotional distress
that resulted from the DOL defendants' conduct...
**Causation >>acts by DOL..and as a result >>Trivedi suffering IIED.**

## 27.11.2    Negligence

**412.    Plaintiff Trivedi re-alleges and incorporates by reference Paragraphs above
as if fully set forth herein.**

   **Liability under Negligence stems in this case from DOL employees' failure** to behave with the
level of care and duty as government employee and someone of ordinary prudence would have
exercised under the same circumstances; absent misfeasance, non feasance, corruption, reckless
disregard, gross negligence.

   **Wisconsin statute 895.045 -Negligence 895.045(2) Concerted action. Notwithstanding
sub. (1), if 2 or more parties act in accordance with a common scheme or plan, those parties
are jointly and severally liable for all damages resulting from that action.**
   **Massachusetts General Laws Chapter 231, section 85**
   **There is no distinction between active and passive negligence as to responsibility for
injury or full indemnity to a tortfeasor whose negligence was passive. Pachowitz v.
Milwaukee & Suburban Transport Corp., 56 Wis. 2d 383,** 202 N.W.2d 268 **(1972).**
   **Specific negligent acts and omissions by DOL defendants include but are not limited to
the following:**

✓ Not reading arbitration complaint, FDA letter & communication ,email to OSHA about
   FDA's OEC surgery ban and when lifted Trivedi's first project at GE to integrate remote
   connectivity platform on OEC surgery; when Trivedi uncovered security vulnerabilities, 600
   defects, within hour of that email to Tamara Simpson- Tamara emailed Trivedi back asking
   her termination date and within days- closed Trivedi's OSHA complaint illegally..

✓ Intentional, corrupt failure in 2014 & 2021; to apply equitable tolling as Trivedi's December
   13, 2013 complaint to FDA was filed as a WHISTLEBLOWER complaint – despite that
   Nathan and entire DOL food chain even in 2021wrote that FDA complaint was not a
   whistleblower complaint, failed to apply  18 U.S.C. § 1514A(b)(2(D);29 C.F.R. § 1980.103(d)

- ✓ Failed to reach out to FDA or DHS about timeliness if they wanted to make sure
- ✓ Failing to reach out to FBI twice; while corruptly closing Trivedi's OSHA complaint- because if DOL would have reached out to FBI, then Trivedi's OSHA complaint would have been investigated under SOX ; but DOL wanted to cover up, harass, distress and harm Trivedi- so did it do it..closed corruptly.
- ✓ Despite writing that GE removed REMOTE connectivity section from SEC 10-K filing; after 2019 for which Trivedi is a SOX whistleblower –entire DOL food chain omitted and intentionally , corruptly failed to act on it and closed Trivedi's OSHA complaint…entire DOL defendants food chain including Daniel Koh to be arrested and put in JAIL for doing this to Trivedi –their goal is to harass , distress, inflict harm on Trivedi regardless of what…
- ✓ Judge McGrath failed to apply already presented argument about FDA complaint as whistleblower complaint and kept harassing Trivedi to reply to order to show cause.
- ✓ Despite writing to DOL food chain
- ✓ DOL defendants committed fraud and perjury; by writing FALSE statement is 2014 and 2021 dismissal letter
- ✓ It was foreseeable that DOL defendants' failure to take above action, omissions would result in injury to Trivedi.
- ✓ There is a temporal and close causal connection between DOl defendants failure and the harm suffered by Trivedi…even future risk, injury.
- ✓ Due to DOL defendants conduct Trivedi has suffered and will continue to suffer DAMAGES and injury; legal fight , expenses, humiliation, distress, loss—as damages listed in detail in this claim submission to be included here…..; including but not limited DOL people and GE people would Try to kill Trivedi or do such extreme harm..Trivedi already lost her father on the same day Trivedi arranged Internet of things – cybersecurity high stakes of billions of devices on February 22, 2017—her father dying on same day –presents circumstantial condition, GE had motive to kill her father as she was close to her..

**Trivedi's claims as to: duty, breach, causation, and damages/harm.**

- ✓ Duty – Under the circumstances, the DOL defendants owed a legal duty to the person Trivedi who brings OSHA complaint
- ✓ Breach – The DOL defendants act or fail to act in a certain way that breaches that legal duty;
- ✓ Causation – It was the actions or inactions of the DOL defendants that caused the injury to the plaintiff Trivedi; and
- ✓ Damages – The defendants' actions lead to injury and harm to the plaintiff Trivedi – as listed in detail what injury, how and what harm
- ✓ —DOL defendants enjoyed SADISTIC pleasure by keeping Trivedi in distress and not ruffling feathers by investigating GE> All to be put in jail.

413.   DOL employees' Gross negligence is a lack of care that demonstrates reckless

disregard for the public safety, cybersecurity issues and most importantly HARM and injury to Trivedi 'which is so great it appears to be a conscious violation of Trivedi's rights to safety as well as public health and safety. DOL defendants' conduct is a heightened degree of negligence representing

an extreme departure from the ordinary standard of care; more harmful than ordinary negligence because it implies a thoughtless disregard of the consequences and the failure to use even slight care to avoid harming the life of whistleblower Trivedi.

**414.    Trivedi here presents tort claims, acts that have harm the wellbeing of Trivedi, by that means violating HER rights and making the guilty** party DOL employees liable for her damages and sufferings. The FTCA allows Trivedi to demonstrate that the damages caused to her are by the negligent acts of DOL employees who were/are working within the capacity of their duties, and thus Trivedi sue the government for this negligence.

**DOL OSHA employees' intentional failure under corruption to exercising due care, failure do their job and failure to execute o**f a statute or regulation malfeasance misfeasance nonfeasance – public policy—and also DOL violated its own policy. DOl employees have shown tyranny like behavior.

## 27.11.3    Negligence per se

**415.    Plaintiff Trivedi re-alleges and incorporates by reference Paragraphs above as if fully set forth herein.**

DOL defendants' beha**vior was neglig**ent as a matter of law.

**Restatement (Third) of Torts §14. Statutory Violations as Negligence Per Se**
An actor is negligent if, without excuse, the actor violates a statute that is designed to protect against the type of accident the actor's conduct causes, and if the accident victim is within the class of persons the statute is designed to protect.

✓  **Pursuant to following statutes, rules and regulations DOL Defendants had a duty when Trivedi filed her OSHA complaint in 2014 and 2021. It also form part of the basis of DOL Defendants' duty in this regard.** Duty to investigate and protection as OSHA people –

**NOTE- Trivedi does not mean to say that for example DOL defendants viol**ated federal false claims act and osha whistleblower SOX statutes 18 U.S.C. §1514A   ; but Trivedi means that while GE violated federal false claims act and osha whistleblower SOX statutes 18 U.S.C. §1514A; DOL defendants illegally CLOSING /dismissing Trivedi's complaint violated as government employee to handle Trivedi's whistleblower complaint that alleged False claims act violations and OSHA SOX whistleblower violations/protections. Guilty by association and civil liability for obstructing justice and aiding and abetting wrongdoing/fraud by not taking action aka investigating Trivedi's OSHA whistleblower complaint.

✓  Violations of safety statutes in Wisconsin are ordinarily[10] Locicero v. Interpace Corp., 83 Wis. 2d 876, 266 N.W.2d 423, 427 (1978); Blanchard v. Terpstra, 37 Wis. 2d 292, 155 N.W.2d 156, 158 n. 1 (1967); Lloyd v. Pugh, 158 Wis. 441, 445, 149 N.W. 150, 152 (1914). [DOL defendants had a duty because Trivedi's claims were for public health and safety )

- ✓ Held to be negligence per se and this principle *238 frequently [ Grube v. Moths, 56 Wis. 2d 424, 202 N.W.2d 261, 267 (1972); Schroeder v. Northern States Power Co., 46 Wis. 2d 637, 176 N.W.2d 336 (1970).] **has been applied in Wisconsin cases. The general rule in Wisconsin is that violation of a criminal statute is negligence per se.**
- ✓ **18 U.S.C. § 1514A (b)(2(D);29 C.F.R. § 1980.103(d)  -OSHA equitable tolling.**
- ✓ osha whistleblower SOX statutes 18 U.S.C. §1514A
- ✓ protection for Whistleblower Retaliation under Dodd-Frank Act, 15 U.S.C. §78u-6(h);SEC Rule17 CFR § 240.21F-2,
- ✓ Securities Exchange Act of 1934,15 U.S.C. 78j(b),Rule 17 C.F.R. 240.10b-5
- ✓ Wrongful termination by GE in violation of public policy - common law rule in Massachusetts and Wisconsin
- ✓ common law rule in Massachusetts and Wisconsin for TORT against GE
- ✓ 42 U.S.C. § 299 et seq -The Patient Safety and Quality Improvement Act of 2005
- ✓ 31 U.S.C. §3729 et seq. federal false claims act  quitam AND False claims act and whistleblower retaliation protection statutes of state of Massachusetts  MASS. GEN. LAWS ANN. CH. 12 §§ 5—5O

  Because if OSHA people would have addressed her complaint – then she would had been able to retain a lawyer(quitam claims required an attorney), that a specific violation of the law occurred, and that violation is automatically assumed to be negligent.
- ✓ Trivedi's retaliation claim under false claims act 31 U.S.C. § 3730(h) (2) ; can proceed Pro Se and ongoing fraud makes claim timely  -- DOL defendants violated this code TWICE.
- ✓ whistleblower protection statutes of Massachusetts
- ✓ Scott erven's 2018 global alert for Trivedi's termination related remote connectivity platform InsiteEXC…, cybersecurity vulnerabilities , Security statutes, public health & safety implementation as a government employee overseeing that laws statutes are ENFORCED, obeyed and those who blow whistle get protected.
- ✓ Though one can argue about Private cause of action available or not under following statutes, regardless; DOL defendants were bound by duty for following statutes.
    - ➢ 45 CFR § 160.316 Refraining from intimidation or retaliation, Public Law 104-191.
    - ➢ 18 U.S C § 1512 - Tampering with a witness, victim, or an informant
    - ➢ And 18 U.S C §  1513 - Retaliating against a witness, victim, or an informant 18 U.S C § 1512 (a) (1) (A) ,18 U.S C § 1512 (b) (1) ,18 U.S C § 1512 (b) (2) (A) 18 U.S C § 1512 (b) (2) (B), 18 U.S.C § 1512 (b) (3), 18 U.S.C § 1512 (c) (2) 18 U.S C § 1512 (d) (1) ,18 U.S C § 1512 (d) (2) , 18 U.S C § 1513 (e), 18 U.S C § 1513 (f)

**416.    The defendant violated above code, statute or regulation. Above legal theory** establishes the duty and breach elements of negligence. DOL's failure to comply with applicable laws and regulations constitutes negligence per se
(Statutes prescribing certain actions or defining a standard of conduct, either explicitly or implicitly. )

**The plaintiff Trivedi in the class of persons** whistleblower protection statutes of state and federal level, **the code, statute, or regulation was designed to protect. But for DOL Defendants' wrongful and negligent breach of its duties owed to Plaintiff Trivedi and Class Members, Plaintiff and Class Members would not have been injured.**

The plaintiff Trivedi's injury, harm was the kind of injury the code, statute, or regulations that Trivedi mentioned ABOVE was designed to prevent.

The injury and harm suffered by Trivedi was the reasonably foreseeable result of Defendants' breach of their duties. Defendants knew or should have known that they were failing to meet their duties, and that Defendants' breach would cause Plaintiff Trivedi to experience the foreseeable harms (detailed HARM and DAMGES and INJURY enumerated throughout this claim form). As a direct and proximate result of DOL Defendants' negligent conduct, Trivedi has suffered injury and are entitled to compensatory damages in an amount mentioned in SUM CERTAIN section below.

## 27.11.4    Misfeasance and non feasance under tort

**417.    Plaintiff Trivedi re-alleges and incorporates by reference Paragraphs above as if fully set forth herein.**

Malfeasance –DOL defendants' Intentional conduct that is wrongful or unlawful, DOL defendants' higher level of wrongdoing than nonfeasance (failure to act where there was a duty to act) or misfeasance (conduct that is lawful but inappropriate). Here DOL defendants acts satisfies all three; falls under public corruption as well.

Misfeasance and Nonfeasance are part of tort law.

Misfeasance – DOL defendants committed it when legal action done improperly, which resulted in harm to Trivedi.

Nonfeasance –DOL defendants failure to carry out SERIES of required obligations, which results in injury or harm to Trivedi, public, loss and possible risk to society as Scott Erven's global alert came out in 2018.

## 27.11.5    Intentional Tort -fraud

**418.    Plaintiff Trivedi re-alleges and incorporates by reference Paragraphs above as if fully set forth herein.**

Tort of *fraud* – person who makes false statement intended to be acted on must make good the damage naturally resulting from its being acted on.

OSHA people's false statements in dismissal letter – created tort of fraud cause of action.

## 27.11.6    Malfeasance

**419.    Plaintiff Trivedi re-alleges and incorporates by reference Paragraphs above as if fully set forth herein.**

Malfeasance is a legal term used in civil and criminal law to describe an illegal and intentional act. Malfeasance is used to describe an act that cannot be defined as a distinct crime. Acts of malfeasance by **DOL defendants** involve some misconduct and dishonesty.

## 27.11.7    "Conspiracy Actionable Under 42 U.S.C. § 1985 (2) Obstructing justice; intimidating party, witness, or juror  AND (3) Depriving persons of rights or privileges "  individual capacity

**420.    Plaintiff Trivedi re-alleges and incorporates by reference Paragraphs above**

as if fully set forth herein.

2021 DOL defendants and 2014 Tamara and Robert – acted a team to conspire- for personal benefit, for being afraid of not investigating big company GE, for negligence, misfeasance, malfeasance and non feasance…to cover up – to exploit Trivedi's hardship, mitigating circumstances.

# Only place DOL defendants from 2014 and 2022 belong is JAIL.

**DOL defendants and GE people put in jail. Open grand jury criminal investigation about both.**

## 27.11.8  Reasonable reliance- found in the tort of fraud

that fraud plaintiffs Trivedi as stated in her email to FDA (**FDA gave this email to Trivedi part of FOIA in August 2016)** that she relied on the DOL defendant's misrepresentation in question -2014 administratively closed letter which stated that her claim doesn't fit any of 22 OSHA statutes, but that the representation was reasonable. Trivedi claims to have been harmed by Tamara- Robert Kuss-DOL defendants' false statements and given Trivedi's knowledge, none of the attorney advising her and all; under the particular circumstances for a while Trivedi believed that the statement were actually true.  Later Trivedi found out that OSHA people lied in 2014 administratively closed letter.
\*\*\*\*\*\*\*\*\*\*\*Email to FDA

**421.    From: Madhuri Trivedi <mcis99@gmail.com>**
**Date: Sat, Mar 14, 2015 at 10:49 AM**
Subject: Re: Information about GE Healthcare
To: "Myers, Charles F" <Charles.Myers@fda.hhs.gov>
Law firm attorney in Washington DC wanted to talk to earlier, but wasn't sure. He said one of his client worked with FDA for two three years in investigation for pharma company and it was successful . Then he worked on this matter. We need to talk . There are fraudulent inducement and other whistleblower matter so. Thanks and regards . First I was scared that GE would try to hurt me/ harm me; but they already know that I have spoken to FDA. So i became stronger. I reported to OSHA -whistleblower.gov; but their 22 statues excludes medical device and pharma.
\*\*\*\*\*\*\*\*\*\*\*End of email

## 27.11.9    Continuing violation, FTCA , and they dictate that the statute of limitations does not start to run "any earlier than the last day of the ongoing injury from 2014 to present

**Continuing tort , The continuing violation doctrine provides that the statute of limitations does not begin to run on a continuing wrong until the wrong has been conclude – applies to GE, OSHA, ALJ …….Trivedi also alleges of continuous unlawful acts , continuing violations, continuing harm.**

Anderson v. State, 88 Hawai'i 241, 247-48, 965 P.2d 783, 789-90 (Ct. App. 1998)  (**"Alleges a continuing tort sufficient to toll the statute of limitations. Generally, a continuing tort is defined as "one inflicted over a period of time; it involves a wrongful conduct that is repeated until desisted, and each day creates a separate cause of action.** A continuing tort sufficient to toll a statute of limitations is occasioned by continual unlawful acts, not by continual ill effects from an

original violation, and for there to be a continuing tort there must be a continuing duty." This continuing-tort exception is generally recognized because
usually no single incident in a continuous chain of tortious activity can fairly or realistically be identified as the cause of significant harm, [and] it seems proper to regard the cumulative effect of the conduct as actionable. Moreover, since one should not be allowed to acquire a right to continue the tortious conduct, it follows logically that statutes of limitation should not run prior to its cessation.

Curtis v. Firth, 123 Idaho 598, 850 P.2d 749, 754 (Idaho 1993) (holding that a **claim for intentional infliction of emotional distress was a continuing tort for purposes of a statute of limitations (quoting Page v. United States, 234 U.S. App. D.C. 332, 729 F.2d 818, 821-22 (D.C. Cir. App. 1984)) (quotation marks omitted)).** Thus, generally, a continuing tort is a tortious act that occurs so repeatedly that it can be termed "continuous," such that one may say that the tortious conduct has not yet ceased. Accordingly, the statute of limitations cannot run, because the tortious conduct is ongoing. The example of the flooding of one's property, as in the instant case and as illustrated by the Restatement (Second) of Torts, is a good one.")

See also Heard v. Sheahan, 253 F.3d 316, 319 (7th Cir.2001) ("A violation is 'continuing,' signifying that a plaintiff can reach back to its beginning even if the beginning lies outside the statutory limitations period").

**See below ALJ and OSHA's continuing denial –to request response from GE , varying excuses to dismiss Trivedi's OSHA complaint – constitutes continuing harm….it shows practice of conduct – Thus continuing tort doctrine….- ranging from 2014 till 2022 by DOL, OSHA, ALJ….to cover up..and not to investigate – even GE committed criminal acts.. by citing the continuing violation doctrine -- which is based on the equitable notion that the statute of limitations should not begin to run until a reasonable person would be aware of the underlying violation.**

*Payton v. Williams*, No. 14-cv-2566, at *14 (N.D. Ill. Dec. 1, 2017) ("Under this doctrine, "**where a tort involves a continuing or repeated injury, 'the limitations period does not begin to run until the date of the last injury or the date the tortious acts cease.'"** *Cooney v. Casady*, 652 F. Supp. 2d 948, 954 (N.D. Ill. 2009) (quoting *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 85-86 (Ill. 2003)). ")

*Tiberi v. Cigna Corp.,* 89 F.3d 1423, 1430 (10th Cir.1996) (quoting 54 C.J.S., *Limitation of Actions* § 177 (1987) (**Thus continuing tort doctrine -U**nder that doctrine, " 'where a tort **involves a continuing or repeated injury, the cause of action accrues at, and limitations begin to run from, the date of the last injury.' "**).

Trivedi didn't know that OSHA 2014 complaint was closed

administratively and thus –she was not given right to appeal to

ALJ. Trivedi came to know this( add email from Keller) during

conference call with OSHA people Nathan and Keller -- --thus

Trivedi didn't know about it..and as soon as she knew—from June

2021 call – She started bringing it to DOL food chain of Koh, Rosa,

Frederick..all corrupt..

   **The Supreme Court's decision in CTS Corp. v. Waldburger, 134 S.Ct. 2175 (2014), establishes that A statute of limitations begins to run when the cause of action "accrues"**—that is, when the plaintiff can file suit and obtain relief. Measured by this standard, a claim accrues in a personal-injury or property-damage action when the injury occurred or was discovered.

   Heardv. Sheahan,253 F.3d316,317 (7thCir. 2001)("Tolling interrupts the statute of limitations after it has begun to run....") Deliberate indifference…there is a pattern…throughout…
   Kovacs v. United States, 614 F.3d 666, 676 (7th Cir.2010) (citation omitted).
   (The continuing violation doctrine acts as a defense to the statute of limitations, delaying its accrual or start date.")

the "continuing violations" doctrine, principle of accrual ,postpones the beginning of the limitations period where the defendant inflicts continuing and accumulating harm
   In re: Evanston Nw. Healthcare Corp. Antitrust Litig., No. 07 C 04446, 2016 WL 4720014, at *7 (N.D. Ill. Sept. 9, 2016) ("**Another principle of accrual, called the "continuing violations" doctrine, postpones the beginning of the limitations period where the defendant inflicts continuing and accumulating harm. Heard, 253 F.3d at 319; see also Hanover Shoe, Inc. v. United Shoe Mach. Corp., 392 U.S. 481, 502 n.15 (1968) (continuing violation applies where the defendant's conduct "inflict[s] continuing and accumulating harm on [the plaintiff].").**

As noted earlier, the continuing violations doctrine postpones the limitations period where the defendant inflicts continuing and accumulating harm. *Heard*, 253 F.3d at 319. Thus, in order for the doctrine to apply, the plaintiff must be challenging "not just one incident of [unlawful] conduct ... but an unlawful practice that continues into the limitations period ...." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380-81, (1982). In continuing violations cases, "the complaint is timely when it is filed within [the limitations period, measured from] the last asserted occurrence of that practice."[26] *Id.*; *Brunswick Corp. v. Riegel Textile Corp.*, 752 F.2d 261, 271 (7th Cir. 1984) ("[I]f a continuing violation extends into the statutory period, the victim is entitled to complain about the whole violation, no matter how long ago it began ....").

The Court rejected United's argument that "because the earliest impact on Hanover of United's lease only policy occurred in 1912, Hanover's [claim] arose during that year and is now barred by the ... statute of limitations":

**We are not dealing with a violation which, if it occurs at all, must occur within some specific and limited time span. Rather, we are dealing with conduct which constituted a *continuing violation* of the Sherman Act and which *inflicted continuing and accumulating harm* on Hanover. Although Hanover could have sued in 1912 for the injury then** being inflicted, it was equally entitled to sue in 1955.

"A violation is called "continuing," signifying that a plaintiff can reach back to its beginning even if that beginning lies outside the statutory limitations period,. See, e.g., *M.H.D. v. Westminster Schools,* 172 F.3d 797, 804-05 (11th Cir. 1999); *Interamericas Investments , Ltd. v. Board of Governors,* 111 F.3d 376, 382 (5th Cir. 1997); *Sable v. General Motors Corp.,* 90 F.3d 171, 176 (6th Cir. 1996); *Rapf v. Suffolk County,* 755 F.2d 282, 292 (2d Cir. 1985); *Page v. United States,* 729 F.2d 818, 821-22 (D.C. Cir. 1984). When a single event gives rise to continuing injuries, as in *Sandutch v. Muroski,* 684 F.2d 252, 254 (3d Cir. 1982) "

**422.**  Harvey v. United States, 685 F.3d 939 (10th Cir. 2012) (Determination of when a claim accrues under Federal Tort Claims Act (FTCA) is a matter of federal, not state, law. 28 U.S.C.A. § 2401(b).)

*Molina-Garcia v. Fardon*, No. 18-2322, at *3 (7th Cir. Mar. 5, 2019) ("*see also United States v. Kwai Fun Wong*, 135 S. Ct. 1625, 1638 (2015) (equitable tolling is available in FTCA suits). ")

"Federal claim-accrual rules govern cases arising under the FTCA , and they dictate that the statute of limitations does not start to run "any earlier than the last day of the ongoing injury." *Devbrow v. Kalu*, 705 F.3d 765, 770 (7th Cir. 2013); *Heard v. Sheahan*, 253 F.3d 316, 318-19 (7th Cir. 2001). A tort can be said to continue so long as the tortious acts, and not the injury caused by them, continues to happen. *Alexander v. United States*, 721 F.3d 418, 425 (7th Cir. 2013)"

**This doctrine applies "'where an entire course of conduct combines to produce an injury'—in other words, when the defendant carries out a continuing wrongful act."**

*Alexander v. United States*, 721 F.3d 418, 425 (7th Cir. 2013) ("Though we have no quarrel with the district court's conclusion that Alexander knew or should have known by the time of Freeman's July 2008 deposition that agents of the federal government potentially caused his injury, it does not follow from this that Alexander's IIED claim is untimely, because the agents' alleged extreme and outrageous conduct did not cease with either Alexander's arrest or Freeman's deposition. Rather, the complaint alleges that the tortious conduct—which included witness intimidation, perjury,

149

1    and suborning of perjury—continued right through Alexander's trial. Any one of these later actions
2    might suffice to provide the basis for a timely IIED claim.")
3            *Alexander v. United States*, 721 F.3d 418, 425 (7th Cir. 2013) ("In situations such as this,
     where the alleged injury can be characterized as a continuing one, federal claim-accrual rules (which
4    govern in cases arising under the FTCA , *id.*) **dictate that the statute of limitations "does not start
     to run *any earlier* than the last day of the ongoing injury."** *Devbrow v. Kalu,* 705 F.3d 765, 770
5    **(7th Cir.2013) (emphasis in original); see also** *Heard v. Sheahan,* 253 F.3d 316, 318–19 **(7th
     Cir.2001) (discussing the federal "continuing violation" doctrine).** Regardless of whether we view
6    the agents' conduct as a continuing wrong or as a series of discrete, independently actionable harms,
     some of which occurred within the limitation period, we conclude that Alexander's IIED claim is
7    timely.")
8            *Britton v. Melvin*, 21-cv-1032-JBM, at *3 (C.D. Ill. Nov. 2, 2021) **("continuing violation is a
     claim where, among other things, 'the state actor has a policy or practice that brings with it a
9    fresh violation each day.'"** *Loza v. Josephson*, No. 16-8111, 2018 WL 4095097, at *3 (N.D. Ill.
     Aug. 28, 2018) (citing *Savory v. Lyons*, 469 F.3d 667, 672-73 (7th Cir. 2006)).
10       **Plaintiff Trivedi  has adequately pled a continuing violation as …………………..that it
     continued from 2014 through the present day. ")
11       *Britton v. Melvin*, 21-cv-1032-JBM, at *2 (C.D. Ill. Nov. 2, 2021) ("claiming that the statute of
12   limitations should be tolled as the complained-of conditions represent a continuing violation. Plaintiff
     cites *Heard v. Sheahan*, 253 F.3d 316, 318 (7th Cir. 2001) which provides that when a plaintiff is
13   subjected to continuing harm, the plaintiff may recove**r for all of the harm, even if some of the
     events occurred outside of the statute of limitations. ")**
14
15       OSHA, DOL defendants subjected Trivedi to suffer as a VICTIM for their illegal acts from
16       (1)2014 –first complaint and
17       (2) Continued in 2021- second complaint,
18       (3) Continued in ALJ case where ALJ McGrath also issued random order to show cause;
19
20           Which shows he hasn't read in details Trivedi's objections nor understood the history; his
21           order is based on OSHA's false statements; is prejudiced biased and done to distress
22           Trivedi, also ALJ denied motion for discovery.
23       (4)continued in ARB affirming ALJ by issuing fractured,  incomplete order – intentionally
24   OMITTING crucial , critical facts.
25
26           **As Trivedi presented solid legal arguments, with case laws above for continuing
27   violations, the plaintiff Trivedi legally may recover for all of the harm, even if some of the
28   events occurred outside of the statute of limitations aka Trivedi's FTCA claims against DOL**

150

for 2014 illegal closure of whistleblower complaint" (federal claim-accrual rules (which govern in cases arising under the FTCA , *id.*) dictate that the statute of limitations "does not start to run *any earlier* than the last day of the ongoing injury." )

**423.**    Trivedi's OLJ objections, motions, OSHA submission has tons of legal argument about equitable tolling, continuing violations; making Trivedi complaint timely.

**424.**

## 27.12 TWELFTH COUNT
### Claims for violations of constitutional rights pursuant to  Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 396-97 (1971)(All DOL Employees Named Individually In This Complaint as defendants)

**Claims for supervisory liability regarding each of the mentions violations of Trivedi's constitutional rights**
**Fifth Amendment claims for violation of Trivedi's Due Process rights**
**Claim for failure to intercede**
(discriminated by gender violated equal protection principles -)
Claims for violations of due process
    CFR § 18.201 (e) Opportunity to be heard… comes under Due process …

Due to their intentional conduct and reckless , deliberate indifference – declined or refused to fulfil their duty – constitutional right not to be deprived of. Ongoing sabotage of GE to paint Trivedi as FAILURE..while not DENYING that GE was/is engaged in ongoing FRAUD – but at the same time TOTALLY TARNISH her REPUTATION, image , …While OSHA , ALJ , ARB dismissals of Trivedi claims – totally PAINT Trivedi as at fault person – based on TIMELINESS – while siding GE – when GE did huge fraud… **DOL defendants individually have knowingly & intentionally, to Terrorize (Because Trivedi is WOMAN , SINGLE, immigrant…enjoys sadistic**

**pleasure)TRIVEDI, have put FALSE, incomplete, partial FACTS – about Trivedi…**AND DOL defendants have failed to vindicate her…**Trivedi's name MUST BE CLEARED – and so HER being a WHISTLEBLOWER by HOLDING GE accountable…so that in FUTURE – she doesn't have to PROVE over and OVER again that it was GE who screwed up…**

All DOL defendants – named individual defendants, had opportunity to prevent ongoing HARM to TRIVEDI's reputation, career, financial loss – They again failed to do so[ failure to act - In order for liability to attach, there must have been realistic opportunity to intervene to prevent the harm from occurring Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994). ]. [ Trivedi has plausibly plead that "the failure to intercede HAS been a proximate cause of the harm." Bah v. City of New York, No. 13-cv-6690 (PKC), 2014 WL 1760063, at *7 (S.D.N.Y. May 1, 2014); accord O'Neill v. Krzeminski, 839 F.2d 9, 11 (2d Cir.1988 )]…and as in Davis *v. Passman*, 442 U.S. 228, 248-49 (1979) (providing a *Bivens* remedy for gender discrimination under the Fifth Amendment Due Process Clause)– gender , race , nationality discrimination – because if Trivedi would have been a MALE, WHITE , US CITIZEN – than they would have not terrorized – the same way they did Trivedi. Trivedi suffered the substantial and continuing injuries and damages as set forth in this complaint.

**Claims for supervisory liability – acting within scope of their employment and under color of federal law, are personally involved in this unconstitutional misconduct against Trivedi.**

### 27.13 THIRTEENTH COUNT
### The Federal Tort Claims Act, 28 U.S.C. §1346(b) ; 29 CFR Subpart B - Claims Against the Government Under the FTCA 29 CFR § 15.100 (a)
### (USCOURTS & Judges Defendants)

**425.**    Plaintiff realleges, reasserts, and incorporates by reference the facts and

allegations stated in the previous paragraphs; as though fully set forth herein, as well as facts

currently unknown.

**426.**    Trivedi has filed form SF -95 with USCOURT and has received confirmation so as to

administrative filing

**427.**    First circuit Judge Sandra Lynch didn't participate in en banc review..but she was a panel judge for motion to recuse judge Kelley appeal; Trivedi had put a RED FLAG on judge Kelley when she issued R&R...judge Lynch denied that and later she recused herself for whatever reason ; instead of addressing that

**428.**    Magistrate judge Kelley was reappointed; despite my opposition.I ahd written o judge Kelley's reappointment panel judger Mark that it was a reward for corruption that around the time – judge Kelley dismissed Trivedi claims – she became chief judge. Trivedi had phone conversation with panel members, vikas dhar and Karin bell- sent them many emails to prove how corrupt judge Kelley ahs been..

**429.    Judicial corruption -**may show as bias in the orders issued, hearing and judgment of lawsuit, with decisions clearly favoring one party over the other.

**430.**    A tort to the person is a tort involving or consisting in an injury to one's person, reputation, or feelings. Wrong that results in injury. Injury" includes, but is not limited to, any physical or mental damage or injury or financial damage

**431.**    Since 2016 when DHS lawsuit was filed – Trivedi has been suffering injuries by these corrupt judges.

## For DHS lawsuit,  When Trivedi went to district court and met judge James Donato's court deputy..Lisa R. Clark….she commented that "we are not doing woman thing in your case--- and you don't go to bed with them..but some women do use being women as TOOLS..so we are not doing woman thing".( since Judge

Donato was not ruling for more than six month on pending motions..I attended HEARING in Judge Donato's courtroom for some big antitrust case..then met his deputy Clark when hearing was over)

me being a woman is one of my mitigating circumstances..but both my Boston judges are women-- so what they did--nothing....USA has converged into third world country-

### 27.13.1    If one federal judge  (federal judge Andrew Hanen of Texas ) can find my material worthy to do grand jury criminal investigation – how

**come another federal judge Donato – dismiss claims – I am saying as it was related to GE's retaliation – even if we not fight for extra ordinary ability portion because my 2016 lawsuit was against department of homeland security for EB1 – a person of extra ordinary ability.**

**27.13.2    And same thing if one federal judge   (federal judge Andrew Hanen of Texas ) can find my material worthy to do grand jury criminal investigation – how come another federal judges such as judge Saris, judge Kelley and first ciruit judges - David J. Barron, Bruce M. Selya, and Rogeriee Thompson TOTALLY TRASH TRIVEDI's claims and dismiss it at MOTION to dismiss stage.**

**432.**    Denying Trivedi DUE PROCESS , DISCOVERY, TRIAL – and doing this to continue inflict injury, harm, intentional infliction of emotional distress, harassment and continue BE CORRUPT.**It is illegal, corruption and 100% TORT , BIVENS claims that judge Kelley, judge Saris and first circuit panel  took judicial notice of 2016 lawsuit against DHS- in totally OUT OF CONTEXT to this GE lawsuit….If these corrupt judges want to take judicial notice of DHS lawsuit**

**27.13.3    More than a century old case law- "Ex Parte Virginia, 100 U.S. 339 (1880)", supreme court stated that judges are not immune from criminal prosecution**

**433.**    When an unreconstructed Virginia county judge excluded jurors on the basis of race,

judicial immunity did not protect the judge in Ex Parte Virginia case. And a century later, when an Illinois county judge fired a parole officer because she was a woman (Forrester, 221), judicial immunity did not protect the judge (Id., 231).

**434.**    Trivedi has alleged at least 35 plus times, in her court cases that she is treated like this because of GE's connections, Trivedi's race, immigration, not white , woman, divorced…Trivedi is a prefect material to execute Intentional, conspiratorial conduct – for which these judges get SADISTIC PLEASURE…there are vultures.

**435.**    Judge Mark G. Mastroianni was performing task of reappointing judge Kelley- and as per district court announcement of judge Kelley's reappointment- district court approved her—

**Ex Parte Virginia, 100 U.S. 339 (1880)**(It is idle, therefore, to say that the act of Congress is unconstitutional because it inflicts penalties upon State judges for their judicial action. It does no such thing. ..Upon the whole, as we are of opinion that the act of Congress upon which the indictment against the petitioner was founded is constitutional, and that he is correctly held to answer it, and as, therefore, no object would be secured by issuing a writ of habeas corpus, the petitions are Denied.)

Mireles v. Waco, 502 U.S. 9, 10, 112 S. Ct. 286, 287, 116 L. Ed. 2d 9 (1991)

154

AND <u>Footnote 6 in this case</u> --Levine v. Lawrence, No. 03-CV-1694(DRH ETB), 2005 WL 1412143, at *5 (E.D.N.Y. June 15, 2005) (The Court, however, has recognized that a judge is not absolutely immune from criminal liability, *Ex parte Virginia,* 100 U.S. 339, 348–349, 25 L.Ed. 676 (1880))

*A State acts by its legislative, its executive, or its judicial authorities. It can act in no other way.*

### 27.13.4    Continuing TORT – judge Donato to judge Saris –no one wants to address fraud by GE- but only wants to act as GE's general counsel

I understand that person of extra ordinary was a separate claim, but judge Donato didn't care like judge Hanen to address..nor judge Saris-instead illegally dismissed Trivedi's valid claims as untimely. While totally being blind to GE's fraud.

"Federal claim-accrual rules govern cases arising under the FTCA , and they dictate that the statute of limitations does not start to run "any earlier than the last day of the ongoing injury." Devbrow v. Kalu, 705 F.3d 765, 770  (7th Cir. 2013); Heard v. Sheahan, 253  F.3d 316, 318-19 (7th Cir. 2001). A tort can be said to continue so long as the tortious acts, and not the injury caused by them, continues to happen. Alexander v. United States, 721 F.3d 418, 425 (7th Cir. 2013)"

This doctrine applies "'where an entire course of conduct combines to produce an injury'—in other words, when the defendant carries out a continuing wrongful act."

☐    Plaintiff Trivedi  has adequately pled a continuing violation as …………………..that it continued from 2016 through the present day. ")

### 27.13.5    Tort by judges, sadistic pleasure.

**436.**    Statutory violations establish prima facie case for negligence per se – in Trivedi's case it applies to both GE and judges.==Judges are fine with GE's statutory violations; but concerned that it is untimely ( in their own corrupt interpretation) and/or Trivedi failed to file administrative claims with agency, or that for securities fraud- Trivedi should not have relied on GE's claims –if== Trivedi knew that GE was doing fraud – for putting all these in their ORDER – all all to be PUT in a JAIL at least for ONE YEAR.

**437.**    Trivedi has been intentionally not given/afforded a 'full and fair opportunity' to litigate her claims in PUBLIC FORUM.Restatement (Second) of Torts § 286 (1965). In Estate of Kelly v. Falin, 127 Wn.2d 31, 896 P.2d 1245 (1995), the court held that a violation of a criminal statute constitutes evidence of negligence only if the statute was intended to protect both the person

bringing the action and the particular interest involved. The violation of a statute, ordinance, or administrative rule is actionable only if it was a proximate cause of the accident or injury in question. Ward v. Zeugner, 64 Wn.2d 570, 392 P.2d 811 (1964). If there is a prima facie causal connection and if the requirements of Restatement (Second) of Torts section 286 (1965) are met, the proximate cause question is for the jury. Kness v. Truck Trailer Equip. Co., 81 Wn.2d 251, 501 P.2d 285 (1972).

**438.** ==Wisconsin and Massachusetts personal i==njury tort --- **Trivedi's claims are cognizable under common law, Massachusetts Tort Claims Act ("MTCA"), M.G.L. c. 258, § 1 et seq.,   Wis. Stat. § 893.57 Intentional torts -** other intentional tort to the person shall be commenced within 3 years after the cause of action accrues. -- and  Severe recklessness is limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care,  --- more than negligence in mismanaging, fraudulently handling **Trivedi's complaint, b**ut a higher level of wrongdoing and even conscious malfeasance."

**439.    Plaintiff Trivedi prove s**uch recklessness that  USCOURTS defendants possessed knowledge of facts regarding Trivedi's complaint being VALID whistleblower statutes, in corrupt manner; but made FALSE statements, this behavior prove that  USCOURTS defendants knew or should have known that they were misrepresenting material facts related to Trivedi's complaint; **Scientier – that makes  USCOURTS defendants CULPABLE.**

## 27.13.6    Intentional infliction of emotional distress against the United States pursuant to the Federal Tort Claims Act (FTCA) , 28 U.S.C. § 2671–2680.

**440.    Plaintiff Trivedi re-alleges and incorporates by reference Paragraphs above as if fully set forth herein.**

**441.    Intentional infliction of emotional distress is not one of the intentional torts listed in section 2680(h) for which the United States retained its sovereign immunity.** *See* **28 U.S.C. § 2680(h).**

**According to Massachusetts and Wisconsin tort law, plaintiff Trivedi can recover damages for the intentional infliction of emotional distress**

## 442. False reports are sufficiently extreme and outrageous to state a claim of IIED =  USCOURTS defendants' false statements and dismissal ; intentionally caused distress and harm, injury – all enumerated in detail here. As shown here, Trivedi has sufficiently pleaded IIED claims.

**443.**    USCOURTS defendant possessed the requisite intent for purposes of an IIED claim as they desire to cause consequences of their act, or they believed that the consequences are substantially certain to result from it-------- USCOURTS Defendants believed that severe emotional distress was substantially certain to result from it. *Id.* Trivedi claim that the  USCOURTS Defendants knew with substantial certainty that their action would cause severe emotional distress, harm, uncertainly, injury, financial loss….it was pre calculated, with full intention and total disregard – as it Terrorizing.

**444.**    Intentional infliction of emotional distress is designed to protect Trivedi's normal and equable state of mind. Limone v. U.S. 579 F.3d 79 (1st Cir. 2009)  [district courts have] subject matter jurisdiction to adjudicate ... claims for intentional infliction of emotional distress" under the FTCA.

   *Intention* =Conduct is intentional if the USCOURTS actors know of the consequences of their acts with substantial certainty- **A matter of whether the act was intended, not whether the final outcome was intended;**  an innocent act or mistaken belief are not defenses- this acts by USCOURTS defendants is 100& certainly  a voluntary act:  USCOURTS defendants acted individually as well as a TEAM – to conspire. The essence of  USCOURTS conduct is intentional conduct, by way either of commission or of omission where there is a duty to act, which conduct involves a high degree of likelihood that substantial harm will result to another..

**445.**    USCOURTS defen==dants acted with "freshly formed intention" to cause emotional distress; ---== **Intentional infliction of emotional distress, a claim of IIED Trivedi meets following elements:**
    (1) the  USCOURTS defendants acted intentionally, The defendants intended to cause emotional distress, or knew or should have known that emotional distress would result from their actions; (D acts)
    (2) the  USCOURTS defendant's conduct was extreme or Outrageous; and in a manner that we would describe as beyond the bounds of decency –A jury could reasonably find it constituted the "most clearly desperate and ultra-extreme conduct"---
    ==also cybersecurity issues, vulnerabilities- that Scott Erven..==

**Trivedi has established a pattern of outrageous conduct by  USCOURTS employees, a pattern of misconduct, series of offensive acts.**
    The  USCOURTS officials at the time **of such acts or omissions were acting within the scope of their official duties or employment.** Their Conduct towards Trivedi and handling her whistleblower complaint, twice, qualifies as extreme and outrageous, as it "go[es] beyond all possible bounds of decency, and [is] regarded as atrocious, and utterly intolerable in a civilized community.
    Trivedi had already suffered IIED by her employer GE wrongfully terminating her for not joining GE's fraud scheme…and preexisting emotional distress- which in itself was ongoing— was worsened by  USCOURTS employees when Trivedi filed federal complaint in 2016 and 2019. And because Trivedi kept fighting despite being in a distress. It is like army core of engineers – who go through long battle and despite being in distress do what they have to do..that is the case here for Trivedi…Trivedi is a fighter.
USCOURTS defendants' conduct is "extreme and outrageous" because it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Degree of corruption, tyranny and egregiousness by  USCOURTS employees, goes beyond the level, that Trivedi or any reasonable person can TOLERATE…unless there is a dictatorship and  USCOURTS employees enjoy dictator status.  USCOURTS employees' Conduct, towards Trivedi is so outrageous as rise to the level of terrorizing.
    Courts have allowed IIED claims based on forms of alleged harassment to proceed under the FTCA.
Plaintiff Trivedi may recover for mental anguish, humiliation, nervous shock,

emotional disturbance, fright, terror, alarm and anxiety.  Recovery also include damages –economical loss and distress caused by immigration issues- not to fund her startup - suffered loss of income, emotional damages, death of her parent and other personal injuries – career has been sabotaged, mental anguish, humiliation alarm and anxiety.  Resulting from emotional distress, immediately after their behavior …as judges' behavior created ACUTE distress, such as upset stomach and she was shocked ,—and which lasted for some time( eventually I recovered and decided to fight back and thus filing this FTCA claim) - tension headaches, muscle tenderness , Withdrawn, feeling hopeless and despair, affected , dreadful… emotional disturbance, fright, terror, discomfort, worry, anxiety, , concern, distressed and agitation … **embarrassment and also "sexual harassment  --- pattern of -----such conduct.**

          **–but had to mediate, exercise – speak to number of friends, family, counselling center people..** Counseling center sister had given hours of talk.  Trivedi watched hours of video by spiritual teaching, read books….but  USCOURTS defendants has continued to inflict the emotion distress upon Trivedi by their corrupt acts –

 **(4)  USCOURTS defendants' extreme and outrageous conduct caused Trivedi to suffer severe emotional distress.** No reasonable person should be expected to suffer the emotional distress that resulted from the USCOURTS defendants' conduct...
**Causation >>acts by  USCOURTS..and as a result >>Trivedi suffering IIED.**

## 27.13.7    Negligence

**446.    Plaintiff Trivedi re-alleges and incorporates by reference Paragraphs above as if fully set forth herein.**
    **Liability under Negligence stems in this case from** USCOURTS **employees' failure** to behave with the level of care and duty as government employee and someone of ordinary prudence would have exercised under the same circumstances; absent misfeasance, non feasance, corruption, reckless disregard, gross negligence.

    **Wisconsin statute 895.045 -Negligence 895.045(2) Concerted action. Notwithstanding sub. (1), if 2 or more parties act in accordance with a common scheme or plan, those parties are jointly and severally liable for all damages resulting from that action.**
    **Massachusetts General Laws Chapter 231, section 85**
    **There is no distinction between active and passive negligence as to responsibility for injury or full indemnity to a tortfeasor whose negligence was passive. Pachowitz v. Milwaukee & Suburban Transport Corp., 56 Wis. 2d 383,** 202 N.W.2d 268 **(1972).**
    **Specific negligent acts and omissions by** USCOURTS **defendants include but are not limited to the following:**
✓  Not reading arbitration complaint, FDA letter & communication , FDA's OEC surgery ban
    and when lifted Trivedi's first project at GE to integrate remote connectivity platform on OEC
    surgery; when Trivedi uncovered security vulnerabilities, 600 defects..
✓  Intentional, corrupt failure in 2014 & 2021; to apply equitable tolling as Trivedi's December
    13, 2013 complaint to FDA was filed as a WHISTLEBLOWER complaint –failed to apply  18
    U.S.C. § 1514A(b)(2(D);29 C.F.R. § 1980.103(d)
✓  Failed to reach out to FDA or DHS about timeliness if they wanted to make sure

- ✓ Failing to allow discovery –so Trivedi can call FBI agents as witness; while corruptly dismissing Trivedi's complaint- bbut judges wanted to cover up, harass, distress and harm Trivedi- so did it do it..closed corruptly.
- ✓ Denied Trivedi DISCOVERY because allowing that would EXPOSE GE>
- ✓ Despite writing that GE removed REMOTE connectivity section from SEC 10-K filing; after 2019 for which Trivedi is a SOX whistleblower –entire judges food chain omitted and intentionally , corruptly failed to act on it and dismissed Trivedi's complaint…entire judges / USCOURTS defendants food chain to be arrested and put in JAIL for doing this to Trivedi – their goal is to harass , distress, inflict harm on Trivedi regardless of what…
- ✓ Judges failed to apply already presented argument about FDA complaint as whistleblower complaint and kept harassing Trivedi to reply to order to show cause.
- ✓ USCOURTS defendants committed fraud and perjury; by writing FALSE statements in dismissal order – report and recooomendation and afterwards – adopting that R&R and later first circuit AFFIRMING IT>
- ✓ It was foreseeable that USCOURTS defendants' failure to take above action, omissions would result in injury to Trivedi.
- ✓ There is a temporal and close causal connection between USCOURTS defendants failure and the harm suffered by Trivedi…even future risk, injury.
- ✓ Due to USCOURTS defendants conduct Trivedi has suffered and will continue to suffer DAMAGES and injury; legal fight , expenses, humiliation, distress, loss—as damages listed in detail in this claim submission to be included here…..; including but not limited USCOURTS people and GE people would Try to kill Trivedi or do such extreme harm..Trivedi already lost her father on the same day Trivedi arranged Internet of things – cybersecurity high stakes of billions of devices on February 22, 2017—her father dying on same day –presents circumstantial condition, GE had motive to kill her father as she was close to her..

**Trivedi's claims as to: duty, breach, causation, and damages/harm.**

- ✓ Duty – Under the circumstances, the USCOURTS defendants owed a legal duty to the person Trivedi who brings complaint
- ✓ Breach – The USCOURTS defendants act or fail to act in a certain way that breaches that legal duty;
- ✓ Causation – It was the actions or inactions of the USCOURTS defendants that caused the injury to the plaintiff Trivedi; and
- ✓ Damages – The defendants' actions lead to injury and harm to the plaintiff Trivedi – as listed in detail what injury, how and what harm
- ✓ — USCOURTS defendants enjoyed SADISTIC pleasure by keeping Trivedi in distress and not ruffling feathers by investigating GE> All to be put in jail.

**447.**  USCOURTS employees' Gross negligence is a lack of care that demonstrates reckless

159

disregard for the public safety, cybersecurity issues and most importantly HARM and injury to Trivedi 'which is so great it appears to be a conscious violation of Trivedi's rights to safety as well as public health and safety. USCOURTS defendants' conduct is a heightened degree of negligence representing an extreme departure from the ordinary standard of care; more harmful than ordinary negligence because it implies a thoughtless disregard of the consequences and the failure to use even slight care to avoid harming the life of whistleblower Trivedi.

**Trivedi here presents tort claims, acts that have harm the wellbeing of Trivedi, by that means violating HER rights and making the guilty** party USCOURTS employees liable for her damages and sufferings. The FTCA allows Trivedi to demonstrate that the damages caused to her are by the negligent acts of USCOURTS employees who were/are working within the capacity of their duties, and thus Trivedi sue the government for this negligence.

**USCOURTS judges/employees' intentional failure under corruption to exercising due care, failure do their job and failure to execute o**f a statute or regulation malfeasance misfeasance nonfeasance – public policy—and also USCOURTS violated its own policy to provide fair and full opportunity, serve justice and judges have shown tyranny like behavior.

## 27.13.8    Negligence per se

**448.**    Statutory violations establish prima facie case for negligence per se – in Trivedi's case it applies to both GE and judges.

**Plaintiff Trivedi re-alleges and incorporates by reference Paragraphs above as if fully set forth herein.**

**USCOURTS defendants' behavior was neglig**ent as a matter of law.

**Restatement (Third) of Torts §14. Statutory Violations as Negligence Per Se**

An actor is negligent if, without excuse, the actor violates a statute that is designed to protect against the type of accident the actor's conduct causes, and if the accident victim is within the class of persons the statute is designed to protect.

✓ **Pursuant to following statutes, rules and regulations USCOURTS Defendants had a duty when Trivedi filed her complaint in 2016 and 2019 and to first ciruit as well. It also form part of the basis of USCOURTS Defendants' duty in this regard.** Duty to investigate and protection –

**NOTE- Trivedi does not mean to say that for example USCOURTS defendants viol**ated federal false claims act and osha whistleblower SOX statutes 18 U.S.C. §1514A   ; but Trivedi means that while GE violated federal false claims act and osha whistleblower SOX statutes 18 U.S.C. §1514A; USCOURTS defendants illegally dismissing Trivedi's complaint violated as government employee to handle Trivedi's whistleblower complaint that alleged False claims act violations and OSHA SOX whistleblower violations/protections. Guilty by association and civil liability for obstructing justice and aiding and abetting wrongdoing/fraud by not taking action aka illegally dismissing Trivedi's complaint/lawsuit.

✓ Violations of safety statutes in Wisconsin are ordinarily[10] Locicero v. Interpace Corp., 83 Wis. 2d 876, 266 N.W.2d 423, 427 (1978); Blanchard v. Terpstra, 37 Wis. 2d 292, 155 N.W.2d 156, 158 n. 1 (1967); Lloyd v. Pugh, 158 Wis. 441, 445, 149 N.W. 150, 152 (1914). [ USCOURTS defendants had a duty because Trivedi's claims were for public health and safety )

✓ Held to be negligence per se and this principle *238 frequently [ Grube v. Moths, 56 Wis. 2d 424, 202 N.W.2d 261, 267 (1972); Schroeder v. Northern States Power Co., 46 Wis. 2d 637, 176 N.W.2d 336 (1970).] **has been applied in Wisconsin cases. The general rule in Wisconsin is that violation of a criminal statute is negligence per se.**

✓ **18 U.S.C. § 1514A (b)(2(D);29 C.F.R. § 1980.103(d)  -OSHA equitable tolling.**

✓ osha whistleblower SOX statutes 18 U.S.C. §1514A

✓ protection for Whistleblower Retaliation under Dodd-Frank Act, 15 U.S.C. §78u-6(h);SEC Rule17 CFR § 240.21F-2,

✓ Securities Exchange Act of 1934,15 U.S.C. 78j(b),Rule 17 C.F.R. 240.10b-5

✓ Wrongful termination by GE in violation of public policy - common law rule in Massachusetts and Wisconsin

✓ common law rule in Massachusetts and Wisconsin for TORT against GE

✓ 42 U.S.C. § 299 et seq -The Patient Safety and Quality Improvement Act of 2005

✓ 31 U.S.C. §3729 et seq. federal false claims act  quitam AND False claims act and whistleblower retaliation protection statutes of state of Massachusetts  MASS. GEN. LAWS ANN. CH. 12 §§ 5—5O

that a specific violation of the law occurred, and that violation is automatically assumed to be negligent.

✓ Trivedi's retaliation claim under false claims act 31 U.S.C. § 3730(h) (2) ; can proceed Pro Se and ongoing fraud makes claim timely  --  USCOURTS defendants violated this code TWICE.

✓ whistleblower protection statutes of Massachusetts

✓ Scott erven's 2018 global alert for Trivedi's termination related remote connectivity platform InsiteEXC…, cybersecurity vulnerabilities , Security statutes, public health & safety implementation as a government employee overseeing that laws statutes are ENFORCED, obeyed and those who blow whistle get protected.

✓ Though one can argue about Private cause of action available or not under following statutes, regardless;  USCOURTS defendants were bound by duty for following statutes.

> ➢ 45 CFR § 160.316 Refraining from intimidation or retaliation, Public Law 104-191.
> ➢ 18 U.S C § 1512 - Tampering with a witness, victim, or an informant
> ➢ And 18 U.S C §  1513 - Retaliating against a witness, victim, or an informant
>    18 U.S C § 1512 (a) (1) (A) ,18 U.S C § 1512 (b) (1) ,18 U.S C § 1512 (b) (2) (A) 18 U.S C § 1512 (b) (2) (B), 18 U.S C § 1512 (b) (3), 18 U.S C § 1512 (c) (2) 18 U.S C § 1512 (d) (1) ,18 U.S C § 1512 (d) (2) , 18 U.S C § 1513 (e), 18 U.S C § 1513 (f)

**The defendant violated above code, statute or regulation. Above legal theory** establishes the duty and breach elements of negligence.USCOURTS's failure to comply with applicable laws and regulations constitutes negligence per se
(Statutes prescribing certain actions or defining a standard of conduct, either explicitly or implicitly. )

**The plaintiff Trivedi in the class of persons** whistleblower protection statutes of state and federal level, **the code, statute, or regulation was designed to protect. But for JUDGES/USCOURTS/Defendants' wrongful and negligent breach of its duties owed to Plaintiff Trivedi and Class Members, Plaintiff and Class Members would not have been injured.**

The plaintiff Trivedi's injury, harm was the kind of injury the code, statute, or regulations that Trivedi mentioned ABOVE was designed to prevent.

The injury and harm suffered by Trivedi was the reasonably foreseeable result of Defendants' breach of their duties. Defendants knew or should have known that they were failing to meet their duties, and that Defendants' breach would cause Plaintiff Trivedi to experience the foreseeable harms (detailed HARM and DAMGES and INJURY enumerated throughout this claim form). As a direct and proximate result of Judges Defendants' negligent conduct, Trivedi has suffered injury and are entitled to compensatory damages in an amount mentioned in SUM CERTAIN section below.

Taking judicial notice to dismiss private right of action, failure to MA savings statute, ongoing violation based equaitable tolling – ongoing injury, injunctive relief  data breach lawsuit, accrual of claims makes it timely

## 27.13.9    Misfeasance and non feasance under tort

**449.    Plaintiff Trivedi re-alleges and incorporates by reference Paragraphs above as if fully set forth herein.**

Malfeasance –defendants' Intentional conduct that is wrongful or unlawful, defendants' higher level of wrongdoing than nonfeasance (failure to act where there was a duty to act) or misfeasance (conduct that is lawful but inappropriate). Here defendants acts satisfies all three; falls under public corruption as well.Misfeasance and Nonfeasance are part of tort law.

Misfeasance –USCOURTS defendants committed it when legal action done improperly, which resulted in harm to Trivedi.

Nonfeasance –USCOURTS defendants failure to carry out SERIES of required obligations, which results in injury or harm to Trivedi, public, loss and possible risk to society as Scott Erven's global alert came out in 2018.

## 27.13.10    Intentional Tort -fraud

**450.    Plaintiff Trivedi re-alleges and incorporates by reference Paragraphs above as if fully set forth herein.**

Tort of *fraud* – person who makes false statement intended to be acted on must make good the damage naturally resulting from its being acted on.

USCOURTS judges/people's half true , not telling full picture, omitting crucial and critical facts in dismissing Trivedi's claims by issuing order with prejudice and first circuit judges also

corruptly AFFIRMING it—denying due process to Trivedi- by not allowing any discovery-amendment- not holding HEARING…this is 100% corrupt.. – created tort of fraud cause of action.

## 27.13.11    Malfeasance

**451.    Plaintiff Trivedi re-alleges and incorporates by reference Paragraphs above as if fully set forth herein.**

Malfeasance is a legal term used in civil and criminal law to describe an illegal and intentional act. Malfeasance is used to describe an act that cannot be defined as a distinct crime. Acts of malfeasance by **USCOURTS defendants** involve some misconduct and dishonesty.

## 27.13.12    Depriving persons of rights or privileges " individual capacity

**452.    Plaintiff Trivedi re-alleges and incorporates by reference Paragraphs above as if fully set forth herein.**

Judges (judge Kelley to get reappointed)for personal benefit, for being afraid of not standing up big company GE, for negligence, misfeasance, malfeasance and non feasance…to cover up – to exploit Trivedi's hardship, mitigating circumstances.

**453.**

## 27.14 FOURTEENTH COUNT
### Claims for violations of constitutional rights pursuant to  Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 396-97 (1971)

**(All USCOURTS Employees - Judges Named Individually In This Complaint as defendants )**

**Fifth Amendment claims for violation of Trivedi's Due Process rights**
**Claim for failure to intercede**

This law further prohibits a person acting under color of law, statute, ordinance, regulation or custom to willfully subject or cause to be subjected any person to different punishments, pains, or penalties, than those prescribed for punishment of citizens on account of such person being an alien or by reason of his/her color or race.

Trivedi constitutional rights have been violated and that she has no effective means other than the this lawsuit to vindicate these rights.

Due to their intentional conduct and reckless , deliberate indifference – declined or refused to fulfil their duty – constitutional right under FIFTH AMENDMENT , not to be deprived of REPUTATION. Ongoing sabotage of GE to paint Trivedi as FAILURE..while not DENYING that

GE was/is engaged in ongoing FRAUD – but at the same time TOTALLY TARNISH her

REPUTATION, image… …While OSHA , ALJ , ARB dismissals of Trivedi claims – totally PAINT

Trivedi as at fault person – based on TIMELINESS – while siding GE – when GE did huge

fraud…**Judges have knowingly & intentionally, to Terrorize**

**(Because Trivedi is WOMAN , SINGLE, immigrant…enjoys**

**sadistic pleasure) TRIVEDI, have  put FALSE, incomplete,**

**partial FACTS – about Trivedi…..**

AND JUDGES have failed to vindicate her…**Trivedi's name MUST BE CLEARED – and so HER**

**being a  WHISTLEBLOWER by HOLDING GE accountable…so that in FUTURE – she**

**doesn't have to PROVE over and OVER again that it was GE who screwed up…**

Judges had opportunity to prevent ongoing HARM to TRIVEDI's reputation, career, financial loss –
They again failed to do so[ failure to act - In order for liability to attach, there must
have been realistic opportunity to intervene to prevent the harm from
occurring -Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994).  ].[
Trivedi has plausibly plead that "the failure to intercede HAS been a
proximate cause of the harm." Bah v. City of New York, No. 13-cv-
6690 (PKC), 2014 WL 1760063, at *7 (S.D.N.Y. May 1, 2014); accord
O'Neill v. Krzeminski, 839 F.2d 9, 11 (2d Cir.1988 )]…and

as in Davis v. *v. Passman*, 442 U.S. 228, 248-49 (1979) (providing a *Bivens* remedy for gender

discrimination under the Fifth Amendment Due Process Clause) – gender , race , nationality

discrimination – because if Trivedi would have been a MALE, WHITE , US CITIZEN – than Judges

would have not terrorized – the same way they did Trivedi. Trivedi suffered the substantial and

continuing injuries  and damages as set forth in this complaint.

**454.**    Acting within scope of their employment and under color of federal law, all the judges

mentioned in this complaint as PARTIES, are personally involved in this unconstitutional misconduct against Trivedi .

**27.14.1 Should a judge not disqualify himself, then the judge is violation of the Due Process**

    **Clause of the U.S. Constitution. United States v. Sciuto, 521 F.2d 842, 845 (7th Cir. 1996)**

    **("The right to a tribunal free from bias or prejudice is based, not on section 144, but on**

    **the Due Process Clause.").**

Judge Saris nor Judge Kelley recused themselves. Nor first circuit considered. Thus Triveid has valid

BIVENS claims for violations.

Trivedi constitutional rights have been violated and that she has no effective means other than the this

lawsuit to vindicate these rights.

**Federal law requires the automatic disqualification of a Federal judge under certain circumstances.**

    *In 1994, the U.S. Supreme Court held that "Disqualification is required if an objective observer would entertain reasonable questions about the judge's impartiality*. If a judge's attitude or state of mind leads a detached observer to conclude that a fair and impartial hearing is unlikely, the judge must be disqualified." [Emphasis added]. Liteky v. U.S., 114 S.Ct. 1147, 1162 (1994).


    *Courts have repeatedly held that positive proof of the partiality of a judge is not a requirement, only the appearance of partiality*. Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847, 108 S.Ct. 2194 (1988) (what matters is not the reality of bias or prejudice but its appearance); United States v. Balistrieri, 779 F.2d 1191 (7th Cir. 1985) (Section 455(a) "is directed against the appearance of partiality, whether or not the judge is actually biased.") ("Section 455(a) of the Judicial Code, 28 U.S.C. §455(a), is not intended to protect litigants from actual bias in their judge but rather to promote public confidence in the impartiality of the judicial process.").

*Fraud Upon the Court is where the Judge (who is NOT the "Court")* does NOT support or uphold the Judicial Machinery of the Court. The Court is an unbiased, but methodical "creature" which is governed by the Rule of Law... that is, the Rules of Civil Procedure, the Rules of Criminal Procedure and the Rules of Evidence, all which is overseen by Constitutional law.
*[In Trivedi's case there has been no discovery, fact checking, trial , jury—JUDGES have even committed PERJURY – by putting FALSE statements related to what happened in THEIR ORDERS-*

## 27.15 FIFTEENTH COUNT
### 5 U.S.C. § 702 under the Administrative Procedures Act ("APA"), 5 U.S. Code § 706
### (All Government Defendants)

Section 702 of the APA provides that "[a] person suffering legal wrong because of agency action ... is entitled to judicial review thereof." 5 U.S.C. § 702.

**455.    DOL, ALJ , OSHA ,ARB denied Trivedi's motion for discovery to interrogate FDA officers, OSHA employees for 2014 complaint regarding timeliness. Trivedi's motion for stay pending discovery and motion for limited discovery to answer ALJ' Timothy McGrath's order to show cause on timeliness was denied. And because of that Trivedi's OSHA SOX claims were denied. Because Defendant's denial of Plaintiffs' request for testimony from an ALJ employee was a "final agency action for which there is no other adequate remedy," And ARB has also affirmed ALJ's dismissal and denial of discovery, this matter is ripe for judicial review; 5 U.S.C. § 704 (a "final agency action for which there is no other adequate remedy) – because of that Trivedi have to fight harder in district court for OSHA SOX right. " I reserve the right and request court's permission to AMEND this section.**

**456.    This is a grant strategy by DOL defendants who breath GE's $10 billion plus on Lobbying money and political contribution – because DOL is run by politicians and this flow from high level to low level employees.**

**457.    ("The Court must "assess, among other matters, whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Bechtel* v. *Admin*. *Review Bd*., *U.S. Dep't of Labor*, 710 F.3d 443, 446 (2d Cir. 2013) (quoting *Judulang*, 565 U.S. at 53).**

## 27.16 IRREPARABLE INJURY, INJUCTION

**458.    Monetary damages at a later date ,time would not adequately compensate Trivedi for the injuries Trivedi sustained , are sustaining and will sustain as a result of the events described above and as stated above reasons; such compensation could not be measured.**

## 28  PRAYER FOR RELIEF

**459.**    WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

**460.    Damages & Relief for FTCA  :Lost wages, Additional benefits that Trivedi would have received from GE- Monetary damages for loss of career and all other claims; pain and suffering, Mental and emotional distress, ongoing injury to Trivedi's reputation, trauma , distress ..and becoming almost an attorney by reading tons of legal material.** Compensatory damages are typically equal to the monetary value of the injured party's loss of earnings, loss of future earning capacity, pain and suffering, and reasonable medical expenses. Thus, courts [USCOURTS agency and DOL] may award damages for incurred as well as expected losses.

**461.**    **S**ince my termination in May 31st 2013, GE knew all the violation  they did and knowing kept me in distress by withdrawing immigration just so to obstruct me from fighting all these claims/cause of actions I was entitled too—and now at any point arguing in this LAWSUIT that "it is time barred" In this time I had to Become Law student and almost like a lawyer by reading Tons of legal material. For these and many of such conduct; GE and GE attorneys MUST be in JAIL.

**462.**    <u>As a proximate result of GE's actions against Trivedi, as alleged above, Trivedi has been harmed in that she has suffered the loss of wages, benefits, and additional amounts of money she would have received if she had not been subjected to said treatment along with immigration harm;</u>H1 B visa, ability to get employment based greencard under _a person of exceptional ability/advanced degree" where at GE her PERM with department of labor was already approved but due to GE's illegal termination I 140 was never filed.. Trivedi has also been harmed in that she has suffered humiliation, mental anguish, and emotional and physical distress.

**463.    Sarbanes Oxley Act (SOX) 18 U.S.C. §1514A (c) Remedies** Compensatory damages.--Relief for any action under paragraph (1) shall include--(A) reinstatement with the same seniority status that the employee would have had, but for the discrimination; (B) the amount of back

pay, with interest; and (C) compensation for any special damages sustained as a result of the discrimination, including litigation costs, expert witness fees, and reasonable attorney fees.But DOL defendants failure , corruption , negligence, malfeasance, misfeasance , non feasance, inflicting intentionally emotion distress upon Trivedi, harassing her- and other tort claims mentioned above had led to Trivedi not receive any of the remedy under SOX ; which absence FTCA claims –she would have received.

**464.    Lost wages, Additional benefits that Trivedi would have received from GE-Monetary damages or loss of career and all other claims; pain and** suffering, Mental and emotional distress, injury to Trivedi's reputation, trauma , distress ..and becoming almost an attorney by reading tons of legal material. Compensatory damages are typically equal to the monetary value of the injured party's loss of earnings, loss of future earning capacity, pain and suffering, and reasonable medical expenses. Thus, courts [DOL agency] may award damages for incurred as well as expected losses.

**465.    Trivedi is entitled to emotional damages under SOX[5] and ARB, ALJ, OSHA[6] knows; but intentionally dismissed case based on timeliness. OSHA investigator manual -B. Emotional Distress / Mental Anguish , Pain and Suffering.** Compensatory damages are designed to compensate complainants not only for direct pecuniary loss, but also for emotional distress, pain and suffering, loss of reputation, personal humiliation, and mental anguish resulting from the respondent's adverse employment action. Courts regularly award compensatory damages for demonstrated mental anguish or pain and suffering in winning employment retaliation and

---

[5] **In Jones v. SouthPeak Interactive Corp., 777 F.3d 658 (4th Cir. 2015)- The Fourth Circuit followed other circuit courts that had reached the same conclusion and focused on a SOX plaintiff's entitlement to be made "whole."** *Id.* The court further noted that SOX protects whistleblowers from threats and harassment, which often will cause noneconomic harm. Id. at 672. Finally, the court found no abuse of discretion in the court's award of emotional distress damages. *Id.* at 673.

[6] Emotional damages are available under 18 U.S.C. § 1514A(c). The overwhelming majority federal court and agency jurisprudence under the Sarbanes-Oxley Act and federal statutes with similar remedies provisions to § 1514A(c) finds emotional damages to be available.

discrimination cases. Damages for emotional distress and mental anguish may be awarded under all OSHA-administered whistleblower statutes.

**466.** For monetary damages against Defendants, and each of them, in an amount sufficient to compensate Plaintiff for loss of income, loss of benefits, loss of use, for emotional distress, and for the injury and damage that Defendants have caused to Plaintiff's name and reputation;

**467.** Front pay-all the salary she lost since she was illegally terminated.

**468.** double back pay damages for all violations;

**469.** Make Trivedi whole again

**470.** Monetary damages as per Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]

**471.** Damages for emotional distress, economic loss, defamation, intentional infliction of emotional distress.

**472.** If court find proper; issue order for relief in PUBLIC INTEREST as well

**473.** CLASS ACTION RELIEF

**474.** Such other and further relief as the Court may deem just and proper.

**475.** Award for legal fees as courts may deem just and proper.

## 29 JURY DEMAND

**476.** Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

_____,
Madhuri Trivedi
Dated: October 3, 2022
**Madhuri Trivedi**
/s/ Madhuri Trivedi
607 Boylston Street, PMB 334 - Lower Level,Boston, MA 02116

Phone: (650) 242-5135

Email: orangeinc@protonmail.com

**Twitter** - @madhuritrivd

**Linkedin:**- linkedin.com/in/trivedim

**World summit on innovation and Entrepreneurship** – THE WSIE  summit speaker invite– Great presenter 2019 -   https://thewsie.com/presenters-2019/

**About OrangeHealth** :-( no longer exists, & got killed in this ugly fight)
(visibility report shows potentially reaching 50 million reader)

**PRESS RELEASE-**
**"OrangeHealth Seeking Investors for Mobile App Peer-to-Peer Platform for Managing Diabetes, Other Health Conditions"**

http://www.prnewswire.com/news-releases/orangehealth-seeking-investors-for-mobile-app-peer-to-peer-platform-for-managing-diabetes-other-health-conditions-300477365.html

SAN FRANCISCO, June 21, 2017 /PRNewswire/ -- Madhuri Trivedi, an engineer, scientist, entrepreneur and immigrant, has launched her new company OrangeHealth and is currently seeking investors for its product. Trivedi is seeking seed funding in the range of $200k to $350k to further launch the app in various geographical areas, add more features, and launch a peer-to-peer platform app for sharing information. The new app will provide peer-to-peer crowd sourced community support with deep learning artificial intelligence (AI) to better manage diabetes.
She also has created and launched a new mobile health improvement app that is already used by more than 6,000 people to manage allergies, find a doctor, is used for predictive analytics for eating habits, and reminders at the time of eating.
"Prevention is key for managing illness like diabetes, but it's just as important that people can gain the information and support," says Trivedi.
"Right now, because of some challenges in my immigration status, while I have the technical support to build the app, I need funding to help with its launch because I am unable to work. The only way to get this app off the ground is through investors willing to support this important work," adds Trivedi.
She wrote heavily about precision medicine in April 2104, received a job offer in 2014 with Harvard Medical to create a cancer vaccine, artificial protein. President Obama in the 2015 State of Union Address, launched precision medicine initiative. Trivedi has been unable to take the Harvard position because of immigration denials and challenges. While at General Electric, Trivedi's labor certificate for immigration was approved as "a person of exceptional ability" EB2 category. GE, however, didn't file the next step so she could work in the U.S.
After leaving GE, with the Harvard medical job offer and her entrepreneurial start-up, Trivedi filed for immigration under "a person of extra-ordinary ability" EB1 category, which DHS denied. Trivedi has a number of letters of support from professionals associated with her scientific and technical work
.
Trivedi has a long career as an expert in her field. While at Raindance, Trivedi developed the world's first digital-equivalent to personal computer instrument for genome sequencing used for drug discovery in 2009. Here she was part of a 20 people start up that went on to generate hundreds of millions of revenue. Dr. Jonathan Rothberg, founder of the startup, was awarded National Medal of

Technology and Innovation by President Obama and made $700 million selling the sister company to Life Technology. Trivedi did not make any money from the sale of the company.

She has made major significant contributions in extraordinary ability and national interest while working at Fortune 10/50 corporations, successful entrepreneurial startups. Only individuals with both exceptional technical ability as well as persistence and commitment can deliver what Trivedi has in a high-risk environment with do or die start up success.

About OrangeHealth

OrangeHealth provides quality and affordable healthcare tools and services through a software portal and peer to peer network. For more information,

***************END of Press release

## 30 EXHIBITS

477.    Plaintiff realleges, reasserts, and incorporates by reference the facts and Allegations, evidence stated in these EXHIBITS into this complaint.

# EXHIBITS

| 0 | From FDA.gov safety communication about GE Cybersecurity Vulnerabilities , 2020 | 173 |
|---|---|---|
| | court filings | 176 |
| 1A | District court filed January 20020, FOR CISA.gov alerts in January, 2020  - 10/10 severity, VNC server, patient monitoring, anesthesia – all trashed by Judge Saris | 177 |
| 1B | First circuit July filed 2022 - FOR CISA.gov alerts in June 2022 | 216 |
| 3 | TIMELINE of events, facts, case filings, procedural history | 229 |
| 4 | SEC.gov cybersecurity rulemaking & Trivedi's comment | 239 |
| 5 | GE attorney filed 9 pages of transcript of arbitration hearing; District of Columbia lawsuit against GE- where Trivedi testified that performance review where Dave WROTE- it was GE's problem & rated Trivedi's performance was fine –Review entered by Dave Sallis was not given during discovery – so that Trivedi couldn't call Dave as a witness to testify at HEARING. | 249 |
| 6 | 2012 Email by Trivedi At GE; ActiveX controls were built without SECURITY update . ActiveX control were required to be built using Visual Studio C++ 2005 or higher and it was June 2012—It shows GE used old, out of date, STONEAGED cybersecurity components. | 258 |
| | | |
| 8 | ALJ dol.gov – motion to amend GE ENRON – ALJ NEVER ruled on this motion | 260 |
| 9A | Trivedi's motion at ALJ – for limited discovery to answer timeliness and motion to stay pending discovery to answer ALJ order to show cause on timeliness – ALJ denied both motions | 269 |
| 9B | ARB opening brief | 303 |
| 9C | ARB petition for rehearing en banc and motion for reconsideration en banc - PENDING | 382 |
| 10 | October 5, 2021 Trivedi reply brief to GE Response at FIRST CIRCUIT | 506 |
| 11 | Move, Inc. v. Citigroup Global Markets, Inc., - Thecourt of appeals panel held that the plaintiff's motion was not untimely because the Federal Arbitration Act is subject to equitable tolling. | 536 |

| 12 | my email to Ur Jaddou, USCIS director nominee on May 27, 2021 and within 10 hours, Judge Saris issues 3 lines order to dismiss my case. | 538 |
| 13 | Trivedi emailed arbitration award to Foley & Manfield attorney that day she received it – Malpractice | 544 |
| 14 | EEOC right to sue NOTICE issued in 2021- considering TRIVEDI CHARGE TIMELY | 548 |
| 15 | GE's 2 page response to EEOC charge in 2021 | 551 |
| 16 | DOL FTCA attorney Stefan Babich –who wrote that OSHA SOX is for finance cooking books…how come he adjuncate Trivedi FTCA claims | 553 |
| 17 | EMAIL of Jenny Schrager -GE immigration attorney and HR email that GE canceled my H1 B visa while mediation and arbitration is PENDING. And won't pursue any immigration I 140 paperwork( so she couldn't work anywhere else including at Thermo fisher scientific. | 558 |
| 18 | When Res Judicata doesn't apply | 563 |
| 20 | GE attorney EMAIL -declining public arbitrator Peter David of Wisconsin workforce development – because then arbitration RECORD would become PUBLIC | 567 |
| 21 | **Trivedi's reply to GE response brief for ARB– entire argument about Jack's magic -- Part II (Dec. 26, 2005) -GE earning management -Was the unit blind-sided or was it straining to deliver the double-digit earnings growth Welch always expected? Was anything illegal done? –** Since 2002, GE has been subject of manufactured earning …................................. ARB at DOL….like others under corruption IGNORED – and as joint coconspirator dismissed Trivedi's claims as untimely - And defendants JUST want to cover up. | 568 |
| 22 | Email- to and from- Ernst & Young HR investigation about my Ex husband..While Fragomen was the same lawfirm for Ernst & Young when they did my H4 in 2004 ..and domestic violence email was sent to Jenny Scharger in 2013 when GE terminated & withdrew H1. & more.. <br><br> District court has entire history in ECF 143 – First circuit opening brief appendix also has details. <br> On a side note..Michael Rapoport –then WSJ journalist & I were going to have phone talk about my ex sleeping on top of his mom – in 2019—I had told Mike that EY keeping my EX as a BAIT to get GE as an AUDITOR as GE was dumping KPMG after 100 years – and next day he was let go by WSJ…**at that time Mike had written WSJ article about GE's $23 billion charge – which later became GE's $200 million settlement in Dec. 2020 with SEC.gov** | 602 |
| 23 | **June 2021 first circuit filings** –about - FDA approved total 100( 50th in 2014 & 50 more monoclonal antibody from 2015- Trivedi's Harvard medical job offer in 2014 to work on synthetic protein - monoclonal antibody – which was part of all filings.& Trivedi MIT vlab event on immunotherapy | 608 |


# Cybersecurity Vulnerabilities in Certain GE Healthcare Clinical Information Central Stations and Telemetry Servers: Safety Communication

## Date Issued: January 23, 2020

The U.S. Food and Drug Administration (FDA) is raising awareness among health care providers and facility staff that cybersecurity vulnerabilities in certain GE Healthcare Clinical Information Central Stations and Telemetry Servers may introduce risks to patients while being monitored.

These devices are used mostly in health care facilities for displaying information, such as the physiologic parameters of a patient (such as temperature, heartbeat, blood pressure), and monitoring patient status from a central location in a facility, such as a nurse's workstation. To date, the FDA is not aware of any adverse events related to these vulnerabilities. Learn more about these vulnerabilities

On November 12, 2019, GE Healthcare issued an "Urgent Medical Device Correction" letter informing consumers of security vulnerabilities for certain GE Healthcare Clinical Information Central Stations and Telemetry Servers, instructions for risk mitigation, and where to find the software updates or patches when they become available.  The following table provides information on the specific versions of the devices that have these security vulnerabilities.

| DEVICE | SOFTWARE VERSION | RECALL INFORMATION |
| --- | --- | --- |
| ApexPro Telemetry Server and CARESCAPE Telemetry Server | 4.2 and earlier | ApexPro (https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfRES/res.cfm?id=178163), <br><br> CARESCAPE (https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfres/res.cfm?id=178167) |
| CARESCAPE Central Station (CSCS) version 1 | 1.x | CARESCAPE (https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfres/res.cfm?id=178167) |

∧ Top ()

CIC Pro Clinical Information Center       4.x, 5.x                                Central Information Center (CIC)
Central Station version 1                                                          (https://www.accessdata.fda.gov
                                                                                  /scripts/cdrh/cfdocs/cfRES
                                                                                  /res.cfm?id=178165)

**Recommendations for Health Care Providers**

- Work with health care facility staff to determine if a medical device used by a patients may be affected and how to reduce associated risk.

**Recommendations for Health Care Facility Staff (including, Information Technology and Cybersecurity Staff)**

- GE Healthcare will be issuing a software patch to address the vulnerabilities and will notify affected customers to deploy them when the patches are ready. Information about the patches will be posted on the GE Healthcare product security portal (https://securityupdate.gehealthcare.com/) ⧉ (http://www.fda.gov/about-fda/website-policies/website-disclaimer).

- The risk posed by the vulnerabilities can be reduced by segregating the network connecting the patient monitors with the GE Healthcare Clinical Information Central Stations and Telemetry Servers from the rest of the hospital network, as described in the GE Healthcare documentation for these devices.

- Use firewalls, segregated networks, virtual private networks, network monitors, or other technologies that minimize the risk of remote or local network attacks.

**Recommendations for Patients and Caregivers**

- Talk with your health care provider if you have any concerns. The FDA is not aware of any adverse events related to this vulnerability.

**Cybersecurity Vulnerabilities**

A security firm has identified several vulnerabilities in certain GE Healthcare Clinical Information Central Stations and Telemetry Servers, that may allow an attacker to remotely take control of the medical device and to silence alarms, generate false alarms and interfere with alarms of patient monitors connected to these devices.

Health care providers use GE Clinical Information Central Stations and Telemetry Servers to collect and display data from multiple patient monitoring devices. The data includes physiological status (such as temperature, heartbeat, blood pressure), patient demographic

or other nonmedical information.

These vulnerabilities might allow an attack to happen undetected and without user interaction. Because an attack may be interpreted by the affected device as normal network communications, it may remain invisible to existing security measures.

For more information about these vulnerabilities see:

- Department of Homeland Security Cybersecurity Infrastructure Security Advisory (https://www.us-cert.gov/ics/advisories/icsma-20-023-01)
- GE Healthcare Guidance on the Cybersecurity vulnerability (https://www.gehealthcare.com/security) ⧉ (http://www.fda.gov/about-fda/website-policies/website-disclaimer)

**FDA Actions**

The FDA takes reports of cybersecurity vulnerabilities in medical devices seriously and will continue to work with GE Healthcare as the firm develops software patches to correct these vulnerabilities as soon as possible. The FDA will continue to assess new information concerning the vulnerabilities and will keep the public informed if significant new information becomes available. Read more about medical device cybersecurity (https://www.fda.gov/medical-devices/digital-health/cybersecurity)

**Reporting Problems with Your Device**

If you think you had a problem with your device or a device your patient uses, the FDA encourages you to report the problem through the MedWatch Voluntary Reporting Form (https://www.accessdata.fda.gov/scripts/medwatch/index.cfm?action=reporting.home).

Health care personnel employed by facilities that are subject to the FDA's user facility reporting requirements should follow the reporting procedures established by their facilities.

**Questions?**

If you have questions, email the Division of Industry and Consumer Education (DICE) at DICE@FDA.HHS.GOV (mailto:DICE@FDA.HHS.GOV) or call 800-638-2041 or 301-796-7100 .

# EXHIBIT ⚡ 1

COURT filings Jan. 2020 and June 2022 for cisa.gov GE remote connectivity alerts – with 10/10 severity score

1)District court and first circuit filings....it shows how things are taken by judges...total disregard of merits...this is negligence, recklessness, total abuse --  as they come under TORT and Bivens
District court  - ECF 117 cybersecurity letter Jan 24 2020

2)First circuit Case: 21-1434 Document: 00117901507  Date Filed: 07/25/2022 Entry ID: 6509438   - this letter has 2022 June cisa.gov dhs.gov alert from GE

EXHIBIT 1A  ●

## U.S. DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **Madhuri Trivedi** | Case No.: |
| | **1:19-cv-11862-PBS** |
| Plaintiff, | |
| v. | **Letter to Hon. Judge Kelley and Hon. judge Saris about GE medical devices' cybersecurity vulnerabilities ALERTS related to remote control and remote access to mission critical networks, numerous medical devices(Latest ALERT is Dated January 23, 2020)** |
| **General Electric et al.** | |
| Defendants. | |

Hon. Chief Judge Saris and Hon. Judge Kelley

I am writing this quick letter as to make holistic, total picture arguments and present facts relevant to this case. It is about GE's continuous, SYSTEMIC, culture about cybersecurity vulnerabilities, quality in GE medical devices, recklessness. It is IMPORTANT because; due to CYBERSECURITY vulnerabilities, quality and able to being hacked; I was framed and illegally terminated (also for not joining GE's fraud scheme).

**Both alerts mentioned in this LETTER, and several vulnerabilities as mentioned in my Amended Complaint related to "INSITE EXC"GE medical devices' vulnerabilities; represent the same underlying problems- ability to hack-remotely gain access to medical devices and mission critical networks, take full control of GE medical devices ,networks remotely and even low skill person can do that.**

**Might is Right is not allowed and it is illegal too; when it affects public health and safety, pose/incur serious harm and risk and an employee like Trivedi is RETALIATED…**

GE's denial to accept these facts in this lawsuit is not what medical device company or any company would do. "Accountability" is accepting what is WRONG and FIXING it (instead of terrorizing me, diverting blame and more). It is the CULTURE of CYBERSECURITY issues, quality along with problems of GE's own (and not me) which led to disagreements as I/Madhuri didn't compromise quality, cybersecurity vulnerabilities and Trivedi didn't join their fraud scheme.

## 1)ICS Advisory (ICSMA-20-023-01)
**GE CARESCAPE, ApexPro, and Clinical Information Center systems**
Original release date: January 23, 2020

Trivedi  v. General Electric et. al

1   https://www.us-cert.gov/ics/advisories/icsma-20-023-01

2   **RISK EVALUATION**

3
4   Successful exploitation of these vulnerabilities could occur when an attacker gains access to the
    mission critical (MC) and/or information exchange (IX) networks due to improper configuration
5   or physical access to devices. An exploit could result in a loss of monitoring and/or loss of
    alarms during active patient monitoring. These vulnerabilities, if exploited, may allow an
6   attacker to obtain PHI data, make changes at the operating system level of the device, with
    effects such as rendering the device unusable, otherwise interfering with the function of the
7   device and/or making certain changes to alarm settings on connected patient monitors, and/or
    utilizing services used for remote viewing and control of devices on the network to access the
8   clinical user interface and make changes to device settings and alarm limits, which could result
    in missed or unnecessary alarms or silencing of some alarms.
9

10  ## 2) ICS Medical Advisory (ICSMA-19-190-01)

11                    **GE Aestiva and Aespire Anesthesia (Update A)**
    Original release date: July 09, 2019 | Last revised: July 24, 2019
12  https://www.us-cert.gov/ics/advisories/icsma-19-190-01

13
    A vulnerability exists where serial devices are connected via an added unsecured terminal server
14  to a TCP/IP network configuration, which could allow an attacker to remotely modify device
    configuration and silence alarms.
15

16  **Vulnerabilities found in GE anesthesia machines** - GE recommended that device owners not
    connect vulnerable anesthesia machines to a hospital's main networks. The company also denied
17  the bugs could lead to patient harm, but later recanted and admitted that the issues could be
    dangerous to human life.
18

19  ## 3)
            **In Bill Barbiuax testimony ( exhibit 39 in my amended complaint), though Bill was**
20          **beating around bush and I didn't get lot out of him as GE lawyer was obstructing**
            **my questioning and he trained Bill to evade and not give answers to the point to**
21          **admit any wrongdoing. Standard deposition tactic used.**
            **Page 84**
22

23   **Q** Is that correct? That for Insite ExC,
    manager, team leads and you, including you,had a learning curve in terms of technology
24  and the security issues?
25
    **A** I think I said you shouldn't be blamed for the technical issues. There were technical issues
26  here and that should not reflect poorly on your performance.
27  **Q** In terms of communication. You already said that on record. She already read that once.
    **A** And maybe I said that. And what I meant was the technical issues you shouldn't be dinged
28

1   on, right, or they shouldn't be black marks on your record.

2

3                                          Thanks and regards, I appreciate that.

4                                          Respectfully Submitted,
                                           Dated: January 24 2020
5                                          Madhuri Trivedi- Pro Se

6                                          /s/Madhuri Trivedi

7                                          Linkedin:- linkedin.com/in/trivedim
                                           Twitter:- @madhuritrivd
8                                          Fax: 708-778-4859 Phone: (650) 242-5135
                                           Email: orangeinc@protonmail.com
9                                          607 Boylston Street,
10                                         PMB 334 - Lower Level
                                           Boston, MA 02116
11

12                              **CERTIFICATE OF SERVICE**

13
    The CM/ECF system sends notification of filing to all the parties. Therefore, when this document
14  is docketed on ECF; the ECF system will then email all parties –registered to receive such
    service, notifying them that I have filed a document. Those parties will then be able to get a copy
15  of the document. This process for docketing on ECF is deemed to be service under Rule 5(b) of
16  the Federal Rules of Civil Procedure**.**
    Dated: January 24 2020
17  _____,

18  /s/Madhuri Trivedi

19

20

21

22

23

24

25

26

27

28
    Page **- 3 -**of 3                          Trivedi  v. General Electric et. al



ICS-CERT Landing > ICS-CERT Advisories
> GE CARESCAPE, ApexPro, and Clinical Information Center systems

More ICS-CERT Advisories

# ICS Advisory (ICSMA-20-023-01)

## GE CARESCAPE, ApexPro, and Clinical Information Center systems

Original release date: January 23, 2020



Print    Tweet    Send    Share

## Legal Notice

All information products included in http://ics-cert.us-cert.gov are provided "as is" for informational purposes only. The Department of Homeland Security (DHS) does not provide any warranties of any kind regarding any information contained within. DHS does not endorse any commercial product or service, referenced in this product or otherwise. Further dissemination of this product is governed by the Traffic Light Protocol (TLP) marking in the header. For more information about TLP, see http://www.us-cert.gov/tlp/.

## 1. EXECUTIVE SUMMARY

- **CVSS v3 10.0**
- **ATTENTION:** Exploitable remotely/low skill level to exploit
- **Vendor:** GE



Create PDF in your applications with the Pdfcrowd HTML to PDF API    PDFCROWD

- **Equipment:** CARESCAPE Telemetry Server, ApexPro Telemetry Server, CARESCAPE Central Station (CSCS) and Clinical Information Center (CIC) systems, CARESCAPE B450, B650, B850 Monitors
- **Vulnerabilities:** Unprotected Storage of Credentials, Improper Input Validation, Use of Hard-coded Credentials, Missing Authentication for Critical Function, Unrestricted Upload of File with Dangerous Type, Inadequate Encryption Strength

## 2. RISK EVALUATION

Successful exploitation of these vulnerabilities could occur when an attacker gains access to the mission critical (MC) and/or information exchange (IX) networks due to improper configuration or physical access to devices. An exploit could result in a loss of monitoring and/or loss of alarms during active patient monitoring. These vulnerabilities, if exploited, may allow an attacker to obtain PHI data, make changes at the operating system level of the device, with effects such as rendering the device unusable, otherwise interfering with the function of the device and/or making certain changes to alarm settings on connected patient monitors, and/or utilizing services used for remote viewing and control of devices on the network to access the clinical user interface and make changes to device settings and alarm limits, which could result in missed or unnecessary alarms or silencing of some alarms.

## 3. TECHNICAL DETAILS

## 3.1 AFFECTED PRODUCTS

The following versions of GE Healthcare Monitoring platforms are affected:

- ApexPro Telemetry Server, Versions 4.2 and prior
- CARESCAPE Telemetry Server, Versions 4.2 and prior
- Clinical Information Center (CIC), Versions 4.X and 5.X
- CARESCAPE Telemetry Server, Version 4.3 (Impacted by CVE-2020-6962 and CVE-2020-6961)
- CARESCAPE Central Station (CSCS), Versions 1.X
- CARESCAPE Central Station (CSCS), Versions 2.X (Impacted by CVE-2020-6962 and CVE-2020-6964)
- B450, Version 2.X (Impacted by CVE-2020-6962 and CVE-2020-6965)
- B650, Version 1.X (Impacted by CVE-2020-6962 and CVE-2020-6965)

Create PDF in your applications with the Pdfcrowd HTML to PDF API

PDFCROWD

- B650, Version 2.X (Impacted by CVE-2020- 6962 and CVE-2020-6965)
- B850, Version 1.X (Impacted by CVE-2020- 6962 and CVE-2020-6965)
- B850, Version 2.X (Impacted by CVE-2020- 6962 and CVE-2020-6965)

## 3.2 VULNERABILITY OVERVIEW

### 3.2.1 UNPROTECTED STORAGE OF CREDENTIALS CWE-256

A vulnerability exists in the affected products that could allow an attacker to obtain access to the SSH private key in configuration files.

CVE-2020-6961 has been assigned to this vulnerability. A CVSS v3 base score of 10 has been calculated; the CVSS vector string is (AV:N/AC:L/PR:N/UI:N/S:C/C:H/I:H/A:H). To see how this vulnerability affects each unique configuration, please apply the environmental portion of CVSS v3.0 score.

### 3.2.2 IMPROPER INPUT VALIDATION CWE-20

An input validation vulnerability exists in the web-based system configuration utility that could allow an attacker to obtain arbitrary remote code execution.

CVE-2020-6962 has been assigned to this vulnerability. A CVSS v3 base score of 10 has been calculated; the CVSS vector string is (AV:N/AC:L/PR:N/UI:N/S:C/C:H/I:H/A:H). To see how this vulnerability affects each unique configuration, please apply the environmental portion of CVSS v3.0 score.

### 3.2.3 USE OF HARD-CODED CREDENTIALS CWE-798

The affected products utilized hard coded SMB credentials, which may allow an attacker to remotely execute arbitrary code.

CVE-2020-6963 has been assigned to this vulnerability. A CVSS v3 base score of 10 has been calculated; the CVSS vector string is (AV:N/AC:L/PR:N/UI:N/S:C/C:H/I:H/A:H). To see how this vulnerability affects each unique configuration, please apply the environmental portion of CVSS v3.0 score.

### 3.2.4 MISSING AUTHENTICATION FOR CRITICAL FUNCTION CWE-306

The integrated service for keyboard switching of the affected devices could allow attackers to obtain remote keyboard input access without authentication over the network.

CVE-2020-6964 has been assigned to this vulnerability. A CVSS v3 base score of 10 has been calculated; the CVSS vector string is (AV:N/AC:L/PR:N/UI:N/S:C/C:H/I:H/A:H). To see how this vulnerability affects each unique configuration, please apply the environmental portion of CVSS v3.0 score

### 3.2.5  UNRESTRICTED UPLOAD OF FILE WITH DANGEROUS TYPE CWE-434

A vulnerability in the software update mechanism allows an authenticated attacker to upload arbitrary files on the system through a crafted update package.

CVE-2020-6965 has been assigned to this vulnerability. A CVSS v3 base score of 8.5 has been calculated; the CVSS vector string is (AV:N/AC:H/PR:L/UI:N/S:C/C:H/I:H/A:H). To see how this vulnerability affects each unique configuration, please apply the environmental portion of CVSS v3.0 score

### 3.2.6  INADEQUATE ENCRYPTION STRENGTH CWE-326

The affected products utilize a weak encryption scheme for remote desktop control, which may allow an attacker to obtain remote code execution of devices on the network.

CVE-2020-6966 has been assigned to this vulnerability. A CVSS v3 base score of 10 has been calculated; the CVSS vector string is (AV:N/AC:L/PR:N/UI:N/S:C/C:H/I:H/A:H). To see how this vulnerability affects each unique configuration, please apply the environmental portion of CVSS v3.0 score

## 3.3 BACKGROUND

- **CRITICAL INFRASTRUCTURE SECTORS:** Healthcare and Public Health
- **COUNTRIES/AREAS DEPLOYED:** Worldwide
- **COMPANY HEADQUARTERS LOCATION:** United States

## 3.4 RESEARCHER

Elad Luz of CyberMDX reported these vulnerabilities to CISA.

# 4. MITIGATIONS

Create PDF in your applications with the Pdfcrowd HTML to PDF API    PDFCROWD

GE recommends users confirm the proper configuration of the MC and IX networks to ensure that the isolation and configuration meet the requirements listed in the Patient Monitoring Network Configuration Guide, CARESCAPE Network Configuration Guide, and product technical and service manuals. These can be obtained by contacting GE via the customer support portal🔗 with a valid support account. A properly isolated network requires an attacker to gain physical access in order to carry out an exploit.

GE recommends that, in addition to applying network management best practices, users ensure:

- The MC and IX Networks are isolated and if connectivity is needed outside the MC and/or IX Networks, a Router/Firewall is used to allow only the necessary data flows and block all other data flows.
- MC and IX Router/Firewall should be set up to block all incoming traffic initiated from outside the network, with exceptions for needed clinical data flows. The following ports should always be blocked for traffic initiated from outside the MC and IX Networks: TCP Port 22 for SSH and TCP and UDP Ports 137, 138, 139, and 445 for NetBIOS and SMB as well as TCP Ports 10000, 5225, 5800, 5900, and 10001.
- Restricted physical access to Central Stations, Telemetry Servers, and the MC and IX networks.
- Default passwords for Webmin should be changed as recommended.
- Password management best practices are followed.

At the time of the publication of this advisory, GE was not aware of any reported incidences of a cyber attack in a clinical use or any reported injuries associated with any of these vulnerabilities.

In addition, GE is developing software updates/patches with additional security enhancements. In accordance with GE's continual cybersecurity hygiene process, users can access GE's security website🔗 to receive the most up-to-date information and subscribe to receive notifications when new updates/patches are available.

CISA recommends users take defensive measures to minimize the risk of exploitation of these vulnerabilities. Specifically, users should:

- Locate Medical system networks and remote devices behind firewalls; isolate them from the business network. Only if connectivity is required outside the MC or IX network should a firewall/router be used with very strict rules allowing only very explicit network flows.
- Where additional information is needed, refer to existing cybersecurity in medical device guidance issued by the FDA.
- Additionally, the FDA has created a safety communication.

Create PDF in your applications with the Pdfcrowd HTML to PDF API

PDFCROWD

CISA reminds organizations to perform proper impact analysis and risk assessment prior to deploying defensive measures.

CISA also provides a section for control systems security recommended practices on the ICS webpage on us-cert.gov. Several recommended practices are available for reading and download, including Improving Industrial Control Systems Cybersecurity with Defense-in-Depth Strategies.

Additional mitigation guidance and recommended practices are publicly available on the ICS webpage on us-cert.gov in the Technical Information Paper, ICS-TIP-12-146-01B--Targeted Cyber Intrusion Detection and Mitigation Strategies.

Organizations observing any suspected malicious activity should follow their established internal procedures and report their findings to CISA for tracking and correlation against other incidents.

No known public exploits specifically target these vulnerabilities.

## Contact Information

For any questions related to this report, please contact the NCCIC at:

Email: NCCICCUSTOMERSERVICE@hq.dhs.gov ✉
Toll Free: 1-888-282-0870

For industrial control systems cybersecurity information:  http://ics-cert.us-cert.gov
or incident reporting:  https://ics-cert.us-cert.gov/Report-Incident?

The NCCIC continuously strives to improve its products and services. You can help by choosing one of the links below to provide feedback about this product.

**This product is provided subject to this Notification and this Privacy & Use policy.**

Create PDF in your applications with the Pdfcrowd HTML to PDF API

PDFCROWD

Was this document helpful? Yes | Somewhat | No

## Contact Us

 (888)282-0870

 Send us email

 Download PGP/GPG keys

## Subscribe to Alerts

Receive security alerts, tips, and other updates.

Enter your email address

Sign Up

HSIN

Report

Home    Site Map    FAQ    Contact Us    Traffic Light Protocol    PCII    Accountability    Disclaimer    Privacy
Policy    FOIA    No Fear Act    Accessibility    Plain Writing    Plug-ins    Inspector General    The White House
                                                        USA.gov

Create PDF in your applications with the Pdfcrowd HTML to PDF API

PDFCROWD

Case 1:19-cv-11862-PBS    Document 117    Filed 01/24/20    Page 11 of 39

CISA is part of the Department of Homeland Security

PDFCROWD

Create PDF in your applications with the Pdfcrowd HTML to PDF API



Create PDF in your applications with the Pdfcrowd HTML to PDF API

PDFCROWD



# Vulnerability Research & Disclosures

## CyberMDX Research Team Discovers Vulnerability in GE CARESCAPE, ApexPro, and Clinical Information Center (CIC) systems

**CISA Advisory (ICSMA-20-023-01)**

## MDhex Background

Affecting a range of CARESCAPE patient monitoring devices manufactured by GE Healthcare, the bundle of vulnerabilities collectively disclosed in CISA Advisory ICSMA-20-023-01, first came to the attention of CyberMDX security researchers through an investigation into the CIC Pro device.

The CIC Pro is a workstation used by the hospital staff to view all patient physiological data and waveforms, together with patient demographic data, in real-time from a single visual array. This data is transmitted from different patient-side

PDFCROWD

Create PDF in your applications with the Pdfcrowd HTML to PDF API

monitors and collected via a shared network. The CIC Pro may also be used to centrally manage distributed monitors — for tasks such as patient admission, time & date synchronization, and setting alarm limits.

The CIC Pro is a popular product among CyberMDX's customers and when the CyberMDX security solution detected a number CIC Pro devices in the field with potentially problematic open ports running a deprecated Webmin version, an investigation ensued. The investigation resulted in CISA Advisory ICSMA-20-023-01, which lists six separate vulnerabilities — CVE-2020-6961, CVE-2020-6962, CVE-2020-6963, CVE-2020-6964, CVE-2020-6965, and CVE-2020-6966.

These six vulnerabilities, collectively referred to as "MDhex", were reported to GE on September 18, 2019, and after being verified, were responsibly disclosed on January 23, 2019. In intervening months, CyberMDX, GE, and CISA worked together to fully understand the technical basis of the vulnerabilities so that subsequent mitigation efforts could be properly and effectively managed.

The CIC Pro is not the only GE/CARESCAPE product affected by these vulnerabilities. Other devices in which these vulnerabilities are found are:

- **Central Information Center (CIC), versions 4.x and 5.x**

- **Apex Pro Telemetry Server/Tower, versions 4.2 and earlier**

- **CARESCAPE Central Station (CSCS), versions 1.x and 2.x**

- **CARESCAPE Telemetry Server, versions 4.3, 4.2 and prior**

- **B450 patient monitor, version 2.x**

- **B650 patient monitor, versions 1.x and 2.x**

- **B850 patient monitor, versions 1.x and 2.x**

## Relevant Product Components

Some of the vulnerable devices carry their information using standard HDD and/or memory cards. In these devices, storage is unencrypted, which makes it easy to read and investigate.

Create PDF in your applications with the Pdfcrowd HTML to PDF API

PDFCROWD

Additionally, some of the affected devices may be operated by a hardened version of Windows XP Embedded, with a restricted user account.

## SSH Vulnerability (CVE-2020-6961)

| Risk Level: | A maximum severity score of **10.0** has been assigned to this vulnerability. The CVSS vector string is AV:N/AC:L/PR:N/UI:N/S:C/C:H/I:H/A:H |
| --- | --- |
| **Date Reported**: | September 18, 2019 |
| **CISA Advisory date:** | January 23, 2020 |

## Vulnerability details

## SSH private key exposed

An SSH server installation allows for the remote management of a device via SSH client.

While SSH is designed for Linux-based devices, the affected Windows-based devices carry an installation of Cygwin that allows Linux programs to run on Windows.

Usually, an SSH server configuration will contain a file that holds public keys of entities authorized to connect. In the case of the affected devices, the configuration also contains a private key. (Best practices would demand that these keys be

kept by the vendor and not make their way onto devices in circulation.) The same private key is universally shared across an entire line of devices in the CARESCAPE and GE Healthcare family of products. Using the private key, an attacker could remotely access and execute code on these devices — potentially comprising the device's very availability as well as the confidentiality and integrity of any data it holds.

## Affected Devices

- CIC (versions 4.x, 5.x)
- CSCS (version 1.x)
- Apex Telemetry Server (versions 4.2 and earlier)

## Mitigations and Recommendations

GE Healthcare plans to provide patches and additional security information about this vulnerability for affected users. Please check their website for more information or reach out to the vendor directly. Additionally, you should utilize a firewall to close open ports 22 on affected devices wherever it would not interfere with normal operations, intended use, or important functionality.

# SMB Vulnerability (CVE-2020-6963)

Create PDF in your applications with the Pdfcrowd HTML to PDF API

PDFCROWD

| **Risk Level:** | A maximum severity score of **10.0** has been assigned to this vulnerability. The CVSS vector string is AV:N/AC:L/PR:N/UI:N/S:C/C:H/I:H/A:H |
|---|---|
| **Date Reported**: | September 18, 2019 |
| **CISA Advisory date:** | January 23, 2020 |

## Vulnerability details

### SMB with hard-coded credentials allows remote file access

Using hard-coded credentials that are universally shared across an entire line of devices in the CARESCAPE and GE Health family of products, an attacker could establish a remote SMB connection and receive read/write access to all files on the system.

The credentials underlying this vulnerability can be obtained by performing a password recovery on the Windows XP Embedded operating system of affected devices. Once these credentials have been obtained, other devices can be easily breached. This represents a considerable expansion of the network attack surface.

### Affected Devices

- CIC (versions 4.x, 5.x)
- CSCS (version 1.x)
- Apex Telemetry Server (versions 4.2 and earlier)

Create PDF in your applications with the Pdfcrowd HTML to PDF API

PDFCROWD

- Carescape Telemetry Server (versions 4.3 and earlier)

## Mitigations and Recommendations

GE Healthcare plans to provide patches and additional security information about this vulnerability for affected users. Please check their website for more information or reach out to the vendor directly. Additionally, you should utilize a firewall to close open ports 445 and 137 on affected devices wherever it would not interfere with normal operations, intended use, or important functionality.

# MultiMouse / Kavoom KM Vulnerability (CVE-2020-6964)

| Risk Level: | A maximum severity score of **10.0** has been assigned to this vulnerability. The CVSS vector string is AV:N/AC:L/PR:N/UI:N/S:C/C:H/I:H/A:H |
| --- | --- |
| **Date Reported**: | September 18, 2019 |
| **CISA Advisory date:** | January 23, 2020 |

## Vulnerability details

Create PDF in your applications with the Pdfcrowd HTML to PDF API

PDFCROWD

## MultiMouse / Kavoom KM allows remote control

MultiMouse / Kavoom KM software can be run to allow remote keyboard/mouse and clipboard control of a machine. The intention is to allow a user to centrally manage and control multiple workstations from a single keyboard/mouse for reasons of efficiency/convenience. In the case of this vulnerability, such functionality can be readily abused, with the ability to achieve connections commandeer devices without any credential controls. Practically speaking, this could give hackers a route to alter device settings and overwrite data.

### Affected Devices

- CIC (versions 4.x, 5.x)
- CSCS (version 1.x)
- Apex Telemetry Server (versions 4.2 and earlier)
- Carescape Telemetry Server (versions 4.3 and earlier)

### Mitigations and Recommendations

GE Healthcare plans to provide patches and additional security information about this vulnerability for affected users. Please check their website for more information or reach out to the vendor directly. Additionally, you should utilize a firewall to any open ports 5225 on affected devices wherever it would not interfere with normal operations, intended use, or important functionality.

Create PDF in your applications with the Pdfcrowd HTML to PDF API    PDFCROWD

# VNC Vulnerability (CVE-2020-6966)

| Risk Level: | A maximum severity score of **10.0** has been assigned to this vulnerability. The CVSS vector string is AV:N/AC:L/PR:N/UI:N/S:C/C:H/I:H/A:H |
| --- | --- |
| **Date Reported**: | September 18, 2019 |
| **CISA Advisory date:** | January 23, 2020 |

## Vulnerability details

## VNC allows remote control

VNC is a software used for remote desktop access. Credentials for this access are stored in an insecure manner and can be easily obtained. What's more, these credentials can also be found in publicly available and easily searchable product documentation. It must again be noted that these hard-coded credentials are universally shared across an entire line of devices in the CARESCAPE and GE Health product families, vastly expanding network attack surfaces. Using these credentials, an attacker can remotely connect to and assume control of the device.

## Affected Devices

- CIC (versions 4.x, 5.x)

Create PDF in your applications with the Pdfcrowd HTML to PDF API

PDFCROWD

- CSCS (version 1.x)
- Apex Telemetry Server (versions 4.2 and earlier)
- Carescape Telemetry Server (versions 4.3 and earlier)

## Mitigations and Recommendations

GE Healthcare plans to provide patches and additional security information about this vulnerability for affected users. Please check their website for more information or reach out to the vendor directly. Additionally, you should utilize a firewall to close open ports 5800 and 5900 on affected devices wherever it would not interfere with normal operations, intended use, or important functionality.

## webmin Vulnerability (CVE-2020-6962)

| Risk Level: | A maximum severity score of **10.0** has been assigned to this vulnerability. The CVSS vector string is AV:N/AC:L/PR:N/UI:N/S:C/C:H/I:H/A:H |
| --- | --- |
| **Date Reported**: | September 18, 2019 |
| **CISA Advisory** | January 23, 2020 |

Create PDF in your applications with the Pdfcrowd HTML to PDF API

PDFCROWD

date:

## Vulnerability details

### Webmin is deprecated and vulnerable

Webmin is a web-based system configuration tool. The Webmin version used in affected devices is deprecated (1.250), opening them up to a number of vulnerabilities with known exploits *in the wild.*

For example, CVE-2006-3392 details the possibility for arbitrary file read on such devices.

### Affected Devices

- CIC (versions 4.x, 5.x)
- CSCS (version 1.x)
- Apex Telemetry Server (versions 4.2 and earlier)
- Carescape Telemetry Server (versions 4.3 and earlier)
- B450 version 2.x
- B650 / B850 versions 1.x, 2.x

## Mitigations and Recommendations

Create PDF in your applications with the Pdfcrowd HTML to PDF API

PDFCROWD

GE Healthcare plans to provide patches and additional security information about this vulnerability for affected users. Please check their website for more information or reach out to the vendor directly. Additionally, you should utilize a firewall to close open port 1000s on affected devices wherever it would not interfere with normal operations, intended use, or important functionality.

# GE update management Vulnerability (CVE-2020-6965)

| Risk Level: | **8.5.** A high severity score has been assigned to this vulnerability. The CVSS vector string is AV:N/AC:H/PR:L/UI:N/S:C/C:H/I:H/A:H |
|---|---|
| Date Reported: | September 18, 2019 |
| CISA Advisory date: | January 23, 2020 |

## Vulnerability details

### Software update manager allows remote file upload

GE devices come pre-loaded with a software update manager to facilitate the remote deployment of updates.

Create PDF in your applications with the Pdfcrowd HTML to PDF API

PDFCROWD

Some of the affected devices would accept any incoming update, while others will require permissions based on the same SSH key exposed to CVE-2020-6961 together with the software update manager. Either way, the result is a state of significant compromise, wherein fraudulent updates can be executed to exhaust drive resources or install malicious software.

## Affected Devices

- CIC (versions 4.x, 5.x)
- CSCS (version 1.x)
- Apex Telemetry Server (versions 4.2 and earlier)
- Carescape Telemetry Server (versions 4.3 and earlier)
- B450 version 2.x
- B650 / B850 versions 1.x, 2.x

## Mitigations and Recommendations

GE Healthcare plans to provide patches and additional security information about this vulnerability for affected users. Please check their website for more information or reach out to the vendor directly. Additionally, you should utilize a firewall to close open ports 10001 on affected devices wherever it would not interfere with normal operations, intended use, or important functionality.

## Credit

Elad Luz, Head of Research at CyberMDX

## About CyberMDX's Cybersecurity Research & Analysis Team

CyberMDX's research and analyst team regularly works with medical device organizations in the responsible disclosure of security vulnerabilities. The comprehensive threat intelligence analyst team tirelessly works to help protect hospitals and healthcare organizations from malicious attacks on connected medical devices. The team's researchers, white hackers and engineers collect information about potential and existing threats to understand attacker motivations, intentions, and methodology and deliver the best protection against attacks and malware.

## About CyberMDX

A pioneer in medical cyber security, CyberMDX is the company behind the leading IoMT visibility and security solution. CyberMDX identifies, categorizes, and protects connected medical devices — ensuring resiliency as well as patient safety and data privacy. With CyberMDX's continuous endpoint discovery & mapping, comprehensive risk assessment, AI-powered containment & response, and operational analytics, risks are easily mitigated and assets optimized. For more information, please click here.



Create PDF in your applications with the Pdfcrowd HTML to PDF API

PDFCROWD

**Your go-to digest for clinical cybersec news & tips!**

EMAIL

SUBMIT

**We are social!**

PARTNERS

INTEGRATIONS

CAREERS

ABOUT US

NEWS

VULNERABILITI...

SOLUTION

CONTACT US

SUPPORT

PRIVACY PO...

C Y B E R
MDX

1216 Broadway

New York, NY 10001

© 2019. All Rights
Reserved.

SOC 2 TYPE 2

HIPAA

PDFCROWD

Create PDF in your applications with the Pdfcrowd HTML to PDF API

EXHIBIT 3



ICS-CERT Landing  >  ICS-CERT Advisories  >  GE Aestiva and Aespire Anesthesia (Update A)

More ICS-CERT Advisories

# ICS Medical Advisory (ICSMA-19-190-01)

## GE Aestiva and Aespire Anesthesia (Update A)

Original release date: July 09, 2019 | Last revised: July 24, 2019



## Legal Notice

All information products included in http://ics-cert.us-cert.gov are provided "as is" for informational purposes only. The Department of Homeland Security (DHS) does not provide any warranties of any kind regarding any information contained within. DHS does not endorse any commercial product or service, referenced in this product or otherwise. Further dissemination of this product is governed by the Traffic Light Protocol (TLP) marking in the header. For more information about TLP, see http://www.us-cert.gov/tlp/.

## 1. EXECUTIVE SUMMARY

- **CVSS v3** 5.3
- **ATTENTION:** Exploitable remotely/low skill level to exploit
- **Vendor:** GE
- **Equipment:** Aestiva and Aespire Anesthesia
- **Vulnerability:** Improper Authentication

## 2. UPDATE INFORMATION

This updated advisory is a follow-up to the original advisory titled ICSMA-19-190-01 GE Aestiva and Aespire Anesthesia published July 9, 2019, on the ICS webpage on us-cert.gov.

## 3. RISK EVALUATION

Successful exploitation of this vulnerability could allow an attacker the ability to remotely modify GE Healthcare anesthesia device parameters. This results from the configuration exposure of certain terminal server implementations that extend GE Healthcare anesthesia device serial ports to TCP/IP networks.

## 4. TECHNICAL DETAILS

## 4.1 AFFECTED PRODUCTS

The following versions of GE Aestiva and Aespire Anesthesia Machines, are affected:

-------- Begin Update A Part 1 of 1 --------

- GE Aestiva  7100, 7900, MRI
- GE Aespire 7100, 7900, 100, Protiva, Carestation, View
- GE Aisys, Aisys CS2 Avance, Amingo, Avance CS2
- GE Carestation 620, 650, 650c

-------- End Update A Part 1 of 1 --------

## 4.2 VULNERABILITY OVERVIEW

## 4.2.1  IMPROPER AUTHENTICATION CWE-287

A vulnerability exists where serial devices are connected via an added unsecured terminal server to a TCP/IP network configuration, which could allow an attacker to remotely modify device configuration and silence alarms.

Create PDF in your applications with the Pdfcrowd HTML to PDF API

PDFCROWD

CVE-2019-10966 has been assigned to this vulnerability. A CVSS v3 base score of 5.3 has been calculated; the CVSS vector string is (AV:N/AC:L/PR:N/UI:N/S:U/C:N/I:L/A:N).

## 4.3 BACKGROUND

- **CRITICAL INFRASTRUCTURE SECTORS:** Healthcare and Public Health
- **COUNTRIES/AREAS DEPLOYED:** United States
- **COMPANY HEADQUARTERS LOCATION:** United States

## 4.4 RESEARCHER

Elad Luz of CyberMDX reported this vulnerability to CISA.

# 5. MITIGATIONS

GE Healthcare recommends organizations use secure terminal servers when connecting GE Healthcare anesthesia device serial ports to TCP/IP networks. Secure terminal servers provide robust security features, including strong encryption, VPN, authentication of users, network controls, logging, audit capability, and secure device configuration and management options.

GE Healthcare recommends that organizations utilize best practices for terminal servers that include governance, management, and secure deployment measures such as network segmentation, VLANs, and device isolation to enhance existing security measures.

GE Healthcare plans to provide updates and additional security information about this vulnerability for affected users at the following location:

http://www3.gehealthcare.com/en/support/security

CISA recommends users take defensive measures to minimize the risk of exploitation of this vulnerability. Specifically, users should:

- Minimize network exposure for all medical devices and/or systems.
- Locate medical devices behind firewalls and isolate them where possible.

- Restrict system access to authorized personnel only and follow a least privilege approach.
- Apply defense-in-depth strategies.
- Disable any unnecessary accounts, protocols and services.
- Where additional information is needed, refer to existing cybersecurity in medical device guidance issued by the FDA at the following location:

https://www.fda.gov/MedicalDevices/DigitalHealth/ucm373213.htm

CISA reminds organizations to perform proper impact analysis and risk assessment prior to deploying defensive measures.

CISA also provides a section for control systems security recommended practices on the ICS webpage on us-cert.gov. Several recommended practices are available for reading and download, including Improving Industrial Control Systems Cybersecurity with Defense-in-Depth Strategies.

Additional mitigation guidance and recommended practices are publicly available on the ICS webpage on us-cert.gov in the Technical Information Paper, ICS-TIP-12-146-01B–Targeted Cyber Intrusion Detection and Mitigation Strategies.

Organizations observing any suspected malicious activity should follow their established internal procedures and report their findings to CISA for tracking and correlation against other incidents.

No known public exploits specifically target this vulnerability.

## Contact Information

For any questions related to this report, please contact the NCCIC at:

Email: NCCICCUSTOMERSERVICE@hq.dhs.gov
Toll Free: 1-888-282-0870

For industrial control systems cybersecurity information: http://ics-cert.us-cert.gov
or incident reporting: https://ics-cert.us-cert.gov/Report-Incident?

Create PDF in your applications with the Pdfcrowd HTML to PDF API

PDFCROWD

Case 1:19-cv-11862-PBS    Document 117    Filed 01/24/20    Page 31 of 39

The NCCIC continuously strives to improve its products and services. You can help by choosing one of the links below to provide feedback about this product.

**This product is provided subject to this Notification and this Privacy & Use policy.**

Was this document helpful?  Yes  |  Somewhat  |  No

## Contact Us

📞 (888)282-0870

✉ Send us email

🔐 Download PGP/GPG keys

## Subscribe to Alerts

Receive security alerts, tips, and other updates.

Enter your email address

Sign Up

HSIN

Report

PDFCROWD

Create PDF in your applications with the Pdfcrowd HTML to PDF API

Home    Site Map    FAQ    Contact Us    Traffic Light Protocol    PCII    Accountability    Disclaimer    Privacy
Policy    FOIA    No Fear Act    Accessibility    Plain Writing    Plug-ins    Inspector General    The White House
USA.gov

CISA is part of the Department of Homeland Security

Create PDF in your applications with the Pdfcrowd HTML to PDF API

PDFCROWD

Case 1:19-cv-11862-PBS    Document 117    Filed 01/24/20    Page 33 of 39



Create PDF in your applications with the Pdfcrowd HTML to PDF API



# Vulnerability Research & Disclosures

## CyberMDX Research Team Discovers Medical Device Vulnerability in GE Anesthesia and Respiratory Devices

### ICS-CERT Advisory (ICSMA-19-190-01)

**Risk:** Medium. A CVSS v3 grade of **5.3** has been calculated. The CVSS vector string is AV:N/AC:L/PR:N/UI:N/S:U/C:N/I:L/A:N

**Date Discovered by CyberMDX:** October 29, 2018

**ICS-CERT Advisory date:** July 9, 2019

## Summary

CyberMDX's research team discovered a vulnerability related to the GE Aestiva and GE Aespire devices (models 7100 and 7900). If an attacker gains access to a hospital's network and if the GE Aestiva or GE Aespire devices are connected via terminal servers, the attacker can force the device(s) to revert to an earlier, less secure version of the communication protocol and remotely modify parameters without authorization. When deployed using terminal servers, these

manipulations can also be performed without any prior knowledge of IP addresses or location of the anesthesia machine. The attack could lead to:

- Unauthorized gas composition input – altering the concentration of inspired/expired oxygen, $CO_2$, $N_2O$, and anesthetic agents.

- Manipulation of barometric pressure settings and anesthetic agent type selection.

- Remote silencing of alarms.

- Alteration of date and time settings.

This could impact the confidentiality, integrity and availability of a component of the system.

## Vulnerability details

## Affected devices

The vulnerability in question pertains specifically to the GE Aestive and GE Aespire machines, versions 7100 and 7900 respectively (4 combinations in total).

## Attack context

Anesthesiologists will usually have strict protocols requiring them to document procedures, dosages, vital signs, and more.

This is the main reason anesthesia machines are connected to the network — reporting and documenting their status and actions. (It is in this regard that alterations to date and time settings can prove consequential — jumbling log chronology

Create PDF in your applications with the Pdfcrowd HTML to PDF API

PDFCROWD

and undermining the efficacy of audit trails.)

These machines have a serial communication port and the network integration is achieved via terminal server.

## Commands enabled via attack

1. Gas composition input: sets concentration of inspired/expired oxygen, $CO_2$, $N_2O$ and anesthetic agents; also capable of setting barometric pressure and selecting the anesthetic agent type.

2. Silence alarms: the machine's alarm is designed to generate a continuous loud noise until drawing someone's attention and having the underlying patient/device conditions attended to. (Exploiting the vulnerability in question can allow a bad actor to send commands to silence the alarm so that the noise is only briefly heard.)

3. Date and time set.

## Field Testing

CyberMDX's research team conducted several field tests with the machines in question and have successfully confirmed the vulnerability.

It should however be noted that the team only attempted the command to silence the device's alarm, as adjustments to settings for chemical constitution and time can have complicated and potentially long-lasting consequences that were best to avoid in a real hospital environment.

## Attack characteristics

Per the CVSS 3.0 vulnerability scoring rubric, the follow characteristic apply:

Create PDF in your applications with the Pdfcrowd HTML to PDF API

PDFCROWD

**Attack vector:** Network. This attack is over TCP.
**Complexity:** Low. Only requires knowledge of command conventions.
**Privileges Required:** None. The machine does not require or use authentication.
**User Interaction:** None, this is done remotely with nothing needed on the user side.
**Scope:** Unchanged.
**Confidentiality:** None. An attacker can see the dosages and drug names being used by the patients in a room.
**Availability:** Low. Muting alarms and setting time/date may affect the trustworthiness of information.

## Mitigations and Recommendations

GE Healthcare plans to provide updates and additional security information about this vulnerability for affected users. Please check their website for more information.

## Credit

Elad Luz, Head of Research at CyberMDX

## About CyberMDX's Cybersecurity Research & Analysis Team

CyberMDX's research and analyst team regularly works with medical device organizations in the responsible disclosure of security vulnerabilities. The comprehensive threat intelligence analyst team tirelessly works to help protect hospitals and

Create PDF in your applications with the Pdfcrowd HTML to PDF API

PDFCROWD

healthcare organizations from malicious attacks on connected medical devices. The team's researchers, white hackers and engineers collect information about potential and existing threats to understand attacker motivations, intentions, and methodology and deliver the best protection against attacks and malware.

## About CyberMDX

A pioneer in medical cyber security, CyberMDX is the company behind the leading IoMT visibility and security solution. CyberMDX identifies, categorizes, and protects connected medical devices — ensuring resiliency as well as patient safety and data privacy. With CyberMDX's continuous endpoint discovery & mapping, comprehensive risk assessment, AI-powered containment & response, and operational analytics, risks are easily mitigated and assets optimized. For more information, please click here.

CONTACT US

SUPPORT

PRIVACY PO...

ABOUT US

NEWS

VULNERABILITI...

SOLUTION

PARTNERS

INTEGRATIONS

CAREERS



**Your go-to digest for clinical cybersec news & tips!**

EMAIL

SUBMIT

**We are social!**

1216 Broadway
New York, NY 10001

© 2019. All Rights Reserved.

Create PDF in your applications with the Pdfcrowd HTML to PDF API   PDFCROWD

PDFCROWD

Create PDF in your applications with the Pdfcrowd HTML to PDF API

EXHIBIT 1B



# United States Court of Appeals
## For the First Circuit

_____

No. 21-1434

MADHURI TRIVEDI

Plaintiff - Appellant

v.

GENERAL ELECTRIC COMPANY; GE HEALTHCARE; H. LAWRENCE
CULP, JR., CEO of GE in his individual and official capacity; GE BOARD OF
DIRECTORS; FRAGOMEN, DEL REY, BERNSEN AND LOEWY, LLP;
JENNY SCHRAGER, Partner at Frogomen, Del Rey, Bernsen & Loewy, LLP, in
her individual and official capacity; MIKE SWINF ORD, former CEO of GEHC
services, in his official and individual capacity; CARL CONRATH, Senior
Engineering Manager, GE healthcare in his official and individual capacity;
NICOLE BOYLE, Program Manager, GEHL; NATHAN DAVIS, Architect,
GEHC; WILLIAM BARBIAUX, Architect, GEHC; JOHN DINEEN, former CEO
of GE and former CEO of GEHC; DAVID ELARIO, General Manager of GEHC
services; SUSAN HOCKFIELD, former Director of GE; ADAM HOLTON, senior
HR Manager, GEHC; JEFFREY IMMELT, Former CEO of GE; AYESHA
KHAN, HR Manager, GEHC; TIMOTHY KOTTAK, CTO of GEHC services;
DAVID MEHRING, Engineering Manager GEHC; DIPTI PATEL, Project lead,
GEHC; DIANE SMITH, HR Manager, GEHC; GREGORY STRATTON , Lead
System Integrator, GEHC; ROBERT SWIERINGA, former Board of Director of
GE; MICHAEL TRUMAN, HR Manager, GEHC; REEMA PODDAR, Senior
Leader of GE intelligent platforms; WARD BOWMAN, Engineering Manager, GE
intelligent platforms; MIKE HARSH, Former CTO of GEHC

Defendants - Appellees

FOLEY AND MANSFIELD LAW FIRM

Defendant

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

**Letter to all first circuit en banc judges and supplemental
pleading for amended petition for rehearing en banc**

Hello all judges,

I am filing this supplemental brief.

## 1. These NIST.gov and CISA.gov cybersecurity vulnerabilities public disclosure occurred on June 2022; related to GE healthcare's ultrasound – Service browser. So I am updating the first circuit court about this.

So GE also knows that upto June 2022 – these issues were plagued ….How come Trivedi's claims are untimely. These vulnerabilities are related to Service browser..and from the beginning INSITE EXC evidence has been provided to court for ultrasound  InsiteEXC since lawsuit was filed on May/August 2019… These vulnerabilities in service browser proves that Trivedi's claims are timely…as GE has ongoing.

GE, GE's attorneys to be held criminally liable for this fraud..aiding and abetting fraud ( enron style)

## 1)    A vulnerability classified as problematic has been found in GE Voluson S8. Affected is the file /uscgi-bin/users.cgi of the Service Browser. The manipulation leads to improper authentication and elevated access possibilities. It is possible to launch the attack on the local host.

## https://nvd.nist.gov/vuln/detail/CVE-2020-36548

## 2)  A vulnerability was found in GE Voluson S8. It has been rated as critical. This issue affects the Service Browser which introduces hard-coded credentials.

**Attacking locally is a requirement. It is recommended to change the configuration settings.**

**https://nvd.nist.gov/vuln/detail/CVE-2020-36547**

**CVE Dictionary Entry:**
CVE-2020-36548

# NVD Published Date:

06/17/2022

**NVD Last Modified:**
06/30/2022

**CVE Dictionary Entry:**
CVE-2020-36549
**NVD Published Date:**
06/17/2022
**NVD Last Modified:**
06/30/2022

2. **So now question is  - aiding and abetting claims against federal judges and magistrate judge also apply – why obstructing justice in my case…playing ping pong game, delaying, issuing one line order…not holding GE liable- and also hurting public, stakeholder, patients. Both judges should be arrested at very this moment.**

### 3. So basically what GE argued in district court in June 2022 ECF 169 - that though GE's ongoing fraud is part of quitam claim( which as a pro se - Trivedi can't bring)..but Trivedi can bring quitam retaliation claims as Pro se...but for that statute of limitation...GE and GE attorneys, judges should be arrested at this very moment..for this BS

**ECF 169 page 14, June 2022**

While closer dissection of an "ongoing fraud" allegation could be part of analyzing a *qui tam* claim,6 in the context of a retaliation claim, the statute of limitations is unequivocal. *See* 31 U.S.C. § 3730(h)(3). This Court should also deny the motion to vacate the dismissal as to count 10.

6 As a *pro se* litigant, Ms. Trivedi cannot maintain a *qui tam* claim. (ECF No. 135 at 17).

### 4. Judge Saris has denied motion to recuse and motion to reconsider denial of Rule 60 motion under FRCP ; july 13, 2022

Case Name: Trivedi v. General Electric Company et al

Case Number:        1:19-cv-11862-PBS

Document Number:        176

Docket Text:

**Judge Patti B. Saris: ENDORSED ORDER entered re [174] Motion for Recusal. " Denied, the case is pending appeal. No further motions shall be filed until the appeal is resolved."**

Case Name: Trivedi v. General Electric Company et al

Case Number:        1:19-cv-11862-PBS

Document Number:        177

Docket Text:

**Judge Patti B. Saris: ENDORSED ORDER entered re [175] MOTION for Reconsideration. " Denied. The case is pending on appeal."**

**Madhuri Trivedi**

/s Madhuri Trivedi

607 Boylston Street, PMB 334 - Lower Level, Boston, MA 02116

➢ **Twitter** - @madhuritrivd
➢ **Linkedin:**- linkedin.com/in/trivedim
➢ **World summit on innovation and Entrepreneurship** – THE WSIE  summit speaker invite– Great presenter 2019 - https://thewsie.com/presenters-2019/
➢ **Here's my cybersecurity whistleblower profile on** whistleblowers.org

https://www.whistleblowers.org/whistleblowers/madhuri-trivedi/

### CERTIFICATE OF SERVICE

The CM/ECF system sends notification of filing to all the parties. **Therefore, when this document is docketed on ECF; t**he ECF system will then email all parties –registered to receive such service, notifying them that I have filed a document. Those parties will then be able to get a copy of the document. This process for docketing on ECF is deemed to be service under Rule 5(b) of the Federal Rules of Civil Procedure**.**

/s/Madhuri Trivedi

🇺🇸 An official website of the United States government Here's how you know

# NVD





VULNERABILITIES

    



**HEADQUARTERS**

100 Bureau Drive
Gaithersburg, MD 20899
(301) 975-2000

Webmaster | Contact Us | Our Other Offices

**Incident Response Assistance and Non-NVD Related
Technical Cyber Security Questions:**
US-CERT Security Operations Center
Email: soc@us-cert.gov
Phone: 1-888-282-0870
**Sponsored by**
CISA



Site Privacy | Accessibility | Privacy Program | Copyrights | Vulnerability Disclosure | No Fear Act Policy | FOIA | Environmental
Policy | Scientific Integrity | Information Quality Standards | Commerce.gov | Science.gov | USA.gov

NVD - CVE-2020-36548                                                     https://nvd.nist.gov/vuln/detail/CVE-2020-36548

Case: 21-1456 Document: 22-1 Page: 27 Filed: 10/03/2022 ID: 6509438
Case: 1:22-cv-01746-LW Document: 27 Filed: 07/22/2022 Page: 222 of 616

# 🐛 CVE-2020-36548 Detail

## Current Description

A vulnerability classified as problematic has been found in GE Voluson S8. Affected is the file /uscgi-bin/users.cgi of the Service Browser. The manipulation leads to improper authentication and elevated access possibilities. It is possible to launch the attack on the local host.

✚View Analysis Description

## Severity    | CVSS Version 3.x | CVSS Version 2.0 |

### CVSS 3.x Severity and Metrics:



**NIST:** NVD
**Base Score:** 7.8 HIGH
**Vector:** CVSS:3.1/AV:L/AC:L/PR:L/UI:N/S:U/C:H/I:H/A:H



**CNA:** VulDB
**Base Score:** 5.9 MEDIUM
**Vector:** CVSS:3.1/AV:L/AC:L/PR:N/UI:N/S:U/C:L/I:L/A:L

*NVD Analysts use publicly available information to associate vector strings and CVSS scores. We also display any CVSS information provided within the CVE List from the CNA.*

*Note: It is possible that the NVD CVSS may not match that of the CNA. The most common reason for this is that publicly available information does not provide sufficient detail or that information simply was not available at the time the CVSS vector string was assigned.*

## References to Advisories, Solutions, and Tools

By selecting these links, you will be leaving NIST webspace. We have provided these links to other web sites because they may have information that would be of interest to you. No inferences should

Case 1:21-cv-11746-LEW   Document 3   Filed 10/03/22   Page 223 of 616   ID: 6509438

be drawn on account of other sites being referenced, or not, from this page. There may be other web sites that are more appropriate for your purpose. NIST does not necessarily endorse the views expressed, or concur with the facts presented on these sites. Further, NIST does not endorse any commercial products that may be mentioned on these sites. Please address comments about this page to nvd@nist.gov.

| Hyperlink | Resource |
|-----------|----------|
| https://vuldb.com/?id.129834 | **Third Party Advisory** |
| https://www.scip.ch/?news.20200701 | **Third Party Advisory** |

# Weakness Enumeration

| CWE-ID | CWE Name | Source | |
|--------|----------|--------|--|
| CWE-287 | Improper Authentication | NIST | VulDB |

# Known Affected Software Configurations Switch to CPE 2.2

**Configuration 1 ( hide )**

| |
|---|
| 🐛 **cpe:2.3:o:ge:voluson_s8_firmware:-:*:*:*:*:*:*:*** |
| Show Matching CPE(s)▾ |
| **Running on/with** |
| **cpe:2.3:h:ge:voluson_s8:-:*:*:*:*:*:*:*** |
| Show Matching CPE(s)▾ |

🐛 Denotes Vulnerable Software

Are we missing a CPE here? Please let us know.

# Change History

1 change records found <u>show changes</u>

## QUICK INFO

**CVE Dictionary Entry:**
CVE-2020-36548
**NVD Published Date:**
06/17/2022
**NVD Last Modified:**
06/30/2022
**Source:**

VulDB

 An official website of the United States government Here's how you know

# NVD



▼

VULNERABILITIES

    



**HEADQUARTERS**
100 Bureau Drive
Gaithersburg, MD 20899
(301) 975-2000

Webmaster | Contact Us | Our Other Offices

**Incident Response Assistance and Non-NVD Related Technical Cyber Security Questions:**
US-CERT Security Operations Center
Email: soc@us-cert.gov
Phone: 1-888-282-0870
**Sponsored by**
CISA



Site Privacy | Accessibility | Privacy Program | Copyrights | Vulnerability Disclosure | No Fear Act Policy | FOIA | Environmental Policy | Scientific Integrity | Information Quality Standards | Commerce.gov | Science.gov | USA.gov

# 🐛CVE-2020-36549 Detail

## Current Description

A vulnerability classified as critical was found in GE Voluson S8. Affected is the underlying Windows XP operating system. Missing patches might introduce an excessive attack surface. Access to the local network is required for this attack to succeed.

✚View Analysis Description

## Severity        | CVSS Version 3.x | CVSS Version 2.0 |

### CVSS 3.x Severity and Metrics:



**NIST:** NVD
**Base Score:** 7.8 HIGH
**Vector:**  CVSS:3.1/AV:L/AC:L/PR:L/UI:N/S:U/C:H/I:H/A:H



**CNA:** VulDB
**Base Score:** 8.8 HIGH
**Vector:**  CVSS:3.1/AV:A/AC:L/PR:N/UI:N/S:U/C:H/I:H/A:H

*NVD Analysts use publicly available information to associate vector strings and CVSS scores. We also display any CVSS information provided within the CVE List from the CNA.*

*Note: It is possible that the NVD CVSS may not match that of the CNA. The most common reason for this is that publicly available information does not provide sufficient detail or that information simply was not available at the time the CVSS vector string was assigned.*

## References to Advisories, Solutions, and Tools

By selecting these links, you will be leaving NIST webspace. We have provided these links to other web sites because they may have information that would be of interest to you. No inferences should

be drawn on account of other sites being referenced, or not, from this page. There may be other web sites that are more appropriate for your purpose. NIST does not necessarily endorse the views expressed, or concur with the facts presented on these sites. Further, NIST does not endorse any commercial products that may be mentioned on these sites. Please address comments about this page to nvd@nist.gov.

| Hyperlink | Resource |
|-----------|----------|
| https://vuldb.com/?id.129835 | **Third Party Advisory** |
| https://www.scip.ch/?news.20200701 | **Third Party Advisory** |

# Weakness Enumeration

| CWE-ID | CWE Name | Source |
|--------|----------|--------|
| NVD-CWE-noinfo | Insufficient Information | NIST |
| CWE-269 | Improper Privilege Management | VulDB |

# Known Affected Software Configurations  Switch to CPE 2.2

### Configuration 1 ( hide )

| |
|---|
| **cpe:2.3:o:ge:voluson_s8_firmware:-:*:*:*:*:*:*:*** |
| Show Matching CPE(s)▾ |
| **Running on/with** |
| **cpe:2.3:h:ge:voluson_s8:-:*:*:*:*:*:*:*** |
| Show Matching CPE(s)▾ |

Denotes Vulnerable Software

Are we missing a CPE here? Please let us know.

# Change History

1 change records found underline show changes

## QUICK INFO

**CVE Dictionary Entry:**
CVE-2020-36549
**NVD Published Date:**
06/17/2022
**NVD Last Modified:**
06/30/2022

**Source:**

VulDB



# EXHIBIT 3

**ECF 106-3 already has Detailed Timeline.ECF 106-1 has chart with hierarchy.**

| | |
|---|---|
| February 2004 | Defendant Fragomen law firm did Trivedi's H4 B spouse visa through her Ex-husband's employer( at that time Trivedi was living at Syracuse, NY) |
| September 2009 | Trivedi interviewed in-person at GE intelligent platforms Foxboro , MA |
| September 2009 | Next day of the interview- GE offered Trivedi full time job |
| December 2009 | All of a sudden Trivedi was informed in writing that GE won't do her H1 B;  and Trivedi is first required to work as a consultant for three months & then GE would hire her fulltime and do her H1B . |
| February 2010 | Noramtec consultant did her H1 B, Trivedi started working at GE , Boston. Trivedi joined GE Boston as "a consultant/contractor" instead of "fulltime employee" after long delay and paperwork in early 2010. |
| May 14, 2010 | GE Boston, Reema  Poddar, Ward Bowman offered "fulltime job" to Trivedi. ECF 51 page number 45- H1 B visa processing as fulltime employee began by Jenny Schrager. |
| June 16, 2010 | DOL approved H1 B LCA filed by Jenny Schrager at Fragomen for fulltime engineer at  GE Boston- Exhibit 20 of ECF 51 and page number 44 of ECF 51) |
| July 2010 | Without any reason, notice- by Ward Bowman or Reema poddar-(Just verbally was told and in next hour she packed her stuff ).GE manager verbally informed that GE terminated her contract & letting her go. Trivedi didn't fight then. During this time Trivedi developed GE's asset management platform which was later named GE digital ( night & weekends) wearing so many hats. She was only FEMALE in a team of engineers, architects, program manager. ECF 51 page 47-49- Trivedi's stellar performance at GE Boston. |
| 2011 | Trivedi joined State of Indiana as a consultant |
| September 21 2011 | GEHC architect Nate Davis –GE manager Dave Mehring – email communication ; where Trivedi prior to in person interview , informed that GE must file her PERM 365 days before H1 B expiry (PERM by September 2012 )so Trivedi can extend her H1 B. Now GE managers knew Trivedi's weak point and they exploited it to retaliated and harass Trivedi. ( ECF 51 exh 21) Remote witness, if Trivedi can't extend her H1B |
| November 1st 2011 | Trivedi joined GE Healthcare at Wisconsin, as a lead engineer |
| December 9 2011 |  Trivedi was insulted by fellow project lead; was forced to finish tests where Trivedi pressed QUALITY – |
| December 20 | Trivedi fixed months old lingering problem that didn't allow online |

| 2011 | engineers to do remote connection-for InsiteEXC connectivity with medical devices inside hospital. GEHC global service leader sent email to all Canada, north America managers about Trivedi's fix. None of the MALE engineers, architects were able to find a fix for months while Trivedi did it within a month of joining GEHC. Hundreds of engineers used Trivedi's workaround- (actual fix need multi million dollar replacement) |
|---|---|
| January 2012 | Trivedi emailed and told Mehring in person & 1on 1 meeting that "insiteEXC not following FDA quality guideline for automatic static code analysis (as Trivedi was assigned to do quality testing)–Mehring replied that "For InsiteEXC product; GEHC has never done /used automatic static code analysis before" |
| February 1,2012 | As Trivedi was standing by product quality, GE retaliated was assigning Trivedi to test INSITEEXC & surgery OEC mobile arm integration; Containing 1000 pages of test cases within 23 DAYS. Also as OEC mobile C arm was on Linux operating system; while EXISTING 1000 pages test document was for Windows operating system- Trivedi was simultaneous assigned to develop these 100 pages equivalent of test cases- NEW test cases that work on Linux operating system. As well as JUST to have ONLY ONE TEST DOCUMENTS- just so all these test cases MUST work on both WINDOWS & LINUX operating systems. But they lacked BAISC TECHNIAL COMPETENCY that Windows & LINUX are apples and Oranges. And ONE test plan would NEVER work for both as there were fundamental differences. |
| March 9 2012 | Dipti passed network connectivity test March 9 2012 where it was failing –without network connectivity there is no insite exc. |

| March 13, 2012 | Trivedi investigated & found out & emailed to managers & team members that InsiteEXC on Mobile C arm surgery platform was opening MULTIPLE random ports; which is presents highest risk to hack and exposure. |
|---|---|
| March 12, 2012 | InsiteEXC for surgery Mobile C arm was Missing networking libraries ( without networking libraries- there is NO INSITEEXC)(which all team members who complained I was not getting along---were not able to find out or figure out..)I reported that to Dave on March -- ECF 106-3 page 13 -- After Trivedi's finding Salt Lake City, Utah based surgery team –raised issues with Trivedi's management . Trivedi's team and managers were exposed as technical incompetent. |
| June 11 2012 | Trivedi emailed management that Active X build with old version VC ++ and insecure –needed to rebuild Insite exc which was multimillion dollar & multiyear project with at least 70-100 engineers working on it..aka InsiteEXC remote connectivity was build on 2005 based old , out of dated , without security patch code; needed to be rebuild |
| May/June | Trivedi moved to second project called RSVP –Joe Purcell |

| | |
|---|---|
| 2012 | was Detroit based manager of GE digital. Also senior manager Reema Poddar from GE Boston ( Trivedi had worked with/reported to Reema in 2010.) was driving funding, operations and all for this joint GE digital project. She was not putting enough people. 70 people were required on this second project while there were only dozen. But GEHC and David Mehring made up for failure of finishing up this second project on time- made Trivedi a scapegoat and diverted blame- by framing Trivedi that "she is not getting along"—this is criminal..and for this all GE defendants and Fragomen defendants MUST be put in JAIL. |
| Aug 20 2012 | Email to Greg sent by Trivedi ; Dave retaliated after that emailemail Trivedi mentioned that "it is conflicts of Greg and GEIP team –and overall status of second project(RSVP project)…October 2019 , Trivedi spoke with Joe Purcell Manager of  GEIP on phone and Joe did confirmed that "Joe Purcell, GEIP had lots of conflicts and disagreements with Greg Stratton..and Trivedi worked with him on fixing quality issues, defects, automated testing (second project that GE is blaming Trivedi on)  ECF 106-3 page15 |
| August 20, 2012 | Trivedi filed midyear performance review on EMS–update |
| October 2012 | GEHC CTO Mike Harsh sent companywide email about GENDER EQALITY & how managers perceive & measure female engineers' Communication & soft skills differently ; & they need training to address this issue. |
| November 12 & December, 2012 | Trivedi emailed GEHC general manager David Elario about retaliation, defects, & Trivedi treated differently for speaking up cybersecurity issues. Elario replied that it is business; and hence even if it is right- things do not happen that way. |
| December 4 2012 | Trivedi emailed David Elario, Carl Conrath, Mike Truman ; that Trivedi be placed under a new manager ECF 106-3 Page 23 |
| December 19, 2012 | Trivedi met with CTO Tim Kottak met in-person. Tim told Trivedi that such large amount of quality issues, 600 critical defects are unacceptable and illegal ..In next few days Tim Kottak arranged a meeting to address defects. After Tim's meeting GEHC deleted all 600 defects without fixing single one of them( changed status of defects in database from open to close( these defects database is what FDA requires and FDA can ask for review so these EVIDENCE/PROOF was DESTROYED) –this was in - first week of January 2013.. Trivedi requested Tim Kottak to change reporting manager (ECF 51 page 187 paragraph 443) from David Mehring to Philippe but Tim didn't do anything.. And let fraud and retaliation continue. |
| December 21, 2012 | Trivedi entered her EMS performance review |
| January 4 , 2013 | Trivedi emailed and discussed with Mathews Matson, Dave Mehring that audit trail not proper in InsiteEXC as required by HIPPA & HITECH law . Trivedi did got along with Mathew Matson-principle |

| | architect whom Dave Mehring didn't get input for performance review. |
|---|---|
| January 2013 | Ofir Dahan fought in a meeting with 20 managers, leads, engineers about Namita Joshi's lack of technical ability(Namita was wife of Vivek Bhatt-GEHC executive)  ; Also Ofir alleged that why GE is still releasing ILLEGAL INsiteEXC agents on medical devices. |
| Feb 5, 2013 | Trivedi supported InsiteEXC customers; despite she was moved to another project; but GEHC didn't had people with technical expertise that Trivedi had. ECF 106-3 Page 21 |
| February 2013 | Trivedi went directly to Mike Swinford, Mr. Elario's manager. Mr. Swinford did not meet with Ms. Trivedi as he was out of town the day she went to him. However, when Mr. Elario learned that Ms. Trivedi went to Mr. Swinford, he was very upset. He threatened he would "take Ms. Trivedi off of the project." Within one week thereafter, on February 22, 2013, Ms. Trivedi was placed on a Performance Improvement Plan ("PIP"). For reporting higher up, Trivedi was put on PIP. And it was not her soft skill and raising concerns, speaking up about cybersecurity, defects, quality and more –she suffered adverse employment action of PIP and finally termination. |
| Feb 21 2013 | Trivedi's manager, David Mehring submitted his review  about Trivedi's performance |
| Feb 22 2013 | David Mehring's manager- Carl Conrath submitted his review about Trivedi's performance. |
| Feb 22 2013 | Trivedi was put on a "performance improvement plan" ..PIP was  fraudulent; was used to severely harass Trivedi and generate  pretext based data to fire her. |
| February 22, 2013 | Trivedi emailed Mike Swinford CEO-again from March 1 to April 19, 2013 –Trivedi emailed Swinford. But Swinford didn't care to reply nor address. Only response she got was from HRM Adam Holton that Trivedi initiate ADR. |
| March 6 2013 | GEHC senior HR manager, reporting to CEO, emailed Trivedi to initiate Alternate dispute resolution process. Trivedi requested that she get a NEW manager. |
| March 28, 2013 | Trivedi while working on a SECOND PROJECT ; did defect fixing( defects created by coworkers ) ; while GEHC was generating documents about Trivedi not getting along. Those Male coworkers who were writing code with defect( and Trivedi was fixing their defects as Trivedi was assigned to test their code)—such as Sachin kendale, Naresh, Greg <Nate Davis—all got good performance review .. ECF 106-3 page 19 |
| March and April 2013 | Trivedi went to India, was put on a leave without pay |
| May 30, 2013 | Department of labor approved Trivedi's PERM for green card under "person of exceptional ability" EB2 category. Trivedi had six months to file I 140 after this or PERM gets VOID. GE didn't file I 140 |
| December 2011 to May | Trivedi supported InsiteEXC customers with whom Trivedi had no soft skill issue. |

| 2013(last day) | |
|---|---|
| May 31 2013 | Trivedi was terminated by GE |
| June 2013 | GE withdrew Trivedi's H1 B |
| July 2013 | Trivedi had a job offer from Thermo Fisher Scientific in Wisconsin to work on Drug Discovery; but since there was no time left on H1 B; didn't materialize because of immigration issues. |
| July 2013 | email to Jeff Immelt, Jenny Schrager, Adam Holton, John Dineen, Mike Swinford-filing I 140, H1 extension ,retaliation.(Exhibit 11 and 37 of ECF 51). |
| August 9, 2013 | Immigration attorney from Cambridge, MA sent a letter to GE that her I 14o must be filed; otherwise her PERM will go void; & that she was retaliated for raising defects and cybersecurity issues. ECF 51 exhibit 12  ECF 51-3 page 78 |
| August 23, 2013 | Cross law firm sent mediations statement ECF 51-3 page 82-to GE & forced me to  take one month salary and waive all my claims against GE. |
| October 2013 | Trivedi in writing compliant to DHS about GE's cybersecurity issues, retaliation upon Trivedi by GE & withdrawal of H1 B. Trivedi also met TWICE, in person, immigration officer at Milwaukee, WI ,DHS office |
| October 2013 | Trivedi fired Cross law firm, did mediation Pro Se- mediation was unsuccessful. |
| November 5, 2013 | Trivedi filed arbitration complaint with AAA |
| November 2013 | Wisconsin workforce development agency (government) chief  arbitrator Peter Davis, mentioned that if he selected as arbitrator , he would rule in my favor. GE attorney declined via email to have Peter because then arbitration document become public. |
| December 2013 | Trivedi contacted in WRITING to GE board fo directors Robert Swierienga and Susan Hockfield(as Trivedi also being MIT alumni ) . Hockfield stonewalled Trivedi; while Robert did inquiry. GE complained to arbitrator that Trivedi is reaching out to director. Arbitrator became more hostile. |
| December 12 2013 | Trivedi in writing filed complaint with FDA |
| March 2014 | Trivedi filed motion to recuse arbitrator Peter(who was overly hostile to Trivedi), which arbitrator denied. |
| April 2014 | Trivedi registered her startup Orange health with government as sole owner |
| April 2014 | Trivedi spoke with FBI agent about GE |
| April 2014 | Trivedi emailed USCIS director Donald nuefeld that because of her ongoing arbitration, and her Harvard job offer- startup based on which she has filed EB1-she would extend her stay. Donald replied via email to call USCIS 800 number. |

| | |
|---|---|
| April 2014 | Trivedi filed EB1 self-petition with USCIS/DHS, with Harvard medical job offer to work on artificial protein and her startup orangehealth |
| May 3 2014 | Trivedi field OSHA whistleblower complaint |
| May 6 2014 | Arbitration against GE at hotel. Second day of hearing; Trivedi left arbitration at 9 am because arbitrator was hostile and won't letting her question, insulting and was harassing. GE went ahead ALONE with arbitrator and finished whole day on hearing without Trivedi. |
| May 10 2014 | FBI supervisor informed Trivedi that it was "fraud against government" matter; civil fraud and hence FBI hasn't open criminal investigation. |
| June 2014 | David Nelson- a former SEC reginal director and attorney at BOIES, SCHILLER & FLEXNER LLP ; himself reviewed Trivedi file – and stated that Trivedi has valid SEC claims. But didn't advise about whistleblower claim filing- how and where to file ..Asked few hundred thousand retainer if Trivedi choose his law firm; which mainly represents defendants. |
| July 2014 | Foley & Mansfield sent a letter to GE |
| August 5 2014 | Corrupt Arbitrator issued award in favor of GE |
| Feb-March 2015 | Trivedi notified USCIS Texas director via email, Donald Nuefeld, DHS online request form and phone call ; that Trivedi is moving to San Francisco next week or so. Trivedi also notified FBI supervisor Clayton Wible about her move. |
| March 2015 | Trivedi moved to San Francisco from Wisconsin |
| March 2015 | Next day of Trivedi landing San Francisco; DHS denied Trivedi's EB1- extra ordinary ability petition; which was pending since April 2014 |
| October 2015 | Trivedi contacted FBI special agent in charge, David Johnson via email ,requested that FBI do criminal investigation. |
| February 2016 | Trivedi sent postal mail to chief justice Roberts, Washington DC. The mail was lost and never delivered to supreme court. |
| February 2016 | Trivedi sent email to DHS leadership, FBI agents & other about GE fraud, her letter to chief justice, her immigration being held hostage. |
| March 2016 | Trivedi filed lawsuit against DHS in Northern district of California ( alleged that because not joining GE's fraud scheme, she was retaliated and her immigration was jeopardized) |
| March 2016 | Trivedi second time sent a letter via Postal mail-to chief justice Roberts- also mentioned her DHS lawsuit docket number in the letter. |
| June 2016 | DODIG criminal investigation director Patrick Gokin emailed Trivedi that- rest assured about criminal action. In her complaint to DODIG Trivedi had mentioned DHS lawsuit Docket number. |
| March-July 2016 | Trivedi filed Second petition for EB1 with USCIS- this time with additional evidence. |
| August 9, 2016 | FDA provided FOIA response, redacting most of stuff. (including what FDA responded to Department of justice attorney's inquiry in February 18, |

| | 2016. about false claims act) |
|---|---|
| September 2016 | DODIG dismissed her whistleblower retaliation claim as out of time. |
| February 22, 2017 | Trivedi's father died in India |
| February 22, 2017 | Trivedi organized IOT cybersecurity event at vlab( vlab was a launch pad for companies like Google & Tesla when they were Babies) (Trivedi was working on this event with team for more than 4-5 months)<br>As event started, in was pitch dark fully packed Stanford auditorium.<br>Trivedi phone rang—at that time someone from back said that "He is gone"- Trivedi left event and was informed by her family in India that her father has died. |
| March 2017 | Health & Human secretary-Tom Price reporting to Trump- sent a letter to DHS about her immigration, her lawsuit. |
| March 22, 2017 | Trivedi's Immunotherapy –hacking how body fights disease<br>event at vlab ( Trivedi worked for 4-5 months organizing it |
| March 10 2017 | Trivedi filed SUPREME COURT Emergency application to attend her Father's post funeral things. Justice Kennedy denied it in 5 minutes. |
| June 2017 | Trivedi's emergency application was distributed to all justices and it was denied. |
| June 2017 | My OrangeHealth press release reached to potential 80 million readers; as per the visibility report I got ;with 250 plus well reputed outlets published my release; including TV stations, business & tech         journals, newspapers, research affiliates and more; So it was COOL product and it was serving market need |
| Oct 27, 2017 | Trivedi spoke with Jenny Schrager on phone and emailed her about how Jenny has done illegal things to Trivedi (Exhibit 10 of this filing-Opposition to MTD by Trivedi) |
| October 2017 | Trivedi emailed John Flannery GE CEO, GE board of directors .( ECF 51 exhibit 2) |
| January 2 2018 | Trivedi writ filed in supreme court |
| February 2018 | Trivedi writ circulated to all justices. |
| February 2018 | DHS issued GE related global cybersecurity alert; affecting 100s of 100s of medical devices; vulnerable to hack and exploitation ( after Scott first reported those in 2014; GE nor DHS did anything for four years) |
| February 21, 2018 | Supreme court issued ruling on Digital Realty v. Somers-<br>scrapping internal whistleblower protections for Dodd Frank act |
| March 19, 2018 | Supreme court denied Trivedi's writ of certiorari for lawsuit against DHS |
| January 2019 | Trivedi spoke with and emailed Stephen Tusa, JPM analyst covering GE. Mr. Tusa emailed Ge to leave me alone |
| February 22, 2019 | On Trivedi's father death anniversary; co incidentally Trivedi found out about Scott Erven's global cybersecurity alert that GE issued, corroborated that INSITEEXC was vulnerable from outside of GE network as well ( for |

| | anyone with low skill to hack and take full control) ECF 51 exhibit 1 |
|---|---|
| Feb 2019 | Trivedi filed complaint with SEC |
| May 21 2019 | Trivedi filed federal lawsuit in District of Columbia |
| August 30, 2019 | Trivedi voluntarily dismissed lawsuit in District of Columbia, Judge issued order to show cause why case should not be transferred to Boston or Wisconsin. After going back and forth on Venue; Trivedi believed to have case to be transferred to MA or WI. |
| July 2019 | House passed Dodd Frank Whistleblower Protection Reform Act of 2019 (SEC whistleblower) |
| August 30, 2019 | Trivedi filed lawsuit in District of Massachusetts |
| September 2019 | Bipartisan bill introduced in senate - Whistleblower Programs Improvement Act (S.2529) for Dodd-Frank securities fraud protections |
| August 2020 | Trivedi filed appeal at 1st circuit for motion to recuse |
| May 27 2021 | District judge Saris dismissed Trivedi's claim by issuing 3 line order |
| May 28 2021 | Trivedi filed appeal at First circuit |
| June 2021 | Trivedi sent a letter to four 1st circuit judges about Madhuri pitching since GE let Madhuri go about "monoclonal antibody";my job at harvard medical to work on "artificial protein" - aka monoclonal antibody. FDA approval since 2015 of total 50 monoclonal antibody.It is Not a coincidence. |
| July 29, 2021 | Trivedi filed opening brief at first circuit |
| August 19 2021 | Trivedi contacted magistrate judge Kelley Reappointment panel |
| August 24, 2021 | I emailed GE CEO, GE general counsel & judge Kelley reappointment panel –judge Mark that GE people should be in jail – that email is below. |
| October 3 2021 | I emailed judge mark & reappointment panel that "I am going to write to judicial conference about Judge Kelley and judge Saris both.." |
| May 3, 2022 | Judgement entered by first circuit affirming dismissal |
| May 28 2022 | Trivedi filed Rule 60 relief motion at district court ECF 167 |
| May, 2022 | **Sec.gov confirmed an active and ongoing investigation about Trivedi's GE healthcare whistleblower complaint** |
| June 20, 2022 | **Trivedi filed amended petition for re hearing en banc – wrote about Sec.gov confirmed an active and ongoing investigation about Trivedi's GE healthcare whistleblower complaint in this petition.** |
| June 20 2022 | **Trivedi filed amended rule 60 motion with district court ECF 170** |
| July 2022 | Trivedi filed letter with first circuit about cisa.gov alerts for same Insite EXC related remote platform in June 2022 |
| July 12 2022 | Judge saris denied ECF 167 – didn't look EC 1170 |
| August 8 2022 | First circuit denied petitions for rehearing and rehearing en banc |
| | **DOL OSHA related history in third count SOX** |

**From:** Madhuri Trivedi [mailto:orangeinc@protonmail.com]
**Sent:** Tuesday, August 24, 2021 10:58 AM

**To:** MADml_Magistrate_Search; orangeinc@protonmail.com
**Subject:** Fw: RE: magistrate judge reappointment order
Hello magistrate judge search committee,

I copied GE people- because judge Kelley has copied/pasted GE's filings. For some judge Kelley injected her own arguments to defend GE...

GE attorneys are misleading court and also filing fractured defense...which court takes seriously..so I had to bring it to their attention that while they succeeded with judge Kelley- that should not be the way things are..

so....Thanks and regardsSent with ProtonMail Secure Email.

------- Original Message -------
On Tuesday, August 24th, 2021 at 6:48 AM, Madhuri Trivedi <orangeinc@protonmail.com> wrote:

Tomasita was of counsel during Washington DC lawsuit against GE>

Hi Tomasita, as we spoke in past- when are you submitting arbitration hearing transcript..you said to me in past on telephone that you will enter upon order from court.

GE and GE's attorney's lie, cheat, misrepresentations are criminal now...GE and GE's attorneys are still walking free..

Wisconsin supreme court's attorney misconduct committee  had to send a warning letter to GE's attorney during arbitration...

Sent with ProtonMail Secure Email.

**From: Madhuri Trivedi [mailto:orangeinc@protonmail.com]**
**Sent: Tuesday, August 24, 2021 12:04 AM**
**To: MADml_Magistrate_Search; directors@corporate.ge.com; larry.culp@ge.com;**
**Kieran.Murphy@ge.com; Falby; Bruce E.; michael.holston@ge.com; Sherer; Tomasita;**
**charlotte.westbrook@dlapiper.com; kelsey.travares@dlapiper.com; gensler@mit.edu**
**Subject: RE: magistrate judge reappointment order**

**GE has not denied fraud, but has come up with statute of limitations, procedural filing and other defense...so which GE and their attorneys be in jail..**

And that's what for HMRC UK case also talk was- that if HMRC would have bought criminal case against GE for $1 billion tax fraud then GE would not have argued statute of limitations..but now supreme court has allowed appeal in that case which is good.

Similar in my case---GE people and attorneys go to jail then there is no statute of limitations affirmative defense.Sent with ProtonMail Secure Email

**From:** Madhuri Trivedi [mailto:orangeinc@protonmail.com]
**Sent:** Monday, August 23, 2021 11:47 PM
**To:** MADml_Magistrate_Search; directors@corporate.ge.com; larry.culp@ge.com;
Kieran.Murphy@ge.com; Falby; Bruce E.; michael.holston@ge.com
**Subject:** RE: magistrate judge reappointment order
Thank you.

I also wanted to add - and I wrote this in my court filing as well.

that Under ZERO TOLERANCE policy- judge Kelley must be removed effective immediately.
Detailed arguments are given in court filings...

Even a law school student would have done better than judge..But since it was done under corruption-- there is no logical reasoning, explanation..It is only makes me loose my sanity when I try to figure out why/how...because only thing that justifies these order - "corruption" , "abuse" , "victimizing litigants"

Also , GE people are criminal and should be in jail..GE attorney Bruce Falby should not be practicing law..I have filed misconduct complaint against him and attorney there said that leave it to judge..plus he gets many such complaints so he has to pick and in future he may address my complaint etc etc..The lady who was looking into Falby complaint retired, so there is anew person.

Total anarchy and corruption..

Trivedi's profile for Whistleblower Stories section on the

whistleblowers.org  website:https://www.whistleblowers.org/whistleblowers/madhuri-trivedi/

Sent with ProtonMail Secure Email.

------- Original Message -------

**On Friday, August 20th, 2021 at 1:29 PM, MADml_Magistrate_Search <magistratecomm@mad.uscourts.gov> wrote:**


**The committee has received your comments regarding Judge Kelly. The comments and related case will be reviewed by the committee when considering Judge Kelly's reappointment.**


 **From: Madhuri Trivedi <orangeinc@protonmail.com>**
**Sent: Thursday, August 19, 2021 6:48 AM**
**To: MADml_Magistrate_Search <magistratecomm@mad.uscourts.gov>**
**Subject: magistrate judge reappointment order**
**CAUTION - EXTERNAL:**

Hi I strongly present evidence that Judge Page M Kelly Must retire- so she no longer abuse, victimize litigants.

Just look at how badly she has done..

Best is to look at her orders and how shallow her legal analysis is..


Sent with ProtonMail Secure Email.

EXHIBIT 4

https://www.sec.gov/comments/s7-09-22/s70922-20127840-289033.pdf

I thought to write short comment

1. Cybersecurity rule amendment is a good first baby step that SEC.gov is taking. As a career engineer, cybersecurity professional – (though now I am so burnt. And I find cybersecurity field dreadful, full of apathy); I like that…though entire new division at SEC.gov for handling cybersecurity would be necessary and required EVENTUALLY. It is the mindset of management – as I have already replied to SEC.gov twitter handle about this rulemaking – a separate DIVISION – more professionals at SEC handling, auditing, enforcing cybersecurity would be needed. And as I asked that "are you creating a separate division for this?"

2. Frank Abagnale, the infamous impostor turned security advisor, said

   "Every breach, without exception, happens because somebody in that company did something they weren't supposed to do or somebody failed to do something they were supposed to do—didn't fix its tech, it didn't update patches, so the hackers got millions of pieces of data."

3. **Like SOX internal controls and audit that came out** – after ENRON – similar to what I experienced at GE….**cybersecurity internal controls implementation and audit is a MUST**.. SEC has not done/ proposed any rulemaking in this regard; and hope that it will be done in the future, we can only hope…

4. **SEC prosed rule does not specifically state how company should report ZERO day vulnerability – rulemaking says "Incident" – does zero day vulnerability mean "Incident that is Material in terms of SEC's definition of reporting" ?** – which could be result of poorly done product/service,  self-inflicted misery , company having SLACKER type approach, serious defect in code, design, deployment, system that has led to finding of zero day vulnerability by someone else….when company issues public patch about zero day vulnerability ( as well as CISA, NIST cybersecurity alerts as mentioned below)--- it would be better to put that in SEC filing – so stake holders – those who I believe read SEC regulatory filings – would be better informed.

5. **SEC rule amendment states that "Specifically, we are proposing amendments to require current reporting about material cybersecurity incidents."**

   **Does it mean that company's CISA, NIST and CVE cybersecurity alerts are MATERIAL INCIDENTS and should/MUST be reported as part of this amendment?**

   There is not much clarity on what is MATERIAL, and it is likely that it will be subjective ..

May be SEC can specifically mention that any alerts issued through CISA.gov, NIST, CVE – with score above this –MUST be reported to SEC. Because this is a PROACTIVE step….in a long run – investors would be educated about how many alerts company is issuing and of what Severity, how much bad things are, how quickly company is ISSUING PUBLIC ALERT after coming to know about it,  how management is handling it…this is a way to address risk, liability and damage to public, patient, investor , employee data, systems, and more—entire universe that cybersecurity touches –OR say anything connected on internet.

**SEC rule amendment states that "Disclosure of Cybersecurity Incidents that Have Become Material in the Aggregate" – which is more than welcome. Punishes serial offender and forces them to disclose. And company's approach to fix issues in PRODUCTION, worry later and benefit now because we are in hurry to (1) go to market(2) in hurry to capture market share (3)we don't want to spend money initially (4) just slacker approach and mindset (5) who cares – thinking that "no one is going to jail "– worst –will pay some fine someday if at all, if regulatory agency comes after –but in the mean time we have generated 10-50 times revenue, profit, captured market share and more – that comparatively "paying a fine- which would be 1-5 % at the MOST of the amount revenue was generated, profit, captured market share and time to go to market….and this is all calculated by management as I have seen first-hand – managers think this way and do this way– so -- ☺**

6. **SEC Rule for internal whistleblower** – proposed rulemaking does not mention anything about it.
   In 2020, when SEC amended SEC rule 21F-2 to incorporate supreme court ruling in Digital realty v. Somers ; and removed  protection for internal reporting ---two commissioners ( Ms. Lee and Ms. Crenshaw) voted against it, where commissioner quoted history of whistleblower dated back to 1776 ; what founding father of America did back then ( entire history is that because of the whistleblower reporting- naval commander had to leave his post --- ) –I had submitted comments for rule making; but voting was 3-2 by commissioners and then SEC chairman Jay Clayton( who voted against it- though I had emailed at commissioners and chairman, general counsel email address about not to remove it)- -

   **Since SEC is already amending rule –and based on my detailed phone conversation with SEC.GOV senior attorney – SEC has to follow what supreme court ruled about** in Digital Realty v. Somers case **as definition of whistleblower–**

meaning those who report to SEC ONLY and not internal whistleblower. Currently two bills in house and senate are pending since 2019; those bills amend current whistleblower definition and add those who report internally as well. So there is some congressional intent. It is likely that– congress people knows about my lawsuit (I have already mentioned those bills in my lawsuit filing in 2019)..and GE has lots of lobbying power – so these two bills are sitting idle since 2019….

So coming back to my discussion….this is a good way to make SEC rule for cybersecurity more effective by adding internal reporting protection.

7. **Currently there is NOT any SPECIFIC statute or rule - specific to cybersecurity whistleblowing and/or reporting.** Most of the time employee would report to management - internally and try to fix it / address it.

8. **SEC rule amendment about Board skill and expertise is really a great step** – in my case – I had right from beginning emailed GE board of director about security issues at GE healthcare and ; she had replied that she was as a board member of GE- too high to deal with individual complaint….but then from next SEC.GOV filings – it shows that that same board of director was assigned cybersecurity oversight at GE..and she had a BIOLOGY background.

> GE 2019 proxy statement – page 17
> **BOARD SKILLS AND EXPERIENCE**
>
> **Technology Experience**
> As a digital industrial company

9. **Proactively changing culture where speaking up of** - bring up cybersecurity vulnerability is not a SIN - and without fear of retaliation. Those employee who DISCLSOE cybersecurity vulnerabilities, VERY FIRS, and INSTANTLY get a status of  Persona non grata ; because disclosing in PUBLIC vulnerability means exposing – weakness

10. Changing culture of cybersecurity, proactively addressing issue throughout product, software, system LIFE CYCLE DEVELOPMENT- "starting form functional requirement, product requirement specification to design, development, testing, deployment and maintenance " - would require lots of cultural changes, changes in funding, management mindset, not to be overconfident, be realistic, not to cut corners, and also status quo , --- all these can be achieved by putting back old SEC rule 21F-2 's internal reporting whistleblower protection and not that only those who report to SEC are protected under Dodd Frank act…

11. **GE removed in SEC 10-K and /or DEF 14 A**

**So GE REMOVED/STOPPED putting BELOW SECTION entirely from February 24, 2019 till present 2022 in SEC 10-K filing with securities & exchange commission; after T**rivedi sent email - on January 2019 to Culp, GE board of directors **about Remote connectivity-**and wrote that Trivedi would be filing a lawsuit against GE..... **and GE ha**==s since REMOVED that section from SEC 10-k altogether…..==

--------------------SEC.gov website; searching GE's public filing with SEC
**Filing 10-K - For year 2007, 2008, 2009, 2010, 2011, 2012, 2013, 2014, 2015, 2016, 2017 mentions INSITEEXC as follow**

==**Item 7 operations..SIGNIFICANT TRENDS & DEVELOPMENTS MD&A**==

==**Health**====care SEGMENT - Our product services include remote diagnostic and repair services for medical equipment manufactured by GE and by others, as well as computerized data management and customer productivity services.==
==**OR**==
**Healthcare systems also offers product services that include remote diagnostic and repair services for medical equipment manufactured by GE and by others.**

12. **For example – GE added word "CYBERSECURITY" in its SEC.GOV filings after my fight…**

   ✓ **2011 DEF 14- A proxy statement**
   https://www.sec.gov/Archives/edgar/data/0000040545/000119312511065578/ddef14a.htm

   ✓ **2012 DEF 14- schedule 14 A -proxy statement**
   https://www.sec.gov/Archives/edgar/data/0000040545/000119312512107087/d301131ddef14a.htm

   ✓ **2013 DEF 14-A– there is no mention of WORD "CYBERSECURITY"**
   https://www.sec.gov/Archives/edgar/data/40545/000120677413001019/ge_def14a.htm

✓ **2014 DEF 14- A proxy statement – filed on** 2014-03-05 , reporting for 2014-04-23 ; **WORD "CYBERSECURITY"**
**Is mentioned once under experience of  Dan Heintzelman.**
https://www.sec.gov/Archives/edgar/data/0000040545/00012067741400046/ge_def14a.htm

**Trivedi did private arbitration with GE in May 2014( in a hotel room)—and Trivedi spoke with FBI agent couple of weeks prior to arbitration hearing( where FBI supervisor said that what GE was doing is called QUITAM =- fraud against government)**

✓ **2015 DEF 14 A**
https://www.sec.gov/Archives/edgar/data/0000040545/000120677415000847/ge_def14a.htm

**WORD "CYBERSECURITY" is mentioned 7 times in 2015 DEF 14A**
**Also mentions on page 12-  "CHANGES MADE IN RESPONSE TO 2014 EVALUATIONS.** In response to feedback received from our directors in 2014, the Board determined to adjust the compositions of the Audit Committee and Risk Committee in light of the increased demands on both of these committees and formalize and strengthen the Audit Committee's oversight responsibility for cybersecurity."

13. Data breach of employees' personally identifiable information, third party liability
   ✓ **SEC proposed rules states that "iii) The registrant has policies and procedures to oversee and identify the cybersecurity risks associated with its use of any third party service provider, including, but not limited to, those providers that have access to the registrant's customer and employee data."**
   ✓ **This is to the point – and I liked it too.**

   ✓ **In re GE/CBPS DATA BREACH LITIGATION (1:20-cv-02903-KPF) District Court, S.D. New York**

   https://www.courthousenews.com/author/courthouse-news-staff/

   Corporate negligence Brief / August 4, 2021

NEW YORK — A federal judge ruled that General Electric employees may sue Canon and GE after a data breach at the imaging company resulted in the release of **GE employees' personally identifiable information**. GE's policy documents may be read as implied contracts that gave its employees reason to believe it would **protect employees' personal information, including information provided to third party vendors.**

✓ On February 21, 2022 GE reached a settlement for this class action lawsuit. Atleast one judge was doing her job. Judge ruled that

> "[T]he Supreme Court has made clear that 'allegations of possible future injury' or even an 'objectively reasonable likelihood' of future injury are insufficient to confer standing." McMorris, 995 F.3d at 300 (quoting Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409-10 (2013)). Rather, a future injury may support standing only if "the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." Id. (quoting Susan B. Anthony List v. Driehaus, 573 U.S. 149, 158 (2014)).

✓ Judge Katherine Polk Failla's order denying GE's motion to dismiss – dated August 4, 2021. **In this ruling--- "at risk " ,"future injury" has been shown enough to prove injury and thus ARTICLE III standing...**

14. GE or a COMPANY's MINDSET on CYBERSECURITY as shown in an example below---remote connectivity is better than defects ( below is GE architect Bill Barbiaux deposition; which has been part of my lawsuit filings)

Q So your -- I'm talking about -- I'm just
consolidating everything in one sentence.
Your point was connectivity is better than
defects in Insite ExC. At the least we would
have connectivity?
A Right.
Q And some are unresolved for ten years, which

is, as you said, not acceptable. But given
that there was no alternative, it went on?
A Right. And like I said, it was purchased
software, so I don't know that any of these
were really ten years old because we weren't
even in production at that point, but they may
be.

15. At GE healthcare, as GE architect testified in his deposition – that the remote
connectivity platform failed all security tests on DAY1 – on a public facing web; so
GE Healthcare – moved connectivity platform INSIDE GE's network- INTRANET.
And choose not to fix any of the cybersecurity vulnerabilities – for those tests failed
on DAY 1 and kept using the platform for several years…while old and new
vulnerabilities were PILING up in terms of hundreds of critical design defects( in
terms of FDA- Food and Drug administration's language it is called "Design
nonconformance and critical defects) and vulnerabilities.

Shouldn't there be some rule from SEC around this…to fix this kind of behavior and
also force company to disclose such defects in cybersecurity.
FDA ha**s 21CFR820  QUALITY SYSTEM REGULATION  Subpart I--Nonconforming
Product – but FDA is known to be administrative agency and not good at enforcing ..so
….my point is SEC should amend rule making for cybersecurity – non confirming
product….**

16. This is the IOT internet of things event  I did.

**IoT Security: High Stakes for Billions of Devices**
https://vlab.org/events/iot-security-high-stake-billions-devices/
"The speed of Internet of Things (IoT) adoption is creating opportunities for startups
developing IoT security solutions. Many industries such as healthcare, energy,
automotive, and consumer products are being transformed using insights gained from
the real-time data that IoT provides. As new online devices continue to be added at
exponential rates, the frequency of sophisticated cyber attacks targeting consumers,
businesses, and public services is also increasing.
Startups are competing against large corporations to establish themselves as leaders in
IoT security. And the rewards leading the charge to protect against security breaches,
hijacking, and individual privacy concerns is enormous. According to KBV Research,
the IoT Security market expected to reach $29.2B by 2022.
- Is the Internet of Things making us more vulnerable to attacks?
- Given the anticipated growth in connected devices, will security solutions be able
  to keep pace?

- What are the biggest challenges for startups working on IoT Security? '

**17.** As SEC staff and top brass knows about my matter that I have sued GE , GE Healthcare. *Trivedi v. Gen. Elec. Co.*, CV 19-11862-PBS, District of Massachusetts and currently pending at first circuit – Trivedi v. General Electric et. al - No. 21-1434. Though judicary and judges are also corrupt.

**18.** As we all know GE has changed its marketing, PR and entire company profile as "GE is a digital industrial company"  -- and all of its SEC.GOV regulatory filings also reflect that; while in reality – GE had stoneage cybersecurity practice – and Also in SEC.gov filings dated 2013 till date; it shows that GE painted ROSY picture , look trendy and cool--of it's digital solutions (Internet of Things platform);
As stated in SEC 8-K form; that **"it's market is up to $8 billion and wants everybody using it"** …

➢ but GE totally failed to consider RISKS, liability –even that putting many GE assets – where some GE assets are age OLD, due to several limitations of computing processing power, processing memory available; unable to get cyber security patches and upgrades due to these reasons..

➢ This is misleading given that GE has lessons to be learned at the same time was recklessly, negligently connecting all kinds of assets on internet.

**19.** **Also SEC should include disclosure of annual training of staff and management. There must be mandatory training that company reports it undertook for its employees.**

**20.** Below is Cybersecurity related CISA.gov alerts…these are portion of **ALERTS** related to **healthcare and REMOTE CONNECTIVITY–** but complete list is available on cisa.gov. **My point to mention it here  -- is that SEC proposed rulemaking to INCLUDE such cybersecurity alerts through CISA, NIST ; and over period of time – aggregate of such alerts, how it** MATERIALLY impacted customers, users, patients, employees, society – how company handled it, when it was reported and when it became public –when PATCH was released, when recall was done…These alerts are Material information. But current rulemaking language is not clear about it.

Some catalog of cybersecurity vulnerabilities alert GE issues through CISA - department of homeland security – there is long list on cisa.gov.

Item 1 is holy grail -Scott Erven – cybersecurity researcher reported first to GE about it  in 2014- as it affect 100s of 1000s of medical devices- specifically and exactly

what GE is touting in all their SEC filings as robust ( and it also involves InsiteEXC remote connectivity platform – the one that Trivedi is fighting for), with lack of internal controls and more. And GE knew it ; but nor GE or DHS, cared to issue alert for 4 years– and randomly – issued alert on Feb. 2018. Since 2014 – there was a lot of press and media coverage about Scott Erven's finding. At that time, GE shrugged off and didn't give a damn. Scott Erven himself ahs been surprised about this kind of inaction by GE..

**So my point is  -- SEC rulemaking should include – clause where company is required to issue cybersecurity alert – no matter what – regardless of looking bad, being exposed, tarnishing of company's image and what not --- by certain time limit – and not wait for 4 years – currently this part is in VACCUM – no specific mention about it in proposed rule.**

Latest in December 2020, GE is issuing alert through DHS for remote connectivity issues—
So as SEC proposed rule suggest – previous undisclosed incidents in aggregate to be reported and disclosed as material…It shows a pattern.

1. **Advisory (ICSMA-18-037-02) GE Medical Devices Vulnerability** Original release date: March 13, 2018

https://us-cert.cisa.gov/ics/advisories/ICSMA-18-037-02

2. **ICS Medical Advisory (ICSMA-19-190-01)** GE Aestiva and Aespire Anesthesia (Update A)release date: July 09, 2019 |

https://us-cert.cisa.gov/ics/advisories/icsma-19-190-01

3. **ICS Advisory (ICSMA-20-023-01) GE CARESCAPE,** ApexPro, and Clinical Information Center systems release date: January 23, 2020

https://us-cert.cisa.gov/ics/advisories/icsma-20-023-01

4. **ICS Medical Advisory (ICSMA-20-343-01) GE Healthcare Imaging** and Ultrasound Products Original release date: December 08, 2020

https://us-cert.cisa.gov/ics/advisories/icsma-20-343-01

5. **ICS Medical Advisory (ICSMA-20-049-02)** GE Ultrasound products Original release date: February 18, 2020

https://us-cert.cisa.gov/ics/advisories/icsma-20-049-02

6. **ICS Advisory** (ICSMA-18-128-01) Silex Technology SX-500/SD-320AN or GE Healthcare MobileLink (Update B) release date: May 08, 2018

7. ICS Advisory (ICSA-18-275-02) GE Communicator release date: October 02, 20181

https://us-cert.cisa.gov/ics/advisories/ICSA-18-275-02

Note:- I see that people are having meeting / video conference with commissioner (s) and SEC staff. I would like to have one with Commissioner Lee and Crenshaw as well as David Joire. But I don't know how to request setting up this meeting. So kindly reply me in email soon about how to set up this meeting. Deadline is approaching – so we can still set up a quick video conference. Thanks.

### Madhuri Trivedi

- ➢ Twitter - @madhuritrivd
- ➢ Linkedin:- linkedin.com/in/trivedim
- ➢ World innovation and Entrepreneurship – THE WSIE summit speaker invite– Great presenter 2019 - https://thewsie.com/presenters-2019/
- ➢ **Here's my cybersecurity whistleblower profile on whistleblowers.org**
  https://www.whistleblowers.org/whistleblowers/madhuri-trivedi/

Case 1:22-cv-11746-WJK Document 2 Filed 10/03/19 Page 249 of 616

EXHIBIT 1B



# Exhibit C

```
 1                AMERICAN ARBITRATION ASSOCIATION

 2   ----------------------------------------------------------

 3   IN THE MATTER OF THE ARBITRATION BETWEEN:

 4   MADHURI TRIVEDI,

 5                Complainant,

 6        and                    AAA Case No. 51 160 01260 13

 7   GE HEALTHCARE,

 8                Respondent.
     ----------------------------------------------------------
 9

10

11                   ARBITRATION HEARING HELD

12                   Thursday, May 8th, 2014

13                        10:00 a.m.

14                            at

15                 Country Springs Hotel
                       2810 Golf Road
16                 Pewaukee, Wisconsin

17
                 Reported by Carla J. Miller, RPR, CRR
18

19

20

21

22

23

24

25
```

```
 1                    Arbitration Hearing, reported by Carla J.

 2          Miller, Registered Professional Reporter and

 3          Certified Realtime Reporter, in and for the State of

 4          Wisconsin, at Country Springs Hotel, 2810 Golf Road,

 5          Pewaukee, Wisconsin, on the 8th day of May, 2014,

 6          commencing at 10:00 a.m. and concluding at 4:54 p.m.

 7

 8      A P P E A R A N C E S:

 9                    MR. PETER R. MEYERS
                         360 East Randolph Street, Suite 3104
10                       Chicago, Illinois, 60601
                         Appeared as the Arbitrator
11
                      MS. MADHURI TRIVEDI,
12                       Appeared pro se.

13                    QUARLES & BRADY LLP, by
                         MR. SEAN M. SCULLEN
14                       411 East Wisconsin Avenue
                         Milwaukee, Wisconsin, 53202
15                       Appeared on behalf of the Respondent

16

17                         I N D E X

18      EXAMINATION                                      PAGE
```

```
19      MELISSA POLACEK-RYAN
                      Direct Examination by Ms. Trivedi      28
20                    Cross-Examination by Mr. Scullen       52
                      Redirect Examination by Ms. Trivedi    53
21
        GLYN LIVERMORE
22                    Direct Examination by Ms. Trivedi      56
                      Cross-Examination by Mr. Scullen       84
23                    Redirect Examination by Ms. Trivedi    86
```

```
24

25
```

<pre>
 1                    I N D E X
                     (Continued)
 2

 3    EXAMINATION                                      PAGE

 4    ART LARSON
               Direct Examination by Ms. Trivedi     93
 5
      MICHAEL SWINFORD
 6             Direct Examination by Ms. Trivedi    108

 7    MICHAEL HARSH
               Direct Examination by Ms. Trivedi    149
 8
      MIKE SUCHECKI
 9             Direct Examination by Ms. Trivedi    156
               Cross-Examination by Mr. Scullen     181
10             Redirect Examination by Ms. Trivedi  184

11    GREG JACOBS
               Direct Examination by Ms. Trivedi    194
12
      WILLIAM BARBIAUX
13             Direct Examination by Ms. Trivedi    212

14


15


16                  E X H I B I T S

17    EXHIBIT NO.                         IDENTIFIED   RCVD

18    Exh. 1 - Compilation of emails            29      29

19    Exh. 2 - Growth Values document           47      49

20    Exh. 3 - Compilation of emails            55      61

21    Exh. 4 - Conditions of Employment sheet  111     114

22    Exh. 5 - Compilation of documents, 26 pages  122  ---

23
      Exh. 11 - System Performance Review for InSite
24            Platform                          62     ---

25
</pre>

```
 1                    E X H I B I T S
                        (continued)
 2
      EXHIBIT NO.                        IDENTIFIED   RCVD
 3
      Exh. 15 - Email from Mr. Barbiaux dated
 4               1-31-13                     221      223

 5    Exh. 19 - Not identified               131      ---

 6    Exh. 20 - Performance appraisal        134      344

 7    Exh. 21 - Letter from FDA              137      ---

 8    Exh. 27 - Not identified              130      ---

 9    Exh. 30 - Letter from Mr. Goldman dated
                 8-9-13                      108      114
10
      Exh. 32 - Email from Mr. Barbiaux dated
11               6-11-12                      62      ---

12    Exh. 40 - Evaluation submission        243      ---

13    Exh. 41 - Performance appraisal for    244      244
                 Ms. Trivedi
14

15               (Exhibits filed with original
                  transcript, copies to counsel.)
16

17

18

19

20

21

22

23

24

25
```

Page 5

1    T R A N S C R I P T  O F  P R O C E E D I N G S
2        THE ARBITRATOR:  This is the matter of the
3    arbitration between Madhuri Trivedi and GE
4    Healthcare, American Arbitration Association No. 51
5    51 160 01260 13.
6        My name is Peter R. Meyers, and I have been
7    selected by the parties pursuant to the terms of
8    their -- of the agreement with the AAA and the AAA
9    policies to hear this matter today.
10        We have had extensive discussions over the
11    phone, over telephone conferences.  I think in every
12    single one of them, I have advised the claimant,
13    Ms. Trivedi, that she should obtain counsel, but she
14    is here today pro se.
15        We are still going to abide by trial
16    procedures, Ms. Trivedi.  I want you to know that so
17    that we're going to move it in the ordinary fashion
18    that I'm used to moving it when I have lawyers.  I
19    have worked with non-lawyers before, and so I'm well
20    experienced in dealing with pro se litigants, but
21    we're going to keep the trial practice policy in
22    effect the way I always do it and have done it in my
23    40 years of -- in this business.
24        So the first thing we do today, since we
25    have no joint exhibits, is we have opening

Page 6

1    statements.  Ms. Trivedi, you are the claimant, you
2    can make a brief opening statement informing me what
3    you intend to prove and how -- what witnesses and
4    what people or what evidence you're going to put in
5    to prove what you want to prove.  So you may go
6    forward.
7        MS. TRIVEDI:  So good morning everyone.
8    Good morning, Mr. Meyers.  I -- As you said, I have
9    four attorneys advise me.  One was immigration
10    attorney and three attorneys were employment
11    attorney.  I had an employment attorney representing
12    me the last week, and he spoke with Mr. Scullen first
13    time on the phone, and Mr. Scullen gave him some
14    incorrect information and mentioned that I had three
15    attorneys previously, and he didn't know anything of
16    this background, and he was surprised, and then it
17    was just so -- He was working very hard and he
18    advised me and other attorneys have advised me as
19    well.  So that's one of the reason I'm here today by
20    myself.  My intent was to have him here, but then I
21    don't know what happened.  Anyway, so that's that.
22        I understand that me being pro see, as Mr.
23    Meyers said, all the trial procedures would be abide
24    by and followed as usual.  So thanks for that.
25        So the other thing is I requested in my

Page 7

1    document request to GE to provide all discovery
2    response, including my performance appraisal input
3    that manager gets from other team members, and their
4    discovery was closed in February, and day before
5    yesterday Mr. Scullen provided me this very important
6    document, which I asked since January, and the
7    document was -- I don't know why it was delayed, but
8    I have no words whether it's -- that document was
9    there since 2011/2012, and it's my midyear and final
10    year performance review input that manager gets from
11    my team members.
12        And that document clearly states that in my
13    midyear, manager and another manager and principal
14    engineer gave good ratings.  So I don't know why this
15    document was intentionally hidden or not provided,
16    but I just wanted to clarify that.
17        THE ARBITRATOR:  Okay.
18        MS. TRIVEDI:  Because I give everything
19    right in February.
20        THE ARBITRATOR:  The discovery procedures,
21    those are now done.  Hopefully everybody have what
22    they want.  Maybe they didn't get it when they wanted
23    it, but right now what you're supposed to do is tell
24    me what the issue is, what you intend to prove, and
25    how you intend to prove it.  And do it briefly, so we

Page 8

1    can start with the testimony of the witnesses.
2        MS. TRIVEDI:  Yes.  That was my goal, but I
3    wanted to clarify the things were not the way they
4    should be, given that he's a lawyer, so I wanted --
5        Okay.  So today I'm here to present the
6    case -- employment case where being an exceptional
7    engineer I was hired by GE Healthcare on November 19,
8    2011 with a good-faith promise to support
9    immigration.
10        I was meeting company's business
11    requirements.  I was punished for doing the job the
12    way I was trained to do.  This case is about their
13    disparate and unfounded discipline of a talented
14    software engineer who happens to be an Indian woman.
15    I did not conform to traditional gender stereotypes
16    with my teams, my managers by quietly deferring, but
17    I instead asserted myself for certain quality and
18    security issues, engineering practices.
19        I'm a victim, being a female from India who
20    worked for a large organization, whose manager took
21    advantage of those systems which I was not aware of,
22    the legal systems.  I was retaliated for raising
23    security and quality lapses in medical devices, which
24    is a regulated environment.  As a result of that, I
25    received negative evaluation as a person with soft

```
 1              AMERICAN ARBITRATION ASSOCIATION

 2      ----------------------------------------------------------

 3      IN THE MATTER OF THE ARBITRATION BETWEEN:

 4      MADHURI TRIVEDI,

 5                  Complainant,

 6          and                      AAA Case No. 51 160 01260 13

 7      GE HEALTHCARE,

 8                  Respondent.
        ----------------------------------------------------------
 9

10                          VOLUME II

11

12                  ARBITRATION HEARING HELD

13                  Friday, May 9th, 2014

14                      8:00 a.m.

15                          at

16              Country Springs Hotel
                  2810 Golf Road
17              Pewaukee, Wisconsin

18
            Reported by Carla J. Miller, RPR, CRR
19

20

21

22

23

24

25
```

```
1                    Arbitration Hearing, reported by Carla J.

2         Miller, Registered Professional Reporter and

3         Certified Realtime Reporter, in and for the State of

4         Wisconsin, at Country Springs Hotel, 2810 Golf Road,

5         Pewaukee, Wisconsin, on the 9th day of May, 2014,

6         commencing at 8:00 a.m. and concluding at 2:49 p.m.

7

8    A P P E A R A N C E S:

9                    MR. PETER R. MEYERS
                        360 East Randolph Street, Suite 3104
10                      Chicago, Illinois, 60601
                        Appeared as the Arbitrator
11
                     MS. MADHURI TRIVEDI,
12                      Appeared pro se.

13                   QUARLES & BRADY LLP, by
                        MR. SEAN M. SCULLEN
14                      411 East Wisconsin Avenue, Suite 2350
                        Milwaukee, Wisconsin, 53202
15                      Appeared on behalf of the Respondent

16

17                         I N D E X

18   EXAMINATION                                     PAGE
```

```
19   MADHURI TRIVEDI
                     Direct Testimony by Ms. Trivedi     262
20
     DAVID MEHRING
21                   Direct Examination by Mr. Scullen   347
                     Cross-Examination by Ms. Trivedi    411
22
     AYESHA KHAKHAN
23                   Direct Examination by Mr. Scullen   489
                     Examination by Arbitrator           494
24
     DIANE SMITH
25                   Direct Examination by Mr. Scullen   496
```

```
 1                        E X H I B I T S

 2    EXHIBIT NO.                              IDENTIFIED   RCVD

 3    Exh. 26 - Resume                              302     303

 4    Exh. 27 - FDA News article                    303     303

 5    Exh. 29 - Infusion pump document (no copy)     291     ---

 6    Exh. 43 - Letter from Ms. Trivedi dated
                9-21-11                              262     262
 7
      Exh. 44 - Letter from Fragomen law            262     262
 8
      Exh. 45 - Letter from Attorney Goldman         267     ---
 9
      Exh. 50 - Email from Mr. Turner dated 5-9-12  308     308
10

11    Exh. 121 - Email from TFS dated 7-12-12        303     306

12    Exh. 150 - Email from Ms. Trivedi dated 5-9-12 309     310

13    Exh. 160 - Email from Ms. Trivedi dated 8-23-12 415    ---

14

15    Exh. 200 - Emails from Ms. Trivedi dated 5-16-12 311  ---

16    Exh. 201 - Note from Ms. Trivedi to the Team    311   ---

17    Exh. 202 - Emails from Ms. Trivedi dated 6-8-12  311   ---

18    Exh. 405 - Emails from Ms. Trivedi dated 8-20-12 316   ---

19    Exh. 406 - Article "Ex-General Counsel of GE
                Unit Settles Gender Bias Case"         332   ---
20
      Exh. 407 - Email from Mr. Kohli dated 9-10-12    334   ---
21
      Exh. 408 - Email from Ms. Trivedi dated 8-20-12  334   ---
22
      Exh. 420 - Email from Mr. Kuhn dated 3-20-12     346   ---
23

24

25
```

EXHIBIT 6 

---

**Trivedi, Madhuri (GE Healthcare)**

| | |
|---|---|
| **From:** | Barbiaux, William J (GE Healthcare) |
| **Sent:** | Monday, June 11, 2012 10:29 AM |
| **To:** | Trivedi, Madhuri (GE Healthcare); Livermore, Glyn C (GE Healthcare); Bauer, Christopher (GE Healthcare); Gran, Curt (GE Healthcare); Kuhn, Alan (GE Healthcare); Patel, Dipti (GE Healthcare); Davis, Nate (GE Healthcare) |
| **Subject:** | RE: Memory error stopping |

Are we able to rebuild the ActiveX control, or do we get that straight from Questra?

**From:** Trivedi, Madhuri (GE Healthcare)
**Sent:** Monday, June 11, 2012 10:12 AM
**To:** Livermore, Glyn C (GE Healthcare); Bauer, Christopher (GE Healthcare); Gran, Curt (GE Healthcare); Barbiaux, William J (GE Healthcare); Kuhn, Alan (GE Healthcare); Patel, Dipti (GE Healthcare)
**Subject:** RE: Memory error stopping

Controls are built using old versions of ATL crashing when DEP is enabled. The solution is to turn off DEP or rebuild the ActiveX control using Visual C++ 2005 or higher (preferably with the recent security update), like Adobe did for their Flash player.

Best,
Madhuri

**From:** Livermore, Glyn C (GE Healthcare)
**Sent:** Sunday, June 10, 2012 9:29 PM
**To:** Bauer, Christopher (GE Healthcare); Gran, Curt (GE Healthcare); Barbiaux, William J (GE Healthcare); Kuhn, Alan (GE Healthcare); Patel, Dipti (GE Healthcare)
**Cc:** Trivedi, Madhuri (GE Healthcare)
**Subject:** Memory error stopping

For all those folks who don't work on ExC issues.
It appears that if you don't uncheck " Enable memory protection to help mitigate on line attacks" on IE8 then you get the error seen here and you can't download the RAViewer.
If you already have the RAviewer it's not a problem.

Glyn

---

Since 100 or so online engineers were stuck and were not able to establish remote connectivity due to this ActiveX issue…GE needed some quick fix…as I mentioned in the email running ActiveX and establishing connectivity –encounter compromise.

1. The ActiveX security is designed on how USER of ActiveX chooses various SECURITY options and be a Cyberpolice for own usage of ActiveX.The ActiveX security model relied almost entirely on developers promising not to develop malware, Microsoft gave the creators the ability to sign their applications. These digital signature certificates are double-checked and certified by services like VeriSign. Identified code would then run inside the web browser with full permissions .(In Java, user can put only partial trust in a program, while ActiveX requires either full trust or no trust at all.), meaning that any bug in the code was a potential security issue; this contrasts with the sandboxing already used in Java. Java applets,

which perform many of the same functions as ActiveX controls, are heavily restricted as to how they interact with a user's PC. Java applets can't erase files from a user's hard drive because it uses "sandboxing ". ActiveX is not sandboxed at all. Once downloaded on a user's computer, the ActiveX control becomes part of the operating system with the ability of tampering with every piece of hardware and software on the machine.

2.  Microsoft didn't restricting ActiveX's functions, Every time Internet Explorer needs to download a new ActiveX control, it launches a pop-up window. It then  asks the user if wants to proceed. Then user, has to decide whether the ActiveX control is legitimate or a Trojan Horse for nasty/malware code. Microsoft gave the creators the ability to sign their applications.

3.  **A "good" plug-in or Good ActiveX program can also hurt. By accepting an Active X program, user is trusting that the ActiveX program has no security-relevant bugs. As we have seen so many times, systems that are meant to be secure often have bugs that lead to security problems.** With ActiveX, this problem is made worse if you click the box which accepts all programs signed by the same person (for example, if  user accepts anything signed by GE/Vendor). While one GE/vendor program may be secure, another one may have a security-relevant bug.

4.  This problem even applies to code written by own company for internal use aka GE written ActiveX. Once the plug-in or program is installed in user browser, an external attacker could write a Web page which used User's internal program ;bug passed  it OWN data which corrupted the program and took over USER's  machine.

5.  Trivedi suggested bandage-short term fix, security compromise and long term fix.

6.  At GE "InsiteEXC" RAViewer was required to establish remote connectivity and many times online engineers/internal customers had to download/re-download it as per settings.

7.  GE architect Bill Barbiaux, architect Nate Davis, Lead systems designer Gregg Stratton all three of them with with GE from 20 years, 30 years ,10 years respectively. But None of three had any clue and were doing this from 2007, from 2009 and in 2012 received plaintiff Trivedi's analysis and findings….

8.  GE argument that they can't rebuild ActiveX with security update because ; they bought huge chunk of InsiteEXC software/firmware code from company called "QUESTRA" and Questra got bankrupt ; hence they don't have access to source code..So GE has to make new connectivity platform from GROUND up…But Chris Hardimen-Program manager for GE connectivity mentioned that it is not Questra gone out of business but GE's unwillingness to spend some million dollars in fixing this..but GE bought Questra software in 2004 with major update to that in 2007 and it was 2012 ; still they were sitting on pile of defects and cyber security vulnerabilities; hoping and praying that nothing happens to their broken remote connectivity platform while continuously & knowingly and after all this Trivedi talked—more aggressively putting Insite on all kind of medical devices and selling it to customers worldwide…

9.  Even in new platform development which was no way near the end for years to come even though Trivedi reported ActiveX securities; GE continued at that point to USE ActiveX. After I left GE may have DROPPED or may not..I am not SURE as I did arbitration so ;GE might have taken it seriously or might not..

## EXHIBIT 8

From:
Madhuri Trivedi
Date: -January 11, 2022

**To, Chief ALJ HENLEY, STEPHEN**
**Administrative Law Judge**
**U.S. Department of Labor**

**Subject: Motion to Amend ALJ Objections as "GE is next ENRON – SOX** 8 U.S.C. §
1514A, et seq. ,Pub. L. 107-204 became law post ENRON"

**ALJ case – 2022-SOX-00005 General Electric and GE Healthcare/Trivedi/5-3100-21-110**

**1.** I have asked that GE people and OSHA people be arrested, arrest warrant would have been issued while back if there was no corruption. But thing are totally corrupt. For judicial people also there must be judicial oversight and accountability.

**2.** I am amending this to my objections, it is timely , done in good faith.

**3.** There are already Tons of legal arguments about timeliness of my filing in my ALJ objections, but no one has read it so far..On January 24, I will be refiling those legal arguments and more for timeliness.

**4.** I request that ALJ read my objections. It already has grand jury criminal investigation in WRITING by federal judge Andrew Hanen to DOJ.. It is called DICTA..judges written to DOJ.  Judge TIMOTHY J. McGRATH mentioned on our conference call that "He does not have criminal authority"  - if he does not have criminal authority then under criminal domain – there is no statute of limitations. But OSHA is corrupt. If same thing continues then I go to ARB and raise this same concern that federal agency not doing it's job. What OSHA has done is malfeasance, misfeasance and nonfeasance. If you check OALJ filing email – before filing my objections, I already had copied OAL about public corruption filing sent to respective agency.

**5.** Now people at large are at MERCY of Whistleblowers and investigative journalists because agencies for example OSHA is corrupt.

**6.** ALJ is required to do De Novo review and not copy/paste what Corrupt OSHA wrote.

**7.** **Father Martin wrote publicly ---"I worked in HR generalelectric in the 80s and so I thought I had seen, and heard, pretty much everything about how men sexually harass women. (It was rampant.).."**
GE is sexually harassing women for more than three decades, debt finances for decades, is a serial fraudsters, doing violations and hundreds of millions of settlements over the decades...While OSHA does not want to investigate. Trivedi would want Father Martin to come and testify at ALJ case for SOX here…

**8.** I will request ALJ chief judge to review my case as well.

**9.** <mark>GE changed lawfirm recently in my federal lawsuit and GE's lead attorney Bruce Falby from DLA piper lawfirm,is gone.</mark>.I had filed attorney misconduct complaint against him to Massachusetts Board of Bar Overseers; as similar to today- he was also misleading court by omitting, telling lies and more..He is gone.

**10.** In my ALJ objections I have already mentioned about my federal lawsuit – just didn't have docket number – but I did provide information that I have ongoing lawsuit to ALJ.

**11.** DODIG is also aware now..and has new complaint...DOD confirmed that DOD has used InsiteEXC (medical device fraud that I didn't join fraud scheme at GE)at some place military hospital and during sometime...and more.....

**12.** **SEC and GE settlement announced Dec.2020----it was published in media as below..Former SEC chief accountant Lynn Turner's comment--**

> The GE fine ($200 million) may seem large but it is a pittance compared to what investors have lost on their investments in this company. **GE is a recidivist violator of securities laws, with its management having been previously found to have manipulated its financial reports and disclosures,** <mark>made bribes and illegal payments, as well as having serious deficiencies in its internal controls.</mark>

# 13. GE bit of Enron – 2009 Nytimes

**Wall street journals podcast below is Nov. 2021. Nytimes story is in 2009 - talks about the same fraud settlement in 2009- same language...**

**What I meant is 2009- 2021-- WSJ podcast below in 2021 says the same thing..**

Inside G.E., a Little Bit of Enron - The New York Times
https://www.nytimes.com/2009/08/07/business/07norris1.html

2009 Newyorktimes story mentions about GE employee James Martin ; who said as in article about outright fraud GE was doing when he worked at GE from 1982-1988..

And in 2021 WSJ podcast reiterates those same things...

James Martin - GE employee -as in article is now Father Martin and is a wellknown priest now-- highly revered.....while GE in 2009 said that Mr. Martin was a low level employee and demeaned him in press release about father Martin..

**What does all these mean ? GE has a culture of fraud..It was that -- not Madhuri "not getting along" -- that GE fired Madhuri..**

For serial fraudsters GE people. Proves that there is corruption. GE wanted Trivedi to sign off on test results for cash cow annual revenue generating service medical device - InsiteEXC - and tests failed- Trivedi didn't join fraud scheme. Labeled as not team player--on second project which was failing due to Ge energy, GE digital , GE healthcare not getting along, not having technical capabilities, manpower and time -to make a GENERIC solution that works across energy, digital healthcare -- and the day Trivedi joined second project there were 200 pending bugs

**********************Begininng of NYTimes article snippets

This week General Electric agreed to pay $50 million to settle a suit filed by the Securities and Exchange Commission that said the company fiddled with its books repeatedly early in this decade. In at least one case, that allowed it to preserve its reputation for making the numbers. Some of the details are eerily reminiscent of Enron.

Another view of G.E.'s accounting standards emerged a few years ago in a book written by a man who worked there for six years in the early 1980s, before concluding the corporate life was not for him and entering a seminary. James Martin may be the only Jesuit priest with a degree from the Wharton School of the University of Pennsylvania.
"The first month," he recalled,
"I informed one executive that our results were coming in low" because of losses in overseas operations.
"So what?" replied the executive. "Just reverse a few journal entries." Corporate headquarters, he explained, would come down hard on them if they missed the numbers.
Another boss told him he was "taking those accounting courses way too seriously."
The S.E.C. complaint makes it sound as if those days came back, assuming they ever left. It tells of corporate accountants discovering misstatements and secret side deals, and of more senior executives telling them to sign off on the books anyway. It outlines four separate violations, two of which it says descended to the level of fraud.
It is notable how this investigation came to be. PostEnron,
the commission
used its authority to look at G.E.'s books to figure out whether there were violations in the area of socalled

hedge accounting, which determines whether companies can
avoid reporting profits and losses from a variety of derivative securities.The commission
evidently found three violations, two in hedge accounting and
the other in an Enronesque scheme to inflate profits with fake sales.

While it may seem odd to view the government as an underdog, it was. G.E. says
it spent $200 million on outside lawyers and accountants in dealing with the
investigation. By contrast, the S.E.C.'s entire annual enforcement budget, spread
over thousands of inquiries and investigations, was less than $300 million when this
investigation began in 2005.

But that sympathy vanishes when considering the accounting alchemy that G.E.
used to make its numbers at the end of 2003. In a move reminiscent of Enron's
Nigerian barges deal, it "sold" some railroad locomotives to banks, with side letters
and verbal promises to assure the banks they could not lose money. That enabled
G.E. to book profits early and make the numbers.

I called Father Martin, now an editor at America magazine, a Jesuit publication,
and asked him to read the S.E.C. complaint and call me back. He did.
"Little of this is surprising," he said.
"I was sometimes asked to squirrel away 'excess earnings' in fake accounts with
madeup
names, to be used when earnings were down in later months," he said. One
such account was called "Plug."

*****************End of NYTimes article snipetts

# 14.  Enron, Ep 8: Vigilance and Skepticism

https://www.wsj.com/podcasts/bad-bets/enron-ep-8-vigilance-and-skepticism/1539af39-d902-42ef-92d3-d240cf5fb20b

**11/30/2021 6:00:00 AM**

Lynn Turner: Were cooking the books, if you will, using very aggressive accounting practices.

John Emshwiller: In fact, suspect accounting practices with an Enron echo surfaced at one of America's most iconic companies, General Electric. GE was formed in the late 19th century. It has long been one of the pillars of American

industry, building everything from home appliances, to nuclear reactors, to trains. In 2002 and 2003, GE sold over $370 million of locomotives to unnamed financial institutions according to the SEC. Within a few months, the locomotives were resold to others. These transactions, along with other GE financial actions, caught the eye of the SEC. In response to the SEC's inquiries, GE began an internal investigation into those sales. In a 2007 public financial filing, the company said it determined the locomotive deals didn't qualify as real sales. Though the title had been passed to the financial institutions, the necessary risks and rewards of ownership hadn't. Here's former SEC chief accountant, Turner, again.

Lynn Turner: The sale of those locomotives clearly didn't occur, and it was just a way of trying to say we had a sale, but it was a contrived sale.

John Emshwiller: Sales that really weren't sales, that might ring a bell from earlier in the series. Enron sold some electricity producing barges off the coast of Nigeria to Merrill Lynch in 1999. The Justice Department later alleged that was a fake sale that illegally boosted Enron's earnings, and several Merrill and run officials went to prison as a result.

Lynn Turner: What both companies were doing was illegal. What both companies were trying to do is paint a very false and misleading picture to their investors. So, from that regard, although they're vastly different transactions in some respects, they're very much the same.

John Emshwiller: In its 2007 filing, GE blamed, "Intentional misconduct" by several unnamed employees and said it resulted in their separation from the company. The company added that there'd also been inadequate accounting oversight of the deal. Still, in 2009, the SEC filed a civil action against GE, charging the company with fraud and other securities law violations. Besides the locomotive deals, the SEC complaint said GE used improper accounting in other areas of its business. In one instance, these actions allegedly allowed GE to meet earnings estimates of Wall Street analysts. No GE employees were named as

defendants. GE settled the case, paying a $50 million penalty without admitting or denying wrongdoing. In 2020, the SEC filed a new action against GE. The agency claimed that between 2015 and 2017, the company mislead investors about how it was generating earnings and cash flow in its power unit, where they make big gas powered turbines. And that GE also failed to disclose large potential future liabilities in its insurance operation. Here's Lynn Turner again.

Lynn Turner: They never told them that it wasn't the power unit business that was generating profits, it was the accountants in the back room manipulating the estimates.

John Emshwiller: GE settled with the SEC again, without admitting or denying the allegations. This time it paid a $200 million penalty. Turner says in both SEC cases, GE-

Lynn Turner: Basically falsified reports and showed a much better picture than what was actually occurring.

John Emshwiller: A GE spokeswoman pointed us to the company's prior public disclosures regarding the SEC's actions. She said GE had no further comment beyond that. In those public disclosures, GE said it made any needed corrections to prior financial statements and had taken steps to improve its disclosure practices and internal controls. While the legacy of Enron did bring some tangible changes to big business and the law, Turner is worried that things are getting more lax again, across corporate America.

Lynn Turner: We're seeing financial engineering enter into some of these transactions again. We're seeing a lack of transparency.

*******************************************************************************

## 15.    Trivedi lawsuit --Case 1:19-cv-11862-PBS Document 51 Filed 10/10/19 Page 118 of 240

267. **Note 6** **Below is my email to FBI director,**

---------- Forwarded message ---------

From: **Trivedi Madhuri**

Date: Thu, Oct 20, 2016 at 3:11 AM

Subject: Re: Criminal investigation

David J. Johnson <david.j.johnson@ic.fbi.gov>,

Typo corrected below ..and Enron and other thing. ... Please read this email .

# On Oct 19, 2016, at 8:06 PM, Trivedi Madhuri > wrote:

David Johnson you are now reporting to James Comey and David Callway criminal depart head at DOJ --- left DOJ in August this year .. **GE is another Enron**

## 16.   **Case 1:19-cv-11862-PBS Document 51 Filed 10/10/19 Page 17  Trivedi v. General Electric et al.**

Several immigration attorneys mentioned to Trivedi over phone right at the time when she was fired that "GE has finance/accounting cooked books, checked history. Since next step in my immigration while I was at GE was to file form I140 with DHS/USCIS I 140 ; in I 140 form GE was required to show their finances and total number of US based employees. GE didn't want to SUBMIT TRUE finances to government. So GE got rid of plaintiff and made up PRETEXT issues of relationship skills to fire."

 ************************************************************************
## 17.   **My Ninth circuit lawsuit in 2017 against DHS -- Case 17-15217 Madhuri Trivedi vs. DHS Page 13 of 20  May 12th 2017**

15. GE framed me…They outsource and off shore most/all of it software.they had no intention to keep me on a payroll (cost of paying me). Also after my labor certification was approved as a person of exceptional ability-EB2 ; by department of labor. Next step was just a formality by GE where GE was required to submit all it's financial information and number of US employees etc. Several immigration attorneys said that "GE has cooked accounting books. GE does not want to submit financial data. So GE framed you. PRETEXT. "

## 18.   This judge has denied GE's motion to dismiss for the same SEC settlement related thing - ------------

*Sjunde AP-Fonden, et al., v. General Electric Company, et al.* - 1:17-cv-08457-JMF --
Honorable Jesse M. Furman

**Judge Furman ruled January 2021 that-- ECF 206**

GE motion to dismiss denied

"as to (1) Plaintiffs' Section 10(b) and Rule 10b-5 claims concerning (a) factoring in GE's 2016 Form 10-K and (b) GE's failure to disclose factoring in its Class Period financial statements from 2015          on, which survive against GE and Bornstein; and (2) Plaintiffs' corresponding Section 20(a) control person claims against Bornstein.

Bornstein [GE CFO] was, in some meaningful sense, a culpable participant in the alleged fraud by GE.finds that Plaintiffs' allegations with respect to Bornstein suffice even under the heightened          standard. Indeed, the Court has already found that Plaintiffs adequately plead Bornstein's scienter as to both remaining factoring primary violations..("Allegations sufficient to plead scienter for the          purposes of primary liability pursuant to Section 10(b)'necessarily satisfy' the culpable participation pleading requirement for Section 20(a) claims." Therefore, Defendants' motion to dismiss these          surviving Section 20(a) claims against Bornstein is denied."

## 18.1.  In my Trivedi v. GE lawsuit - I have mentioned about above SEC settlement in ECF 150 and ECF 150-1 ..

**and GE healthcare also has service contract..**

**ECF 150 page 4**

10) When GE got wells notice from SEC in October 2020 –

https://www.reuters.com/article/us-ge-sec-idUSKBN28J345

"The inquiry, which initially focused on long-term service agreements for maintenance of power plants, jet engines and other industrial equipment, was later expanded to include GE's review of its insurance business. "

11) Remember my claims also states that GE's on going fraud for medical devices

and related service contracts – and I Madhuri worked as a lead engineer for GEHC's global service division -where GE not having division wise financial disclosure and service contracts' cost and future cost for service /parts can be adjusted –for overall cost—aka manipulated in finance for earning, cash flows, showing future revenue- cost figures –these are considered as variables which is used by GE tweak/manipulate for their own advantage given GE's opaque finances.

**19.** ==**GE attorney did tell judge** McGRATH **(while telling ALJ about timeliness and ongoing litigation)**==

- ✓ EEOC has at least considered my charge/complaint TIMELY in September 2021..
- ✓ I filed my complaint with EEOC first time in 2021;
- ✓ while OSHA dismissed my complaint as untimely. same month in 2021 (despite I filed first time with OSHA in 2014)..
- ✓ GE has submitted their two page position statement to EEOC charge.
- ✓ While OSHA didn't consider it timely so OSHA never asked GE to submit position statement.
- ✓ GE didn't tell this to ALJ today..so..

**I presented the same arguments about timeliness to OSHA and EEOC both in 2021...my mitigating circumstances, beyond control of my own, attorneys I hired never providing me legal advice to file with OSHA or EEOC etc in timely manner and more...**

**So it proves that OSHA has screwed up ---- it proves that OSHA didn't want to go after GE for wire fraud and other criminal violations....OSHA investigator Nathan himself said in 2021 that if he investigates GE -He is afraid of losing his job..**

**Now experts in industry are also talking more loud that GE is another ENRON - while OSHA corruptly closed my complaint..**


**Respectfully Submitted,**
**Madhuri Trivedi**
**/s/Madhuri Trivedi**
Phone: (650) 242-5135
Email: orangeinc@protonmail.com
Linkedin:- linkedin.com/in/trivedim
Twitter:- @madhuritrivd

EXHIBIT 9 A

To, Chief ALJ HENLEY, STEPHEN
Administrative Law Judge
U.S. Department of Labor

ALJ case – 2022-SOX-00005 General Electric and GE Healthcare/Trivedi/5-3100-21-110

# Subject:

I.   **Motion to compel, Motion to compel discovery**

**to depose,  ask to submit written statement, interrogatory question, document discovery & more) from**

**>>OSHA 2014 investigator Tamara Simpson, Robert Kuss –who are no longer employed at DOL about timeliness and to have them ADMIT themselves that Trivedi had submitted FDA letter, arbitration complaint to OSHA –Tamara, Kuss; where I can question Tamara, Kus about documents I emailed them that satisfy my OSHA complaint –despite corruptly , fraudulently they both closed it administratively.**

**>There are Federal TORT claims against OSHA people 2014, 2021- for causing injury, harm, intentionally infliction of emotional distress. And I am in the process to file Federal Tort claims --First  to file an administrative claim - FTCA against them.**

**>>>>2021 OSHA people Keller, Rosa, Nathan, William, Koh, Frederick**

**>>>>FDA people Charles Meyers, James Woods & others–who would corroborate Trivedi's complaint that she had reported to FDA retaliation, whistleblowing , loss of immigration.**

**Trivedi wrote to Charles in email that "<mark>it was a fraud and conspiracy to continue release/ integrate those Insite Exc</mark> agents"**

**( Charles had been notified about my immigration and that FDA ask to GE reinstate or file I 140 so she can transfer her H1b elsewhere so that her immigration is fixed. Between now –unless Charles Meyers is killed somehow now-he had this information when I filed FDA complaint.**

**>>>>GE attorney who already have FDA FOIA since 2019 & GE people as necessary**

**why – Trivedi's complaint to FDA filed within 180 days +12 days – On December 12, 2013 onwards; as whistleblower was trashed-**

**FDA FOIA shows Trivedi complaint with FDA was filed as "source – WHISTLEBLOWER"**

**Motion to compel discovery – this motion is necessary , IF despite FDA FOIA shows timeliness; Judge McGrath STILL needs LOTS of FURTHER & more evidence to prove timeliness and hence to answer Judge McGrath's order to show cause for timeliness.**

II.  **This motion provides 100% evidence , meets timeliness THRESHOLD for OSHA SOX under for 2014 complaint-**

**that Trivedi filed her complaint with FDA as shown in FDA FOIA, as a whistleblower on December 13, 2013-  and hence satisfied ALJ McGrath's order to show cause for timeliness.**

**18 U.S.C. § 1514A(b)(2)(D);29 C.F.R. § 1980.103(d)  ( The time for filing a complaint may be tolled for reasons warranted by applicable case law.** For example, OSHA may consider the time for filing a complaint equitably tolled if a complainant **mistakenly files a complaint with the another agency instead of OSHA within 180 days after becoming aware of the alleged violation.).**

**Judge McGrath order show cause** (Likewise they did not mistakenly file a complaint with an agency that did not have the ability to grant the relief requested.)

III.  **Order to ==Show cause by Judge McGrath==** –"However, she elected not to proceed with a complaint, and acknowledged her understanding that OSHA would take no further action. "

==Trivedi-I do not understand what Judge McGrath and OSHA mean by this sentence –please provide in writing /or arrange conference call to explain what JUDGE McGrath mean ,so I can answer for order to show cause on Monday 24, 2022.== See Exhibit 1 & 2 & email to OSHA Jan 20, 2022

IV.  **DHS filing in October & November 2013 as shown in this motion – Trivedi clearly wrote**
     **>>REMEDY:** Reinstatement (even if getting reinstated short term if company wants that way; then **Ms. Trivedi can work for other employer in US**.); GEHC immediately resumes the immigration process by filing the Form I-140 with USCIS with premium processing,  after I-140 is approved and until at least six months pass then filling I -485; Also back pay (including benefits whole sum) since the termination.

>>discrimination (being a female engineer and nationality) and retaliation for bring out those security/quality issues; while they were showing disregard to address/fix and prevent these very important issues from happening. It was a job needs to be taken seriously. This is a SERIOUS problem and I was trying to take care and was doing best job. My performance was geared for making sure that these kinds of quality/security issues does not happen to medical devices.

>>Also Greg threatened my safety by all gun related behavior (as mentioned in details in Level 3 statement) when his job was at stake. Management paid no attention when reported such hostile work condition. Managers retaliated by giving negative rating in my performance appraisal for reporting this.

Later She was forced to sit in proximity to Greg Stratton (this was a requirement in PIP) despite repeatedly mentioning her concern of overall safety and wellbeing (please refer mediation statement for details). Ms.Trivedi was forced to work in a hostile, unprofessional work environment.

>> Ms. Trivedi was put on a PIP to **improve relationship** There are several factual evidences including but not limited to that Ms. Trivedi was working with dedication to quality, technical rigor, Inclusiveness and clear thinking.

When I requested a meeting with Dave Elario; he did not come. I sent information to him regarding what was happening via email. After sometime to find a solution; in early February I requested Dave Elario's boss Mike Swinford to meet and help. Mike sent Dave Elario to meet with me. Dave Elario got very upset at me as I went to his boss and told me that even if his boss Mike wants to transfer me to another group/manager, Dave E. won't let that happen and he will advise Mike against that and against supporting me. Also Dave Elario threatened that he will take me out of job. (Ms.Trivedi thought there would be an open door policy.) After a week of this they put me on a PIP.

In year 2013 only there were **four Class 1 recalls** for GEHC products by FDA including one were entire product line was recalled due to patient death in June 2013.

V.  Motion for stay to reply order to show cause on timeliness –pending discovery- First discovery needs to be happening- in order to reply timeliness.

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*End of Subject**

# Hello ALJ, and ALJ chamber staff,

1. Why I am being burdened which is not proper in many ways; to reply for timeliness when OSHA has written false statements and more. Now ALJ should issue order to GE and OSHA to respond to this and my other filings. This is beyond corrupt. All people must be arrested at this very moment. **So far what govt. people is doing their BEST "to cover up  GE fraud at the expense of taxpayers money who pay their salaries; which is fraud, waste & abuse of government–comes under OIG to investigate."** Public corruption – malfeasance, misfeasance and non feasance. Appears that GE has people at Govt. who would defend them no matter if have to go to jail.

2. Find attached FDA FOIA shows– most of important things are REDACTED. It says my complaint with FDA was filed as "source – WHISTLEBLOWER"

   **While OSHA wrote in dismissal letter that "**Similarly, on December 12, 2013, Complainant contacted the FDA to alert them to possible vulnerabilities in Respondent's medical device software. However, within both of these requests or complaints to government agencies, Complainant was not alleging retaliation and requesting that the agency restore her to her former position or request any other remedies that the receiving agency was unable to grant. **"** )

3. Now is the time to answer why GE, GE attorneys, OSHA people not to be criminally charged and JAILED. Daniel Koh, Anthony Rosa, Frederick James to resign and also to be held criminally responsible.

4. **FDA Document Number: CPT1400185 signed by** Donna Engleman, BSN., MS. **Chief, Allegation of Regulatory Misconduct Branch, Center for Devices** and Radiological Health-

Dear Concerned Party:

This is in response to your correspondence, dated December 13, 2013, in which you allege that GE Healthcare is shipping aging and defective InsiteExc products.



**DEPARTMENT OF HEALTH & HUMAN SERVICES**

Food and Drug Administration
10903 New Hampshire Avenue
Building 66, Room 2621
Silver Spring, MD 20993

June 4, 2014

Document Number:   CPT1400185

Mcis99@gmail.com

Dear Concerned Party:

This is in response to your correspondence, dated December 13, 2013, in which you allege that GE Healthcare is shipping aging and defective  InsiteExc products.

Thank you for providing this information to the Food and Drug Administration (FDA). Information from regulated industry is often very helpful to us in identifying problems with marketed products and possible violations of the laws that we enforce.  We take such reports seriously, and we will evaluate this matter to determine what follow-up action is appropriate. The type and extent of any follow-up is dependent upon the nature of the problem, the possible impact on the public health, and the availability of our resources.

While FDA does not provide information on ongoing investigations, information can be obtained pursuant to a Freedom of Information Act (FOIA) request, once an investigation is closed.  Requests for this information can be submitted via the agency online FOIA submission address at http://www.accessdata.fda.gov/scripts/foi/FOIRequest/index.cfm or in writing to the following address:

Food and Drug Administration
Freedom of Information Staff
ELEM 1029
12420 Parklawn Drive
Rockville, Maryland 20857

If you have any questions regarding this letter, please contact me at 301-796-6117 and reference the above document number.

Sincerely yours,

Donna Engleman, BSN., MS.
Chief, Allegation of Regulatory Misconduct Branch
Center for Devices and Radiological Health

## FDA FOIA response for FDA Document Number: CPT1400185 filed December 13, 2013 as Source –complainant, whisteblower



5.  **FDA letter that OSHA & ALJ referred – Trivedi's compliant filed December 13, 2013, was followed up by a call with Charles Meyers and several emails -Trivedi wrote that "it was a fraud and conspiracy to continue release/ integrate those Insite Exc "**

**This email itself satisfies Judge McGrath's timeliness order and that GE, OSHA people of 2014 and 2021, Koh  get arrested… OSHA in 2014 was aware of this email- despite they closed administratively.**

---------- Forwarded message ---------

From: **Madhuri** <mcis99@gmail.com>

Date: Wed, Feb 12, 2014 at 6:54 PM

Subject: Fwd: info

To: Myers, Charles F <charles.myers@fda.hhs.gov>

Respected Charles

>>> I am copying small portion here in email.  Defects/design non conformance in year of 2012/2013.

>>>Also I have attached document that mentions in order to have Insite Exc work  **"Enable memory protection to help mitigate online attacks" which was required to be unchecked in settings in order to establish/install remote connectivity."**    Managers did not care much to address it.


 Thanks
Insite Exc Platform
Presenter: Nate Davis
**Open Issues:**
•465 Design Non-Conformances


Not-so-Good News
We have been experiencing a large number of issues on the device-facing side of the application.  This means that even though users can get into the Questra app, they cannot use remote service features of the application.  We have mechanisms to detect this issue, but not to do trending on it.
-------------------------------------------------------------------------------------------------
    Surgery Manager in March 2012 during Insite Exc integration with Surgery OEC mobile arm (Madhuri was a team member for this; Madhuri was assigned to do testing related work) expressed serious concerns/objections  to team leads/managers about how important quality/testing steps were not included .**These steps are required by FDA guidelines**..For example automated code review software and code coverage. Madhuri emailed Dave Mehring the same concern in Jan 2012 about the need to use automated code review software and code coverage during Insite Exc testing.

--------------------------------------------------------------------------

==Once Madhuri realized amount of defects and performance/maintenance issues Insite Exc was having; it was a fraud and conspiracy to continue release/ integrate those Insite Exc agents on products like Surgery OEC for example (where Madhuri was doing testing). Given it is regulated environment and Madhuri was concerned to continue work on Insite Exc surgery integration== . This happened in March 2012. **Despite all these ; management did not care and they proudly continued Insite Exc Integration on all kind of medical devices and applications .**
-------------------------------------------------------------------------------------------------
-----Bill Barbiux (principle engineer for GEHC 25 years) in a meeting in 2013 with 20 people( management and engineers) said that "our resources are not trained in SECURITY, when we launched Insite Exc product; we had to move it from public facing website to internal website because it failed security tests."

But even if it is internal website...security needs to be taken care if it is vulnerable from inside the network/outside the network.
-------------------------------------------------------------------------------------------------------------
There were several hundred customer complaints for Insite Exc support were logged . Insite Exc was falling apart.

On Sun, Dec 15, 2013 at 10:22 AM, Silverman, Steven <Steven.Silverman@fda.hhs.gov> wrote:

Thank you for sharing this information.  I will forward it to Center for Devices managers with responsibility for the devices that you reference.

 Steve Silverman
Director, Office of Compliance
Center for Devices and Radiological Health
(301) 796-5500

**6.**

**7.** Just one example-- I had forgot to attach and Trivedi has not filed with ALJ objections – letter sent by Immigration attorney Jeff Goldman on August 2013-so judge McGrath do not even have that letter at all….so he blindly wrote ,copy/pasting OSHA dismissal – without checking that she had law firms..

Judge McGrath Order to show cause -The dismissal letter notes that during August 2013, Complainant had law firms working on her behalf, but neither she nor her attorneys filed a complaint with OSHA

**Trived**i- -9th August 2013 Jeff Goldman was an immigration attorney – how can he advise on OSHA SOX when employment law is not his expertise.

OSHA letters including administratively closed letter  , dismissal letter and all letters that OSHA issues - signed by OSHA people - **need to have a NEW FORMAT-** where they OSHA people sign  OSHA letter **that under penalty of perjury I sign that statements made in this OSHA letter are true and correct.**

**8.**  In court there is perjury- so what  would apply for OSHA lying/false statement in their letter

Worst corrupt thing is to write false statements-- in court there is a PERJURY - lying under oath...perjury is criminal offense =- what would that be to write -knowingly intentionally FALSE statement as OSHA investigation level? Also omitting - writing misleading statements

Also, knowingly, with full intent - omitting totally true, crucial facts presented with evidence- writing misleading statements in OSHA letter   -- just to cover up fraud done by company GE- because Nathan is afraid of losing his job-- malfeasance, misfeasance and nonfeasance ---and all

TOP to Bottom and Bottom to TOP are corrupt....guilty mind and guilty action which is mens rea and actus reaus...satisfies criminal requirement......

9. Also my filings , has so much technical details – that shows fraud, wrongdoing – which without questions/answer /conference call – won't be able to understand..\

10. **Order to Show cause by Judge McGrath –"However, she elected not to proceed with a complaint, and acknowledged her understanding that OSHA would take no further action. "**

   **I do not understand what Judge McGrath and OSHA mean by this sentence –please provide in writing what do you mean so I can answer for order to show cause on Monday 24, 2022.**

## ALJ objections filed October 2021 – which no one at Boston ALJ read – page 9-

> "Despite it is a clear cut Sarbanes Oxley Act related- one of 22 statutes OSHA enforces- as under whistle blower provision. OSHA responded that my complaint doesn't fit in any of their 22 statutes. And closed administratively so I didn't appeal to Secretary for labor- administrative law judge."

**See EXHIBIT 1 EMAIL 1 and EXHIBIT 1 EMAIL2** at the bottom of this filing- Despite I wrote to Koh, Frederick, Rosa that Denise Keller- OSH A supervisor told me that because it was closed administratively , OSHA dismissal letter issued in 2014 didn't mention my right to appeal to ALJ in 2014—knowingly , having in email- OSHA wrote in dismissal letter issued September 2021- which Judge McGrath COPIED in order to show cause – that "**However, she elected not to proceed with a complaint, "**

**This statement from OSHA is FALSE (intentionally & knowingly lying) – and copied by ALJ McGrath- I didn't know my right to appeal as it was not mentioned.**

**DURING discovery, I want to depose Denise Keller , or get her written statement that she said this which is already in email to Rosa. This proves that Daniel Koh, Rosa, Frederick , Denise Keller, Nathan, William – all deserve ONLY JAILTIME>**
**10.1.        I request that Judge McGrath hold a conference call and have OSHA people on line to explain their letter –OSHA refuse to provide explanation…because this is not what happened..See below my email January 2022.**

**-- Email: Re: GE Healthcare/Trivedi**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

From:Terwilliger, Nathan - OSHA <Terwilliger.Nathan@dol.gov>
To:orangeinc@protonmail.com <orangeinc@protonmail.com>Trepanier, William - OSHA <Trepanier.William@dol.gov>
Date:Thursday, January 20th, 2022 at 2:45 PM

Dear Madhuri Trivedi,
 I and my Supervisor Denise Keller have spoken to you several times at length on this point and we believe the Secretary's Finding speaks for itself. Thank you,
 Nate Terwilliger
Regional Supervisory Investigator
Region V Whistleblower Protection Program
U.S. Department of Labor - OSHA
Phone: (872) 600-0171


**From:** Madhuri Trivedi <orangeinc@protonmail.com>
**Sent:** Thursday, January 20, 2022 9:41 AM
**To:** Terwilliger, Nathan - OSHA <Terwilliger.Nathan@dol.gov>; Trepanier, William - OSHA <Trepanier.William@dol.gov>
**Subject:** Fw: Re: GE Healthcare/Trivedi

Please explain what do you mean by the paragraph you wrote,,,

- she had elected not to file in 2014,
- However, Complainant elected not to proceed with a complaint, and acknowledged her understanding that as she had chosen not to proceed with any complaint, that OSHA would take no further action, and as a result Respondents would not be notified of the Complaint and no further investigation would be completed

Sent with ProtonMail Secure Email.

 ------- Original Message -------

On Thursday, January 20th, 2022 at 2:38 PM, Madhuri Trivedi <orangeinc@protonmail.com> wrote:

 what did you mean ?

  1.1.   On May 30, 2021, Complainant contacted OSHA and began to request that OSHA re-open the 2014 case that she had elected not to file in 2014, and under which Respondents had never been notified.
       How come elected not to file ? this is intentionally corrupt response///

      1.1.1.On May 3, 2014, Complainant began the process to file an untimely complaint with OSHA. However, Complainant elected not to proceed with

a complaint, and acknowledged her understanding that as she had chosen not to proceed with any complaint, that OSHA would take no further action, and as a result Respondents would not be notified of the Complaint and no further investigation would be completed. Complainant's records2 indicate that on or around July 14, 2014, she received an administrative closure letter from OSHA confirming this earlier conversation, noting the untimely nature of the complaint under Section 11 (c)3, and that OSHA would not take any action. Complainant was also instructed to contact OSHA at the provided number if she had questions regarding her rights under any of the statutes OSHA had been delegated, but Complainant does not now allege that she ever called.

Sent with ProtonMail Secure Email.

**-- End of Email: Re: GE Healthcare/Trivedi****************

# 11. As OSHA falsely wrote that 2014 complaint was file under 11 ( c) ;despite email sent to Koh, Rosa- another Evidence why Koh, Rosa, OSHA people to be arrested..My OSHA complaint was handled in 2014 and 2021 in totally fraudulent manner – even chief of staff is corrupt, so is Rosa director of whistleblower.

------- Original Message -------

**From:** Madhuri Trivedi [mailto:orangeinc@protonmail.com]
**Sent:** Thursday, September 02, 2021 12:12 AM
**To:** Koh; Daniel Arrigg - OSEC; Frederick; James S. - OSHA; Rosa; Anthony - OSHA; orangeinc@protonmail.com; keen.stanley@dol.gov; goldstein.Elena@dol.gov
**Subject:** Re: Fw: Madhuri Trivedi/General Electric Healthcare - OSHA Response

On Thursday, September 2nd, 2021 at 1:08 AM, Madhuri Trivedi <orangeinc@protonmail.com> wrote:

==I have original copy of fax  I sent in 2014 ( because it was e fax) - I was not filed under 11 (c) --==
but as I have stated that GE would have bribed Tamra SImpson in Milwaukee, - who was OSHA investigator --and Tamra and Kuss -- closed it..so if OSHA corruptly and in mistake closes it -
THEN now when I presented mountain of evidence -- OSHA to make my new complaint timely - instead of sending me to ALJ...this is not proper..

# EXHIBIT 8

Sent with ProtonMail Secure Email.

**12.** After that I filed victim of crime- for domestic violence visa related to my ex husband's abuse- which police certified after ten years when GE fired me.

**13.** When GE during January 2022- call told judge about timeliness and instantly without listening to any request ALJ McGrath issued show cause order for timeliness…but GE has received FDA FOIA since 2019( submitted as part of my district of Massachusetts lawsuit where  Thomasita and Cassandra are also attorneys for GE) – and GE didn't tell ALJ on call that she filed complaint with FDA under whistleblower. GE attorneys should be disbarred from practicing law. And I will forward t**his motion to New York and Massachusetts bar overseers, file complaint against these two GE attorneys**,  Thomasita and Cassandra; along with other GE attorneys who are representing GE. There is a conference call transcript of a call with Judge McGrath on January 2022 as a further proof against these GE attorneys.

**14.** Trivedi v. GE – First circuit Case: 21-1434 Document: 00117768929 Page: 1 Date Filed: 07/29/2021  - Trivedi opening Brief has detailed timeline starting at page 27 – I can file it here or you can access it from PACER>please let me know. Thanks

**15.** *Yang v. Navigators Grp., Inc.*, No. 16-77-cv, at *3-4 (2d Cir. Dec. 22, 2016) ("Yang's own testimony as to the communications at issue constituted admissible evidence and, thus, should not have been excluded from consideration in reviewing defendant's summary judgment motion. *See Danzer v. Norden Sys., Inc* ., 151 F.3d 50, 57 (2d Cir. 1998) (declining to hold allegations insufficient to survive summary judgment merely because they were "self-serving"); *accord Walsh v. N.Y.C Hous. Auth*., 828 F.3d 70, 80 (2d Cir. 2016). To the contrary, the testimony should have been viewed in the light most favorable to Yang , in which circumstances it sufficed to give rise to a genuine dispute of material fact as to protected activity that precluded summary judgment. ")

Here, Trivedi's filing with ALJ – Judge McGrath – Trivedi's testimony itself – provides sufficient ground to have further discovery – even in term of TIMELINESS… My complaint by ALJ must not be dismissed by issuing roder to show cause for timeliness ; when my tons of filing- gives my testimony about justifies why my complaint is timely..Further discovery and hearing is MUST>

**16.** DHS petition for B1 business visa that OSHA letter /Judge McGrath refers  - was to get time so that my Self petition for entrepreneur – EB1 , national interest waiver ; which needed lots of time to collect document and I had arbitration upcoming—so as a bridge in between…Not a long time strategy.

**17.** **My October 2013 submission to DHS – that OSHA and Judge McGrath refers (another evidence why to arrest OSHA & why**

# my complaint was timely under 18 U.S.C. § 1514A(b)(2(D);29 C.F.R. § 1980.103(d)



*Electronically Signed by the:*

*Applicant*

Full Name(First, Middle, Last):  *Madhuri J Trivedi*

eSignature Submission Date and Time:  *Oct 8, 2013 10:48:22 PM*

Browser Data:  *Mozilla/5.0 (Windows NT 6.1; WOW64) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/29.0.1547.76 Safari/537.36*

USCIS Electronic Immigration System Session Identifier:  *g6I97QbvLEcHJEPuy_FFwtD*



**U.S. Citizenship and Immigration Services**

| FORMS | NEWS | RESOURCES | LAWS | OUTREACH | ABOUT US |

**Application to Extend/Change Nonimmigrant Status**

## Submission Confirmation

This is confirmation that USCIS has received your benefit request(s) on Tue Oct 08 22:51:51 CDT 2013.

You may receive notices from USCIS requiring additional information. You may print this confirmation for your own records.

**Applicant: Madhuri Janardanbhai Trivedi**

| Receipt Number | Benefit Request Type | Benefit Snapshot |
|---|---|---|
| IOE3554303990 | Application to Extend/Change Nonimmigrant Status | View Snapshot |

75 Lower Welden Street
St. Albans VT 05479

**U.S. Citizenship and Immigration Services**

October 8, 2013

Account ID: 158986453836
Receipt ID: IOE3554303990
Receipt Date: 10/8/2013
Priority Date: 10/8/2013

Madhuri Janardanbhai Trivedi

**October 8, 2013**

**Dear Immigration Officer,**

I am in US for 10 plus years. I got married and came to US on H4B in June 2003. My ex-husband was violent-abusive and had health issues. I got divorced in April 2006. After divorce; I went on F1 student Visa and got my masters from Cleveland state university. I worked for a year on OPT from 2006 to 2007. And then I am working on H1 B since 2007.

I lost my job at GE Healthcare recently. Despite doing a good job and being a good contributor. For time I was there; I delivered lots of value to the company. My architecture and design work helped company to save money and generate revenues. Earlier customers were struggling; ONLY because of me they have a product working …hundreds of customers have used my solution for connectivity to medical devices. There were security(product can be hacked), bad architecture and design issues in production. Product was aging and falling apart with almost disaster level situation as 60000 medical devices communicate to this product/system. There were 2000-600 Defects in connectivity platform in production and some were unresolved for almost ten years. When I brought this up, this matter got attention. And manager and leads didn't like the fact that they were doing such bad work and made up relationship issues against me.

Also I was subjected to a hostile and unprofessional work environment, from managers to colleagues, including but not limited to: One colleague who regularly surfed the internet for guns and gun-related information and who at the time of the savage murder of innocent people at the Sikh Temple in Milwaukee, pretended to shoot me(an Indian national) by shaping his hand and fingers into the shape of a gun.

Despite my excellent technical performance and I was a team player; Manager thought I had some relationship issues.

GE Healthcare filled my PERM in December 2012. I got my PERM approved on May 28, 2013. ETA Form 9089. ETA Case Number: T-12333-17601.

I have to through as part of "Alternate Dispute Resolution Policy" that GEHC has and I have signed agreement to use their policy to resolve dispute. Mediation is scheduled on Oct. 22, 2013. GEHC have stalled and delayed scheduling mediation for almost 60 days from the day I asked for on August 23, 2013 to schedule it as soon as possible. There was a step to complete before mediation too. (I had a conference call with GEHC representative on October 4th 2013 and I have tried a lot so that matter can get resolved even before mediation.) Mediator (Mr. Howard Myers) has also tried to tell company to schedule mediation soon and he understands and supports my difficult situation.

I need to extend my I 94/ stay to resolve this employment dispute. Hence I want to change/extend my status to B1 visitor visa. I have asked to GE Healthcare as a remedy; reinstatement for short term, GEHC to file next steps in green card which is I 140 filling (I can get H1 extension after I-140 is filled/approved) , filling of I-129 and then I-485. Six month after that I have mentioned that I will leave GEHC. Hence it is short term reinstatement to get my immigration sorted out and I can work for other employer in US.

I was giving job interviews and had potential offer ; but new employer can't hire me as I can't extend my H1(I am in 6th year of H1 and I still have 41 days of recapture time left. ) I have attached emails regarding job interviews /communication/potential offer from companies :Hewlett-Packard (HP), Philips Healthcare, Boeing, Life Technologies, Amazon, Expedia and a startup.

I am educated, hard working person and I have been through lots of hardship. I have contributed, I want to contribute and I will contribute. I want to do something and US is a place to be for entrepreneurship; new ideas, opportunities. Also, US is a better place/country for women to live and flourish. I have worked for a company (United Technologies) who makes jet engines and helicopter. I worked for their Security division. Then I worked for a small 30 people (Raindance Technologies in Lexington, MA) start up funded by Nobel laureates who were related to DNA research work. Our team worked on genome sequencing and the sister company have changed the way genome sequencing is done in personalized medicine field. Now genome sequencing takes $1000 instead of millions of dollars and people can go to a doctor and have their genome sequenced to find personalized medicine that works ONLY for them. I worked for state of Indiana in between for short time before joining GEHC.

Please assist me in this matter. Thanks in advance for your consideration and time.

Sincerely, Madhuri Trivedi,

1405 Rockridge Road, Apt 351,

Waukesha, WI -53188

Cell phone: 8602996234

I have attached documents:

☐ I 94 front and back page

☐ Current passport pages

☐ H1B stamp on passport and old passport identity page

☐ I 797 from GEHC and prior I797 , F1 and H4 documents

☐ Entry –exit chart to recapture H1 B time left

☐ PERM ETA Form 9089 page 5 and page 6

☐ Masters(MS) Cleveland State University Certificate & undergrad certificate



Nov. 19, 2013

**Dear Immigration Officer,**

My employment matter with GEHC has been in arbitration stage. I submitted Arbitration request on Nov. 9th 2013 -it is done through American Arbitration Association(AAA). AAA indicted that average length for case is 4.5 months. I have requested to all that we do arbitration as soon as possible. Attorneys have worked on preparing arbitration statement along with me. Due to financial constraints; I am representing myself in arbitration. I will have attorney provide legal input in this matter as needed.

.

**My PERM under EB2 category was approved on May 28, 2013. Given I am in employment matter resolution, I request to USCIS to extend the deadline(expiry date) for filling I 140 after PERM is approved.**

**Given the Plight I am in; is there a way to extend H1B through other employer and/or let them file I 140. Or other work visa. USCIS controls all such matter and if possible; So I thought to ask/request.**

I am also exploring option of National interest waiver and looking into filling I 140 under NIV.

My job interviews are on hold as I need to resolve this employment matter.

Thank you for your time and please assist me.

Sincerely, Madhuri Trivedi

      Cell: 860 299 6234

SOLUTIONS Resolution Procedure -**Level IV --- Arbitration Submission Form**

Nov. 9, 2013

**Madhuri Trivedi**              **SSO ID Number: 212070205**          **Phone: (484) 362-9716          Fax: 7087784859**

Covered Claims to be Submitted to Arbitration:

The Claimant was employed by the Employer as a software engineer for Global services group Global Services Technology (GST).

The covered claims submitted to Level IV for arbitration includes (1) Covered claims submitted at Level3 – mediation and (2) information mentioned below:

- That Claimant was discriminated against based on her national origin, finally resulting in her discharge by the Employer.
- That Claimant was discriminated against based on her Sex, finally resulting in her discharge by the Employer.
- That Claimant brought to the Employer attention about intimidating, hostile and offensive work environment and interference to work performance and that the Employer took insufficient action to correct and employer retaliated because Claimant brought to the Employer attention such work environment and treatment.
- That Claimant brought to the Employer attention about said discriminatory disparate treatment including but not limited to working conditions and that the Employer took insufficient action to correct the discriminatory conditions.
- That the Employer retaliated against the Claimant because Claimant brought to the Employer attention said discriminatory disparate treatment including but not limited to working conditions.
- Claimant was meeting her employer's legitimate business expectations, she suffered an adverse employment action, and employer treated claimant unfavorably.
- That the above described conduct is in violation of state and federal anti-discrimination laws.

Please find attached mediation statement (Level 3), dated August 23, 2013.   (Attached hereto and incorporated by reference herein.)

**NOTE: I have used in this document interchangeably (1) Ms. Trivedi, (2) I, (3) me; which mean the same.**

Ms. Trivedi's background: I studied here to get my master's degree. I have contributed, I want to contribute and I will contribute. I want to do something and US is a place for new ideas, opportunities; also for women to live and flourish. I am in US for 11 years.  I have worked for a company who makes jet engines, helicopter; I worked for their Security division. Then I worked on DNA for a startup company; our team worked on genome sequencing and the sister company have changed the way genome sequencing is done in personalized medicine field where people can get their genome sequenced for $1000 and doctor can work on a personalized medicine that works for ONLY for them. I worked for State of Indiana in between before joining GEHC.

**Following are additional points at arbitration:**

1)   Ms. Trivedi along with Mathews Matson (Principal Engineer) pointed out the missing audit trail /proper logging issue in new connectivity product design via email. Ms. Trivedi was retaliated against for pointing out contravention of code/law. HIPPA/HITECH law puts emphasis on **audit trail/logging requirements**.

❖ **HIPPA 164.312(b) Technical safeguards – Standard: Audit controls**
>     Audit controls refer to the capability to record and examine system activity.

❖ Security management process

>     **HIPPA 164.308(a)(1)(ii) Information System Activity Review –Required.**
>     **I have attached email document regarding this communication in my Level 4 submission.**

2) There were security (product can be hacked), bad architecture and design issues **in production**. It is as mentioned here under HIPPA **(HIPPA 164.308(a)(1) Security management process ).**
**I have attached documents "Security production" as part of my Level4 submission.**
Product **Insite2** was aging and dying with almost disaster level situation (60000 medical devices communicate to this product/system. ) There were 2000-600 Defects in connectivity platform in production and some were unresolved for almost ten years. When it occurred that "why we are still shipping defective Insite2 product" ; David Mehring mentioned during a group meeting that "Connectivity is better than Insite2 product" (means at least medical device will have connectivity).
>     Customers have complained several times as **Insite2 product** was not working and unavailable for more than 23 times in a year.

3) While Ms. Trivedi was working on a project "**integration of Insite2 on surgery platform" ;** Ms. Trivedi found and investigated issues of product being vulnerable for security attacks/hacking. David Mehring and Leads claimed that these issues were not her concern.  Ms. Trivedi pointed out, and their response was to penalize her for speaking up and not quietly falling in line and pretending that the problem did not exist. Managers and leads did not care to provide enough time in project schedule. HIPPA mentions to address as stated below.

**HIPPA 164.306 Security standards: General rules.**
**§164.308(a)(1): Security Management Process**
- Implement security measures sufficient to reduce risks and vulnerabilities to a reasonable and appropriate level to comply with § 164.306(a).

Also, there were several missing components/network connectivity failure issues and I repeatedly mentioned these to manager/leads. They neglected what I was communicating. Later as Ms. Trivedi's findings were right to the point; it stopped the product integration. Despite doing such good work; manager Dave Mehring and leads shifted blame on to Ms.Trivedi( **Ms. Trivedi's inclusiveness )** and retaliated**.** Leads were not held accountable for their negligence.

4) Bill Barbiux (principle engineer for GEHC 25 years) in a meeting in 2013 with 20 people( management and engineers) said that "our resources are not trained in SECURITY, when we launched Insite2 product; we had to move it from public facing website to internal website because it failed security tests." So even though those seniors/people are not security trained/created such product they are treated more favorably. And despite having security skills, knowledge and contribution Ms. Trivedi was treated unfavorably. HIPPA requires security awareness as stated below.
>     **HIPPA Security Awareness  and Training § 164.308(a)(5)** Implement a security awareness and training program for all members of its workforce (including management).

5) Repeatedly refusing to permit Ms. Trivedi to fix significant problems in the platform she was working on.

6) Greg Stratton's performance was not good then and his job was at stake. As mentioned in mediation statement Greg and others were working on **RSVP project** with **GE Intelligent platforms(GEIP)** to replace Insite2 product). Right people with right skills were not put in the project at right time. **Project failed in regards to GEHC and they were not able to deliver anything after almost two years**. Ms.

Trivedi was on that project **for last 3.5 months only** when things were already at the verge of breaking point and damage was already done immensely in terms of not having proper requirements, design, architecture and security that meets GEHC criteria. **There were tons of already existing issues the day Ms. Trivedi joined RSVP project regarding team dynamics** and **operating mechanism. Leads/managers of GEHC** and **GEIP had all kinds of fights/disagreements on daily basis. Despite all these at the last stage when Ms. Trivedi was put on this project; she tried to save/salvage project by doing automated testing, proposing/fixing bad requirements, architecture, design and security issues which were not addressed properly.** Manager/leads and people in ranks' authority were challenged and their short comings/failure were exposed.

**For example; there was no automatic logout in this RSVP product design done by leads/manager.** Ms. Trivedi brought this up while doing testing. GEIP manager Joe Purcell happily accepted and thanked Ms. Trivedi. While Greg Stratton, Nate Davis and managers David Mehring did not like the fact that despite working in healthcare field; they did not address it and include **Automatic logoff as requirement** in new product(even though it was their responsibility and accountability); while Ms. Trivedi a female engineer who just joined was bringing out contravention of code to their attention. HIPPA information as below.

❖ **HIPPA TECHNICAL SAFEGUARDS 164.312(a)(2)(iii) Standard: Access control – Automatic logoff**

(iii) **Automatic logoff** (Addressable).  Implement electronic procedures that terminate an electronic session after a predetermined time of inactivity.

**Despite Ms. Trivedi's such contribution to have team/project succeed** (Ms. Trivedi had expertise in this area and have worked extensively on that technology prior to joining GEHC); managers, leads diverted their failure onto Ms. Trivedi **, disparate treatment and gender bias** against **Ms.Trivedi ;being a minority female engineer** with immigration status.  Similarly situated employees who are not in Ms. Trivedi's protected group were treated more favorably or did not receive the same adverse treatment. While Ms. Trivedi was perceived and measured as a **person who needs to work on her relationship**.(while manager/leads failed to deliver on RSVP project were Ms. Trivedi was not at all responsible in any way)

7) Also Greg threatened my safety by all gun related behavior (as mentioned in details in Level 3 statement) when his job was at stake. Management paid no attention when reported such hostile work condition. Managers retaliated by giving negative rating in my performance appraisal for reporting this.

Later She was forced to sit in proximity to Greg Stratton (this was a requirement in PIP) despite repeatedly mentioning her concern of overall safety and wellbeing (please refer mediation statement for details). Ms.Trivedi was forced to work in a hostile, unprofessional work environment.

8) Tech leads/seniors were skipping quality steps, testing needed. Also doing improper design for product. **And they were repeating the same faulty design** in new product development (**faulty design which partially led to product falling apart**, number of customer complaints and customers' loss of productivity and inability to use product features)". Even Bill Barbeux, Ofir Dahan and Mike Walls

publicly criticized this bad design and did not want to have that repeated in new product. I tried to point out to those leads Greg Stratton, Nate Davis and Yasin Damji and managers early on not to repeat this faulty design and use right design approach in new product when I was involved. Despite those similarly situated employees who are not in Ms. Trivedi's protected group were doing such poor job were treated more favorably or did not receive the same adverse treatment. (Madhuri needs to work on her relationship despite doing good work for company and going above and beyond for project success).

9)  While I was present; Customer (a General Manager) came running in May 2013 looking for Dave Mehring and spoke with Jim Kohli(Principal Engineer) that Dave is releasing bad product; because soon after release product was having significant problems. Later Jim Kohli mentioned that in a meeting were managers, leads were present. Ms. Trivedi was not at all involved in this product work. But it shows a trend where manager/poeple who are not held accountable for releasing bad product.
While Ms. Trivedi brought unique skills and insights at work and contribute; she received mistreatment in work environment.

10) Being new to company I did contributed and delivered values. There is a Trend of shifting/putting blame inappropriately for things I am not responsible or I have no control over it, discrimination (being a female engineer and nationality) and retaliation for bring out those security/quality issues; while they were showing disregard to address/fix and prevent these very important issues from happening. It was a job needs to be taken seriously. This is a SERIOUS problem and I was trying to take care and was doing best job. My performance was geared for making sure that these kinds of quality/security issues does not happen to medical devices.  At GEHC, I put this at first and foremost in my daily job and duties. When I pointed out deficiency on systems; manager/leads got upset and treated me discriminatory. Other employees who were doing this kind of work were not held accountable. They were not making waves. I was retaliated for coming out/coming forward. Manager differentiated between them and Ms. Trivedi in treatment when it came from a minority woman who is a hard working engineer. Ms. Trivedi was put on a PIP to **improve relationship** There are several factual evidences including but not limited to that Ms. Trivedi was working with dedication to quality, technical rigor, Inclusiveness and clear thinking.

11) When I requested a meeting with Dave Elario; he did not come. I sent information to him regarding what was happening via email. After sometime to find a solution; in early February I requested Dave Elario's boss Mike Swinford to meet and help. Mike sent Dave Elario to meet with me. Dave Elario got very upset at me as I went to his boss and told me that even if his boss Mike wants to transfer me to another group/manager, Dave E. won't let that happen and he will advise Mike against that and against supporting me. Also Dave Elario threatened that he will take me out of job. (Ms.Trivedi thought there would be an open door policy.) After a week of this they put me on a PIP.

**12)** In year 2013 only there were **four Class 1 recalls** for GEHC products by FDA including one were entire product line was recalled due to patient death in June 2013.  Ms.Trivedi's point was dedication to quality and technical rigor: Make no mistake. Seniors/some in management pointed that GEHC is big. And company does make mistakes...company survives, manager survives and Ms.Trivedi could survive; If Ms.Trivedi wouldn't have spoken up.  But it affects people's safety, security and Ms. Trivedi's integrity.

13) Recently; FDA/department of homeland security and hospitals have raised serious concerns about cyber security of medical devices and possibility of attacks. And resistance by device manufacturers to

boost security. Including several issues with GEHC devices related to security. Ms. Trivedi was proactively and diligently doing her job in this regards.   Below links are references for details.

    I.   https://rusecure.rutgers.edu/content/department-homeland-security-issues-warning-medical-device-threats

   II.   http://www.forbes.com/sites/larryhusten/2013/06/18/fda-raises-concerns-about-the-cybersecurity-of-medical-devices/

   III.   http://www.ihealthbeat.org/articles/2013/8/7/hospitals-say-device-manufacturers-resist-boosting-cybersecurity

   IV.   http://online.wsj.com/news/articles/SB10001424127887324188604578543162744943762

14) The company induced Ms. Trivedi; and that GEHC would make good faith efforts to pursue permanent residency for her, only to fall far short on this promise. What is particularly frustrating is the fact that GEHC did get past the most difficult part of the green card process—the US Department of Labor did certify a Labor Certification Application for her ( Immigration has approved Ms. Trivedi's petition as a person with exceptional ability/advanced degree individual).  Federal Court cases have clearly faulted employers for this kind of inducement and failure to use good faith in following up with the green card process. Also, the company **neglected to file the PERM labor certification on timely manner (despite Ms. Trivedi requesting), which has resulted in that she could not work for other employer in US**. Ms. Trivedi had emailed both ;Manager Dave Mehring and lead Nate Davis mentioning this even before joining GEHC .So, they are not letting Ms. Trivedi go on with her own life. Knowing these matters from beginning.

15) Despite we requested several times; Mediation was unnecessarily delayed/stalled for two months (if it would have done through AAA we can request within 7 day or some reasonable time frame). These delays have cost me valuable time, money and could jeopardize my green card/work authorization process as there is a process for filing next step.

16) Request to address arbitration as soon as possible given the PLIGHT I am in   and immigration paperwork filing related work.  Don't fail your daughters. They can look at Ms.Trivedi as if like she would a daughter of their own.

17) We engaged in an unsuccessful mediation which was held on October 22nd 2013.


**REMEDY:** Reinstatement (even if getting reinstated short term if company wants that way; then **Ms. Trivedi can work for other employer in US**.); GEHC immediately resumes the immigration process by filing the Form I-140 with USCIS with premium processing,

after I-140 is approved and until at least six months pass then filling I -485; Also back pay (including benefits whole sum) since the termination.

Ms. Trivedi is willing for a transfer within global services in another group.

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*END of DHS filings in 2013**

Respectfully Submitted,

Madhuri Trivedi

/s/Madhuri Trivedi

Phone: (650) 242-5135

Email: orangeinc@protonmail.com

Linkedin:- linkedin.com/in/trivedim

Twitter:- @madhuritrivd

# EXHIBIT 1 EMAIL 1 Portion of email

From:orangeinc@protonmail.com <orangeinc@protonmail.com>
To:Frederick, James S. - OSHA <Frederick.James.S@dol.gov>CC:Koh, Daniel Arrigg - OSEC
<Koh.Daniel@dol.gov>
Date:Wednesday, August 11th, 2021 at 4:10 PM

Mr. Frederick, If possible assign it to someone who has an open mind..and also my past email about "not able to appeal to ALJ" has been misconstrued..I don't want to go to ALJ--he was just saying that in absese of corruption at the time my original complaint was filed--I would have had right to go to ALJ--not now..Now I want OSHA to investigate..Ms. Horne's osha complaint in 2019-2020 is also about Cybersecurities violations withing GE--and OSha has an open investigation..

From:orangeinc@protonmail.com <orangeinc@protonmail.com>
To:Rosa, Anthony - OSHA <Rosa.Anthony@DOL.GOV>
Date:Wednesday, August 11th, 2021 at 4:12 PM
See Sylvester v. Parexel Int'l, Inc., ARB No. 07–123, 2011 WL 2165854,at *9-10 (ARB May 25, 2011) (holding that whistleblower complaints filed with OSHA under analogous provisions in the Sarbanes-Oxley Act need not conform to federal court pleading standards). Rather, the complaint filed with OSHA under this section simply alerts OSHA to the existence of the alleged retaliation and the complainant's desire that OSHA investigate the complaint.

and also my past email about "not able to appeal to ALJ" has been misconstrued..I don't want to go to ALJ--he was just saying that in absese of corruption at the time my original complaint was filed--I would have had right to go to ALJ--not now..Now I want OSHA to investigate..Ms. Horne's osha complaint in 2019-2020 is also about Cybersecurities violations withing GE--and OSha has an open investigation..

# EXHIBIT 2 EMAIL 2

# Re: questions on whistleblower case - Madhuri Trivedi

From:orangeinc@protonmail.com <orangeinc@protonmail.com>
To:Frederick, James S. - OSHA <Frederick.James.S@dol.gov>CC:Koh, Daniel Arrigg - OSEC
<Koh.Daniel@dol.gov>
Date:Thursday, August 5th, 2021 at 4:10 AM
When I spoke with OSHA supervisor in June 2021- she told me that your complaint was closed
administratively- so the letter OSHA sent to me- didn't mention my right to appeal to
ALJ..otherwise-the letter says that i can go to ALJ..
And I had sent detailed documents to OSHA when I filed it first time..
Sent with ProtonMail Secure Email.


From:orangeinc@protonmail.com <orangeinc@protonmail.com>
To:Frederick, James S. - OSHA <Frederick.James.S@dol.gov>CC:Koh, Daniel Arrigg - OSEC
<Koh.Daniel@dol.gov>
Date:Thursday, August 5th, 2021 at 3:53 AM
------ Original Message -------
On Thursday, August 5th, 2021 at 3:53 AM, Madhuri Trivedi <orangeinc@protonmail.com>
wrote:

Mr. Frederick, I hope you finished review and gathered information now--there is not much to
gather I think because it was closed immediately without doing anything.. MInd
Boggling..totally corrupt..
**If OSHA investigator would not have in failure, closed my case administratively--then I
would have had an option to appeal to ALJ...anyway--**
When I talked with Midwest Osha people- this year--(as I mentioned in email below)--Denise -
from OSHA was defending OSHA investigator that people leave OSHA for better prospects and
salary etc.

Sent with ProtonMail Secure Email.

------- Original Message -------
On Thursday, July 15th, 2021 at 3:53 PM, Madhuri Trivedi <orangeinc@protonmail.com>
wrote:

Thanks. It was clear cut failure of OSHA investigator and her supervisor..both are no longer with
OSHA.
As you would already know from your emails to Daniel Koh, that last month I contacted
Midwest OSHA - I had sent fax to OSHA when I filed complaint in past- and I sent that entire
fax copy last month to OSHA ---
After looking at that -OSHA investigator said to me on phone- dated June 2021- that -
technically he can consider my original OSHA complaint filed some time back- timely- because
I had already in writing sent my issues, wrongdoing and retaliation to Food and Drug
administration.  But Nate said that "given that GE is a BIG COMPANY--he is afraid that if he
brings my case, NOW , to administrative law judge at OSHA, he might loose his job...

If you don't have those email chain- I can email it to you- please let me know..

Even the first OSHA investigator Tamara- I cried on phone with her, told her my situation and DHS filing and all..Then she said that she has friends and family in Milwaukee area, some even have connection with GE etc etc ( I was in Waukesha, WI -worked at GE there and I had Milwaukee investigator Tamara)--and she was using threatening language because of me being an immigration. I wish I would have recorded Tamra's phone call; because then I could prove that this is what did..she had no incentive to do her job---

Note- My filing with DHS was timely as per OSHA whistleblower manual- filing in a different forum/agency in writing about retaliation/wrongdoing ...

## **Certificate of Service**

This document has been served to

(1) Respondents' attorney cassandra.beckmanwiday@dentons.com via email.

(2) OALJ ALJ TIMOTHY J. McGRATH, Boston via email to: OALJ-Boston@dol.gov ,

(3) Boston Regional Solicitor via email to Fisher. Maia@dol.gov

(4) Chief Judge HENLEY, STEPHEN via OALJ-Filings OALJ-Filings@dol.gov

(5) OIG Larry Turner via Email

Respectfully Submitted,

Madhuri Trivedi

/s/Madhuri Trivedi

**DEPARTMENT OF HEALTH & HUMAN SERVICES**

Food and Drug Administration
10903 New Hampshire Avenue
Building 66, Room 2621
Silver Spring, MD 20993

June 4, 2014

Document Number:    CPT1400185

Mcis99@gmail.com

Dear Concerned Party:

This is in response to your correspondence, dated December 13, 2013, in which you allege that GE Healthcare is shipping aging and defective  InsiteExc products.

Thank you for providing this information to the Food and Drug Administration (FDA). Information from regulated industry is often very helpful to us in identifying problems with marketed products and possible violations of the laws that we enforce.  We take such reports seriously, and we will evaluate this matter to determine what follow-up action is appropriate. The type and extent of any follow-up is dependent upon the nature of the problem, the possible impact on the public health, and the availability of our resources.

While FDA does not provide information on ongoing investigations, information can be obtained pursuant to a Freedom of Information Act (FOIA) request, once an investigation is closed.  Requests for this information can be submitted via the agency online FOIA submission address at http://www.accessdata.fda.gov/scripts/foi/FOIRequest/index.cfm
or in writing to the following address:

Food and Drug Administration
Freedom of Information Staff
ELEM 1029
12420 Parklawn Drive
Rockville, Maryland 20857

If you have any questions regarding this letter, please contact me at 301-796-6117 and reference the above document number.

Sincerely yours,

Donna Engleman, BSN., MS.
Chief, Allegation of Regulatory Misconduct Branch
Center for Devices and
Radiological Health



**CTS**
Center Tracking System

Support  Help  Log Out  FDA

⊟ **Ted Gean**
  ▢ Requires Recommendation
  ▢ Requires Consult
  ⊞ Reports

**Find Document:**
🔍

**Find Product Code:**
🔍

Summary

Document #: CPT1400185          Date Created: 02/27/2014
                                Date Due: 04/22/2014
Workflow State: Closed          Date Completed: 02/28/2014

Product Codes:

Type: OC Complaint
Name: OIR-GE Healthcare-Insite ExC-medical device connectivity tool
Description: Complainant, who works for GE Healthcare, alleges major problems with InsiteExc product, which is an aging product and 'dying with almost disaster level situation.' He alleges that after questioning why they were still shipping defective InsiteExc products, the manager replied that 'Connectivity is better than Insite Exc product' meaning at least medical device will have connectivity. States that customers complain InsiteExc product was not working and unavailable for more than 23 times in a year. Possible referral to OIR.
Source/Informant/Whistleblower

Originator: Golden, Trevor
Originator Home: CDRH\OC\DAPO\ARMB
CMS #: None

AIMS Correspondence Number:

Recommendation

Date Received: 02/21/2014
Date Due: 04/22/2014
Lead Office: CDRH\OC\DAPO\ARMB
Lead Reviewer: Mccullough, Charles
Recommendation: RAC - Referred to Another Center [Closed]

Branch Concur: 02/28/2014
Division Concur: 02/28/2014
Office Concur: 02/28/2014
Coordinator Concur:

OE Recommendation

OE Concur Date: 02/28/2014

OGC Recommendation

OGC Concur Date: 02/28/2014

Final Recommendation

Final Recommendation:
Final Branch Concur:
Final Division Concur:
Final Office Concur:

Risk Control Review

Is an RCR assessment needed?    No

**From:** Woods, James L.
**To:** Myers, Charles F; Ochs, Robert
**Cc:** Boyd, Sean M; Weixel, Patrick B; Pastel, Mary; Morris, Janine M.; Gutierrez, Alberto
**Subject:** RE: information about GE Healthcare
**Date:** Tuesday, December 17, 2013 3:05:08 PM

**(b) (5)**

███████████████████████████████████████████████

**From:** Myers, Charles F
**Sent:** Tuesday, December 17, 2013 2:53 PM
**To:** Woods, James L.; Ochs, Robert
**Cc:** Boyd, Sean M; Weixel, Patrick B; Pastel, Mary; Morris, Janine M.; Gutierrez, Alberto
**Subject:** RE: information about GE Healthcare

Hi James,

I will speak with Robert and we can set something up with Madhuri Trivedi.

Charles

Charles F. Myers
FDA/CDRH/OIR/DRH
Phone: 301-796-5619
E-mail: Charles.Myers@fda.hhs.gov

**From:** Woods, James L.
**Sent:** Tuesday, December 17, 2013 2:47 PM
**To:** Myers, Charles F; Ochs, Robert
**Cc:** Boyd, Sean M; Weixel, Patrick B; Pastel, Mary; Morris, Janine M.; Gutierrez, Alberto
**Subject:** RE: information about GE Healthcare

Hello Charles and Robert: I am troubled by some of the statements made by this person such " There were issues with product quality itself" , " 60000 medical devices communicate to this product/ system" . Would it be possible if you guys could call this person and get to what he or she is saying ? thanks

**From:** Myers, Charles F
**Sent:** Tuesday, December 17, 2013 2:20 PM
**To:** Ochs, Robert; Woods, James L.
**Cc:** Boyd, Sean M; Weixel, Patrick B; Pastel, Mary; Morris, Janine M.
**Subject:** RE: information about GE Healthcare

Robert,

Thanks for your valuable insight!

Charlie

Charles F. Myers

FDA/CDRH/OIR/DRH
Phone: 301-796-5619
E-mail: Charles.Myers@fda.hhs.gov

**From:** Ochs, Robert
**Sent:** Tuesday, December 17, 2013 2:17 PM
**To:** Myers, Charles F; Woods, James L.
**Cc:** Boyd, Sean M; Weixel, Patrick B; Pastel, Mary; Morris, Janine M.
**Subject:** RE: information about GE Healthcare

Hi,



Thanks,
Robert

**From:** Myers, Charles F
**Sent:** Tuesday, December 17, 2013 12:56 PM
**To:** Woods, James L.; Pastel, Mary; Morris, Janine M.
**Cc:** Boyd, Sean M; Weixel, Patrick B; Ochs, Robert
**Subject:** RE: information about GE Healthcare

James,

(b) (5)



Charles

Charles F. Myers
FDA/CDRH/OIR/DRH
Phone: 301-796-5619
E-mail: Charles.Myers@fda.hhs.gov

**From:** Woods, James L.
**Sent:** Tuesday, December 17, 2013 12:44 PM
**To:** Pastel, Mary; Morris, Janine M.
**Cc:** Boyd, Sean M; Weixel, Patrick B; Myers, Charles F
**Subject:** RE: information about GE Healthcare

I feel as though I am becoming a pest about this issue. Please excuse me. Has a decision been made? thanks

**From:** Woods, James L.
**Sent:** Saturday, December 14, 2013 10:45 PM
**To:** Pastel, Mary; Morris, Janine M.
**Subject:** Fw: information about GE Healthcare

Hello Mary and Janine: Is this your product? Thanks

**From:** Woods, James L.
**Sent:** Friday, December 13, 2013 11:45 AM
**To:** Weixel, Patrick B; Myers, Charles F
**Subject:** FW: information about GE Healthcare

Hello Pat and Charles: Is this a RAD product? thanks

**From:** Madhuri [mailto:mcis99@gmail.com]
**Sent:** Thursday, December 12, 2013 11:49 PM
**To:** Woods, James L.
**Subject:** Fwd: information about GE Healthcare

Respected James Woods,

I found your information on FDA website.

I wanted to share info about working at GEHC.

I am a lead engineer by profession. Background in electronics & communications engg, India.  I have masters degree in computer science from Cleveland state and post graduate management-economics from India & system design from MIT(I haven't completed MIT course). I have extensive work experience for designing and developing products and services for over 8 years now. I have worked on Genome sequencing InVitro as well.

My point was::   Fixing defects are very early stage, doing proper design at the beginning/early stage is better, because doing the same LATER ON..cost, time, efforts increase exponentially higher and puts lots of consequences and ripple effects on the team, company, customers and stake holders.

Regards and thanks in advance for your time.
Madhuri Trivedi.

 Ph: 4843629716----------------------------------------------------------------

There were issues with product quality itself. Product **Insite Exc** was aging and dying with almost disaster level situation (60000 medical devices communicate to this product/system. ) There were 2000-600 Defects in connectivity platform in production and some were unresolved for almost ten years. I found out security issues /HIPPA issues.

 **Insite Exc(Insite Express Connect)** product does not have a proper logging/audit trail/reporting available in production environment. I confirmed it with Mike Walls.

 HIPPA/HITECH law puts emphasis on **audit trail/logging requirements**.

 **HIPPA  164.312(b) Technical safeguards – Standard: Audit controls** Audit controls refer to the capability to record and examine system activity.

And it's replacement project RSVP with GE intelligent platforms; failed after two years.The previous connectivity model Insite Exc have performance and maintainability , quality, security issues. This new connectivity model for the connectivity platforms **by retaining the existing agents at device side while upgrading the back office infrastructure.**

When it occurred that "why we are still shipping defective InsiteExc product" ; David Mehring manager replied during a group meeting that "Connectivity is better than InsiteExc product" (means at least medical device will have connectivity).

        Customers have complained several times as **InsiteExc product**  was  not  working and unavailable for more than 23 times in a year.

FDA FOIA cover letter



**DEPARTMENT OF HEALTH & HUMAN SERVICES**    Public Health Service

Food and Drug Administration
10903 New Hampshire Ave
Silver Spring, MD  20993

August 9, 2016
FOIA request #: 2015-4971

Ms. Trivedi Madhuri


Dear Ms. Madhuri:

This letter is in response to your Freedom of Information Act (FOIA) request (copy attached) dated June 19, 2015, and received by the Food and Drug Administration (FDA) on June 19, 2015. Your request asked for information for InsiteExc products that GE Healthcare was shipping aging and defective products.

The Center for Devices and Radiological Health (CDRH) conducted a reasonable search of:

Image 2000+ and CTS

After a reasonable search, we located fifty six (56) pages of records responsive to your request. Certain materials have been deleted from the records furnished to you because a preliminary review of the records indicated the deleted information is not required to be publicly disclosed.

Portions of the records were withheld pursuant to exemption 5 of the FOIA. (5 U.S.C. § 552 (b)(5)).

Exemption 5: Protects inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency.  The three most frequently invoked privileges are the deliberative process privilege, attorney-client privilege, and the attorney work-product doctrine.  Here, we invoke the deliberative process privilege.

You have the right to appeal this determination.   By filing an appeal, you preserve your rights under FOIA and give the agency a chance to review and reconsider your request and the agency's decision.

Your appeal must be mailed within 90 days from the date of this response, to:

>Ms. Catherine Teti
>Deputy Agency Chief FOIA Officer
>U.S. Department of Health and Human Services
>Office of the Assistant Secretary for Public Affairs
>Room 729H
>200 Independence Avenue, S.W.
>Washington, DC 20201

Please clearly mark both the envelope and your letter "Freedom of Information Act Appeal." If you would like to discuss our response <u>before</u> filing an appeal to attempt to resolve your dispute without going through the appeals process, please contact the Government Information Specialist who processed this request at (301)796-9554 or by email at (Ted Gean ted.gean@fda.hhs.gov). You may also contact the HHS FOIA Public Liaison for assistance at:

>Michael Bell
>HHS FOIA Public Liaison
>U.S. Department of Health and Human Services
>Office of the Assistant Secretary for Public Affairs
>Room 729H
>200 Independence Avenue, S.W.
>Washington, DC 20201
>Telephone:  (202) 260-0793
>E-mail: HHS_FOIA_Public_Liaison@hhs.gov

If you are unable to resolve your FOIA dispute through our FOIA Public Liaison, the Office of Government Information Services (OGIS), the Federal FOIA Ombudsman's office, offers mediation services to help resolve disputes between FOIA requesters and Federal agencies. The contact information for OGIS is:

>Office of Government Information Services
>National Archives and Records Administration
>8601 Adelphi Road–OGIS
>College Park, MD 20740-6001
>Telephone:  202-741-5770
>Toll-Free: 1-877-684-6448
>E-mail: ogis@nara.gov
>Fax: 202-741-5769

<u>X</u>    The following charges will be included in a monthly invoice:

**Reproduction: $0.00 Search:$23.00  Review: $23.00 Other: $1.00 Total: $ 47.00**

Sincerely,

Latroy D.
Tinch -S

Digitally signed by Latroy D. Tinch -S
DN: c=US, o=U.S. Government,
ou=HHS, ou=FDA, ou=People,
0.9.2342.19200300.100.1.1=130011196
7, cn=Latroy D. Tinch -S
Date: 2016.08.09 09:30:31 -04'00'

LaTroy Tinch
Branch Chief
Division of Information Disclosure
Office of Communication and Education
Center for Devices and Radiological Health
Food and Drug Administration



# EXHIBIT 9B

## ADMINISTRATIVE REVIEW BOARD
## UNITED STATES DEPARTMENT OF LABOR

**In the matter of**

**Madhuri Trivedi**                    **ARB CASE NO. 2022-0026**
                                       **ALJ CASE NO:- 2022SOX00005**

**Complainant**

**v.**

**General electric, GE healthcare**

**Respondents**

### OPENING BRIEF OF COMPLAINANT MADHURI TRIVEDI

**To ARB –** I have created bookmarks (red circle shows –Bookmark icon); that shows headings and navigation in PDF. Thanks for reading.



i

## Table of Contents

1   Preliminary statement ................................................................................. 1

2   As I have attached my comment for sec.gov cybersecurity rulemaking;-here's a link for my comment at SEC.gov [Appendix no. 2 ] .............................................. 7

3   some of GE cybersecurity links---spanning all the way till 2021 .................... 8

4   FDA published its first cybersecurity guidance in 2016. Since my termination, I have written this 50 times- that FDA has took notice of it..in all of my filings- that's why ALJ McGrath should be criminally charged ....................................... 10

5   GE is still today using stoneage TELNET for remote control( for which Madhuri was fired)........................................................................................ 10

6   Issues presented ...................................................................................... 12

    6.1   OSHA 2014 complaint was closed administratively – OSHA, ALJ have cited that Trivedi failed to file timely 2014 complaint…but corruptly overlooked that Tamara and Kuss illegally closed it administratively, and also internationally didn't mention Trivedi right to Appeal to ALJ – that's why FTCA tort and Bivens claims apply to all ........................................................ 12

    6.2   OSHA investigator Tamara – as stated in petition for review- when Trivedi sent email to Tamara on June 3, 2014 regarding FDA ban for GE's failure for cGMP – current good manufacturing practice – on OEC surgery- instantly asked termination date and as shown in APPENDIX 6 of this brief – closed Trivedi's

    OSHA complaint on June 6, 2014 [Administrative Closure Date: 06/06/2014] ... 15

    6.3   David Nelson who was from David Boise law firm attorney and prior to that he was SEC.gov regional director for MIAMI office; he reviewed my matter in June 2014. How come Tamara corruptly entered my OSHA complaint under OSHA act 11 (c ) – even though it was SOX -that's why I wanted discovery which ALJ McGrath denied. ........................................................................... 16

    6.4   Whether the ALJ Committed Reversible Error by failing to provide Complainant [her] due-process right to engage in the discovery process to gather facts and evidence in support of the allegations set-out in [her] OSHA SOX complaint in terms of timeliness; And to reply to ALJ's order to show cause on timeliness ? .............................................................................................. 17

6.5    The timely filing of the initial complaint with the Secretary of Labor is a claims-processing requirement subject to several defenses such as waiver, estoppel, or equitable tolling. Is timeliness  and not considering filing complaint with FDA as timely—that much of IMPORTANCE that OSHA not ALJ- despite so much things at stake…totally want to trash this and dismiss Trivedi's complaint which proves highest degree of fraud by GE involving at least billion dollar of money that GE made fraudulently selling/ Insite EXC. ........................17

6.6    The question for the ARB, whether the ALJ could support its original findings with substantial evidence. *See* 29 C.F.R. § 24.110(b) ..........................18

6.7    ALJ has failed to apply similar standard as ARB's Sylvester case discussed about FDA's GCP [ in Trivedi case –GMP –good manufacturing practice) As in ARB's Sylvester v. Parexel Int'l, Inc, where FDA's GCP violations led to groundbreaking ruling by ARB- resembling and similar to that- Trivedi wrote to GE, to OSHA in 2014 .....................................................................................18

6.8    Discovery rule applies to OSHA SOX - Accrual of Claims SOX when Trivedi came to know for her school alumni Jason Kap about whistlevblowers.gov. "Discovery-based trigger," by which the statute of limitations begins to run when the plaintiff discovers or has enough information from which he or she should have discovered the injury and its cause. .............19

6.9    Whether ALJ committed reversible illegal error by NOT staying the case pending discovery… .........................................................................................20

6.10     Whether ALJ, OSHA failed to apply( or INTENTIONALLY and KNOWINGLY didn't apply)Anticipatory Obstruction of Justice:  under the Sarbanes-Oxley 18 U.S.C. 1519; which is a criminal statute and TIMELINESS would not have been an ISSUE to dismiss Trivedi's complaint.........................20

6.11     Whether ALJ erred by taking judicial notice of Trivedi's district court case against GE..mainly and importantly –he didn't even care to understand ...20

See Sylvester v. Parexel Int'l, Inc., ARB No. 07-12, 2011 (ARB May 26, 2011) we do not take judicial notice of any facts presented during Neuschafer's NLRB proceedings. ..................................................................................................20

6.12     Whether the fraudulent misrepresentations of the defendants [in this case OSHA investigators in 2014 who  fraudulently closed complaint

administratively, without giving Trivedi opportunity to appeal to ALJ, 2021]within the limitations period are viewed through the prism of "continuing violations" or through the equitable tolling principle of fraudulent concealment, permitting Trivedi 's OSHA complaint as timely ...............................................21

6.13    Sparre v. U.S. Dep't of Labor, 924 F.3d 398, 403 (7th Cir. 2019) ("The Board has recognized principal situations in which equitable tolling may apply: one of them is -when the movant has raised the precise statutory claim in issue but has done so in the wrong forum;")- Whether ALJ MCGrath, with 100% OBVIOUS intention to cover up and act as GE's general counsel – failed to apply, and thus erred – by totally swallowing FDA whistleblower complaint. ..21

6.14    Isn't it clear that OSHA in 2014 till 2021 and ALJ in 2022; so from 2014 -2022—Trivedi has been a SUBJECT, VICTIM of continuing tort by Department of labor's employees under corruption; ongoing injury and until the injury is stopped – Trivedi's claim are valid and timely. ...................................22

6.15    As in Sylvester's opening brief by Sylvester's attorney and ARB ruling mentioned that ...........................................................................22

6.16    Cripps v. La. Dep't of Agric. & Forestry, 819 F.3d 221, 232 (5th Cir. 2016) ("Courts analyze substantive due process claims by asking "whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." ......................................23

6.17    "[S]erious instances of attorney misconduct," however, may constitute "extraordinary circumstances" that warrant tolling of a statute of limitations. Holland, 560 U.S. at 651-52; ..........................................................24

6.18    Equitable tolling doctrine under law applies to Trivedi's claim and that the grievance investigation process also served to toll the statute of limitations. 24

6.19    Continuing violations, continuing hard and continuing tort – entire legal arguments worth hundreds of legal cases, were swallowed by OSHA management, investigators and corrupt ALJ McGrath. These terms applies to GE and DOL, OSHA, ALJ McGrath...............................................................25

7    As stated in petition for review with ARB, GE removed remote connectivity section from SEC.GOV Def 14 A filing from 2019 onwards…and as stated in

Sylvester…..the same argument Trivedi has presented to OSHA, and corrupt ALJ 25

8   EEOC issued right to sue notice...EEOC considered Trivedi charge timely...Appendix no. 1 ........................................................................26

9   Jurisdiction ...........................................................................................26

10    Legal arguments .................................................................................27

10.1    The ARB reviews an ALJ's determinations on procedural issues and evidentiary rulings under an abuse of discretion standard ................................27

10.2    ALJ McGrath Committed Reversible Error by Failing to Provide Pro Se Complainant [Her] Due Process Right to Engage in the Discovery Process to Gather Facts and Evidence In Support Of the Allegations Set-Out In [Her] Sox Complaint In Response to ALJ's Order To Show Cause ...................................28

10.3    The statutes underlying the securities fraud claims speak in terms that clearly contemplate continuing activity. Consequently, the continuing violation doctrine extends the statute of limitations in the context of the federal securities laws.   30

10.4    Continuing violations – as GE kept releasing fraudulent product well after Trivedi's termination – while GE and ALJ using statute of limitations as affirmative defense – If GE was releasing defective, cybersecurity alerts well into 2018- 2022- how come Trivedi is not protected .........................................31

10.5    GE healthcare to GE aviation- GE presenting pretext not a team player, need coaching – while putting public health, safety at risk- and to OSHA, OFCCP, ALJ- Trivedi has repeatedly brought up Pattern- and practice ….bad policy that GE has – these ongoing retaliation is continuing violations of various laws- thus Trivedi's OSHA complaint is timely. Trivedi has mentioned "continuous violation" in 2021 online OSHA complaint as well. ......................31

10.6    Insite and several medical devices' brochure, various medical device manuals) while intentionally concealing that InsiteEXC is NOT in compliance FDA's 21 CFR § 820.90 - Nonconforming product, product non conformances, defects and cybersecurity vulnerabilities, aging platform that was falling apart 35

10.7    Trivedi forwarded OSHA complaint and supported material to Tony Scheer… so that attorney is alibi that Trivedi did provide OSHA sufficient

information in 2014 ; and 2014 OSHA complaint stated that GE was violating GMP( good manufacturing practice), HIPPA, HITECH , and more ….and Trivedi clearly wrote to OSHA 2014 that "it was it was a fraud and conspiracy to continue release/ integrate those Insite Exc " agents on products (SOX protected activity) ............................................................................................36

10.8    GE management was on alert since Trivedi entered in GE's mid year performance review –  system( which can be accessed by GE people) that "Trivedi went over GE's annual report and presentations"................................42

10.9    Supreme Court allowed -- continuing violation theory to toll statute of limitations for violations occurring from 1912 till 1955. Hanover Shoe, Inc. v. United Shoe Mach. Corp., 392 U.S. 481, 502, 88 S. Ct. 2224, 2236, 20 L. Ed. 2d 1231 (1968).........................................................................................................45

10.10    Trivedi could establish facts during the course of this litigation that would demonstrate that the statute of limitations should be equitably tolled .....47

10.11    Continuing violation doctrine applies to Eighth Amendment claim of deliberate indifference, Title VII, *Bivens* action – then why it doesn't apply to Trivedi's case AND "discovery-based trigger," by which the statute of limitations begins to run when the plaintiff discovers or has enough information from which he or she should have discovered the injury and its cause. .............48

10.12    29 C.F.R. Section 1980.109 "reinforces that de novo review" is the standard at the ALJ stage; and that is consistent with the notion that a case is not to be adjudicated on the pleadings or on the OSHA complaint. .........................50

10.13    Continuing tort , The continuing violation doctrine provides that the statute of limitations does not begin to run on a continuing wrong until the wrong has been conclude – applies to GE, OSHA, ALJ …….Trivedi also alleges of continuous unlawful acts , continuing violations, continuing harm. ..............52

10.14    the "continuing violations" doctrine, principle of accrual ,postpones the beginning of the limitations period where the defendant inflicts continuing and accumulating harm........................................................................................55

11    James Martin – former GE employee in 1980s – who is now revered FATHER MARTIN – and he has been publicly writing , raising his voice about GE's rampant Sexual harassment he observed first hand in 1980's , freewheeling

accounting, GE's bad culture and more- so things are in PUBLIC. Appendix no. 4
.......56

12    Supreme Court Places Another Limitation on Chevron Deference, Agency
[DOL] interpretations of statutes of limitations . . . are . . . poor candidates for
deference. ....................................................................................................56

13    Trivedi is entitled to emotional damages under SOX and ALJ knows; but
intentionally dismissed case based on timeliness ..................................57

14    Remand to another ALJ and recusal..........................................................57

15    CONCLUSION ..........................................................................................58

# Cases

*AKM LLC v. Secretary of Labor*, 675 F.3d 752 (D.C. Cir. 2012) .........................56

Anderson v. State, 88 Hawai'i 241, 247-48, 965 P.2d 783, 789-90 (Ct. App. 1998)
...............................................................................................................52

*Angel Enters. LP v. Talbot Cnty.*, No. 2842, at *32-33 (Md. Ct. Spec. App. Aug.
20, 2020)................................................................................................33

*Baldayaque*, 338 F.3d at 152.................................................................................24

*Bechtel Constr. **Co. v. Secretary of Labor**,* **50 F.3d 926 (11th Cir. 1995)**............. 7

*Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir. 1996).................................................27

*Blanchette v. Barrett*, 229 Conn. 256, 264, 640 A.2d 74 (1994)..........................50

*Boswell v. Claiborne Parish Det. Ctr.*, 629 F. App'x 580, 583 (5th Cir. 2015)......33

Brunswick Corp. v. Riegel Textile Corp., 752 F.2d 261, 271 (7th Cir. 1984)........55

Catskill Mountains Chapter of Trout Unlimited, Inc. v. City of New York, 273
F.3d 481, 487 (2d Cir. 2001) .................................................................34

*City of Trinidad, Colorado v. Hamer*, 140 S. Ct. 644 (2019)................................33

*Comm'r of Envtl. Prot v. Connecticut Bldg. Wrecking Co.*, 629 A.2d 1116, 1129
(1983) ....................................................................................................33

Conroe Creosoting Co. v. Montgomery Cty., 249 F.3d 337, 341 (5th Cir.2001) ...23

*Cooney v. Casady*, 652 F. Supp. 2d 948, 954 (N.D. Ill. 2009)..............................54

*Cox v. Bd. of Cnty. Comm'rs*, 436 F. Supp. 3d 1070, 1085-86 (S.D. Ohio 2020)...34

Cripps v. La. Dep't of Agric. & Forestry, 819 F.3d 221, 232 (5th Cir. 2016).........23

**CTS Corp. v. Waldburger, 134 S.Ct. 2175 (2014)** .............................................54

Curtis v. Firth, 123 Idaho 598, 850 P.2d 749, 754 (Idaho 1993)............................53

*Dews v. Town of Sunnyvale*, 109 F. Supp. 2d 526, 563 (N.D. Tex. 2000)..............33

Diversity v. Flambeau Min. Co., 903 F.Supp.2d 690, 721 (W.D. Wis. 2012)........34

*English v. General Elec. Co.,* 496 U.S. 72 (1990) .................................................. 7

*Evans v. United States Environmental Protection Agency,* ARB No. 08-059 (ARB April 30, 2010)................................................................................................50

*Feltmeier v. Feltmeier*, 798 N.E.2d 75, 85-86 (Ill. 2003) ......................................54

*Fiswick v. United States,* 329 U.S. 211, 216, 67 S.Ct. 224, 91 L.Ed. 196 (1946)...34

*Flannery v. Singer Asset Fin. Co*., LLC, 312 Conn. 286 (2014)............................50

*Giulietti v. Giulietti*, supra, 65 Conn.App. at 833–35 ............................................50

*Gonzalez v. Hasty*, 802 F.3d 212, 220-21 (2d Cir. 2015)......................................48

*Gonzalez v. Hasty*, 802 F.3d 212, 225 (2d Cir. 2015)............................................58

*Guitron v. Wells Fargo Bank, N.A.*, Civ. 10 No. 3461, 2012 WL 2708517, at *2-3, *15 (N.D. Cal. July 6, 2012) ...............................................................................42

*Hamer v. City of Trinidad*, 924 F.3d 1093, 1097 (10th Cir.) .................................33

Hanover Shoe, Inc. v. United Shoe Mach. Corp., 392 U.S. 481, 502 n.15, 88 S. Ct. 2224, 2236 n.15 (1968) ........................................................................................47

Hanover Shoe, Inc. v. United Shoe Mach. Corp., 392 U.S. 481, 502, 88 S. Ct. 2224, 2236, 20 L. Ed. 2d 1231 (1968)...............................................................45

***Hanover Shoe, Inc. v. United Shoe Machi***nery Corp., 392 U.S. 481, 502 n.15 (1968) ..................................................................................................................33

*Harris,* 186 F.3d at 248...........................................................................................49

*Harvey v. Home Depot U.S.A., Inc., ARB Nos. 04-114, -115, ALJ Nos. 2004-SOX-020, -036, slip op. at 8 (ARB June 2, 2006)*....................................................27

Havens Realty Corp. v. Coleman, 455 U.S. 363, 380-81, (1982). ........................55

*Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380-81, 102 S. Ct. 1114, 1125 (1982) ..................................................................................................................31

Heard v. Sheahan, 253 F.3d 316, 319 (7th Cir.2001) ............................................53

*Heard*, 253 F.3d at 318–20 .....................................................................................49

Heardv. Sheahan,253 F.3d316,317 (7thCir. 2001) ..............................................54

*Heath v. Bd. of Supervisors for S. Univ. & Agric. & Mech. Coll.*, No. 16-30625, 2017 WL 923408, at *5 (5th Cir. Mar. 8, 2017) ................................................33

*Holland*, 560 U.S. at 651-52 ..................................................................................24

*Howard v. Walmart, Inc.*, CIVIL ACTION No. 18-2636-KHV, at *11 at *12 (D. Kan. Apr. 23, 2020) ...........................................................................................32

*In Lockheed Martin Corp. v. Admin. Review Bd.,* 717 F.3d 1121 (10th Cir. 2013)
...................................................................................................45

*In re Standard Scrap,* TSCA Appeal No. 87-4, 3 E.A.D. 267, 1990 WL 303875, at
\*2 (EPA Aug. 2, 1990)...................................................................34

In re: Evanston Nw. Healthcare Corp. Antitrust Litig., No. 07 C 04446, 2016 WL
4720014, at \*7 (N.D. Ill. Sept. 9, 2016) ...........................................55

*Interamericas Investments v. Bd. of Governors*, 111 F.3d 376, 382 (5th Cir. 1997)
...................................................................................................32

***Interamericas Investments, Ltd. v. Bd. of Governors of the Fed. Reserve Sys.,***
**111 F.3d 376, 382 (5th Cir. 1997)**.............................................33

*Johnson v. U.S. Bancorp*, No. 11 Civ. 2010, 2012 WL 6615507, at \*3 (W.D. Wash.
Dec. 18, 2012)...............................................................................52

Jones v. SouthPeak Interactive Corp., 777 F.3d 658 (4th Cir. 2015) ....................57

*King v. Ind. Harbor Belt R.R.*, No. 2:15-CV-245-JD-PRC, 2017 WL 9565363, at
\*7–9 (N.D. Ind. Feb. 1, 2017) ........................................................ 4

Kovacs v. United States, 614 F.3d 666, 676 (7th Cir.2010)................................54

*Lightfoot v. Union Carbide Corp* ., 110 F.3d 898, 907 (2d Cir. 1997)..................33

*M.H.D. v. Westminster Schools,* 172 F.3d 797, 804-05 (11th Cir. 1999) ..............55

*Middlesex Retirement System, supra*, 2007 WL 3286784, \*26 ........................30

*Mix v. Delaware & Hudson Railway Co.,* 345 F.3d 82 (2d Cir.2003) ..................49

*Muchnick*, 559 U.S. at 161 ........................................................... 4

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115–18, 122 S.Ct. 2061, 153
L.Ed.2d 106 (2002) .........................................................................49

*Newell Recycling Co., Inc. v. U.S.E.P.A*, 231 F.3d 204, 206-07 (5th Cir. 2000)....34

O'Malley v. Kass Mgmt. Servs., Inc., 539 F. Supp. 3d 935, 939 (N.D. Ill. 2021) ..49

**Page v. United States, 234 U.S. App. D.C. 332, 729 F.2d 818, 821-22 (D.C. Cir.**
**App. 1984)**...................................................................................53

*Page v. United States,* 729 F.2d 818, 821-22 (D.C. Cir. 1984) ............................56

*Parexel Int'l v. Feliciano*, 2008 WL 5101642 .......................................40

*Payton v. Williams*, No. 14-cv-2566, at \*14 (N.D. Ill. Dec. 1, 2017)...................53

*Rapf v. Suffolk County,* 755 F.2d 282, 292 (2d Cir. 1985) ....................................56

**Ringer v. Neb., Kan., & Colo. Ry.,** No. 20-cv-3056 (D. Neb. Aug. 19, 2020)
(2020 U.S. Dist. LEXIS 149787) ....................................................... 2

*Sable v. General Motors Corp.,* 90 F.3d 171, 176 (6th Cir. 1996)........................56

*Sandutch v. Muroski*, 684 F.2d 252, 254 (3d Cir. 1982) .......................................56

**Saporito v. Progress Energy Service Co. ARB No. 11-040, ALJ No. 2011-ERA-6 (ARB Nov. 17, 2011)** ...................................................................... 28

Schware v. Bd. of Bar Exam'rs, 353 U.S. 232, 238–39, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957) ......................................................................................................... 24

*SEC v. Cotton*, No. SACV 06-0905-AG, slip. op. at 8-9 (C.D. Cal. December 21, 2006)......................................................................................................... 30

*SEC v. Ogle*, No. 99 C 609, 2000 WL 45260, at *4 (N.D. Ill. Jan. 11, 2000) ........ 30

*Sherman v. Town of Chester,* 752 F.3d 554, 566–67 (2d Cir.2014) ...................... 48

*Shomo v. City of New York,* 579 F.3d 176, 182 (2d Cir.2009).* ............................. 48

*Simpson v. United Parcel Serv.*, ARB No. 06-065, ALJ No. 2005-AIR-031, slip op. at 4 (ARB Mar. 14, 2008) ................................................................................ 26

Sparre v. U.S. Dep't of Labor, 924 F.3d 398, 403 (7th Cir. 2019) ........................ 21

*Stalworth v. Justin Davis Enter., Inc., ARB No. 09-038, ALJ No. 2009-STA-001, slip op. at 3 (ARB June 16, 2010)*....................................................................... 27

*Supermail*............................................................................................................... 47

Sylvester v. Parexel Int'l, Inc., ARB No. 07-12, 2011 (ARB May 26, 2011) ........ 20

***Thomas v. Ashcroft**, 470 F.3d 491, 496 (2d Cir. 2006)* ...................................... 50

Tiberi v. Cigna Corp., 89 F.3d 1423, 1430 (10th Cir.1996).................................. 54

Toussie v. United States, 397 U.S. 112, 136 (1970) .............................................. 32

*Turley v. Rednour,* 729 F.3d 645, 651 (7th Cir.2013).......................................... 48

*United States v. Brown*, 578 F.2d 1280, 1285 (9th Cir. 1978) .............................. 30

*United States v. McDonald*, 576 F.2d 1350 (9th Cir. 1978).................................. 30

United States v. Reaves, 923 F.Supp. 1530, 1534 (M.D. Fla. 1996). .................... 34

**United States v. Rutherford Oil Corp., 756 F.Supp.2d 782, 790-93 (S.D. Tex. 2010)**........................................................................................................... 34

*Vanliner Ins. Co. v. Fay*, supra, 98 Conn. App. at 139 .......................................... 50

*Watts v. Chittenden*, supra, 301 Conn. at 583-85................................................... 50

*William Vinnett v. Mitsubishi Power Systems,* ARB Case No. 08-104; ALJ Case No. 2006-ERA-029 (ARB July 27, 2010) ........................................................ 51

## Statutes

18 U.S.C. § 1341 (mail fraud)................................................................................. 39

18 U.S.C. § 1343 (wire fraud)................................................................................. 39

18 U.S.C. § 1348 (securities fraud) ........................................................................ 39

**18 U.S.C. § 1961** ...............................................................................22

18 U.S.C. 1519 .....................................................................................20

18 U.S.C.§ 1344 (bank fraud) ..............................................................39

21 CFR § 820.250 - Statistical techniques ...........................................18

**21 CFR § 820.90 - Nonconforming product**......................................... 7

**21 CFR 820 part 1** QUALITY SYSTEM REGULATION ...................18

**21 CFR** 820.100 CAPA ......................................................................19

**21 CFR** 820.198 Complaints ..............................................................19

**21 CFR** 820.20 Management Responsibility ......................................19

**21 CFR** 820.200 Servicing .................................................................19

**21 CFR** 820.22 Quality Audit.............................................................19

**21 CFR** 820.22 Quality Audits ...........................................................19

**21 CFR** 820.25 Training......................................................................19

29 C.F.R. § 1980.110(b) .......................................................................26

29 C.F.R. Section 1980.109 ..................................................................50

29 CFR § 18.201 - Official notice of adjudicative facts .......................29

29 CFR § 18.201 (e) Opportunity to be heard ......................................29

42 U.S.C. § 1983...................................................................................33

**5 USC § 706 - Scope of review** ........................................................... 2

Rule 10b-5 under Section 10(b) of the Exchange Act .........................30

Section 17(a)(3) of the Securities Act ( ...............................................30

# 1    Preliminary statement

**Please look at my ENTIRE file for OALJ case- OALJ appeal filed October 17, 2021; consisted of SIX emails with lots of attachments (evidence) (TOTAL 78 MB) – ALJ MCGrath has not looked at those documents.** Since ARB already has my file – I am not attaching it here. Also 100 emails with evidence, facts sent to OSHA investigator and corrupt management Rosa, Frederick; DOL's Koh.

**Please let me know if ARB wishes to have a conference call to go over my brief.**

**When I worked on petition for review for ARB , since all facts, these legal arguments, were circling in my head—I had put them….So I request to ARB to READ this opening brief and petition for review together.**

Trivedi realleges, reasserts, and incorporates by reference the facts and allegations stated in the petition for review filed with ARB ; as though fully set forth herein, as well as facts currently unknown.

OSHA people Rosa, Frederick, Keller, Nathan, William, Kuss, Tamara and ALJ McGrath, Daniel Koh are TERMITES and cancer to organization DOL and society..And there are many people like them..

This appeal is from complainant Madhuri Trivedi. She is appealing order of ALJ dated February 25, 2022, dismissing Trivedi's OSHA complaint as untimely.

1

ALJ's order is "unsupported by substantial evidence" and  is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

ALJ did not support its findings with evidence in the record –but merely copy pasted few things here and there, which are inconsistent, in conflict and proves that ALJ McGrath acted as GE's general counsel.  **5 USC § 706 - Scope of review**(In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.)

> In *Ringer v. Neb., Kan., & Colo. Ry.*, No. 20-cv-3056 (D. Neb. Aug. 19, 2020) (2020 U.S. Dist. LEXIS 149787), The timely filing of the initial complaint with the Secretary of Labor is a claims-processing requirement subject to several defenses such as waiver, estoppel, or equitable tolling,

**Trivedi -I READ =James Grant's book chapter – "hotlight on GE"..way back in 90s he saw things -- for 58 years GE's credit rating was not changed....that's the point...**

2

| | 1932 | 1957 | 1974 | 1982 | 1989 |
|---|---|---|---|---|---|
| | | | **GENERAL ELECTRIC CO.—TIME MARCHES ON** | | |
| | | | **SELECTED HISTORICAL DATA AND RATIOS** | | |
| | | | **(IN $ MILLIONS, EXCEPT PER-SHARE DATA)** | | |
| Net sales | $147.2 | $4,335.7 | $13,598.9 | $26,500.0 | $54,574.0 |
| EBIT[1] | 14.7 | 521.7 | 1,180.8 | 3,097.0 | 12,210.0 |
| Net income | 14.4 | 247.9 | 608.1 | 1,817.0 | 3,939.0 |
| Earnings per share | $0.41 | $2.85 | $3.34 | $8.00 | $4.36 |
| Total assets | 405.1 | 2,346.6 | 9,369.1 | 21,615.0 | 128,344.0 |
| Long-term debt | 2.0[2] | 300.0[3] | 1,195.2[4] | 3,099.0 | 16,110.0 |
| Total equity | 345.4 | 1,216.6 | 3,704.3 | 10,198.0 | 20,890.0 |
| EBIT margin | 10.0% | 12.0% | 8.7% | 11.7% | 22.4% |
| Net income margin | 9.8% | 5.7% | 4.5% | 6.9% | 7.2% |
| Long-term debt/assets | 0.5% | 12.8% | 12.8% | 14.3% | 12.6% |
| Long-term debt/equity | 0.6% | 24.7% | 32.3% | 30.4% | 77.1% |
| Current ratio | 2.3x | 1.9x | 1.3x | 1.3x | 0.8x[5] |
| EBIT/interest | 46.8x | 46.5x | 6.6x | 9.0x | 1.9x |
| Return on assets | 3.6% | 10.6% | 6.5% | 8.4% | 3.1% |
| Return on equity | 4.2% | 20.4% | 16.4% | 17.8% | 18.9% |
| Net income of GECC as % of parent | — | 3.2% | 7.0% | 11.3% | 20.7%[6] |

[1] Earnings before income and taxes; includes all income sources.
[2] GE gold debenture 3½s, due 1942; Aaa-rated, 40-year bonds.
[3] GE debenture 3½s, due 1976; Aaa-rated, 20-year bonds.
[4] Five issues, including $300 million of GE 8½s, due 2004; Aaa-rated, 30-year bonds.
[5] Current assets include only those time sales, loans and rental receivables of GEFS that mature in 1990. Including all GEFS receivables, current ratio is 1.2x.
[6] No doubt, GECC has grown in relative importance over the past several years, but the parent company no longer separately discloses its net income.

source  James Grant  Minding Mr. Market.  Times Books. Random House  1993  page 361

GE has been debt financed for decades...done financial engineering, fraud and manipulation... Under Jack Welch, GE Capital delivered double-digit earnings gains, year in & out, regardless of what was going on. To his credit, Jeff Immelt reined in free-wheeling culture at <u>GE</u>..that's the problem….and that's the contributing factor for Trivedi's termination….GE's fraudulent mindset…and that

3

applies to medical evice fraud GE healthcare was doing- and Trivedi didn't join

GE's fraud scheme.

There are fundamental errors in Trivedi's case that would warrant disturbing

the ALJ's determination - it is illegal to not allow discovery – obstruction of

justice. The ALJ in this case made no formal findings of fact, thus complicating the

Board's ability to conduct a substantial evidence review of the ALJ's decision

**A court always has jurisdiction to determine its own jurisdiction,The**

**Third Circuit found that the cited cases were "all merely 'drive-by**

**jurisdictional rulings' that easily 'miss the critical differences between true**

**jurisdictional conditions and** nonjurisdictional limitations on causes of action.'

*Muchnick*, 559 U.S. at 161 (internal quotation marks and citations omitted); *see,*

*e.g., King v. Ind. Harbor Belt R.R.*, No. 2:15-CV-245-JD-PRC, 2017 WL 9565363,

at *7–9 (N.D. Ind. Feb. 1, 2017) (analyzing and critiquing the haphazard

"jurisdictional" language used by many district courts in the SOX context).

(internal quotation marks and citations omitted)." *Id*.

[J]udges are fallible human beings. We need to see that biases and prejudices

and conditions of attention affect the judge's reasoning as they do the reasoning of

ordinary men. . . . The study of human nature in law . . . may not only deepen our

knowledge of legal institutions but open an unworked mine of judicial wisdom. -

*Jerome Frank, Law And The Modern Mind,* 146 (1930). [M]an has a propensity to

4

prejudice. This propensity lies in his normal and natural tendency to form generalizations, concepts, categories, whose content represents an oversimplification of his world experience. - *Gordon Allport, The Nature Of Prejudice,* 27 (1954).

ALJ McGrath's treatment towards Trivedi by declining to have conference call, denying motion for discovery,  dismissing complaint without considering any of the so many arguments Trivedi presented—improperly taking JUDICIAL NOTICE of the District court case– shows that most likely than not – he can't just take a strong, ASIAN, non WHITE, WOMAN, immigrant – coming out boldly – about his whistleblower claims. Because during one and only conference call – ALJ MCGrath did say that "You(Madhuri) is very passionate about your claims"…And Trivedi was surprised to hear it from ALJ..it was not that I am passionate..but it is the illegal acts that GE committed and OSHA's corruption..ALJ shows ZERO seriousness, enormity of the situation – and on top – any duty that he has to address it – how come he use such WORDS..

 "The **law is reason** free from passion…Aristotle said that ..But ALJ McGrath found Trivedi passionate..while Trivedi is pointing violations of law, fraud…ALJ is taking it not seriously. Trivedi has established a prima facie case.

GE told Trivedi that it was none of her business when Trivedi reported concerns, violations, and till TODAY – in all of GE's filings, GE is positioning

5

and taking a stand that **"Trivedi was not a team player"**…GE knows it is/it was never "not a team player", but it is the over assertive, bullying stand that GE and GE's attorneys have taken. And given that corrupt judge(s) like ALJ McGrath are there – GE is getting away, instead of being out in JAIL.

As ARB stated in ***Sylvester v. Parexel-*** *"Garrido told her that "the termination decision was a 'corporate decision' and that USDOL/OALJ REPORTER PAGE 6 she was terminated because* **she was 'not a team player.' "** *Sylvester Complaint ¶ 43. Jones discharged Neuschafer on August 10, 2006. Jones stated that "the reason for termination was that* **Neuschafer's personality did not fit in."**

While employed at GE and after suffering retaliation – Trivedi clearly wrote to management all the way to CEO of global services – that "Trivedi is a victim, scapegoat , as a result of Trivedi reporting defects, cybersecurity vulnerabilities – she has suffered retaliation and it was illegal for GE to frame her as a "not a team player". **See details of GE's premediated scheme and UNHUMAN retaliation inflicted upon Trivedi and Remove witness [Appendix 8,9,10 of this brief]**

- Sylvester was retaliated against due to this reporting, and that when Sylvester reported this retaliation, her management refused to take action. *Id.* at para. 10. Soon thereafter Sylvester was terminated because of a "corporate decision" that she was not a "team player." *Id.* at para. 13.[3]

Parexel **[GE healthcare]** declined to… correct this conduct **[GE -in TIMELY manner]** or to report it to appropriate parties such as the FDA and its clients **[GE customers, hospitals]** because doing so would have adversely affected the large profit  from **[ the InsiteEXC service contracts and medical devices sold by marketing as service benefit under fraudulent inducement] [Note that as per APPENDIX 11 of this brief – December 2020 – SEC.gov and GE already settled for $200 million- GE's fraud for long term service contracts related another GE division].** . . . This would have adversely affected the value of the stock, would have caused corporate credit problems, would have contradicted Parexel**' [GE]'s** statements to its shareholders concerning strict adherence to GCP **[21 CFR § 820.90 - Nonconforming product and other statutes, cybersecurity liabilities]** and would have significantly reduced or eliminated bonus compensation and other stock based compensation for Parexel **[GE]** executive.

Disclosure Would have reduced revenue and reputation

and a wide range of related conduct all based on fraudulent data and the failure to report this material information of Insite EXC fraud to FDA, to public via RECALL, to sec.gov regulatory filing – and finally GE did removed remote connectivity from DEF 14 A sec.gov filling in 2019; after Trivedi emailed GE about going to court.[That's why ALJ McGrath and OSHA people must be arrested for dismissing Trivedi's complaint on timeliness)

Citing *English v. General Elec. Co.,* 496 U.S. 72 (1990) and *Bechtel Constr. Co. v. Secretary of Labor,* **50 F.3d 926 (11th Cir. 1995)("it is appropriate to give a broad construction to remedial statues such as nondiscrimination provisions in federal labor laws").**

## 2  As I have attached my comment for sec.gov cybersecurity rulemaking;-here's a link for my comment at SEC.gov [Appendix no. 2 ]

https://www.sec.gov/comments/s7-09-22/s70922-20127840-289033.pdf

Mar. 9, 2022        Cybersecurity Risk Management, Strategy, Governance, and Incident Disclosure --File No: S7-09-22

All comments =  https://www.sec.gov/comments/s7-09-22/s70922.htm

Federal Register version (87 FR 16590)
https://www.federalregister.gov/documents/2022/03/23/2022-05480/cybersecurity-risk-management-strategy-governance-and-incident-disclosure

# 3  some of GE cybersecurity links---spanning all the way till 2021

No judge, no court would allow GE to get away from what they have done to ME/Madhuri--there is no defense for that..

1) https://www.zdnet.com/article/mdhex-vulnerabilities-impact-ge-patient-vital-signs-monitoring-devices/

2) https://www.zdnet.com/index.php/category/2381/index.php/article/account-with-default-creds-found-in-100-ge-medical-device-models/

3) https://www.forbes.com/sites/thomasbrewster/2015/07/10/vulnerable-breasts/#62a219406b5a

4) https://www.zdnet.com/article/vulnerabilities-found-in-ge-anesthesia-machines/

5) https://www.modernhealthcare.com/cybersecurity/cybersecurity-flaw-discovered-100-ge-medical-devices

6) https://us-cert.cisa.gov/ics/advisories/ICSMA-18-037-02

7) https://us-cert.cisa.gov/ics/advisories/icsma-20-343-01

8) https://www.healthcareitnews.com/news/cisa-says-security-vulnerability-found-ge-imaging-and-ultrasound-devices

9)  https://techcrunch.com/2020/12/08/researchers-say-hardcoded-passwords-in-ge-medical-imaging-devices-could-put-patient-data-at-risk

10)     https://www.cyberscoop.com/ge-healthcare-dhs-alert/

11)     https://www.medtechintelligence.com/news_article/fda-announces-cybersecurity-vulnerabilities-in-certain-ge-healthcare-systems/

12)     https://healthitsecurity.com/news/feds-alert-to-critical-vulnerabilities-in-ge-patient-monitoring-products

13)     https://khn.org/morning-breakout/security-flaws-found-in-ge-medical-devices/

14)     https://www.medtechdive.com/news/fda-cyber-vulnerabilities-PTC-Axeda-medical-device-software-/620075/

15)     https://threatpost.com/critical-unpatched-bug-ge-radiological-devices/162012/

16)     https://www.techradar.com/news/ge-healthcare-patient-monitors-are-hit-by-potentially-easy-to-exploit-security-flaw

17)     https://www.csoonline.com/article/3600164/publicly-known-support-credentials-expose-ge-healthcare-imaging-devices-to-hacking.html

18)     https://cybersecuritymarket.com/fda-informs-health-care-providers-facilities-and-patients-about-potential-cybersecurity-vulnerabilities-for-certain-ge-healthcare-clinical-information-central-stations-and-telemetry-servers/

19)     https://control.com/news/cisa-discovers-vulnerabilities-in-ge-healthcare-radiological-devices/

20)     https://www.biospace.com/article/releases/fda-informs-health-care-providers-facilities-and-patients-about-potential-cybersecurity-vulnerabilities-for-certain-ge-healthcare-clinical-information-central-stations-and-telemetry-servers/

9

21)    https://www.zdnet.com/article/vulnerabilities-found-in-ge-anesthesia-machines/

# 4  FDA published its first cybersecurity guidance in 2016. Since my termination, I have written this 50 times- that FDA has took notice of it..in all of my filings- that's why ALJ McGrath should be criminally charged

**[APPENDIX 5 of this brief  ]**FDA published first cybersecurity guidance in 2016 – As Trivedi kept fighting and FDA top brass knew…It Proves that Trivedi has satisfied OSHA SOX equitable tolling – filing in WRONG FORUM requirement (29 C.F.R. § 1980.103(d) ( The time for filing a complaint may be tolled for reasons warranted by applicable case law.) – if FDA taking notice of Trivedi's whistleblower complaint filed December 2013. This is another reason to bring criminal charges against **ALJ McGrath and OSHA** ( ALJ also denied discovery for the same)

Whistleblower Investigations Manual
(https://www.osha.gov/enforcement/directives/cpl-02-03-007)
IV. Timeliness of Filing. C. Equitable Tolling.
4. The employee mistakenly filed a timely retaliation complaint relating to a whistleblower statute enforced by OSHA with another agency that does not have the authority to grant relief (e.g., filing an AIR21 complaint with the FAA or filing a STAA complaint with a state plan state).
https://www.fda.gov/news-events/press-announcements/fda-outlines-cybersecurity-recommendations-medical-device-manufacturers


# 5  GE is still today using stoneage TELNET for remote control( for which Madhuri was fired)…

1) **See article below posted by Mikko - he is a cybersecurity researcher ..he posted article " Exposed**

10

==Telnet-Before the advent of SSH, telnet was the de facto protocol for remote management or shell access to systems or devices. In 1995, a Finnish engineer called Tatu Ylönen invented SSH, which made the telnet obsolete overnight. 25 years later, however, telnet is still going strong for some reason. There simply is not any Internet facing use case for the service, period."==

https://arcticsecurity.com/guides/2021/02/12/solarwinds-going-beyond-attribution-all-in-a-days-work-for-a-bicycle-repair-man/

2) And this is what I have in my lawsuit as well that --connecting assets on internet ..Apart from that vulnerabilities, hardcoded passwords, open telnets, VNC, ports that anyone on internet can search for and exploit..

3) As article says Exposed telnet- see Department of Homeland security -CISA alert which I have already mentioned in my complaint which these judges are not taking seriously....

4) ==alert-since I was working on **INSITE remote control till** date GE is using telnet$GE Healthcare Discovery NM 750b has a password of 2getin for the **insite account** for (1) Telnet and (2) FTP==

https://ics-cert.us-cert.gov/advisories/ICSMA-18-037-02

## **GE Healthcare INSITE**

==**Vulnerability Details : CVE-2013-7404**==

==**GE Healthcare Discovery NM 750b has a password of 2getin for the insite account for (1) Telnet and (2) FTP, which has unspecified impact and attack vectors. NOTE: it is not clear whether this password is default,hardcoded, or dependent on another system** or product that requires a fixed value.==

Publish Date : 2015-08-04 Last Update Date : 2018-03-27
- CVSS Scores & Vulnerability Types CVSS Score 10.0
Confidentiality Impact Complete (There is total information disclosure, resulting in all system files being revealed.)Integrity Impact Complete (There is a total compromise of system integrity. There is a complete loss of system protection, resulting in the entire system being compromised.)

11

Availability Impact Complete (There is a total shutdown of the affected resource. The attacker can render there source completely unavailable.)
Access Complexity Low (Specialized access conditions or extenuating circumstances do not exist. Very littleknowledge or skill is required to exploit. )
Authentication Not required (Authentication is not required to exploit the vulnerability.)

# 6 Issues presented

**Trivedi MERGES issues presented in her petition for review [PAGE 29]filed with ARB, with ISSUES presented in this brief. Please consider issues presented in petition as well as this brief as ONE final brief. Thanks. I HAVE ATTACHED PETITION FOR REVIEW AS PART OF BRIEF HERE.**

## 6.1 OSHA 2014 complaint was closed administratively – OSHA, ALJ have cited that Trivedi failed to file timely 2014 complaint...but corruptly overlooked that Tamara and Kuss illegally closed it administratively, and also internationally didn't mention Trivedi right to Appeal to ALJ – that's why FTCA tort and Bivens claims apply to all

**Whistleblower Investigations Manual**
(https://www.osha.gov/enforcement/directives/cpl-02-03-007)

**Page 37**  III. Intake and Docketing of Complaints.
**3.** Complaints filed under STAA, CAA, CERCLA, FWPCA, SDWA, SWDA, TSCA, ERA, AIR21, **SOX,** PSIA, NTSSA, FRSA, CPSIA, ACA, CFPA, or FSMA **that are either untimely or do not present a *prima facie* allegation, may not be "screened out" or closed administratively**.
Complaints filed under these statutes must be docketed and a written determination issued, unless the complainant, having received an explanation of the situation, withdraws the complaint.

**Page 39**  IV. Timeliness of Filing.

**B. Dismissal of Untimely Complaints.**

(STAA, ERA, CAA, CERCLA, FWPCA, SDWA, SWDA, TSCA, AIR21, **SOX,** PSIA, FRSA, NTSSA, CPSIA, ACA, CFPA, SPA, and FSMA **complaints may not be administratively closed.**

OSHA and ALJ McGrath (acting a GE general counsel)have argued that my complaint was untimely, but OSHA investigator manual itself says that Complaint may not be closed administratively – unless complainant withdraws –in Trivedi's case – Trivedi didn't withdraw. OSHA and ALJ have violated their own manual rules – thinking that Trivedi won't find out and they can continue do this. That's why OSHA and ALJ should be criminally charged.

Closing administratively, not mentioning right to appeal to ALJ – and then in 2021 totally omitting and avoiding that it was closed administratively. Thus OSHA and ALJ people to be arrested at very this moment.

ALJ McGrath's dismissal letter and OSHA's September 17, 2021 cites 2014 complaint not filed under SOX timely**(ALJ McGrath wrote that " I find that Complainant's contact with USCIS and FDA were not the "precise statutory claim in issue" filed in the wrong forum to justify tolling either the SOX or CFPA 180-day filing deadlines." )—but as per OSHA investigator manual above ; it says complaint filed under SOX may not be closed administratively….even though complaint I untimely or doesn't present prima facie case…And Trivedi didn't know that her 2014 complaint was closed administratively till June 2021- When Denise Keller from Midwest OSHA told Trivedi.**

**Isn't this Corrupt and OXYMORON – that ALJ McGrath and OSHA management writing in dismissal letter to Trivedi that "2014 complaint was not timely as 180 days window, not met prima facie case under SOX – at the same time writing in that same letter that it was closed administratively.. ALJ McGrath and OSHA management, investigator to be put IN JAIL for doing this to me and it is clear cut corruption and TORT claims against them.**

# **APPENDIX 6**

13

7/16/2021                                          Whistleblower - Complaint Summary

 **Occupational Safety and Health Administration**

## Whistleblower

 LOGOF

Please cor
any applic

You are logged in as Nathan Terwilliger, Office Name: MILWAUKEE .

| Whistleblower | Online Complaints | Start Page | Search | Create Intake | Complainant | Respondent | Complaint Info & Action |
|---|---|---|---|---|---|---|---|

| Complaint Summary | Additional Information |
|---|---|

| Complainant Name: | Trivedi, Madhuri | Respondent Name: | General Electric Healthcare |
|---|---|---|---|
| Case Number: | 5-3100-14-041 | Activity Number: | 22868624 |

**Complaint Summary**

| Complaint Info & Action | |
|---|---|
| Case Type: | OSHA |
| Investigator ID: | Simpson, Tamara |
| Date Complaint Filed: | 05/04/2014 |

| Investigator Assigned Date: | 06/06/2014 |
|---|---|
| Allegation Code: | M - Complaint with management |
| Allegation Summary: | Terminated for expressing concerns about software vulnerability in manufactured medical devices and the possible HIPAA violations it could cause. |
| Emphasis Program: | |
| Date of Adverse Action: | 05/31/2013 |
| Adverse Action Type(s): | |
| Statutory Implications: | |
| Administratively Close?: | Yes |
| Administrative Closure Date: | 06/06/2014 |
| Reason for Administrative Closure: | No Jurisdiction |

14

| | |
|---|---|
| Detailed Reason for Administrative Closure: | Complainant's expressed concern about the possible security breach of the software RP produces does not fall within our jurisdiction. Neither does her allegation that her national origin and gender, were reasons for her termination as well. |

| Respondent-COMPANY Information | |
|---|---|
| Respondent Name: | General Electric Healthcare |
| Number of Employees: | |
| SIC Code: | 5047 |
| NAICS Code: | 423450 |
| Union: | |
| Legal Entity: | |
| Organization Type: | COMPANY |
| Primary Address: | 3114 N Grandview Blvd Waukesha  WI  53188 US |
| Alternate Address: | |
| Phones: | Type          Country Code          Area Code          Number          Ext |
| Email Addresses: | |

| Establishment Details | |
|---|---|
| Company Name: | General Electric Healthcare |

https://portal.osha.gov/wb/whistleblower/ScreeningSummary.jsp

## 6.2 OSHA investigator Tamara – as stated in petition for review- when Trivedi sent email to Tamara on June 3, 2014 regarding FDA ban for GE's failure for cGMP – current good manufacturing practice – on OEC surgery- instantly asked termination date and as shown in APPENDIX 6 of this brief – closed Trivedi's OSHA complaint on June 6, 2014

| Administrative Closure Date: | 06/06/2014 |
|---|---|


**From:** Madhuri Trivedi [mailto:madhuritrivedi@hotmail.com
**Sent:** Tuesday, June 03, 2014 2:09 PM
**To:** simpson.tamara@dol.gov
**Subject:** info



15

**EMAIL**

**From:** Madhuri Trivedi [mailto:madhuritrivedi@hotmail.com] **Sent:** Tuesday, June 03, 2014 2:19 PM **To:** simpson.tamara@dol.gov **Subject:** RE: info

Sincerely, Madhuri

Attached :-Ex 27 GE OEC MEDICAL SYSTEMS SIGNS CONSENT DECREE WITH FDA TO CORRECT CGMP LAPSES

**From:** Simpson, Tamara - OSHA [mailto:Simpson.Tamara@dol.gov] **Sent:** Tuesday, June 03, 2014 4:52 PM **To:** Madhuri Trivedi **Subject:** RE: info

Madhuri,

Could you provide me your termination date? Thank you.

*Tamara Simpson*

Investigator

Whistleblower Protection Programs

US Department of Labor/OSHA

310 W. Wisconsin Ave., Room 1180

Milwaukee, WI 53203

## 6.3 David Nelson who was from David Boise law firm attorney and prior to that he was SEC.gov regional director for MIAMI office; he reviewed my matter in June 2014. How come Tamara corruptly entered my OSHA complaint under OSHA act 11 (c ) – even though it was SOX -that's why I wanted discovery which ALJ McGrath denied.

**but David Nelson didn't mention to me, what needs to be done next ,**-only things he mentioned after reviewing along with his assistant was that I have valid, Security and exchange commission related claims and whistleblower claims against GE---- but his law firm represents defendants and also they change hundreds of thousands in retainer and lot more to represent me in SEC matter or provide any guidance further including what to do next. It was around the same time Tamara Simpson from OSHA emailed me

> From: David Nelson <dnelson@bsfllp.com>
> Date: Mon, Jun 23, 2014 at 9:21 AM
> Subject: RE: should I send my deposition ?
> To: Madhuri Trivedi
> Cc: Aaron Marcus <amarcus@bsfllp.com>
> Madhuri, today is hectic and I have some meetings tomorrow.  Is Wednesday possible for you at some point?  Dave  David Nelson
> BOIES, SCHILLER & FLEXNER LLP
> 401 East Las Olas Blvd.  Suite 1200 Fort Lauderdale, FL 33301
>      (Ph)  954.356.0011 (Direct) 954.377.4233(Cell) 954.213.8810

**6.4 Whether the ALJ Committed Reversible Error by failing to provide Complainant [her] due-process right to engage in the discovery process to gather facts and evidence in support of the allegations set-out in [her] OSHA SOX complaint in terms of timeliness; And to reply to ALJ's order to show cause on timeliness ?**

**ANSWER:** Yes

ALJ issued order to show cause timeliness – Trivedi filed motion for conference call and also motion to amend, motion for discovery and motion for stay. ALJ denied motion for conference call, motion for stay and motion for discovery. Trivedi argues that she was denied due process to do discovery to prove – by interrogating FDA officers , 2014 OSHA investigator Tamara and her supervisor at OSHA –Robert Kuss ; as well as she had opportunity to interrogate further and prove that her complaint indeed was timely. And it was closed corruptly twice…

**6.5 The timely filing of the initial complaint with the Secretary of Labor is a claims-processing requirement subject to several defenses such as waiver, estoppel, or equitable tolling. Is timeliness  and not considering filing complaint with FDA as timely—that much of IMPORTANCE that OSHA not ALJ- despite so much things at stake…totally want to trash this and dismiss Trivedi's complaint which proves highest degree of fraud by GE involving at least billion dollar of money that GE made fraudulently selling/ Insite EXC.**

ALJ or parties can waive non jurisdictional, claim processing timeliness ( there are 1000 cases / case laws related to this)requirement ..and GE had not raised affirmative defense of timeliness nor had filed motion to dismiss..but GE had ALJ McGrath acting as GE's general counsel doing work for GE, while being paid by taxpayers like Trivedi.

**ANSWER:** NO

That's why ALJ McGrath should be charged criminally and prosecuted.

## 6.6 The question for the ARB, whether the ALJ could support its original findings with substantial evidence. *See* 29 C.F.R. § 24.110(b)

**ANSWER:** NO

## 6.7 ALJ has failed to apply similar standard as ARB's Sylvester case discussed about FDA's GCP [ in Trivedi case –GMP – good manufacturing practice) As in ARB's Sylvester v. Parexel Int'l, Inc, where FDA's GCP violations led to groundbreaking ruling by ARB- resembling and similar to that- Trivedi wrote to GE, to OSHA in 2014

( find below emails sent to quitam attorney, Tony Scheer… Trivedi forwarded OSHA complaint and supported material to Tony, so that attorney is alibi that Trivedi did provide OSHA sufficient information in 2014) about GE's violations of FDA's current good manufacturing practice (cGMP) requirements and OSHA corruptly closed it in 2014 as not fitting any of 22 OSHA whistleblower statute…

**ANSWER:** Yes

Trivedi in 2014 **OSHA complaint ,**clearly wrote – violations and/or not following standards as per  (1) 600 design nonconformance and defects in production software of Insite Exc. **FDA guideline for NC (Nonconforming)software -- FDA's 21 CFR § 820.90 - Nonconforming product  - **also mentioned 21 CFR 820 part 1** QUALITY SYSTEM REGULATION  (2)21 CFR § 820.250 - Statistical techniques (3) and more…

# That's why Tamara Simpson and Robert Kuss to be CRIMINALLY charged for closing it illegally as not fitting any of OSHA 22 statutes. And also ALJ McGrath charge criminally for blocking discovery and dismissing Trivedi complaint on timeliness.

**Trivedi's arbitration complaint filed on November 5th 2013 ( GE also has copy of this complaint right from November 5, 2013)..where Trivedi**

**mentioned FRUAD and conspiracy.. OSHA had copy of arbitration complaint…**

      **21 CFR 820 part 1**


      **21 CFR** 820.100 CAPA
      **21 CFR** 820.90 Nonconforming Product
      **21 CFR** 820.198 Complaints
      **21 CFR** 820.200 Servicing
      **21 CFR** 820.250 Statistical Techniques

      Management Subsystem
      **21 CFR** 820.20 Management Responsibility
      **21 CFR** 820.22 Quality Audits
      **21 CFR** 820.25 Training
      **21 CFR** 820.22 Quality Audit


OSHA in 2014 and 2021 and ALJ in 2022 has CORRUPTLY and intentionally failed to understand ARB's own application of SOX in terms of FDA related violations….thinking that bullying and distressing Trivedi this way- Trivedi will go away….That's why OSHA people form 214, 2021 and ALJ should be arrested at this very moment.

## 6.8 Discovery rule applies to OSHA SOX - Accrual of Claims SOX when Trivedi came to know for her school alumni Jason Kap about whistlevblowers.gov. "Discovery-based trigger," by which the statute of limitations begins to run when the plaintiff discovers or has enough information from which he or she should have discovered the injury and its cause.

There are 1000 case law that-statute of limitations start to RUN from the day / upon discovery of right…Trivedi came to know from Jason kap on may 2014 about right to file OSHA SOX complaint and same day she did faxed to OSHA in 2014….Whether ALJ MCGrath erred, corruptly , improperly – as a question of law – failed to apply this common law and 1000s of case law PRECEDENT – which makes Trivedi's 2014 complaint timely.

19

**ANSWER:** Yes

### 6.9  Whether ALJ committed reversible illegal error by NOT staying the case pending discovery…

**ANSWER:** Yes.. and that's why ARB to reverse ALJ MCgrath's denial of this motion.

### 6.10 Whether ALJ, OSHA failed to apply( or INTENTIONALLY and KNOWINGLY didn't apply)Anticipatory Obstruction of Justice:  under the Sarbanes-Oxley 18 U.S.C. 1519; which is a criminal statute and TIMELINESS would not have been an ISSUE to dismiss Trivedi's complaint

**ANSWER:** Yes. ALJ and OSHA -NTENTIONALLY and KNOWINGLY didn't apply.

 Despite providing details in OSHA complaint- OSHA and ALJ failed Anticipatory Obstruction of Justice:  under the Sarbanes-Oxley 18 U.S.C. 1519; which is a criminal statute and TIMELINESS would not have been an ISSUE to dismiss Trivedi's complaint- when GE deleted 600 defects in five minutes from database without fixing any of them. ALJ McGrath denied further discovery as well because if he would have allowed that GE.OSHA and his corruption would have been exposed.

### 6.11 Whether ALJ erred by taking judicial notice of Trivedi's district court case against GE..mainly and importantly –he didn't even care to understand ..
### See Sylvester v. Parexel Int'l, Inc., ARB No. 07-12, 2011 (ARB May 26, 2011) we do not take judicial notice of any facts presented during Neuschafer's NLRB proceedings.

**ANSWER:** Yes

6.12 **Whether the fraudulent misrepresentations of the defendants [in this case OSHA investigators in 2014 who fraudulently closed complaint administratively, without giving Trivedi opportunity to appeal to ALJ, 2021]within the** limitations period are viewed through the prism of "continuing violations" or through the equitable tolling principle of fraudulent concealment, permitting Trivedi 's OSHA complaint as timely

**ANSWER:** Yes

6.13 **Sparre v. U.S. Dep't of Labor, 924 F.3d 398, 403 (7th Cir. 2019) ("The Board has recognized principal situations in which equitable tolling may apply: one of them is -when the movant has raised the precise statutory claim in issue but has done so in the wrong forum;")- Whether ALJ MCGrath, with 100% OBVIOUS intention to cover up and act as GE's general counsel – failed to apply, and thus erred – by totally swallowing FDA whistleblower complaint.**

**ANSWER:** Yes

Despite ARB precedent, OSHA manual – wrong forum………..ALJ MCGrath has erred…..see OSHA complaint 2014 which included Trivedi's arbitration statement filed on November

**Trivedi's arbitration complaint filed on November 5th 2013 ( GE also has copy of this complaint right from November 5, 2013)..where Trivedi mentioned. OSHA in 2014 had copy of arbitration complaint…Which clearly stated that Trivedi filed whistleblower complaint to FDA- in a wrong forum.**

21

## 6.14  Isn't it clear that OSHA in 2014 till 2021 and ALJ in 2022; so from 2014 -2022—Trivedi has been a SUBJECT, VICTIM of continuing tort by Department of labor's employees under corruption; ongoing injury and until the injury is stopped – Trivedi's claim are valid and timely.

**ANSWER:** Yes

## 6.15 As in Sylvester's opening brief by Sylvester's attorney and ARB ruling mentioned that

In the present case, the ALJ Decision does not dispute that sufficient facts were plead to establish that a violation of GCP "could constitute a violation of Federal law including the CFR, 18 U.S.C. §1961 (pattern of racketeering activity under the Racketeering and Influenced Corrupt Organizations Act), 18 U.S.C. 1342 (mail fraud), 18 U.S.C. §1343 (wire fraud), 18 U.S.C. §1344 (financial institution fraud) or other federal or state law." ALJ

**Thus, as then in Sylvester case, violations of GCP ; and in Trivedi's case serious violations of GMP** ,for years on most of GE medical devices, including

**(patient monitoring, infant care, anesthesia  [ APPENDIX 7 of this brief ),** imaging devices, electronic health records, MRI- and more……**constitute a violation of federal law including 18 U.S.C. § 1961 (Racketeering under RICO), mail fraud, wire fraud, financial institution fraud, another federal**

22

**or state law…..corrupt ALJ McGrath didn't read Trivedi's district court in Massachusetts ;where Trivedi cited GE's violation to be construed as RICO- but instead only quoted that it was dismissed based on timeliness-**

**and it was 2014 OSHA investigator's intentional act that she didn't apply the same standard for GCP in Sylvester to GMP in GE/Trivedi case…nor 2021 OSHA nor ALJ…so whether it shows that all these people are CORRUPT and did it intentionally. OSHA investigator in 2014- Tamara and Ross were sold, were corrupt that they didn't see this – obvious violation…**

Trivedi clearly state in 2014 OSHA complaint that Insite EXC by GE, had 600 design nonconformance and defects in production firmware ; and it was in VIOLATION of  **FDA guideline for NC software , FDA's 21 CFR § 820.90 - Nonconforming product , HIPPA, HITECH,

**ANSWER:** Yes

**6.16 Cripps v. La. Dep't of Agric. & Forestry, 819 F.3d 221, 232 (5th Cir. 2016) ("Courts analyze substantive due process claims by asking "whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."**

Conroe Creosoting Co. v. Montgomery Cty., 249 F.3d 337, 341 (5th Cir.2001). Relevant here, the denial of a license to practice one's profession can be a

deprivation of a liberty interest if the reasons for the denial offend due process. Schware v. Bd. of Bar Exam'rs, 353 U.S. 232, 238–39, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957).")

… **As above Was ALJ MCGrath's behavior so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.**

**ANSWER:** Yes

## 6.17 "[S]erious instances of attorney misconduct," however, may constitute "extraordinary circumstances" that warrant tolling of a statute of limitations. *Holland*, 560 U.S. at 651-52;

*see also Baldayaque*, 338 F.3d at 152 ("[A]t some point, an attorney's behavior may be so outrageous or so incompetent as to render it extraordinary.") To constitute an 'extraordinary circumstance; satisfied equitable tolling

Despite putting in writing several times to OSHA, ALJ – that non of the attorney Trivedi hired mentioned about Trivedi's right to file OSHA whistleblower complaint – and when Trivedi came to know her RIGHT for OSHA SOX through her MIT alumni ( email as an evidence)—same day on May 3, 2014 – she filed OSHA complaint.

## 6.18 Equitable tolling doctrine under law applies to Trivedi's claim and that the grievance investigation process also served to toll the statute of limitations.

Trivedi going through mediation, arbitration took time..From June 2013 till May 7, 2014(hearing was on May 7- few days after Trivedi filed OSHA 2014 complaint)- arbitrator award was issued on August 2014.

24

**6.19** ==Continuing violations, continuing hard and continuing tort – entire legal arguments worth hundreds of legal cases, were swallowed by O==SHA management, investigators and corrupt ALJ McGrath. These terms applies to GE and DOL, OSHA, ALJ McGrath

# 7  As stated in petition for review with ARB, GE removed remote connectivity section from SEC.GOV Def 14 A filing from 2019 onwards…and as stated in Sylvester…..the same argument Trivedi has presented to OSHA, and corrupt ALJ

*The Complainants also allege that Parexel "knowingly failed to comply with its Business Code of Ethics, an internal control relied upon by both its auditors and shareholders," and that such failure "renders the signature of its Chairman of the Board and Chief Executive Officer on its annual report a violation of the Securities and Exchange Act and SOX." Sylvester Complaint, ¶ 56; Neuschafer Complaint, ¶ 60. OSHA dismissed both complaints, and the Complainants requested a hearingbefore an ALJ.*

Mr. **Swieringa was contacted well within time….and SOX management responsibility –  - this email was submitted to OSHA 2014 investigator too.**

---------- Forwarded message ---------- From: **Robert J. Swieringa** <rjs22@cornell.edu> Date: Tue, Dec 3, 2013 at 12:23 PM Subject: RE: what happened at GEHC To: Madhuri <mcis99@gmail.com>
Madhuri,
In response to your emails to me and our phone conversation today, I have made inquiries with people at GE and will let you know about any developments.
Thanks, Robert Swieringa
Robert J. Swieringa
Professor of Accounting
25

Anne and Elmer Lindseth Dean Emeritus
Johnson Graduate School of Management
337 Sage Hall
Cornell University
Ithaca, NY 14853-6201
Phone: 607-255-0422
Fax: 607-255-6889
Email: rjs22@cornell.edu

# 8  EEOC issued right to sue notice...EEOC considered Trivedi charge timely...Appendix no. 1

I had emailed all EEOC commissioners, Chicago directors , EEOC investigator and had copied CEO of GE Larry Culp, GE board of directors and GE attorneys in that email...................so EEOC would also consider not burning bridge with a big company GE by investigating GE especially when they were copied in email along with GE CEO—they also look at their future job/career prospects-REVOLVING DOOR is a reality --- happens with government branch…and government employee himself has told me that he is afraid of investigating his job –because he may lose his job as GE is a big company—this phone conversation – has been documented in emails to his food chain..

but at least EEOC considered my charge TIMELY... EEOC wrote that they do not want to do systemic investigation...as more than 50 GE victim's names were given....EEOC said their time /resources are limited and they have discretion as to what to investigate and what not..

# 9  Jurisdiction

The Board reviews the ALJ's findings of fact under the substantial evidence standard. 29 C.F.R. § 1980.110(b). The Board reviews questions of law de novo. *See Simpson v. United Parcel Serv.*, ARB No. 06-065, ALJ No. 2005-AIR-031, slip op. at 4 (ARB Mar. 14, 2008).

Trivedi realleges, reasserts, and incorporates by reference the facts and

26

allegations stated in the petition for review filed with ARB ; as though fully set

forth herein, as well as facts currently unknown.

**So, petition for review filed with ARB for additional arguments related to jurisdiction to be considered part of this brief. Thanks and regards.**

# 10    Legal arguments

Legal arguments in Trivedi ' petition for review with ARB is merged with this opening brief. Thanks

## 10.1 The ARB reviews an ALJ's determinations on procedural issues and evidentiary rulings under an abuse of discretion standard

*The ARB reviews an ALJ's determinations on procedural issues and evidentiary rulings under an abuse of discretion standard, i.e., whether, in ruling as he did, the ALJ abused the discretion vested in him to preside over the proceedings. Stalworth v. Justin Davis Enter., Inc., ARB No. 09-038, ALJ No. 2009-STA-001, slip op. at 3 (ARB June 16, 2010); Harvey v. Home Depot U.S.A., Inc., ARB Nos. 04-114, -115, ALJ Nos. 2004-SOX-020, -036, slip op. at 8 (ARB June 2, 2006).*

*Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir. 1996). "The issue is not whether

a plaintiff will ultimately prevail but whether the claimant is **entitled to offer**

**evidence to support the claims."**

ALJ McGrath  upfront and brutally denied Trivedi's motion for discovery

and motion for stay pending discovery – blindly dismissed her claims based on

timeliness- without giving her any opportunity to further present evidence..Such

kind of abuse in pre trial process and blocking due process to prove case- is abuse

of discretion. Thus I request ARB to reverse ALJ McGrath's dismissal.

## 10.2 ALJ McGrath Committed Reversible Error by Failing to Provide Pro Se Complainant [Her] Due Process Right to Engage in the Discovery Process to Gather Facts and Evidence In Support Of the Allegations Set-Out In [Her] Sox Complaint In Response to ALJ's Order To Show Cause

**A. ALJ failed to provide pro se Complainant opportunity to engage in any discovery in the instant action to gather facts and evidence in further support of the allegations set-out in the Complaint and in opposition to ALJ's show cause order**

For example , See ARB case where ARB allowed complainant to do discovery to add evidence..

> **Saporito v. Progress Energy Service Co. ARB No. 11-040, ALJ No. 2011-ERA-6 (ARB Nov. 17, 2011) Saporito argued that he was denied due process** because…[He was][NOT] permitted discovery to collect evidence…. Consequently, we remand this matter to allow Saporito to amend his allegations and add information that supports an inference of an ERA whistleblower claim. Neither party is foreclosed from ….seeking limited discovery needed to respond…..."

✓ **During one and only conference call with GE and Trivedi(**

ARB has transcript for that call)--- just few sentences that GE attorneys told

ALJ about they intend to file motion to dismiss…and instantly – ALJ McGrath

– doing job of GE counsel…said that he will issue order to show cause on

timeliness….

✓ ALJ issued order to show cause on timeliness –

✓ In response to ALJ McGrath's order to show cause – Trivedi filed motion for

conference call and also motion to amend ,motion for discovery and motion for

28

stay pending discovery to answer ALJ Mcgrath's Order to show cause on timeliness. Both were denied…and without due process ALJ McGrath dismissed Trivedi's claims.

✓ Trivedi argues that she was denied due process to do discovery to prove – by interrogating FDA officers , 2014 OSHA investigator Tamara and her supervisor at OSHA –Robert Kuss ; as well as she had opportunity to interrogate further and prove that her complaint indeed was timely. And it was closed corruptly twice…Though in Trivedi's motion for stay pending discovery and motion for discovery – Trivedi did provide evidence about timely filing whistleblower complaint to FDA and her complaint to DHS..but ALJ McGrath didn't care to accept that. See ALJ failed under 29 CFR § 18.201 - Official notice of adjudicative facts and 29 CFR § 18.201 (e) Opportunity to be heard….

✓ Thus ALJ MCGrath has committed reversible error…This is just one example of his error.

✓ Also, when dismissing claims without hearing, discovery-  ALJ McGrath didn't took into consideration…even slightest degree—that there is so much matter – material to this case…disputed.**.**

### As stated in Sylvester v. Parexel  --

The Complainants were denied a hearing wherein they could have proved their case. Instead, the Complainants are before the ARB without a developed record.  Adding insult to injury, the ALJ below failed to make any record, raising serious and to date unanswered

29

## 10.3 The statutes underlying the securities fraud claims speak in terms that clearly contemplate continuing activity. Consequently, the continuing violation doctrine extends the statute of limitations in the context of the federal securities laws.

*See, e.g.,* Section 17(a)(3) of the Securities Act (making it illegal "to engage in any transaction, **practice, or course of business** which operates or would operate as a fraud or deceit upon the purchaser"; Rule 10b-5 under Section 10(b) of the Exchange Act
(making it illegal "to engage in any act, **practice, or course of business** which operates or would operate as a fraud or deceit upon any person,"). Consequently, the continuing violation doctrine extends the statute of limitations in the context of the federal securities laws. *See, e.g., United States v. McDonald*, 576 F.2d 1350 (9th Cir. 1978); *United States v. Brown*, 578 F.2d 1280, 1285 (9th Cir. 1978) (where the sale of the securities occurred outside the five-year limitations period, court found that the mailings of monthly payments to investors constituted an integral part of the fraud, and further noted that: "activities tending to lull investors, either to prevent discovery of a fraud or to permit further fraudulent activities to progress unhindered, have been held to constitute a part of the execution of the fraudulent scheme and to be integral to the offense rather than incidental to it.").  was a part of an ongoing scheme to defraud; indeed one court has characterized like conduct as a "primary method of perpetuating the scheme." *Middlesex Retirement System, supra*, 2007 WL 3286784, *26. Thus, where a defendant's participation in the perpetuation of an ongoing scheme
to commit securities fraud, it is reasonable for him to expect "the statute to begin running at the termination of the scheme." *SEC v. Cotton*, No. SACV 06-0905-AG, slip. op. at 8-9 (C.D. Cal. December 21, 2006) (Attached as Exhibit C); *see SEC v. Ogle*, No. 99 C 609, 2000 WL 45260, at *4 (N.D. Ill. Jan. 11, 2000) (applying continuing violation doctrine to find that Section 2462 did not bar Commission action seeking penalties in market manipulation case). Because the Commission has alleged an ongoing scheme with conduct involving each of the defendants which extends into periods not covered by any period of limitations, the statute of limitations should not apply to any of the conduct that is a part of the scheme.

Trivedi has alleged with very details and proof – of GE's ongoing scheme

related to securities fraud…..Everything was illegally trashed and only thing came

to FOCUS is TIMELINESS>.. GE< ALJ, OSHA people to be arrested for doing

this to Trivedi – while covering up securities fraud.

## 10.4 Continuing violations – as GE kept releasing fraudulent product well after Trivedi's termination – while GE and ALJ using statute of limitations as affirmative defense – If GE was releasing defective, cybersecurity alerts well into 2018- 2022- how come Trivedi is not protected

Federal courts do recognize the doctrine of a "continuing violation" or "continuing wrong" in assessing statute of limitations issues. Under this doctrine, if the original violation occurred outside the statute of limitations, but is closely related to other violations that are not time-barred, recovery may be had for all violations, on the theory that they are part of one, continuing violation. The Supreme Court recognized this doctrine in *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380-81, 102 S. Ct. 1114, 1125 (1982): "Where the challenged violation is a continuous one, the staleness concern disappears. … [When a plaintiff] challenges not just one incident … , but an unlawful practice that continues into the limitations period, the complaint is timely when it is filed within [the limitations period] of the last asserted occurrence of that practice."
because the fraud was a part of a continuing course of conduct, all of the conduct is brought within the period of limitations.

## 10.5 GE healthcare to GE aviation- GE presenting pretext not a team player, need coaching – while putting public health, safety at risk- and to OSHA, OFCCP, ALJ- Trivedi has repeatedly brought up Pattern- and practice ....bad policy that GE has – these ongoing retaliation is continuing violations of various laws- thus Trivedi's OSHA complaint is timely. Trivedi has mentioned "continuous violation" in 2021 online OSHA complaint as well.

https://www.seattletimes.com/business/boeing-aerospace/u-s-senate-whistleblower-report-safety-oversight-falls-short-at-boeing-and-its-suppliers/

**Dec. 13, 2021 at 12:00 pm  Seven named whistleblowers — from Boeing, jet engine supplier GE and the Federal Aviation**

31

## Administration — allege fundamental problems with safety oversight...........

.After discrepancies discovered late in the process complicated the production certification of that engine, Kucera alleges he was blamed and came under "extreme pressure, intimidation, and coercion" that he says forced his resignation in May.

## [Appendix no. 3 of this brief ] Threat of termination

https://www.commerce.senate.gov/services/files/9DCEC985-9D3C-4B47-AC82-CB3449618D05

**In this letter to the Senate, former GE engineer Kucera notes that GE------------------In March 2021, G**E management placed him on a "coaching plan," a scrutiny of his performance that included an explicit warning that "failure to demonstrate sustained improvement in your performance will result in further actions … up to and including termination."
to see a PATTERN -- for GE wide --systemic issue -- and how hiring, handling whistleblower matters and firing is done at GE….Robert's Coaching plan is exactly same as Trivedi Performance improvement plan to be a team player. Another GE aviation engineer has also filed OSHA complaint and is pending at ALJ for raising violations and has also provided 50 former GE employee's information to OFCCP at DOL.

*Interamericas Investments v. Bd. of Governors*, 111 F.3d 376, 382 (5th Cir. 1997) ("A continuing violation applies where the conduct is ongoing, rather than a single event. See Toussie v. United States, 397 U.S. 112, 136 (1970) (continuing violations "set on foot by a single impulse and operated by an unintermittent force").")

*Howard v. Walmart, Inc.*, CIVIL ACTION No. 18-2636-KHV, at *11 at *12 (D. Kan. Apr. 23, 2020) (" Croy, in which an employee claimed that her employer had established a "glass ceiling" on the advancement of female employees. Croy, 345 F.3d at 1203. Even though the employee had not expressly pleaded her claim as such, the Tenth Circuit concluded that it was "more akin to a hostile work environment claim than a discrete act claim" because the employee had alleged that "there was a continuous failure to promote her, which did not involve discrete acts that could or should have triggered any obligation" to file a discrimination charge. Id.")**"instead was part of [a] pattern of discrimination culminating in Plaintiff's termination,"**………………A hostile work environment instead

"occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." Id.")

*see also Lightfoot v. Union Carbide Corp* ., 110 F.3d 898, 907 (2d Cir. 1997) ("Discrete incidents of discrimination ... **will not ordinarily amount to a continuing violation, unless such incidents are specifically related and are allowed to continue unremedied for so long as to amount to a discriminatory policy or practice."** (internal quotation marks omitted)).

*Angel Enters. LP v. Talbot Cnty.*, No. 2842, at \*32-33 (Md. Ct. Spec. App. Aug. 20, 2020) ("The circuit court did not cite, nor has the Board cited on appeal, any cases in support of the proposition that a continuing violation includes a failure to correct a violation. There is, however, authority in other courts, and other contexts, for the proposition that each day a person or entity fails to remedy a code violation is a violation of the code provision. *See Hamer v. City of Trinidad*, 924 F.3d 1093, 1097 (10th Cir.) (a public entity violates the Americans with Disabilities Act each day that it fails to remedy a noncompliant service program or activity), *cert. denied sub nom. City of Trinidad, Colorado v. Hamer*, 140 S. Ct. 644 (2019); *Comm'r of Envtl. Prot v. Connecticut Bldg. Wrecking Co.*, 629 A.2d 1116, 1129 (1983) (continuing violation includes number of days debris illegally deposited as well as subsequent time allowing it to remain there). ")

Alleged constitutional violation is a continuing violation, and therefore his claim is not time-barred…. **Under a continuing violation theory, a new claim accrues each day the violation is extant.** *Interamericas Investments, Ltd. v. Bd. of Governors of the Fed. Reserve Sys.*, 111 F.3d 376, 382 **(5th Cir. 1997)(citing** *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481, 502 n.15 (1968)). A continuing violation applies where the conduct is ongoing, rather than a single event. *Id.* When a claim constitutes a continuing violation, the limitations period begins to run at the end of the violation. *Dews v. Town of Sunnyvale*, 109 F. Supp. 2d 526, 563 (N.D. Tex. 2000).

The Fifth Circuit has held that the continuing violation doctrine applies to claims brought under 42 U.S.C. § 1983. *Heath v. Bd. of Supervisors for S. Univ. & Agric. & Mech. Coll.*, No. 16-30625, 2017 WL 923408, at \*5 (5th Cir. Mar. 8, 2017) (reversing a magistrate judge's finding that plaintiff's section 1983 hostile work environment allegations did not constitute a continuing violation); *see also Boswell v. Claiborne Parish Det. Ctr.*, 629 F. App'x 580, 583 (5th Cir. 2015) (finding plaintiff had pleaded a continuing violation in a section 1983 denial of medical attention case).

33

*Newell Recycling Co., Inc. v. U.S.E.P.A*, 231 F.3d 204, 206-07 (5th Cir. 2000) ("which requires that soil contaminated with PCBs above a certain ppm threshold be disposed of in an EPA-approved incinerator or landfill — was "continuing" in nature. *See Interamericas Investments, Ltd. v. Board of Governors of the Federal Reserve System,* 111 F.3d 376, 382 (5th Cir. 1997) ("A continuing violation applies when the conduct is ongoing, rather than a single event"). The EAB agreed with the EPA. The EAB held that the EPA's TSCA cause of action against Newell did not accrue until the course of conduct complained of no longer continued. *See Fiswick v. United States,* 329 U.S. 211, 216, 67 S.Ct. 224, 91 L.Ed. 196 (1946) ==(statute of limitations for continuing offenses runs from the last day of the continuing offense);== *In re Standard Scrap,* TSCA Appeal No. 87-4, 3 E.A.D. 267, 1990 WL 303875, at *2 (EPA Aug. 2, 1990) (Final Decision) ==("Failure to [properly dispose of PCBs] constitutes a violation of the regulation, and the violation== continues as long as the PCBs remain out of service and in a state of improper disposal"). That is, it did not accrue until 1995, when Newell properly disposed of the soil. If stockpiling the soil was a disposal, we cannot say the EAB's conclusion was arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law. ==Because we hold that the EPA's TSCA cause of action against Newell did not accrue for limitations purposes until 1995, ")==

*Cox v. Bd. of Cnty. Comm'rs*, 436 F. Supp. 3d 1070, 1085-86 (S.D. Ohio 2020) ("For purposes of the present motion to dismiss, the Court finds that Cox has the better of this argument. "As the Clean Water Act makes clear, each day upon which an unpermitted discharge occurs results in a separate and distinct violation of § 301(a)." Wisconsin Res. Prot. Council, Ctr. for Biological Diversity v. Flambeau Min. Co., 903 F.Supp.2d 690, 721 (W.D. Wis. 2012) (citing 33 U.S.C. §§ 1311(a), 1362(12), 1319(d) ). See also Catskill Mountains Chapter of Trout Unlimited, Inc. v. City of New York, 273 F.3d 481, 487 (2d Cir. 2001) (**"[E]ach discharge of a pollutant represents a distinct violation of the Act ....");** **United States v. Rutherford Oil Corp., 756 F.Supp.2d 782, 790-93 (S.D. Tex. 2010) (discussing the "continuing violations exception")**; United States v. Reaves, 923 F.Supp. 1530, 1534 (M.D. Fla. 1996). **" Thus, a citizen-plaintiff "may seek civil penalties for each violation** that accrued within the five years preceding the notice letter." Wisconsin Res. Prot. Council, 903 F.Supp.2d at 721. **The Complaint here sufficiently alleges that the illicit discharges detected by the dry weather**

**screenings are the types of violations which occur every day and continue to the present."**)

## 10.6 Insite and several medical devices' brochure, various medical device manuals) while intentionally concealing that InsiteEXC is NOT in compliance FDA's <u>21 CFR § 820.90 - Nonconforming product</u>, product non conformances, defects and cybersecurity vulnerabilities, aging platform that was falling apart

FDA non-conforming product was alleged in arbitration complaint filed December 2013 and submitted to OSHA for 2014 OSHA complaint. **As per ARB Sylvester case – Trivedi's reasonable objective belief that it was non-conforming. Fraud…hence SOX.** It was Trivedi's responsibility that testing, development, integration of Insite EXC adhere to FDA and other rules – including when it was non-conforming – not to continue releasing..

Once Madhuri realized amount of defects and performance/maintenance

issues Insite Exc was having; it was a fraud and conspiracy to continue

release/ integrate those Insite Exc agents on products like Surgery OEC for

example (where Madhuri was doing testing). Given it is regulated

environment and Madhuri was concerned to continue work on Insite Exc

surgery integration in a reckless way manager/lead wanted.

5) Tamara had in WRITING TRIVEDI's complaint , about 600 design

nonconformance and defects in production software of Insite Exc. **FDA

guideline for NC software

35

## 10.7 Trivedi forwarded OSHA complaint and supported material to Tony Scheer... so that attorney is alibi that Trivedi did provide OSHA sufficient information in 2014 ; and 2014 OSHA complaint stated that GE was violating GMP( good manufacturing practice), HIPPA, HITECH , and more ....and Trivedi clearly wrote to OSHA 2014 that "it was it was a fraud and conspiracy to continue release/ integrate those Insite Exc " agents on products (SOX protected activity)

*******************Beginning of email

From: madhuritrivedi@hotmail.com

To: tscheer@rsfmlaw.com

Subject: RE: OSHA

Date: Wed, 28 May 2014 14:04:09 -0500

**I have also sent OSHA FDA letter; which you already have.**
Sincerely,Madhuri

**From:** Madhuri Trivedi [mailto:madhuritrivedi@hotmail.com]
**Sent:** Wednesday, May 28, 2014 2:30 PM
**To:** tscheer@rsfmlaw.com
**Subject:** OSHA

**These are OSHA documents...**
**Investigator is Tamara Simpson Ph: 414 297 1917.**
http://www.whistleblowers.gov/index.html

**From:** Madhuri Trivedi [mailto:madhuritrivedi@hotmail.com]
**Sent:** Monday, June 02, 2014 5:44 PM
**To:** Tony Scheer
**Subject:** RE:

What would be the best time to talk tomorrow...I will call after speaking with Tamara. Tnx. Sincerely,Madhuri

From: TScheer@rsfmlaw.com

36

To: madhuritrivedi@hotmail.com
Date: Fri, 23 May 2014 17:39:29 -0400
Subject: RE: FDA
Thank you, Madhuri.  I realize now that I will be travelling Tuesday by early
afternoon (going to DC), but I hope we can speak in the morning sometime.
– Tony.
 **Anthony G. Scheer**
Rawls, Scheer, Foster, Mingo & Culp PLLC
Suite 300
1011 East Morehead Street
Charlotte, North Carolina  28204
704-376-3200
Website:  www.rsfmlaw.com

**From:** Madhuri Trivedi [mailto:madhuritrivedi@hotmail.com]
**Sent:** Friday, May 23, 2014 5:30 PM
**To:** Tony Scheer
**Subject:** RE: FDA
 I filled out sheet..
It was nice talking to you.
Thanks and regards,Sincerely,Madhuri

From: TScheer@rsfmlaw.com
To: madhuritrivedi@hotmail.com
Date: Fri, 23 May 2014 16:46:12 -0400
Subject: RE: FDA
Please fill this sheet out and return it to me.

**Anthony G. Scheer**
Rawls, Scheer, Foster, Mingo & Culp PLLC
Suite 300
1011 East Morehead Street
Charlotte, North Carolina  28204
704-376-3200
Website:  www.rsfmlaw.com
 **From:** Madhuri Trivedi [mailto:madhuritrivedi@hotmail.com]
**Sent:** Friday, May 30, 2014 3:33 PM
**To:** tscheer@rsfmlaw.com
**Subject:** OSHA

37

I have appointment with Tamara on Tuesday..I just called her.
  Sincerely,Madhuri
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*End of email

The FDA's current good manufacturing practice (cGMP) requirements as set forth in the quality system regulation for devices, the agency said.

**Madhuri was putting quality at first and foremost in her day to day duties given the history of surgery product with FDA.** FDA has **GMP under federal regulation codified as 21 CFR 820 QUALITY SYSTEM REGULATION Subpart I—Nonconforming product,** 21 CFR § 820.250 - Statistical techniques

**Like sylvester—GCP is under 21 CFR – FDA federal regulation…Trivedi also has alibi….My entire file that I submitted to OSHA – was sent to this attorney…Anything digital –emails- stay on the server…Sylvester case- as here**

indicate that Complainant's Parexel management told them that it considered the breach of GCP to be a crime and that Complainant's Parexel management emailed that the recording of false clinical data of the exact type later reported by Complainants was a crime for which one could go to jail. The ALJ Decision ignored the Parexel document that linked this recordkeeping and data to its reporting duties under the SEC. The ALJ Decision also ignored that Parexel defined SOX compliance as "not just a financial exercise" or that SOX "extends to controls around any activity in the Company that effects, or potentially effect, the financial statements." Most important the ALJ Decision ignored Parexel's own SEC filings and report to its shareholders that fully explain how violation of GCP can impact operating results, damage the company's reputation, damage the company's future and cause financial damage from a research and redo requirement.

38

**Once Madhuri realized** amount of defects and performance/maintenance issues Insite Exc was having; it was a fraud and conspiracy to continue release/ integrate those Insite Exc agents on products like Surgery OEC for example (where Madhuri was doing testing). Given it is regulated environment and Madhuri was concerned to continue work on Insite Exc surgery integration in a reckless way manager/lead wanted.

The plain, unambiguous text of § 1514A(a)(1) establishes six categories of employer conduct against which an employee is protected from retaliation for reporting: violations of 18 U.S.C. § 1341 (mail fraud),18 U.S.C. § 1343 (wire fraud), 18 U.S.C.§ 1344 (bank fraud), 18 U.S.C. § 1348 (securities fraud), any rule or regulation of the SEC, or any provision of Federal law relating to fraud against shareholders.

**Sylvester v. Parexel Intl LLC, No. 07-123, 2011** (Admin. Rev. Bd. May 25, 2011). [The Board reaffirmed its holding that a complainant is protected from retaliation under Section 806 even if the complaints at issue do not relate to fraud against shareholders.]"**Because Congress did not so phrase the statute**, the proper interpretation of § 1514A(a) gives each phrase distinct meaning and holds a claimant who reports violations of 18 U.S.C. §§ 1341, 1343, 1344, or 1348 need not also establish such violations relate to fraud against shareholders to be protected from retaliation under the Act.

The SOX's legislative history indicates that the Accountability Act was implemented to address not only securities fraud (in the aftermath of financial scandals involving Enron, Worldcom, and Arthur Anderson), but also corporate fraud generally.

*See* S. Rep. No. 107-146, at 2 (May 2, 2002) ("This legislation aims to prevent and punish corporate and criminal fraud, protect the victims of such fraud, preserve evidence of such fraud, and hold wrongdoers accountable for their actions.").

**Section 802 assesses criminal penalties upon persons who alter, destroy, conceal, or falsify records "with the intent to impede, obstruct, or influence** the investigation or proper administration of any matter within the **jurisdiction of any department or agency of the United States." 18 U.S.C.A. § 1519.**

*Sylvestor accord, Parexel Int'l v. Feliciano*, 2008 WL 5101642 (use of illegally obtained database to solicit business constituted prohibited wire fraud within meaning of SOX provision"

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**Given the education, training and experience as Trivedi, has, she held a reasonable belief that the conduct complained of constituted a violation of pertinent law. Trivedi began to have concerns that the integration of  INSITE EXC on OEC surgery involved violations of rules, statutes, fede**ral law. Over the course of the Project, the Plaintiff Trivedi raised a number of concer**ns with regard to irregularities that she believed indicated contraventions, violations of SOX anti-fraud statutes. When Trivedi joined GE, Trivedi ahd to go through several trainings…and training module clearly stressed and emphasized includin**g a message from GEHC CEO – about FDA's ban of OEC surgery duty violation of GMP..and that GEHC employee must keep this example in mind each **day when they do their job. While at working at Ge and suffering**

40

**retaliation and labelled as not getting along, not a team player..several of**

**emails Triv**edi sent to GE management including GEHC services CEO, general

manager stated that Trivedi was keeping quality and OEC example in mind while

integrating Insite E**XC on the same platform OEC surgery that was banned by**

**FDA..and when Trivedi joined GE- FDA has just lifted that ban after six**

**years. Portion of email below--- John Dineen was thena  CEO of GE**

**healthcare..**

| | |
|---|---|
| **From:** | *Trivedi*, Madhuri (GE Healthcare) </o=GEMAIL/ou=First Administrative Group/cn=Recipients/cn=212070205> |
| **Sent:** | Friday, March 1, 2013 1:15 PM |
| **To:** | Swinford, Michael J (GE Healthcare) <Michael.Swinford@med.ge.com>; *Holton*, Adam (GE Healthcare) <Adam.*Holton*@ge.com> |
| **Bcc:** | *Trivedi*, Madhuri (GE Healthcare) <Madhuri.J.*Trivedi*@ge.com> |
| **Subject:** | madhuri |

I was just doing my job the way I should be doing.. John Dinneen had sent 15 emails /mentioned during

QMS courses after all the things we should take care. ...**it has been a difficult time for GST** over the **last year considering the backoffice issues and all**. And I have gone above and beyond to keep devices connected workign with FEs and OLEs.

The ARB emphasized that the protections offered under SOX "were

intended to include all good faith and reasonable reporting of fraud, and there

should be no presumption that reporting is otherwise." *Sylvester,* 2011 WL

2165854 at *11 (internal citations and quotations omitted).

41

*Guitron v. Wells Fargo Bank, N.A.*, Civ. 10 No. 3461, 2012 WL 2708517, at *2-3, *15 (N.D. Cal. July 6, 2012) **(complaints to supervisors were considered sufficient evidence [in terms of OSHA SOX complaint] ). Trivedi did timely raised complaint to her GE supervisor and that [protected activity] has been a contributing factor to her termination.**

## 10.8 GE management was on alert since Trivedi entered in GE's mid year performance review – system( which can be accessed by GE people) that "Trivedi went over GE's annual report and presentations"

Thus – Trivedi  went over  – GE annual report  (SEC.gov regulatory filing )

(Midyear review document is submitted as part of Trivedi's deposition taken by GE during arbitration)…Thus GE was on guard that Trivedi is looking at big picture and violations.



GEHC0342

Madhuri Trivedi
Status: Update Submitted 29-Mar-2012

Work on RSVP platform and know more about GEHC                    New Goal

19-Sep-2012

Goal Description and Action Plan : Work with RSVP team to develop RSVP platform
/components.

Develop new feature (s) to deliver value to stake holder(s).

Know more about GEHC/GST customers and applications by visiting/tour of local GEHC
facilities, through GE Annual Report, using information in any media available  and using
overview sessions for application(s).

Status Summary as of : 20-Aug-2012

Goal Status : In Progress-On Track

Status Summary : Went over GE Annual Report/presentations-for 2011; to gain insight
(focussing on GE Healthcare's point).

## External Focus

### Porting InsiteExc on HeliOS platform

Expected Completion Date : 30-Dec-2012

Goal Description and Action Plan : Work with InsiteExc team to deliver HeliOS release.
Develop new feature (s) to deliver value to stake holder(s).

Know more about GEHC/GST customers and applications by visiting/tour of local GEHC
facilities, through GE Annual Report, using information in any media available  and using
overview sessions for application(s).

## Quality and Compliance

### GST Organization & quality Compliance

Expected Completion Date : 30-Dec-2012

Goal Description and Action Plan : Comply with GST Quality Management Procedure and
Work Instructions.  Stay ahead of training and reporting requirements throughout the year.
Support internal and external Audit for InsiteExc HeliOS program. Close all the findings if
there is any. Ensure the security and compliance of application development.

43

| Status | Name | Date(Day/Month/Yr) |
|---|---|---|
| Employee Submitted | Madhuri Trivedi | 28-Mar-2012 |
| Manager Approved | David Mehring | 29-Mar-2012 |
| Discussed | Madhuri Trivedi | 29-Mar-2012 |
| Update Submitted | Madhuri Trivedi | 19- Sep-2012 |
| Update Submitted | Madhuri Trivedi | 20- Aug-2012 |
| Update Submitted | Madhuri Trivedi | 15- Aug-2012 |

Trivedi's mid year review clearly states AUDIT – internal and external – so GE was on guard…while continuing – exploited Trivedi while her PERM labor certificate for her permanent residency was pending with depart of labor.

*As stated in Sylvester.. "The Complainants also allege that Parexel "knowingly failed to comply with its Business Code of Ethics, an internal control relied upon by both its auditors and shareholders, "and that such failure "renders the signature of its Chairman of the Board and Chief Executive Officer on its annual report a violation of the Securities and Exchange Act and SOX."Sylvester Complaint, ¶ 56; Neuschafer Complaint, ¶ 60"*

**Trivedi engaged in a protected activity under SOX is not just for finance fraud but rather extended to the fraud reported by Trivedi** (cybersecurity, quality management, risk, liability, fraud upon shareholders in terms of remote connectivity platform that involved pretty much most of the medical devices GE made. As stated in Sylvester..

44

Complainants "Sarbanes-Oxley Compliance is not just a financial exercise, but extends to

controls around any activity in the Company that effects, or potentially effect, the financial

statements." *Id*. at Ex. 2.

To do otherwise would seriously undermine the intent and purpose for which

Congress enacted the SOX , to protect whistleblower.

Decision Broadly Interpreting the Range of Statutory Violations

Encompassed By the Whistle blower *Provision of SOX -- In Lockheed Martin*

*Corp. v. Admin. Review Bd.*, 717 F.3d 1121 (10th Cir. 2013), complainant Andrea

Brown made an ethics complaint about a senior executive at Lockheed Martin

*Lockheed Martin Corp. v. Admin. Review Bd., U.S. Dep't of Labor*, 717 F.3d
1121, 1136 (10th Cir.2013) (a "contributing factor" is "any factor, which alone or
in combination with other factors, tends to affect in any way the outcome of the
decision").

## 10.9 Supreme Court allowed -- continuing violation theory to toll statute of limitations for violations occurring from 1912 till 1955. Hanover Shoe, Inc. v. United Shoe Mach. Corp., 392 U.S. 481, 502, 88 S. Ct. 2224, 2236, 20 L. Ed. 2d 1231 (1968)

(" The continuing violation doctrine allows a plaintiff in certain
circumstances to recover on the basis of an ongoing policy or practice of illegal
activity initiated prior to the limitations period.") United has also advanced the
argument that because the earliest impact on Hanover of United's lease only policy
occurred in 1912, Hanover's cause of action arose during that year and is now
barred by the applicable Pennsylvania statute of limitations. The Court of Appeals
correctly rejected United's argument in its supplemental opinion. We are not
dealing with a violation which, if it occurs at all, must occur within some specific
and limited time span. Cf. *Emich Motors Corp. v. General Motors Corp.*, 229 F.2d

45

714 (C.A.7th Cir. 1956), upon which United relies. Rather, we are dealing with conduct which constituted a continuing violation of the Sherman Act and which inflicted continuing and accumulating harm on Hanover. Although Hanover could have sued in 1912 for the injury then being inflicted, it was equally entitled to sue in 1955.

**Hanover Shoe case below is for Sherman act- but the point is in Trivedi's case it is continuing violation of Title VII, false claims act, SOX, CFPA, false claims act retaliation [Appendix 12 of this brief] , public policy violation, OSHA whistleblower protection 18 U.S.C.§ 1514A(a)(1) and GE's ongoing fraud. GE knew in July 2014 that I spoke with FBI and FBI said it is quitam.**

**Trivedi alleged continuing violation,** because for speaking up, not joining fraud that GE was doing- and for being a woman ..But in 2020- GE also treated Alexandria Horne- for bringing GE's attention to fraud, serious violations of cybersecurity--and for being a woman- and like Trivedi engaging in a protected activity -Ms. Horne was terminated....Ms. Horne's is just another example--there are more victims for GE's such illegal acts... Thus it is continuing violation.... there are thousand case laws - that tells that when a law is violated --and is ongoing --it is continuing violations...

First circuit/district court must get testimony from cybersecurity researcher Scott Erven- who from outside GE network was able to find vulnerabilities; reported to GE in 2014--GE didn't do public release till 2018 and put large number of patients, hospitals to Risk of misdiagnosed, not timely diagnosed, hacking of their data, patient file.

ALJ nor OSHA has demonstrated by clear and convincing evidence , and/or presented substantial evidence that GE would have taken the same adverse action against Trivedi absent the protected activity.

Rosa fraud—same call ….dismiss untimely..

**************Beginning of email**********

**From:orangeinc@protonmail.com <orangeinc@protonmail.com>**

46

**To:Frederick, James S. - OSHA**
**<Frederick.James.S@dol.gov>orangeinc@protonmail.com**
**<orangeinc@protonmail.com>CC:Koh, Daniel Arrigg - OSEC**
**<Koh.Daniel@dol.gov>**
**Date:Tuesday, August 31st, 2021 at 1:22 PM**

GE aviation also fired recently in 2019 December --another engineer as I have mentioned in past ---and for that OSHA already has an open investigation for raising serious CYBERSECURITY issues with huge data. Thus it is continuing violation.... there are thousand case laws - that tells that when a law is violated --and is ongoing --it is continuing violations... Hanover Shoe, Inc. v. United Shoe Mach. Corp., 392 U.S. 481, 502, 88 S. Ct. 2224, 2236, 20 L. Ed. 2d 1231 (1968)

(" The continuing violation doctrine allows a plaintiff in certain circumstances to recover on the basis of an ongoing policy or practice of illegal activity initiated prior to the limitations period. See Hanover Shoe, Inc. v. United Shoe Mach. Corp., 392 U.S. 481, 502 n.15, 88 S. Ct. 2224, 2236 n.15 (1968).") Hanover Shoe case below is for Sherman act -- but the point is same..

**************end of email***********

## 10.10 Trivedi could establish facts during the course of this litigation that would demonstrate that the statute of limitations should be equitably tolled

"A motion to dismiss **[in Trivedi's case ALJ McGrath's order to show cause]** based on the running of the statute of limitations period may be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled. In fact, a complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Supermail*

*Cargo v. United States*, 68 F.3d at 1206-07 (citations omitted). Because the Trivedi could establish facts during the course of this litigation that would demonstrate that the statute of limitations should be equitably tolled, AFTER GOING through DISCOVERY and interrogating OSHA 2014 people, FDA officers and more…**ALJ McGrath's order to show cause dismissing Trivedi's claims on the basis of the statute of limitations TO BE REVERSED.**

## 10.11    Continuing violation doctrine applies to Eighth Amendment claim of deliberate indifference, Title VII, *Bivens* action – then why it doesn't apply to Trivedi's case AND "discovery-based trigger," by which the statute of limitations begins to run when the plaintiff discovers or has enough information from which he or she should have discovered the injury and its cause.

*Gonzalez v. Hasty*, 802 F.3d 212, 220-21 (2d Cir. 2015)(" While the doctrine's use is most often encountered in connection with actions asserting Title VII violations, its application is by no means limited to that context. We have, for example, applied it to an Eighth Amendment claim of deliberate indifference to serious medical needs brought under 42 U.S.C. § 1983 where the "prisoner challenge[d] a series of acts that together comprise [d]" his claim. *Shomo v. City of New York,* 579 F.3d 176, 182 (2d Cir.2009). We have also applied it to an unlawful takings claim under section 1983. *Sherman v. Town of Chester,* 752 F.3d 554, 566–67 (2d Cir.2014). Other circuits also have invoked the doctrine more broadly. *See, e.g., Turley v. Rednour,* 729 F.3d 645, 651 (7th Cir.2013) (applying the continuing violation doctrine to an Eighth Amendment claim concerning "the cumulative impact of numerous imposed lockdowns" on the plaintiff). We see no reason why the doctrine thus applied from time to time to Eighth Amendment claims against state actors brought under section 1983 would not in a proper case be applicable to an Eighth Amendment claim against federal officials brought under *Bivens. Cf. Chin v. Bowen,* 833 F.2d at 24 ("Both *Bivens* and section 1983 actions are designed

to provide redress for constitutional violations. Though the two actions are not precisely parallel, there is a general trend in the appellate courts to incorporate § 1983 law into *Bivens* suits." (internal quotation marks and footnote omitted)). The controlling feature of the doctrine is not the source of the right of action, but rather the characteristics of the claim. In an attempt to rebut the plaintiff's position that the continuing violation doctrine can apply in a *Bivens* action, the defendants rely on our decision in *Mix v. Delaware & Hudson Railway Co.,* 345 F.3d 82 (2d Cir.2003). There we concluded that the continuing violation doctrine did not apply to a claim for injury under the Federal Employers' Liability Act ("FELA"). *Id.* at 89. The plaintiff had argued that *Morgan* supported the continuing violation doctrine's application to his claim for hearing loss, which he sustained gradually during his employment at various railway yards. *Id.* at 84–85, 89. We rejected that argument, drawing a distinction between Title VII's "occurrence-based trigger for the statute of limitations," by which the statute of limitations begins to run when the "unlawful employment practice has occurred," and FELA's "discovery-based trigger," by which the statute of limitations begins **to run when the plaintiff discovers or has enough information from which he or she should have discovered the injury and its cause.** *Id.* **at 89 (internal quotation marks omitted).** ***Bivens* and section 1983 claims, like those under FELA, typically are subject to a "discovery-based trigger."** But we do not read *Mix* as recognizing a categorical bar to the continuing violation doctrine's application to claims that otherwise would be subject to the discovery rule. Doing so would cast serious doubt on our decision to apply the continuing violation doctrine to a claim otherwise subject to the discovery rule, as we did in *Shomo,* and would render our prior characterization of the continuing violation doctrine as an "exception" to the discovery rule senseless. *See Harris,* 186 F.3d at 248. We therefore do not read *Mix* as a barrier to the application of the doctrine to Gonzalez's **constitutional claims.")**

    *See Heard*, 253 F.3d at 318–20 (explaining that a deliberate refusal to treat a medical problem may qualify as a continuing violation of the Eighth Amendment); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115–18, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) (applying continuing-violation doctrine to hostile work environment claim because that type of claim, by its nature, contemplates a pattern or practice of conduct "in direct contrast to discrete acts").
O'Malley v. Kass Mgmt. Servs., Inc., 539 F. Supp. 3d 935, 939 (N.D. Ill. 2021)

***Thomas v. Ashcroft***, [470 F.3d 491, 496](#) **(2d Cir. 2006) ("A plaintiff bringing a claim under *Bivens* must allege that he has been deprived of a constitutional right by a federal agent acting under color of federal authority.").the Second Circuit has held that in order "**To determine whether the continuing course of conduct doctrine applies, "the defendant must [first] have committed an initial wrong upon the plaintiff." *Flannery v. Singer Asset Fin. Co*., LLC, 312 Conn. 286 (2014). "A second requirement … is that there must be evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto.... This court has held this requirement to be satisfied when there was wrongful conduct of a defendant related to the prior act." *Id.* at *10 (citing *Watts v. Chittenden*, supra, 301 Conn. at 583-85). Such later "wrongful conduct may include acts of omission as well as affirmative acts of misconduct...." *Id.* (citing *Blanchette v. Barrett*, 229 Conn. 256, 264, 640 A.2d 74 (1994)). It may also arise out of a "special relationship between the parties giving rise to … a continuing duty." *Giulietti v. Giulietti*, supra, 65 Conn.App. at 833–35. "The issue … of whether a party engaged in a continuing course of conduct that tolled the running of the statute of limitations is a mixed question of law and fact." *Vanliner Ins. Co. v. Fay*, supra, 98 Conn. App. at 139.

## 10.12    29 C.F.R. Section 1980.109 "reinforces that de novo review" is the standard at the ALJ stage; and that is consistent with the notion that a case is not to be adjudicated on the pleadings or on the OSHA complaint.

*Evans v. United States Environmental Protection Agency,* ARB No. 08-059

(ARB April 30, 2010); during Oral arguments -Jonathan Rees (Rees) for the

Solicitor of Labor's Office Explained to the ARB that 29 C.F.R. Section 1980.109

"reinforces that de novo review" is the standard at the ALJ stage; and that is

consistent with the notion that a case is not to be adjudicated on the pleadings or on

the OSHA complaint. (Emphasis added).

It is well settled in cases arising under the various whistleblower statues that

50

Complainants must be afforded broad discovery in order to support the allegations of retaliation and discrimination in the whistleblower complaint. Notably, in *William Vinnett v. Mitsubishi Power Systems,* ARB Case No. 08-104; ALJ Case No. 2006-ERA-029 (ARB July 27, 2010), the ARB held that The OALJ Rules of Practice and Procedure, however, provide that '[t]he [ALJ] may deny the motion [for summary judgment] whenever the moving party denies access to information by means of discovery to a party opposing the motion.'10 We have said that adjudicators must accord a party appearing pro se fair and equal treatment. . . Only after such documents are produced should the ALJ determine whether a genuine issue of fact exists concerning whether or not MPS knew about Vinnett's protected activity and fired him because of it." *Id*. at 13-14.

As stated earlier, pro se Complainant specifically asked the ALJ for an opportunity to engage in the discovery process in responding to the ALJ Order to show cause. Thus, the ALJ committed reversible error by failing to provide pro se Complainant his due process right to engage in discovery to gather evidence in support of his prima facie complaint. Therefore, as in *Vinnett,* the ARB must remand the instant case to the ALJ and require that the ALJ provide Complainant an opportunity to engage in discovery; and to hold a hearing on the merits of the Complaint as a matter of law.er, the corrupt ALJ INSTANTLY denied it. His

51

intentions are very obvious, he is obstructing justice, not allowing testimony from

FDA, former OSHA investigator..and cover up.

ALJ was required to follow the Rules of Practice and Procedure before the

Office of Administrative Law Judges (OALJ's) – which contemplate that

whistleblower complaints are informal documents intended to initiate an

administrative investigation by OSHA.

*Johnson v. U.S. Bancorp*, No. 11 Civ. 2010, 2012 WL 6615507, at *3 (W.D. Wash. Dec. 18, 2012) stating that "such detail is not required at this stage of the proceedings, [as] Rule 8(a) 'simply calls for enough fact to raise a reasonable **expectation that discovery will reveal evidence' to support the allegations"** (internal citations omitted);

## 10.13    Continuing tort , The continuing violation doctrine provides that the statute of limitations does not begin to run on a continuing wrong until the wrong has been conclude – applies to GE, OSHA, ALJ .......Trivedi also alleges of continuous unlawful acts , continuing violations, continuing harm.

Anderson v. State, 88 Hawai'i 241, 247-48, 965 P.2d 783, 789-90 (Ct. App. 1998)  **("Alleges a continuing tort sufficient to toll the statute of limitations. Generally, a continuing tort is defined as "one inflicted over a period of time; it involves a wrongful conduct that is repeated until desisted, and each day creates a separate cause of action.** A continuing tort sufficient to toll a statute of limitations is occasioned by continual unlawful acts, not by continual ill effects from an original violation, and for there to be a continuing tort there must be a continuing duty." This continuing-tort exception is generally recognized because usually no single incident in a continuous chain of tortious activity can fairly or realistically be identified as the cause of significant harm, [and] it seems proper to regard the cumulative effect of the conduct as actionable. Moreover, since one should not be allowed to acquire a right to continue the tortious conduct, it follows logically that statutes of limitation should not run prior to its cessation.

Curtis v. Firth, 123 Idaho 598, 850 P.2d 749, 754 (Idaho 1993) (holding that a **claim for intentional infliction of emotional distress was a continuing tort for purposes of a statute of limitations (quoting Page v. United States, 234 U.S. App. D.C. 332, 729 F.2d 818, 821-22 (D.C. Cir. App. 1984)**) **(quotation marks omitted)).** Thus, generally, a continuing tort is a tortious act that occurs so repeatedly that it can be termed "continuous," such that one may say that the tortious conduct has not yet ceased. Accordingly, the statute of limitations cannot run, because the tortious conduct is ongoing. The example of the flooding of one's property, as in the instant case and as illustrated by the Restatement (Second) of Torts, is a good one.")

See also Heard v. Sheahan, 253 F.3d 316, 319 (7th Cir.2001) ("A violation is 'continuing,' signifying that a plaintiff can reach back to its beginning even if the beginning lies outside the statutory limitations period").

**See below ALJ and OSHA's continuing denial –to request response from GE , varying excuses to dismiss Trivedi's OSHA complaint – constitutes continuing harm….it shows practice of conduct – Thus continuing tort doctrine….- ranging from 2014 till 2022 by DOL, OSHA, ALJ….to cover up..and not to investigate – even GE committed criminal acts.. by citing the continuing violation doctrine -- which is based on the equitable notion that the statute of limitations should not begin to run until a reasonable person would be aware of the underlying violation.**

*Payton v. Williams*, No. 14-cv-2566, at *14 (N.D. Ill. Dec. 1, 2017) ("Under this doctrine, "**where a tort involves a continuing or repeated injury, 'the limitations period does not begin to run until the date of the last injury or the**

**date the tortious acts cease.'"** *Cooney v. Casady*, 652 F. Supp. 2d 948, 954 (N.D. Ill. 2009) (quoting *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 85-86 (Ill. 2003)). ")

*Tiberi v. Cigna Corp.,* 89 F.3d 1423, 1430 (10th Cir.1996) (quoting 54 C.J.S., *Limitation of Actions* § 177 (1987) (**Thus continuing tort doctrine -Under that doctrine, " 'where a tort involves a continuing or repeated injury, the cause of action accrues at, and limitations begin to run from, the date of the last injury.' "**)).

Trivedi didn't know that OSHA 2014 complaint was closed

administratively and thus –she was not given right to appeal to

ALJ. Trivedi came to know this( add email from Keller) during

conference call with OSHA people Nathan and Keller -- --thus

Trivedi didn't know about it..and as soon as she knew—from

June 2021 call – She started bringing it to DOL food chain of

Koh, Rosa, Frederick..all corrupt..

**The Supreme Court's decision in CTS Corp. v. Waldburger, 134 S.Ct. 2175 (2014), establishes that A statute of limitations begins to run when the cause of action "accrues"**—that is, when the plaintiff can file suit and obtain relief. Measured by this standard, a claim accrues in a personal-injury or property-damage action when the injury occurred or was discovered.

Heardv. Sheahan,253 F.3d316,317 (7thCir. 2001)("Tolling interrupts the statute of  limitations after it has begun to run....") Deliberate indifference…there is a pattern…throughout…
Kovacs v. United States, 614 F.3d 666, 676 (7th Cir.2010) (citation omitted).
(The continuing violation doctrine acts as a defense to the statute of limitations, delaying its accrual or start date.")

## 10.14 the "continuing violations" doctrine, principle of accrual ,postpones the beginning of the limitations period where the defendant inflicts continuing and accumulating harm

In re: Evanston Nw. Healthcare Corp. Antitrust Litig., No. 07 C 04446, 2016 WL 4720014, at *7 (N.D. Ill. Sept. 9, 2016) ("**Another principle of accrual, called the "continuing violations" doctrine, postpones the beginning of the limitations period where the defendant inflicts continuing and accumulating harm. Heard, 253 F.3d at 319; see also Hanover Shoe, Inc. v. United Shoe Mach. Corp., 392 U.S. 481, 502 n.15 (1968) (continuing violation applies where the defendant's conduct "inflict[s] continuing and accumulating harm on [the plaintiff].").**

As noted earlier, the continuing violations doctrine postpones the limitations period where the defendant inflicts continuing and accumulating harm. *Heard*, 253 F.3d at 319. Thus, in order for the doctrine to apply, the plaintiff must be challenging "not just one incident of [unlawful] conduct ... but an unlawful practice that continues into the limitations period ...." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380-81, (1982). In continuing violations cases, "the complaint is timely when it is filed within [the limitations period, measured from] the last asserted occurrence of that practice."[26] *Id.*; *Brunswick Corp. v. Riegel Textile Corp.*, 752 F.2d 261, 271 (7th Cir. 1984) ("[I]f a continuing violation extends into the statutory period, the victim is entitled to complain about the whole violation, no matter how long ago it began ....").

The Court rejected United's argument that "because the earliest impact on Hanover of United's lease only policy occurred in 1912, Hanover's [claim] arose during that year and is now barred by the ... statute of limitations":

**We are not dealing with a violation which, if it occurs at all, must occur within some specific and limited time span. Rather, we are dealing with conduct which constituted a *continuing violation* of the Sherman Act and which *inflicted continuing and accumulating harm* on Hanover. Although Hanover could have sued in 1912 for the injury then** being inflicted, it was equally entitled to sue in 1955.

"A violation is called "continuing," signifying that a plaintiff can reach back to its beginning even if that beginning lies outside the statutory limitations period,. See, e.g., *M.H.D. v. Westminster Schools,* 172 F.3d 797, 804-05 (11th Cir. 1999); *Interamericas Investments , Ltd. v. Board of Governors,* 111 F.3d 376, 382 (5th

Cir. 1997); *Sable v. General Motors Corp.,* 90 F.3d 171, 176 (6th Cir. 1996); *Rapf v. Suffolk County,* 755 F.2d 282, 292 (2d Cir. 1985); *Page v. United States,* 729 F.2d 818, 821-22 (D.C. Cir. 1984). When a single event gives rise to continuing injuries, as in *Sandutch v. Muroski,* 684 F.2d 252, 254 (3d Cir. 1982) "

## 11   James Martin – former GE employee in 1980s – who is now revered FATHER MARTIN – and he has been publicly writing , raising his voice about GE's rampant Sexual harassment he observed first hand in 1980's , freewheeling accounting, GE's bad culture and more- so things are in PUBLIC. Appendix no. 4

So it is related to ongoing issue - while timeliness is an affirmative defense. Father Martin has publicly wrote on Twitter about how bad GE was and his twitter handle is @JamesMartinSJ  --That's what Trivedi's point is.

## 12   Supreme Court Places Another Limitation on Chevron Deference, Agency [DOL] interpretations of statutes of limitations . . . are . . . poor candidates for deference.

https://www.jdsupra.com/legalnews/supreme-court-places-another-limitation-36678/

In *AKM LLC v. Secretary of Labor,* 675 F.3d 752 (D.C. Cir. 2012), Judge Brown stated in a concurring opinion: Agency interpretations of statutes of limitations . . . are . . . poor candidates for deference. In general, statutes of limitations are not the sort of technical provisions requiring or even benefiting from an agency's special expertise. Rather, much like many jurisdictional provisions, these are texts with which courts are intimately familiar, as we interpret and apply them every day.

# 13   Trivedi is entitled to emotional damages under SOX and ALJ knows; but intentionally dismissed case based on timeliness

In Jones v. SouthPeak Interactive Corp., 777 F.3d 658 (4th Cir. 2015)- The Fourth Circuit followed other circuit courts that had reached the same conclusion **and focused on a SOX plaintiff's entitlement to be made "whole.**" *Id.* The court further noted that SOX protects whistleblowers from threats and harassment, which often will cause noneconomic harm. Id. at 672. Finally, the court found no abuse of discretion in the court's award of emotional distress damages. *Id.* at 673. Emotional damages are available under 18 U.S.C. § 1514A(c). The overwhelming majority federal court and agency jurisprudence under the Sarbanes-Oxley Act and federal statutes with similar remedies provisions to § 1514A(c) finds emotional damages to be available.

**OSHA investigator manual -**
**B. Emotional Distress/Mental Anguish/Pain and Suffering.**
Compensatory damages are designed to compensate complainants not only for direct pecuniary loss, but also for emotional distress, pain and suffering, loss of reputation, personal humiliation, and mental anguish resulting from the respondent's adverse employment action. Courts regularly award compensatory damages for demonstrated mental anguish or pain and suffering in winning employment retaliation and discrimination cases. The ARB looks to both OSHA whistleblower cases and other types of retaliation cases to assess the appropriate measure of compensatory damages. Damages for emotional distress and mental anguish may be awarded under all OSHA-administered whistleblower statutes.

# 14   Remand to another ALJ and recusal

Gonzalez contends that the case should be reassigned to a different judge on remand because the district court displayed "prejudice[ ]" and "animosity" towards him. Pl.'s Br. 45, 48. He further contends that the district court improperly coached the defendants' attorneys with respect to the timing of their motions to dismiss and for summary judgment to facilitate their avoidance of discovery.

ALJ McGrath has showed/ acted with lawlessness, animosity, prejudice and is corrupt…based on below legal argument

which ..see *Gonzalez v. Hasty*, 802 F.3d 212, 225 (2d Cir. 2015) ("We consider three factors in determining whether reassignment is warranted:

(1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.

# 15  CONCLUSION

When Trivedi filed OSHA complaint in 2014- Trivedi had objective reasonable belief that law was being violated. But OSHA investigator, under corruption, administratively closed it as not fitting any of OSHA's 22 whistleblower statutes. ( And 2014 OSHA complaint was not closed due to TIMELINESS), Trivedi's whistleblower complaint to Food and Drug administration filed on December 13, 2013 was sufficient to establish timeliness under OSHA equitable tolling rule. As well as Trivedi's complaint to DHS where she clearly in WRITING stated that she was retaliation and asked relief clearly.

During 2021 OSHA complaint – Trivedi provided MOUNTAIN of evidence to support her OSHA SOX complaint as with MERIT and as TIMELY; but (1)despite ongoing violations by GE, (2)cybersecurity alerts by GE , (3)including major cybersecurity alert related to Insite EXC remote connectivity platform which Trivedi reported when at GE and lost her job,(4) Trivedi bringing up critical violations and attention to OSHA, ALJ , (5) as also public health and safety , data at risk,(6) also public policy violation and(7) fraud by GE --- ALJ and OSHA has

58

under CORRUPTION done best to be defendants for GE and illegally DISMISS

Trivedi's OSHA complaint. OSHA people and ALJ McGrath should be charged

CRIMINALLY.

**Please Construe this petition for review – opening brief filed with ARB.**

**And entire case file; I urge ARB to grant all the relief under OSHA SOX**

whistleblower  statute**– make Trivedi whole again.**

**Whistleblower complaints brought before the OALJs  and ARB, so as to**

**promote a policy which serves to protect public health and safety.**

As of May 2022, When Security and Exchange commission ( sec.gov )is

doing rulemaking for cybersecurity- under SOX whistleblower protections, ARB

to make Trivedi complaint Timely. Is timeliness such a CRITICAL factor than

fraud by GE, SEC.gov doing rulemaking, ongoing violations by GE, mountain of

evidence that Trivedi presented? It is not. But it is corruption that my complaint

got dismissed without allowing discovery, on WHIM of ALJ based on timeliness.

Ongoing alerts by GE, department of homeland security, CISA.gov, dated till

December 2020 - make Trivedi's complaint under SOX timely. Thus I request that

ALJ MCGrath dismissal order is REVERSED and ARB to **Remand to another**

**non corrupt judge.**

 ARB must return to intent of SOX….This case is a great example how

federal agencies' staff responsible for whistleblower protection and holding

wrongdoer responsible are UNDERMINING SOX protection sand it is done at the

cost/loss of investor, public, patients, users and society at the large. This is an

ongoing sabotage on whistleblowers. They should be ashamed and leave their job

…may be they all can JOIN GE.

Respectfully Submitted, Date- May 18 , 2022

**Madhuri Trivedi**
/s/Madhuri Trivedi
Phone: (650) 242-5135 Email: orangeinc@protonmail.com

➢ **World summit on innovation and Entrepreneurship** – THE WSIE summit speaker invite– Great presenter 2019 - https://thewsie.com/presenters-2019/

➢ **My cybersecurity whistleblower profile on** whistleblowers.org

https://www.whistleblowers.org/whistleblowers/madhuri-trivedi/

➢ **Linkedin:**- linkedin.com/in/trivedim

# Certificate of service

The filing of this document through EFS will constitute filing of document on those registered parties. Respondents have not registered through EFS – so I have emailed respondent attorney Cassandra cassandra.beckmanwiday@dentons.com

# EMAILS to/part of OALJ appeal filed October 17, 2021 (without attachments – because if I include attachment it will add hundreds of pages to this brief – but I am putting this to show HOW ALJ has omitted, ignored and trashed my filings)

# EMAIL 1

From:                          Madhuri Trivedi <orangeinc@protonmail.com>
Sent:                          Monday, October 17, 2021 7:39 AM
To:                            OALJ-Filings@dol.gov; orangeinc@protonmail.com
Subject:                       Email 1 -Objections to OSHA's finding-General Electric and GE Healthcare/Trivedi/5-3100-21-110

**Attachments:**  cve_mitre_org_cgi_bin_cvename_cgi_name_CVE_2001_1594.pdf; Alex.pdf; EXHIBIT 2   Security Issue in production Insite2.pdf; Silex Technology SX-500_SD-320AN or GE Healthcare MobileLink (Update B) CISA.pdf; Docu 6_ Proposed employment-Trivedi4.pdf; 26 1000_page_test_document.pdf; Docu 7_ Robert letter.pdf; Ex 27 GE OEC MEDICAL SYSTEMS SIGNS CONSENT DECREE WITH FDA TO CORRECT CGMP

1

LAPSES.pdf; ehx FDA letter.pdf; insite EXC total access no remote connection for medical device in hospital (1).png; Madhuri pre arb brief.pdf; GE Healthcare Imaging and Ultrasound Products CISA.pdf; Over 100 GE Healthcare Devices Affected by Critical Vulnerability SecurityWeek.Com.pdf; GE Aestiva and Aespire Anesthesia (Update A) CISA.pdf; ultrasound NVD - CVE-2020-25175.pdf; Cyber Security & Medical Equipment Are We Leaving Ourselves Open To Hackers .pdf; GEHC_Trivedi - Exs 46 & 47 (GEHC0384-0385).pdf; Docu 8_vandana final1.pdf; ex3 GE board of director.pdf; Ex 11 Insite2.0_3Q_2012.pdf; Glen.pdf; 200  defects Below emails.pdf; exhibit Ltr to GE_Req for Reinstatement_07.16.14.pdf; HORNE_V_GENERAL_ELECTRIC_AVI_2021SOX000 29_(AUG_18_2021)_095738_ORDER_PD.PDF - Horne_v_General_Electric_Avi_2021SOX00029_(AUG_1 8_2021)_095738_ORDER_PD.PDF.pdf; ALJ objections.pdf

 **Dear ALJ staff,**

Please find attached timely objections, certificate of service, exhibits.
**ALJ objections.pdf is objections document.**
**has SOX legal arguments. page 30**
**has CFPA arguments. Page 43 onwards**
has GE fraud information. page 30 onwards
has ongoing vulnerabilities page 49
has info about FBI criminal investigation and FBI Milwaukee supervisor's talk in May 2014 about GE matter being false claims act matter; which corrupt OSHA investigators have intentionally and knowingly EXCLUDED..

**insite EXC total access no remote connection for medical device in hospital (1).png is a live screen for connecting GE medical devices** in real hospital-with expired certificates; allows to inject malicious code, ransomware, malware into medical devices.

2

**GE Ultrasound products CISA.pdf is February 2020 DHS CISA alert about GE medical device vulnerabilities**
**GE Healthcare Imaging and Ultrasound Products CISA.pdf is December 2020 DHS CISA alert for vulnerabilties of CVSS v3 9.8 out of 10( critical) .....•**
**ATTENTION: Exploitable remotely/low skill level to exploit   ..2. RISK EVALUATION**
**Successful exploitation of these vulnerabilities could occur if an attacker gains access to**
**the healthcare delivery organization's (HDO) network. If exploited, these vulnerabilities**
**could allow an attacker to gain access to a   ected devices in a way that is comparable**
**with GE (remote) service user privileges. A successful exploitation could expose sensitive**
**data such as a limited set of patient health information (PHI) or could allow the attacker**
**to run arbitrary code, which might impact the availability of the system and allow**
**manipulation of PHI.**

GEHC_Trivedi - Exs 46 & 47 (GEHC0384-0385).pdf is where my program manager- gave green performance rating - and wrote that it is GE's problem. Ge attorney gave this sheet just before hearing, so I can't call Dave Sallis as a witness to testify.
**Please confirm that you received my email..**
Thanks and regards, Madhuri Trivedi
Sent with ProtonMail Secure Email.

# EMAIL 2

| | |
|---|---|
| **From:** | Madhuri Trivedi <orangeinc@protonmail.com> |
| **Sent:** | Monday, October 17, 2021 5:37 AM |
| **To:** | OALJ-Filings@dol.gov; orangeinc@protonmail.com |
| **Subject:** | Email 2 -Objections to OSHA's finding-General Electric and GE Healthcare/Trivedi/5-3100-21-110 |
| **Attachments:** | EMAIL to David Elario to change manager, email to Mike Truman..None o....eml (445 KB); in re GE data breach.pdf; arbitration complaint, subopena for executives with private jets 202....eml (1.92 MB); perm 2021-09-10T15_24_17+00 |

3

00.eml (31.9 KB); orginal complaint -My emails to OSHA
Benjamin Sherill, Robert Kuss & ....eml (192 KB)

Find attached exhibits, evidence.
 Sent with ProtonMail Secure Email.

# EMAIL 3

| | |
|---|---|
| **From:** | Madhuri Trivedi <orangeinc@protonmail.com> |
| **Sent:** | Monday, October 17, 2021 5:37 AM |
| **To:** | OALJ-Filings@dol.gov; orangeinc@protonmail.com |
| **Subject:** | Email 3- Objections to OSHA's finding-General Electric and GE Healthcare/Trivedi/5-3100-21-110 |
| **Attachments:** | Healthcare finance 2021-09-10T16_41_27+00 00.eml (6.04 KB); Fw My email to Mr. Rosa on June 9 before Mr.frederick referred 2021-....eml (69.0 KB); mobile 2021-09-10T14_11_44+00 00.eml (169 KB); orginal complaint -My emails to OSHA Benjamin Sherill, Robert Kuss & ....eml (192 KB); EXHIBIT 2   Security Issue in production Insite2.pdf; losha details 2021-09-10T13_35_40+00 00.eml (650 KB); cfpa 2021-09-10T15_18_53+00 00.eml (746 KB); Re details , violations-2021-08-12T09_13_54+00 00.eml (787 KB); email 12 Re 600 critical design non performance in InsiteEXC 2021-09-....eml (692 KB); GE vulnerabilities 2021-08-26T05_35_17+00 00.eml (1.21 MB); email 7 Insite EXC ACTUAL connection with medical device in hospital....eml (5.05 MB); Exhibit 3 2021-08-12T09_08_19+00 00 - Copy.eml (6.57 MB); Re email 2021-08-16T10_45_56+00 00.eml (12.4 KB) |

Please find attached..

# EMAIL 4

| | |
|---|---|
| **From:** | Madhuri Trivedi <orangeinc@protonmail.com> |
| **Sent:** | Monday, October 17, 2021 5:51 AM |
| **To:** | OALJ-Filings@dol.gov; orangeinc@protonmail.com |
| **Subject:** | Email 4-  Objections to OSHA's finding-General Electric and GE Healthcare/Trivedi/5-3100-21-110 |
| **Attachments:** | Fw Madhuri Trivedi_General Electric Healthcare - OSHA Response 2021-0....eml (540 KB); Ge boston 2021-09- |

15T16_06_52+00 00.eml (1.17 MB); letter 2021-09-10T15_09_53+00 00.eml (1.51 MB)

Find attached.

Sent with ProtonMail Secure Email.

# EMAIL 5

| | |
|---|---|
| **From:** | Madhuri Trivedi <orangeinc@protonmail.com> |
| **Sent:** | Monday, October 17, 2021 6:29 AM |
| **To:** | OALJ-Filings@dol.gov; orangeinc@protonmail.com |
| **Subject:** | Email 5 -  Objections to OSHA's finding-General Electric and GE Healthcare/Trivedi/5-3100-21-110 |
| **Attachments:** | 3-10-14 Madhuri Trivedi.ZIP.PDF; 3-4-14 Wm. Barbiaux.pdf; 3-4-14 Barbiaux Exs. 1-15.pdf; 3-10-14 Trivedi Exs. 1-21 ...PDF |

------- Original Message -------

On Saturday, September 18th, 2021 at 5:32 AM, Madhuri Trivedi <orangeinc@protonmail.com> wrote:

 **I have attached my deposition and Bill - GE architect's deposition-- Bill was trained to evade question - was beating around bush - and during arbitration hearing he came around -**

 OSHA response says -

While these documents indicate that Complainant did believe at the time the adverse actions were taken in part due to her concerns regarding security vulnerabilities, there is no evidence suggesting that Complainant believed that Respondents were not accurately disclosing risks.

**I have submitted several documents  - including SEC EDGAR filings - for years - stating that GE was not accurately disclosing risks.**

**THis shows that GE has bribed OSHA people - and this is illegal..OSHA people must stop doing this or go to jail..**

 Sent with ProtonMail Secure Email.

 ------- Original Message -------

On Saturday, September 18th, 2021 at 1:55 AM, Madhuri Trivedi <orangeinc@protonmail.com> wrote:

5

Mr. Koh, Ms. Zillman -  please forward this email to Martin Walsh - I am
requesting he get involved since July 2 - still OSHA employees are in corrupt way
hiving me hard time by closing it instead of investigating GE - this is beyond
corruption..Since GE and GE's attorneys knows that bribing is only way for GE to
win.

I have written, GE people knows about OSHA considering it timely, and
other  people, investigative journalists, and everyone that OSHA is considering my
complaint timely and going to investigate.

**IT is illegal to close my complaint like this -- despite tons of evidence to not to
do that..**

**Only answer is corruption..**

**I have written 50 times  - in past - not to give my complaint to Ohio - midwest
but to Boston..given that I worked at Boston..intentionally giving to those who
are corrupt..**

**Denise is WIlliam's bose - so William is going to do what Denise told her to do.
Or William is corrupt too.**

# EMAIL 6

| | |
|---|---|
| **From:** | Madhuri Trivedi <orangeinc@protonmail.com> |
| **Sent:** | Wednesday, October 20, 2021 8:56 AM |
| **To:** | OALJ-Filings@dol.gov; orangeinc@protonmail.com |
| **Subject:** | Email 6 -Objections to OSHA's finding-General Electric and GE Healthcare/Trivedi/5-3100-21-110 |
| **Attachments:** | osha response.pdf; arbitration complaint sent to OSHA in 2014.pdf; insite EXC total 1-merged.pdf; my email to rosa before frederick referred.pdf; OSHA investigator.pdf; email 12 Re 600 critical design non performance in InsiteEXC.pdf; EMAIL to David Elario to change manager, email to Mike Truman..None of these people did anything , other than covering up.pdf; Madhuri Trivedi General Electric Healthcare - OSHA Response.pdf; Former SEC reginal director read and confirmed that I have valid SEC claims.pdf; Healthcare finance.pdf; GE |

vulnerabilities.pdf; email to OSHA 2021.pdf; exh 8
PERM.pdf; perm.pdf; ge boston detai.pdf

In my Objections filed October 18- I have some files as eml envelope and one file
as png..I have converted those in to pdf and attaching here...

**1) arbitation complaint sent to OSHA in 2014.pdf** is attachment sent to OSHA
whistle blower complaint - in original complaint in 2014..I sent this to SDaniel
Koh, Frederick James this year again.
**2) osha response. pdf**    == is response OSHA sent in 2014.

**3) OSHA investigator.pdf === I sent email about FDA ban on manufacturing
to OSHA in 2014 at 2.19 pm and same day at 4.52 pm--Tamara emailed me
asking termination date...**

)Below email shows that I wrote to OSHA investigator about FDA's ban on
surgery device and Trivedi's first project to integrate InsiteEXC in this surgery
device...OSHA Investigator Tamara in 2014 also within hours ( I have attached
evidence here in this email --
**From:** Madhuri Trivedi [mailto:orangeinc@protonmail.com]
**Sent:** Friday, September 10, 2021 10:12 AM  **To:** Trepanier; William - OSHA
Trepanier, William - OSHA <Trepanier.William@dol.gov>

**Subject:** mobile  **Attached: -** Ex 27 GE OEC MEDICAL SYSTEMS SIGNS
CONSENT DECREE WITH FDA TO CORRECT CGMP LAPSES.pdf

**4)EMAIL to David Elario to change manager, email to Mike Truman..None of
these people did anything , other than covering up.pdf**    - OSHA investigator
in Sept. 2021 asked me that if I reported to management about  - so I emailed him-
this email trail-- I asked in writing to have a dotted line manager-- despite corrupt
OSHA investigator dismissed and didn't do anything..
**5) Former SEC reginal director read and confirmed that I have valid SEC
claims.pdf    - I would want to call David Nelson- former SEC regional
director of Miami to testify as witness during this DOL ALJ hearing. He
himself read my complaint and confirmed that I have valid SEC claims.**

7

**6) email to OSHA 2021.pdf   -- In Trivedi's Page 26 of ALJ objections. pdf** --
Letter sent by Foley lawfirm clearly says that (exhibit Ltr to GE_Req for
Reinstatement_07.16.14. pdf )  Reports of Technical and Defects on InSite ExC
Project Lead to Retaliation.

# EMAIL 7

| | |
|---|---|
| **From:** | Madhuri Trivedi <orangeinc@protonmail.com> |
| **Sent:** | Wednesday, October 20, 2021 9:05 AM |
| **To:** | OALJ-Filings@dol.gov; orangeinc@protonmail.com |
| **Subject:** | Email 7 -Objections to OSHA's finding-General Electric and GE Healthcare/Trivedi/5-3100-21-110 |
| **Attachments:** | Exhibit 3.pdf; QC_Insite EXC_5241330_1a.pdf; CARESCAPE Monitor B850 - Patient Monitors - Patient Monitoring - Categories - gehealthcare.com.pdf; Radiology, News, Education, Service.pdf; Important.pdf; GE connects ultrasound users to service assistance _ Health Imaging.pdf; IMPORTANT OEC_9900_Elite.pdf |

In my Objections filed October 18- I have some files as eml envelope .I have
converted those in to pdf and attaching here...

Attached pdf shows that GE medical devices- product manuals, press releases
brochures - all avi/ailable on internet , website, in print, for interstate commerce--
WIRE FRAUD
falsely stated "InsiteEXC" as a ROBUST, secure and efficient way to remotely
connect medical devices in hospital...but it was misleading public, hospitals--
because InsiteEXC had failed security tests from day1, had 600 critical defects,
was totally hack able, had 1500 open complaints in database for customer
complaints, was falling apart..Despite and knowingly , GE management- after
Trivedi raised concerns- more aggressively integrated and released InsiteEXC on
all kinds of medical devices that GE sold..OSHA people and GE people should be
in Jail..
Sent with ProtonMail Secure Email.

8

# EXHIBIT 9C



## ADMINISTRATIVE REVIEW BOARD
## UNITED STATES DEPARTMENT OF LABOR

**In the matter of**

**Madhuri Trivedi**                    **ARB CASE NO:- 2022-0026**
                                       **ALJ CASE NO:- 2022SOX00005**

**Complainant**
**v.**
**General electric, GE healthcare**
**Respondents**

# TRIVEDI'S PETITION FOR REHEARING AND REHEARING EN BANC AND MOTION FOR RECONSIDERATION

## Table of Contents

1    This petition for rehearing and rehearing en banc and motion for reconsideration of ARB order dated August 24, 2022; to the full ARB judges panel ( Susan Harthill, Thomas Burrell, Tammy Pust , Stephen Godek – all four judges. My petition presents question of great importance..and I case must not be trashed into garbage illegally… ............................................. 1

2    I am filing a brand new lawsuit against GE,  ARB judges, OSHA, ALJ – and other government officials – for Bivens individual capacity and FTCA all in one lawsuit as codefendants. So GE and government people together…in one single new lawsuit. …I will file this new lawsuit in next few weeks..if you want to resolve then kindly do that…I also have to file in supreme court for current lawsuit. .................................................................................. 1

3    WHY OSHA, ALJ, ARB judges to be ARRESTED & jailed? ............................................. 1

ARB order says transparency and citing lines – but has corruptly not mentioned anywhere in their order- nor even took a trivial / slight notice about GE removing remote connectivity section after ten years from sec.gov 10-K filing. So does OSHA, ALJ, federal judges. That's why I have asked judicial conference to impeach those judges ...................................................................... 1

    *************Already mentioned which ARB swallowed – page 96 of ARB Trivedi brief and page 17 - ARB petition for review ...................................................................................... 2

4    Trivedi's ALJ objections page 41 – about same SEC 10-k filings – that's why ARB , ALJ should be sentences to at least ONE YEAR in PRISON. ............................................................. 3

5    Trivedi ARB petition for review -page 17 ...................................................................... 3

After my fight, GE started putting word "cybersecurity" in its SEC filings.................................. 3

6    Kindly arrange a conference call to go over thousands of pages of evidence..ARB judges can't just walk free by ignoring & omitting this & dismissing my claims. .................................... 3

i

7    ARB order – has picked and choose pieces – as they wish – in order to write their ARB order to act as GE's general counsel. ........................................................................................ 4

8    Trivedi's opening brief with ARB – pdf page number 80 onwards- petition for review was attached  -- it is clear that ARB judges have not read / looked at it…page 80- 276 has solid legal arguments – just so it is not duplicate – I had it as attachment in my OPENING BRIEF>. .......... 4

9    General Counsel of ARB was a non-corrupt person, since approved my petition for hearing at ARB earlier this year. But ARB judges are corrupt – which I was 100% sure that they will affirm ALJ's decision. ARB judges should leave and the general counsel should become ARB chief judge..more like this general counsel are needed. And these corrupt judges should be held accountable. ........................................................................................................................................ 5

10   Find attached with this filing ................................................................................................ 5

11   Despite writing 20 times, that Trivedi didn't know her rights about SOX – until  on May 3, 2014 her MIT alumni wrote her – that email is part of all filings. Despite ARB has ruled that Trivedi waited one year- this is 100% corruption…by ARB..I will be filing FTCA, bivens lawsuit with GE and DOL people as codefendants ...................................................................... 5

12   The ARB has not relied on any new evidence submitted as part of Complainant's briefing to the Board and not included in her filings below ........................................................................... 6

13   Closing eyes to GE's fraud while dismissing Trivedi's claims and affirming GE's criminal behavior to terrorize whistleblowers is criminal behavior from all DOL employees and any government employee involved ........................................................................................................ 6

14   NIST.gov and CISA.gov cybersecurity vulnerabilities public disclosure occurred on June 2022 related to INSITE EXC ............................................................................................................ 6

15   From Trivedi ARB reply brief page 3 (ARB judges Swallowed it)--SEC.GOV FOIA confirmed that Trivedi's GE Healthcare complaint's investigation is active and ongoing by SEC enforcement division ........................................................................................................................... 7

16   Complainant's communications with FDA contained no allegations of whistleblower retaliation related to her termination – motion to compel filed with ALJ  - page 6-<mark>AlReady mentioned this in petition for review ( ARB brief page no 120-</mark> ) isn't this enough to report whistleblower retaliation? ARB judges should be SHACKLED in chain and jailed. ................... 8

17   Trivedi ALJ objections page 20 & 24 - this screenshot and live screen - was part of 2014 OSHA complaint & part of Trivedi arbitration hearing evidence & submission to AAA  -- it clearly lays out violations…that's OSHA 2014-2021, ALJ, ARB shackled in chain & put in jail for at least one eyar….how come closed administratively…& how come doesn't fit 22 OSHA whistleblower statutes. When in 2020 – DHS issues alert (https://us-cert.cisa.gov/ics/advisories/icsma-20-343-01) ............................................................................. 10

    17.1    Trivedi ALJ objections Page 24 ............................................................................. 10

18   Trivedi ALJ objections – mentions Scott Erven – cybersecurity researcher -19 times – ARB nor ALJ cared to NOTICE such a crucial fact – and cisa.gov dhs.gov cybersecurity alert related to Scott's InsiteEXC related finding – vulnerabilities affecting 100s of 1000s of GE medical devices..This proves ARB judges are CORRUPT & must resign , go to jail .............................. 11

    18.1    Page 9 -10 ALJ Objections ..................................................................................... 11

18.2    Page 23 -24 ALJ Objections ................................................. 12

18.3    Page 39 -40 -43 -44 of Attachment 4– of this filing -ENTIRE OALJ ................... 12

18.4    Page  51 of Attachment 4– of this filing- ENTIRE OALJ ..................................... 13

18.5    Page  145 of Attachment 4– of this filing- ENTIRE OALJ ................................... 13

18.6    Page  170 of Attachment 4– of this filing- ENTIRE OALJ ................................... 14

18.7    Page  194 of Attachment 4– of this filing- ENTIRE OALJ ................................... 14

19    Trivedi ARB brief page 30 ....................................................................................... 15

19.1    The statutes underlying the securities fraud claims speak in terms that clearly
contemplate continuing activity. Consequently, the continuing violation doctrine extends
the statute of limitations in the context of the federal securities laws. ................................. 15

20    ARB has swallowed under corruption its own precedent for Sylvester..Trivedi case clear cut
exactly similar to Sylvester v. Parexel Int'l, Inc., ARB No. 07–123, 2011…How OSHA, ALJ &
ARB illegally, knowingly & intentionally omitted Sylvester precedent ( it was their duty both in
2014 & 2021) ............................................................................................................................. 15

20.1    Trivedi ARB opening brief page 17 of pdf – page 6 of brief ................................ 16

20.2    Trivedi ARB brief page 18 – page 29 of pdf ........................................................ 17

20.3    ALJ has failed to apply similar standard as ARB's Sylvester case discussed about
FDA's GCP [ in Trivedi case –GMP –good manufacturing practice) As in ARB's Sylvester
v. Parexel Int'l, Inc, where FDA's GCP violations led to groundbreaking ruling by ARB-
resembling and similar to that- Trivedi wrote to GE, to OSHA in 2014 ........................... 17

20.4    Corrupt ARB judges have vigorously and meticulously took JUDICIAL NOTICE
of Trivedi's litigation with DHS & GE – to illegally dismiss her claims – but to terrorize her
– intentionally IGNORED ENTIRE argument about Sylvester.. Reason to JAIL ARB
judges.  18

20.5    Trivedi ARB brief page 20 ................................................................................... 18

20.6    Trivedi ARB brief page 22 ................................................................................... 18

20.7    Trivedi ARB brief page 35 ................................................................................... 20

20.8    Insite and several medical devices' brochure, various medical device manuals)
while intentionally concealing that InsiteEXC is NOT in compliance FDA's 21 CFR §
820.90 - Nonconforming product, product non conformances, defects and cybersecurity
vulnerabilities, aging platform that was falling apart ........................................................ 20

20.9    Trivedi ARB brief page 41 ................................................................................... 20

20.10    Trivedi ARB brief page 44 ................................................................................. 21

20.11    Trivedi ARB brief page 28 ................................................................................. 22

ALJ McGrath Committed Reversible Error by Failing to Provide Pro Se Complainant [Her]
Due Process Right to Engage in the Discovery Process to Gather Facts and Evidence In
Support Of the Allegations Set-Out In [Her] Sox Complaint In Response to ALJ's Order To
Show Cause ........................................................................................................................ 22

21    USCIS October –November 2013 ( Letter to USCIS – this was electronically transferred..ALJ & ARB , OSHA to be shackled in chain for omitting this.This letter to USCIS has as an attachment as it shows, Trivedi arbitration statement/complaint – which was also part of  OSHA 2014 complaint. Arbitration statement clearly has FDA related federal statute violations, HIPPA, HITECH federal statute violations…and as ARB ruled in Sylvester v. Parexel Int'l, Inc., ARB No. 07–123, 2011  -- that was similar to in Sylvester – good clinical practice violations and in Trivedi's case – violations of good manufacturing practice and HIPPA , HITECH, cybersecurity violations, critical defects--- if ARB wants to apply those in Sylvester case – HOW COME ARB order in Trivedi case – not even slightly mention that..All ARB judges MUST be sentences to PRISON for doing this to Trivedi…in this USCIS communication  - Trivedi clearly wrote REINSTATEMENT, retaliation, whistleblowing, protected activity, cybersecurity violations…what MORE CORRUPT ARB , ALJ, OSHA NEED ) ...................... 24

21.1    Trivedi ARB petition for review page 32 ................................ 24

21.2    Motion to Compel Discovery   page 2, 16 –.............................. 25

22    FDA related................................................................................. 33

22.1    Trivedi ARB petition for review page 32 and page 41 to 46................................. 33

22.2    Motion to compel , discovery page 2 -3 ................................. 33

23    Trivedi ARB brief page 17 .......................................................... 36

24    Isn't it obstruction of justice for ALJ McGrath; who denied discovery to investigate what happened in 2014 & dismissed with prejudice claims based on timeliness?................................ 37

25    ARB order –"she did not make any SOX, CFPA, or other whistleblower retaliation allegations related to her termination in her communications with USCIS"................................ 37

26    ARB omitted CRITICAL FACT & deserves PRISON time – Discovery rule applies to OSHA SOX - Accrual of Claims SOX when Trivedi came to know for her school alumni Jason Kap about whistlevblowers.gov. "Discovery-based trigger," by which the statute of limitations begins to run when the plaintiff discovers or has enough information from which he or she should have discovered the injury and its cause. ................................ 37

26.1    See email below sent to OSHA, part of ALJ Objections…Triveid didn't know till Jason Kap told her about OSHA in May 3, 2014…How come ARB IGNORE THIS>>that's why they should be arrested................................ 38

26.2    Trivedi ARB brief page19 ................................ 38

26.3    Trivedi ARB petition for review  -Page 33............................ 39

27    Trivedi ALJ objections page -3 (  "ALJ does "deno" review , and OSHA's finding has no effect on ALJ's review process.") – despite ALJ denied discovery motion, and ........................ 39

27.1    Trivedi ARB opening brief page 50-52 ................................ 39

"ALJ was required to follow the Rules of Practice and Procedure before the Office of Administrative Law Judges (OALJ's) – which contemplate that whistleblower complaints are informal documents intended to initiate an administrative investigation by OSHA." ................ 39

29 C.F.R. Section 1980.109 "reinforces that de novo review" is the standard at the ALJ stage; and that is consistent with the notion that a case is not to be adjudicated on the pleadings or on the OSHA complaint................................ 40

28    Trivedi's Reasonable reliance on OSHA dismissal letter in 2014- found in the tort of fraud 40

29    Tamara – OSHA investigator closed administratively – hours after Trivedi emailed FDA ban – consent decree. ................................................................................................ 41

30    Corrupt ARB judges mentioned Trivedi's arbitration claims – but entire Arbitration consisted of tons of documents.. and ARB never cared to get arbitration hearing transcript from GE, nor ALJ. All should join GE ................................................................................. 41

31    GE's response June 2022-  ongoing fraud about cybersecurity – GE has not denied ongoing fraud by GE..and ARB judges acted as GE's general counsel – joined GE to come up with timeliness while being BLIND to ongoing fraud. Thus to be put in jail.. .................................... 42

32    Trivedi ARB opening brief page 10 .......................................................................... 42

33    Trivedi ARB opening brief page 10 .......................................................................... 43

34    Trivedi ARB opening brief page 12 .......................................................................... 43

ARB has not addressed about OSHA administratively closing it against its own manual in 2014- omitting critical facts from filing to tailor corrupt ORDER – it looks as if GE was paying them to dismiss Trivedi claims. ................................................................................................ 43

35    OSHA investigator Tamara – as stated in petition for review- when Trivedi sent email to Tamara on June 3, 2014 regarding FDA ban for GE's failure for cGMP – current good manufacturing practice – on OEC surgery- instantly asked termination date and as shown in APPENDIX 6 of this brief – closed Trivedi's OSHA complaint on June 6, 2014 ( Trivedi ARB brief page 15) ................................................................................................ 46

Trivedi petition for review page 62 ("My emails to OSHA investigator -Tamara -I sent email about FDA ban on manufacturing at 2.19 pm and same day at 4.52 pm--Tamara emailed me asking termination date..") ................................................................................ 47

35.1    ARB can subpoena Microsoft who hosts hotmail – ............................................... 47

and they can get this file from Microsoft server to PROVE that 2014 OSHA had this as part of my complaint., But criminal ALJ & ARB had denied motion to compel , discovery..too.If ARB, ALJ, OSHA takes –minor notes of EMAILs that show my TRIVIAL weakness to use against me..but such crucial, critical fact—has been IGNORED>It has GMP -PART 820 ..QUALITY SYSTEM REGULATION  ( FDA defines GMP as part 820- check it yourself )   47

35.2    – like Sylvester V. parexel – GCP – good clinical practice…why ARB intentionally ignored it…? & abusing me..how come it does not fit 22 OSHA statutes? How come it was filed under  11( c) ?How come it was closed admisnitratively even though OSHA manual says – not to close? ................................................................................ 47

See Tamara on June 3, 2014 had this attachment – for Sylvester v. Parexel like – GMP – good manufacturing practice violations… ............................................................. 47

35.3    Trivedi ARB brief EXHIBIT 2 page 177 – entire OSHA 2014 file – OSHA 2021 people, ALJ McGrath had it… ................................................................................ 49

35.4    Ex 27 GE OEC MEDICAL SYSTEMS SIGNS CONSENT DECREE WITH FDA TO CORRECT CGMP LAPSES.pdf ................................................................................ 51

GE OEC MEDICAL SYSTEMS SIGNS CONSENT DECREE WITH FDA TO CORRECT CGMP LAPSES................................................................. 52

36    Trivedi ALJ objections page 16 and Trivedi ARB opening brief page 31 ......................... 62

GE healthcare to GE aviation- GE presenting pretext not a team player, need coaching – while putting public health, safety at risk- and to OSHA, OFCCP, ALJ- Trivedi has repeatedly brought up Pattern- and practice ….bad policy that GE has – these ongoing retaliation is continuing violations of various laws- thus Trivedi's OSHA complaint is timely. Trivedi has mentioned "continuous violation" in 2021 online OSHA complaint as well. ......................... 62

37    Trivedi ARB opening brief page 22................................................................ 63

Isn't it clear that OSHA in 2014 till 2021 and ALJ in 2022; so from 2014 -2022—Trivedi has been a SUBJECT, VICTIM of continuing tort by Department of labor's employees under corruption; ongoing injury and until the injury is stopped – Trivedi's claim are valid and timely. ......................................................................................... 63

38    Trivedi ARB opening brief page 24 and Trivedi ALJ objections page 20 -22 .................... 63

"[S]erious instances of attorney misconduct," however, may constitute "extraordinary circumstances" that warrant tolling of a statute of limitations. *Holland*, 560 U.S. at 651-52;. 63

39    Corrupt ARB's illegal actions - Trivedi ARB petition for review page -13........................ 63

"The Act definitively precludes review based solely on select pieces of evidence and ignoring "evidence from which conflicting inferences could be drawn" *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487-88, 71 S.Ct. 456, 95 L.Ed. 456 (1951)............................................ 63

40    Trivedi petition for review page 16 & 25 ......................................................... 64

41    Trivedi petition for review page 16, 17 ........................................................... 64

42    Trivedi ARB opening brief page 42................................................................ 65

43    Trivedi's ALJ objections filed in 2021– arguments, facts – ALJ & ARB omitted, swallowed to issue their corrupt ORDER ..................................................................... 66

    43.1    Trivedi's ALJ objections page 4 -5............................................................ 66

    43.2    Trivedi's ALJ objections page Page 7 ........................................................ 68

    43.3    while the Trivedi arguments, Bill's deposition, emails, testimony , calling witness to prove that it was not Trivedi's inability, but it was failure of GEHC, GE Energy , GE Digital to work together as a team. That's why I would like GE to enter affidavit from Joseph Purcell, GE intelligent platforms manager that it was GEHC, Gregg Stratton ; who were unable to work with other GE divisions....................................................... 68

    43.4    Even today –June 2021- Security and Exchange Commission (SEC) is setting annual rulemaking agenda for cybersecurity- that proves that this issue is muddy.............. 69

    43.5    Trivedi's ALJ objections page 8- 14............................................................ 69

    43.6    Trivedi ALJ objections Page 15 ............................................................... 75

    43.7    Trivedi ALJ objections Page 22 ............................................................... 75

    43.8    Trivedi ALJ objections Page 22 ............................................................... 76

    43.9    Trivedi ALJ objections Page 23 ............................................................... 77

43.10    Trivedi ALJ objections Page 26 ............................................................ 78

43.11    Trivedi ALJ objections page 27 ............................................................ 78

43.12    Trivedi ALJ objections page 29 ............................................................ 79

44    ARB petition for review Exhibit 1 page 167 of pdf AND First circuit opening brief page 31 filed July 2021 – and also part of district court record filed in 2019 – ECF 143 Trivedi's objections to R&R ............................................................................................................. 79

45    Trivedi ARB opening brief page 52-53 ...................................................... 79

46    Trivedi ARB opening brief page 55 -the "continuing violations" doctrine, principle of accrual ,postpones the beginning of the limitations period where the defendant inflicts continuing and accumulating harm .............................................................................................. 80

47    Trivedi ARB opening brief page 57 -Trivedi is entitled to emotional damages under SOX and ALJ knows; but intentionally dismissed case based on timeliness ........................................ 80

48    Trivedi ARB opening brief page 8 -ALJ & ARB stayed BLIND to violations and to terrorize Trivedi MAGNIFIED trivial thigns to dismiss her claims based on timeliness…That's why all must be shackled in chain & jailed. ................................................................... 80

49    OSHA Anthony Rosa dismissed September 1, 2021 Trivedi OSHA 2014 complaint – in which he stated about administratively closure of 2014 ............................................... 82

( "On June 11, 2021, you spoke by phone conference with both ARA Keller and RSI Terwilliger at your request. You were informed that OSHA was unable to reopen an administrative closure of a complaint ") ............................................................................................... 82

; proof that June 2021 was the first time Trivedi came to know that 2014 complaint was closed corruptly from Denise Keller of MIDWEST OSHA. Discovery based trigger – Trivedi didn't know till then. So how come she act on it – if she didn't know and 2014 OSHA investigators had done this corruption.  1000 case laws—where Trivedi didn't know that it was closed administratively. This same argument has been presented to ALJ and to ARB>>and also that this closure was against OSHA's own investigation manual f- because as peer manual even if complaint untimely or does not meet prima facie case. ............................................. 82

Trivedi ARB brief - Page 48 ---.......................................................... 83

Continuing violation doctrine applies to Eighth Amendment claim of deliberate indifference, Title VII, *Bivens* action – then why it doesn't apply to Trivedi's case AND "discovery-based trigger," by which the statute of limitations begins to run when the plaintiff discovers or has enough information from which he or she should have discovered the injury and its cause. [ Trivedi didn't know her TORT, BIVENS claims against OSHA starting from 2014 – until June 2021 – when she came to know that it was closed administratively).............................. 83

49.1    Also 2014 complaint was not filed under 11 ( c ) – it was corrupt Tamra & Kuss who wrote 11 ( c ) on their own…see June 23, 2014 email to David Nelson – former sec.gov regional director – who, after reading Trivedi material – Told Trivedi that Trivedi had valid securities fraud claim….so..Tamara twisted and put 11 ( c ) & corruptly wrote – Trivedi claims doesn't fit 22 OSHA whistleblower statutes..& June 2014 – Fbi supervisor in Milwaukee informed Trivedi that she had valid Quitam –false claims act ( everything here is part of Trivedi ALJ objections)........................................................... 83

49.2     ROSA dismissal letter......................................................................... 84

49.3     Trivedi petition for review page 41 – ............................................... 87

50   Continuing violation ,FTCA , and they dictate that the statute of limitations does not start to run "any earlier than the last day of the ongoing injury – applies to FTCA claims against DOL 88

51   Trivedi ARB opening brief page 45 and  ALJ objections page 22 ...................................... 89

Supreme Court allowed -- continuing violation theory to toll statute of limitations for violations occurring from 1912 till 1955. Hanover Shoe, Inc. v. United Shoe Mach. Corp., 392 U.S. 481, 502, 88 S. Ct. 2224, 2236, 20 L. Ed. 2d 1231 (1968).................................. 89

52   Gun related incident has been omitted by ARB, ALJ, OSHA; which was part of 2014 OSHA complaint; while minor things ARB, ALJ, OSHA has magnified. This is animal like treatment towards Trivedi ......................................................................................... 90

52.1     Trivedi's arbitration complaint filed November 2013 – which OSHA 2014 complaint had……….......................................................................................... 90

52.2     Trivedi deposition page 172................................................................. 90

53   ARB omitted from Trivedi petition for review ....................................................... 93

53.1     Page 40............................................................................................ 93

53.2     Page 59 ( it is regarding GE's order to show casue response to ALJ McGrath) .... 93

In Funke v. Federal Express Corp. , ARB No. 09-004, ALJ No. 2007-SOX-43 (ARB July 8, 2011) ........................................................................................................ 93

53.3     Page 57............................................................................................ 94

53.4     Page 32, 33....................................................................................... 94

53.5     From Page 34 to 39 judicial notice related Trivedi arguments which ARB trashed-when district court case had no discovery, trial , jur y but rogue judges corruptly dismissing at motion to dismiss stage – how come ARB, ALJ vigorously quote that ......................... 94

53.6     Page 39............................................................................................ 94

53.7     Page 57............................................................................................ 94

53.8     Page 29 Complainant Trivedi did articulate how additional discovery would have avoided denial of the complaint. ............................................................................ 95

53.9     Page 30 Trivedi objects denial of discovery motion – order and stay pending for timeliness. ALJ corruptly denied motion for stay his own OSC .......................................... 96

53.10    Page 29  Motion to recuse has not been ruled upon ................................ 96

53.11    Page 27  (41 CFR 60-1.21. 7B00 Continuing Violation ) ongoing violations, pattern & practice – ARB , ALJ swallowed – this argument was also emailed to Daniel Koh 97

53.12    Page 27 (41 CFR 60-1.21. 7B00 Continuing Violation ) ongoing violations, pattern & practice – ARB , ALJ swallowed – this argument was also emailed to Daniel Koh    100

53.13    Page 26............................................................................................ 104

54    ARB omitted from Trivedi reply brief to GE response to ARB brief page 11-13 ( reply brief had fraud, other good arguments – all trashed by ARB) ........................................................ 104

    54.1    Page 11 ........................................................................................................ 104

55    Fair opportunity legal argument…............................................................................ 104

    55.1    Page 13 ........................................................................................................ 105

56    Trivedi district court case........................................................................................ 106

57    Jurisdiction for FTCA claims against DOL and some claims ( entire document will be part of upcoming lawsuit FTCA & BIVENS - against DOL, ARB , ALJ, OSHA individuals in BIVENS individual capacity ; along with their PARTNER GE as codefendants – here is some highlight)........................................................................................................................ 106

    57.1    ==Wisconsin and Massachusetts personal i==njury tort --- ........................................... 107

    57.2    Intentional infliction of emotional distress against the United States pursuant to the Federal Tort Claims Act (FTCA) , 28 U.S.C. § 2671–2680............................................... 107

    57.3    Negligence ................................................................................................... 108

    57.4    Negligence per se .......................................................................................... 110

    57.5    Misfeasance and non feasance under tort ........................................................... 110

    57.6    Intentional Tort -fraud.................................................................................... 110

    57.7    Malfeasance ................................................................................................. 110

    57.8    "Conspiracy Actionable Under 42 U.S.C. § 1985 (2) Obstructing justice; intimidating party, witness, or juror  AND (3) Depriving persons of rights or privileges " individual capacity ........................................................................................ 110

58    Motion to recuse ALJ MCgrath is still pending..and while it was pending – ROGUE ALJ dismissed Trivedi's claims as untimely –also denied motion for discovery. ............................ 110

59    OIG DOL referral to OSHA ....................................................................................... 110

60    CONCLUSION........................................................................................................ 112

61    Attachment / Evidence............................................................................................ 112

**Cases**

**18 U.S.C. § 1514A(b)2(D)** ................................................................................................ 104

==**18 U.S.C.§ 1514A(a)(1)**== ................................................................................................. 89

*Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013).................................................. 107

*Alexander v. United States*, 721 F.3d 418, 424 (7th Cir. 2013).................................................. 64

*Alexander v. United States*, 721 F.3d 418, 425 (7th Cir. 2013).................................................. 88

Am. Farm Lines v. Black Ball Freight Serv., 397 U.S. 532, 539 (1980)...................................... 95

Avlon **v. American Express Co. ARB No. 09-089, ALJ No. 2008-SOX-51 (ARB May 31, 2011)**.................................................................................................................................... 95

Bechtel Constr. Co. v. Secretary of Labor, 50 F.3d 926, 932 (11th Cir. 1995) ............................ 94

*Britton v. Melvin*, 21-cv-1032-JBM, at *2 (C.D. Ill. Nov. 2, 2021) .......................................... 89

***Britton v. Melvin*, 21-cv-1032-JBM, at *3 (C.D. Ill. Nov. 2, 2021)** ...................................... 88

*Cancer Found., Inc. v. Cerberus Capital Mgmt., LP,* 559 F.3d 671, 674 (7th Cir.2009) ........... 76

*Clapper* v. *Amnesty Int'l USA*, 568 U.S. 398, 409-10 (2013) ............................................... 78

Communications Workers of Am. v. N.J. Dep't of Pers., 282 F.3d 213, 216-217 (3d Cir. 2002) 95

*Devbrow v. Kalu,* 705 F.3d 765, 770 (7th Cir. 2013) ................................................................... 88

*Dominguez v. Hendley,* 545 F.3d 585, 589–90 (7th Cir.2008) .................................................... 64

*Dynamic Image Tech., Inc. v. United States*, 221 F.3d 34, 40 (1st Cir. 2000) ............................ 64

English v. General Elec. Co., 496 U.S. 72 (1990) ....................................................................... 94

Feldman-Boland v. Stanley, 15cv6698, at *7-8 (S.D.N.Y. July 13, 2016) ................................. 105

Fields v. Florida Power Corp., ARB No. 97-
070, ALJ No. 1996-ERA-022, slip op. at 10 (ARB Mar. 13, 1998)............................................. 94

Funke v. Federal Express Corp. , ARB No. 09-004, ALJ No. 2007-SOX-43 (ARB July 8, 2011)
............................................................................................................................................ 93

Goldberg v. Rush Univ. Med. Ctr., 929 F. Supp. 2d 807, 815–16 ,826, 827 (N.D. Ill.  2013) .... 76

*Heard v. Sheahan*, 253 F.3d 316, 318-19 (7th Cir. 2001) ........................................................... 88

*Holland*, 560 U.S. at 651-52 ....................................................................................................... 63

*Hollander v. Brown,* 457 F.3d 688, 691 n. 1 (7th Cir.2006)....................................................... 77

In re GE/CBPS DATA BREACH LITIGATION (1:20-cv-02903-KPF)...................................... 78

In the Matter of: ALEXANDRIA HORNE, Complainant,  v. GENERAL ELECTRIC
AVIATION, ET AL., Respondent................................................................................................. 75

*Indep. Trust Corp. v. Stewart Info. Servs. Corp.,* 665 F.3d 930, 935 (7th Cir.2012) ................. 76

*Jones v. Am. State Bank,* 857 F.2d 494, 499, 500 (8th Cir.1988)................................................. 95

*Loza v. Josephson*, No. 16-8111, 2018 WL 4095097, at *3 (N.D. Ill. Aug. 28, 2018) ............... 88

*McMorris*, 995 F.3d at 300 ......................................................................................................... 78

Meyer, 510 U. S., at 477 ........................................................................................................... 106

*Molina-Garcia v. Fardon*, No. 18-2322, at *3 (7th Cir. Mar. 5, 2019)....................................... 88

**Pachowitz v. Milwaukee & Suburban Transport Corp., 56 Wis. 2d 383, 202 N.W.2d 268
(1972)**........................................................................................................................................ 108

*Pietras v. Bd. of Fire Comm'rs of Farmingville Fire Dist.,* 180 F.3d 468, 474 (2d Cir.1999)..... 95

**Saporito v. Progress Energy Service Co. ARB No. 11-040, ALJ No. 2011-ERA-6 (ARB Nov.
17, 2011)**.................................................................................................................................. 22

*Savory v. Lyons*, 469 F.3d 667, 672-73 (7th Cir. 2006)............................................................... 88

Superior Paving, ARB No. 99-065, slip op. at 2......................................................................... 95

*Surrell v. Ca. Water Serv. Co.,* 518 F.3d 1097, 1104–05 (9th Cir.2008) ................................... 95

*Susan B. Anthony List* v. *Driehaus*, 573 U.S. 149, 158 (2014)..................................................... 78

*Swanson,* 614 F.3d at 404 .......................................................................................................... 107

Sylvester v. Parexel Int'l, Inc., ARB No. 07-12, 2011 (ARB May 26, 2011) ..................... 18

*United States ex rel. Fischer v. Cmty. Health Network, Inc.*, No. 1:14-cv-01215-RLY-DLP, at
*12-13 (S.D. Ind. Nov. 25, 2020)................................................................................................. 76

*United States v. Kwai Fun Wong*, 135 S. Ct. 1625, 1638 (2015) ................................................ 88

**Universal Camera Corp. v. NLRB, 340 U.S. 474 , 481 (1951)**................................................. 63

*Universal Camera Corp. v. NLRB,* 340 U.S. 474, 487-88, 71 S.Ct. 456, 95 L.Ed. 456 (1951) ... 63

*William Vinnett v. Mitsubishi Power Systems,* ARB Case No. 08-104; ALJ Case No. 2006-ERA-
029 (ARB July 27, 2010)............................................................................................................. 40

*Worth v. Tyer,* 276 F.3d 249, 259 (7th Cir.2001) ........................................................................ 95

*Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 394, 102 S.Ct. 1127, 71 L.Ed.2d 234
(1982)........................................................................................................................................... 95

## Statutes

**18 U.S.C. § 1961** ................................................................................................ 19

**18 U.S.C. 1519** ................................................................................................... 79

21 CFR § 820.250 - Statistical techniques ........................................................... 17

**21 CFR § 820.90 - Nonconforming product** ....................................................... 16

**21 CFR 820 part 1** QUALITY SYSTEM REGULATION ................................... 17

**28 U.S.C. § 2680(h)** ........................................................................................... 107

28 U.S.C. §§ 1346(b) .......................................................................................... 106

28 U.S.C. §§ 2671–2680 ..................................................................................... 107

29 C.F.R. § 18.51 Discovery scope and limits ...................................................... 96

29 C.F.R. § 18.51(b)(4)(iii) ................................................................................. 96

29 C.F.R. Section 1980.109 ................................................................................. 40

29 CFR § 18.201 - Official notice of adjudicative facts ........................................ 23

29 CFR § 18.201 (e) Opportunity to be heard ..................................................... 23

29 CFR Subpart B - Claims Against the Government Under the Federal Tort Claims Act ....... 106

31 U.S.C. § 3731 .................................................................................................. 76

41 CFR § 60-50.5 - Nondiscrimination. ......................................................... 97, 100

41 CFR 60-1.21 ........................................................................... 97, 98, 100, 101

41 CFR Part 60-1 - OBLIGATIONS OF CONTRACTORS AND SUBCONTRACTORS 97, 100

41 CFR Subpart B - General Enforcement; Compliance Review and Complaint Procedure 97, 100

42 U.S.C. § 1985 (2) ........................................................................................... 110

42 U.S.C. 2000e-5(e) ........................................................................................... 95

**Massachusetts Tort Claims Act ("MTCA"), M.G.L. c. 258, § 1 et seq.** ................ 107

**Wis. Stat. § 893.57 Intentional torts** ................................................................. 107

**Wisconsin statute 895.045** ................................................................................ 108

## Rules

Federal Rule of Civil Procedure 8(c)(1) ............................................................... 76

1   **This petition for rehearing and rehearing en banc and motion for reconsideration of ARB order dated August 24, 2022; to the full ARB judges panel ( Susan Harthill, Thomas Burrell, Tammy Pust , Stephen Godek – all four judges. My petition presents question of great importance..and I case must not be trashed into garbage illegally...**

2   **I am filing a brand new lawsuit against GE,  ARB judges, OSHA, ALJ – and other government officials – for Bivens individual capacity and FTCA all in one lawsuit as codefendants. So GE and government people together...in one single new lawsuit. ...I will file this new lawsuit in next few weeks..if you want to resolve then kindly do that...I also have to file in supreme court for current lawsuit.**

Intentionally ignoring critical documents.. I have asked congressional inquiry into this systemic corruption – where instead of addressing fraud by GE and corruption- aiding and abetting fraud and citing each other's corrupt order… So this corruption is out in public

3   **WHY OSHA, ALJ, ARB judges to be ARRESTED & jailed?**

**ARB order says transparency and citing lines – but has corruptly not mentioned anywhere in their order- nor even took a trivial / slight notice about GE removing remote connectivity section after ten years from sec.gov 10-K filing. So does OSHA, ALJ, federal judges. That's why I have asked judicial conference to impeach those judges**

So GE REMOVED/STOPPED putting BELOW SECTION entirely from February 24, 2019 till present 2022 in SEC 10-K filing with securities & exchange commission; after  Trivedi sent email  - on January 2019 to Culp – GE CEO, GE board of directors..... Since February 2019- one month after Trivedi's email – GE stopped --
-------------------------SEC.gov website; searching GE's public filing with SEC

1

Filing 10-K - For year 2007 ,2008,2009,2010,2011,2012,2013,2014,2015,2016, 2017 mentions INSITEEXC as follow
Item 7 operations..SIGNIFICANT TRENDS & DEVELOPMENTS MD&A
Healthcare SEGMENT - Our product services include remote diagnostic and repair services for medical equipment manufactured by GE and by others, as well as computerized data management and customer productivity services.
OR
Healthcare systems also offers product services that include remote diagnostic and repair services for medical equipment manufactured by GE and by others.

*************Already mentioned which ARB swallowed – page 96 of ARB Trivedi brief and page 17 - ARB petition for review



Thus Trivedi's SOX whistleblower claims may be equitably modify the statute of limitations in this case based on the record as a whole. Trivedi meets the burden of proving equitable tolling element test; because GE removed remote connectivity section from SEC 10-K and DEF 14 A filing from February 2019. Trivedi claims accrual and ongoing violation by GE.

# 4  Trivedi's ALJ objections page 41 – about same SEC 10-k filings – that's why ARB , ALJ should be sentences to at least ONE YEAR in PRISON.

2. To best of Trivedi's knowledge and search using -EDGAR Search Tools on SEC.gov website; searching GE's public filing with SEC including since 2007 to 2018;type of filings 10-Q, 10-K, 8-K, DEF 14-A…

✓

33. Best of Trivedi's knowledge and search using -EDGAR Search Tools on SEC.gov website; searching GE's public filing with SEC

Filing 10-K - For year 2007 ,2008,2009,2010,2011,2012,2013,2014,2015,2016 mentions INSITEEXC as follow

1. Item 7 operations..SIGNIFICANT TRENDS & DEVELOPMENTS MD&A Healthcare SEGMENT - Our product services include remote diagnostic and repair services for medical equipment manufactured by GE and by others, as well as computerized data management and customer productivity services.

OR

Healthcare systems also offers product services that include remote diagnostic and repair services for medical equipment manufactured by GE and by others.

2. But GE's omission of facts pertaining to an actual, known risk since 2007 about InsiteEXC cybersecurity vulnerabilities and Scott Erven's hacking exploit report from 2014, my internal reports from 2011 to 2013 to GE and later in 2014 during arbitration, and even when I sent email to Mr. Flannery in 2017

# 5  Trivedi ARB petition for review -page 17 After my fight, GE started putting word "cybersecurity" in its SEC filings.

...and GE board of director with biology background was overseeing it...I contacted her right when I was terminated and she replied that she is too high to deal with INDIVIDUAL complaints. What shameless people.

# 6  Kindly arrange a conference call to go over thousands of pages of evidence..ARB judges can't just walk free by ignoring & omitting this & dismissing my claims.

## 7  ARB order – has picked and choose pieces – as they wish – in order to write their ARB order to act as GE's general counsel.

**Omitting critical facts, evidence – and obstructing justice. These are criminal acts and only place these ARB judges belong is a JAIL.**

## 8  Trivedi's opening brief with ARB – pdf page number 80 onwards- petition for review was attached  -- it is clear that ARB judges have not read / looked at it...page 80- 276 has solid legal arguments – just so it is not duplicate – I had it as attachment in my OPENING BRIEF>.



**9  General Counsel of ARB was a non-corrupt person, since approved my petition for hearing at ARB earlier this year. But ARB judges are corrupt – which I was 100% sure that they will affirm ALJ's decision. ARB judges should leave and the general counsel should become ARB chief judge..more like this general counsel are needed. And these corrupt judges should be held accountable.**

**10 Find attached with this filing**

(i)    **"Motion to compel, Motion to compel discovery" in order to reply to ALJ McGrath's Order to show cause on timeliness –January 2022.** ARB has intentionally not mentioned, omitted from ARB order=  this motion was corruptly denied

(ii)    **"motion to amend pleading GE ENRON " January 2022 .It has been** omitted from ARB order.These are the reasons ARB judges to be shackled in chain like ENRON CEO and jailed for corruption.
Since ARB wants to take note as per their ORDER- only things filed at ALJ than  GE ENRON was already filed in January 2022 – Trivedi also provided details about this in her ARB " reply to GE's response brief"…with details of GE's fraud culture and fraud history.

(iii)    **"Motion to have a conference call" to go over** what is already filed in terms of timeliness arguments; which can so far been not looked at." January 2022 -**"ARB order also omitted"**

**11 Despite writing 20 times, that Trivedi didn't know her rights about SOX – until  on May 3, 2014 her MIT alumni wrote her – that email is part of all filings. Despite ARB has ruled that Trivedi waited one year- this is 100% corruption...by ARB..I will be filing FTCA, bivens lawsuit with GE and DOL people as codefendants**

# 12 The ARB has not relied on any new evidence submitted as part of Complainant's briefing to the Board and not included in her filings below

# 13 Closing eyes to GE's fraud while dismissing Trivedi's claims and affirming GE's criminal behavior to terrorize whistleblowers is criminal behavior from all DOL employees and any government employee involved

# 14 NIST.gov and CISA.gov cybersecurity vulnerabilities public disclosure occurred on June 2022 related to INSITE EXC

Trivedi filed as supplemental brief to this corrupt ARB – on July 25, 2022 – ARB order of August 24 – has omitted this MATERIAL information..and thus should be shackled in chain & jailed.

## ADMINISTRATIVE REVIEW BOARD
## UNITED STATES DEPARTMENT OF LABOR

**In the matter of**

**Madhuri Trivedi**                    **ARB CASE NO. 2022-0026**
                                       **ALJ CASE NO:- 2022SOX00005**
**Complainant**
**v.**
**General electric, GE healthcare**

**Respondents**

### Sub:= Petitioner Trivedi's Supplemental brief

Hello,
I am filing this supplemental brief. **These NIST.gov and CISA.gov cybersecurity vulnerabilities public disclosure occurred on June 2022**; related to GE healthcare's ultrasound – Service browser. So I am updating the ARB about this.

6

So GE also knows that upto June 2022 – these issues were plagued ….How come Trivedi's claims are untimely. These vulnerabilities are related to Service browser..and from the beginning INSITE EXC evidence has been provided to OSHA, ALJ…

These vulnerabilities in service browser proves that Trivedi's claims are timely, or doesn't fit OSHA's 22 statutes as written by OSHA, ALJ..

GE, GE's attorneys, OSHA , ALJ held criminally liable for this fraud..aiding and abetting fraud ( enron style)

## Latest in June 2022 - why to arrest all at this moment

1) A vulnerability classified as problematic has been found in GE Voluson S8. Affected is the file /uscgi-bin/users.cgi of the Service Browser. The manipulation leads to improper authentication and elevated access possibilities. It is possible to launch the attack on the local host.

https://nvd.nist.gov/vuln/detail/CVE-2020-36548

2) A vulnerability was found in GE Voluson S8. It has been rated as critical. This issue affects the Service Browser which itroduces hard-coded credentials. Attacking locally is a requirement. It is recommended to change the configuration settings.

https://nvd.nist.gov/vuln/detail/CVE-2020-36547

**CVE Dictionary Entry:**
CVE-2020-36548
**NVD Published Date:**
06/17/2022
**NVD Last Modified:**
06/30/2022

## 15 From Trivedi ARB reply brief page 3 (ARB judges Swallowed it)--SEC.GOV FOIA confirmed that Trivedi's GE Healthcare complaint's investigation is active and ongoing by SEC enforcement division

**FOIA RESPONSE**

**We have confirmed with Division of Enforcement staff that the investigation from which you seek records is still active and ongoing**

# 16 Complainant's communications with FDA contained no allegations of whistleblower retaliation related to her termination – motion to compel filed with ALJ - page 6-Already mentioned this in petition for review ( ARB brief page no 120- ) isn't this enough to report whistleblower retaliation? ARB judges should be SHACKLED in chain and jailed.

"Once Madhuri realized amount of defects and performance/maintenance issues Insite Exc was having;it was a fraud and conspiracy to continue release/ integrate those Insite Exc agents on products like Surgery OEC for example (where Madhuri was doing testing). Given it is regulated environment and Madhuri was concerned to continue work on Insite Exc surgery integration"

---------- Forwarded message ---------

From: **Madhuri** <mcis99@gmail.com>

Date: Wed, Feb 12, 2014 at 6:54 PM

Subject: Fwd: info

To: Myers, Charles F <charles.myers@fda.hhs.gov>

Respected Charles

>>> I am copying small portion here in email. Defects/design non conformance in year of 2012/2013.

>>>Also I have attached document that mentions in order to have Insite Exc work

**"Enable memory protection to help mitigate online attacks" which was required to be unchecked in settings in order to establish/install remote connectivity." Managers did not care much to address it.**

Thanks

Insite Exc Platform

Presenter: Nate Davis

**Open Issues:**

•465 Design Non-Conformances

Not-so-Good News

We have been experiencing a large number of issues on the device-facing side of the application. This means that even though users can get into the Questra app, they cannot use remote service features of the application. We have mechanisms to detect this issue, but not to do trending on it.

----------------------------------------------------------------------------------------------------

Surgery Manager in March 2012 during Insite Exc integration with Surgery OEC mobile arm (Madhuri was a team member for this; Madhuri was assigned to do testing related work) expressed serious concerns/objections to team leads/managers about how

important quality/testing steps were not included .**These steps are required by FDA guidelines**..For
example automated code review software and code coverage. Madhuri emailed Dave Mehring the same concern in Jan 2012 about the need to use automated code review software and code coverage during Insite Exc testing.

--------------------------------------------------------------

<mark>Once Madhuri realized amount of defects and performance/maintenance issues Insite Exc was having;it was a fraud and conspiracy to continue release/</mark>
integrate those Insite Exc agents on products like Surgery OEC for example (where Madhuri was doing testing). Given it is regulated environment and Madhuri was concerned to continue work on Insite Exc surgery integration . This happened in March 2012. **Despite all these ; management did not**
care and they proudly continued Insite Exc Integration on all kind of medical devices
and applications .

--------------------------------------------------------------------------------------------------
-----Bill Barbiux (principle engineer for GEHC 25 years) in a meeting in 2013 with 20 people( management and engineers) said that "our resources are not trained in SECURITY,
when we launched Insite Exc product; we had to move it from public facing website to internal website because it failed security tests."
But even if it is internal website...security needs to be taken care if it is vulnerable from inside the network/outside the network.
--------------------------------------------------------------------------------------------------
There were several hundred customer complaints for Insite Exc support were logged . Insite
Exc was falling apart.
On Sun, Dec 15, 2013 at 10:22 AM,
Silverman, Steven <Steven.Silverman@fda.hhs.gov> wrote:

To: Madhuri Trivedi
Thank you for sharing this information. I will forward it to Center for Devices managers with responsibility for the devices that you reference.
Steve Silverman
Director, Office of Compliance

Center for Devices and Radiological Health
(301) 796-5500

**17 Trivedi ALJ objections page 20 & 24 - this screenshot and live screen - was part of 2014 OSHA complaint & part of Trivedi arbitration hearing evidence & submission to AAA  -- it clearly lays out violations...that's OSHA 2014-2021, ALJ, ARB shackled in chain & put in jail for at least one eyar ....how come closed administratively...& how come doesn't fit 22 OSHA whistleblower statutes. When in 2020 – DHS issues alert ([https://us-cert.cisa.gov/ics/advisories/icsma-20-343-01](https://us-cert.cisa.gov/ics/advisories/icsma-20-343-01))**

**Attached is a live screen for connecting GE medical devices** in real hospital- this was in production when I was there -- It had expired certificates for Raviewer - which used ActiveX. ActiveX was used to take full control- remote connection with medical devices and change data , configuration of medical devices....By exploiting this expired credentials of certificate- someone can inject their own malware..ransomeware ..this defect was there for a while-Such ActiveX allows to change data on harddrive , and have full access; because it is not done in a sandbox...No one at GE cared nor they took seriously enormity, technical -hacking risk..for them it was revenue, money- and also lack of technical know how ...so then why blame me for not getting along with those who were this fraudsters and incompetent...This is putting public health and safety at risk-knowingly..

**17.1 Trivedi ALJ objections Page 24**

**insite EXC total access no remote connection for medical device in hospital (1).png is a live screen for connecting GE medical devices in real hospital-with expired certificates; allows to inject malicious code, ransomware, malware into medical devices.**

✓ **GE Ultrasound products CISA.pdf is February 2020** DHS
**CISA alert about GE medical device vulnerabilities**
**GE Healthcare Imaging and Ultrasound Products CISA.pdf is December 2020 DHS CISA alert for vulnerabilties of CVSS v3 9.8  out of 10( critical) .....• ATTENTION: Exploitable remotely/low skill level to exploit   ..2. RISK EVALUATION**

Successful exploitation of these vulnerabilities could occur if an attacker gains access to the healthcare delivery organization's (HDO) network. If exploited, these vulnerabilities could allow an attacker to gain access to a   ected devices in a way that is comparable with GE (remote) service user privileges. A successful exploitation could expose sensitive data such as a limited set of patient health information (PHI) or could allow the attacker
to run arbitrary code, which might impact the availability of the system and allow manipulation of PHI.

## 18 Trivedi ALJ objections – mentions Scott Erven – cybersecurity researcher -19 times – ARB nor ALJ cared to NOTICE such a crucial fact – and cisa.gov dhs.gov cybersecurity alert related to Scott's InsiteEXC related finding – vulnerabilities affecting 100s of 1000s of GE medical devices..This proves ARB judges are CORRUPT & must resign , go to jail

### 18.1 Page 9 -10 ALJ Objections

 These attachment have GE issued alert in 2018- which had medical device vulnerabilities that existed when I was working at GE 2018 Cybersecurity alert by GE for hundreds of thousands of medical devices- for which I was fired to speak up and not join GE fraud scheme.
1) Trivedi's position is corroborated by Scott Erven, an independent cybersecurity Researcher. Finally GE and Department of homeland security(DHS) issued ICERT ALERT in February/March 2018(EXHIBIT 1) for cybersecurity vulnerabilities related to many types of GE medical devices worldwide. Following GE devices were affected.1) Scott Erven reported these cyber vulnerabilities to GE in 2014.
3) Insider threat mitigation didn't exist..as Bill Baribux –GE architect testified (EXHIBIT 3) InsiteEXC failed all security tests on day ONE in year 2008 ;so they moved it from public facing to inside GE network but GE has 300,000 employees and as Scott Erven proved that InsiteEXC was vulnerable from hospital/outside GE network as well.
4) From my phone conversation with Scott on Feb 22nd 2019 he was also wondering
that how come GE not address it/(no fix, patch or recall) despite having lots of press around it for 4 years and many security researchers knew about it and wrote. After Scott report in 2014 ; vulnerabilities were unpatched even though it was wide open to be hacked and manipulated
5) (Somehow all of a sudden GE released a patch in Feb/March 2018.)

6) This is just a tip of an icerburg –vulnerability Scott reported ;was few of 465 total critical defects.

## 18.2 Page 23 -24 ALJ Objections

40. Some catalog of cybersecurity vulnerabilities alert GE issues through CISA -department of homeland security –till December 2021- thus ongoing violation, makes my complaint timely. Item 1 is holy grail -Scott reported first to GE in 2014- as it affect 100s of 1000s of medical devices- specifically and exactly what GE is touting in all their SEC filings as robust, with lack of internal controls and more.

Latest in December 2020, GE is issuing alert through DHS for remote connectivity issues— while misleading first circuit court by stating totally opposite scenario.

42. Allegations of ongoing fraud should not be dismissed on the basis of the statute of limitations; when Trivedi allege "ongoing fraudulent scheme"

Scott Erven's alert in 2018, specifically mentions "INSITE EXC" as alleged in Trivedi case.

(1) GE made false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, )

United States ex rel. Sperandeo v. Neurological Inst. & Specialty Centers PC, No. 2:14-CV-158-JVB-JEM, 2021 WL 1177071, at *4 (N.D. Ind. Mar. 29, 2021) ("Sperandeo counters that allegations of ongoing fraud should not be dismissed on the basis of the statute of limitations. ").

[Trivedi was put on a PIP by GE for not joing fraud scheme] [Trivedi reported first internally]

## 18.3 Page 39 -40 -43 -44 of Attachment 4– of this filing -ENTIRE OALJ

2. GE had consistently reported/misled public and customers that InsiteEXC quality, HIPPA, HITECH, robust cyber security (EXHIBT 17 and Insite brochure, various medical device manuals) while intentionally concealing that InsiteEXC is NOT in compliance FDA's 21 CFR § 820.90 - Nonconforming product, product non conformances, defects and cybersecurity vulnerabilities, aging platform that was falling apart and Scott Erven's report.

28. GE publicly dismissed reports Scott Erven submitted in 2015 in –Forbes news article .

2. But GE's omission of facts pertaining to an actual, known risk since 2007 about InsiteEXC cybersecurity vulnerabilities and Scott Erven's hacking exploit report from 2014, my internal reports from 2011 to 2013 to GE and later in 2014 during arbitration, and even when I sent email to Mr. Flannery in 2017

5. GE knowingly never released patch nor made press release/public disclosure nor

SEC filing about Icert /DHS alert about security vulnerabilities related to Scott Erven nor me nor all issues related to insiteexc ....so these two are contradictory and shows that GE conspired .played with regulators and investors, public by saying something and doing something else...because after reading DEF 14 A it looks nice that how GE is doing in digital world – internet of things –but at the same time have not addressed and kept public vulnerable to hacking attacks; and in effect CIRCA STONEAGE.

## 18.4 Page  51 of Attachment 4– of this filing- ENTIRE OALJ



**Advisory (ICSMA-18-037-02)**
GE Medical Devices Vulnerability
Original release date: March 13, 2018

Legal Notice

All information products included in http://ics-cert us-cert gov are provided "as is" for informational purposes

**OVERVIEW**

This advisory was originally posted to the HSIN ICS-CERT library on February 6, 2018, and is being released to the NCCIC/ICS-CERT website.

Independent researcher Scott Erven submitted information regarding the potential use of default or hard-coded credentials in multiple GE Healthcare products. Following the researcher's report, GE performed a self-assessment and validated that multiple GE Healthcare products use default or hard-coded credentials. GE has reviewed capability to change passwords identified by the researcher within the product documentation, and users are advised to contact GE Service for assistance in changing passwords.

Vulnerability information about the affected products is publicly available.

## 18.5 Page  145 of Attachment 4– of this filing- ENTIRE OALJ

# Cyber Security & Medical Equipment: Are We Leaving Ourselves Open To Hackers?

*Sophie Davidson*

**Researchers Scott Erven and Mark Callao revealed breaches in the security of thousands of medical systems at the recent Derbycon conference. Hospital equipment including MRI scans and defibrillators are vulnerable to attacks from hackers putting patients lives at risk.**

**Medical device internet security must be tightened**

## 18.6 Page  170 of Attachment 4– of this filing- ENTIRE OALJ

| | |
|---|---|
| **From:** | Madhuri Trivedi <orangeinc@protonmail.com> |
| **Sent:** | Monday, August 16, 2021 6:46 AM |
| **To:** | Koh; Daniel Arrigg - OSEC; Frederick James S. - OSHA; Rosa; Anthony - OSHA |
| **Subject:** | Re: email |

Things are so egregious that I don't have words..cybersecurity researcher Scott Erven-who from outside GE network was able to find vulnerabilities..reported to GE in 2014--GE didn't do public release till 2018 and put large number of patients, hospitals to Risk of misdiagnosed, not timely diagnosed, hacking of their data, patient file ...
Sent with ProtonMail Secure Email.

## 18.7 Page  194 of Attachment 4– of this filing- ENTIRE OALJ

| From: | Madhuri Trivedi <orangeinc@protonmail.com> |
|---|---|
| Sent: | Thursday, August 26, 2021 1:35 AM |
| To: | Koh; Daniel Arrigg - OSEC; Frederick, James S. - OSHA; Rosa, Anthony - OSHA |
| Subject: | GE vulnerabilities |
| Attachments: | GE Aestiva and Aespire Anesthesia (Update A) CISA.pdf; GE CARESCAPE, ApexPro, and Clinical Information Center systems CISA.pdf; GE Healthcare Imaging and Ultrasound Products CISA.pdf; ex 1GE Medical Devices Vulnerability _ ICS-CERT.pdf; GE Ultrasound products CISA.pdf; ActiveX CISA GE Communicator CISA.pdf Silex Technology SX-500 SD-320AN or GE Healthcare MobileLink (Update B) CISA.pdf |

Some catalog of cybersecurity vulnerabilities alert GE issues through CISA -department of homeland security - -

Item 1 is holy grail -Scott reported first to GE in 2014- as it affect 100s of 100s of medical devices- specifically and exactly what GE is touting as robust. with lack of internal controls and more

# 19 Trivedi ARB brief page 30

## 19.1 The statutes underlying the securities fraud claims speak in terms that clearly contemplate continuing activity. Consequently, the continuing violation doctrine extends the statute of limitations in the context of the federal securities laws.

………………………….. Trivedi has alleged with very details and proof – of GE's ongoing scheme related to securities fraud…..Everything was illegally trashed and only thing came to FOCUS is TIMELINESS>.. GE< ALJ, OSHA people to be arrested for doing this to Trivedi – while covering up securities fraud.

# 20 ARB has swallowed under corruption its own precedent for Sylvester..Trivedi case clear cut exactly similar to Sylvester v. Parexel Int'l, Inc., ARB No. 07–123, 2011…How OSHA, ALJ & ARB illegally, knowingly & intentionally omitted Sylvester precedent ( it was their duty both in 2014 & 2021)

ARB order issued August 24, 2022 – ARB has swallowed Sylvester – hasn't mentioned it SINGLE time – Trivedi's ARB brief mentions **Sylvester 21 TIMES…..**

15

# Despite Trivedi's OSHA complaint , & filings /claims identical to Sylvester..Nor ARB has mentioned that OSHA violated it's own manual by administratively closing 2014 complaint.

## 20.1 Trivedi ARB opening brief page 17 of pdf – page 6 of brief

As ARB stated in *Sylvester v. Parexel- "Garrido told her that "the termination decision was a 'corporate decision' and that USDOL/OALJ REPORTER PAGE 6 she was terminated because she was 'not a team player.' "  Sylvester Complaint ¶ 43. Jones discharged Neuschafer on August 10, 2006. Jones stated that "the reason for termination was that Neuschafer's personality did not fit in."*

While employed at GE and after suffering retaliation – Trivedi clearly wrote to management all the way to CEO of global services – that "Trivedi is a victim, scapegoat , as a result of Trivedi reporting defects, cybersecurity vulnerabilities – she has suffered retaliation and it was illegal for GE to frame her as a "not a team player". See **details of GE's premediated scheme and UNHUMAN retaliation inflicted upon Trivedi and Remove witness [Appendix 8,9,10 of this brief]**

- Sylvester was retaliated against due to this reporting, and that when Sylvester reported this retaliation, her management refused to take action. *Id.* at para. 10.  Soon thereafter Sylvester was terminated because of a "corporate decision" that she was not a "team player." *Id.* at para. 13.[3]

Parexel **[GE healthcare]** declined to… correct this conduct **[GE -in TIMELY manner]** or to report it to appropriate parties such as the FDA and its clients **[GE customers, hospitals]** because doing so would have adversely affected the large profit  from **[ the InsiteEXC service contracts and medical devices sold by marketing as service benefit under fraudulent inducement] [Note that as per APPENDIX 11 of this brief – December 2020 – SEC.gov and GE already settled for $200 million- GE's fraud for long term service contracts related another GE division]**. . . . This would have adversely affected the value of the stock, would have caused corporate credit problems, would have contradicted Parexel' **[GE]'s** statements to its shareholders concerning strict adherence to GCP **[21 CFR § 820.90 - Nonconforming product and other statutes, cybersecurity**

**liabilities]** and would have significantly reduced or eliminated bonus compensation and other stock based compensation for Parexel `[GE]` executive.
Disclosure Would have reduced revenue and reputation

and a wide range of related conduct all based on fraudulent data and the failure to report this material information of Insite EXC fraud to FDA, to public via RECALL, to sec.gov regulatory filing – and finally GE did removed remote connectivity from DEF 14 A sec.gov filling in 2019; after Trivedi emailed GE about going to court.[That's why ALJ McGrath and OSHA people must be arrested for dismissing Trivedi's complaint on timeliness)

## 20.2 Trivedi ARB brief page 18 – page 29 of pdf

## 20.3 ALJ has failed to apply similar standard as ARB's Sylvester case discussed about FDA's GCP [ in Trivedi case –GMP –good manufacturing practice) As in ARB's Sylvester v. Parexel Int'l, Inc, where FDA's GCP violations led to groundbreaking ruling by ARB- resembling and similar to that- Trivedi wrote to GE, to OSHA in 2014

( find below emails sent to quitam attorney, Tony Scheer… Trivedi forwarded OSHA complaint and supported material to Tony, so that attorney is alibi that Trivedi did provide OSHA sufficient information in 2014) about GE's violations of FDA's current good manufacturing practice (cGMP) requirements and OSHA corruptly closed it in 2014 as not fitting any of 22 OSHA whistleblower statute…
**ANSWER:** Yes

    Trivedi in 2014 **OSHA complaint ,**clearly wrote – violations and/or not following standards as per  (1) 600 design nonconformance and defects in production software of Insite Exc. **FDA guideline for NC (Nonconforming)software -- FDA's 21 CFR § 820.90 - Nonconforming product - **also mentioned 21 CFR 820 part 1** QUALITY SYSTEM REGULATION
 (2)21 CFR § 820.250 - Statistical techniques (3) and more…

# That's why Tamara Simpson and Robert Kuss to be CRIMINALLY charged for closing it illegally as not fitting any of OSHA 22 statutes. And also ALJ McGrath charge criminally for blocking discovery and dismissing Trivedi complaint on timeliness.

**Trivedi's arbitration complaint filed on November 5th 2013 ( GE also has copy of this complaint right from November 5, 2013)..where Trivedi mentioned FRUAD and conspiracy.. OSHA had copy of arbitration complaint…**
                    **21 CFR 820 part 1**

## 20.4 Corrupt ARB judges have vigorously and meticulously took JUDICIAL NOTICE of Trivedi's litigation with DHS & GE – to illegally dismiss her claims – but to terrorize her – intentionally IGNORED ENTIRE argument about Sylvester.. Reason to JAIL ARB judges.

## 20.5 Trivedi ARB brief page 20

**Whether ALJ erred by taking judicial notice of Trivedi's district court case against GE..mainly and importantly –he didn't even care to understand ..**

**See Sylvester v. Parexel Int'l, Inc., ARB No. 07-12, 2011 (ARB May 26, 2011) we do not take judicial notice of any facts presented during Neuschafer's NLRB proceedings.**

**ANSWER:** Yes

## 20.6 Trivedi ARB brief page 22

## As in Sylvester's opening brief by Sylvester's attorney and ARB ruling mentioned that

In the present case, the ALJ Decision does not dispute that sufficient facts were plead

to establish that a violation of GCP "could constitute a violation of Federal law including the

CFR, 18 U.S.C. §1961 (pattern of racketeering activity under the Racketeering and

Influenced Corrupt Organizations Act), 18 U.S.C. 1342 (mail fraud), 18 U.S.C. §1343 (wire

fraud), 18 U.S.C. §1344 (financial institution fraud) or other federal or state law." ALJ

**Thus, as then in Sylvester case, violations of GCP ; and in Trivedi's case serious violations of GMP** ,for years on most of GE medical devices, including **(patient monitoring, infant care, anesthesia  [ APPENDIX 7 of this brief ),** imaging devices, electronic health records, MRI- and more......**constitute a violation of federal law including 18 U.S.C. § 1961 (Racketeering under RICO), mail fraud, wire fraud, financial institution fraud, another federal or state law…..corrupt ALJ McGrath didn't read Trivedi's district court in Massachusetts ;where Trivedi cited GE's violation to be construed as RICO- but instead only quoted that it was dismissed based on timeliness-**

and it was 2014 OSHA investigator's intentional act that she didn't apply the same standard for GCP in Sylvester to GMP in GE/Trivedi case…nor 2021 OSHA nor ALJ…so whether it shows that all these people are CORRUPT and did it intentionally. OSHA investigator in 2014- Tamara and Ross were sold, were corrupt that they didn't see this – obvious violation…

19

Trivedi clearly state in 2014 OSHA complaint that Insite EXC by GE, had 600 design nonconformance and defects in production firmware ; and it was in VIOLATION of **FDA guideline for NC software , FDA's 21 CFR § 820.90 - Nonconforming product , HIPPA, HITECH,

**ANSWER:** Yes

## 20.7 Trivedi ARB brief page 35

## 20.8 Insite and several medical devices' brochure, various medical device manuals) while intentionally concealing that InsiteEXC is NOT in compliance FDA's **21 CFR § 820.90 - Nonconforming product,** product non conformances, defects and cybersecurity vulnerabilities, aging platform that was falling apart

FDA non-conforming product was alleged in arbitration complaint filed December 2013 and submitted to OSHA for 2014 OSHA complaint. **As per ARB Sylvester  case – Trivedi's reasonable objective belief that it was non-conforming. Fraud…hence SOX.** It was Trivedi's responsibility that testing, development, integration of Insite EXC adhere to FDA  and other rules – including when it was non-conforming – not to continue releasing..

Once Madhuri realized amount of defects and performance/maintenance issues Insite Exc was having; it was a fraud and conspiracy to continue release/ integrate those Insite Exc agents on products like Surgery OEC for example (where Madhuri was doing testing). Given it is regulated environment and Madhuri was concerned to continue work on Insite Exc surgery integration in a reckless way manager/lead wanted.
5) Tamara had in WRITING TRIVEDI's complaint , about 600 design nonconformance and defects in production software of Insite Exc. **FDA guideline for NC software

## 20.9 Trivedi ARB brief page 41

The ARB emphasized that the protections offered under SOX "were intended to include all good faith and reasonable reporting of fraud, and there should be no presumption that reporting is otherwise." *Sylvester,*2011 WL 2165854 at *11 (internal citations and quotations omitted).

## 20.10        Trivedi ARB brief page 44

*As stated in Sylvester..* "*The Complainants also allege that Parexel* "*knowingly failed to comply with its Business Code of Ethics, an internal control relied upon by both its auditors and shareholders,*"*and that such failure* "*renders the signature of its Chairman of the Board and Chief Executive Officer on its annual report a violation of the Securities and Exchange Act and SOX.*"*Sylvester Complaint, ¶ 56; Neuschafer Complaint, ¶ 60*"

**Trivedi engaged in a protected activity under SOX is not just for finance fraud but rather extended to the fraud reported by Trivedi** (cybersecurity, quality management, risk, liability, fraud upon shareholders in terms of remote connectivity platform that involved pretty much most of the medical devices GE made. As stated in Sylvester..

Complainants "Sarbanes-Oxley Compliance is not just a financial exercise, but extends to controls around any activity in the Company that effects, or potentially effect, the financial statements." *Id.* at Ex. 2.

## 20.11    Trivedi ARB brief page 28

### ALJ McGrath Committed Reversible Error by Failing to Provide Pro Se Complainant [Her] Due Process Right to Engage in the Discovery Process to Gather Facts and Evidence In Support Of the Allegations Set-Out In [Her] Sox Complaint In Response to ALJ's Order To Show Cause

**A. ALJ failed to provide pro se Complainant opportunity to engage in any discovery in the instant action to gather facts and evidence in further support of the allegations set-out in the Complaint and in opposition to ALJ's show cause order**

For example , See ARB case where ARB allowed complainant to do discovery to add evidence..

**Saporito v. Progress Energy Service Co. ARB No. 11-040, ALJ No. 2011-ERA-6 (ARB Nov. 17, 2011) Saporito argued that he was denied due process** because…[He was][NOT] permitted discovery to collect evidence…. Consequently, we remand this matter to allow Saporito to amend his allegations and add information that supports an inference of an ERA whistleblower claim. Neither party is foreclosed from ….seeking limited discovery needed to respond….."

✓ **During one and only conference call with GE and Trivedi(**

ARB has transcript for that call)--- just few sentences that GE attorneys told ALJ about they intend to file motion to dismiss…and instantly – ALJ McGrath – doing job of GE counsel…said that he will issue order to show cause on timeliness….

✓ ALJ issued order to show cause on timeliness –

✓ In response to ALJ McGrath's order to show cause – Trivedi filed motion for conference call and also motion to amend ,motion for discovery and motion for stay pending discovery to answer ALJ Mcgrath's Order to show cause on timeliness. Both were denied…and without due process ALJ McGrath dismissed Trivedi's claims.

- ✓ Trivedi argues that she was denied due process to do discovery to prove – by interrogating FDA officers , 2014 OSHA investigator Tamara and her supervisor at OSHA –Robert Kuss ; as well as she had opportunity to interrogate further and prove that her complaint indeed was timely. And it was closed corruptly twice…Though in Trivedi's motion for stay pending discovery and motion for discovery – Trivedi did provide evidence about timely filing whistleblower complaint to FDA and her complaint to DHS..but ALJ McGrath didn't care to accept that. See ALJ failed under 29 CFR § 18.201 - Official notice of adjudicative facts and 29 CFR § 18.201 (e) Opportunity to be heard….

- ✓ Thus ALJ MCGrath has committed reversible error…This is just one example of his error.

- ✓ Also, when dismissing claims without hearing, discovery-  ALJ McGrath didn't took into consideration…even slightest degree—that there is so much matter – material to this case…disputed.**.**

  ✓ **As stated in Sylvester v. Parexel  --**

The Complainants were denied a hearing wherein they could have proved their case. Instead, the Complainants are before the ARB without a developed record.  Adding insult to injury, the ALJ below failed to make any record, raising serious and to date unanswered

23

**21 USCIS October –November 2013 ( Letter to USCIS – this was electronically transferred..ALJ & ARB , OSHA to be shackled in chain for omitting this.This letter to USCIS has as an attachment as it shows, Trivedi arbitration statement/complaint – which was also part of OSHA 2014 complaint. Arbitration statement clearly has FDA related federal statute violations, HIPPA, HITECH federal statute violations...and as ARB ruled in Sylvester v. Parexel Int'l, Inc., ARB No. 07–123, 2011 -- that was similar to in Sylvester – good clinical practice violations and in Trivedi's case – violations of good manufacturing practice and HIPPA , HITECH, cybersecurity violations, critical defects--- if ARB wants to apply those in Sylvester case – HOW COME ARB order in Trivedi case – not even slightly mention that..All ARB judges MUST be sentences to PRISON for doing this to Trivedi...in this USCIS communication - Trivedi clearly wrote REINSTATEMENT, retaliation, whistleblowing, protected activity, cybersecurity violations...what MORE CORRUPT ARB , ALJ, OSHA NEED )**

## 21.1 Trivedi ARB petition for review page 32

### 5.5.3 Issue 3

**As Order states >**"and by Complainant in her various emails, indicates she contacted the U.S. Citizenship and Immigration Services ("USCIS") on October 8, 2013, 130 days after her termination, but that request dealt with her immigration status."
**Trivedi >In Immigration filing Trivedi EXACTLY wrote reinstatement and retaliation ;said exactly this – submitted as evidence in motion for discovery ,motion to recuse had attachment of DHS filing saying that ….This is perjury by ALJ McGrath.**

**5.5.6 Issue 6 >I find that Complainant's contact with USCIS and FDA were not the "precise statutory claim in issue" filed in the wrong forum to justify tolling either the SOX or CFPA 180-day filing deadlines.**

Trivedi-This is written without looking at FDA FOIA filed –Timestamped DHS filings that Trivedi submitted to ALJ – clearly mentioning to DHS that Trivedi suffered retaliation, reinstatement.

# 21.2    Motion to Compel Discovery   page 2, 16 –
# Motion to Compel Discovery

# My October 2013 submission to DHS – that OSHA and Judge McGrath refers (another evidence why to arrest OSHA & why my complaint was timely under 18 U.S.C. § 1514A(b)(2(D);29 C.F.R. § 1980.103(d)

# IV. DHS filing in October & November 2013 as shown in this motion
# – Trivedi clearly wrote

# USCIS COMMUNICATION 2013

**>>REMEDY:** Reinstatement (even if getting reinstated short term if company wants that way; then **Ms. Trivedi can work for other employer in US**.); GEHC immediately resumes the immigration process by filing the Form I-140 with USCIS with premium processing, after I-140 is approved and until at least six months pass then filling I -485; Also back pay (including benefits whole sum) since the termination.

>>discrimination (being a female engineer and nationality) and retaliation for bring out those security/quality issues; while they were showing disregard to address/fix and prevent these very important issues from happening. It was a job needs to be taken seriously. This is a SERIOUS problem and I was trying to take care and was doing best job. My performance was geared for making sure that these kinds of quality/security issues does not happen to medical devices.

--------------------------------
My PERM under EB2 category was approved on May 28, 2013. Given I am in employment matter resolution, I request to USCIS to extend the deadline(expiry date) for filling I 140 after PERM is approved.

Given the Plight I am in; is there a way to extend H1B through other employer and/or let them file I 140. Or other work visa. USCIS controls all such matter and if possible; So I thought to ask/request.

am also exploring option of National interest waiver and looking into filling I 140 under NIV.

My job interviews are on hold as I need to resolve this employment matter.

Thank you for your time and please assist me.

**Electronically Signed by the:**

**Applicant**

| | |
|---|---|
| Full Name(First, Middle, Last): | Madhuri I Trivedi |
| eSignature Submission Date and Time: | Oct 8, 2013 10:48:22 PM |
| Browser Data: | Mozilla/5.0 (Windows NT 6.1; WOW64) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/29.0.1547.76 Safari/537.36 |
| USCIS Electronic Immigration System Session Identifier: | g6I97QbvLEcHJEPuy_FFwtD |
| eSignature Submission Date and Time: | Oct 8, 2013 10:48:22 PM |
| Browser Data: | Mozilla/5.0 (Windows NT 6.1; WOW64) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/29.0.1547.76 Safari/537.36 |
| USCIS Electronic Immigration System Session Identifier: | g6I97QbvLEcHJEPuy_FFwtD |

75 Lower Welden Street
St. Albans VT 05479

**U.S. Citizenship
and Immigration
Services**

October 8, 2013

Account ID: 158986453836
Receipt ID: IOE3554303990
Receipt Date: 10/8/2013
Priority Date: 10/8/2013

Madhuri Janardanbhai Trivedi

**October 8, 2013
Dear Immigration Officer,**

26

I lost my job at GE Healthcare recently. Despite doing a good job and being a good contributor. For time I was there; I delivered lots of value to the company. My architecture and design work helped company to save money and generate revenues. Earlier customers were struggling; ONLY because of me they have a product working …hundreds of customers have used my solution for connectivity to medical devices. There were security(product can be hacked), bad architecture and design issues in production. Product was aging and falling apart with almost disaster level situation as 60000 medical devices communicate to this product/system. There were 2000-600 Defects in connectivity platform in production and some were unresolved for almost ten years. When I brought this up, this matter got attention. And manager and leads didn't like the fact that they were doing such bad work and made up relationship issues against me.

Also I was subjected to a hostile and unprofessional work environment, from managers to colleagues, including but not limited to: One colleague who regularly surfed the internet for guns and gun-related information and who at the time of the savage murder of innocent people at the Sikh Temple in Milwaukee, pretended to shoot me(an Indian national) by shaping his hand and fingers into the shape of a gun.

Despite my excellent technical performance and I was a team player; Manager thought I had some relationship issues.

…………………………………………

….. have asked to GE Healthcare as a remedy;

reinstatement for short term, GEHC to file next steps in green card which is I 140 filling (I can get H1 extension after I-140 is filled/approved) , filling of I-129 and then I-485. Six month after that I have mentioned that I will leave GEHC. Hence it is short term reinstatement to get my immigration sorted out and I can work for other employer in US.

….

Please assist me in this matter. Thanks in advance for your consideration and time.

Sincerely, Madhuri Trivedi,

**November 5th 2013**

**Madhuri Trivedi                    SSO ID Number: 212070205          Phone:  (484) 362-9716 Fax: 7087784859**

The Claimant was employed by the Employer as a lead software engineer for Global services group Global Services Technology (GST).

The covered claims :

- That Claimant was discriminated against based on her national origin, finally resulting in her discharge by the Employer.

- That Claimant was discriminated against based on her Sex, finally resulting in her discharge by the Employer.

- That Claimant brought to the Employer attention about intimidating, hostile and offensive work environment and interference to work performance and that the Employer took insufficient action to correct and employer retaliated because Claimant brought to the Employer attention such work environment and treatment.

27

- That Claimant brought to the Employer attention about said discriminatory disparate treatment including but not limited to working conditions and that the Employer took insufficient action to correct the discriminatory conditions.
- That the Employer retaliated against the Claimant because Claimant brought to the Employer attention said discriminatory disparate treatment including but not limited to working conditions.
- Claimant was meeting her employer's legitimate business expectations, she suffered an adverse employment action, and employer treated claimant unfavorably.
- That the above described conduct is in violation of state and federal anti-discrimination laws.

**NOTE: I have used in this document interchangeably (1) Ms. Trivedi, (2) I, (3) me; which mean the same.**

Ms. Trivedi's background: I studied here to get my master's degree. I have contributed, I want to contribute and I will contribute. I want to do something and US is a place for new ideas, opportunities; also for women to live and flourish. I am in US for 11 years. I have worked for a company who makes jet engines, helicopter; I worked for their Security division. Then I worked on DNA for a startup company; our team worked on genome sequencing and the sister company have changed the way genome sequencing is done in personalized medicine field where people can get their genome sequenced for $1000 and doctor can work on a personalized medicine that works for ONLY for them. I worked for State of Indiana in between before joining GEHC.

**Following are additional points at arbitration:**

1) Ms. Trivedi along with Mathews Matson (Principal Engineer) pointed out the missing audit trail /proper logging issue in new connectivity product design via email. Ms. Trivedi was retaliated against for pointing out contravention of code/law. HIPPA/HITECH law puts emphasis on **audit trail/logging requirements**.

HIPPA  164.312(b) Technical safeguards – Standard: Audit controls
          Audit controls refer to the capability to record and examine system activity.
- ❖ Security management process
        **HIPPA 164.308(a)(1)(ii) Information System Activity Review –Required.**
    **I have attached email document regarding this communication in my Level 4 submission.**

2) There were security (product can be hacked), bad architecture and design issues **in production**. It is as mentioned here under HIPPA (**HIPPA 164.308(a)(1) Security management process ).**
    **I have attached documents "Security production" as part of my Level4 submission.**
    Product **Insite2** was aging and dying with almost disaster level situation (60000 medical devices communicate to this product/system. ) There were 2000-600 Defects in connectivity platform in production and some were unresolved for almost ten years. When it occurred that

"why we are still shipping defective Insite2 product" ; David Mehring mentioned during a group meeting that "Connectivity is better than Insite2 product" (means at least medical device will have connectivity).

Customers have complained several times as **Insite2 product** was not working and unavailable for more than 23 times in a year.

3) While Ms. Trivedi was working on a project "**integration of Insite2 on surgery platform" ;** Ms. Trivedi found and investigated issues of product being vulnerable for security attacks/hacking. David Mehring and Leads claimed that these issues were not her concern. Ms. Trivedi pointed out, and their response was to penalize her for speaking up and not quietly falling in line and pretending that the problem did not exist. Managers and leads did not care to provide enough time in project schedule. HIPPA mentions to address as stated below.

   **HIPPA 164.306 Security standards: General rules.**
   **§164.308(a)(1): Security Management Process**
   - Implement security measures sufficient to reduce risks and vulnerabilities to a reasonable and appropriate level to comply with § 164.306(a).

   Also, there were several missing components/network connectivity failure issues and I repeatedly mentioned these to manager/leads. They neglected what I was communicating. Later as Ms. Trivedi's findings were right to the point; it stopped the product integration. Despite doing such good work; manager Dave Mehring and leads shifted blame on to Ms.Trivedi( **Ms. Trivedi's inclusiveness )** and retaliated**.** Leads were not held accountable for their negligence.

4) Bill Barbiux (principle engineer for GEHC 25 years) in a meeting in 2013 with 20 people( management and engineers) said that "our resou**r**ces are not trained in SECURITY, when we launched Insite2 product; we had to move it from public facing website to internal website because it failed security tests." So even though those seniors/people are not security trained/created such product they are treated more favorably. And despite having security skills, knowledge and contribution Ms. Trivedi was treated unfavorably. HIPPA requires security awareness as stated below.

   **HIPPA Security Awareness and Training § 164.308(a)(5)** Implement a security awareness and training program for all members of its workforce (including management).

5) Repeatedly refusing to permit Ms. Trivedi to fix significant problems in the platform she was working on.

6) Greg Stratton's performance was not good then and his job was at stake. Greg and others were working on **RSVP project** with **GE Intelligent platforms(GEIP)** to replace Insite2 product). Right people with right skills were not put in the project at right time. **Project failed in regards to GEHC and they were not able to deliver anything after almost two years**. Ms. Trivedi was on that project **for last 3.5 months only** when things were already at the verge of breaking point and damage was already done immensely in terms of not having

proper requirements, design, architecture and security that meets GEHC criteria. **There were tons of already existing issues the day Ms. Trivedi joined RSVP project regarding team dynamics** and **operating mechanism. Leads/managers of GEHC** and **GEIP had all kinds of fights/disagreements on daily basis. Despite all these at the last stage when Ms. Trivedi was put on this project; she tried to save/salvage project by doing automated testing, proposing/fixing bad requirements, architecture, design and security issues which were not addressed properly.** Manager/leads and people in ranks' authority were challenged and their short comings/failure were exposed.

**For example; there was no automatic logout in this RSVP product design done by leads/manager.** Ms. Trivedi brought this up while doing testing. GEIP manager Joe Purcell happily accepted and thanked Ms. Trivedi. While Greg Stratton, Nate Davis and managers David Mehring did not like the fact that despite working in healthcare field;  they did not address it and include **Automatic logoff as requirement**  in new product(even though it was their responsibility and accountability); while Ms. Trivedi a female engineer who just joined was bringing out contravention of code to their attention. HIPPA information as below.
HIPPA TECHNICAL SAFEGUARDS 164.312(a)(2)(iii) Standard: Access control – Automatic logoff

>        (iii) **Automatic logoff** (Addressable).  Implement electronic procedures that terminate
>        an electronic session after a predetermined time of inactivity.

>  **Despite Ms. Trivedi's such contribution to have team/project succeed** (Ms. Trivedi
> had expertise in this area and have worked extensively on that technology prior to joining
> GEHC); managers, leads diverted their failure onto Ms. Trivedi **,  disparate treatment
> and gender bias** against **Ms.Trivedi ;being a minority female engineer** with
> immigration status.  Similarly situated employees who are not in Ms. Trivedi's protected
> group were treated more favorably or did not receive the same adverse treatment. While
> Ms. Trivedi was perceived and measured as a **person who needs to work on her
> relationship**.(while manager/leads failed to deliver on RSVP project were Ms. Trivedi
> was not at all responsible in any way)

7) Also Greg threatened my safety by all gun related behavior (as mentioned in details in Level 3 statement) when his job was at stake. Management paid no attention when reported such hostile work condition. Managers retaliated by giving negative rating in my performance appraisal for reporting this.

> Later She was forced to sit in proximity to Greg Stratton (this was a requirement in PIP)
> despite repeatedly mentioning her concern of overall safety and wellbeing .Ms.Trivedi
> was forced to work in a hostile, unprofessional work environment.

8) Tech leads/seniors were skipping quality steps, testing needed. Also doing improper design for product. **And they were repeating the same faulty design** in new product development (**faulty design which partially led to product falling apart**, number of customer complaints and customers' loss of productivity and inability to use product features)". Even Bill Barbeux, Ofir Dahan and Mike Walls publicly criticized this bad design and did not want

to have that repeated in new product. I tried to point out to those leads Greg Stratton, Nate Davis and Yasin Damji and managers early on not to repeat this faulty design and use right design approach in new product when I was involved. Despite those similarly situated employees who are not in Ms. Trivedi's protected group were doing such poor job were treated more favorably or did not receive the same adverse treatment. (Madhuri needs to work on her relationship despite doing good work for company and going above and beyond for project success).

9)   While I was present; Customer (a General Manager) came running in May 2013 looking for Dave Mehring and spoke with Jim Kohli(Principal Engineer) that Dave is releasing bad product; because soon after release product was having significant problems. Later Jim Kohli mentioned that in a meeting were managers, leads were present. Ms. Trivedi was not at all involved in this product work. But it shows a trend where manager/poeple who are not held accountable for releasing bad product.

While Ms. Trivedi brought unique skills and insights at work and contribute; she received mistreatment in work environment.

10)  Being new to company I did contributed and delivered values. There is a Trend of shifting/putting blame inappropriately for things I am not responsible or I have no control over it, discrimination (being a female engineer and nationality) and retaliation for bring out those security/quality issues; while they were showing disregard to address/fix and prevent these very important issues from happening. It was a job needs to be taken seriously. This is a SERIOUS problem and I was trying to take care and was doing best job. My performance was geared for making sure that these kinds of quality/security issues does not happen to medical devices.  At GEHC, I put this at first and foremost in my daily job and duties. When I pointed out deficiency on systems; manager/leads got upset and treated me discriminatory. Other employees who were doing this kind of work were not held accountable. They were not making waves. I was retaliated for coming out/coming forward. Manager differentiated between them and Ms. Trivedi in treatment when it came from a minority woman who is a hard working engineer. Ms. Trivedi was put on a PIP to **improve relationship** There are several factual evidences including but not limited to that Ms. Trivedi was working with dedication to quality, technical rigor, Inclusiveness and clear thinking.

11)  When I requested a meeting with Dave Elario; he did not come. I sent information to him regarding what was happening via email. After sometime to find a solution; in early February I requested Dave Elario's boss Mike Swinford to meet and help. Mike sent Dave Elario to meet with me. Dave Elario got very upset at me as I went to his boss and told me that even if his boss Mike wants to transfer me to another group/manager, Dave E. won't let that happen and he will advise Mike against that and against supporting me. Also Dave Elario threatened that he will take me out of job. (Ms.Trivedi thought there would be an open door policy.) After a week of this they put me on a PIP.

12)  In year 2013 only there were **four Class 1 recalls** for GEHC products by FDA including one were entire product line was recalled due to patient death in June 2013.  Ms.Trivedi's point was dedication to quality and technical rigor: Make no mistake. Seniors/some in management

pointed that GEHC is big. And company does make mistakes...company survives, manager survives and Ms.Trivedi could survive; If Ms.Trivedi wouldn't have spoken up.  But it affects people's safety, security and Ms. Trivedi's integrity.

13) Recently; FDA/department of homeland security and hospitals have raised serious concerns about cyber security of medical devices and possibility of attacks. And resistance by device manufacturers to boost security. Including several issues with GEHC devices related to security. Ms. Trivedi was proactively and diligently doing her job in this regards.    Below links are references for details.

     I.   https://rusecure.rutgers.edu/content/department-homeland-security-issues-warning-medical-device-threats

    II.   http://www.forbes.com/sites/larryhusten/2013/06/18/fda-raises-concerns-about-the-cybersecurity-of-medical-devices/

   III.   http://www.ihealthbeat.org/articles/2013/8/7/hospitals-say-device-manufacturers-resist-boosting-cybersecurity

   IV.   http://online.wsj.com/news/articles/SB10001424127887324188604578543162744943762

14) The company induced Ms. Trivedi; and that GEHC would make good faith efforts to pursue permanent residency for her, only to fall far short on this promise. What is particularly frustrating is the fact that GEHC did get past the most difficult part of the green card process—the US Department of Labor did certify a Labor Certification Application for her ( Immigration has approved Ms. Trivedi's petition as a person with exceptional ability/advanced degree individual).  Federal Court cases have clearly faulted employers for this kind of inducement and failure to use good faith in following up with this process. Also, the company **neglected to file the PERM labor certification on timely manner (despite Ms. Trivedi requesting), which has resulted in that she could not work for other employer in US**. Ms. Trivedi had emailed both ;Manager Dave Mehring and lead Nate Davis mentioning this even before joining GEHC .So, they are not letting Ms. Trivedi go on with her own life. Knowing these matters from beginning.

15) Request to address arbitration as soon as possible given the PLIGHT I am in   and immigration paperwork filing related work.  Don't fail your daughters. They can look at Ms.Trivedi as if like she would a daughter of their own.

**REMEDY:** Reinstatement (even if getting reinstated short term if company wants that way; then **Ms. Trivedi can work for other employer in US**.); Ms. Trivedi is willing for a transfer within global services in another group.

# END OF USCIS COMMUNICATION

# 22FDA related

ARB ALJ have denied discovery to interrogate FDA office Charles Meyers, James Wood – and putting entire critical, fraudulent case on one email that Trivedi had…100 % corruption…If ARB, ALJ would not have been corrupt – they would have allowed limited discovery for timeliness purpose to FDA, OSHA 2014 people…Thus only place they belong is JAIL. I had 100% told Charles Meyers – in fact, I had almost CRIED on phone with him about my termination, immigration, arbitration & asked FDA's help to resolve all these issues – these are specific related to reinstatement, retaliation. It is just that ARB, ALJ < OSHA – abusing me..They should go, leave DOL and join GE.

## 22.1 Trivedi ARB petition for review page 32 and page 41 to 46

**5.5.4 Issue 4 >Complainant contacted the Food and Drug Administration ("FDA") wherein she alleged possible vulnerabilities in Respondent's medical device software; her contact was not about the workplace termination.**

--FDA FOIA shows FDA considered Trivedi complaint as whistleblower complaint – this evidence was provided in Motion o compel with detailed explanation. But corrupt ALJ erred. Complainant's contact with FDA was 195 days after her termination so that date was untimely. Given that remote connectivity platform even as shown on 2015, 2018 DHS CISA alert – 2020 – was enormous…Insite EXC was pre-installed on 99% medical devices GE made. And when Trivedi made complaint GE had already 100,000 medical devices using 600 plus critical defect, cybersecurity vulnerabilities plagued InsiteEC for full remote control. Despite Trivedi's hardship , extraordinary circumstances…10 days here and there –doesn't make difference

FDA letter that OSHA & ALJ referred – Trivedi's complaint filed December 13, 2013, was followed up by a call with CharlesMeyers and several emails -Trivedi wrote that "it was a fraud and conspiracy to continue release/ integrate those Insite Exc agents

"This email itself satisfies Judge McGrath's timeliness order and that GE, OSHA people of 2014 and 2021, Koh get arrested… OSHA in 2014 was aware of this email- despite they closed administratively.

FDA people Charles Meyers, James Woods & others–who would corroborate Trivedi's complaint that she had reported to FDA retaliation, whistleblowing , loss
FDA FOIA shows Trivedi complaint with FDA was filed as "source – WHISTLEBLOWER"

    **Motion to compel discovery – this motion is necessary , IF despite FDA FOIA shows timeliness; Judge McGrath STILL needs LOTS of FURTHER & more evidence to prove timeliness and hence to answer Judge McGrath's order to show cause for timeliness.**

## 22.2 Motion to compel , discovery page 2 -3

**FDA FOIA shows Trivedi complaint with FDA was filed as "source –**

**WHISTLEBLOWER"**

Find attached FDA FOIA shows– most of important things are REDACTED. It says my complaint with FDA was filed as "source – WHISTLEBLOWER"

**FDA Document Number: CPT1400185**
**signed by Donna Engleman, BSN., MS.**
**Chief, Allegation of Regulatory Misconduct Branch, Center for Devices and Radiological Health-**
**Dear Concerned Party:**
**This is in response to your correspondence, dated December 13, 2013, in which you allege that GE Healthcare is shipping aging and defective InsiteExc products.**



**DEPARTMENT OF HEALTH & HUMAN SERVICES**

Food and Drug Administration
10903 New Hampshire Avenue
Building 66, Room 2621
Silver Spring, MD 20993

June 4, 2014

Document Number:   CPT1400185

Mcis99@gmail.com

Dear Concerned Party:

This is in response to your correspondence, dated December 13, 2013, in which you allege that GE Healthcare is shipping aging and defective InsiteExc products.

Thank you for providing this information to the Food and Drug Administration (FDA). Information from regulated industry is often very helpful to us in identifying problems with marketed products and possible violations of the laws that we enforce. We take such reports seriously, and we will evaluate this matter to determine what follow-up action is appropriate. The type and extent of any follow-up is dependent upon the nature of the problem, the possible impact on the public health, and the availability of our resources.

While FDA does not provide information on ongoing investigations, information can be obtained pursuant to a Freedom of Information Act (FOIA) request, once an investigation is closed. Requests for this information can be submitted via the agency online FOIA submission address at http://www.accessdata.fda.gov/scripts/foi/FOIRequest/index.cfm or in writing to the following address:

> Food and Drug Administration
> Freedom of Information Staff
> ELEM 1029
> 12420 Parklawn Drive
> Rockville, Maryland 20857

If you have any questions regarding this letter, please contact me at 301-796-6117 and reference the above document number.

Sincerely yours,

Donna Engleman, BSN., MS.
Chief, Allegation of Regulatory Misconduct Branch
Center for Devices and Radiological Health

**FDA FOIA response for FDA Document Number: CPT1400185 filed December 13, 2013**

35



## as Source –complainant, whistleblower



## 23 Trivedi ARB brief page 17

**Whether the ALJ Committed Reversible Error by failing to provide Complainant [her] due-process right to engage in the discovery process to gather facts and evidence in support of the allegations set-out in [her] OSHA SOX complaint in terms of timeliness; And to reply to ALJ's order to show cause on timeliness ?**

**ANSWER:** Yes

ALJ issued order to show cause timeliness – Trivedi filed motion for conference call and also motion to amend, motion for discovery and motion for stay. ALJ denied motion for conference call, motion for stay and motion for discovery. Trivedi argues that she was denied due process to do discovery to prove – by interrogating FDA officers , 2014 OSHA investigator Tamara and her supervisor at OSHA –Robert Kuss ; as well as she had opportunity to interrogate further and prove that her complaint indeed was timely. And it was closed corruptly twice…

P review page 15

## 24Isn't it obstruction of justice for ALJ McGrath; who denied discovery to investigate what happened in 2014 & dismissed with prejudice claims based on timeliness?

Petition for review Page 15

## 25  ARB order –"she did not make any SOX, CFPA, or other whistleblower retaliation allegations related to her termination in her communications with USCIS"

Here's paragraph from motion to stay/ motion for discovery filed on January 2021- with ALJ…which says my communication with USCIS.

lost my job at GE Healthcare recently. Despite doing a good job and being a good contributor. For time I was there; I delivered lots of value to the company. My architecture and design work helped company to save money and generate revenues. Earlier customers were struggling; ONLY because of me they have a product working …hundreds of customers have used my solution for connectivity to medical devices. There were security(product can be hacked), bad architecture and design issues in production. Product was aging and falling apart with almost disaster level situation as 60000 medical devices communicate to this product/system. There were 2000-600 Defects in connectivity platform in production and some were unresolved for almost ten years. When I brought this up, this matter got attention. And manager and leads didn't like the fact that they were doing such bad work and made up relationship issues against me.

Also I was subjected to a hostile and unprofessional work environment, from managers to colleagues, including but not limited to: One colleague who regularly surfed the internet for guns and gun-related information

## 26ARB omitted CRITICAL FACT & deserves PRISON time – Discovery rule applies to OSHA SOX - Accrual of Claims SOX when Trivedi came to know for her school alumni Jason Kap about whistlevblowers.gov. "Discovery-based trigger," by which the statute of limitations begins to run when the plaintiff discovers or has enough information from which he or she should have discovered the injury and its cause.

## 26.1 See email below sent to OSHA, part of ALJ Objections…Triveid didn't know till Jason Kap told her about OSHA in May 3, 2014…How come ARB IGNORE THIS>>that's why they should be arrested..

---

**Madhuri Trivedi**

---

| | |
|---|---|
| **From:** | Madhuri Trivedi <orangeinc@protonmail.com> |
| **Sent:** | Friday, August 13, 2021 4:23 AM |
| **To:** | Koh; Daniel Arrigg - OSEC; Frederick; James S. - OSHA; Rosa; Anthony - OSHA; orangeinc@protonmail.com |
| **Subject:** | orginal complaint -My emails to OSHA Benjamin Sherill, Robert Kuss & Tamara |
| **Attachments:** | Ex 27 GE OEC MEDICAL SYSTEMS SIGNS CONSENT DECREE WITH FDA TO CORRECT CGMP LAPSES.pdf |

---

**Mr. Rosa, as you requested here are the emails to Kuss and Tamara…**

**I sent email about FDA ban on manufacturing at 2.19 pm and same day at 4.52 pm-Tamara emailed me asking termination date…**

I sent Tamara consent decree GE signed with FDA- that stopped manufacturing in Salt Lake City, Utah - of all GE surgery medical devices. I was assigned to integrate InsiteEXC on this Surgery device -after FDA lifted ban on manufacturing of this device( in history- this was the only incident where FDA lifted a ban)-- there were hundreds of quality issues, 600 defects, and cybersecurity vulnerabilities- So Trivedi didn't signed test plans--certifying that it works- thus didn't join GE's ongoing fraud scheme- as they were releasing on other medical devices..

**EMAIL  May  2014--alumni of my school -jason told me about whistleblowers.gov--until then none of attorney told me--nor I knew about it..**

From: Jason Kap [mailto:jkap@MIT.EDU]
Sent: Sunday, May 04, 2014 6:34 AM  To: Madhuri Trivedi; Madhuri Trivedi
Subject: RE: whistleblower
I am praying for you ,Sent via smartphone
-------- Original message --------
From: Madhuri Trivedi
Date:05/03/2014 8:05 PM (GMT-05:00)
To: Jason Kap Subject: whistleblower
Thanks for whistleblower.gov idea..
I think it is good.

Sincerely,
Madhuri

## 26.2 Trivedi ARB brief page19

There are 1000 case law that-statute of limitations start to RUN from the day / upon discovery of right…Trivedi came to know from Jason kap on may 2014 about right to file OSHA SOX

complaint and same day she did faxed to OSHA in 2014….Whether ALJ MCGrath erred, corruptly , improperly – as a question of law – failed to apply this common law and 1000s of case law PRECEDENT – which makes Trivedi's 2014 complaint timely.

### 26.3 Trivedi ARB petition for review  -Page 33

**5.5.5 Issue 5 >I find Complainant cannot reasonably claim that she was unaware of her rights to file a whistleblower complaint under SOX or the CFPA**
Jason Kap – which GE attorney also wrote in order to show cause ---
From: Jason Kap [mailto:jkap@MIT.EDU]
Sent: Sunday, May 04, 2014 6:34 AM To: Madhuri Trivedi; Subject: RE: whistleblower
I am praying for you ,Sent via smartphone
-------- Original message --------
From: Madhuri Trivedi
Date:05/03/2014 8:05 PM (GMT-05:00)
To: Jason Kap Subject: whistleblower
Thanks for whistleblower.gov idea..
I think it is good.
Sincerely,
Madhuri

## 27 Trivedi ALJ objections page -3 (  "ALJ does "deno" review , and OSHA's finding has no effect on ALJ's review process.") – despite ALJ denied discovery motion, and

### 27.1 Trivedi ARB opening brief page 50-52

"ALJ was required to follow the Rules of Practice and Procedure before the Office of Administrative Law Judges (OALJ's) – which contemplate that whistleblower complaints are informal documents intended to initiate an administrative investigation by OSHA."

<span style="color:red">29 C.F.R. Section 1980.109 "reinforces that de novo review" is the standard at the ALJ stage; and that is consistent with the notion that a case is not to be adjudicated on the pleadings or on the OSHA complaint.</span>

It is well settled in cases arising under the various whistleblower statues that

Complainants must be afforded broad discovery in order to support the allegations of retaliation and discrimination in the whistleblower complaint. Notably, in *William Vinnett v. Mitsubishi Power Systems,* ARB Case No. 08-104; ALJ Case No. 2006-ERA-029 (ARB July 27, 2010), the ARB held that The OALJ Rules of Practice and Procedure, however, provide that '[t]he [ALJ] may deny the motion [for summary judgment] whenever the moving party denies access to information by means of discovery to a party opposing the motion.'10 We have said that adjudicators must accord a party appearing pro se fair and equal treatment. . . Only after such documents are produced should the ALJ determine whether a genuine issue of fact exists concerning whether or not MPS knew about Vinnett's protected activity and fired him because of it." *Id*. at 13-14.

As stated earlier, pro se Complainant specifically asked the ALJ for an opportunity to engage in the discovery process in responding to the ALJ Order to show cause. Thus, the ALJ committed reversible error by failing to provide pro se Complainant his due process right to engage in discovery to gather evidence in support of his prima facie complaint. Therefore, as in *Vinnett,* the ARB must remand the instant case to the ALJ and require that the ALJ provide Complainant an opportunity to engage in discovery; and to hold a hearing on the merits of the Complaint as a matter of law.er, the corrupt ALJ INSTANTLY denied it. His intentions are very obvious, he is obstructing justice, not allowing testimony from FDA, former OSHA investigator..and cover up.

## <span style="color:#8B2020">28Trivedi's Reasonable reliance on OSHA dismissal letter in 2014- found in the tort of fraud</span>

Trivedi as stated in her email to FDA **(FDA gave this email to Trivedi part of FOIA in August 2016) t**hat she relied on the DOL defendant's misrepresentation in question -2014 administratively closed letter which stated that her claim doesn't fit any of 22 OSHA statutes, but that the representation was reasonable. Trivedi claims to have been harmed by Tamara- Robert Kuss-DOL defendants' false statements and given Trivedi's knowledge, none of the attorney advising her and all; under the particular circumstances for a while Trivedi believed that the statement were actually true. Later Trivedi found out that OSHA people lied in 2014 administratively closed letter.

***********Email to FDA

From: **Madhuri Trivedi** <mcis99@gmail.com>

Date: Sat, Mar 14, 2015 at 10:49 AM

Subject: Re: Information about GE Healthcare

To: "Myers, Charles F" <Charles.Myers@fda.hhs.gov>

Law firm attorney in Washington DC wanted to talk to earlier, but wasn't sure. He said one of his client worked with FDA for two three years in investigation for pharma company and it was successful . Then he worked on this matter. We need to talk . There are fraudulent inducement and other whistleblower matter so. Thanks and regards . First I was scared that GE would try to hurt me/ harm me; but they already know that I have spoken to FDA. So i became stronger. I reported to OSHA -whistleblower.gov; but their 22 statues excludes medical device and pharma.
************End of email

## 29 Tamara – OSHA investigator closed administratively – hours after Trivedi emailed FDA ban – consent decree.

**ALJ objections of Trivedi page 3** – ARB illegally omitted that

> **Dear ALJ,**
> 1. I am a plaintiff. I filed original complaint on May 2014, OSHA allows complaint to be filed oral, writing, fax. I had faxed then. And later had phone conversations with investigator Tamara and her boss Robert Kuss. I also sent several emails. Exhibit shows that within hours of sending email about FDA's ban of OEC surgical arm – document and Trivedi's project to integrate medical device InsiteEXC on OEC surgical arm; where she discovered 600 critical defects, cybersecurity vulnerabilities…Tamara OSHA investigator emailed Trivedi back and asked her termination date. And within days closed the investigation, citing that it does not fit any of 22 OSHA statutes; which is 100% corrupt.

## 30 Corrupt ARB judges mentioned Trivedi's arbitration claims – but entire Arbitration consisted of tons of documents.. and ARB never cared to get arbitration hearing transcript from GE, nor ALJ. All should join GE

## 31GE's response June 2022- ongoing fraud about cybersecurity – GE has not denied ongoing fraud by GE..and ARB judges acted as GE's general counsel – joined GE to come up with timeliness while being BLIND to ongoing fraud. Thus to be put in jail..

    **D.**    **No Basis Exists for Vacating the Dismissal of Ms. Trivedi's False Claims Act Retaliation Claim (Count 10).**

Ms. Trivedi contends, at some length, that the GE Defendants are engaged in a nefarious "ongoing fraudulent scheme" involving cybersecurity. (ECF No. 167 at 21-28). This, she argues, means her False Claims Act retaliation claim should not have been dismissed for being untimely filed more than three years after her employment with GE Healthcare ended on May 31, 2013. But all of these arguments have been made before and failed. (*See, e.g.*, ECF No. 143 at 13-14 (arguing in objections that "since GE kept selling highly defective medical devices years after I left GE—I am still within [the] time limitations to file False [C]laims [A]ct claims"). While closer dissection of an "ongoing fraud" allegation could be part of analyzing a *qui tam* claim,[6] in the context of a retaliation claim, the statute of limitations is unequivocal. *See* 31 U.S.C. § 3730(h)(3). This Court should also deny the motion to vacate the dismissal as to count 10.

    **E.**    **No Basis Exists for Vacating the Dismissal of Ms. Trivedi's Challenge to the Prior Arbitration Award (Count 13).**

Ms. Trivedi suggests that House Bill 4445—which was enacted on March 3, 2022 as the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act, 9 U.S.C. §§ 401-402— is "new evidence" that supports her motion to vacate. (*See* ECF No. 167 at 11). This is misguided for a host of reasons, but the Court could reject Ms. Trivedi's attempt simply because she offers

## 32Trivedi ARB opening brief page 10

FDA published its first cybersecurity guidance in 2016. Since my termination, I have written this 50 times- that FDA has took notice of it..in all of my filings- that's why ALJ McGrath should be criminally charged

[APPENDIX 5 of this brief ]FDA published first cybersecurity guidance in 2016 – As Trivedi kept fighting and FDA top brass knew…It Proves that Trivedi has satisfied OSHA SOX equitable tolling – filing in WRONG FORUM requirement (29 C.F.R. § 1980.103(d) ( The time for filing a complaint may be tolled for reasons warranted by applicable case law.) – if FDA taking notice of Trivedi's whistleblower complaint filed December 2013. This is another reason to bring criminal charges against ALJ McGrath and OSHA ( ALJ also denied discovery for the same)

## 33 Trivedi ARB opening brief page 10

GE is still today using stoneage TELNET for remote control( for which Madhuri was fired)...

## 34 Trivedi ARB opening brief page 12

ARB has not addressed about OSHA administratively closing it against its own manual in 2014- omitting critical facts from filing to tailor corrupt ORDER – it looks as if GE was paying them to dismiss Trivedi claims.

OSHA 2014 complaint was closed administratively – OSHA, ALJ have cited that Trivedi failed to file timely 2014 complaint…but corruptly overlooked that Tamara and Kuss illegally closed it administratively, and also internationally didn't mention Trivedi right to Appeal to ALJ – that's why FTCA tort and Bivens claims apply to all
Whistleblower Investigations Manual
(https://www.osha.gov/enforcement/directives/cpl-02-03-007)

Page 37  III. Intake and Docketing of Complaints.
3. Complaints filed under STAA, CAA, CERCLA, FWPCA, SDWA, SWDA, TSCA, ERA, AIR21, SOX, PSIA, NTSSA, FRSA, CPSIA, ACA, CFPA, or FSMA that are either untimely or do not present a prima facie allegation, may not be "screened

**out" or closed administratively.** Complaints filed under these statutes must be docketed and a written determination issued, unless the complainant, having received an explanation of the situation, withdraws the complaint.

## Page 39 IV. Timeliness of Filing.
**B. Dismissal of Untimely Complaints.**

(STAA, ERA, CAA, CERCLA, FWPCA, SDWA, SWDA, TSCA, AIR21, **SOX,** PSIA, FRSA, NTSSA, CPSIA, ACA, CFPA, SPA, and FSMA

## complaints may not be administratively closed.

OSHA and ALJ McGrath (acting a GE general counsel)have argued that my complaint was untimely, but OSHA investigator manual itself says that Complaint may not be closed administratively – unless complainant withdraws –in Trivedi's case – Trivedi didn't withdraw. OSHA and ALJ have violated their own manual rules – thinking that Trivedi won't find out and they can continue do this. That's why OSHA and ALJ should be criminally charged.

Closing administratively, not mentioning right to appeal to ALJ – and then in 2021 totally omitting and avoiding that it was closed administratively. Thus OSHA and ALJ people to be arrested at very this moment.

ALJ McGrath's dismissal letter and OSHA's September 17, 2021 cites 2014 complaint not filed under SOX timely**(ALJ McGrath wrote that " I find that Complainant's contact with USCIS and FDA were not the "precise statutory claim in issue" filed in the wrong forum to justify tolling either the SOX or CFPA 180-day filing deadlines." )—but as per OSHA investigator manual above ; it says complaint filed under SOX may not be closed administratively….even though complaint I untimely or doesn't present prima facie case…And Trivedi didn't know that her 2014 complaint was closed administratively till June 2021- When Denise Keller from Midwest OSHA told Trivedi.**

**Isn't this Corrupt and OXYMORON – that ALJ McGrath and OSHA management writing in dismissal letter to Trivedi that "2014 complaint was not timely as 180 days window, not met prima facie case under SOX – at the same time writing in that same letter that it was closed administratively.. ALJ McGrath and OSHA management, investigator to be put IN JAIL for doing this to me and it is clear cut corruption and TORT claims against them.**

## APPENDIX 6

7/16/2021                                                    Whistleblower - Complaint Summary

 Occupational
Safety and Health
Administration

# Whistleblower

 LOGOF

Please cor
any applic

You are logged in as Nathan Terwilliger, Office Name: MILWAUKEE .

| Whistleblower | Online Complaints | Start Page | Search | Create Intake | Complainant | Respondent | Complaint Info & Action |

| Complaint Summary | Additional Information |

| Complainant Name: | Trivedi, Madhuri | Respondent Name: | General Electric Healthcare |
| Case Number: | 5-3100-14-041 | Activity Number: | 22868624 |

## Complaint Summary

### Complaint Info & Action

| | |
|---|---|
| Case Type: | OSHA |
| Investigator ID: | Simpson, Tamara |
| Date Complaint Filed: | 05/04/2014 |
| Investigator Assigned Date: | 06/06/2014 |
| Allegation Code: | M - Complaint with management |
| Allegation Summary: | Terminated for expressing concerns about software vulnerability in manufactured medical devices and the possible HIPAA violations it could cause. |
| Emphasis Program: | |
| Date of Adverse Action: | 05/31/2013 |
| Adverse Action Type(s): | |
| Statutory Implications: | |
| Administratively Close?: | Yes |
| Administrative Closure Date: | 06/06/2014 |
| Reason for Administrative Closure: | No Jurisdiction |

45

| | |
|---|---|
| Detailed Reason for Administrative Closure: | Complainant's expressed concern about the possible security breach of the software RP produces does not fall within our jurisdiction. Neither does her allegation that her national origin and gender, were reasons for her termination as well. |

| Respondent-COMPANY Information | |
|---|---|
| Respondent Name: | General Electric Healthcare |
| Number of Employees: | |
| SIC Code: | 5047 |
| NAICS Code: | 423450 |
| Union: | |
| Legal Entity: | |
| Organization Type: | COMPANY |
| Primary Address: | 3114 N Grandview Blvd<br>Waukesha  WI  53188<br>US |
| Alternate Address: | |
| Phones: | Type          Country Code     Area Code     Number     Ext |
| Email Addresses: | |

| Establishment Details | |
|---|---|
| Company Name: | General Electric Healthcare |

https://portal.osha.gov/wb/whistleblower/ScreeningSummary.jsp

**35 OSHA investigator Tamara – as stated in petition for review- when Trivedi sent email to Tamara on June 3, 2014 regarding FDA ban for GE's failure for cGMP – current good manufacturing practice – on OEC surgery- instantly asked termination date and as shown in APPENDIX 6 of this brief – closed Trivedi's OSHA complaint on June 6, 2014 ( Trivedi ARB brief page 15)**

**Trivedi petition for review page 62 ("My emails to OSHA investigator -Tamara -I sent email about FDA ban on manufacturing at 2.19 pm and same day at 4.52 pm--Tamara emailed me asking termination date..")**

35.1 ARB can subpoena Microsoft who hosts hotmail –

and they can get this file from Microsoft server to PROVE that 2014 OSHA had this as part of my complaint., But criminal ALJ & ARB had denied motion to compel , discovery..too.If ARB, ALJ, OSHA takes –minor notes of EMAILs that show my TRIVIAL weakness to use against me..but such crucial, critical fact—has been IGNORED>It has GMP -PART 820  QUALITY SYSTEM REGULATION  ( FDA defines GMP as part 820- check it yourself )

35.2 – like Sylvester V. parexel – GCP – good clinical practice…why ARB intentionally ignored it…? & abusing me..how come it does not fit 22 OSHA statutes? How come it was filed under  11( c) ?How come it was closed admisnitratively even though OSHA manual says – not to close?

See Tamara on June 3, 2014 had this attachment – for Sylvester v. Parexel like – GMP – good manufacturing practice violations…

| Administrative Closure Date: | 06/06/2014 |
|---|---|

47

# Beginning of email to Tamara-

• • • • • • • • • • • • • • • • • • •

**From: Madhuri Trivedi**
**[mailto:madhuritrivedi@hotmail.com]**
**Sent: Tuesday, June 03, 2014 2:19 PM**
**To: simpson.tamara@dol.gov**
**Subject: RE: info**
**Attached :- "Ex 27 GE OEC MEDICAL SYSTEMS SIGNS CONSENT DECREE WITH FDA TO CORRECT CGMP LAPSES.pdf "**

Sincerely,
Madhuri

**From: Simpson, Tamara - OSHA**
**[mailto:Simpson.Tamara@dol.gov]**
**Sent: Tuesday, June 03, 2014 4:52 PM**
**To: Madhuri Trivedi**
**Subject: RE: info**

**Madhuri,**

# Could you provide me your termination date? Thank you.

*Tamara Simpson*

Investigator
Whistleblower Protection Programs
US Department of Labor/OSHA
310 W. Wisconsin Ave., Room 1180
Milwaukee, WI 53203
(414) 297-3315, ext. 235
(414) 297-4299 fax
Simpson.Tamara@dol.gov

## 35.3 Trivedi ARB brief EXHIBIT 2 page 177 – entire OSHA 2014 file – OSHA 2021 people, ALJ McGrath had it…

### 35.3.1.1     Page 198 of this exhibit 2, page 177---

**These steps are required/recommended by FDA guidelines**..For example automated code review software and code coverage, **\*static analysis of code**. Madhuri emailed Dave Mehring the same concerns in Jan 2012 about the need to use automated code review software and code coverage during Insite Exc testing. Team leads/manager retaliated by giving hard time for example not sufficient time to do testing of Insite Exc surgery, not giving enough information to Madhuri about product (Madhuri was a brand new to the company)..

**FDA halted sales of OEC in 2007 and GEHC signed a decree** ; (http://www.fdanews.com/articles/89160-ge-oec-medical-systems-signs-consent-decreewith-fda-to-correct-cgmp-lapses ) The decree "prohibits the manufacturing and distribution of specified GE OEC Medical Systems X-ray surgical imaging systems" at facilities in Salt Lake City, Utah, and Lawrence, Mass., "until the devices and facilities have been shown to be in compliance" with the FDA's current good manufacturing practice (cGMP) requirements as set forth in the quality

system regulation for devices, the agency said.

**Madhuri was putting quality at first and foremost in her day to day duties given the history of surgery product with FDA**

**\*\*CFR - Code of Federal Regulations Title 21**
```
[Code of Federal Regulations]
[Title 21, Volume 8]
[Revised as of April 1, 2013]
[CITE: 21CFR820]
```

49

TITLE 21--FOOD AND DRUGS
CHAPTER I--FOOD AND DRUG ADMINISTRATION
DEPARTMENT OF HEALTH AND HUMAN SERVICES
SUBCHAPTER H--MEDICAL DEVICES

PART 820 QUALITY SYSTEM REGULATION

**Subpart I--Nonconforming Product**

Sec. 820.90 Nonconforming product.

(a)*Control of nonconforming product.* Each manufacturer shall establish and maintain procedures to control product that does not conform to specified requirements. The procedures shall address the identification, documentation, evaluation, segregation, and disposition of nonconforming product. The evaluation of nonconformance shall include a determination of the need for an investigation and notification of the persons or organizations responsible for the nonconformance. The evaluation and any investigation shall be documented.

(b)*Nonconformity review and disposition.* (1) Each manufacturer shall establish and maintain procedures that define the responsibility for review and the authority for the disposition of nonconforming product. The procedures shall set forth the review and disposition process. Disposition of nonconforming product shall be documented. Documentation shall include the justification for use of nonconforming product and the signature of the individual(s) authorizing the use.

(2) Each manufacturer shall establish and maintain procedures for rework, to include retesting and reevaluation of the nonconforming product after rework, to ensure that the product meets its current approved specifications. Rework and reevaluation activities, including a determination of any adverse effect from the rework upon the product, shall be documented in the DHR.

**Subpart J--Corrective and Preventive Action**

Sec. 820.100 Corrective and preventive action.

(a) Each manufacturer shall establish and maintain procedures

for implementing corrective and preventive action. The procedures shall include requirements for:

(1) Analyzing processes, work operations, concessions, quality audit reports, quality records, service records, complaints, returned product, and other sources of quality data to identify existing and potential causes of nonconforming product, or other quality problems. Appropriate statistical methodology shall be employed where necessary to detect recurring quality problems;

(2) Investigating the cause of nonconformities relating to product, processes, and the quality system;

(3) Identifying the action(s) needed to correct and prevent recurrence of nonconforming product and other quality problems;

(4) Verifying or validating the corrective and preventive action to ensure that such action is effective and does not adversely affect the finished device;

(5) Implementing and recording changes in methods and procedures needed to correct and prevent identified quality problems;

(6) Ensuring that information related to quality problems or nonconforming product is disseminated to those directly responsible for assuring the quality of such product or the prevention of such problems; and

(7) Submitting relevant information on identified quality problems, as well as corrective and preventive actions, for management review.

(b) All activities required under this section, and their results, shall be documented.

## 35.4Ex 27 GE OEC MEDICAL SYSTEMS SIGNS CONSENT DECREE WITH FDA TO CORRECT CGMP LAPSES.pdf

## GE OEC MEDICAL SYSTEMS SIGNS CONSENT DECREE WITH FDA TO CORRECT CGMP LAPSES

https://www.fdanews.com/articles/89160-ge-oec-medical-systems-signs-consent-decree-with-fda-to-correct-cgmp-lapses

January 16, 2007

GE OEC Medical Systems, its parent company, General Electric -- doing business as GE Healthcare -- and two of their top executives have signed a consent decree of permanent injunction related to X-ray surgical imaging systems, the FDA announced.

The decree was filed Jan. 12 in the U.S. District Court for the District of Utah and is subject to court approval.

The decree "prohibits the manufacturing and distribution of specified GE OEC Medical Systems X-ray surgical imaging systems" at facilities in Salt Lake City, Utah, and Lawrence, Mass., "until the devices and facilities have been shown to be in compliance" with the FDA's current good manufacturing practice (cGMP) requirements as set forth in the quality system regulation for devices, the agency said.

The devices affected include the 9900 Elite C-Arm System, 9900 Elite NAV C-Arm System, 9800 C-Arm System, 2800 UroView System, 6800 MiniView System, Insta-Trak 3500 NAV System and ENTrak 2500 NAV System, as well as their components and accessories.

# Beginning of email to Tamara-..................
# From: Madhuri Trivedi [mailto:madhuritrivedi@hotmail.com]
# Sent: Tuesday, June 03,

# 2014 2:09 PM
# To:
simpson.tamara@dol.gov
# Subject: info

Attached:     📄 madhuri info.docx (526 KB)

Sincerely,
Madhuri

16) There were security (product can be hacked), bad architecture and design issues **in production**. It is as mentioned here under HIPPA **(HIPPA 164.308(a)(1) Security management process ).**
**I have attached documents "Security production" as part of my Level4 submission.**
Product **Insite2** was aging and dying with almost disaster level situation (80000 medical devices communicate to this product/system. ) There were 2000-600 Defects in connectivity platform in production and some were unresolved for almost ten years. When it occurred that "why we are still shipping defective Insite2 product" ; David Mehring mentioned during a group meeting that "Connectivity is better than Insite2 product" (means at least medical device will have connectivity).

   Customers have complained several times as **Insite2 product** was not working and unavailable for more than 23 times in a year.
While Ms. Trivedi was working on a project "**integration of Insite2 on surgery platform**" ; Ms. Trivedi found and investigated issues of product being vulnerable for security attacks/hacking. Security vulnerabilities were agent was accessible by multiple ports in Insite Exc surgery integration; which team leads and manager ignored to address and show recklessness.



# CTQ Deep Dive

## Issues / Actions

Good News
Application Uptime has been in-spec for 7 consecutive months

Not-so-Good News
We have been experiencing a large number of issues on the device-facing side of the application. This means that even though users can get into the Questra app, they cannot use remote service features of the application. We have mechanisms to detect this issue, but not to do trending on it.

Ongoing Effort
Our team of "volunteers" meets weekly to try to isolate and address the highest impact issues. (See attached excel tracker)



Microsoft Excel
Worksheet





GE Healthcare

17) David Mehring and Leads claimed that these issues were not her concern. Ms. Trivedi pointed out, and their response was to penalize her for speaking up and not quietly falling in line and pretending that the problem did not exist. Managers and leads did not care to provide enough time in project schedule. HIPPA mentions to address as stated below.

**HIPPA 164.306 Security standards: General rules.**
**§164.308(a)(1): Security Management Process**
- Implement security measures sufficient to reduce risks and vulnerabilities to a reasonable and appropriate level to comply with § 164.306(a).

Also, there were several missing components/network connectivity failure issues and I repeatedly mentioned these to manager/leads. They neglected what I was communicating. Later as Ms. Trivedi's findings were right to the point; it stopped the product integration. Despite doing such good work; manager Dave Mehring and leads shifted blame on to Ms.Trivedi( **Ms. Trivedi's inclusiveness )** and retaliated**.** Leads were not held accountable for their negligence.



Ultrasound + LCS make up 2/3 of our device population
and are both growing at increasing rates.

 

18) **Insite Exc application in production** was vulnerable for online attacks and there were security issues.  Madhuri reported in June 2012 that Insite Exc code needs to build with newer version with security update to address memory/online attack issue.. **"Enable memory protection to help mitigate online attacks" which was required to be unchecked in settings in order to establish/install remote connectivity.** (Exhibit GEHC0170)

**This was a security compromise in production insite Exc software. Madhuri communicated to mangers and team leads. No action was taken and Madhuri faced further retaliation.**

19) Ms. Trivedi pointed out the missing audit trail /proper logging issue in new connectivity product design via email. Ms. Trivedi was retaliated against for pointing out contravention of code/law. HIPPA/HITECH law puts emphasis on **audit trail/logging requirements**.

  ❖ HIPPA  164.312(b) Technical safeguards – Standard: Audit controls
      Audit controls refer to the capability to record and examine system activity.
  ❖ Security management process
      **HIPPA 164.308(a)(1)(ii) Information System Activity Review –Required.**

20) 600 design nonconformance and defects in production software of Insite Exc. **FDA guideline for NC software



## SPR Trends

| Count of Id | | Classification | | |
|---|---|---|---|---|
| Year | State | Defect-Design NC | Improvement-Opportunity | Grand Total |
| 2004 | Assigned | 2 | 2 | 4 |
| | New | 4 | 4 | 8 |
| 2005 | Assigned | 5 | 8 | 13 |
| | New | 6 | 4 | 10 |
| | Resolved | 1 | 1 | 2 |
| 2006 | Assigned | 45 | 14 | 59 |
| | New | 32 | 9 | 41 |
| | Resolved | 27 | 7 | 34 |
| 2007 | Assigned | 27 | 5 | 32 |
| | New | 258 | 52 | 310 |
| | Resolved | 18 | 8 | 26 |
| 2008 | Assigned | 9 | 1 | 10 |
| | New | 6 | 1 | 7 |
| | Resolved | | 1 | 1 |
| 2009 | Assigned | | 1 | 1 |
| | New | 5 | 2 | 7 |
| 2010 | New | 12 | 2 | 14 |
| 2011 | Assigned | 3 | | 3 |
| | New | 5 | 2 | 7 |
| Grand Total | | 465 | 124 | 589 |

**Changes in 3Q:**
- 15 SPRs closed
- Reviewed and "dispostioned with justification" 12 Unacceptable Risk sprs imported incorrectly from DDTS

5.2 release

**Open Issues:**
- 465 Design Non-Conformances
- 124 Improvement Opportunity
- Will be closed with justification when RSvP program retires Questra back-office

21) Surgery Manager in March 2012 during Insite Exc integration(Madhuri was a team member for this; Madhuri was assigned to do testing related work) expressed serious concerns/objections to team leads/managers about how important quality/testing steps were not included .

**These steps are required/recommended by FDA guidelines**..For example automated code review software and code coverage, **\*static analysis of code**. Madhuri emailed Dave Mehring the same concerns in Jan 2012 about the need to use automated code review software and code coverage during Insite Exc testing. Team leads/manager retaliated by giving hard time for example not sufficient time to do testing of Insite Exc surgery, not giving enough information to Madhuri about product (Madhuri was a brand new to the company)..

**FDA halted sales of OEC in 2007 and GEHC signed a decree** ; (http://www.fdanews.com/articles/89160-ge-oec-medical-systems-signs-consent-decree-with-fda-to-correct-cgmp-lapses ) The decree "prohibits the manufacturing and distribution of specified GE OEC Medical Systems X-ray surgical imaging systems" at facilities in Salt Lake City, Utah, and Lawrence, Mass., "until the devices and facilities have been shown to be in compliance" with the FDA's current good manufacturing practice (cGMP) requirements as set forth in the quality system regulation for devices, the agency said.

**Madhuri was putting quality at first and foremost in her day to day duties given the history of surgery product with FDA.**

22) <mark>Bill Barbiux (principle engineer for GEHC 25 years) in a meeting in 2013 with 20 people( management and engineers) said that "our resou</mark>rces are not trained in SECURITY, when we launched Insite2 product; we had to move it from public facing website to internal website because it failed security tests." So even though those seniors/people are not security trained/created such product they are treated more favorably. And despite having security skills, knowledge and contribution Ms. Trivedi was treated unfavorably. HIPPA requires security awareness as stated below.

> **HIPPA Security Awareness and Training § 164.308(a)(5)**  Implement a security awareness and training program for all members of its workforce (including management).

23) Right from second week of joining **GEHC in December 2011**; Madhuri found technical solutions for Insite Exc production issues. Customers of Insite Exc were struggling for two months. None of team leads were able to resolve this issue and they failed. Customers were not able to establish remote connectivity to medical devices via Insite Exc. Madhuri found solution within 24 hours and documented this solutions. Since then **Madhuri's documented solution for insite Exc was critical to hundreds of customers**(online/filed engineers) in establishing connectivity and hence existence of Insite Exc product. Despite all these they made up soft skills issues were those responsible for Insite Exc support failed.

## Insite 2.0 Service SupportCentral Cases

**Insite2 Service Ops 2012 SC Cases:** 43
- 35 Open
- 8 Closed

*Note: No cases closed until 3Q – new staffing (Mike Walls) put in place to help address these since last quarter*

**Insite ExC 2012 SC Cases:** 18
- 4 Open
- 14 Closed

*Note: Keeping up well on these due to helpful volunteers (Chris B, Madhuri, Glyn)*

**Take-Away:** Added staffing to help investigate issues is helping to alleviate user frustration with the app. We need to keep people assigned to this.



24) Tech leads/seniors were skipping quality steps, testing needed. Also doing improper design for product. **And they were repeating the same faulty design** in new product development (**faulty design which partially led to product falling apart**, number of customer complaints and customers' loss of productivity and inability to use product features)". Even Bill Barbeux, Ofir Dahan and Mike Walls publicly criticized this bad design and did not want to have that repeated in new product. I tried to point out to those leads Greg Stratton, Nate Davis and Yasin Damji and managers early on not to repeat this faulty design and use right design approach in new product when I was involved. Despite those similarly situated employees who are not in Ms. Trivedi's protected group were doing such poor job were treated more favorably or did not receive the same adverse treatment. (Madhuri needs to work on her relationship despite doing good work for company and going above and beyond for project success).

25) Managers/leads were reckless and they were responsible /accountable for this product; it was culpable negligence; lack of proper security , quality, testing practices

26) Once Madhuri realized amount of defects and performance/maintenance issues Insite Exc was having; it was a fraud and conspiracy to continue release/ integrate those Insite Exc agents on products like Surgery OEC for example (where Madhuri was doing testing). Given it is regulated environment and Madhuri was concerned to

continue work on Insite Exc surgery integration in a reckless way manager/lead wanted. Madhuri informed managers  Dave Mehring/ Dave Saliis that she would consider working on another project and this is not proper. This happened in March 2012. **Despite all these ; management did not care and they continued Insite Exc Integration on all kind of modalities for another 12 months or more..And were proud to finish modality integration on as many modality they can. While beating Madhuri and working on systematically to get rid of her.**  It is Conspiracy and false case made against Madhuri to end her employment with GEHC

27) Madhuri in her second project  "RSVP- with GE intelligent platforms" reported missing autologout. T**here was no automatic logout in this RSVP product design done by leads/manager.** Ms. Trivedi brought this up while doing testing. GEIP manager Joe Purcell happily accepted and thanked Ms. Trivedi. While Greg Stratton, Nate Davis and managers David Mehring did not like the fact that despite working in healthcare field;  they did not address it and include **Automatic logoff as requirement**  in new product(even though it was their responsibility and accountability); while Ms. Trivedi a female engineer who just joined was bringing out contravention of code to their attention. HIPPA information as below.

> ❖  HIPPA TECHNICAL SAFEGUARDS 164.312(a)(2)(iii) Standard: Access control – Automatic logoff
>
> (iii)  **Automatic logoff** (Addressable).  Implement electronic procedures that terminate an electronic session after a predetermined time of inactivity.

**RSVP-GEIP Project failed in regards to GEHC and they were not able to deliver anything after almost two years**. Ms. Trivedi was on that project **for last 3.5 months only** when things were already at the verge of breaking point and damage was already done immensely in terms of not having proper requirements, design, architecture and security that meets GEHC criteria. **There were tons of already existing issues the day Ms. Trivedi joined RSVP project regarding team dynamics** and **operating mechanism. Leads/managers of GEHC** and **GEIP had all kinds of fights/disagreements on daily basis.  Despite all these at the last stage when Ms. Trivedi was put on this project; she tried to save/salvage project by doing automated testing, proposing/fixing bad requirements, architecture, design and security issues which were not addressed properly.** Manager/leads and people in ranks' authority were challenged and their short comings/failure were exposed.

**\*Static Analysis -FDA**
http://www.fda.gov/MedicalDevices/ProductsandMedicalProcedures/GeneralHospitalDevicesandSupplies/InfusionPumps/ucm202511.htm#staticAnalysis

# **\*\*CFR - Code of Federal Regulations Title 21**

```
[Code of Federal Regulations]
[Title 21, Volume 8]
[Revised as of April 1, 2013]
[CITE: 21CFR820]
```

TITLE 21--FOOD AND DRUGS
CHAPTER I--FOOD AND DRUG ADMINISTRATION
DEPARTMENT OF HEALTH AND HUMAN SERVICES
SUBCHAPTER H--MEDICAL DEVICES

# PART 820 QUALITY SYSTEM REGULATION

**Subpart I--Nonconforming Product**

Sec. 820.90 Nonconforming product.

(a)*Control of nonconforming product.* Each manufacturer shall establish and maintain procedures to control product that does not conform to specified requirements. The procedures shall address the identification, documentation, evaluation, segregation, and disposition of nonconforming product. The evaluation of nonconformance shall include a determination of the need for an investigation and notification of the persons or organizations responsible for the nonconformance. The evaluation and any investigation shall be documented.

(b)*Nonconformity review and disposition.* (1) Each manufacturer shall establish and maintain procedures that define the responsibility for review and the authority for the disposition of nonconforming product. The procedures shall set forth the review and disposition process. Disposition of nonconforming product shall be documented. Documentation shall include the justification for use of nonconforming product and the signature of the individual(s) authorizing the use.

(2) Each manufacturer shall establish and maintain procedures for rework, to include retesting and reevaluation of the nonconforming product after rework, to ensure that the product meets its current approved specifications. Rework and reevaluation activities, including a determination of any adverse effect from the rework upon the product, shall be documented in the DHR.

**Subpart J--Corrective and Preventive Action**

Sec. 820.100 Corrective and preventive action.

(a) Each manufacturer shall establish and maintain procedures for implementing corrective and preventive action. The procedures shall include requirements for:

(1) Analyzing processes, work operations, concessions, quality audit reports, quality records, service records, complaints, returned product, and other sources of quality data to identify existing and potential causes of nonconforming product, or other quality problems. Appropriate statistical methodology shall be employed where necessary to detect recurring quality problems;

(2) Investigating the cause of nonconformities relating to product, processes, and the quality system;

(3) Identifying the action(s) needed to correct and prevent recurrence of nonconforming product and other quality problems;

(4) Verifying or validating the corrective and preventive action to ensure that such action is effective and does not adversely affect the finished device;

(5) Implementing and recording changes in methods and procedures needed to correct and prevent identified quality problems;

(6) Ensuring that information related to quality problems or nonconforming product is disseminated to those directly responsible for assuring the quality of such product or the prevention of such problems; and

(7) Submitting relevant information on identified quality problems, as well as corrective and preventive actions, for management review.

(b) All activities required under this section, and their results, shall be documented.

# END of email to Tamara-

**• • • • • • • • • • • • • • • • • •**

### 36 Trivedi ALJ objections page 16 and Trivedi ARB opening brief page 31

Continuing violation may be established by demonstrating 'a company wide policy or practice'

"A continuing violation may be established by demonstrating 'a company wide policy or practice' or 'a series of related acts against a single individual.' '

GE healthcare to GE aviation- GE presenting pretext not a team player, need coaching – while putting public health, safety at risk- and to OSHA, OFCCP, ALJ- Trivedi has repeatedly brought up Pattern- and practice ....bad policy that GE has – these ongoing retaliation is continuing violations of various laws- thus Trivedi's OSHA complaint is timely. Trivedi has mentioned "continuous violation" in 2021 online OSHA complaint as well.

https://www.seattletimes.com/business/boeing-aerospace/u-s-senate-whistleblower-report-safety-oversight-falls-short-at-boeing-and-its-suppliers/

**Dec. 13, 2021 at 12:00 pm  Seven named whistleblowers — from Boeing, jet engine supplier GE and the Federal Aviation Administration — allege fundamental problems with safety oversight...........**

In this letter to the Senate, former GE engineer Kucera notes that GE------------------In March 2021, GE management placed him on a "coaching plan," a scrutiny of his performance that included an explicit warning that "failure to demonstrate sustained

improvement in your performance will result in further actions … up to and including termination."
to see a PATTERN -- for GE wide --systemic issue -- and how hiring, handling whistleblower matters and firing is done at GE….Robert's Coaching plan is exactly same as Trivedi Performance improvement plan to be a team player. Another GE aviation engineer has also filed OSHA complaint and is pending at ALJ for raising violations and has also provided 50 former GE employee's information to OFCCP at DOL.

## 37 Trivedi ARB opening brief page 22

Isn't it clear that OSHA in 2014 till 2021 and ALJ in 2022; so from 2014 -2022—Trivedi has been a SUBJECT, VICTIM of continuing tort by Department of labor's employees under corruption; ongoing injury and until the injury is stopped – Trivedi's claim are valid and timely.

**ANSWER:** Yes

## 38 Trivedi ARB opening brief page 24 and Trivedi ALJ objections page 20 -22

"[S]erious instances of attorney misconduct," however, may constitute "extraordinary circumstances" that warrant tolling of a statute of limitations. *Holland*, 560 U.S. at 651-52;

**Attorney misconduct may warrant tolling**

## 39 Corrupt ARB's illegal actions - Trivedi ARB petition for review page -13

"The Act definitively precludes review based solely on select pieces of evidence and ignoring "evidence from which conflicting inferences could be drawn" *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487-88, 71 S.Ct. 456, 95 L.Ed. 456 (1951)

**Universal Camera Corp. v. NLRB, 340 U.S. 474 , 481 (1951) (noting a reviewing court cannot just "read only one side of the case and, …the record to the contrary is to be ignored").**

ALJ McGrath has intentionally and corruptly failed to consider important aspects of Trivedi's claims, her argument for TIMELINESS, failed to articulate satisfactory explanation for his dismissal and there is ZEO "rational connection between judge McGrath's fact finding and choices made.

## 40 Trivedi petition for review page 16 & 25

A reviewing court cannot just "read only one side of the case and **the record to the contrary is to be ignored". Such decision may** be 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law'— Decisions should also be set aside as arbitrary when they "fail[] to consider an important aspect of the proble**m" or to "articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choices made.'" State Farm,** 463 U.S. at 43

    In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error. (quoting *Dynamic Image Tech., Inc. v. United States*, 221 F.3d 34, 40 (1st Cir. 2000)). **A claim need not apprise the agency of "every conceivable legal theory" or cause of action that could potentially be brought in relation to an injury described in that claim.**

## 41 Trivedi petition for review page 16, 17

Isn't it abuse of discretion, total corruption that while Security and Exchange Commission is just starting cybersecurity rule making ; Judges to dismiss Trivedi claims with prejudice, with ZERO weightage given on  seriousness, enormity of addressing cybersecurity properly and NOT holding GE accountable.

*Alexander v. United States*, 721 F.3d 418, 424 (7th Cir. 2013) ("Unfortunately, in a world where **public corruption** is hardly unknown, we cannot agree that Alexander's **[Trivedi's ]**complaint is too implausible to hold together absent allegations of this sort. We might wish to live in a world in which such **an egregious abuse of one's official position** **[In Trivedi's case DOL employees]**would be unthinkable, **but experience suggests that we do not.** See, *e.g., Dominguez v. Hendley,* 545 F.3d 585, 589–90 (7th Cir.2008);") *United States v. Maloney,* 71 F.3d 645, 650–52 (7th Cir.1995).

    DOL employees' **Scienter-Intent or knowledge of wrongdoing.**  When a person has knowledge of the wrongness of an act or event prior to committing it. And despite did it---taking advantage of several mitigating circumstances of Trivedi.. DOL employees to be arrested and put in jail for their illegal acts they have done upon Trivedi.

# 42Trivedi ARB opening brief page 42

**GE management was on alert since Trivedi entered in GE's mid year performance review – system( which can be accessed by GE people) that "Trivedi went over GE's annual report and presentations"**

Thus – Trivedi  went over  – GE annual report  (SEC.gov regulatory filing ) (Midyear review document is submitted as part of Trivedi's deposition taken by GE during arbitration)…Thus GE was on guard that Trivedi is looking at big picture and violations.

Trivedi's mid year review clearly states AUDIT – internal and external – so GE was on guard…while continuing – exploited Trivedi while her PERM labor certificate for her permanent residency was pending with depart of labor.

*As stated in Sylvester.. "The Complainants also allege that Parexel "knowingly failed to comply with its Business Code of Ethics, an internal control relied upon by both its auditors and shareholders,"and that such failure "renders the signature of its Chairman of the Board and Chief Executive Officer on its annual report a violation of the Securities and Exchange Act and SOX."Sylvester Complaint, ¶ 56; Neuschafer Complaint, ¶ 60"*

**Trivedi engaged in a protected activity under SOX is not just for finance fraud but rather extended to the fraud reported by Trivedi** (cybersecurity, quality management, risk, liability, fraud upon shareholders in terms of remote connectivity platform that involved pretty much most of the medical devices GE made. As stated in Sylvester..

Complainants "Sarbanes-Oxley Compliance is not just a financial exercise, but extends to controls around any activity in the Company that effects, or potentially effect, the financial statements." *Id.* at Ex. 2.

## 43 Trivedi's ALJ objections filed in 2021– arguments, facts – ALJ & ARB omitted, swallowed to issue their corrupt ORDER

### 43.1 Trivedi's ALJ objections page 4 -5

May 2021, I contacted OSHA Midwest regional director William Donovan. I referred my matter to Nathan- OSHA investigator. Nathan on phone said that if he investigates GE, now considering my timely filings with FDA, DHS in 2013; under OSHA where it allows filing with another agency in timely manner. (OSHA manual – equitable tolling - The employee mistakenly filed a timely retaliation complaint relating to a whistleblower statute enforced by OSHA with another agency that does not have the authority to grant relief ) – Nathan is afraid that given GE is a big company, going to ALJ and presenting my case; Nathan would lose his job. Nathan threatened me that if I write in email to William Donovan about this, he will dismiss my complaint and send dismissal letter to GE.. Eventually, despite writing this

<span style="color:red">in email to Daniel Koh, Frederick James, William Donovan, Rosa Anthony , Denise Keller– nobody cared…and On September 17, 2021- Nathan signed dismissal letter and sent it to GE></span> Mission accomplished. All this people should be arrested under public corruption, color of law, for depriving on my rights to obtain justice and obstruction of justice.

OSHA dismissal letter Sept. 17, 2021 state that "However, within both of these requests or complaints to government agencies, Complainant was not alleging retaliation and requesting that the agency restore her to her former position or request any other remedies that the receiving agency was unable to grant."
In both of the agencies- DHS and FDA, Trivedi wrote that she was retaliated for raising concerns and not joining fraud scheme. And that these agencies provide relief and remedies. Despite corrupt OSHA investigator has filtered this. OSHA investigator and food chain should be in JAIL.

as untimely. **I request that ALJ order grand jury criminal investigation of GE and OSHA people. In 2015, Texas federal judge Andrew Hanen had written to DOJ attorney Rick Lara in Brownsville Texas to do grand jury criminal investigation about GE. He himself read my entire file and then concluded that there were criminal violations as well as civil violations. Anthony Rosa and other OSHA people, GE people to be arrested under ZERO tolerance policy. Enough is enough.**

1. **FBI supervisor Agent and FBI special agent in charge for false claims act and criminal investigation. FBI had criminal investigation open at some point**
   1. Plaintiff contacted FBI in Milwaukee, WI in April 2014. FBI Milwaukee Supervisor Clayton Wible who after looking into details called back that GE matter is False Claims Act/Quitam matter.
   2. I contacted FBI again in California, San Francisco; wrote to special agent in charge David Johnson in November 2015 about criminal investigation related to GE, my matter. He assigned FBI agent. Last I met him in FBI San Francisco lobby in January 2017 and he said he is leaving FBI and was SORRY; said that "it is not him".
   3. Below is emails as reference.
   From: Wible, Clayton M. (MW) (FBI) <Clayton.Wible@ic.fbi.gov>
    Date: Tue, Aug 25, 2015 at 6:37 AM Subject: RE: Please contact US att General Loretta Lynch  To: Madhuri Trivedi

Madhuri, As we have discussed before, I am unable to intervene or lobby on your behalf. While the following does not represent legal advice, I can only suggest the very action(s) I have suggested in the past: hire new, or keep working with existing, legal representation to address your immigration matters. For the above reasons and more, I cannot and will not be contacting AG Lynch as you requested. Sincerely, SSA Wible

4. **Later David was appointed as Executive assistant director of FBI reporting to James Comey. In January 2017, David left FBI.**

From: Johnson, David J. (SF) (FBI) <David.J.Johnson@ic.fbi.gov>
Date: Tue, Nov 24, 2015 at 9:20 AM Subject: RE: MIT alum: Work authorization, Extreme hardship declaration, financial loss, humanitarian and distress
To: Madhuri Trivedi Cc: "San.Francisco" <San.Francisco@ic.fbi.gov>

Good morning—I have received your email and will have someone reach out to you. Thank you. David

## 43.2 Trivedi's ALJ objections page Page 7

## 43.3 while the Trivedi arguments, Bill's deposition, emails, testimony , calling witness to prove that it was not Trivedi's inability, but it was failure of GEHC, GE Energy , GE Digital to work together as a team. That's why I would like GE to enter affidavit from Joseph Purcell, GE intelligent platforms manager that it was GEHC, Gregg Stratton ; who were unable to work with other GE divisions.

**Press release:--- https://www.cnbc.com/2019/05/22/reuters-america-update-2-ge-needs-to-end-infighting-fix-quality-management-ceo.html**
**UPDATE 2-GE needs to end infighting, fix quality, tighten management -CEO**
**Published Wed, May 22 2019 2:49 PM EDT Reuters Alwyn Scott**
**(Recasts with comments about fixing GE's internal problems)**
**May 22 (Reuters) - General Electric Co, once seen as the epitome of corporate greatness, is trying to end infighting between its divisions, tighten up management and fix quality problems in its products, Chief Executive Officer Larry Culp said on Wednesday.**

While working as a lead engineer at General Electric Healthcare - I came across hundreds of defects, malfunctions, cybersecurity vulnerabilities for GEHC remote connectivity platform that allowed to fully control medical devices remotely and was pre-installed on 99% of medical devices GE manufactured.... Public safety, health, data and functioning of medical devices was at stake. GE knowingly defrauded stake holders, public and regulators for years.[ **GE issued**

worldwide alert in March 2018 –GE didn't do a recall, **public disclosure and omitted material information since 2012 ; and wrongfully terminated Trivedi]**

43.4 Even today –June 2021- Security and Exchange Commission (SEC) is setting annual rulemaking agenda for cybersecurity- that proves that this issue is muddy

https://www.sec.gov/news/press-release/2021-99                June 2011


## 43.5 Trivedi's ALJ objections page 8- 14

1. July 2021, I emailed Daniel Koh to Because MR Koh emailed with reply when I asked secretary of labor to consider my complaint timely

   EMAIl*****************
   From:orangeinc@protonmail.com <orangeinc@protonmail.com>
   To:Koh, Daniel Arrigg - OSEC <koh.daniel@dol.gov>CC:orangeinc@protonmail.com <orangeinc@protonmail.com>
   Date:Sunday, July 4th, 2021 at 8:33 AM
   Hello Daniel Koh,
   Thanks for your reply. Please take action on this and forward this letter/request to Secretary Martin Walsh as well. I can have a conference call /email chat with you/your staff to answer any question you/they may have.. I have attached OSHA complaint I filed; it was faxed with all the attachment.

   Please reopen the OSHA investigation, any relief and consider this as an administrative filing done timely- so I can have a whistleblower protection under

    Violations of whistleblower protections under Sarbanes-Oxley Act , 8 U.S.C. § 1514A, et seq. ,Pub. L. 107-204

    OSHA had jurisdiction under SOX statute, which OSHA investigator failed to and I didn't fight then. Tolling of time to file applies here. And Secretary of DOL, can, under good cause shown, accept this filing NOW. It was no fault of my own. So my federal lawsuit, meets the administrative filing requirement for SOX violations under 8 U.S.C. § 1514A, et seq. ( I did file it but it was OSHA investigator who failed) and it is considered timely.

    OSHA investigator was Tamara Simpson and supervisor Robert Kus. I have attached email communication with both of them here.

    Despite it is a clear cut Sarbanes Oxley Act related- one of 22 statutes OSHA enforces- as under whistle blower provision. OSHA responded that my complaint doesn't fit in any

of their 22 statutes. And closed administratively so I didn't appeal to Secretary for labor-administrative law judge.

In the meantime ...FBI in Milwaukee in May 2014 said that my matter is fraud against government; civil fraud- false claims act matter--and later another office of FBI was doing criminal investigation as well.

I have filed SEC complaint..
As per OSHA, SOX laws- when filing OSHA complaint, one need not to specify which laws, regulations, statues were violated..as long as a whistleblwoer believed that wrongdoing/some fraud existed on employer part..that is enough..while I had given more details to OSHA.
but as per OSHA manual – page 40

4. The employee mistakenly filed a timely retaliation complaint relating to a whistleblower statute enforced by OSHA with another agency that does not have the authority to grant relief (e.g., filing an AIR21 complaint with the FAA or filing a STAA complaint with a state plan state).

 it says that if I would have contacted any agency –in writing about my complaint- then OSHA would substitute that. Even in my May 2014 filing, I had attached FDA letter. I communicated in writing, with FDA on December 12, 2013- and my termination date was May 31, 2013. Though immediately after termination, I was engaged in mediation with GE. And also I had , in writing contacted DHS in October 2013. Which OSHA didn't consider.

I had hired three law firms and paid them- none of them advised me to file OSHA charges nor anything.. So given my circumstances –equitable tolling, extreme hardship, mitigating circumstances apply.

 These attachment have GE issued alert in 2018- which had medical device vulnerabilities that existed when I was working at GE 2018 Cybersecurity alert by GE for hundreds of thousands of medical devices- for which I was fired to speak up and not join GE fraud scheme.
 1)   Trivedi's position is corroborated by Scott Erven, an independent cybersecurity

Researcher. Finally GE and Department of homeland security(DHS) issued ICERT ALERT in February/March 2018(EXHIBIT 1) for cybersecurity vulnerabilities related to many types of GE medical devices worldwide. Following GE devices were affected.1) Scott Erven reported these cyber vulnerabilities to GE in 2014.

2)   Trivedi started bringing up severity and sense of urgency/liability/ to fix

address/stop integrating and shipping medical devices with InsiteEXC to GE from 2011.

3)    Insider threat mitigation didn't exist..as Bill Baribux –GE architect testified (EXHIBIT 3) InsiteEXC  failed all security tests on day ONE in year 2008 ;so they moved it from public facing to inside GE network but GE has 300,000 employees and  as Scott Erven proved that InsiteEXC was vulnerable from hospital/outside GE network as well.

4)    From my phone conversation with Scott on Feb 22nd  2019 he was also wondering

that how come GE not address it/(no fix, patch or recall) despite having lots of press around it for 4 years and many security researchers knew about it and wrote. After Scottt report in 2014 ; vulnerabilities were unpatched even though it was wide open to be hacked and manipulated

5)    (Somehow all of a sudden GE released a patch in Feb/March 2018.)

6)    This is just a tip of an icerburg –vulnerability Scott reported ;was few of 465 total critical defects.

7)    GE knowingly conspired, deceived, fraudulently sold medical device products and

services to customers, investors and government by not publicly disclosing defects, cybersecurity vulnerabilities, also serious hackable –for years for sake of generating revenue, money while putting public health and safety at risk and mercy/hands of hackers. GE made numerous press releases, released you tube video, product brochures for surgery, ultrasound and all kind of medical devices with misleading, false information.
  Sent with ProtonMail Secure Email.
------- Original Message -------
On Friday, July 2nd, 2021 at 8:24 PM, Koh, Daniel Arrigg - OSEC
<Koh.Daniel@dol.gov> wrote:
> Thank you.
Office of the Secretary
U.S. Department of Labor
200 Constitution Ave, NW
Washington, DC  20210

> From: Madhuri Trivedi <orangeinc@protonmail.com>
> Sent: Friday, July 2, 2021 7:10 AM
> To: Koh, Daniel Arrigg - OSEC
> Subject: Fw: OSHA complaint review
> Daniel Koh,> I need to send a letter to Secretary of labor..and your office..Would you please reply.> thanks
------- Original Message -------
On Friday, July 2nd, 2021 at 4:57 AM, Madhuri Trivedi <orangeinc@protonmail.com> wrote:
> Hello

> I had filed OSHA compliant and OSHA made a mistake..Investigator and supervisor at OSHA are no longer employed with DOL...
> I want to send my file for review..My complaint was administratively close by mistake/failure of OSHA investigator..
> Please reply..Thanks
> Madhuri
> Ph:- 650-242-5135

End of email ***********************

# EMAIL 1 continuing violation - makes complaint timely

------- Original Message -------
On Thursday, September 2nd, 2021 at 12:51 AM, Madhuri Trivedi <orangeinc@protonmail.com> wrote:


Mr. Rosa,
FBI had criminal investigation  --
Some of the GE action were criminal .. it is not proper for you to close it by saying timely - when I presented mountain of evidence and case laws..


From:orangeinc@protonmail.com <orangeinc@protonmail.com>
To:Frederick, James S. - OSHA <Frederick.James.S@dol.gov>orangeinc@protonmail.com <orangeinc@protonmail.com>CC:Koh, Daniel Arrigg - OSEC <Koh.Daniel@dol.gov>
Date:Tuesday, August 31st, 2021 at 1:22 PM
GE aviation also fired recently in 2019 December --another engineer as I have mentioned in past ---and for that OSHA already has an open investigation for raising serious CYBERSECURITY issues with huge data. Thus it is continuing violation.... there are thousand case laws - that tells that when a law is violated --and  is ongoing --it is continuing violations...


Hanover Shoe, Inc. v. United Shoe Mach. Corp., 392 U.S. 481, 502, 88 S. Ct. 2224, 2236, 20 L. Ed. 2d 1231 (1968)

(" The continuing violation doctrine allows a plaintiff in certain circumstances to recover on the basis of an ongoing policy or practice of illegal activity initiated prior to the limitations period. See Hanover Shoe, Inc. v. United Shoe Mach. Corp., 392 U.S. 481, 502 n.15, 88 S. Ct. 2224, 2236 n.15 (1968).")

Hanover Shoe case below is for Sherman act    -- but the point is same..

------- Original Message -------
On Thursday, September 2nd, 2021 at 12:37 AM, Madhuri Trivedi <orangeinc@protonmail.com> wrote:

Mr. Frederick, Mr. Koh, My very fist email said to apply secretary of labor's good faith tolling and exception..

Mr. Koh, if you being chief of staff - can't convince Mr. Rosa ; then please ask Mr. Walsh --- for this..Getting justice is important.

And I requested to transfer my case to Boston office..

I had written that I had no faith in Anthony Rosa. And I was 100% sure that he would not do anything..

Mr. Rosa - please have someone else look into this..and take action against GE.

Please assign my matter to another person and reopen..

## EMAIL 2

RE: Contact OIG about MR. Rosa and original complaint
From:orangeinc@protonmail.com <orangeinc@protonmail.com>
To:Frederick, James S. - OSHA <Frederick.James.S@dol.gov>CC:Koh, Daniel Arrigg - OSEC <Koh.Daniel@dol.gov>
Date:Thursday, September 2nd, 2021 at 4:53 PM
It will go to Denise at Midwest - Mr. Rosa told me...so please don;t send to her....Send it to Boston. I am writing this 15 time now..

Also from my very first email to Mr. Koh on July 2 -- I have asked that for my newly filed complaint - secretary of labor apply tolling and consider it timely...aI am writing this now 30 times to OSHA people...so please convey this to whoever you send it too..

Because I want OSHA to investigate .....

Because GE and GE's crook attorneys know that I am communicating with OSHA- they will do best so that OSHA doesn't investigate...

In past as I emailed you before - GE has bribed my attorney whom I apid and he started threatening me_ so I had to fire him..Another quitam false claims attorney who makes millions -GE stole his partner..

Alexandria Horne has recently wrote on her LINKEDIN that "if you bring billion dollar compliance issue - GE kicks you out the door.."

And "As stated below by Ms. Horne, as to echo of what stated by
Trivedi, about GE - that company [GE] will lobby, bribe,
intimidate or kill anyone in their way."


This has become a full fledged war –

## EMAIL 3

------- Original Message -------
On Monday, June 7, 2021 2:09 PM, Madhuri Trivedi <orangeinc@protonmail.com> wrote:


Mr. Donovan,
I sent a letter to FDA 180 days plus 12 days more...Plus complaint to DHS was within 180 days---I will email that soon...Would you please talk on phone...

Nathan is afraid that if he starts investigating GE- and tries to convince judge then he would loose his job --plus GE is also a big company..

Nathan said that if  I send an email to you about all this- he will send a formal letter --
What I am saying is to apply tolling, exceptional mitigating circumstances beyond my control....


Please have a phone call with me...as Nathan is concerned for loosing his job if he fights this hard..

May be you can apply all this as you have higher authority...

Nathan said he would do best to apply his expertise once I send him additional DHS related information which was submitted within 180 days...But you must get involved...Please don't tell Nathan about this email...


2. Despite sending OSHA - detailed chronology of events as attached here - along with hundred documents that prove my case - with lots of legal arguments for good faith equitable tolling, DOL secretary's exception, continuing violations to make my complaint timely; OSHA dismissal letter mentions nothing of that. And has selectively rafted letter to just blindly and corruptly dismiss my case.

Corrupt OSHA didn't care to contact FBI supervisor in Milwaukee - Clayton Wible who at the same time when OSHA closed my complaint in 2014 - called Trivedi after talking with FBI agent for 2 hours; that Trivedi matter is False claims act matter  - Nor reached out to another FBI agent senior official who was doing criminal investigation..

In letter sent to GE by Foley & Mansfield - law firm has mentioned fraud, whistle blower - It has been sent to OSHA people twice - despite that they have filtered that and only mentioned cross law firm - who was hired for mediation and for not putting fraud in GE negotiation - I fired that law firm. Though Foley & Mansfield also did malpractice by not bringing all claims timely despite they knew it.

In putting footnote , next to mediation statement in a DISMISSAL letter dated September 17, 2021 - corrupt OSHA investigator who needs to be in Jail wrote that " Complainant believed that Respondents were not accurately disclosing risks."   - but for not putting disclosure/fraud  - cross law firm was fired **–plus there are 100 other documents that prove that Trivedi believed and even put in writing that GE was not accurately disclosing risks.**
Because it proves clear cut corruption, harassment done unto me..and color of law violations when government person abusing their govt. position to OBSTRUCT JUSTICE. Obstruction of justice is criminal offense. Instead of investigating; they are corrupting covering up and are neither ashamed of it nor afraid. Corrupt OSHA people have deprived me of my rights twice. **Public corruption.**
**here are tons of other evidence that Trivedi submitted to OSHA -that proved that Complainant.Trivedi  believed that Respondents were not accurately disclosing risks." none of that has been mentioned in the**

**response- THis is beyond Illegal- stop doing this to me and put OSHA people in jail..**

**Mr. Koh, since July 2 - you are watching this -- while OSHA people are illegally not doing their job. This is beyond corruption - there is a degree of corruption that one can tolerate..**

When GE can bribe OSHA people - GE easily bribed and stole - my attorneys too -- I submitted their statement but eventually my statement is true-

## 43.6 Trivedi ALJ objections Page 15

3. The final rule clarifies that a SOX whistleblower "need not show that the conduct complained of constituted an actual violation of law. Pursuant to this standard, an employee's whistleblower activity is protected where it is based on a reasonable, but mistaken, belief that a violation of the relevant law has occurred or is likely to occur."

4. **Horne's timely filed complaint under SOX**, with same retaliation, protected activity, cybersecurity. Continuing violation. And thus Trivedi's complaint is timely – as written 20 times to OSHA., Horne was is pending with ALJ . She was crying when she contacted me first time and I advised her to fight back then she filed complaint with OSHA. There are messages between us to prove that.
OALJ Case No: 2021-SOX-00029
OSHA Case No.: 5-1610-20-085

In the Matter of: ALEXANDRIA HORNE, Complainant,  v. GENERAL ELECTRIC AVIATION, ET AL., Respondent.

Trivedi alleged continuing violation, because for speaking up, not joining fraud that GE was doing- and for being a woman ..But in 2019- GE also treated Alexandria Horne- for bringing GE's attention to fraud, serious violations of cybersecurity, for being a woman- -Ms. Horne was terminated....there are more victims for GE's such illegal acts.

Both Trivedi and Horne's OSHA complaints are handled by Midwest people- there are same corrupt OSHA people. I request that ALJ consolidate both of ours objections, consider it as group complaint – where n> 1

5. Entire dismissal letter does not say actually what happened. Please find attached chronology.pdf which details sequence of event.

## 43.7 Trivedi ALJ objections Page 22

**A**ttached pdf is what proves that co workers who developed product with 200 defects - on day 1 Trivedi joined these people had created 200 defects - Trivedi was doing integration and testing..And was blamed for not getting along with them..while they were not fixing defects for 5-10 years, were not attending daily status meeting..Below emails, at GE ,shows why GE defendants and attorneys to be put in JAIL,  that (1)on a second project that Trivedi joined – on Day 1 there were 200 defects produced by coworkers with whom Trivedi was framed to be not get along. (2)When I didn't reproduced defects which existed in INSITEEXC for 5-10 years – Trivedi was blamed for not getting along with those who were incompetent(3) Those who were not attending meetings- Trivedi was given a plan to improve relationship by having 10n1 with those coworkers-

## 43.8 Trivedi ALJ objections Page 22

**Allegations of ongoing fraud should not be dismissed on the basis of the statute of limitations; when Trivedi allege "ongoing fraudulent scheme"**

Scott Erven's alert in 2018, specifically mentions "INSITE EXC" as alleged in Trivedi case.
(1) GE made false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, )
United States ex rel. Sperandeo v. Neurological Inst. & Specialty Centers PC, No. 2:14-CV-158-JVB-JEM, 2021 WL 1177071, at *4 (N.D. Ind. Mar. 29, 2021) ("Sperandeo counters that allegations of ongoing fraud should not be dismissed on the basis of the statute of limitations. ").
**[Trivedi was put on a PIP by GE for not joing fraud scheme] [Trivedi reported first internally]**
**********************************************************
**Nonconforming product & service by GE**
There is ample evidence presented which makes GE liable for FCA.
*United States ex rel. Fischer v. Cmty. Health Network, Inc.*, No. 1:14-cv-01215-RLY-DLP, at *12-13 (S.D. Ind. Nov. 25, 2020) ("**thus, because the second amended complaint alleges ongoing FCA violations beginning in 2009, the applicable statute of limitations does not bar the claims**. (Id. at 11-12)")
 ("31 U.S.C. § 3731. Under Federal Rule of Civil Procedure 8(c)(1), **a statute of limitations argument is an affirmative** defense, not an attack against the sufficiency of the pleadings. *U.S. ex rel. McGee v. IBM Corp.*, 81 F. Supp. 3d 643, 656 (N.D. Ill. 2015); Fed. R. Civ. P. 8(c)(1).")  (Here, the Second Amended Complaint alleges Campie was told it was "none of his concern" when he discussed contamination and adulteration problems on multiple occasions) **[As GE has treated Trivedi similar way, that it is none of her concern]**

Goldberg v. Rush Univ. Med. Ctr., 929 F. Supp. 2d 807, 815–16 ,826, 827 (N.D. Ill.  2013) ("[A] plaintiff is not required to plead facts in the complaint to anticipate and defeat affirmative defenses." *Indep. Trust Corp. v. Stewart Info. Servs. Corp.,* 665 F.3d 930, 935 (7th Cir.2012). ")A statute of limitations is an affirmative defense. Fed.R.Civ.P. 8(c)(1). Dismissing a claim as untimely at the pleading state is an "unusual step, since a complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations." *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP,* 559 F.3d 671, 674 (7th Cir.2009). "[A] federal complaint does not

fail to state a claim simply because it omits facts that would **816** defeat a statute of limitations defense." *Hollander v. Brown,* 457 F.3d 688, 691 n. 1 (7th Cir.2006).

("Here, R**elators allege an ongoing fraudulent scheme that Defendants allegedly** continued to execute after June 21, 2004. (*See* R. 168, Fourth Am. Compl., ¶¶ 110, 137, 145.) **Accordingly, dismissal based on the statute of limitations is premature.** *See Upton,* 900 F.Supp.2d at 831–32.")

Because Dave Sallis- manager with whom Trivedi worked (he did stated to me that department of defense was complaining to him about not having proper encryption)(Sallis said Ge has paid him to keep his mouth shut)

**Trivedi** has stated several times, ongoing violations and vulnerabilities; entitle me to still be within time limit.

## 43.9 Trivedi ALJ objections Page 23

Some catalog of cybersecurity vulnerabilities alert GE issues through CISA  -department of homeland security –till December 2021- thus ongoing violation, makes my complaint timely.

Item 1 is holy grail -Scott reported first to GE in 2014-  as it affect 100s of 1000s of medical devices- specifically and exactly what GE is touting in all their SEC filings as robust, with lack of internal controls and more.

Latest in December 2020, GE is issuing alert through DHS for remote connectivity issues— while misleading first circuit court by stating totally opposite scenario.

1. **Advisory (ICSMA-18-037-02)   GE Medical Devices Vulnerability**  Original release date: March 13, 2018
   https://us-cert.cisa.gov/ics/advisories/ICSMA-18-037-02

2. **ICS Medical Advisory (ICSMA-19-190-01)**  GE Aestiva and Aespire Anesthesia (Update A)release date: July 09, 2019 |
   https://us-cert.cisa.gov/ics/advisories/icsma-19-190-01

3. **ICS Advisory (ICSMA-20-023-01)   GE CARESCAPE,** ApexPro, and Clinical Information Center systems   release date: January 23, 2020
   https://us-cert.cisa.gov/ics/advisories/icsma-20-023-01

4. **ICS Medical Advisory (ICSMA-20-343-01)    GE Healthcare Imaging** and Ultrasound Products    Original release date: December 08, 2020
   https://us-cert.cisa.gov/ics/advisories/icsma-20-343-01

5. **ICS Medical Advisory (ICSMA-20-049-02)**    GE Ultrasound products   Original release date: February 18, 2020
   https://us-cert.cisa.gov/ics/advisories/icsma-20-049-02

6. **ICS Advisory** (ICSMA-18-128-01) Silex Technology SX-500/SD-320AN or GE Healthcare MobileLink (Update B) release date: May 08, 2018

7. ICS Advisory (ICSA-18-275-02)   GE Communicator    release date: October 02, 2018[1]

---

[1] Exhibit ActiveX CISA GE Communicator CISA  -- is similar to what Trivedi cited as ActiveX vulnerabilities/ risk above about active X

https://us-cert.cisa.gov/ics/advisories/ICSA-18-275-02

## 43.10        Trivedi ALJ objections Page 26

In re GE/CBPS DATA BREACH LITIGATION (1:20-cv-02903-KPF) District

Court, S.D. New York.. judge Judge Katherine Polk Failla's order denying motion to dismiss – dated August 4, 2021, page 10… **In this ruling--- "at risk " ,"future injury" has been shown enough to prove injury and thus ARTICLE III standing...**[2]

> "[T]he Supreme Court has made clear that 'allegations of possible future injury' or even an 'objectively reasonable likelihood' of future injury are insufficient to confer standing." *McMorris*, 995 F.3d at 300 (quoting *Clapper* v. *Amnesty Int'l USA*, 568 U.S. 398, 409-10 (2013)). Rather, a future injury may support standing only if "the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Id.* (quoting *Susan B. Anthony List* v. *Driehaus*, 573 U.S. 149, 158 (2014)).

This applies, in a way to, all DHS CISA warning related GE's medical devices. Because even these device and patient data being "at risk" and "future injury" ; given that most of vulnerabilities were 9.8 out of 10 – highly exploitable.

IRREPARABLE INJURY, INJUCTION  "An allegation of future injury may suffice if the threatened injury is "certainly impending," or there is a ' 'substantial risk' that the harm will occur." Clapper, 568 U.S., 5, 133 S.Ct., at 1147, 1150, n. 5

## 43.11        Trivedi ALJ objections page 27

GE said that Diane Smith investigated & interviewed- But Diane didn't interview all the individuals Trivedi requested such as Dave Salis, Debbie Babula, Joe Purcell, Barry Turner, Ofir Dahan. surgery manager in Saltlake city –UTAH, Glyn Livermore, Mathews Matson ,InsiteEXC customer Missy Polak, InsiteEXC global service leaders( John Farrow, Peters Evelyn,Charles Pollum, Jon Love,Sara Zieher, Sal Astarita)

She selectively interviewed those whom ;she could gather document against Trivedi and excluded those who will say positive things about Trivedi..This was a fake internal investigation just to generate some data. MA court can ask GE to submit whom Diane interviewed & what she looked. She was already employed by GE. ONLY outsider with no financial, social, networking or other interest can do SOME INDEPENDENT INVESTIGATION which Diane didn't do. Daine did BEST to COVER up FRAUD as it was her job as GE employee.

---

[2] A former employee of GE has sued GE..GE's stone-aged style approach and attention to cybersecurity -- this was what they did in my case... As suffering retaliation for raising serious cybersecurity issues has put me into bad situation by GE.

## 43.12        Trivedi ALJ objections page 29

GE abandoned its Yank and rank performance appraisal system after Trivedi's arbitration. Trivedi fought that it is creates toxic culture and leads to lack of collaboration, synergy between GE employees, thus it is GE's problem and not Trivedi's

# 44ARB petition for review Exhibit 1 page 167 of pdf AND First circuit opening brief page 31 filed July 2021 – and also part of district court record filed in 2019 – ECF 143 Trivedi's objections to R&R

…if ALJ, OSHA, ARB takes judicial notice..how come this was not noticed?

  Whether ALJ, OSHA failed to apply( or INTENTIONALLY and KNOWINGLY didn't apply)Anticipatory Obstruction of Justice:  under the Sarbanes-Oxley 18 U.S.C. 1519; which is a criminal statute and TIMELINESS would not have been an ISSUE to dismiss Trivedi's complaint
ANSWER: Yes. ALJ and OSHA -NTENTIONALLY and KNOWINGLY didn't apply.

| December 19, 2012 | Trivedi met with CTO Tim Kottak met in-person. Tim told Trivedi that such large amount of quality issues, 600 critical defects are unacceptable and illegal ..In next few days Tim Kottak arranged a meeting to address defects. After Tim's meeting GEHC deleted all 600 defects without fixing single one of them( changed status of defects in database from open to close( these defects database is what FDA requires and FDA can ask for review so these the EVIDENCE/PROOF was DESTROYED) – this was in - first week of January 2013.. <br> Trivedi requested Tim Kottak to change reporting manager (ECF 51 page 187 paragraph 443) from David Mehring to Philippe but Tim didn't do anything.. And let fraud and retaliation continue. |
|---|---|

Despite providing details in OSHA complaint- OSHA and ALJ failed Anticipatory Obstruction of Justice:  under the Sarbanes-Oxley 18 U.S.C. 1519; which is a criminal statute and TIMELINESS would not have been an ISSUE to dismiss Trivedi's complaint- when GE deleted 600 defects in five minutes from database without fixing any of them. ALJ McGrath denied further discovery as well because if he would have allowed that GE.OSHA and his corruption would have been exposed.

# 45Trivedi ARB opening brief page 52-53

Continuing tort , The continuing violation doctrine provides that the statute of limitations does not begin to run on a continuing wrong until the wrong has been conclude – applies to GE, OSHA, ALJ …….Trivedi also alleges of continuous unlawful acts , continuing violations, continuing harm.

See below ALJ and OSHA's continuing denial –to request response from GE , varying excuses to dismiss Trivedi's OSHA complaint – constitutes continuing harm….it shows practice of conduct – Thus continuing tort doctrine….- **ranging from 2014 till 2022 by DOL, OSHA, ALJ….to cover up..and not to investigate – even GE committed criminal acts..** by citing the continuing violation doctrine -- which is based on the equitable notion that the statute of limitations should not begin to run until a reasonable person would be aware of the underlying violation.

## 46 Trivedi ARB opening brief page 55 -the "continuing violations" doctrine, principle of accrual ,postpones the beginning of the limitations period where the defendant inflicts continuing and accumulating harm

## 47 Trivedi ARB opening brief page 57 -Trivedi is entitled to emotional damages under SOX and ALJ knows; but intentionally dismissed case based on timeliness

## 48 Trivedi ARB opening brief page 8 -ALJ & ARB stayed BLIND to violations and to terrorize Trivedi MAGNIFIED trivial thigns to dismiss her claims based on timeliness…That's why all must be shackled in chain & jailed.

### some of GE cybersecurity links---spanning all the way till 2021

No judge, no court would allow GE to get away from what they have done to ME/Madhuri-- there is no defense for that..

1) https://www.zdnet.com/article/mdhex-vulnerabilities-impact-ge-patient-vital-signs-monitoring-devices/

2) https://www.zdnet.com/index.php/category/2381/index.php/article/account-with-default-creds-found-in-100-ge-medical-device-models/

3) https://www.forbes.com/sites/thomasbrewster/2015/07/10/vulnerable-breasts/#62a219406b5a

4) https://www.zdnet.com/article/vulnerabilities-found-in-ge-anesthesia-machines/

5) https://www.modernhealthcare.com/cybersecurity/cybersecurity-flaw-discovered-100-ge-medical-devices

6) https://us-cert.cisa.gov/ics/advisories/ICSMA-18-037-02

7) https://us-cert.cisa.gov/ics/advisories/icsma-20-343-01

8) https://www.healthcareitnews.com/news/cisa-says-security-vulnerability-found-ge-imaging-and-ultrasound-devices

9) https://techcrunch.com/2020/12/08/researchers-say-hardcoded-passwords-in-ge-medical-imaging-devices-could-put-patient-data-at-risk

10) https://www.cyberscoop.com/ge-healthcare-dhs-alert/

11) https://www.medtechintelligence.com/news_article/fda-announces-cybersecurity-vulnerabilities-in-certain-ge-healthcare-systems/

12) https://healthitsecurity.com/news/feds-alert-to-critical-vulnerabilities-in-ge-patient-monitoring-products

13) https://khn.org/morning-breakout/security-flaws-found-in-ge-medical-devices/

14) https://www.medtechdive.com/news/fda-cyber-vulnerabilities-PTC-Axeda-medical-device-software-/620075/

15) https://threatpost.com/critical-unpatched-bug-ge-radiological-devices/162012/

16) https://www.techradar.com/news/ge-healthcare-patient-monitors-are-hit-by-potentially-easy-to-exploit-security-flaw

17) https://www.csoonline.com/article/3600164/publicly-known-support-credentials-expose-ge-healthcare-imaging-devices-to-hacking.html

18) https://cybersecuritymarket.com/fda-informs-health-care-providers-facilities-and-patients-about-potential-cybersecurity-vulnerabilities-for-certain-ge-healthcare-clinical-information-central-stations-and-telemetry-servers/

19) https://control.com/news/cisa-discovers-vulnerabilities-in-ge-healthcare-radiological-devices/

20) https://www.biospace.com/article/releases/fda-informs-health-care-providers-facilities-and-patients-about-potential-cybersecurity-vulnerabilities-for-certain-ge-healthcare-clinical-information-central-stations-and-telemetry-servers/

21) https://www.zdnet.com/article/vulnerabilities-found-in-ge-anesthesia-machines/

**49 OSHA Anthony Rosa dismissed September 1, 2021 Trivedi OSHA 2014 complaint – in which he stated about administratively closure of 2014 ( "On June 11, 2021, you spoke by phone conference with both ARA Keller and RSI Terwilliger at your request. You were informed that OSHA was unable to reopen an administrative closure of a complaint ")**

**; proof that June 2021 was the first time Trivedi came to know that 2014 complaint was closed corruptly from Denise Keller of MIDWEST OSHA. Discovery based trigger – Trivedi didn't know till then. So how come she act on it – if she didn't know and 2014 OSHA investigators had done this corruption.** 1000 case laws—where Trivedi didn't know that it was closed administratively. This same argument has been presented to ALJ and to ARB>>and also that this closure was against OSHA's own investigation manual f- because as peer manual even if complaint untimely or does not meet prima facie case.

Trivedi ARB brief - Page 48 ---

Continuing violation doctrine applies to Eighth Amendment claim of deliberate indifference, Title VII, *Bivens* action – then why it doesn't apply to Trivedi's case AND "discovery-based trigger," by which the statute of limitations begins to run when the plaintiff discovers or has enough information from which he or she should have discovered the injury and its cause. [ Trivedi didn't know her TORT, BIVENS claims against OSHA starting from 2014 – until June 2021 – when she came to know that it was closed administratively)

49.1 Also 2014 complaint was not filed under 11 (c ) – it was corrupt Tamra & Kuss who wrote 11 ( c) on their own…see June 23, 2014 email to David Nelson – former sec.gov regional director – who, after reading Trivedi material – Told Trivedi that Trivedi had valid securities fraud claim….so..Tamara twisted and put 11 ( c) & corruptly wrote – Trivedi claims doesn't fit 22 OSHA whistleblower statutes..& June 2014 – Fbi supervisor in Milwaukee informed Trivedi that she had valid Quitam –false claims act ( everything here is part of Trivedi ALJ objections)

**From:** Madhuri Trivedi [mailto:orangeinc@protonmail.com] **Sent:** Monday, August 16, 2021 6:46 AM
**To:** Koh; Daniel Arrigg - OSEC; Frederick; James S. - OSHA; Rosa; Anthony - OSHA
**Subject:** Re: email

Things are so egregious that I don't have words..cybersecurity researcher Scott Erven- who from outside GE network was able to find vulnerabilities..reported to GE in 2014--GE didn't do public release till 2018 and put large number of patients, hospitals to Risk of misdiagnosed, not timely diagnosed. hacking of their data, patient file …

Sent with ProtonMail Secure Email.

3. **I didn't HIRE OR PAY David Nelson.** He looked at my claims free. As He was my school's alumni —so as a courtesy--David

Nelson –SEC attorney (David Boise law firm attorney and he was SEC regional director prior to that) reviewed my matter in 2013-2014 **but he didn't mention to me which whistleblower laws, which SEC laws, what needs to be done next ,**-only things he mentioned after reviewing along with his assistant was that I have valid, SEC claims against GE but his law firm represents defendants and also they change hundreds of thousands in retainer and lot more to represent me in SEC matter. David Boise represent government in antitrust case against microsoft before 20 years...after that his law firm has become big bucks one.

From: David Nelson <dnelson@bsfllp.com>
Date: Mon, Jun 23, 2014 at 9:21 AM Subject: RE: should I send my deposition ?
To: Madhuri Trivedi <mcis99@gmail.com> Cc: Aaron Marcus <amarcus@bsfllp.com>
Madhuri, today is hectic and I have some meetings tomorrow. Is Wednesday possible for you at some point? Dave David Nelson

BOIES, SCHILLER & FLEXNER LLP 401 East Las Olas Blvd. Suite 1200 Fort Lauderdale, FL 33301 (Ph) 954.356.0011 (Direct) 954.377.4233(Cell) 954.213.8810

## 49.2 ROSA dismissal letter

**U.S. Department of Labor**   Occupational Safety and Health Administration
Washington, D.C. 20210



September 1, 2021

Madhuri Trivedi
1405 Rockridge Road, Apt. 351
Waukesha, WI 53188

Via Email: orangeine@protonmail.com

Dear Madhuri Trivedi:

This letter is in response to your recent correspondence to the Secretary of Labor regarding your whistleblower complaint. Your inquiry was forward to my office for response. In your emails.

you are requesting that your whistleblower complaint against General Electric Healthcare, Case No. 5-3100-014-41, be reopened and investigated.

According to our database records, you filed a whistleblower complaint with OSHA's Chicago Regional Office on May 4, 2014, alleging that you were retaliated against for engaging in protected activity. Specifically, you alleged that your employment was terminated on May 31, 2013, by Respondent General Electric Healthcare (hereinafter "Respondent"), for *"...expressing concerns about software vulnerability in manufactured medical devices and the possible HIPAA violations it could cause."* (OITSS-WB Case Summary Report, Allegation Summary section). OSHA administratively closed your complaint on June 6, 2014, both because it was untimely under any of the whistleblower statutes administered by OSHA, and because the allegations contained therein were not covered by those whistleblower statutes. Specifically, our database record states that *"Complainant's expressed concern about the possible security breach of the software RP produces does not fall within our jurisdiction. Neither does your allegation that her national origin and gender, were reasons for her termination as well."* (OITSS-WB Case Summary Report, Detailed Reason for Administrative Closure section). Attached please find a copy of our database record in this matter.

Note that OSHA's database record is the only official, Agency-maintained information that OSHA currently has related to your case. As we previously explained, OSHA's Records Disposition Authority requires whistleblower investigation case files to be destroyed five years after the case is closed. Because your complaint was closed more than five years ago, the official case file was destroyed in accordance with this policy. Consequently, OSHA no longer has access to your case file.

On May 30, 2021, you reached out to Chicago Acting Regional Administrator William (Bill) Donovan regarding "OSHA SOX Violations" and requested a telephone call in the coming week. Between June 1, 2021 and June 11, 2021, you emailed and spoke substantively with regional staff who attempted to address your concerns. Specifically, on June 1, 2021, you spoke to Regional Supervisor Investigator (RSI) Nate Terwilliger by phone, and again by phone on June 7, 2021. On June 8, 2021, you spoke with Assistant Regional Administrator (ARA) Denise

Keller, also by phone. On June 11, 2021, you spoke by phone conference with both ARA Keller and RSI Terwilliger at your request. You were informed that OSHA was unable to reopen an administrative closure of a complaint where it no longer possesses the official case file, and that OSHA's database record indicated that your complaint was untimely and outside of OSHA's jurisdiction.

During these recent conversations with both RSI Terwilliger and ARA Keller, you provided documentation from your 2014 complaint (since our records were destroyed as mentioned above). OSHA's review of those records revealed that on May 12, 2014, you emailed Acting ARA Sherrill Benjamin regarding your complaint. On May 13, 2014, your complaint was sent to RSI Robert Kus for assignment and you were given RSI Kus's contact information. That same day, RSI Kus emailed you, writing that he was in the office if you would like to talk, and to contact him if you had any questions. It is our understanding that at a later date, Whistleblower Investigator Tamara Simpson was able to reach you and spoke to you for several hours regarding your complaint. It is also our understanding that as a result of our screening process and interview with you, your complaint was administratively closed.

In the documents that you provided OSHA, you included the administrative closure letter you received, dated July 14, 2014, which stated that *"The OSHA Whistleblower Protection Program does not have jurisdiction over terminations due to reporting errors in medical device software, HIPAA, nationality and gender."* The letter further stated that an OSHA investigator contacted you in order to provide you with the contact information for the U.S. Equal Employment Opportunity Commission (EEOC) and the Department of Health and Human Services, Office of Civil Rights (OCR). In addition, the letter explained that your complaint was not timely filed since you filed it on May 3, 2014, which was beyond the 30-day statutory filing deadline for complaints filed under section 11(c) of the Occupational Safety and Health Act, 29 U.S.C. 660(c)[1], that OSHA would not take any action regarding your allegation of discrimination, and that if you had any questions to please contact OSHA at (312) 885-3074.

After your conversations with our whistleblower officials in the Chicago Regional Office, you reached out to the Directorate of Whistleblower Protection Programs, the Office of the Assistant Secretary for Occupational Safety and Health, and the Office of the Secretary of Labor. In response to your correspondence with the DOL and OSHA National Office, I arranged a day and time to speak with you via phone about your concerns. Our telephone conference was held on August 11, 2021. At this conference, I expressed the Agency's interest in resolving your concerns, but reiterated what Chicago officials informed you: that your 2014 complaint cannot be reopened. Since you made reference to the Administrative Law Judge (ALJ) and the Administrative Review Board (ARB) in your emails to our office, I noted that you could file a new complaint with OSHA. While such a complaint might ultimately be determined to be untimely, because more than eight years have passed since your termination, you would have the opportunity to provide information about why the complaint should be considered timely under any of OSHA's whistleblower statutes, the agency would issue a determination, and you could seek review of OSHA's determination by an ALJ. You responded that you did not want to file a new complaint nor seek ALJ review, and restated your request to have your 2014 complaint

---

[1] As noted above, you alleged that your termination occurred on May 31, 2013. Per OSHA's database record and the administrative closure letter that you provided, your complaint was filed on May 3, 2014—more than eleven months after your termination and more than ten months after section 11(c)'s 30-day filing deadline.

reopened and investigated under the Sarbanes-Oxley Act (SOX), alleging again that the Region mishandled your complaint. The original complaint was filed under section 11(c) of the OSH Act, and the allegations in the complaint, as stated above, do not describe protected activity under SOX. In response, I restated that OSHA cannot reopen your complaint because the official case file has been destroyed. I also informed you of your right to file a complaint with the Office of the Inspector General, if you are dissatisfied with OSHA's handling of your 2014 complaint.

In summary, as explained by various OSHA officials, your May 2014 whistleblower complaint was administratively closed in July 2014, and you received confirmation of this determination in a letter from OSHA, dated July 14, 2014. You did not contact OSHA immediately upon receiving the letter, or shortly thereafter, to dispute this determination. The Chicago Regional Office followed established procedures in screening and administratively closing your complaint, and followed established records disposition schedule procedures, resulting in the appropriate destruction of the official case file. OSHA does not reopen cases where it does not have its original case file to continue or reconsider its initial investigation.

OSHA will take no further action on your original complaint.

Sincerely,

# ANTHONY ROSA
Digitally signed by ANTHONY ROSA
Date: 2021.09.01 14:38:43 -04'00'

Anthony Rosa
Acting Director
Directorate of Whistleblower Protection Programs

cc:    Office of the Solicitor
       Regional Office

Attachment

## 49.3 Trivedi petition for review page 41 –

**False statement 2 >OSHA response letter attached here says  2014 OSHA complaint "I filed it under 11( c)  "**
**Trivedi -during 2021 OS**HA  Investigation I had written multiple times that I did not file it under 11(c) **but Tamara wrote it herself- on her own..**

# 50Continuing violation ,FTCA , and they dictate that the statute of limitations does not start to run "any earlier than the last day of the ongoing injury – applies to FTCA claims against DOL

Harvey v. United States, 685 F.3d 939 (10th Cir. 2012) (Determination of when a claim accrues under Federal Tort Claims Act (FTCA) is a matter of federal, not state, law. 28 U.S.C.A. § 2401(b).)

   *Molina-Garcia v. Fardon*, No. 18-2322, at *3 (7th Cir. Mar. 5, 2019) ("*see also United States v. Kwai Fun Wong*, 135 S. Ct. 1625, 1638 (2015) (equitable tolling is available in FTCA suits). ")
   "Federal claim-accrual rules govern cases arising under the FTCA , and they dictate that the statute of limitations does not start to run "any earlier than the last day of the ongoing injury." *Devbrow v. Kalu*, 705 F.3d 765, 770  (7th Cir. 2013); *Heard v. Sheahan*, 253  F.3d 316, 318-19 (7th Cir. 2001). A tort can be said to continue so long as the tortious acts, and not the injury caused by them, continues to happen. *Alexander v. United States*, 721 F.3d 418, 425 (7th Cir. 2013)"

## This doctrine applies "'where an entire course of conduct combines to produce an injury'—in other words, when the defendant carries out a continuing wrongful act."

   *Alexander v. United States*, 721 F.3d 418, 425 (7th Cir. 2013) ("Though we have no quarrel with the district court's conclusion that Alexander knew or should have known by the time of Freeman's July 2008 deposition that agents of the federal government potentially caused his injury, it does not follow from this that Alexander's IIED claim is untimely, because the agents' alleged extreme and outrageous conduct did not cease with either Alexander's arrest or Freeman's deposition. Rather, the complaint alleges that the tortious conduct—which included witness intimidation, perjury, and suborning of perjury—continued right through Alexander's trial. Any one of these later actions might suffice to provide the basis for a timely IIED claim.")

   *Alexander v. United States*, 721 F.3d 418, 425 (7th Cir. 2013) ("In situations such as this, where the alleged injury can be characterized as a continuing one, federal claim-accrual rules (which govern in cases arising under the FTCA , *id.*) dictate that the statute of limitations "does not start to run *any earlier* than the last day of the ongoing injury." *Devbrow v. Kalu,* 705 F.3d 765, 770 (7th Cir.2013) (emphasis in original); *see also Heard v. Sheahan,* 253 F.3d 316, 318–19 (7th Cir.2001) (discussing the federal "continuing violation" doctrine). Regardless of whether we view the agents' conduct as a continuing wrong or as a series of discrete, independently actionable harms, some of which occurred within the limitation period, we conclude that Alexander's IIED claim is timely.")

   *Britton v. Melvin*, 21-cv-1032-JBM, at *3 (C.D. Ill. Nov. 2, 2021) ("continuing violation is a claim where, among other things, 'the state actor has a policy or practice that brings with it a fresh violation each day.'" *Loza v. Josephson*, No. 16-8111, 2018 WL 4095097, at *3 (N.D. Ill. Aug. 28, 2018) (citing *Savory v. Lyons*, 469 F.3d 667, 672-73 (7th Cir. 2006)).

Plaintiff Trivedi  has adequately pled a continuing violation as …………………..that it continued from 2014 through the present day. ")

*Britton v. Melvin*, 21-cv-1032-JBM, at *2 (C.D. Ill. Nov. 2, 2021) ("claiming that the statute of limitations should be tolled as the complained-of conditions represent a continuing violation. Plaintiff cites *Heard v. Sheahan*, 253 F.3d 316, 318 (7th Cir. 2001) which provides that when a plaintiff is subjected to continuing harm, the plaintiff may recov**er for all of the harm, even if some of the events occurred outside of the statute of limitations. ")**

OSHA, DOL defendants subjected Trivedi to suffer as a VICTIM for their illegal acts from

(1)2014 –first complaint and

(2) Continued in 2021- second complaint,

(3) Continued in ALJ case where ALJ McGrath also issued random order to show cause; Which shows he hasn't read in details Trivedi's objections nor understood the history; his order is based on OSHA's false statements; is prejudiced biased and done to distress Trivedi, also ALJ denied motion for discovery.

As Trivedi presented solid legal arguments, with case laws above for continuing violations, the plaintiff Trivedi legally may recover for all of the harm, even if some of the events occurred outside of the statute of limitations aka Trivedi's FTCA claims against DOL for 2014 illegal closure of whistleblower complaint"  (federal claim-accrual rules (which govern in cases arising under the FTCA , *id.*) dictate that the statute of limitations "does not start to run *any earlier* than the last day of the ongoing injury." )

## 51Trivedi ARB opening brief page 45 and  ALJ objections page 22

Supreme Court allowed -- continuing violation theory to toll statute of limitations for violations occurring from 1912 till 1955. Hanover Shoe, Inc. v. United Shoe Mach. Corp., 392 U.S. 481, 502, 88 S. Ct. 2224, 2236, 20 L. Ed. 2d 1231 (1968)

Hanover Shoe case below is for Sherman act- but the point is in Trivedi's case it is continuing violation of Title VII, false claims act, SOX, CFPA, false claims act retaliation [Appendix 12 of this brief]

, public policy violation, OSHA whistleblower protection  18 U.S.C.§ 1514A(a)(1) and GE's ongoing fraud.  GE knew in July 2014 that I spoke with FBI and FBI said it is quitam.

Trivedi alleged continuing violation, because for speaking up, not joining fraud that GE was doing- and for being a woman ..But in 2020- GE also treated Alexandria Horne- for bringing

GE's attention to fraud, serious violations of cybersecurity--and for being a woman- and like Trivedi engaging in a protected activity -Ms. Horne was terminated....Ms. Horne's is just another example--there are more victims for GE's such illegal acts... Thus it is continuing violation.... there are thousand case laws - that tells that when a law is violated --and is ongoing --it is continuing violations...

First circuit/district court must get testimony from cybersecurity researcher Scott Erven- who from outside GE network was able to find vulnerabilities; reported to GE in 2014--GE didn't do public release till 2018 and put large number of patients, hospitals to Risk of misdiagnosed, not timely diagnosed, hacking of their data, patient file.

ALJ nor OSHA has demonstrated by clear and convincing evidence , and/or presented substantial evidence that GE would have taken the same adverse action against Trivedi absent the protected activity.

Rosa fraud—same call ….dismiss untimely..

**************Beginning of email**********

**From:orangeinc@protonmail.com <orangeinc@protonmail.com>**
**To:Frederick, James S. - OSHA**
**<Frederick.James.S@dol.gov>orangeinc@protonmail.com**
**<orangeinc@protonmail.com>CC:Koh, Daniel Arrigg - OSEC**
**<Koh.Daniel@dol.gov>**
**Date:Tuesday, August 31st, 2021 at 1:22 PM**

# 52 Gun related incident has been omitted by ARB, ALJ, OSHA; which was part of 2014 OSHA complaint; while minor things ARB, ALJ, OSHA has magnified. This is animal like treatment towards Trivedi

## 52.1 Trivedi's arbitration complaint filed November 2013 – which OSHA 2014 complaint had…….

7) Also Greg threatened my safety by all gun related behavior (as mentioned in details in Level 3 statement) when his job was at stake. Management paid no attention when reported such hostile work condition. Managers retaliated by giving negative rating in my performance appraisal for reporting this.

Later She was forced to sit in proximity to Greg Stratton (this was a requirement in PIP) despite repeatedly mentioning her concern of overall safety and wellbeing .Ms.Trivedi was forced to work in a hostile, unprofessional work environment.

## 52.2 Trivedi deposition page 172

```
 2    Q   Wait, Ms. Trivedi.  Stop.  You told
 3        Mr. Mehring that Mr. Stratton had pointed his
 4        hands at you in a gun pantomiming motion,
 5        correct?  That's your testimony?
 6    A   Yes.
 7    Q   And during that same meeting, which is the

 8        one-on-one that occurred in September, you
 9        also told him that he was surfing guns on the
10        internet?
11    A   After -- Before and after this.
12    Q   And what did Mr. Mehring say?
13    A   He said that Greg has a temper problem.  We

14        have already known this issue for years, but
15        we need him for some -- whatever reasons.
16        And -- I mean, there is another manager, his
17        name is Philippe Vigneron.  You can clarify
18        that.
```

19          And he also told me in December, 2012,
20      that Greg has his own problem, but company
21      needs him for some reasons, so we cannot do
22      anything.  And in my one-on-one with Dave
23      Mehring, Dave said he's a guy -- you know, we
24      all know that guy get temper and guy lose
25      their temper and lose their things, it's just

                                                        172

1      I'm overreacting.
2   Q   And you heard Mr. Barbiaux testify that

```
21    Q    Did you tell Nicole Boyle about the incident
22         involving him pointing a gun two feet with his
23         fingers --
24    A    Briefly -- I said briefly, and I said -- I had
25         been told that he's a dormant volcano.
                                                      259
```

# 53 ARB omitted from Trivedi petition for review

## 53.1 Page 40

ALJ failed to see ongoing cybersecurity alerts.

## 53.2 Page 59 ( it is regarding GE's order to show casue response to ALJ McGrath)

In Funke v. Federal Express Corp. , ARB No. 09-004, ALJ No. 2007-SOX-43 (ARB July 8, 2011)

Funke clearly reported the alleged fraud to individuals who had the authority to investigate the misconduct

Another reason, why GE- GE attorneys, OSHA people and ALJ- to be arrested at very this moment. In GE's order to show cause response – GE attorney wrote --

> **"First, even though Ms. Trivedi may contend that she raised concerns to various agencies like the U.S. Food and Drug Administration or the Federal Bureau of Investigation—all such outreach is legally irrelevant if not made within the 180-day deadline."**

Trivedi spoke to FBI in April 2014 – on May 2014- FBI supervisor Clayton Wible replied that it was quitam.. How come 180 days statute of limitations apply – when GE has "18 U.S.C.A. §1513 ("(e) Whoever knowingly, with the intent to retaliate, takes any action harmful to any person, including interference with the lawful employment or livelihood of any person, for

providing to a law enforcement officer"   - since 2014 GE knows about FBI – but still has kept fighting.

**Flunke case in ARB -**footnote 78 Whistleblower protection statutes "should be liberally interpreted to protect victims of discrimination and to further [their] underlying purpose of encouraging employees to report
perceived . . . violations without fear of retaliation." Fields v. Florida Power Corp., ARB No. 97-070, ALJ No. 1996-ERA-022, slip op. at 10 (ARB Mar. 13, 1998)  citing English v. General Elec. Co., 496 U.S. 72 (1990)) and Bechtel Constr. Co. v. Secretary of Labor, 50 F.3d 926, 932 (11th Cir. 1995) ("it is appropriate to give a broad construction to remedial statutes such as nondiscrimination provisions in federal labor laws").

## 53.3 Page 57

Whether judge failed to consider MERIT of this case and not to apply equitable tolling, when systemic, ongoing violations, pattern and practice claim -exist.

## 53.4 Page 32, 33

**Objections to ALJ McGrath dismissal order -**
        **Issue 1**>However, she elected not to proceed with a complaint, and acknowledged her understanding OSHA would take no further action.
Trivedi-Where the proof anywhere, ever that I acknowledged my understanding that OSHA would not take further action…ALJ erred in concluding this without any evidence, without understanding record as a whole. This is written by a SURFER- who didn't understood the case and just acted as GE's defense counsel.

**Issue 7 >**Based on the evidence before me, I do not find that equitable tolling is warranted. But what about continuing violation –detailed case law provided-  not subject to statute of limitations,, even FTCA claims…and GE's ongoing alerts.
Trashed continuing violation – even FTCA has ongoing injury accrual

## 53.5 From Page 34 to 39 judicial notice related Trivedi arguments which ARB trashed- when district court case had no discovery, trial , jur    y but rogue judges corruptly dismissing at motion to dismiss stage – how come ARB, ALJ vigorously quote that

## 53.6 Page 39

("An appellate court must attempt to reconcile conflicts in findings of fact.") ARB No. 13-001, ALJ No. 2008-ERA-3 Bobreski v. J. Givoo Consultants, Inc.

## 53.7 Page 57

        5.32      Timeliness requirement is subject to waiver ("can be waived by the parties or the court"), tolling  and when in a given case the ends of justice require it

**So for ALJ McGrath to not toll Trivedi's complaint** under SOX in 2013 for 15 days – when Trivedi presented ground for tolling, was undergoing mediation and arbitration filing at that time with GE…This is corruption by OSHA and ALJ McGrath.. bringing criminal charges against ALJ would bring justice.

**Avlon v. American Express Co. ARB No. 09-089, ALJ No. 2008-SOX-51 (ARB May 31, 2011) We have stated that "[t]his interpretation is fully consistent with Supreme Court and Federal** Appellate Court precedent holding that an administrative agency may waive procedural requirements in the interest of justice, provided that such a waiver will not prejudice the other party" Superior Paving, ARB No. 99-065, slip op. at 2; see also Am. Farm Lines v. Black Ball Freight Serv., 397 U.S. 532, 539 (1980) ("[i]t is always within the discretion of a court or an administrative agency to relax or modify its procedural rules adopted for the orderly transaction of business before it when in a given case the ends of justice require it."); accord, Zipes v. Transworld Airlines, 455 U.S. 385, 393 (1982) (filing timely charge with EEOC pursuant to 42 U.S.C. 2000e-5(e)'s 180-day period is not jurisdictional prerequisite but a statute of limitations subject to equitable tolling); Communications Workers of Am. v. N.J. Dep't of Pers., 282 F.3d 213, 216-217 (3d Cir. 2002)…………………………………..

*See Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 394, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). **All of this means that the timeliness requirement is subject to waiver**, **estoppel, and tolling when equity requires**. *See id.* at 393, 102 S.Ct. 1127; *see also generally Arbaugh v. Y & H Corp.,* 546 U.S. 500, 516, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006) (stressing that "when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character"). **thus "can be waived by the parties or the court."** *Pietras v. Bd. of Fire Comm'rs of Farmingville Fire Dist.,* 180 F.3d 468, 474 (2d Cir.1999) (collecting caselaw); *see also Surrell v. Ca. Water Serv. Co.,* 518 F.3d 1097, 1104–05 (9th Cir.2008); *Worth v. Tyer,* 276 F.3d 249, 259 (7th Cir.2001); *Jones v. Am. State Bank,* 857 F.2d 494, 499, 500 (8th Cir.1988) *Walton v. Nalco Chem. Co.,* 272 F.3d 13, 20-21 (1st Cir. 2001).

The United States Supreme Court reaffirmed that, absent a clear legislative intent to the contrary, claim-processing deadlines generally are not jurisdictional. *See Sebelius v. Auburn Reg'l Med. Ctr.*, 133 S. Ct. 817, 824-25 (2013); *Henderson v. Shinseki*, 131 S. Ct. 1197, 1202-03 (2011).

## 53.8 Page 29     Complainant Trivedi did articulate how additional discovery would have avoided denial of the complaint.

ALJs decision on scope of discovery and will be reversed when such evidentiary rulings are arbitrary or an abuse of discretion. ALJ erred in dismissing Trivedi complaint without discovery, acted as GE's general counsel

Weather it is legal, ALJ erred , was obstructing justice intentionally, corrupt manner to not grant Trivedi's motion for discovery for responding to order to show cause timeliness of her OSHA complaint filed Twice with OSHA. ALJ order doesn't mention that Trivedi motion for discovery was needed – in order for a complete review of record..ALJ wanted to cover up…

29 C.F.R. § 18.51 **Discovery scope and limits.** (c) Hearing preparation: Materials—(ii) The party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

29 C.F.R. § 18.51(b)(4)(iii) The burden of expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, . . . the importance of the issues at stake in the action and the importance of the discovery in resolving the issues. Under the ALJ 's Rules of Practice and Proce dure, a party may obtain discovery

## 53.9 Page 30 Trivedi objects denial of discovery motion – order and stay pending for timeliness. ALJ corruptly denied motion for stay his own OSC

ALJ MCGrath Order -Complainant also indicated in writing that she was not going to respond to the OTC. E-mail from Madhuri Trivedi to Kristen Wice, Attorney-Advisor to Judge McGrath (Jan. 24, 2022, 11:28 EST) ("I am not going to reply to order to show ca[use] –until[] I get stay or another judge; or order that my motion to stay legal arguments meets timeliness requirement.").

The ARB applies a four-part test to determine whether to stay its own actions. The factors are: (1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) **the likelihood that the moving party will be irreparably harmed absent a stay;** (3) the prospect that others will be harmed if the ARB grants a stay; and (4) the public interest in granting a stay.
Trivedi has to **satisfy any of the ABOVE four facto**rs…… (2) It is clear as Trivedi claims dismissed based on timeliness -**the likelihood that the moving party [Trivedi] has been already irreparably harmed absent a stay;** (3) the prospect that others will be harmed if the ARB grants a stay; and (4) **the public interest in granting a stay[ it was in public interest for so many reasons to protect whistleblower  and importance claims Trivedi raised. ]**

## 53.10    Page 29  Motion to recuse has not been ruled upon

The law says that "any justice, judge or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." **Re:**
**Trivedi_v_General_Electric_and_2022SOX00005_**
From:Madhuri Trivedi <orangeinc@protonmail.com>
To:OALJ-Boston <OALJ-Boston@DOL.gov>OALJ-Filings <OALJ-Filings@dol.gov>Wice, Kristen M. - OALJ
<Wice.Kristen.M@dol.gov>CC:mckenna@american.edu
<mckenna@american.edu>mrapoport@bloombergindustry.com
<mrapoport@bloombergindustry.com>
------- Original Message -------
On Sunday, February 27th, 2022 at 3:17 PM, Madhuri Trivedi

<orangeinc@protonmail.com> wrote:
I wrote about bringing criminal charge against ALJ judge McGrath and his staff.
Please put this email on the docket.
Sent with ProtonMail Secure Email.
------- Original Message -------
On Saturday, February 26th, 2022 at 1:04 AM, Madhuri Trivedi
<orangeinc@protonmail.com> wrote:
I have put name of Judge McGrath and his staff in my FTCA claims....
Highest degree od corruption, and valid FTCA claims against Judge McGrath and
his  staff....malfesance , misfesance and non feasance..corruption...

## 53.11    Page 27  (41 CFR 60-1.21. 7B00 Continuing Violation ) ongoing violations, pattern & practice – ARB , ALJ swallowed – this argument was also emailed to Daniel Koh

January 2021- OFCCP denied to open group investigation for GE; despite submitting 50 former
GE employees information
**Timeliness and Continuing Violation arguments submitted to OFCCP –DOL; which got
trashed. Trivedi didn't fight just yet about it. Focus is on SOX complaint**
41 CFR § 60-50.5 - Nondiscrimination.
41 CFR Subpart B - General Enforcement; Compliance Review and Complaint Procedure

41 CFR Part 60-1 - OBLIGATIONS OF CONTRACTORS AND SUBCONTRACTORS


**From:** Madhuri Trivedi <orangeinc@protonmail.com>
**Sent:** Tuesday, June 22, 2021 8:16 AM
**To:** Olsen, Lynn M - OFCCP <Olsen.Lynn@dol.gov>
**Cc:** Kraak, Margaret - OFCCP <Kraak.Margaret@dol.gov>
**Subject:** RE: Call to discuss OFCCP complaint

7B Timeliness and Continuing Violation

As a general rule, one seeking to remedy a discriminatory act must assert his or her rights within
the periods established by the laws establishing the rights. Under OFCCP procedures, for an act
of discrimination discovered during a compliance evaluation to be remedied as a violation of
Executive Order 11246, Section 503 or VEVRAA, it must have taken place within two years
prior to the date of the Scheduling Letter (Figure F-3 Scheduling Letter), unless the violation is
part of a continuing violation. Complaints filed under Executive Order 11246 are timely if the
complainant filed it within 180 calendar days of the alleged discriminatory act, except for good
cause shown, in which case the Director of OFCCP may waive the filing deadline.362
Complaints filed under VEVRAA and Section 503 are timely if the complainant filed it within
300 calendar days of the alleged discriminatory act, except for good cause shown, in which case
the Director may waive the filing deadline.

41 CFR 60-1.21.

## 7B00 Continuing Violation

**https://www.dol.gov/agencies/ofccp/manual/fccm/7b-timeliness-and-continuing-violation/7b00-continuing-violation**

The courts developed the continuing violation concept to address the fact that some employment practices are not discrete incidents, beginning and ending at particular points in time. For example, a policy or practice of paying lower wages to women rather than to men for the same or similar work is discriminatory and the contractor repeats the violation each time the contractor pays the women. When evaluating such violations, the courts will consider the entire time period during which the violations occurred or the time period since the effective date of the law, whichever is later. **For example, a continuing violation which is grounded in racial discrimination is actionable from the date the continuing practice began or the effective date of Executive Order 11246 (September 1965), whichever is later. This is provided, of course, that the other requirements of coverage are met.**

In compensation cases, contractors will be in violation of Executive Order 11246 any time they pay wages, benefits or other compensation that result, in whole or in part, from application of any discriminatory decision or practice.

*a. Application of Continuing Violation Theory.* OFCCP applies the continuing violation theory in compliance evaluations and

98

complaint investigations. The theory is applicable to the following situations:

1. *Series of Individual Discriminatory Acts.* A continuing violation may occur when the discrimination involves a series of closely related acts. The acts must be sufficiently related to form a pattern of discrimination. The last of these acts must have occurred within the two-year period preceding the date of the Supply and Service Scheduling Letter or the Construction Compliance Evaluation Notice; or, in the instance of a complaint investigation, within the complaint filing period (*i.e.*, 180 or 300 days).

2. *Maintenance of a Discriminatory Policy or System.* A continuing violation may occur when a contractor maintains a discriminatory policy or practice into the two-year, 180-day period or 300-day period. The violation may focus on one particular employment practice, such as promotions or compensation; or it may deal with discrimination in a series of areas, including initial placement, promotions, transfers and salary. It is not necessary under this approach for OFCCP to show that a discrete act applying the alleged discriminatory policy occurred during the two-year period, 180-day period or 300-day period. It is sufficient to show that the policy or system continued into the period and that, if there had been a personnel action, the policy or system would have been applied in the alleged discriminatory manner.

b. *Remedies Under a Continuing Violation.* Once the CO establishes that there is a continuing violation by showing a series of related acts, one of which occurred within

the liability period, or a continuing employment policy that extended into the liability period, then the contractor must remedy all acts that are part of the continuing violation since the effective date of the law under which relief is sought or from the start of the violation, whichever is later. This is so whether they occurred within or outside of the 180-day or 300-day filing period (complaint investigation), or two-year (compliance evaluation) period.

From:Madhuri Trivedi <orangeinc@protonmail.com>

ToOFCCP-MW-CC4 - ESAOFCCP-MW-CC4@dol.govMadhuri Trivediorangeinc@protonmail.comKraak, Margaret - OFCCPKraak.margaret@dol.gov Date:Monday, June 21st, 2021 at 2:02 PM Hello Ms.Karaak let's set up time to talk this week Sent with ProtonMail Secure Email.

### 53.12    Page 27 (41 CFR 60-1.21. 7B00 Continuing Violation ) ongoing violations, pattern & practice – ARB , ALJ swallowed – this argument was also emailed to Daniel Koh

January 2021- OFCCP denied to open group investigation for GE; despite submitting 50 former GE employees information

**Timeliness and Continuing Violation arguments submitted to OFCCP –DOL; which got trashed. Trivedi didn't fight just yet about it. Focus is on SOX complaint**
41 CFR § 60-50.5 - Nondiscrimination.
41 CFR Subpart B - General Enforcement; Compliance Review and Complaint Procedure

41 CFR Part 60-1 - OBLIGATIONS OF CONTRACTORS AND SUBCONTRACTORS

**From:** Madhuri Trivedi <orangeinc@protonmail.com>
**Sent:** Tuesday, June 22, 2021 8:16 AM
**To:** Olsen, Lynn M - OFCCP <Olsen.Lynn@dol.gov>
**Cc:** Kraak, Margaret - OFCCP <Kraak.Margaret@dol.gov>
**Subject:** RE: Call to discuss OFCCP complaint

7B Timeliness and Continuing Violation

As a general rule, one seeking to remedy a discriminatory act must assert his or her rights within the periods established by the laws establishing the rights. Under OFCCP procedures, for an act of discrimination discovered during a compliance evaluation to be remedied as a violation of Executive Order 11246, Section 503 or VEVRAA, it must have taken place within two years prior to the date of the Scheduling Letter (Figure F-3 Scheduling Letter), unless the violation is part of a continuing violation. Complaints filed under Executive Order 11246 are timely if the complainant filed it within 180 calendar days of the alleged discriminatory act, except for good cause shown, in which case the Director of OFCCP may waive the filing deadline.362 Complaints filed under VEVRAA and Section 503 are timely if the complainant filed it within 300 calendar days of the alleged discriminatory act, except for good cause shown, in which case the Director may waive the filing deadline.

41 CFR 60-1.21.

## 7B00 Continuing Violation
# https://www.dol.gov/agencies/ofccp/manual/fccm/7b-timeliness-and-continuing-violation/7b00-continuing-violation

The courts developed the continuing violation concept to address the fact that some employment practices are not discrete incidents, beginning and ending at particular points in time. For example, a policy or practice of paying lower wages to women rather than to men for the same or similar work is discriminatory and the contractor repeats the violation each time the contractor pays the women. When evaluating such violations, the courts will consider the entire time period during which the violations occurred or the time period since the effective date of the law, whichever is later. **For example, a**

**continuing violation which is grounded in racial discrimination is actionable from the date the continuing practice began or the effective date of Executive Order 11246 (September 1965), whichever is later. This is provided, of course, that the other requirements of coverage are met.**

In compensation cases, contractors will be in violation of Executive Order 11246 any time they pay wages, benefits or other compensation that result, in whole or in part, from application of any discriminatory decision or practice.

*a. Application of Continuing Violation Theory.* OFCCP applies the continuing violation theory in compliance evaluations and complaint investigations. The theory is applicable to the following situations:

1. *Series of Individual Discriminatory Acts.* A continuing violation may occur when the discrimination involves a series of closely related acts. The acts must be sufficiently related to form a pattern of discrimination. The last of these acts must have occurred within the two-year period preceding the date of the Supply and Service Scheduling Letter or the Construction Compliance Evaluation Notice; or, in the instance of a complaint investigation, within the complaint filing period (*i.e.*, 180 or 300 days).

2. *Maintenance of a Discriminatory Policy or System.* A continuing violation may occur when a contractor maintains a discriminatory policy or practice into the two-year, 180-day period or 300-day period. The violation may focus on one particular employment practice, such as promotions or compensation; or it may deal with discrimination in a series of areas, including

initial placement, promotions, transfers and salary. It is not necessary under this approach for OFCCP to show that a discrete act applying the alleged discriminatory policy occurred during the

two-year period, 180-day period or 300-day period. It is sufficient to show that the policy or system continued into the period and that, if there had been a personnel action, the policy or system would have been applied in the alleged discriminatory manner.

b. *Remedies Under a Continuing Violation.* Once the CO establishes that there is a continuing violation by showing a series of related acts, one of which occurred within the liability period, or a continuing employment policy that extended into the liability period, then the contractor must remedy all acts that are part of the continuing violation since the effective date of the law under which relief is sought or from the start of the violation, whichever is later. This is so whether they occurred within or outside of the 180-day or 300-day filing period (complaint investigation), or two-year (compliance evaluation) period.

From:Madhuri Trivedi <orangeinc@protonmail.com>

ToOFCCP-MW-CC4 - ESAOFCCP-MW-CC4@dol.govMadhuri
Trivediorangeinc@protonmail.comKraak, Margaret - OFCCPKraak.margaret@dol.gov

## 53.13    Page 26

June 2021 – Trivedi contacted OSHA Midwest – Denise Keller – Supervisor told Trivedi that "2014 OSHA complaint was closed administratively – so letter didn't mention right to appeal to ALJ". In June 2021 -OSHA investigator Nathan told Trivedi on phone that "He  is afraid of losing his job ; if he investigates big company GE …
In that same phone call , Nathan threatened Trivedi that if she emails his boss , what he just told Trivedi that "Nathan is afraid of losing his job ; if he investigates big company GE" – he will send dismissal letter to GE".

July 2021- Trivedi emailed Daniel Koh, DOL Secretary's chief of staff – emailing him about timeliness, secretary's good faith tolling, ongoing cybersecurity issues, fraud, including wire fraud. --- There after Trivedi sent 100 emails to OSHA, Daniel Koh , Anthony Rosa….Anthony Rosa sent a dismissal letter on September 2021, saying that "OSHA will not consider 2014 complaint timely….and she can appeal this to ALJ"

## 54 ARB omitted from Trivedi reply brief to GE response to ARB brief page 11-13 ( reply brief had fraud, other good arguments – all trashed by ARB)

## 54.1 Page 11

## 55Fair opportunity legal argument…..

**How come district court cite OSHA 2014 ( when in 2014 Trivedi didn't get full and fair opportunity  to litigate- there were no statement from GE, witnesses, discovery, hearing – OSHA complaint was not even docketed) and in CIRCLE ALJ cite district court .**

Full and Fair Opportunity to Litigate-OSHA never asked GE's statement, nor conducted discovery, hearing, calling witness, nor a well-reasoned opinion…it was just corrupt investigator like judge Kelley -- – Trivedi filed her complaint on May 3, 2014 – on June 6, 2014 – OSHA closed her complaint and sent administratively closed letter on July 2014… but OSHA investigator manual itself says that Complaint may not be closed administratively under SOX – unless complainant withdraws –in Trivedi's case – Trivedi didn't withdraw. OSHA violated their own manual rules – thinking that Trivedi won't find out and they can continue do this.

Trivedi's contact with USCIS and FDA were  the "precise statutory claim in issue" filed in the wrong forum to justify tolling either the SOX 180-day filing deadlines." ) (**18 U.S.C. § 1514A(b)2(D); 29 C.F.R. § 1980.103(d)**)—but as per OSHA investigator manual above ; it says

complaint filed under SOX may not be closed administratively….even though complaint I untimely or doesn't present prima facie case…

**Isn't this Corrupt and OXYMORON ?**

Feldman-Boland v. Stanley, 15cv6698, at *7-8 (S.D.N.Y. July 13, 2016) ("B. Full and Fair Opportunity to Litigate Even if there were an identity of issues, Plaintiffs did not have a full and fair opportunity to litigate the issue before the NYCCHR. In Kosakow, the court reviewed the SDHR procedures and noted that "there was no record of any discovery being conducted, nor is there any record of any interviews of witnesses [nor a hearing.] It appears that the no-probable cause determination was based primarily, if not exclusively, upon a review of the papers submitted." Kosakow, 274 F.3d at 734-36. Accordingly, the court concluded that "the issue of whether Kosakow was terminated for legitimate business reasons was not 'adequately tested' or 'fully aired' at the DHR proceeding." Kosakow, 274 F.3d at 736 ("By contrast, in Tice, the Third Circuit concluded that there was a full and fair opportunity to litigate where "[t]he prior administrative proceeding was of a judicial nature, consisting of full discovery, testimony under oath by witnesses, cross-examination of witnesses, oral arguments and briefs presented by competing sides, and a reasoned opinion written by an administrative law judge." Tice, 325 F. App'x at 117 (quoting Tice v. Bristol-Myers Squibb Co., 515 F. Supp. 2d 580, 600 (W.D. Pa. 2007)). ")[NONE OF THAT HAPPENED in TRIVEDI' case – despite ALJ took note of district court case– it was dismissed- Judge should be arrested for doing this and spend one year in jail.

## 55.1 Page 13

### Trivedi's arguments similar to Sylvester v. Paraxel ARB case – about company policy – submitted in lawsuit complaint is trashed. ALJ McGrath – under bias, hatred – didn't read anything

Below is screenshot Trivedi signed before joining GE – GE policies ( this was the same letter in which, forced arbitration was stated) – and by law was required to report violations…That's why I wrote to bring criminal charges against ALJ.

2. I acknowledge that I have received the guide to GE policies, *The Spirit & The Letter.* I will sign and return the acknowledgment form, or complete such other process as determined by my business, constituting my acknowledgment of receipt of that guide and my personal commitment to comply with the policies described in that guide. When I have a concern about a possible violation of GE policy, I will report the concern to a manager, a compliance resource within my business, Company legal counsel, an ombudsperson or another contact listed in the guide.

**FROM ECF 51- copied here.as EXHIBIT 5**

5. GE is required by SEC rule to include code of business conduct and ethics

including in its Annual report form. And comply with it. **17 CFR § 229.406 -Code of ethics.**

6. **GE's breach of an anti-retaliation policy in a Code of Ethics give rise to a**

**breach of contract claim.** *Federal district court held that an employer's anti-retaliation policy created* [3]*legally enforceable rights.*

# 56Trivedi district court case

Since ARB judges , ALJ have vigorously and religiously quoted my district court case against GE – I have attached ECF 51 – amended complaint. District court case was dismissed at motion to dismiss stage, without discovery, trial, jury..those JUDGES are ROGUE like ARB, ALJ judges..There was ZERO due process…case was dismissed to Terrorize Trivedi.

# 57 Jurisdiction for FTCA claims against DOL and some claims ( entire document will be part of upcoming lawsuit FTCA & BIVENS - against DOL, ARB , ALJ, OSHA individuals in BIVENS individual capacity ; along with their PARTNER GE as codefendants – here is some highlight)

The Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b)
29 CFR Subpart B - Claims Against the Government Under the Federal Tort Claims Act
**29 CFR § 15.100** (a) The FTCA is a limited waiver of sovereign immunity that allows claims for money damages against the Department for negligent acts or omissions of its employees acting within the course and scope of their employment.

DOL agency, Federal courts have jurisdiction over these claims if they are "actionable under §1346(b)." Meyer, 510 U. S., at 477.

**Trivedi's claims (s) are actionable as it alleges the six elements of §1346(b), which are that the claim(s) be:**
"[1] against the United States,
 [2] for money damages, . . .
 [3] for injury or loss of property, or personal injury or death
 [4] caused by the negligent or wrongful act or omission of DOL employees of the Government
 [5] while acting within the scope of their office or employment
 [6] under circumstances where the United States, if a private person, would be liable to the
   claimant in accordance with the law of the place where the act or omission oc-curred." Ibid.
 (quoting §1346(b)).

**The claimant Trivedi demonstrates that: She was injured by DOL federal government employee; Employees were acting within the scope of his or her official duties;**

---

[3] https://www.zuckermanlaw.com/code-of-ethics-whistleblower-protection-lawyer/

employees were acting negligently or wrongfully; and the negligent or wrongful act proximately caused the injury or damage of which she complains.

*Id*. at 852-53 (quoting *Dynamic Image Tech., Inc. v. United States*, 221 F.3d 34, 40 (1st Cir. 2000)). A claim need not apprise the agency of "every conceivable legal theory" or cause of action that could potentially be brought in relation to an injury described in that claim. *Bethal v. United States ex rel. Veterans Admin. Med. Ctr. of Denver, Colo*., 495 F. Supp. 2d 1121, 1124-25 (D. Colo. 2007).

If a government employee does not act with due care, but act negligently or wrongfully, in the execution of the laws or statutes and does not use discretion, then the discretionary function exception is not applicable. In Jayvee Brand, Inc. v. United States, the D.C Circuit Court declared that "it is clear that the discretionary function exception does not apply when a government employee fails to follow obligatory procedures in applying a rule that itself is an exercise of discretion".

*Pleading standard-Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) ("Rather, the plausibility requirement demands only that a plaintiff provide sufficient detail "to present a story that holds together." *Swanson*, 614 F.3d at 404. ")

Dolmage v. Combined Ins. Co. of Am., No. 14 C 3809, 2016 WL 754731 (N.D. Ill. Feb. 23, 2016) ("the plausibility requirement **demands only that a plaintiff provide sufficient detail to present a story that holds together."** )

## 57.1 <mark>Wisconsin and Massachusetts personal injury tort ---</mark>

**Trivedi's claims are cognizable under common law, Massachusetts Tort Claims Act ("MTCA"), M.G.L. c. 258, § 1 et seq.,   Wis. Stat. § 893.57 Intentional torts -** other intentional tort to the person shall be commenced within 3 years after the cause of action accrues. Since Trivedi's second OSHA complaint was denied by DOL employees in 2021; for employees involved Daniel Koh, --- and  Severe recklessness is limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care,  --- more than negligence in mismanaging, fraudulently handling a**nd closing Trivedi's complaint, b**ut a higher level of wrongdoing and even conscious malfeasance."

## 57.2 Intentional infliction of emotional distress against the United States pursuant to the Federal Tort Claims Act (FTCA) , 28 U.S.C. § 2671–2680.

Intentional infliction of emotional distress is not one of the intentional torts listed in section 2680(h) for which the United States retained its sovereign immunity. *See* **28 U.S.C. § 2680(h).**

According to Massachusetts and Wisconsin tort law, plaintiff Trivedi can recover damages for the intentional infliction of emotional distress

107

**False reports are sufficiently extreme and outrageous to state a claim of IIED = DOL defendants' false statements in 2014 and 2021 administratively closed and dismissal letter; intentionally caused distress and harm, injury – all enumerated in detail here. As shown here, Trivedi has sufficiently pleaded IIED claims.**

## 57.3 Negligence

**Wisconsin statute 895.045 -Negligence 895.045(2) Concerted action. Notwithstanding sub. (1), if 2 or more parties act in accordance with a common scheme or plan, those parties are jointly and severally liable for all damages resulting from that action.**

**Massachusetts General Laws Chapter 231, section 85**

**There is no distinction between active and passive negligence as to responsibility for injury or full indemnity to a tortfeasor whose negligence was passive. Pachowitz v. Milwaukee & Suburban Transport Corp., 56 Wis. 2d 383,** 202 N.W.2d 268 **(1972).**

**Specific negligent acts and omissions by DOL defendants include but are not limited to the following:**

1. Not reading arbitration complaint, FDA letter & communication ,email to OSHA about FDA's OEC surgery ban and when lifted Trivedi's first project at GE to integrate remote connectivity platform on OEC surgery; when Trivedi uncovered security vulnerabilities, 600 defects, within hour of that email to Tamara Simpson- Tamara emailed Trivedi back asking her termination date and within days- closed Trivedi's OSHA complaint illegally..

2. Intentional, corrupt failure in 2014 & 2021; to apply equitable tolling as Trivedi's December 13, 2013 complaint to FDA was filed as a WHISTLEBLOWER complaint – despite that Nathan and entire DOL food chain even in 2021wrote that FDA complaint was not a whistleblower complaint, failed to apply  18 U.S.C. § 1514A(b)(2(D);29 C.F.R. § 1980.103(d)

3. Failed to reach out to FDA or DHS about timeliness if they wanted to make sure

4. Failing to reach out to FBI twice; while corruptly closing Trivedi's OSHA complaint- because if DOL would have reached out to FBI, then Trivedi's OSHA complaint would have been investigated under SOX ; but DOL wanted to cover up, harass, distress and harm Trivedi- so did it do it..closed corruptly.

5. Despite writing that GE removed REMOTE connectivity section from SEC 10-K filing; after 2019 for which Trivedi is a SOX whistleblower –entire DOL food chain omitted and intentionally , corruptly failed to act on it and closed Trivedi's OSHA complaint…entire DOL defendants food chain including Daniel Koh to be arrested and put in JAIL for doing this to Trivedi –their goal is to harass , distress, inflict harm on Trivedi regardless of what…

6. Judge McGrath failed to apply already presented argument about FDA complaint as whistleblower complaint and kept harassing Trivedi to reply to order to show cause.
7. Despite writing to DOL food chain
8. DOL defendants committed fraud and perjury; by writing FALSE statement is 2014 and 2021 dismissal letter
9. It was foreseeable that DOL defendants' failure to take above action, omissions would result in injury to Trivedi.
10. There is a temporal and close causal connection between DOl defendants failure and the harm suffered by Trivedi…even future risk, injury.
11. Due to DOL defendants conduct Trivedi has suffered and will continue to suffer DAMAGES and injury; legal fight , expenses, humiliation, distress, loss—as damages listed in detail in this claim submission to be included here…..; including but not limited DOL people and GE people would Try to kill Trivedi or do such extreme harm..Trivedi already lost her father on the same day Trivedi arranged Internet of things – cybersecurity high stakes of billions of devices on February 22, 2017—her father dying on same day – presents circumstantial condition, GE had motive to kill her father as she was close to her..

**Trivedi's claims as to: duty, breach, causation, and damages/harm.**

12. Duty – Under the circumstances, the DOL defendants owed a legal duty to the person Trivedi who brings OSHA complaint
13. Breach – The DOL defendants act or fail to act in a certain way that breaches that legal duty;
14. Causation – It was the actions or inactions of the DOL defendants that caused the injury to the plaintiff Trivedi; and
15. Damages – The defendants' actions lead to injury and harm to the plaintiff Trivedi – as listed in detail what injury, how and what harm
16. —DOL defendants enjoyed SADISTIC pleasure by keeping Trivedi in distress and not ruffling feathers by investigating GE> All to be put in jail.

DOL employees' Gross negligence is a lack of care that demonstrates reckless disregard for the public safety, cybersecurity issues and most importantly HARM and injury to Trivedi 'which is so great it appears to be a conscious violation of Trivedi's rights to safety as well as public health and safety. DOL defendants' conduct is a heightened degree of negligence representing an extreme departure from the ordinary standard of care; more harmful than ordinary negligence because it implies a thoughtless disregard of the consequences and the failure to use even slight care to avoid harming the life of whistleblower Trivedi.

**Trivedi here presents tort claims, acts that have harm the wellbeing of Trivedi, by that means violating HER rights and making the guilty** party DOL employees liable for her damages and sufferings. The FTCA allows Trivedi to demonstrate that the damages caused to her are by the negligent acts of DOL employees who were/are working within the capacity of their duties, and thus Trivedi sue the government for this negligence.

**DOL OSHA employees' intentional failure under corruption to exercising due care, failure do their job and failure to execute of** a statute or regulation malfeasance misfeasance nonfeasance – public policy—and also DOL violated its own policy. DOl employees have shown tyranny like behavior.

## 57.4 Negligence per se

## 57.5 Misfeasance and non feasance under tort

## 57.6 Intentional Tort -fraud

Tort of *fraud* – person who makes false statement intended to be acted on must make good the damage naturally resulting from its being acted on.

## 57.7 Malfeasance

## 57.8 "Conspiracy Actionable Under 42 U.S.C. § 1985 (2) Obstructing justice; intimidating party, witness, or juror AND (3) Depriving persons of rights or privileges " individual capacity

## 58 Motion to recuse ALJ MCgrath is still pending..and while it was pending – ROGUE ALJ dismissed Trivedi's claims as untimely –also denied motion for discovery.

## 59 OIG DOL referral to OSHA

------- Original Message -------
On Friday, September 2nd, 2022 at 12:36 AM, Madhuri Trivedi <orangeinc@protonmail.com> wrote:
Mr. Rosa,
From the beginning I had written to Daniel Koh , Frederick - that you were / are a highly corrupt OSHA director ( but they both are also equally corrupt like you)...And you violated your own manual...and still have a job -- dismissal letter you wrote last year  - didn't mention about - administratively closing against oSHA's own manual...and that letter you yourself signed...second dismissal you had signed by Nathan..who told me ( and it was confirmed with his boss also)- that he was afraid of losing his job if he investigates big company GE..
One of the several examples of corrupt handling -- OSHA investigation manual clearly says that even though complaint under SOX untimely or doesn't meet prima facie case - it should be docketed..and not administratively closed..while my first complaint was corruptly - administratively closed..and later OSHA , DOL came up with SOX 180 days and docketed...while ignoring that it was not docketed first time...

Sent with Proton Mail secure email.

------- Original Message -------
On Friday, September 2nd, 2022 at 12:28 AM, Madhuri Trivedi <orangeinc@protonmail.com> wrote:
OIG has sent referral April 8 -

Sent with Proton Mail secure email.

------- Original Message -------
On Thursday, September 1st, 2022 at 2:40 PM, Madhuri Trivedi <orangeinc@protonmail.com> wrote:
FromMadhuri Trivedi <orangeinc@protonmail.com>
ToRosa, Anthony - OSHA<Rosa.Anthony@DOL.GOV>, Frederick, James S. -
OSHA<Frederick.James.S@dol.gov>, Mikulka, Michael - OIG<mikulka.michael@oig.dol.gov>,
Madhuri Trivedi<orangeinc@protonmail.com>, turner.larry@oig.dol.gov, Griffin-Blalock,
Valerie - OIG<griffin-blalock.valerie@oig.dol.gov>
DateThursday, September 1st, 2022 at 2:40 PM

Mr. Mikulka, Valerie,
would you please ask OSHA to give response..ask them that next steps are based on that..and
can't wait and sit as a VICTIM of their corrupt acts – and wait for them to response for infinite
time..months and months..there should be ZERO tolerance for such task..and not sit and
wait.. _____

# Ms. Rosa, Mr. Frederick,

 Please reply to OIG's referral in couple of days..you both are highly corrupt people along with other
DOL people..and should be in jail

.just so you know that I am not going to be a victim of thier corruption but take solid action......

I am filing a brand new lawsuit against GE, OSHA, DOL – government officials – for Bivens
individual capacity and FTCA all in one lawsuit as

codefendants. So GE and government people together…in one single new lawsuit.
Intentionally ignoring critical documents.. I am also asking congressional inquiry into this
systemic corruption – where instead of addressing fraud by GE and corruption- aiding and
abetting fraud and citing each other's corrupt order…so as to enjoy sadistic pleasure.
So this corruption is out in public…

 Mr. Rosa has guts to ask me about wire fraud and mail fraud in a phone call - but in that same call
say that regardless of fraud he will dismiss it as untimely.

 Sent with Proton Mail secure email.

------- Original Message -------
**On Friday, August 19th, 2022 at 8:12 PM, Griffin-Blalock, Valerie - OIG <griffin-blalock.valerie@oig.dol.gov> wrote:**
**Good afternoon Ms. Trivedi,**

**This is a follow-up regarding your most recent contact with senior management with the DOL-OIG office, regarding a complaint you submitted, via email, to OIG officials, regarding the improper handling of a Whistleblower Retaliation complaint you filed with OSHA against General Electric and GE Healthcare.**

Please be advised that I reached out to OSHA today to get a status update of the OIG's referral to OSHA management regarding your allegations against OSHA's handling of your Whistleblower Retaliation complaint.  I am currently awaiting their response.  If you have new information that you would like to provide regarding OSHA, please submit an additional statement of complaint with respect to this matter.  You can email me directly at griffin-blalock.valerie@oig.dol.gov.
 Respectfully,
 Valerie Griffin-Blalock
OIG Hotline Team

# 60CONCLUSION

Thus, ARB order dated August 24, 2022, affirming ALJ's dismissal must be REVERSED. Trivedi granted all the relief under OSHA SOX whistleblower statute, and made WHOLE AGAIN. As Trivedi has already mentioned – criminal violations such as wire fraud, mail fraud – statute of limitations won't apply; also as in GE's own word ongoing fraud – was occurring. And as mentioned till June 2022 – INSITE EXC cybersecurity alerts through cisa.gov were being issued.

# 61Attachment / Evidence

1. **motion to amend pleading GE ENRON - January 2022**
2. **Motion to compel, Motion to compel discovery - January 2022**

3. **"Motion to have a conference call - January 2022**
4. **Trivedi's  ENTIRE OALJ objections file with attachment - 47 MB**
5. **Inste EXC was out of date – Tamara –OSHA had this in 2014**

EXHIBIT 9 ALEXHIBIT 1B

September 14, 2022

**Madhuri Trivedi**
/s/Madhuri Trivedi

Phone: (650) 242-5135                    Email: orangeinc@protonmail.com

➤ **World summit on innovation and Entrepreneurship** – THE WSIE  summit speaker invite– Great presenter 2019 -   https://thewsie.com/presenters-2019/

➤ **My cybersecurity whistleblower profile on**  whistleblowers.org

https://www.whistleblowers.org/whistleblowers/madhuri-trivedi/

➤ **Linkedin:**- linkedin.com/in/trivedim

## <u>Certificate of service</u>

The filing of this document through EFS will constitute filing of document on those registered parties.

# EXHIBIT 10

## United States Court of Appeals
## For the First Circuit
_____

## No. 21-1434

MADHURI TRIVEDI

Plaintiff - Appellant

v.

GENERAL ELECTRIC COMPANY; GE HEALTHCARE; H. LAWRENCE
CULP, JR., CEO of GE in his individual and official capacity; GE BOARD OF
DIRECTORS; FRAGOMEN, DEL REY, BERNSEN AND LOEWY, LLP;
JENNY SCHRAGER, Partner at Frogomen, Del Rey, Bernsen & Loewy, LLP, in
her individual and official capacity; MIKE SWINF ORD, former CEO of GEHC
services, in his official and individual capacity; CARL CONRATH, Senior
Engineering Manager, GE healthcare in his official and individual capacity;
NICOLE BOYLE, Program Manager, GEHL; NATHAN DAVIS, Architect,
GEHC; WILLIAM BARBIAUX, Architect, GEHC; JOHN DINEEN, former CEO
of GE and former CEO of GEHC; DAVID ELARIO, General Manager of GEHC
services; SUSAN HOCKFIELD, former Director of GE; ADAM HOLTON, senior
HR Manager, GEHC; JEFFREY IMMELT, Former CEO of GE; AYESHA
KHAN, HR Manager, GEHC; TIMOTHY KOTTAK, CTO of GEHC services;
DAVID MEHRING, Engineering Manager GEHC; DIPTI PATEL, Project lead,
GEHC; DIANE SMITH, HR Manager, GEHC; GREGORY STRATTON , Lead
System Integrator, GEHC; ROBERT SWIERINGA, former Board of Director of
GE; MICHAEL TRUMAN, HR Manager, GEHC; REEMA PODDAR, Senior
Leader of GE intelligent platforms; WARD BOWMAN, Engineering Manager, GE
intelligent platforms; MIKE HARSH, Former CTO of GEHC

Defendants - Appellees

FOLEY AND MANSFIELD LAW FIRM

Defendant

## Appellant Trivedi's reply brief ( GE and Fragomen)

## Table of Contents

1 FDA FOIA correction in Trivedi brief ............................................................ 6

2 DODI IG correction in Trivedi brief ................................................................ 6

3   EEOC has considered my charge timely; so my timeliness arguments have prevailed ........................................................................... 6

4   It is well established that gender combined with a second characteristic may constitute a protected group for purposes of Title VII ........................................... 6

5   Fournier v. Massachusetts, 20-2134, at *1 (1st Cir. Sep. 15, 2021) ("Turning to pretext, courts typically view the record as a whole and focus on whether the plaintiff "adduced sufficient evidence to create a genuine issue as to whether retaliation was the real motive underlying [her] dismissal." Harrington v. Aggregate Indus. Ne. Region, Inc., 668 F.3d 25, 31 (1st Cir. 2012). Such evidence may include "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffer," the close temporal proximity between the protected conduct and the adverse action, or the sequence of events leading up to the adverse action. ................................................................. 7

6   Supreme Court allowed -- continuing violation theory to toll statute of limitations for violations occurring from 1912 till 1955. Hanover Shoe, Inc. v. United Shoe Mach. Corp., 392 U.S. 481, 502, 88 S. Ct. 2224, 2236, 20 L. Ed. 2d 1231 (1968) ........................................................................... 7

7   GE attorneys misconduct continue since arbitration, Supreme Court of Wisconsin attorney misconduct committee had to send a WARNING LETTER to Sean Scullen, GE's attorney ................................................................. 8

8   GE's brief – page 14 said that Diane Smith investigated & interviewed- But Diane didn't interview all the individuals Trivedi requested such as Dave Salis, Debbie Babula, Joe Purcell, Barry Turner, Ofir Dahan. surgery manager in Saltlake city –UTAH, Glyn Livermore, Mathews Matson ,InsiteEXC customer Missy Polak, InsiteEXC global service leaders( John Farrow, Peters Evelyn,Charles Pollum, Jon Love,Sara Zieher, Sal Astarita)........................................................................... 8

9   Fragomen brief  Case: 21-1434 page 22 Document: 00117780775 Entry ID: 6443170 ................................................................................... 9

10  In GE's brief at first circuit page 20, GE attorney wrote that ......................... 10

10.1  DHS lawsuit was ( a)for EB1 - Nobel prize is one of the category to get EB1 immigration case approved(Trivedi had no choice but to do EB1 after GE); (b)though Trivedi had credentials;  one of the several factors to consider, given that founder of Raindance Technologies Jonathan Rothberg is roaming around the world in his $40 million private Luxury super yacht ; where Trivedi shed her blood & sweat for his startup. ............................................................. 11

10.2  Also after terminating Trivedi, GE capital invested $40 million in Raindance. ................................................................................... 11

10.3  Other thing is Nobel prize committee for medicine and committee chair people/team knows all about me/my fight —– He said in past that "if they/he get involved they need to come to USA from Stockholm Sweden to testify and that you are still not white"- He himself was a Nobel laureate. ........11

10.4  On June 26, 2013 ; Life Tech / Thermo Fisher HR contacted Trivedi for an interview. LifeTech bought Rothberg's startup. And on same day June 26, 2013 Rothberg left Lifetech  (Lifetech offered Trivedi job , but because of no time left on H1- they could not transfer H1)...................................................................11

10.5  Jun 26, 2013, 02:04pm EDT Jonathan Rothberg Leaves Life Technologies Matthew Herper Former Staff ............................................................................12

10.6  Bob Cunningham, former executive at Raindance supported Trivedi's EB1after GE let her go. He also created job for her at Wyss Institute / Harvard medical where he was a director. ....................................................................12

10.7  Steve Becker, marketing executive at Raindance with whom Trivedi worked. Steve told her that your contribution as significant. If Rothberg made 700 million plus then Rothberg  should give Trivedi at least few millions. You/Madhuri deserve it. Steve told this to Trivedi when GE terminated her.....12

10.8  Rothberg was awarded National Medal of Technology and Innovation by President Obama in 2016, at the same time when DHS denied Trivedi's EB1. And also DHS was sued by Trivedi in March 2016. Does any of this make sense. No.  12

10.9  Trivedi filed complaint with SEC- securities and exchange commission about this, GE capital's $40 million investment in Raindance after GE terminated Trivedi and why early stage employees who are back bone of company are treated this way–while founders made billion from those employees BLOOD and SWEAT.................................................................12

10.10    Matthew Herper – medical left Forbes after Trivedi wrote to Forbes – that Herper is not writing about how Rothberg didn't do proper treatment in terms of early employees, didn't support EB1 person of extra ordinary ability immigration petition of Trivedi nor gave funding(Trivedi had RDT stock options when joined) after GE terminated Trivedi. ........................................................12

10.11    It is sad because I had emailed Office of science and Technology director, office of first lady Michelle Obama, chief of staff at white house. Michelle Obama's office emailed DOJ/DHS about my claims but DOJ/DHS attorney stonewalled and ninth circuit didn't give a damn. At least should have respected first lady's office. ..............................................................................12

11  Some catalog of cybersecurity vulnerabilities alert GE issues through CISA - department of homeland security --.................................................................15

12  In re GE/CBPS DATA BREACH LITIGATION (1:20-cv-02903-KPF) District Court, S.D. New York ...............................................................15

    12.1 Trivedi filing ECF 106-13 ....................................................16

    12.2 SDNY -  In re GE/CBPS DATA BREACH LITIGATION – judge order denying motion to dismiss –dated August 4, 2021, page 10 ............................16

    12.3 This applies, in a way to, all DHS CISA warning related GE's medical devices. ..................................................................................16

13  Fraud-on-the-market" doctrine....................................................17

14  False claims act.......................................................................17

15  Judge Saris Cass v. Town of Wayland, 383 F.Supp.3d 66, 82(D.Mass., 2019) 17

16  So question is why Trivedi getting to go through this injustice; while GE engineer Alexandria's discrimination & retaliation case gets a court date ;and we both have similar situation - gender , retaliation , cyber security vulnerabilities that we exposed GE for and didn't join GE's fraud scheme. The only difference is she is WHITE American, married and Trivedi is Asian Immigrant, divorced. And looks like she has a better luck getting justice .......................................................18

17  As stated below by Ms. Horne, as to echo of what stated by Trivedi, about GE - that company [GE] will lobby, bribe, intimidate or kill anyone in their way .........19

18  Below emails, at GE ,shows why GE defendants and attorneys to be put in JAIL,  that (1)on a second project that Trivedi joined – on Day 1 there were 200 defects produced by coworkers with whom Trivedi was framed to be not get along. (2)When I didn't reproduced defects which existed in INSITEEXC for 5-10 years – Trivedi was blamed for not getting along with those who were incompetent(3) Those who were not attending meetings- Trivedi was given a plan to improve relationship by having 10n1 with those coworkers- this is pure form of SEXUAL HARASSMENT, intentional infliction of emotion distress, discrimination, retaliation, terrorism. Judge Saris and Kelley must be held accountable, removed; and their order reversed ..................................................................20

19  In my ECF 143- page 61, objections to R&R - Reuters investigation about judicial misconduct .....................................................................26

20  My email to SEC .. Though it can be coincidence. But I emailed Stephanie Avakian, SEC enforcement director about SEC & GE's pocket change settlement (

it could have been billions and not $200 million that GE paid) at 10.30 pm EST
Dec. 10 and she announced her resignation Dec. 11 at 4 pm ...............................26

**Re:Take action as it was MURDER: General Electric Healthcare
lawsuit/amicus brief/enforcement action** .......................................................26

21  Don't know disclosure of my judges in GE stock. (1)There should be a
mandatory disclosure by judge when they take/gets assigned a case with a
corporate party in a lawsuit. For each case, if there is conflict when judge checks
YES in software, then there will be automatic recusal based on that disclosure
statement by judge(s); done by SOFTWARE (2) OR run a query of annual
financial disclosures ( looks like only ELECTRONIC filing is allowed, so it can be
easily queried by Software)that judges make, at the time of assignment, if conflict
exists, that judge is automatically recused by sw. This is my neat product solution
to streamline this mess and serve justice. ............................................................28

22  There are 4 EXCELL sheets during PIP meetings, updates — that Trivedi
added comments & sent to GE managers .Some below. ........................................29

22.1  Inclusiveness ---Move desk back into the area of the RSvP America's team.
Madhuri:Greg S as his yelling, Dave M said he has a temper problem and I saw
him surfing Guns(real ones) from his desk three or so times when I used to sit
next to him when all these things were happening. Move was only temporary as
Dave M, Carl, Nicole knows of it.....................................................................29


**Cases**
Alexandria Renee Horne v. GE Aviation Systems LLC  22A-2020-02177C.........18
Babalola v. HSBC Bank, USA, 324 Ga. App. 750, 752 (2) (751 SE2d ................10
Cass v. Town of Wayland, 383 F.Supp.3d 66, 82(D.Mass., 2019) .......................18
Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409-10 (2013) ..............................17
Fournier v. Massachusetts, 20-2134, at *1 (1st Cir. Sep. 15, 2021) ...................... 7
Harrington v. Aggregate Indus. Ne. Region, Inc., 668 F.3d 25, 31 (1st Cir. 2012) . 7
In re GE/CBPS DATA BREACH LITIGATION (1:20-cv-02903-KPF)  District
    Court, S.D. New York.....................................................................................16
In the Court of Appeals of Georgia ....................................................................10
McMorris, 995 F.3d at 300 .................................................................................17
Mirkin v. Wasserman (1993) 5 Cal.4th 1082 ......................................................17
Susan B. Anthony List v. Driehaus, 573 U.S. 149, 158 (2014).............................17
U.S. ex rel. Nowak v. Medtronic, Inc., 806 F. Supp. 2d 310 (D. Mass. 2011) .......17

**Statutes**
31 U.S.C.A. § 3730(h)(2).....................................................................................17

# 1 FDA FOIA correction in Trivedi brief

**Trivedi brief Case: 21-1434 Document: 00117769195 Page: 106 Entry ID: 6437104**

> **Trivedi didn't know what FDA was doing, to the extent that US attorney from SanFrancisco for Quitam contacted FDA(as shown in FOIA from August 2019)..**

**CORRECTION – it is (as shown in FOIA from August 2016)**

So, Trivedi can argue that when Trivedi came to know in August 2016 that US attorney from QUITAM division of San Francisco office from US department of justice contacted FDA, but what FDA replied to USDOJ attorney was all REDACTED in FOIA. And Trivedi filed her lawsuit against GE defendants May 21, 2019, at Washington DC – voluntary dismissed it, and filed on August 30, 2019 at District of Massachusetts.

SO it is THREE years from August 2016(FOIA response) to August 2019 (Trivedi's this lawsuit)

# 2 DODI IG correction in Trivedi brief

Case: 21-1434 Document: 00117769195 Page: 119 Entry ID: 6437104 **"DODIG dismissed my complaint because of my immigration citing 180 days..**

**CORRECTION:-It is not 180 days but 3 years.**
**DODIG statute of limitation was three years.**
And because I filed complaint on August 2016; it was two months June/July to toll from May 2013 the day of Trivedi's termination.

**For Criminal investigation by DODIG – there was no statute of limitations. So First circuit must take note of that.** DODIG started it and closed it. Only FOIA would shed more light on what happened.

# 3 EEOC has considered my charge timely; so my timeliness arguments have prevailed

# 4 It is well established that gender combined with a second characteristic may constitute a protected group for purposes of Title VII

Schallop v. New York State Dept. of Law 20 F. Supp. 2d 384 (N.D.N.Y. 1998)

**5**  *Fournier v. Massachusetts*, **20-2134, at \*1 (1st Cir. Sep. 15, 2021) ("Turning to pretext, courts typically view the record as a whole and focus on whether the plaintiff "adduced sufficient evidence to create a genuine issue as to whether retaliation was the real motive underlying [her] dismissal."** *Harrington v. Aggregate Indus. Ne. Region, Inc.,* **668 F.3d 25, 31 (1st Cir. 2012). Such evidence may include "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffer," the close temporal proximity between the protected conduct and the adverse action, or the sequence of events leading up to the adverse action.**

*Id.* at 33 (quotations, citations, and alterations omitted). Moreover, "[c]ourts should be especially cautious before granting summary judgment when pretext and retaliatory animus are at issue." *Id.*")  **[Trivedi case has been disposed fully by district court  ][At district court, at first circuit through thousands of pages that Trivedi filed, such evidence as to prove and [Throughout in their brief here GE and Fragomen has showed / presented]**
**"weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the em**ployer's proffer," the close temporal proximity between the protected conduct and t**he adverse action, or the sequence of events leading up to the adverse action ]**

**6**  **Supreme Court allowed -- continuing violation theory to toll statute of limitations for violations occurring from 1912 till 1955. Hanover Shoe, Inc. v. United Shoe Mach. Corp., 392 U.S. 481, 502, 88 S. Ct. 2224, 2236, 20 L. Ed. 2d 1231 (1968)**

Hanover Shoe, Inc. v. United Shoe Mach. Corp. (" The continuing violation doctrine allows a plaintiff ..to recover on the basis of an ongoing policy or practice of illegal activity initiated prior to the limitations period.") United has also advanced the argument that because the earliest impact on Hanover of United's lease only policy occurred in 1912, Hanover's cause of action arose during that year and is now barred by the applicable Pennsylvania statute of limitations. The Court of Appeals correctly rejected United's argument in its supplemental opinion. We are not dealing with a violation which, if it occurs at all, must occur within some specific and limited time span. Cf. Emich Motors Corp. v. General Motors Corp., 229 F.2d

714 (C.A.7th Cir. 1956), upon which United relies. Rather, we are dealing with **conduct which constituted a continuing violation of the Sherman Act and which inflicted continuing and accumulating harm on Hanover. Although Hanover could have sued in 1912 for the injury then being inflicted, it was equally entitled to sue in 1955.**

**Hanover Shoe case below is for Sherman act- but the point is in Trivedi's case it is continuing violation of Title VII, false claims act, SOX, CFPA, false claims act retaliation, public policy violation, OSHA whistleblower protection 18 U.S.C.§ 1514A(a)(1) and GE's ongoing fraud.**
Trivedi alleged continuing violation, because for speaking up, not joining fraud that GE was doing- and for being a woman ..But in 2019- GE also treated Alexandria Horne- for bringing GE's attention to fraud, serious violations of cybersecurity, for being a woman- -Ms. Horne was terminated....there are more victims for GE's such illegal acts.

**7   GE attorneys misconduct continue since arbitration, Supreme Court of Wisconsin attorney misconduct committee had to send a WARNING LETTER to Sean Scullen, GE's attorney**
cathe.hahn@wicourts.gov sent a warning letter to Sean during arbitration as he was telling/writing emails to three new attorneys I hired **that "Trivedi fired Cross law firm during mediation."** ….with bad intent, so my new attorneys would be concerned that Trivedi would fire them too. And without attorney, GE and arbitrator can take advantage of my situation. Sean also did several other things to cross the line.

**8   GE's brief – page 14 said that Diane Smith investigated & interviewed- But Diane didn't interview all the individuals Trivedi requested such as Dave Salis, Debbie Babula, Joe Purcell, Barry Turner, Ofir Dahan. surgery manager in Saltlake city – UTAH, Glyn Livermore, Mathews Matson ,InsiteEXC customer Missy Polak, InsiteEXC global service leaders( John Farrow, Peters Evelyn,Charles Pollum, Jon Love,Sara Zieher, Sal Astarita)**
Trivedi opposition to GE MTD, Case 1:19-cv-11862-PBS ECF 105 Filed 11/19/19 Page 12 . She selectively interviewed those whom ;she could gather document against Trivedi and excluded those who will say positive things about Trivedi..This was a fake internal investigation just to generate some data. MA court can ask GE to submit whom Diane interviewed & what she looked. She was already employed by GE. ONLY outsider with no financial, social, networking or other interest can do SOME INDEPENDENT INVESTIGATION which Diane didn't do. Daine did BEST to COVER up FRAUD as it was her job as GE employee.

## 9   Fragomen brief Case: 21-1434 page 22 Document: 00117780775 Entry ID: 6443170

> "Plaintiff was fully aware of her immigration status as reflected in her July 2, 2013 email, and, if fact, she engaged an attorney who drafted a letter to GE on her behalf in August 2013 addressing her immigration issues." (Report and Recommendation p. 11, Docket No. 136.) "

But again Fragomen attorneys are misleading judge/court because Trivedi in this very same lawsuit has sued **Foley and Mansfield** for malpractice claim **who drafted a letter to GE on her behalf in August 2013 . Shouldn't Fragomen attorneys bar license be also suspended. This is beyond corruption that court is allowing defendants to file such kind of lies. These attorneys and GE defendants should be put in jail.**

**Fragomen, Jenny Schrager and GE work together as business partners. Exploiting, harassing, retaliating, terminating Trivedi because of her Immigration situation; when Trivedi didn't join GE's fraud scheme - aiding and abetting CIVIL LIABILITY FOR AIDING AND ABETTING FRAUD, AIDING-ABETTING BREACH OF FIDUCIARY DUTY..** Trivedi need not to plead "shared intent." Civil liability for aiding and abetting arises when one knows the other's conduct constitutes a breach of duty "and gives substantial assistance or encouragement to the other so to conduct himself . . . .".., it necessarily requires a defendant to reach a conscious decision to participate in tortious activity for the purpose of assisting another in performing a wrongful act. A plaintiff's object in asserting such a theory is to hold those who aid and abet in the wrongful act responsible as joint tortfeasors for all damages ensuing from the wrong.

**So Trivedi's claims against Fragomen, Jenny are proper.**

In the Court of Appeals of Georgia A19A0706. SIAVAGE v. GANDY et al. **June 18, 2019**(See *Babalola v. HSBC Bank, USA*, 324 Ga. App. 750, 752 (2) (751 SE2d 545) (2013) ("[I]t is not necessary for a complaint to set forth all of the elements of a cause of action in order to survive a motion to dismiss for failure to state a claim."))*Specifically, the court concluded that "it [was] possible for [the Appellees]*[ **Trivedi here can establish that Foley and Fragomen, Jenny's false representations** *with a present intent not to perform, were designed to induce [Trivedi] to act or refrain from acting( pursuing SEC claims,*

*vacating arbitrator award and other claims mentioned here), and resulted in damage to [Trivedi] as a result of their justifiable reliance."]*

## 10 In GE's brief at first circuit page 20, GE attorney wrote that

"it was resolved by her California case, Trivedi v.
Department of Homeland Security, No. 16-CV-1122 (N.D. Cal.), which she unsuccessfully appealed all the way to the United States Supreme Court. Despite these rulings however, Ms. Trivedi has forced GE to re-litigate the same set of facts before the District Courts of Washington, D.C. and Massachusetts."

**How is this related- This is another continued effort by corrupt, criminal GE** attorneys' to distract court/ judges..

**Trivedi's DHS lawsuit, (1)**Trivedi didn't allege, the same claims, -- (2)though Trivedi's efforts were to bring it to attention; -- several issues – cybersecurity vulnerabilities in GE medical devices, forced arbitration, GE's performance appraisal, GE's fraud, retaliation, (3)withdrawal of Trivedi's immigration by GE & Fragomen; which left Trivedi no choice but to file EB1 – (4)GE and Fragomen were not defendants. (5)Washington DC lawsuit was voluntarily dismissed–there was no ruling on merits but because judge issued order to show cause why not to litigate in Massachusetts and it created uncertainty; plus other reasons as Trivedi stated in her brief.. (6)Scott Erven's InsiteEXC (Trivedi's GEHC retaliation claims related medical device) alert came in 2018- well after Trivedi's DHS lawsuit.(7)GE has abandoned it's performance appraisal (8) several executives with private jet, who were involved (even in food chain higher ups)in retaliating Trivedi & GE fraud has left GE and(10)more

GE is considering itself as DHS aka government agency – GE is just a corrupt government contractor and not a government agency. And to show that lawsuit against DHS ; was a lawsuit against **GE is way out of line.**.

**10.1 DHS lawsuit was ( a)for EB1 - Nobel prize is one of the category to get EB1 immigration case approved(Trivedi had no choice but to do EB1 after GE); (b)though Trivedi had credentials; one of the several factors to consider, given that founder of Raindance Technologies Jonathan Rothberg is roaming around the world in his $40 million private Luxury super yacht ; where Trivedi shed her blood & sweat for his startup.**

**10.2 Also after terminating Trivedi, GE capital invested $40 million in Raindance.**

**10.3 Other thing is Nobel prize committee for medicine and committee chair people/team knows all about me/my fight —- He said in past that "if they/he get involved they need to come to USA from Stockholm Sweden to testify and that you are still not white"- He himself was a Nobel laureate.**

My healthcare startup was for a cause which I am glad I stopped after my father's death.

**10.4 On June 26, 2013 ; Life Tech / Thermo Fisher HR contacted Trivedi for an interview. LifeTech bought Rothberg's startup. And on same day June 26, 2013 Rothberg left Lifetech (Lifetech offered Trivedi job , but because of no time left on H1- they could not transfer H1)**

**From:** Nguyen, Bryan [mailto:Bryan.Nguyen@lifetech.com]
**Sent:** Wednesday, June 26, 2013 11:00 PM
**To:** madhuritrivedi@hotmail.com **Subject:** PHONE INTERVIEW 6/28 (Life Technologies)**Importance:** High
Hi Madhuri,
Your phone interview is confirmed for Friday 6/28 @ 9:00am CST. David Lasky, Manufacturing Manager, will be giving you a call on your cell phone. Please set aside 45min – 1 hour for this call. Can you please reply back to confirm?Many thanks and best of luck!Best Regards,
**Bryan Nguyen**
**Talent Acquisition** | www.lifetechnologies.com/careers
Office 760 268 5676 • bryan.nguyen@lifetech.com
5791 Van Allen Way • Carlsbad • CA • 92008

**10.5 Jun 26, 2013, 02:04pm EDT Jonathan Rothberg Leaves Life Technologies  Matthew Herper Former Staff**
https://www.forbes.com/sites/matthewherper/2013/06/26/jonathan-rothberg-leaves-life-technologies/

**10.6 Bob Cunningham, former executive at Raindance supported Trivedi's EB1after GE let her go. He also created job for her at Wyss Institute / Harvard medical where he was a director.**

**10.7 Steve Becker, marketing executive at Raindance with whom Trivedi worked. Steve told her that your contribution as significant. If Rothberg made 700 million plus then Rothberg  should give Trivedi at least few millions. You/Madhuri deserve it. Steve told this to Trivedi when GE terminated her.**

Now in this lawsuit , we can call Steve Becker, Bob Cunningham, Life Tech managers as witness to testify.

**10.8 Rothberg was awarded National Medal of Technology and Innovation by President Obama in 2016, at the same time when DHS denied Trivedi's EB1. And also DHS was sued by Trivedi in March 2016. Does any of this make sense. No.**

**10.9 Trivedi filed complaint with SEC- securities and exchange commission about this, GE capital's $40 million investment in Raindance after GE terminated Trivedi and why early stage employees who are back bone of company are treated this way– while founders made billion from those employees BLOOD and SWEAT.**

**10.10      Matthew Herper – medical left Forbes after Trivedi wrote to Forbes –that Herper is not writing about how Rothberg didn't do proper treatment in terms of early employees, didn't support EB1 person of extra ordinary ability immigration petition of Trivedi nor gave funding(Trivedi had RDT stock options when joined) after GE terminated Trivedi.**

**10.11      It is sad because I had emailed Office of science and Technology director, office of first lady Michelle Obama, chief of staff at white house. Michelle Obama's office emailed DOJ/DHS about my claims but DOJ/DHS attorney stonewalled and ninth circuit didn't give a damn. At least should have respected first lady's office.**

---------- Forwarded message ---------
From: Westwater, Gisela (CIV) <Gisela.Westwater@usdoj.gov>

Date: Thu, Oct 20, 2016 at 9:42 PM
Subject: RE: Federal case in Northern district of California Trivedi vs DHS
lawsuit: 16-cv-01122-JD To: Madhuri Trivedi <madhuri.orangehc@gmail.com>
Ms. Trivedi,
 As I have stated in the past, Defendants are waiting for guidance from the court
before taking any further action.  There are several fully briefed motions pending
before the court, and they are ripe for decision.
 Although I did not anticipate waiting this long for the court to rule, I would expect
something to be issued in the near future.
 Regards,
 Gisela A. Westwater
Senior Litigation Counsel
---------- Forwarded message ---------
From: Stevens, Elizabeth (CIV) <Elizabeth.Stevens@usdoj.gov>
Date: Tue, Oct 11, 2016 at 4:47 PM
Subject: RE: Federal case in Northern district of California Trivedi vs DHS
lawsuit: 16-cv-01122-JD
To: Madhuri Trivedi <madhuri.orangehc@gmail.com>
Thank you for your email.  No need to forward further emails, Ms. Westwater
reports to me and I am fully aware of the case.
 From: [mailto:madhuri.orangehc@gmail.com]
Sent: Tuesday, October 11, 2016 4:42 PM
To: Stevens, Elizabeth (CIV) <EStevens@CIV.USDOJ.GOV>
Subject: Fwd: Federal case in Northern district of California Trivedi vs DHS
lawsuit: 16-cv-01122-JD
 Hi Elizabeth,
 Your name was on some of the court paper fillings done in my case, hence
forwarding this to you......DOJ and DHS defying laws and logic.. This is lawless
behavior..
 Please look into this..thanks
---------- Forwarded message ---------
From: Madhuri Trivedi
Date: Tue, Oct 11, 2016 at 11:58 AM
Subject: Federal case in Northern district of California Trivedi vs DHS lawsuit: 16-
cv-01122-JD
To: "Westwater, Gisela (CIV)" <Gisela.Westwater@usdoj.gov>, "Goettel, Kate
(CIV)" <kate.goettel@usdoj.gov>, benjamin.c.mizer@usdoj.gov,
William.peachey@usdoj.gov
Cc: jeh.johnson@dhs.gov, Donald.W.Neufeld@uscis.dhs.gov,
John.Roth@oig.dhs.gov, gregory.richardson@uscis.dhs.gov,

leon.rodriguez@dhs.gov, maria.odom@dhs.gov, mark.hazuda@uscis.dhs.gov, <Madhuri.orangehc@gmail.com>

**Hi All,**

**Office of first lady - Michele Obama has my case and my claims and sent it to agency.. Please respond to First lady -Michelle Obama's office and me(us).**

Sent: Thursday, May 19, 2016 2:47 PM To: Gabriel, Brian A. EOP/WHO <Brian_A_Gabriel@who.eop.gov>; Lee, Jesse C. EOP/WHO <Jesse_C._Lee@who.eop.gov>; Barnes, Desiree N. N. EOP/WHO <desiree_n_barnes@who.eop.gov>; Peter_T_velez@who.eop.gov

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***
**Below is white house general counsel email ...White House office of science and technology policy director Dr. John Holdren referred my matter to her.**

---------- Forwarded message ----------
From: Leonard, Rachael L. EOP/OSTP <RLeonard@ostp.eop.gov>
Date: Tue, Sep 13, 2016 at 1:40 PM Subject: FW: MIT alum GE fraud, immigration issue To: "Madhuri Trivedi>
Dear Ms. Trivedi,
Thank you for your note, which Dr. Holdren referred to me. OSTP is a small agency
that addresses science policy. OSTP does not address immigration or consumer fraud issues. For those topics, you may wish to contact:
The Department of Homeland Security, Office of the Inspector
General:
https://www.oig.dhs.gov/index.php?option=com_content&view=article&id=51&Itemid=133
The Department of Justice, The Executive Office for Immigration
Review: https://www.justice.gov/eoir , or
The Consumer Products Safety Commission: http://www.cpsc.gov/
Best regards, Rachael Leonard
General Counsel
Office of Science and Technology Policy
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## 11 Some catalog of cybersecurity vulnerabilities alert GE issues through CISA  -department of homeland security --

Item 1 is holy grail -Scott reported first to GE in 2014-  as it affect 100s of 1000s of medical devices- specifically and exactly what GE is touting in all their SEC filings as robust, with lack of internal controls and more.

Latest in December 2020, GE is issuing alert through DHS for remote connectivity issues—while misleading first circuit court by stating totally opposite scenario.

1. **Advisory (ICSMA-18-037-02)  GE Medical Devices Vulnerability** Original release date: March 13, 2018 https://us-cert.cisa.gov/ics/advisories/ICSMA-18-037-02

2. **ICS Medical Advisory (ICSMA-19-190-01)** GE Aestiva and Aespire Anesthesia (Update A)release date: July 09, 2019 | https://us-cert.cisa.gov/ics/advisories/icsma-19-190-01

3. **ICS Advisory (ICSMA-20-023-01)  GE CARESCAPE,** ApexPro, and Clinical Information Center systems   release date: January 23, 2020 https://us-cert.cisa.gov/ics/advisories/icsma-20-023-01

4. **ICS Medical Advisory (ICSMA-20-343-01)   GE Healthcare Imaging** and Ultrasound Products     Original release date: December 08, 2020 https://us-cert.cisa.gov/ics/advisories/icsma-20-343-01

5. **ICS Medical Advisory (ICSMA-20-049-02)**    GE Ultrasound products Original release date: February 18, 2020 https://us-cert.cisa.gov/ics/advisories/icsma-20-049-02

6. **ICS Advisory** (ICSMA-18-128-01) Silex Technology SX-500/SD-320AN or GE Healthcare MobileLink (Update B) release date: May 08, 2018

7. ICS Advisory (ICSA-18-275-02)   GE Communicator    release date: October 02, 2018[1] https://us-cert.cisa.gov/ics/advisories/ICSA-18-275-02

## 12 In re GE/CBPS DATA BREACH LITIGATION (1:20-cv-02903-KPF)  District Court, S.D. New York

---

[1] Exhibit ActiveX CISA GE Communicator CISA  -- is similar to what Trivedi cited as ActiveX vulnerabilities/ risk in her ECF 51..

Judge Katherine Polk Failla's order denying GE's motion to dismiss –dated August 4, 2021. **In this ruling--- "at risk " ,"future injury" has been shown enough to prove injury and thus ARTICLE III standing...**

> See below-- cybersecurity is something - now judge got attention too. First circuit judges must also pay attention to this matter in this appeal. GE lawsuit for handling for data breach...a former employee of GE has sued GE..GE's stone-aged style approach and attention to cybersecurity --this was what they did in my case... As suffering retaliation for raising serious cybersecurity issues has put me into bad situation by GE.

https://www.courthousenews.com/author/courthouse-news-staff/

August 4, 2021

## 12.1 Trivedi filing ECF 106-13

Trivedi's complaint has title –injunctive relief…In Trivedi opposition to GE's motion to dismiss Trivedi filed legal arguments, also Trivedi filed a separate motion –ECF 131 , ECF 150  --all of these have been trashed by corrupt judge Saris and judge Kelley. Trivedi - ECF 106-13        IRREPARABLE INJURY, INJUCTION

 "An allegation of future injury may suffice if the threatened injury is "certainly impending," or there is a " 'substantial risk' that the harm will occur." Clapper, 568 U.S., 5, 133 S.Ct., at 1147, 1150, n. 5

## 12.2 SDNY -  In re GE/CBPS DATA BREACH LITIGATION – judge order denying motion to dismiss –dated August 4, 2021, page 10

> "[T]he Supreme Court has made clear that 'allegations of possible future injury' or even an 'objectively reasonable likelihood' of future injury are insufficient to confer standing." *McMorris*, 995 F.3d at 300 (quoting *Clapper* v. *Amnesty Int'l USA*, 568 U.S. 398, 409-10 (2013)). Rather, a future injury may support standing only if "the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Id.* (quoting *Susan B. Anthony List* v. *Driehaus*, 573 U.S. 149, 158 (2014)).

## 12.3 This applies, in a way to, all DHS CISA warning related GE's medical devices.

Because even these device and patient data being "at risk" and "future injury" ; given that most of vulnerabilities were 9.8 out of 10 –highly exploitable.
> *Case: 21-1434 Document: 00117781650 **Page: 14 ONWARDS** Entry ID: 6443627*

- *SDNY -  In re GE/CBPS DATA BREACH LITIGATION – judge order denying motion to dismiss –dated August 4, 2021*
- *Trivedi - ECF 106-13  **IRREPARABLE INJURY, INJUCTION***
- *GE's Department of homeland security – CISA warning documents*

## 13 Fraud-on-the-market" doctrine

Defendants have evaded this doctrine.

*Mirkin v. Wasserman (1993) 5 Cal.4th 1082* (Mirkin), which addressed application of the "fraud-on-the-market" doctrine (grounded on a theory of indirect or presumed reliance by a plaintiff) to actions for common law fraud.
**Defendants' failure to disclose material adverse information regarding GE's** business practices, financial results and condition, and the Company's internal controls—information that Defendants were obligated to disclose during the Class Period but did not—positive proof of reliance is not a prerequisite to recovery.

## 14 False claims act

U.S. ex rel. Nowak v. Medtronic, Inc., 806 F. Supp. 2d 310 (D. Mass. 2011) (…An employee terminated because she attempts to stop a violation of the False Claims Act (FCA) is entitled to reinstatement, back pay, and other appropriate compensation. 31 U.S.C.A. § 3730(h)(2). )

## 15  Judge Saris Cass v. Town of Wayland, 383 F.Supp.3d 66, 82(D.Mass., 2019)

**Supervisor may be personally liable for tortious interference with contractual relations if he tortiously interferes with a subordinate's employment relationship.** …..Genuine issue of material fact existed as to whether actual malice was controlling factor …. that the employee reasonably believes is in violation of a law, or a rule or regulation promulgated pursuant to law.... Cass alleges [**Trivedi alleges that Mehring, Carl Conrath, Mike Truman, Ayesha Khan, David Elario, Adam Holton , Tim & others intentionally interfered with her employment contract by writing a negative, false performance review with a retaliatory motive.**]

**Trivedi ECF 51 – page 210 para 506 Other common-law limitations including actions based on the (1)intentional infliction of emotional distress, (2)int**entional interference with a contract applies to Plaintiff Trivedi's case.

ECF 51 page 234 para 614 Damages **for emotional distress, economic loss, defamation, intentional infliction of emotional distress.**

**16 So question is why Trivedi getting to go through this injustice; while GE engineer Alexandria's discrimination & retaliation case gets a court date ;and we both have similar situation - gender , retaliation , cyber security vulnerabilities that we exposed GE for and didn't join GE's fraud scheme. The only difference is she is WHITE American, married and Trivedi is Asian Immigrant, divorced. And looks like she has a better luck getting justice**

For me highly defective, mission critical performance related fraud for medical devices was also involved so my case is more severe ..

And I have three times more education and more diverse, number of years and deep experience than Alexandria - I consider Alex as like my friend and little sister but laying out facts here - so then why willful blindness about my case ..

Alexandria writes so much bad on LinkedIn about GE that sometime LinkedIn blocks her posts and then after some days; it comes back … she pretty much on full offense mode. I think she is doing the right thing.

Ohio Civil rights commission charge filed on June 5th 2020.
Alexandria Renee Horne v. GE Aviation Systems LLC  22A-2020-02177C
**As Ohio attorney general has bought case against GE. Court has set date in January for her case.**

**Below are Trivedi's messages with Alex** that Alexandria contacted me in writing , I wrote her back to fight instead of feeling victim, then she contacted government agencies. While she got a court date because Ohio civil rights commission found GE discriminated -

JUN 1, 2020



Alexandria Horne • 7:11 PM

Hi Madhuri. Unfortunately, yes I too was fired after raising cybersecurity concerns. My situation was a bit different. I am a U.S. citizen and was working for GE Aviation but I'm told retaliation against employees who raise concerns is common throughout the company.

JUN 2, 2020

Madhuri Trivedi



if you want to file file soon--don't wait

because then things get moving instead of us being victim --they also face legal action and they are on notice



Alexandria Horne · 5:37 PM

Hi Madhuri, thanks for reaching out. I actually spoke with an attorney this morning. They are going to get back to me later this week with a plan of action. I will keep you updated!

## 17 As stated below by Ms. Horne, as to echo of what stated by Trivedi, about GE - that company [GE] will lobby, bribe, intimidate or kill anyone in their way





**18** **Below emails, at GE ,shows why GE defendants and attorneys to be put in JAIL, that (1)on a second project that Trivedi joined – on Day 1 there were 200 defects produced by coworkers with whom Trivedi was framed to be not get along. (2)When I didn't reproduced defects which existed in INSITEEXC for 5-10 years – Trivedi was blamed for not getting along with those who were incompetent(3) Those who were not attending meetings- Trivedi was given a plan to improve relationship by having 1On1 with those coworkers- this is pure form of SEXUAL HARASSMENT, intentional infliction of emotion distress, discrimination, retaliation, terrorism. Judge Saris and Kelley must be held accountable, removed; and their order reversed [2]**

# EMAIL 1

**From:** Trivedi, Madhuri (GE Healthcare) **Sent:** Wednesday, May 15, 2013 4:41 PM **To:** Mehring, David T (GE Healthcare); Conrath, Carl (GE Healthcare) **Cc:** Khan, Ayesha (GE Healthcare); Trivedi, Madhuri (GE Healthcare) **Subject:** RE: Coverity errors and compilation warning

But when I joined old RSVP; the day I joined there were **200 plus defects/redesign work**..all these work was done by GEHC/GEIP engineers/architects/leads/LSDs.. …They are fine even if they do such work…and as they/managers failed, Greg yelled and all made it my inclusiveness thing and made up clear thinking issues..After joining RSVP I did integration testing and feature work..I took all the directions they gave, followed all review

---

[2] On October 2019 , Trivedi spoke with Joe Purcell Manager of GEIP , Detroit on phone and Joe did confirmed that "Joe Purcell, GEIP had lots of conflicts and disagreements with Greg Stratton and GE Healthcare. This was Trivedi's second project.

And Trivedi worked with him on fixing quality issues, defects, automated testing (second project that GE is blaming Trivedi failed to get along) (as GE has argued that I was transferred into second project); into which GE managers all across country and in outside of USA where writing abusive emails, verbal abusive phone call, infighting and blaming each other –were totally dysfunctional with 1% productivity as for two plus years didn't produce anything. During my last month GE healthcare gave up what they were doing in my second project and wanted to buy a readymade remote service software from outside company.

process…They themselves were not clear which Nate said..that we also don't know what we want.

**From:** Trivedi, Madhuri (GE Healthcare) **Sent:** Wednesday, May 15, 2013 1:07 PM

**To:** Mehring, David T (GE Healthcare); Conrath, Carl (GE Healthcare)**Cc:** Khan, Ayesha (GE Healthcare); Trivedi, Madhuri (GE Healthcare)

**Subject:** FW: Coverity errors and compilation warning**Importance:** High

These are the defects……I am working on server integrations so I haven't been involved in it at all.

But it's to show how project is managed may be developers need more time to complete their task..something else ..I don't know..

But later they should not bring me into the picture as I am not even involved(zero contribution of mine in these defects…)

Best,

Madhuri Trivedi

Software Engineer

 **From:** Bayi, Prasad (GE Healthcare) **Sent:** Tuesday, May 14, 2013 3:45 AM **To:** @HEALTH GST-ENG-RSvP**Subject:** RE: Coverity errors and compilation warning**Importance:** High

Dear Team, Coverity defects are piling up. Waiting on individual to comment on from your respective developments by eod today. Do let me know if we need to update the rules with reasons so that we can review and make necessary changes.

http://olc-app-dev-04.am.health.ge.com/jenkins/view/RSvP/job/RSvP/



# Coverity Defects

| Coverity Defects | | |
|---|---|---|
| **CID** | **Checker** | **Funct** |
| [19628](#) | FB.EQ_DOESNT_OVERRIDE_EQUALS | |
| [19635](#) | NULL_RETURNS | com.g |
| [19636](#) | NULL_RETURNS | com.g |
| [19637](#) | FB.SS_SHOULD_BE_STATIC | |
| [19682](#) | FB.FI_USELESS | com.g |
| [19691](#) | FB.SE_BAD_FIELD | |
| [19692](#) | FB.SE_BAD_FIELD | |
| [19694](#) | FB.SE_NO_SERIALVERSIONID | |
| [19698](#) | NULL_RETURNS | com.g |
| [19721](#) | FB.SBSC_USE_STRINGBUFFER_CONCATENATION | com.g |
| [19737](#) | FB.DLS_DEAD_LOCAL_STORE | com.g com.g |
| [19829](#) | FB.BC_EQUALS_METHOD_SHOULD_WORK_FOR_ALL_OBJECTS | com.g |
| [19830](#) | FB.HE_EQUALS_USE_HASHCODE | com.g |
| [19831](#) | FB.HE_INHERITS_EQUALS_USE_HASHCODE | |
| [19835](#) | FB.NP_EQUALS_SHOULD_HANDLE_NULL_ARGUMENT | com.g |
| [19837](#) | NULL_RETURNS | com.g |
| [19838](#) | FORWARD_NULL | com.g |
| [19841](#) | FB.DLS_DEAD_LOCAL_STORE | com.g |
| [19857](#) | FB.UUF_UNUSED_FIELD | |
| [19988](#) | FB.ST_WRITE_TO_STATIC_FROM_INSTANCE_METHOD | com.g |
| [19989](#) | FORWARD_NULL | com.g |

| | | |
|---|---|---|
| 19990 FORWARD_NULL | | com.g |
| 19997 FB.SE_BAD_FIELD | | |
| 19998 FB.SE_BAD_FIELD | | |
| 20002 FORWARD_NULL | | com.g |
| 20003 RESOURCE_LEAK | | com.g |
| | | javax |
| 20004 FB.EQ_DOESNT_OVERRIDE_EQUALS | | |
| 20005 FB.URF_UNREAD_FIELD | | |
| 20006 FB.UUF_UNUSED_FIELD | | |
| 20007 FORWARD_NULL | | com.g |
| 20008 FORWARD_NULL | | com.g |
| 20009 FORWARD_NULL | | com.g |
| 20010 NULL_RETURNS | | com.g |

Thanks,Prasad Bayi
**From:** Bayi, Prasad (GE Healthcare) **Sent:** Wednesday, April 24, 2013 6:31 PM
**To:** Alakkad, Achuth (GE Healthcare); Jacobs, Gregory (GE Healthcare); Joshi, Namita (GE Healthcare); Kendale, Sachin (GE Healthcare); Ks, Shailendra (GE Healthcare); Lammers, Greg (GE Healthcare); Trivedi, Madhuri (GE Healthcare); Vits, Yun (GE Healthcare)
**Cc:** Bayi, Prasad (GE Healthcare)
**Subject:** Coverity errors and compilation warning**Importance:** High

Dear Team,It is observed that our builds are having some Coverity errors and compilation warnings. Could you please check with your individual components either from the current development/POC development and fix them on priority? Please drop an email once done from your side. Do work with me in case of any concerns/issues..
Thanks,Prasad Bayi

# EMAIL 2

**From:** Trivedi, Madhuri (GE Healthcare) **Sent:** Tuesday, April 30, 2013
11:49 AM **To:** Khan, Ayesha (GE Healthcare) **Cc:** Conrath, Carl (GE
Healthcare); Trivedi, Madhuri (GE Healthcare) **Subject:** RE: info

Ayesha,

> If other members of the team/ team leads constantly NOT do things
> they needs to be doing; And pointing Dave and Carl do not bring any
> good results but create more problems .Also that's what's been
> happening throughout why I am treated the way I am ; told to work on
> my plan.. This is unfair and not proper/equal treatment to an
> employee who is working diligently.

_____

**From:** Trivedi, Madhuri (GE Healthcare) **Sent:** Tuesday, April 30, 2013
10:39 AM **To:** Khan, Ayesha (GE Healthcare) **Cc:** Conrath, Carl (GE
Healthcare); Trivedi, Madhuri (GE Healthcare) **Subject:** info

**What's the policy on being treated fairly and having rules applicable to all.
So, if team leads don't attend meetings they are fine, I have a plan and also I
have to improve my relationship with them.**
Emails I sent for daily scrum was a way to show the progress that it is already
happenging in parts. As I said in a meeting several times , it is one of the element
about team thing and NOT to be taken as a whole plan. **Please understand the
context of what a person is saying as a big picture.**

_____

**From:** Trivedi, Madhuri (GE Healthcare) **Sent:** Thursday, February 28,
2013 7:11 PM
**To:** Holton, Adam (GE Healthcare) **Cc:** Trivedi, Madhuri (GE Healthcare)
**Subject:** forced to reproduce bug/bad testing..and this is a pattern

> **Respected Adam Holton,**
> **(I spoke with Ayesha briefly right now. I can explain this in a face to
> face meeting which I have requested/scheduled on Monday March 04.)**

1. Please see my email below, the I was told on Tuesday to reproduce
   bug(which currently exists in Insite2 app, text is **overwritten** with icon as

   shown                        MDEX_G3_Validation_Win003        )
   by a team member. **And after I explained to them  in a meeting they
   agreed that this is a bug and it should not be reproduced which they
   wanted me to do**. **Meeting ended well. Dave M was also in the meeting.**

I have a series of examples/emails to show/prove that team members are/have been forcing throughout to reproduce bugs , do bad testing and bad design and managers are ignoring this and making it a my problem rather than supporting it.

2. Current Questra UI does not refresh and it's a critical bug and when they did testing before 5-10 years ; they did not failed this. And hence it's there still today. When I tried to do proper testing. It's my job. There should be a problem to do the right job.

3. Explaining all this to managers does not bring any good results. And they retaliate. There should be a plan for a person who is doing proper job and not reproducing  bug & doing proper testing which team members have not given importance.

# EMAIL 3 josh was a general manager

From: Trivedi, Madhuri (GE Healthcare) Sent: Tuesday, April 30, 2013 10:41 AMTo: Hanna, Josh (GE Healthcare)ubject: FW: info

Respected Josh,It is counter productive to work in such way where managers for no reasons either NOT  understand technical details**(Mike Truman told me few times that he does not understand much of a technical things as he is not tech person)**..Or just make it an issue for no reason.

The email I forwarded to Ayesha/Carl as shown below was a daily meeting invite for all memebrs to attend **(even though few of the team leads have not been attending such daily meetings for several days in a row ; and I have been told to improve my relationship with them). What's the policy on being treated fairly and having rules applicable to all.** This is just one example. Managers should not raise such questions like "Madhuri did you modified original email without understanding details when I had/have not done that for no reasons.

Such dose of emails from them is counter productive..Why I am the target when others are responsible. And my manager is not fair.

**Also GEIP ma**nager said good things & thanked me for tech work and team work several times(along with 9 plus their engineers/Leads) AND several people I work with in GST MKE/India. Why what my managers are saying about me is the ONLY thing

senior management is considering and not whole. If GEIP manager is appreciative and positive in appraising me then isn't it Dave M(current manager's problem )

**19 In my ECF 143- page 61, objections to R&R - Reuters investigation about judicial misconduct**

**20 My email[3] to SEC .. Though it can be coincidence. But I emailed Stephanie Avakian, SEC enforcement director about SEC & GE's pocket change settlement ( it could have been billions and not $200 million that GE paid) at 10.30 pm EST Dec. 10 and she announced her resignation Dec. 11 at 4 pm**

## Re:Take action as it was MURDER: General Electric Healthcare lawsuit/amicus brief/enforcement action

From:Madhuri Trivedi To: <chairmanoffice@sec.gov> <CommissionerLee@sec.gov> <avakians@sec.gov> <Schneidere@sec.gov> <Snyderk@sec.gov> <Winklerm@sec.gov> <robert.j.jackson@nyu.edu> <Schockl@sec.gov> < Madhuri Trivedi> <CommissionerPeirce@sec.gov> <CommissionerRoisman@sec.gov> <gabbertr@sec.gov> <garrisonc@sec.gov> <carrj@sec.gov> <norbergj@sec.gov> <rule-comment@sec.gov> <Countrymanv@sec.gov> CommissionerCrenshaw@sec.gov
 Date:Thursday, December 10th, 2020 at 3:18 AM

------- Original Message -------
On Thursday, December 10, 2020 2:28 AM, Madhuri Trivedi wrote:
Mr. Clayton and all,
I saw that SEC settled with GE--some people were already saying ( I read that )earlier that $200 million  or so that GE kept aside for SEC fine is like a POCKET CHANGE for GE..good thing is atleast something happened-.something is better than nothing --that SEC atleast fined
-but this kind of settlement won't send any strong message to
GE nor would in anyway stop GE from behaving badly in similar manner in future..

---

[3]I have copied here EDITED version of email ( respecting privacy and other matter of some people – email has been edited to show portion and not entire email & recipients)

When are you going to do anything for my reporting....you are in office for 10 working days before holidays.. ---take action on my reporting this week /before December 2020 ends..

Sent with ProtonMail Secure Email.

3)**See the news on December 8, 2020  ---This is just one of the many alerts going out for GE medical devices- hundreds of thousands of medical devices-- and GE is doing it for a while-as if not giving a damn- might is right--then why GE got rid of me--**

three -four such alerts are already part of my lawsuit where I have mentioned...but this is ongoing that these alerts are released-

that was the problem at GE -remotely controlling medical devices were insecure-had 600 critical defects--and for raising those I was firedPublicly known support credentials expose GE Healthcare imaging devices to hacking
Fixing the critical vulnerability isn't straightforward and comes with its own risks
December 8 2020..The flaw discovered by CyberMDX's research team affects 104 types of radiological devices including CT scanners, X-ray machines and ultrasound devices, across product lines
https://www.modernhealthcare.com/cybersecurity/cybersecurity-flaw-discovered-100-ge-medical-devices

https://arstechnica.com/information-technology/2020/12/default-password-in-radiology-devices-leaves-healthcare-networks-open-to-attack/

4)THings are totally corrupt...recently I emailed chief judge directly--I knew that i will get letter but I had to do it --as it was stuck at clerk's office..End of america..courts are also corrupt with corrupt judges.

Sent with ProtonMail Secure Email.

..My startup would ahve become UNICORN or atleat $10 -100 million valuation if I would not have kpet in such terrible situation and GE would not have murdered my father---but instead I am spending my precisous time in writing this email and feel a VICTIM when I remeber loss of my family in murder because of all this ....

------ Original Message -------
On Saturday, June 20, 2020 8:38 AM, Madhuri Trivedi wrote:

**NEWS article says that Mr Clayton wanted to leave govt and then he said he was interested in Fed prosecutor role etc etc...this development happened in last two weeks.....**

------- Original Message -------

On Saturday, June 20, 2020 6:20 AM, Madhuri Trivedi  wrote:

GE aviation has fired another cybersecurity engineer for doing her work -like they did to me...She contacted me..We are living HUMAN BEINGS and we deserve better especially when it is for such serious issues -instead of being retaliated and then later pushed around by broken system where nothing works.

**21 Don't know disclosure of my judges in GE stock. (1)There should be a mandatory disclosure by judge when they take/gets assigned a case with a corporate party in a lawsuit. For each case, if there is conflict when judge checks YES in software, then there will be automatic recusal based on that disclosure statement by judge(s); done by SOFTWARE (2) OR run a query of annual financial disclosures ( looks like only ELECTRONIC filing is allowed, so it can be easily queried by Software)that judges make, at the time of assignment, if conflict exists, that judge is automatically recused/not selected by sw.**

https://www.wsj.com/articles/131-federal-judges-broke-the-law-by-hearing-cases-where-they-had-a-financial-interest-11632834421

Sept. 28, 2021   9:07 am ET  **Hidden Interests  131 Federal Judges Broke the Law by Hearing Cases Where They Had a Financial Interest**

The judges failed to recuse themselves from 685 lawsuits from 2010 to 2018 involving firms in which they or their family held shares, a Wall Street Journal investigation found... They found that 129 federal district judges and two federal appellate judges had at least one case in which stock they or their family owned was a plaintiff or defendant.

.Overall, the *WSJ* has examined 685 lawsuits in which federal judges had a financial stake in the outcome yet failed to recuse themselves. The fallout could be hundreds of cases being overruled.

The judges cited in the report have not made the proper disclosures and often netted thousands of dollars as a result of ruling favorably for large corporations in which they own stock.

## 22 There are 4 EXCELL sheets during PIP meetings, updates –– that Trivedi added comments & sent to GE managers .Some below.

At that time GE managers never considered my comments about actually what happened and in hostile manager made up PRETEXT that I am not meeting PIP requirement.. I will submit those excell sheet shortly. Some of comments Trivedi submitted to GE during PIP are below.

**Inclusiveness** Take direction for tasks from the technical leads on your program (Architect, LSD, Team Leads, etc.) for needed deliverables or direction. Madhuri:when I joined old RSVP; the day I joined there were 200 plus defects/redesign work..all these work was done by GEHC/GEIP engineers/architects/leads/LSDs.. …They are fine even if they do such work…and as they/managers failed,..After joining RSVP I did integration testing and feature work..I took all the directions they gave, followed all review process…They themselves were not clear which Nate said..that we also don't know what we want. If leads give not clear, give contradicting direction and direction that is not appropriate; they should not make me look as if I am not taking directions. Because they can't provide direction.

## 22.1 Inclusiveness ---Move desk back into the area of the RSvP America's team. Madhuri:Greg S as his yelling, Dave M said he has a temper problem and I saw him surfing Guns(real ones) from his desk three or so times when I used to sit next to him when all these things were happening. Move was only temporary as Dave M, Carl, Nicole knows of it.

Madhuri: For OLD RSVP with GEIP ; there were 200 defects in dev the day I joined; it was joint GEHC/GEIP dev work. So my fellow leads/coworker did all the bad testing and now I was put on the plan for no reason. Just to divert management attention. Greg S / nate etc did not write complete requirements, missed important security feature.Upon bringing up, Greg S wrote unprofessional email about "It's not Madhuri's role and his role to make sure things were designed". BUT things were not designed properly and I was doing it as part of my job to make sure it's done the way it should be. Dave M has put in EMS comment that he moved me to second project; in second project my communication, clear thinking and inclusiveness was fine. Application was taking 40 minutes to load UI and it was lots of redesign work with missed design, failed load testing. Many of these features were done by GEHC engineers/leads. They have provided incorrect

information about my second project which was RSVP with GEIP. My contribution was equivalent to architect level and leads were not able to solve technical/security/scalability/performance problems. I have extensive experience in Service Oriented Architecture but I was pulled into the project in April 2012 which was already late. GEHC broke up with GEIP in August/September 2012.

## CONCLUSION

**Judge Saris , Judge Kelley's orders to be reversed and remanded to another judges . Trivedi get all the relief as she requested in her ECF 51.**
I made a bouquet of claims- because I wanted to know how GE defends and judge rules. It shows that their defense arguments and judge(s) ruling flawed and corrupt. GE and judges are caught in open day - there is nothing coherent...and shows that judiciary is also corrupt...

Respectfully Submitted,   Dated: October 5th 2021
Madhuri Trivedi
/s/Madhuri Trivedi
Phone: (650) 242-5135
Email: orangeinc@protonmail.com
Linkedin:- linkedin.com/in/trivedim
Twitter:- @madhuritrivd
607 Boylston Street, PMB 334 - Lower Level
Boston, MA 02116

### CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

I hereby certify that this brief complies with the type-volume limitation set forth in Fed. R. App. P. 32(a)(7)(B)(ii) because, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), this document contains half of 13,000 words..as this brief is combined for reply of two appellees' two separate brief s. This brief also complies with the typeface and style requirements of Fed. R. App. P. 32(a)(5)and Fed. R. App. P. 32(a)(6) because the brief has been prepared using a proportionally spaced typeface in 14-point font, Times New Roman.

### CERTIFICATE OF SERVICE

The CM/ECF system sends notification of filing to all the parties. **Therefore, when this document is docketed on ECF; t**he ECF system will then email all parties –registered to receive such service, notifying them that I have filed a document. Those parties will then be able to get a copy of the document. This process for docketing on ECF is deemed to be service under Rule 5(b) of the Federal Rules of Civil Procedure**.**/s/Madhuri Trivedi



# EXHIBIT 11

In *Move, Inc. v. Citigroup Global Markets, Inc.*,[i] the Court, for the first time, held that equitable estoppel can toll the Section 12 three-month limitations period.

**The court of appeals panel held that the plaintiff's motion was not untimely because the Federal Arbitration Act is subject to equitable tolling.**

The panel also held that the plaintiff's right to a fundamentally fair hearing was prejudiced by the fraudulent misrepresentations of the arbitration panel's chairperson, resulting in proceedings led by an arbitrator who should have been disqualified from the dispute under the rules and regulations of FINRA.

First, the Supreme Court has instructed lower courts to consider several textual factors to determine whether Congress intended for tolling not to apply to a given statute. This includes whether a limitations period is set forth in "unusually emphatic form," is "unusually generous," or uses "highly detailed" and "technical" language, and whether the statute "reiterat[ed] the limitations period several times in several different ways." Holland v. Florida, 560 U.S. 631, 646–47 (2010) (internal quotation marks omitted). FAA's limitations period is neither detailed nor technical and is not reiterated elsewhere in the statute. Accordingly, the text of the statute does not preclude equitable tolling.

Second, the FAA's structure is not incompatible with equitable tolling. Citigroup argues that the "interlocking structure" of the FAA precludes tolling, pointing to § 9 of the FAA, which provides one year for a party to file a motion to confirm an award. According to Citigroup, allowing vacatur more than a year after an award is issued would upset the statutory scheme by overturning a court's decision to confirm that award. ……………………………
We therefore find that the structure of the FAA is compatible with equitable tolling.

**Finally, equitable tolling would not undermine the basic purpose of the FAA, which was enacted to make "valid and enforceable written provisions or agreements for arbitration of disputes."** 68 Cong. Ch. 213, 43 Stat. 883 (1925). While

the FAA reflects the "national policy favoring arbitration with
just the limited review" necessary to maintain finality in
arbitral proceedings, *Hall Street*, 552 U.S. at 581, **"[t]he
general pro-arbitration policy relies on the assumption that
the forum is fair, and therefore cannot justify special
deference to arbitration outcomes in the face of a colorable
claim that the forum was unfair in a particular case."** *Merrill
Lynch, Pierce, Fenner & Smith, Inc. v. Berry*, **92 Fed. Appx. 243, 246 (6th Cir. 2004)
(unpublished).** Thus, although
Citigroup argues that equitable tolling would undermine the
FAA's goal of finality, § 10's limited grounds for review
were still "designed to preserve due process," ***Kyocera Corp.
v. Prudential-Bache Trade Servs., Inc.***, **341 F.3d 987, 998
(9th Cir. 2003)……**
**More importantly, permitting equitable
tolling will enhance both the accuracy and fairness of arbitral
   outcomes………**

**Regardless, we agree with the district court's
findings that (1) Move acted with due diligence in pursuing
its claim, as it justifiably relied on the information provided
by FINRA; and that (2) tolling would not prejudice Citigroup
under the circumstances. We therefore conclude that Move
is entitled to equitable tolling.**

EXHIBIT 12

# United States Court of Appeals

## For the First Circuit

_____

## No. 21-1434

MADHURI TRIVEDI

Plaintiff - Appellant

v.

GENERAL ELECTRIC COMPANY; GE HEALTHCARE; H. LAWRENCE CULP, JR., CEO of GE in his individual and official capacity; GE BOARD OF DIRECTORS; FRAGOMEN, DEL REY, BERNSEN AND LOEWY, LLP; JENNY SCHRAGER, Partner at Frogomen, Del Rey, Bernsen & Loewy, LLP, in her individual and official capacity; MIKE SWINFORD, former CEO of GEHC services, in his official and individual capacity; CARL CONRATH, Senior Engineering Manager, GE healthcare in his official and individual capacity; NICOLE BOYLE, Program Manager, GEHL; NATHAN DAVIS, Architect, GEHC; WILLIAM BARBIAUX, Architect, GEHC; JOHN DINEEN, former CEO of GE and former CEO of GEHC; DAVID ELARIO, General Manager of GEHC services; SUSAN HOCKFIELD, former Director of GE; ADAM HOLTON, senior HR Manager, GEHC; JEFFREY IMMELT, Former CEO of GE; AYESHA KHAN, HR Manager, GEHC; TIMOTHY KOTTAK, CTO of GEHC services; DAVID MEHRING, Engineering Manager GEHC; DIPTI PATEL, Project lead, GEHC; DIANE SMITH, HR Manager, GEHC; GREGORY STRATTON , Lead System Integrator, GEHC; ROBERT SWIERINGA, former Board of Director of GE; MICHAEL TRUMAN, HR Manager, GEHC; REEMA PODDAR, Senior Leader of GE intelligent platforms; WARD BOWMAN, Engineering Manager, GE intelligent platforms; MIKE HARSH, Former CTO of GEHC

Defendants - Appellees

FOLEY AND MANSFIELD LAW FIRM

Defendant

**Letter regarding my email to Ur Jaddou, USCIS director nominee on May 27, 2021 and within 10 hours, Judge Saris issues 3 lines order to dismiss my case. That led me to believe conspiracy to remove witness.**

**Dear all judges, This is a supplemental letter-** I wanted to add this in my original letter sent to you all recently..But thought how would it look and what kind of impression I would have in front of judges if I write this. But now I have no choice but to write this. If Ur Jaddou –is not the one behind this ; then I ask that Ur Jaddou won't take this letter personally and understand my plight for suffering series of injustice.

I had sent this letter content to Ur Jaddou; so she is aware of my observation.

**1)** I had sent an email to Ur Jaddou ,nominee USCIS director who went through senate confirmation on May 26---

I sent her an email - May 27 10.20 am UTC time ;so at 6.20 am Eastern Time ; she had whole day to do whatever she can...I even called her and no one picked up so I left a voice message..

By 5 pm Eastern time ; judge Saris issued an order..so most likely it is her...==She used to be a general counsel at USCIS...==this people are heartless, they have **ZERO conscious**- are power hungry , doesn't care about laws, ethics, values....

> About my email to Ur Jaddou and district court ruling in 10 working hours –if this is a conspiracy I believe and it exists - it could be this Jaddou Ur..total anarchy and people like Ur are symbol of anarchy-and they won't like to be exposed by a smart MIT educated person..so remove witness ..

**As her linkedin shows- she was a general counsel for DHS, USCIS from 2014-january 2017.........and my lawsuit against DHS, USCIS was filed in District court in March 2016-I went to supreme court in December 2016...so she was a general counsel during my DHS, USCIS fight. Judge Saris issuing 3 lines order and my email to her –timing – send a message..Since similar things has happened in past –it makes sense that removing witness by dismissing case that she brought is what people like Ur Jaddou would do-if she is the one…**

# **2)** ==My Email to Ur Jaddou==

# MIT sloan alumni,Immigrant,woman, SEC complaint for GE & Lawsuit

From:orangeinc@protonmail.com <orangeinc@protonmail.com>
==To:ujaddou@potomaclaw.com==
==<ujaddou@potomaclaw.com>==orangeinc@protonmail.com
<orangeinc@protonmail.com>
==Date:Thursday, May 27th, 2021 at 10:20 AM UTC TIME==
==Ms. Ur Mendoza Jaddou,==
I see that you are being confirmed for USCIS director. Congrats.
For not joining General electric fraud, GE has withdrawn my H1 B and greencard.And I had no time left on H1 B when GE withdrew. After that I had no choice but to file EB1-which USCIS denied. Please take care of my matter..
When you join USCIS please have someone contact me and figure out logistics. GE has bribed and stolen my attorneys-no attorneys has given me advise that would resolve and GE Chief technology officer said that "no attorney will bring up law that would resolve your matter Madhuri- we pay these attorneys a lot"

**I have filed SEC complaint...and also federal lawsuit in district of Massachusetts -**Case 1:19-cv-11862-PBS Trivedi v. General Electric Company et al --assigned to chief judge Patti B Saris..
Sent with ProtonMail Secure Email.

# Fw: Automatic reply: MIT sloan alumni, SEC complaint for GE & Lawsuit

From:orangeinc@protonmail.com <orangeinc@protonmail.com>
To:ujaddou@potomaclaw.com <ujaddou@potomaclaw.com>orangeinc@protonmail.com <orangeinc@protonmail.com>
Date:Thursday, May 27th, 2021 at 4:32 PM

------- Original Message -------
On Sunday, May 9, 2021 7:55 AM, Gary Gensler <gensler@mit.edu> wrote:

I'm no longer regularly checking this email since I've left MIT. If your message is regarding SEC matters, feel free to email me there.

Received: Tuesday, May 11, 2021 1:04 PM From: Madhuri Trivedi orangeinc@protonmail.com To: gensler@mit.edu gensler@mit.edu CC: orangeinc@protonmail.com orangeinc@protonmail.com
------ Original Message -------
On Friday, May 21, 2021 4:52 AM, Madhuri Trivedi <orangeinc@protonmail.com> wrote:

FYI I came to know that Mr Gensler SEC chair teaches at MIT when I was going through some finance course material —
Sent with ProtonMail Secure Email.
------- Original Message -------
On Tuesday, 11 May 2021 6:34 PM, Madhuri Trivedi <orangeinc@protonmail.com> wrote:
Apology for a typo Mr. Gensler below - it had G before
Sent with ProtonMail Secure Email.
------- Original Message -------
On Sunday, 9 May 2021 3:56 PM, Madhuri Trivedi <orangeinc@protonmail.com> wrote:

**1.**So after GE let me go - my former c**o worker at startup I worked in Boston and then director at Harvard medical wyss institute ha**d created job for me pending logistics issue to work in **synthetic / artificial protein** —-**vaccine** .At that time I was passionate to work on that research with other bright people - but off course NOT ANYMORE. And even for my startup press release I had mentioned those words .. Now as you know — **for corona some of the vaccines are monoclonal antibody / aka artificial or synthetic protein ..**
**Trump got monoclonal antibody ...........................**

**2.**After GE fired me- I started to work on my startup as well..(But I left healthcare domain and startup)after my father died---

**OrangeHealth Seeking Investors for Mobile App Peer-to-Peer Platform for Managing Diabetes, Other Health Conditions**

https://www.prnewswire.com/news-releases/orangehealth-seeking-investors-for-mobile-app-peer-to-peer-platform-for-managing-diabetes-other-health-conditions-300477365.html

Sent with ProtonMail Secure Email.

------- Original Message -------
On Sunday, May 9, 2021 7:54 AM, Madhuri Trivedi <orangeinc@protonmail.com> wrote:

Respected Mr. G,
I look forward to your reply to my email...As a new chairman of SEC and MIT
**I did Systems design and management course at MIT and MIT sloan combined..It was a tech executive leadership course while I was working full time** at United Technologies in Connecticut and UTC sponsored me for that...I saw that you recently taught Fintech course at MIT-course is on opencourseware website..

**Here's my whistleblower profile on whistleblowers.org**
https://www.whistleblowers.org/whistleblowers/madhuri-trivedi/

**While working as a lead engineer at General Electric Healthcare - I came across hundreds of defects, malfunctions, cybersecurity vulnerabilities for GEHC remote** connectivity platform that allowed to fully control medical devices remotely and was pre installed on 99% of medical devices GE manufactured.... **Public safety, health, data and functioning of medical devices was at stake. GE knowingly defrauded stake holders, public and regulators for years.**
**For not joining GE's fraud scheme -GE made a pretext -**that I am not getting along with coworkers( those who wrote this shitty platform)..
**Pat Hale- INCOSE past president and director for System design and management at MIT- MIT sloan supported me..he encouraged me to file** lawsuit,. but then he had cancer and surgeries ; so I am not in contact with him anymore..

**I have filed SEC complaint...and also federal lawsuit in district of Massachusetts - Case 1:19-cv-11862-PBS Trivedi v. General Electric Company et al  --assigned to chief judge Patti B Saris..**

██████████████████████████████████████

**GE has lots of connection and lobbying power, and is a government contractor..That doesn't give them right to violate laws -having profit more important than public health, safety --**
**I have attached amended complaint...**Thanks and regards
best regards,
**Madhuri Trivedi**
**Linkedin-**
https://www.linkedin.com/in/trivedim/

****************\*\*\*\*==End of email to Ur Jaddou==

**3)**



**4)**    On May 27 I sent this email around 11 am to Ur Jaddou and by 5 pm same day - judge issued order in three lines denying my case and granting GE dismiss motion in a totally corrupt way....

### United States District Court

### District of Massachusetts

**Notice of Electronic Filing**

The following transaction was entered on 5/27/2021 at 4:50 PM EDT and filed on 5/27/2021

**Case Name:**    Trivedi v. General Electric Company et al

**Case Number:**    1:19-cv-11862-PBS

**Filer:**

**WARNING: CASE CLOSED on 10/15/2020**

**Document Number:** No document attached

**Docket Text:**

**Judge Patti B. Saris: ORDER adopting [136] Report and Recommendations; adopting [135] Report and Recommendations; adopting [137] Report and Recommendations and denying [150] Motion for Preliminary Injunction, MOTION for Injunctive Relief, and MOTION to Lift Administrative Stay. (Baker, Casey)**

Respectfully  Submitted,    Dated: June 17,2021

Madhuri Trivedi
/s/Madhuri Trivedi
Fax: 708-778-4859  Phone: (650) 242-5135
Email:  orangeinc@protonmail.com
Linkedin:-  linkedin.com/in/trivedim
Twitter:-  @madhuritrivd
607 Boylston Street, PMB 334 - Lower Level
Boston, MA 02116

## CERTIFICATE  OF SERVICE

The CM/ECF system sends notification  of filing  to all the parties.  **Therefore, when this document is docketed on ECF; t**he ECF system will then email all parties –registered to receive such service, notifying  them that I have filed  a document.  Those parties will  then be able to get a copy of the document. This process for docketing on ECF is deemed to be service under Rule 5(b) of the Federal Rules of Civil Procedure**.**
/s/Madhuri Trivedi



# EXHIBIT 13

On Saturday, August 2, 2014, Seymour J. Mansfield <smansfield@foleymansfield.com> wrote:

**Madhuri, Here's the profile for Denise Quimby, www.linkedin.com/in/denisequimby .**

She would work with her husband, **Collins P. Whitfield**, and his Firm, Whitfield McGann & Ketterman, http://www.wmklaborlaw.com/relationships/.Seymour

**From:** Madhuri Trivedi [mailto:mcis99@gmail.com]
**Sent:** Friday, August 01, 2014 8:47 PM
**To:** Seymour J. Mansfield
**Cc:** David L. Haron; Andrew R. Shedlock; Alissa N. Mitchell
**Subject:** Re: Madhuri

 Ok . Thank you.
On Friday, August 1, 2014, Seymour J. Mansfield <smansfield@foleymansfield.com> wrote:

Don't worry about it Madhuri.Have a good weekend.

 **From:** Madhuri Trivedi [mailto:mcis99@gmail.com]
**Sent:** Friday, August 01, 2014 6:58 PM
**To:** Seymour J. Mansfield; David L. Haron; Andrew R. Shedlock
**Subject:** Madhuri

 I was thinking to call Andrew or Alissa on Monday and mention few things about what Sean told about past just to clarify. We just cleared huge thunderstorm and tons of rain right now. Thank you . -- Sincerely,Madhuri

Seymour J. Mansfield
Partner

250 Marquette Avenue
, Suite 1200
Minneapolis , MN 55401
P: 612-216-0256 | F: 612-338-8690 | smansfield@foleymansfield.com
**Chicago | Detroit | Grand Rapids | Los Angeles | Miami | Minneapolis | New York | Oakland | Seattle | St. L**
 ---------- Forwarded message ---------
From: **Andrew R. Shedlock** <ashedlock@foleymansfield.com>
Date: Tue, Aug 19, 2014 at 1:06 AM
Subject: RE: Can you call me
To: Madhuri Trivedi <mcis99@gmail.com>

Madhuri,The employment matter with our firm is closed.  If you need help with qui tam issues, David Haron is your contact.

On Mon, Aug 18, 2014 at 9:49 PM Andrew R. Shedlock <ashedlock@foleymansfield.com> wrote:
Madhuri, The employment portion of your case with our firm is closed, so I cannot speak about that. If you'd like to check with David Haron on the status of referring what remains of your qui tam case to another attorney, you are welcome to do that.
--------- Forwarded message ---------
From: **Andrew R. Shedlock** <ashedlock@foleymansfield.com>
Date: Mon, Aug 18, 2014 at 9:35 PM
Subject: RE: Can you call me
To: Madhuri Trivedi <mcis99@gmail.com>

Madhuri, David Haron is handling the remaining qui tam issues that you still have, so please contact him if there are any questions about the qui tam issues.

--------- Forwarded message ---------
From: **David L. Haron** <dharon@foleymansfield.com>
Date: Mon, Aug 18, 2014 at 8:44 PM
Subject: Patrick Burns
To: Mcis99@gmail.com <Mcis99@gmail.com>
Cc: David L. Haron <dharon@foleymansfield.com>

Patrick Burns  202-296-4826
--------- Forwarded message ---------
From: **Madhuri Trivedi** <mcis99@gmail.com>
Date: Fri, Aug 15, 2014 at 1:30 AM
Subject: FCA
To: dharon@foleymansfield.com <dharon@foleymansfield.com>, Seymour Mansfield <smansfield@foleymansfield.com>
I read that there was a congressional judiciary committee hearing on July 30 that big businesses wants to limit FCA by having mandatory internal reporting first...by having amendment into FCA laws in future.

But internal reporting of fraud with government --it is not good because big companies retaliate and they don't like FCA so they  try to cover it up..

Anyway..I am not a legal person so these are my own views based on my experience.

It was on news  so I know it. Just thought to share it.
--
Sincerely,Madhuri
--------- Forwarded message ---------
From: **Madhuri Trivedi** <mcis99@gmail.com>Date: Fri, Aug 15, 2014 at 1:23 AM
Subject: Re: I tried to call and left message To: David L. Haron <dharon@foleymansfield.com>
Cc: Christy Sales <csales@foleymansfield.com>, Seymour J. Mansfield <smansfield@foleymansfield.com>, Maro E. Bush <mbush@foleymansfield.com>, Mercedes

Varasteh Dordeski <mdordeski@foleymansfield.com>, Stacey Bellich
<sbellich@foleymansfield.com>
Respected David,
Earlier I was agitated by arbitrator document I received...It is injustice and I wanted to talk to
Seymour/Andrew... So...will talk with them later.Tnx and regards
---------- Forwarded message ---------
From: **Madhuri Trivedi** mcis99@gmail.com
Date: Fri, Aug 15, 2014 at 12:19 AM Subject: info
To: David L. Haron <dharon@foleymansfield.com>Cc: Seymour J. Mansfield
<smansfield@foleymansfield.com>, Maro E. Bush <mbush@foleymansfield.com>, Mercedes
Varasteh Dordeski <mdordeski@foleymansfield.com>, Stacey Bellich
<sbellich@foleymansfield.com>
David,
I just wanted to mention that arbitrator sent 50 page document yesterday; but the hearing
transcript is 565 pages long...arbitrator just used things GE submitted in post brief and other
things.
**From:** "Madhuri Trivedi" <madhuritrivedi@hotmail.com>
**To:** "Andrew R. Shedlock" <ashedlock@foleymansfield.com>
**Subject: Fwd: Madhuri Trivedi V. GE Healthcare - Case 51-20-1300-1260**

Begin forwarded message:

**From:** "Madhuri Trivedi" <madhuritrivedi@hotmail.com>
**To:** "Seymour J. Mansfield" <smansfield@foleymansfield.com>, "David L. Haron"
<dharon@foleymansfield.com>
**Subject: Fwd: Madhuri Trivedi V. GE Healthcare - Case 51-20-1300-1260**

This is what I received from arbitrator
Begin forwarded message:
From: CarolPlacella@adr.org
To: madhuritrivedi@hotmail.com

Subject: Madhuri Trivedi V. GE Healthcare - Case 51-20-1300-1260

Attached please find correspondence related to the captioned matter.

Thank you.Carol Placella
Manager of ADR Services
American Arbitration Association
T:401 431 4890
F:866 644 0234950 Warren Ave.
East Providence, RI 02914-1414
http://www.adr.org
Heather Santo, Director



EMP079.pdf (65K)    ×

ATT00001 (1K)    ×

FINAL AWARD.pdf (6,914K)    ×

EEOC Form 161 (11/2020)

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION **EXHIBIT 14**

## DISMISSAL AND NOTICE OF RIGHTS

| To: | **Madhuri Trivedi** | From: | **Chicago District Office** |
|---|---|---|---|
| | **607 Boylston Street** | | **230 S. Dearborn, #1866** |
| | **Boston, MA 02116** | | **Chicago, IL 60604** |

☐ *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| | **Kimberly M. Engram,** | |
| **440-2021-04770** | **Investigator** | **(312) 872-9707** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*Julianne Bowman/np*                                9/15/2021

Enclosures(s)

**Julianne Bowman,**
**District Director**                                *(Date Issued)*

cc:    **GE Healthcare**

**Heidi Retzlaff**
**GC, Legal COEs**
**3000 N Grandview Blvd.**
**Waukesha, WI 53188**

Enclosure with EEOC
Form 161 (11/2020)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS  --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope or record of receipt, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *issued* to you** (as indicated where the Notice is signed) or the date of the postmark or record of receipt, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS  --    Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice *and* within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION  --    Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE  --    All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months** of this Notice. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

GE Healthcare          EXHIBIT 15



**Heidi Retzlaff**
General Counsel, Legal COEs &
Global Counsel, Labor &
Employment

August 12, 2021

United States Equal Employment Opportunity Commission
Chicago District Office
230 S. Dearborn
Suite 1866
Chicago, IL 60604

      Re:  Madhuri Trivedi v. GE Healthcare, EEOC Charge No. 440-2021-04770

To Whom it May Concern:

This letter is the position statement of GE Healthcare ("GEHC") in response to the above-referenced complaint filed by Madhuri Trivedi.  Ms. Trivedi was separated from employment with GE Healthcare in late May, 2013.

Ms. Trivedi subsequently filed a claim under our Alternative Dispute Resolution Procedure, and the following allegations were tried in an arbitration[1] before arbitrator Peter R. Meyers on May 8-9, 2014:

  (1) the Company had discriminated against her based on her gender, female, and her Indian national origin when it discharged her from her employment;

  (2) the Company subjected the Claimant to an intimidating, hostile, and offensive work environment, that the Company failed to take sufficient action to correct that work environment, and that the Company retaliated against the Claimant for bringing  that work environment to the Company's attention;

  (3) the Company failed to take sufficient action to correct the discriminatory  conditions after the Claimant brought such conditions  to the Company's attention;

---

[1] At the arbitration, Ms. Trivedi presented the testimony of 9 witnesses, including herself.

General Electric Company
GE Healthcare
3000 N. Grandview Blvd. W436
Waukesha, WI  53188     Telephone:  262 424.5722
USA             heidi.retzlaff@med.ge.com

GE Healthcare

**Heidi Retzlaff**
General Counsel, Legal COEs &
Global Counsel, Labor &
Employment

(4) the Company retaliated against the Claimant for complaining about discriminatory and disparate treatment[2]; and

(5) the Company subjected the Claimant to unfavorable and adverse treatment even though she was meeting the Company's legitimate expectations.

On August 11, 2014, following post-hearing briefing, Arbitrator Meyers issued a written decision finding no discrimination or retaliation by the Company and dismissed Ms. Trivedi's claims.

In this charge, Ms. Trivedi asserts there is a continuing violation that makes her claims timely, she states no facts that indicate what alleged actions GE Healthcare has engaged in that could be the basis for a continuing violation theory under Title VII or any other law. As well, the merits of her claims have already been decided and cannot be relitigated by her. For these reasons, we ask that you dismiss the case without further investigation.

If for any reason you need more information, please let me know.

Very truly yours,

Heidi B. Retzlaff
General Counsel, Legal COEs & Global
Counsel, Labor & Employment

---

[2] The claim of retaliation included assessing the merits of Ms. Trivedi's allegation that she was retaliated against for raising concerns about Company products and the allegation was found without merit following the arbitration.

General Electric Company
GE Healthcare
3000 N. Grandview Blvd. W436
Waukesha, WI 53188           Telephone: 262 424.5722
USA                         heidi.retzlaff@med.ge.com



# EXHIBIT 16

On Thursday, August 11th, 2022 at 8:35 AM, Madhuri Trivedi <orangeinc@protonmail.com> wrote:
 FromMadhuri Trivedi <orangeinc@protonmail.com>
ToFisher, Maia - SOL<Fisher.Maia@dol.gov>, naji.sarah@dol.gov, Babich, Stefan - SOL<Babich.Stefan@dol.gov>, Crowell, Bertha J - SOL<Crowell.Bertha@dol.gov>, FEEWC<FEEWC@dol.gov>
DateThursday, August 11th, 2022 at 8:35 AM
 Sarah, See below - how can someone work on FTCA claims- if that person doesn't know about how OSHA SOX works..Put someone senior ..or get yourself involved...
If your only goal is to get this matter to federal court in terms of getting sued..than you won't get invloved and leave it to someone like Stefan who doesn't have understanding, knowledge, skill or willingness..
Are you going to reply and have a conference call? BIVENS claims are individual capacity - unlike FTCA which DOL defendants..Bivens claims are defended by individuals and by thier own attorneys that they hire..so you and Stefan will ahve to hire your own attorneys...
 FTCA claims for 2014--- tolls because of ongoing injury as even during 2021 OSHA complaint - OSHA and ALJ continued tort..so tort aka injury didn't stop -- statute of limitations was tolled as long as DOL defendants- aka OSHA, ALJ continued inflicting all tort actions upon me.....I have provided number of case laws,legal arguments about this**..But during our phone call -- Stefan didn;t know -- or may be didn't care to read..**
 Jason Kap told me on MAY 3 - and same day I filed OSHA complaint in 2014..Jason was a former microsoft president..and MIT alumni like me..those emails are part of FTCA claims, OSHA and ALJ documents...**But Stefan didn't read that as well.**
 **Two law firms in August 2013 – none of them advised for OSHA filing;;but Cross law firm in Wisconsin where I worked at GE , which was employment law firm – their retainer said that cross will not represent me in arbitration nor advice me – work on filing any claims with any government agency..**
**Another law firm was from Cambridge , MA – he was an immigration attorney and he sent a letter to GE CEO>..How come immigration attorney know about OSHA –sox.. Stefan hasn't read these –in my FTCA claims too…so now – it proves that Stefan is also aiding and abetting fraud..and being negligence, intentionally inflicting torture by not reading what is their…all this behavior is criminal.**
**I have mentioned OFCCP and that another GE aviation engineer Alexandria Horne has submitted 50 GE victims information to OFCCP at DOL..out of 50 several are whistleblowers…**
**OFCCP – DOL statute of pattern and practice claims – means as long as company is violating law –then during that period – violations and employees claims are within that period..Alexandria has her ALJ case pending…Stefan didn't read that too in my FTCA claims..he is intentionally doing this…and thus he is also corrupt..**
**If I file critical, material evidence and none of you intentionally don't read that you don't deserve to be on a federal payroll as taxpayers like me pay your salary..GE dodges tax and paid ZERO tax..**

OSHA, ALJ wrote in their dismissal that Trivedi had
 Sent with Proton Mail secure email.
 ------- Original Message -------
On Wednesday, August 10th, 2022 at 8:29 AM, Madhuri Trivedi <orangeinc@protonmail.com>
wrote:

I don't want to bring Bivens and FTCA claims agaisnt FTCA people along with OSHA and ALJ
- if Stefan continue applying his lack of understanding --he was not clear yesterday..
 Sent with Proton Mail secure email.
------- Original Message -------
On Tuesday, August 9th, 2022 at 6:19 PM, Madhuri Trivedi <orangeinc@protonmail.com>
wrote:
Sarah, I had one hour and 15 minute conversation with Stefan... Please get involved
yourself....and not totally rely on Stefan -where you just sign his letter...that's what Robert Kuss
did in 2014...and now we are here...
 We should have conference call with you , Stefan and me...to go over documents...
I will send some documents that made a note during phone call....
I had filed 70 MB of documents to ALJ for objections to OSHA order..no one has understood
full pictire and corruptly copy pasted pieces..which does not make sense..thus proves my FTCA
claims...
------- Original Message -------
On Tuesday, May 24th, 2022 at 9:45 AM, Madhuri Trivedi <orangeinc@protonmail.com>
wrote:
Ms. Fisher,
Below is portion of email sent to me by Stefan....
Since you arein SOL office...I want to make sure that my claims are handled by someone who
knows in and out...
THough Stefan has shown eagarness to know more about SOX....I thought to reach out to you...
See below - his understanding about SOX is totally wrong..I have sent emails to him about
explaining it after this email...and he has declined to ahve any phone call or conference calll so
that I can explain him...
There are several cases for OSHA SOX--- court cases- that explain how SOX applies to wire
fraud, mail fraud, RICO, stock holder fraud and not just financial fraud...AND I had clearly
written about fraud even in 2014 complaint..
 IF FTCA person handling my claims doesn't understand what SOX is and how it applies-- then
it is not good for me...Just make sure that my claism are handled properly....Thanks
 I emailed Stefan about **18 U.S. Code § 1514A** in April first week -- hope he understand...please
get involved yourself since you are an attorney..I think Stefan would read more and apply this
understanding after I sent him material about SOX.
·    **--Below is SOX OSHA statute....**
**18 U.S. Code § 1514A - Civil action to protect against retaliation in fraud cases**
  • U.S. Code
  • Notes

        prev | next

(a) Whistleblower Protection for Employees of Publicly Traded Companies.—No company with a class of securities registered under section 12 of the Securities Exchange Act of 1934 (15 U.S.C. 78*l*), or that is required to file reports under section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78*o*(d)) including any subsidiary or affiliate whose financial information is included in the consolidated financial statements of such company, or nationally recognized statistical rating organization (as defined in section 3(a) of the Securities Exchange Act of 1934 (15 U.S.C. 78c),[1] or any officer, employee, contractor, subcontractor, or agent of such company or nationally recognized statistical rating organization, may discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment because of any lawful act done by the employee—

(1) to provide information, cause information to be provided, or otherwise assist in an investigation regarding any conduct which the employee reasonably believes constitutes a violation of section 1341, 1343, 1344, or 1348, any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders, when the information or assistance is provided to or the investigation is conducted by—

(A)  a Federal regulatory or law enforcement agency;

(B)  any Member of Congress or any committee of Congress; or

(C)  a person with supervisory authority over the employee (or such other person working for the employer who has the authority to investigate, discover, or terminate misconduct); or

(2)

to file, cause to be filed, testify, participate in, or otherwise assist in a proceeding filed or about to be filed (with any knowledge of the employer) relating to an alleged violation of section 1341, 1343, 1344, or 1348, any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders.

(b) Enforcement Action.—

(1) In general.—A person who alleges discharge or other discrimination by any person in violation of subsection (a) may seek relief under subsection (c), by—

(A)  filing a complaint with the Secretary of Labor; or

(B)  if the Secretary has not issued a final decision within 180 days of the filing of the complaint and there is no showing that such delay is due to the bad faith of the claimant, bringing an action at law or equity for de novo review in the appropriate district court of the United States, which shall have jurisdiction over such an action without regard to the amount in controversy.

(2) Procedure.—  (A) In general.—

An action under paragraph (1)(A) shall be governed under the rules and procedures set

forth in section 42121(b) of title 49, United States Code.

(B) Exception.—  Notification made under section 42121(b)(1) of title 49, United States Code, shall be made to the person named in the complaint and to the employer.

(C) Burdens of proof.—  An action brought under paragraph (1)(B) shall be governed by the legal burdens of proof set forth in section 42121(b) of title 49, United States Code.

(D) Statute of limitations.—  An action under paragraph (1) shall be commenced not later than 180 days after the date on which the violation occurs, or after the date on which the employee became aware of the violation.

(E) Jury trial.—  A party to an action brought under paragraph (1)(B) shall be entitled to trial by jury.

(c) Remedies.—  (1) In general.—  An employee prevailing in any action under subsection (b)(1) shall be entitled to all relief necessary to make the employee whole.

(2) Compensatory damages.—Relief for any action under paragraph (1) shall include— (A)  reinstatement with the same seniority status that the employee would have had, but for the discrimination;  (B)  the amount of back pay, with interest; and  (C) compensation for any special damages sustained as a result of the discrimination, including litigation costs, expert witness fees, and reasonable attorney fees.

(d) Rights Retained by Employee.—  Nothing in this section shall be deemed to diminish the rights, privileges, or remedies of any employee under any Federal or State law, or under any collective bargaining agreement.

(e) Nonenforceability of Certain Provisions Waiving Rights and Remedies or Requiring Arbitration of Disputes.—  (1) Waiver of rights and remedies.—

The rights and remedies provided for in this section may not be waived by any agreement, policy form, or condition of employment, including by a predispute arbitration agreement.
(2) Predispute arbitration agreements.—  No predispute arbitration agreement shall be valid or enforceable, if the agreement requires arbitration of a dispute arising under this section.

(Added Pub. L. 107–204, title VIII, § 806(a), July 30, 2002, 116 Stat. 802; amended Pub. L. 111–203, title IX, §§ 922(b), (c), 929A, July 21, 2010, 124 Stat. 1848, 1852.)

Sent with ProtonMail secure email.

From Madhuri Trivedi <orangeinc@protonmail.com>
To Babich, Stefan - SOL<Babich.Stefan@dol.gov>
Date Friday, May 27th, 2022 at 3:22 AM

Stefan,
you wrote me this  - as below portion of email-- so I thought you were a paralegal...so I was making sure..there are 1000 cases in federal court related to how OSHA SOX applies to all kinds of fraud - and not just financial fraud - it includes wire fraud, mail fraud, RICO  --- and any violation of rule and/or statute that it governs....I have MS, PGDBA and engineering bachelors.....and also systems design and management technical ledership graduate level course -- I am highly qualified and experienced.... GE was aware - that I can see big picture- connect dots ...and all.but --I don't go to bed with them-- but I can't fight that...this is pure exploitation of me- ...see here...GE attorneys lie too..

Did you receive my two pdfs...

We can have a webex call - to go over SOX and how it applies---

### Re: FTCA claims

From: Babich, Stefan - SOL <Babich.Stefan@dol.gov>

To Madhuri Trivedi<orangeinc@protonmail.com>

Date: Thursday, March 31st, 2022 at 10:17 PM

Hello, Ms. Trivedi,

 Hope you are well and that you have had a good week and weekend (hopefully not too cold). I wanted to let you know I received your attachments that you emailed while I was out of the office and have had a chance to look at them, including the 2014 complaint.

 I did have a couple of questions to make sure I interpreted the facts of your complaint accurately.
 Similarly, I was a bit unsure about how the Sarbanes Oxley Act related to your claims. As far as I understand, the Sarbanes Oxley Act relates to retaliation for reporting violations of corporate financial reporting/recordkeeping laws, and my impression was that you were saying you were retaliated against for complaining about defects in medical software.

# EXHIBIT 17

**From:** Jenny Schrager [mailto:JSchrager@Fragomen.com]
**Sent:** Wednesday, July 03, 2013 2:12 AM
**To:** Madhuri Trivedi
**Cc:** Holton, Adam (GE Healthcare); barbara.tremel@med.ge.com; Price, Catherine N (GE Healthcare)
**Subject:** RE: madhuri

Madhuri - We need to make this clear. Unless we receive authorization from GE's internal legal counsel, we cannot postpone withdrawal of the H-1B petition. Second, unless GE Healthcare can guarantee that they have a permanent offer of employment available to you (in the same position/location as listed on the PERM application), the green card application will not move forward (i.e. GE Healthcare will NOT file the I-140 petition).

In addition, we cannot opine on whether you have a claim pursuant to the Violence Against Women Act.

Please note that we are GE's immigration counsel at this time. As you are undergoing the mediation process within GE, kindly remove my name from copy on future email correspondence as this is an internal GE matter.

Finally, we are not authorized to provide you with any further immigration guidance as you are no longer a GE employee. You may wish to seek personal counsel for any future immigration or employment issues.

Regards,
Jenny
Jenny S. Schrager
Partner
Fragomen, Del Rey, Bernsen & Loewy, LLP
7 Hanover Square
New York, NY 10004-2756
Main - 212.688.8555
Direct - 212.230.2883
E-mail - jschrager@fragomen.com
https://www.fragomen.com


From:        Madhuri Trivedi <madhuritrivedi@hotmail.com>
To:        "Holton, Adam (GE Healthcare)" <adam.holton@ge.com>, "Price, Catherine N (GE Healthcare)" <catherine.price@med.ge.com>,
Cc:        "jschrager@fragomen.com" <jschrager@fragomen.com>,
"barbara.tremel@med.ge.com" <barbara.tremel@med.ge.com>
Date:        07/02/2013 04:37 PM
Subject:        RE: madhuri

Adam,
what about immigration support.
Once my H1 extension happens and greencard is portable

(I found out that employee can change the job based on H1 extension that prior employer filed based on that employer's Labor certificate/ I 140.......to a new employer as log as old employer continues supporting I 140 till it becomes portable..no monetary support is needed.......this is one option)

Sincerely,
Madhuri

---

From: madhuritrivedi@hotmail.com
To: adam.holton@ge.com; catherine.price@med.ge.com
CC: jschrager@fragomen.com; barbara.tremel@med.ge.com
Subject: RE: madhuri
Date: Tue, 2 Jul 2013 15:30:07 -0500

**Jenny,** What about Violence against woman act at workplace for immigration.
**Immigration mentions support to woman in workforce if such things have taken place from low to critical severity and that can/have caused hardship to woman**. There is the a law if such things against women happened at workplace. That addresses such things.

Sincerely,Madhuri

---

From: madhuritrivedi@hotmail.com
To: adam.holton@ge.com; catherine.price@med.ge.com
CC: jschrager@fragomen.com; barbara.tremel@med.ge.com; madhuritrivedi@hotmail.com
Subject: RE: madhuri
Date: Tue, 2 Jul 2013 12:46:27 -0500

Adam,
As I have mentioned below things related.
1) I just need to get back to job mainly for immigration /logistics issues. Once my H1 extension happens and greencard is portable

(I found out that employee can change the job based on H1 extension that prior employer filed based on that employer's Labor certificate/ I 140.......to a new employer as log as old employer continues supporting  I 140 till it becomes portable..no monetary support is needed.......this is one option)

2) In the meantime which will be relatively short time; high skilled immigration law will be in place which senate passed a bill for recently. So  In future ,I may stay with same current GE group , go elsewhere within GE or go outside of GE.

3) Consider this as negotiation points to resolve things and find solutions and come to common

agreements. I know in december there was appraisal training video session with several GEHC HR leaders. And you mentioned that even if employee gets unfair rating they need to work on a plan that manager gave ..While another HR leader said that if employee gets unfair ratings they should get a new manager to work for and not a plan. There was a recorded session so you can double check.

While I was employed I requested to Dave Elario and others to change the manager when manager was being unfair. That's what Bill Barbiaux also mentioned that they treated you badly and they were unfair.

So please consider me getting back to job as a short term things till immigration is worked out. Why should I go through extreme hardship and also being a woman when I was doing good job and they were unfair ... and those people did not address defects in production for ten years for example.

Sincerely,Madhuri

---

From: madhuritrivedi@hotmail.com
To: adam.holton@ge.com; catherine.price@med.ge.com
CC: jschrager@fragomen.com; barbara.tremel@med.ge.com
Subject: RE: madhuri
Date: Tue, 2 Jul 2013 10:53:29 -0500

**I added info:**

**Otherwise it will create lots of hardship for me.** I was doing a good job and they gave unfair ratings. There was a hostile and unprofessional environment(Dipti wrote unprofessional email on my fifth working day for no reason and through out later on she was hostile and unprofessional..reporting to manager such created more problems), managers and some leads treated me badly and where unfair. Like Greg S. yelling, being hostile , showing & using body language to use gun and then several time surfing on internet real guns from office desk (I saw that because I sat next to him) to threaten for no reasons(at that same time Milwaukee temple shooting happened and being Indian It was scary). I was doing a quality job there was a huge stress within teams and management due to backoffice falling apart issues and huge conflicts and stress in a project with GE Intelligent platforms ;which GEHC broke up after two years of working with them. Old tool had lots of defects and they wanted me to work on newer tool with keeping defects and I wnated to fix those. I have found out/investigated 30 incidents related to security, networking, missing operating system libraries, connectivity, incorrect tests written for production software, incomplete requirements, incorrect design and architecture which had performance issues and scalability problems. These incidents had varying severity from critical (stopping program for two months); product can potentially be hacked on medical devices where it was installed, to medium and low severity. I was doing my job and it was my expertise.

 All these shouldn't be considered.
It's like what can this poor girl do ; hence we will continue being unfair.

 **Immigration mentions support to woman in workforce if such things have taken place from low to critical severity and that can/have caused hardship to woman**. There is the a law if such things against women happened at workplace. That addresses such things.

Sincerely,Madhuri

---

From: madhuritrivedi@hotmail.com
To: adam.holton@ge.com; catherine.price@med.ge.com
CC: jschrager@fragomen.com; barbara.tremel@med.ge.com; madhuritrivedi@hotmail.com
Subject: RE: madhuri
Date: Tue, 2 Jul 2013 10:31:40 -0500

Jenny >> As you asked "I don't know what you are referring to when you indicate "I know there is something that company can do as there is no need to pay and it's fine." Kindly clarify. "
>> The employer may delay notification of the INS. The law does not place any deadline on an employer to inform the INS of termination of employment. Upto 60-90 days employers do help employees so to find new employment. May be it is a GE policy because of payment of wages. But can that be leave without pay or ..I mean it's mutual agreement between me and company..I can give in writing that I am waiving any payment of wages in the meantime etc. Even ADR response was worked on it makes sense to hold on H1 till the response is received.
Employer could give worker reasonable time to find a new petitioning employer.
**Otherwise it will create lots of hardship for me.** As I have mentioned in ADR that I was doing a good job and they gave unfair ratings that led to me loosing a job wrongfully.
**My first step for greencard has been completed. It is not portable; GE can support till it becomes portable so I can transfer that without loosing any benefits. In the meantime new immigration law will be in place. So GE can support for short time and then I can change the job if I need to.**
Also Adam, I sent out Solutions Form on 06/09. Ayesha was out whole week for a vacation. And then it was moved to next Friday hence two weeks just passed by with no progress. As a senior HRM you can relate how important timing wise it is to address. I did everything I could from my side.
**Immigration mentions support to woman in workforce if such things have taken place from low to critical severity and that can/have caused hardship to woman.**

Sincerely,Madhuri

---

From: madhuritrivedi@hotmail.com
To: adam.holton@ge.com; catherine.price@med.ge.com
CC: jschrager@fragomen.com; barbara.tremel@med.ge.com; madhuritrivedi@hotmail.com
Subject: RE: madhuri
Date: Tue, 2 Jul 2013 10:31:40 -0500

Jenny >> As you asked "I don't know what you are referring to when you indicate "I know there is something that company can do as there is no need to pay and it's fine." Kindly clarify. "
>> The employer may delay notification of the INS. The law does not place any deadline on an employer to inform the INS of termination of employment. Upto 60-90 days employers do help

employees so to find new employment. May be it is a GE policy because of payment of wages. But can that be leave without pay or ..I mean it's mutual agreement between me and company..I can give in writing that I am waiving any payment of wages in the meantime etc. Even ADR response was worked on it makes sense to hold on H1 till the response is received.

Employer could give worker reasonable time to find a new petitioning employer.

**Otherwise it will create lots of hardship for me.** As I have mentioned in ADR that I was doing a good job and they gave unfair ratings that led to me loosing a job wrongfully.

**My first step for greencard has been completed. It is not portable; GE can support till it becomes portable so I can transfer that without loosing any benefits. In the meantime new immigration law will be in place. So GE can support for short time and then I can change the job if I need to.**

Also Adam, I sent out Solutions Form on 06/09. Ayesha was out whole week for a vacation. And then it was moved to next Friday hence two weeks just passed by with no progress. As a senior HRM you can relate how important timing wise it is to address. I did everything I could from my side.

**Immigration mentions support to woman in workforce if such things have taken place from low to critical severity and that can/have caused hardship to woman.**

# EXHIBIT 18

## When Res Judicata doesn't apply

*Res judicata* does not restrict the appeals process,[7] which is considered a linear extension of the same lawsuit as the suit travels up (and back down) the appellate court ladder. Appeals are considered the appropriate manner by which to challenge a judgment rather than trying to start a new trial. TRIVEDI has never appealed arbitrator's award.

1.  Exceptions to *res judicata* that allow a party to attack the validity of the original judgment, even outside of appeals. These exceptions—usually called collateral attacks—are typically based on procedural or jurisdictional issues, based not on the wisdom of the earlier court's decision but its authority or on the competence of the earlier court to issue that decision. A collateral attack is more likely to be available (and to succeed) in judicial systems with multiple jurisdictions, such as under federal governments

2.  Res Judicata may be avoided if claimant was not afforded a full and fair opportunity to litigate the issue decided by a state court. He could file suit in a federal court to challenge the adequacy of the state's procedures. In that case the federal suit would be against the state and not against the defendant in the first suit.

https://www.law.cornell.edu/wex/res_judicata According, however, to Rule 41(b) of the **Federal Rules of Civil Procedure, the following are not claim preclusive and are not considered an adjudication "on the merits":**

>>>a lack of jurisdiction,

>>if the dismissal order does not state otherwise (i.e. a decision made "without prejudice" would not be claim preclusive")

For some claims jurisdiction of arbitrator is in question even as "covered claims" under GE's Solutions ADR manuals and also under Dep clause… also as Jan 2019 court rules that arbitrability of issues should by court and not by arbitration…arbitrator Peter MEYER never dismissed Trivedi's claims with PREJUDICE hence are not claim preclusive. **Arbitrator has not dismissed Trivedi's claim with PREJUDICE hence it is an EXCEPTION to Res Judicata.**

3.  **Federal Rules of Civil Procedure, the following are not claim preclusive and are not considered an adjudication "on the merits": >>>a lack of jurisdiction,**

Arbitrator Peter Meyers' jurisdiction can be addressed here:
*New Prime Inc. v. Oliveira, 139 S. Ct. 532 (2019).*The Court issued its decision on January 15, 2019. In a unanimous decision, the Court upheld the findings of the First Circuit, affirming that judgment of whether Section 1 **exceptions applied or not was a role for the courts and not arbitration,"**

[the "who decides" question. ]

**Delegation clause in arbitration is also presenting conflicts at various circuit level.**

4.  Source :---https://www.arbitrationnation.com/    >>>>New Prime suggests that there's a difference between contractual arbitrability – issues about flaws in the arbitration agreement, scope of the arbitration agreement, or procedural preconditions that need to be satisfied before the recourse to arbitration is appropriate – and subject matter limits on what can be arbitrated.

5.  For *res judicata* to be binding, several factors must be met: one of them is –

1

1    whether the parties were given full and fair opportunity to be heard on the issue.

2        6.   Alba v. Raytheon Co., 441 Mass. 836, 809 N.E.2d 516, 521 (Mass. 2004). The key issue
behind applying issue preclusion is "whether defendants 'received a full and fair
opportunity to litigate their claims'" in an earlier proceeding.

3

4        7.   Note that during my arbitration I didn't mention whole lot of case laws, common
laws, statutes, constitutional laws..as I do in this lawsuit because over period of five years I have read
and become more proficient in legal world compared to what **I was at arbitration..GE simply**

5   **stating that Public policy is precluded by prior arbitration award is meritless**…given that I
didn't mention whole lot of legal language and given that arbitrator was hostile, biased, fraudulent—

6   he had no intention nor incentive to address public policy violation in terms of at will employment
prohibition as well when I have stated tons of case laws as we do now….so

7

8        These changes in circumstances , pleadings with more legal language changes ---it applies
to all of the cause of actions in this lawsuit.

9

10        8.   **As stated in complaint due to continuous interruptions, insults and not
letting Trivedi proceed in arbitration hearing by asking questions to witness, by submitting**

11   **material evidence which arbitration didn't include into hearing evidence---and as she had lost
her immigration status ---any attorneys she would have HIRED or HIRED including Foley and**

12   **Mansfield, Mike Persoon had no to stand up against big company GE when she was at
disadvantage and hence withdrawal of H1 B itself is a PROOF** that she was obstructed and NOT

13   GIVEN full and fair opportunity to be heard on issue –arbitrator, GE had no incentive to do anything
lawful if my STATUS and STAY in country USA is jeopardies and have no immigration status.—

14   due process..

15        9.   In addition, in matters involving due process, cases that appear to be *res judicata*
may be re-litigated. **In this case immigration status, not able to extend H1 B , not able to litigate**

16   **case as she lost immigration benefits –Due process case applies to TRIVEDI--- plus doing a
private arbitration with GE declining to have public government arbitrator Peter Davis (Peter**

17   **after discussing with Trivedi mentioned to RULE in favour of Trivedi) as chosen arbitrator
because arbitration record becomes public and hearing was done in a private hotel conference**

18   **room –more of a Kangaroo court with no Jury….nor judicial review…as mentioned in
complaint for AAA and arbitrator it is a recurring revenue with company GE who paid**

19   **arbitration cost..By all means Trivedi was not given fair and full opportunity…Trivedi would
have Hired big law firm and spent lots of money if her Immigration H1 B visa would not have**

20   **been withdrawn and Trivedi was earning money..Incentive to do anything..also on second day
of hearing Trivedi left hearing and arbitration was done by GE and arbitrator alone so Ge said**

21   **whatever they wanted to say and Trivedi never filed post arbitration brief as well..**

22        10. Silva v. Smith's Pac. Shrimp (In re Silva), 190 B.R. 889 V. CONCLUSION
Because the issue of Silva's fraudulent conduct was not "actually litigated" in the prior federal court

23   judgment, the judgment is not entitled to collateral estoppel effect.  The phrase "actually litigated"
suggests that all parties to a dispute have been actively involved throughout the proceeding and have

24   presented evidence and advocated their positions.- As Trivedi was not present of second day of
hering due to arbitrator's abusive conduct and reasons stated ; Trivedi was actively involved

25   throughout the procedings , nor presented evidence due to not being present and due to arbitrator not
accepting evidence she presented into hearing documents as part of formal hearing evidence as

26

27   arbitrator declined to do so—aka Trivedi deposition, Bil barbiux deposition, modehine deposition..

28

       11. The lack of an appeal does not suddenly make the dismissal "on the merits" and

therefore subject the new suit to the barrier of res judicata. **Trivedi was not able to appeal arbitrator's award due to various reasons as stated including Foley & Mansfield not advising her & her lack of knowledge about appealing arbitrator award; hence can bring this lawsuit.**

12. **Cause of action(subject to fraud, which would enable the earlier decision to be set aside). Hence reclusion doesn't apply in Trivedi's case of arbitration full of fraud.**

13. there are certain exceptions to issue preclusion, such as when the issues are not identical because the prior litigation and subsequent litigation involve applications of different legal standards.

14. Whole Woman's Health v. Hellerstedt, 136 S. Ct. 2292 Court:  Supreme Court Date: June 27, 2016 -The Courts of Appeals have used similar rules to determine t he contours of a new claim for purposes of preclusion. See, e.g., Morgan v. Covington, 648 F. 3d 172, 178 (CA3 2011) "[R]es judicata does not bar claims [***26]  that are predicated on events that postdate the filing of the initial complaint");

**She was unable to obtain such extension because of the timing of her termination and not any alleged failure to file the PERM application. ---But knowingly GE and fragomen, jenny didn't file I 140 , despite mediator telling GE several times even in writing emails and Trivedi that GE put Trivedi on leave of absence with no pay/salary and just finish filing/processing I 140 by paying filing fees, submitting I 140 company documents'** i.e.GE's finances to government and total number of employees –it was about matter of TWO MONTHS of processing and keeping Trivedi either on paid leave or leave without pay whatever GE wanted as Trivedi requested. But GE was out of REVENGE to go after Trivedi, send a message –retaliation for all the protected activities she **was engaged in. Fragomen MTD page 7**

15. As the Supreme Court explained more than 50 years ago in  *Lawlor v. National Screen Service Corp.*, 349 U.S. 322 (1955), res judicata does not bar a suit, even if it involves the same course of wrongful conduct as alleged earlier, so long as the suit alleges new facts or a worsening of the earlier conditions.

16. In *Lawlor v. National Screen Service Corp.*, 349 U.S. 322 (1955), the Supreme Court unanimously reversed the application of res judicata where the lower court applied the same reasoning as the district court applied here. There, the plaintiffs brought an antitrust suit that was ultimately dismissed with prejudice. *Id.* at 324. **Seven years later, the plaintiffs brought a second antitrust suit against many of the same defendants, alleging the same course of wrongful conduct, which had worsened in the interim.** *Id.* at 328. The lower courts applied res judicata to bar the second suit. *Id.*

17. The Supreme Court reversed, explaining that even though "both suits involved essentially the same course of wrongful conduct," res judicata did not apply. *Id.* at 327

18. *Lawlor* retains its vitality to this day. *See, e.g., Darney v. Dragon Prods. Co., LLC*, 592 F. Supp. 2d 180 (D. Me. 2009) (applying *Lawlor* to deny application of res judicata **where second complaint included new factual allegations, even though there was "facial similarity" with the first complaint).**

19. *See Duncan v. Peck*, 752 F.2d 1135, 1139 (6th Cir. 1985) (applying Ohio res judicata principles and explaining that "a judgment in a former action does not bar a subsequent action where the cause of action prosecuted is not the same, even though each action relates to the same subject matter")

20. Moreover, there are certain exceptions to issue preclusion, such as when the issues are not identical because the prior litigation and subsequent litigation involve applications of different legal standards.

1
2
3

A judgment does not bar another action by the plaintiff:
(1) When exceptional circumstances justify relief from the res judicata effect of the judgment;
(2) When the judgment dismissed the first action without prejudice; or,
(3) When the judgment reserved the right of the plaintiff to bring another action.

4
5
6

21. Special circumstances – the Court may take into account special circumstances that permit a party to bring a second claim, for example: limitation or lack of finances

Issue estoppel when fresh evidence, change in law and fraud occured while cause of action estoppel when fraud occurred allow relitigation.

**Also new defendants foley & mansfield and fragomen added.**

7
8
9

New claims adds that Trivedi was retaliated based on her reporting that added to securities and exchange commission, SEC fraud , related cause of actions by Ge which Ge knew so they had planned mentally and executed by actions so obstruct, retaliate and send message—require separate new discovery, trial—not quitam claims & quitam based retaliation were part of arbitration which also require new separate discovery and proof

10
11
12

22. **FDA complaint Trivedi filed was pending as FDA said they won't give out information about their investigation…..FDA responded to FOIA in late 2016 as shown here..as per boykin-v-keycorp while administrative investigation was pending her filing of claims was tolled. Same for Trivedi's case as** per Solutions policy of GE:

Solution page 9

13
14
15
16
17
18
19
20

In order to submit Covered Claims to Level III and Level IV of Solutions, employees mhave submitted such claims to Level I (and the Company must have submitted to Levebefore the expiration of the applicable statutes of limitations and/or administrative agency filing deadlines for such Covered Claims. Where an employee files a CoveClaim with an administrative agency or in a court that has (or, absent Solutions, woulhave) jurisdiction over the Covered Claim before the expiration of the applicable limitations period, the Company agrees to stop the further running of the limitations period as to that Covered Claim while it is pending before resolution, or the agency process has been concluded. Where a party's initial submission of a Covered Claim to Solutions occurs before the expiration of the applicable statute of limitations for filing in court, the opposing party agrees to stop the further running of the statute of limitations while the parties compel the Solutions process. In the case of administrative agency filing deadlines, the Company agrees to request that the agency treat the running of filing deadlines as having been stopped.

21
22
23
24
25
26
27
28

4



# EXHIBIT 20

Subject: RE: Trivedi/GE Healthcare 11-15-2013 lh [QBLLP-ACTIVE.FID36842469]
From: sean.scullen@quarles.comTo: madhuritrivedDate: Wed, 27 Nov 2013 20:55:08
I don't understand your question -- in a mediation the mediator doesn't take sides and is a neutral that works with both parties to try to reach a voluntary resolution.  In some of the cases in which Mr. Gibbons has served as a mediator we have been successful in reaching such a resolution and in others we have not.  <mark>**You are correct that the WERC people are not mutually agreeable.**</mark>

<mark>**Sean Scullen**</mark>

From: Madhuri Trivedi  Sent: Wednesday, November 27, 2013 2:50 PMTo: Scullen, Sean (MKE x1421)Subject: RE: Trivedi/GE Healthcare 11-15-2013 lh [QBLLP-ACTIVE.FID36842469]

what about mediation that you worked with him on...**so Wis. Emp. relations people are not mutually agreeable between us..** Sincerely,Madhuri

From: sean.scullen@quarles.com To: madhuritrivedi

Subject: RE: Trivedi/GE Healthcare 11-15-2013 lh [QBLLP-ACTIVE.FID36842469]

Date: Wed, 27 Nov 2013 20:47:51 +0000

Mr. Gibbons has not served as an arbitrator in a case that I have handled or for GE as far as I am aware.  <mark>I'm not sure who the Wisconsin Employment Relations arbitrator you're referring to is, but we are not interested in using someone from that entity.</mark>

Sean Scullen
From: Madhuri Trivedi Sent: Friday, November 22, 2013 11:20 AMTo: AAA Carol PlacellaSubject: RE: Trivedi/GE Healthcare 11-15-2013
So we can have Peter Davis as arbitrator..If we can then I will contact Mr. Scullen. I wanted to reach out to you first. Sincerely,Madhuri



## EXHIBIT 21

## ADMINISTRATIVE REVIEW BOARD
## UNITED STATES DEPARTMENT OF LABOR

In the matter of

**Madhuri Trivedi**                    **ARB CASE NO. 2022-0026**
                                       **ALJ CASE NO:- 2022SOX00005**

**Complainant**

**v.**

**General electric, GE healthcare**

**Respondents**

### <u>REPLY BRIEF OF COMPLAINANT MADHURI TRIVEDI</u>

## Table of Contents

1   SEC.GOV FOIA confirmed that Trivedi's GE Healthcare complaint's investigation is active and ongoing by SEC enforcement division ................................................................. 3

2   Jim Kohli 35 years old veteran used to speak loudly that at GE – we have Walmart style resources at the price of Macy's – highly priced medical devices and shitty service..that's the point – not Trivedi , not being a team player. ................................................ 4

3........................................................................................................................................ 4

4   ALJ McGrath of OALJ, in Boston, cited Judge Kelley's R&R to dismiss OSHA SOX claim based on timeliness…..GE's recent opposition to Trivedi's rule 60 motion- GE wrote ............... 5

Exhibit 6 has GE's fraud culture............................................................................. 5

5   GE in ECF 169 at district court .................................................................... 6

6   Trivedi reply to GE's ARB Brief ................................................................. 6

7   Trivedi's lawsuit against GE alleged in complaint about attorney code of conduct Section 307 of SOX and recent statement by SEC.gov commissioner bout NEED to establish minimum standards for lawyers practicing before the Commission, instead of the "goal-directed reasoning" 9

8   Under Administrative Procedure Act  706 – court review under abuse of discretion , under De novo review, chevron review and Skidmore review – to review decision of administrative agency - Judges are subject to criminal prosecution (exhibit 4)................................................. 10

9   Contra non valentem = Tolling.......................................................................... 10

10   Fair opportunity legal argument…................................................................. 10

11      From first circuit filings -................................................................................. 11

12      President Biden, On March 3, 2022, signed the Ending Forced Arbitration of Sexual
Assault and Sexual Harassment Act of 2021 (" Act ") into law. ................................... 12

12.1    Supreme court has ruled on May 23, 2022 by vote of 9-0 – that "The federal policy is
about treating arbitration contracts like all others, not about fostering arbitration"................ 12

12.2    Corp Couns Gd to ADR Techniques § 2:93 –(Corporate Counsel's Guide to
Alternative Dispute Resolution Techniques)The arbitration award in the courts—Concerns
about the arbitrator—Arbitrator misconduct, (The general rule is that refusal by arbitrators to
hear pertinent and material evidence is sufficient misconduct to justify vacating an award.)
AND    12

13      Trivedi's arguments similar to Sylvester v. Paraxel ARB case – about company policy –
submitted in lawsuit complaint is trashed. ALJ McGrath – under bias, hatred – didn't read
anything.................................................................................................................... 13

14      CONCLUSION .......................................................................................... 14

15      EXHIBIT Listing ........................................................................................- 1 -

16      EXHIBIT 1 Jeff Goldman Immigration attorney, Trivedi didn't know she signed
arbitration agreement ...................................................................................................- 2 -

17      EXHIBIT 2 Cross law firm retainer.....................................................................- 5 -

18      EXHIBIT 3 Some GE history .............................................................................- 7 -

19      EXHIBIT 4 Judges are subject to criminal prosecution ........................................- 9 -

19.1    More than a century old case law- "Ex Parte Virginia, 100 U.S. 339 (1880)", supreme
court stated that judges are not immune from criminal prosecution.....................................- 10 -

19.2    Tort by judges, sadistic pleasure...........................................................................- 10 -

20      EXHIBIT 5 GE policies ....................................................................................- 11 -

21      EXHIBIT 6........................................................................................................- 17 -

21.1    Jack's Magic -- Part II (Dec. 26, 2005)  -GE earning management -Was the unit
blind-sided or was it straining to deliver the double-digit earnings growth Welch always
expected? Was anything illegal done?................................................................................- 17 -

21.2    Since 2002, GE has been subject of manufactured earning ...................................- 19 -

# 1   SEC.GOV FOIA confirmed that Trivedi's GE Healthcare complaint's investigation is active and ongoing by SEC enforcement division
## FOIA RESPONSE

**We have confirmed with Division of Enforcement staff that the investigation from which you seek records is still active and ongoing**

5 See OKC Corp. v. Williams, 489 F. Supp. 576 (N.D. Tex. 1980) (SEC is not required to disclose requested
materials directly tied to a pending investigation); Nat'l Pub. Radio v. Bell, 431 F. Supp. 509, 514-15 (D.D.C. 1977) (Congress intended that Exemption 7(A) would apply where disclosure may impede any necessary investigation prior to court proceedings); Robbins Tire, 437 U.S. at 232 (Congress intended that Exemption 7(A) would apply "whenever the Government's case in court ... would be harmed by the premature release of evidence or information."); Accuracy in Media, Inc. v. U.S. Secret Service, C.A. No. 97-2108, 1998 U.S. Dist. Lexis 5798 at 11 (D.D.C. April 16, 1998) (affirmation that there is an active and on-going investigation is enough); Marzen v. HHS, 632 F. Supp. 785, 805 (N.D. Ill. 1985) (concluding that Exemption 7(A) prohibits disclosure of law enforcement records when their release "would interfere with enforcement proceedings, pending, contemplated, or in the future"), aff'd, 825 F.2d 1148 (7th Cir. 1987).

**We have confirmed with Division of Enforcement staff that the documents you seek come within categories whose disclosure could be reasonably expected to cause harm to the ongoing and active enforcement proceedings because, a**mong other things, individuals and entities of interest in the underlying investigation could fabricate evidence, influence witness testimony and/or destroy or alter certain documents.7

Public release of the records sought could also hinder the ongoing investigation by revealing cooperating witnesses and exposing the scope of the underlying investigation.8

7 See Robbins Tire, at 232 (Congress intended that Exemption 7(A) would apply "whenever the Government's case in court ... would be harmed by the premature release of evidence or information.").

8 See, e.g., Shannahan v. IRS, 672 F.3d 1142, 1150 (9th Cir. 2012) (the use of Exemption 7(A) was proper where agency explained harm to ongoing investigation by showing that release could reveal identity of confidential informants and thus hinder other individuals from cooperating, violate terms of an international agreement, and expose scope of investigation); Citizens for Responsibility & Ethics in Wash. v. Nat'l Indian Gaming Comm'n, 467 F. Supp. 2d 40, 52 (D.D.C. 2006) (release of records regarding alleged misuse of tribal gaming revenues during investigation could allow targets to ascertain direction of investigations, to identify potential charges to be brought, and to expose state and nature of current investigations, thereby

undermining federal investigations); Suzhou Yuanda Enter. Co. v. Customs and Border Prot., 404 F. Supp. 2d 9, 14 (D.D.C. 2005) (release of information "would interfere with an agency investigation [by] informing the public of the evidence sought and scrutinized by this type of investigation"); Elec. Privacy Info. Ctr. v. DHS, 384 F. Supp. 2d 100, 119 (D.D.C. 2005) ("release of this information could undermine the effectiveness" of agency's investigation); Judicial Watch v. Dep't of Justice, 306 F. Supp. 2d 58, 75-76 (D.D.C. 2004) (release of documents during course of investigation could damage agency's ability to obtain information); Lynch v. Dep't of the Treasury, 210 F.3d 384, at *2 (9th Cir. 2000) (unpublished table decision) (agency declarations "made clear" that release of records could harm "efforts at corroborating witness statements . . . alert potential suspects . . . [and] interfere with surveillance"); Solar Sources, 142 F.3d at 1039 (disclosure could interfere by revealing "scope and nature" of investigation); Amnesty Int'l v. CIA, 728 F. Supp. 2d 479, 526-27 (S.D.N.Y. 2010) (disclosure of information in open investigations would reveal what individuals and activities were under investigation, what evidence had been collected, and compromise confidentiality of investigation; such disclosures were "'precisely the kind of interference that Congress . . . want[ed] to protect against'" (quoting Robbins Tire, at 247)).

**9** I further find that it is reasonably foreseeable that disclosure of the withheld records would harm interests protected by Exemption 7(A) because such a disclosure could compromise ongoing enforcement proceedings.

## 2    Jim Kohli 35 years old veteran used to speak loudly that at GE – we have Walmart style resources at the price of Macy's – highly priced medical devices and shitty service..that's the point – not Trivedi , not being a team player.

### 3

May be GE should ANSWER – like normal answering requirement under fed. Rule of Civ. Procedure – each and every paragraph – of Trivedi's OALJ objections and exhibits( 70 MB) = as well as ARB's opening brief –so we know how GE answers – instead of picking and choosing and- answering selectively, omitting, misleading and lying.

ALJ McGrath  nor GE, has presented real , true picture based on 70 MB filings that Trivedi did with OALJ objections in 2021, after OSHA dismissed her 2014 and 2021 complaint. Remember OSHA in 2021 – never addressed that as per OSHA manual – OSHA can't close complaint administratively- thinking that Trivedi won't read manual and won't find out.

On May 28, 2022, Trivedi filed MOTION for Relief from judge Saris's Order ADOPTING R&R, under Fed. R. Civ. P. 60 – ECF 167…( ALJ McGrath of OALJ, in Boston, cited Judge Kelley's golden R&R to dismiss OSHA SOX claim based on timeliness )

Corrupt GE attorneys have not mentioned ARB granting petition for review, in their district court's ECF 169 – filed on JUNE 13, 2022-opposition to Trivedi's rule 60 motion ECF 167…

While GE has filed their response brief with ARB on JUNE 15, 2022 (two days after filing opposition in district court)--- thus as usual GE attorneys swallowed MATERIAL FACT in their ECF 169 in district court,  and omitted critical information ,AND as seen during court of this LITIGATION, ALJ MCGrath has turned BLIND to GE attorneys' PERJURY… are fine with GE's omission, misleading, perjury …that's why I have valid FTCA and Bivens claims against ALJ McGrath; he also corruptly DENIED LIMITED DISCOVERY to answer to his order to show cause for timeliness-

 Also in ARB response brief , filed with ARB on June 15, 2022- GE attorneys have not mentioned anything about Trivedi's district court rule 60 motion ECF 167 –ommission, partial information given  to ARB judges – and similar way done during arbitration , at district court, at first circuit and with ALJ McGrath..ALJ Mcgrath erred to not look into this – it is attorney misconduct. But ALJ himsef is corrupt  - so now there is competition – who is worst in terms of corruption- GE, GE attorneys, OSHA people, ALJ McGrath?  Judges rely on this half presented facts and picture by GE attorney and think that Triveid is Pro Se…don't see that GE is sitting on verge of getting bankrupt..

## 4   ALJ McGrath of OALJ, in Boston, cited Judge Kelley's R&R to dismiss OSHA SOX claim based on timeliness…..GE's recent opposition to Trivedi's rule 60 motion- GE wrote

**Exhibit 6 has GE's fraud culture.**
Case 1:19-cv-11862-PBS Document 169 Filed 06/13/22 Page 10 of 17

**A. No Basis Exists for Vacating the Dismissal of Ms. Trivedi's Sarbanes-Oxley Act Whistleblower Retaliation Claim (Count 3).**

Among Ms. Trivedi's oft-revisited protestations is that OSHA somehow mishandled her complaint *after* it was belatedly filed on May 3, 2014. (*See, e.g.*, ECF No. 167 at 28-29; ECF No. 105 at 27; ECF No. 143 at 33, 48 (attacking OSHA investigators)). Even if true, that would in no way make her OSHA complaint timely. Moreover, contrary to what Ms. Trivedi now asserts, count 3 cannot be

salvaged due to her mistakenly raising perceived whistleblowing retaliation grievances with a wrong agency, the FDA, on December 13, 2013. (*See, e.g.*, ECF No. 167 at 35, 37-39). Any such outreach was equally untimely, as it occurred 196 days after the termination of Ms. Trivedi's employment. Ergo, even assuming some form of relation-back or tolling was appropriate, the claim would still be time-barred. This Court should deny Ms. Trivedi's motion to vacate the dismissal as to count 3.

**ANSWER:-**In district court GE wrote --Page 10 Any such outreach was equally untimely, as it occurred 196 days after the termination of Ms. Trivedi's employment. Ergo, even assuming some form of relation-back or tolling was appropriate, the claim would still be time-barred. This Court should deny Ms. Trivedi's motion to vacate the dismissal as to count 3.

GE has done huge fraud, risked patient data, and diagnosis – while instead of 180 days – filing 196 days – does not meet tolling requirement? Shouldn't GE people be jailed for at least one year.

## 5   GE in ECF 169 at district court

**GE wrote -**(*See, e.g.*, ECF No. 143 at 13-14 (arguing in objections that "since GE kept selling highly defective medical devices years after I left GE—I am still within [the] time limitations to file False [C]laims [A]ct claims"). While closer dissection of an "ongoing fraud" allegation could be part of analyzing a *qui tam* claim.

So GE as in GE's June 13, 2022 court filings- have ADMITTED TO BE ENGAGED in ONGOING FRAUD – and /or have not denied that GE was not doing ONGOING FRAUD. Shouldn't OSHA, ALJ, GE people be arrested. Police can also issue arrest warrant.

## 6   Trivedi reply to GE's ARB Brief

1)  **GE response to ARB –** page 2 - Ms. Trivedi had previously contacted OSHA on May 3, 2014 to lodge allegations against GE but—for many years—she chose not to challenge the agency's decision to not take any action.

**ANSWER:-**This statement is misleading – OSHA in 2014 – didn't even docket the case- nor gave Trivedi right to appeal to ALJ – and "ADMINISTRATIVELY CLOSED" her complaint. GE has swallowed Trivedi's evidence that as per OSHA manual – OSHA can't administratively close – complaint under SOX even if it is filed untimely – even if it does not meet prima facie requirement…

Also whole Sylvester v. Parexel argument about gGCP –good clinical practice and GE's GMP – good manufacturing practice – has been ILLEGALLY trashed by OSHA investigators in 2014, 2021 including Daniel Koh, Frederick James, Anthony Rosa..ALJ McGrath.. GE attorneys haven't

GE people and GE attorneys should be shackled in chain and jailed for at least one year

2)  **ARB Page 2**- "By August 2013, Ms. Trivedi was apparently represented by at least two different law firms in connection with her employment law concerns."

6

**ANSWER:-**One law firm Cross law firm retainer (**EXHIBIT 1& 2, 7**) – Cross law wrote that they will not advise Trivedi for filing any complaint to any agency, nor represent Trivedi in arbitration.. Trivedi has mentioned this under penalty of perjury – in OSHA complaint in 2021, in OALJ objection in 2021 – in petition for review with ARB( for which GE replied- but misleading again ARB by stating this – and ARB might think that Trivedi is Pro Se – while these are attorneys – please don't do so – these attorneys must be shackled in chain and jailed. Aiding and abetting fraud—Another attorney was immigration attorney.

3) **GE ARB response page 10** – GE has not mentioned that Trivedi contracted Midwest OSHA in June 2021 – and Daniel Koh in July 2, 2021…and OFCCP in January 2022- Alexandria contacted OFCCP in 2020.

4) **GE ARB response Page 10 -** "ALJ methodically read and analyzed" her transmissions. (GE App'x 18).

**ANSWER:-** If ALJ McGrath would have read filings – and dol.gov's own investigation manual – then he would have found out that OSHA erred in closing it administratively –In email sent to FTCA people at DOL.gov - I have signed statement that under penalty of perjury – this was the material , complaint submitted to 2014 OSHA complaint….OSHA 2014 complaint had enough to docket under SOX.

5) **GE ARB response page 5-** "It thus appears that, as she began running out of other litigation options, Ms. Trivedi returned to OSHA." ..Despite I wrote that because Alexandria Horne OSHA SOX case – I came back…shouldn't GE attorney s be arrested.

6) **GE ARB response Page 7 –wrong forum and specific SOX claims**
**ANSWER:-**Trivedi's October 2013 complaint to DHS and December 2013( and subsequent emails, as well as phone calls)--contained FDA's GCP_ including CFR – actual US statutes –as Trivedi submitted to DHS and FDA, both  Trivedi's arbitration statement  - It included statements from Triveid such as termination, retaliation…and
21 CFR 820 part 1
21 CFR 820.250 Statistical Techniques
21 CFR 820.90 Nonconforming Product
Trivedi also wrote in arbitration statement submitted to DHS and FDA – about fraud and conspiracy by GE to continue release defective, cybersecurity vulnerabilities , hackable Insite agents on medical devices…GE attorneys have misled ARB as usual and should be arrested. And shackled in chain.

7) **GE ARB page 5-**"And no matter what purported atrocities Ms. Trivedi might *think* GE committed—as an established matter of law, they should not resuscitate her untimely complaint"

**ANSWER:-**GE has omitted GCP and GMP totally – it was OSHA's corruption..good manufactuing practice under SOX OSHA.

8) **GE ARB brief -Page 8 Footnote 4 continuing violation doctrine  -**
**ANSWER:-**Trivedi has presented pattern & practice claim – ranging from Trivedi to Alexandria Horne ( she filed SOX OSHA claim – and her case is pending), to Robert Kucera – all whistleblowers..AND OFCCP (**page 106 of Trivedi's ARB brief  )**

**7B00 Continuing Violation**
**https://www.dol.gov/agencies/ofccp/manual/fccm/7b-timeliness-and-continuing-violation/7b00-continuing-violation**

The courts developed the continuing violation concept to address the fact that some employment practices are not discrete incidents, beginning and ending at particular points in time. For example, a policy or practice of paying lower wages to women rather than to men for the same or similar work is discriminatory and the contractor repeats the violation each time the contractor pays the women. When evaluating such violations, the courts will consider the entire time period during which the violations occurred or the time period since the effective date of the law, whichever is later. For example, a continuing violation which is grounded in racial discrimination is actionable from the date the continuing practice began or the effective date of Executive Order 11246 (September 1965), whichever is later. This is provided, of course, that the other requirements of coverage are met.

In compensation cases, contractors will be in violation of Executive Order 11246 any time they pay wages, benefits or other compensation that result, in whole or in part, from application of any discriminatory decision or practice.

2. *Maintenance of a Discriminatory Policy or System*. A continuing violation may occur when a contractor maintains a discriminatory policy or practice into the two-year, 180-day period or 300-day period. The violation may focus on one particular employment practice, such as promotions or compensation; or it may deal with discrimination in a series of areas, including initial placement, promotions, transfers and salary. It is not necessary under this approach for OFCCP to show that a discrete act applying the alleged discriminatory policy occurred during the two-year period, 180-day period or 300-day period. It is sufficient to show that the policy or system continued into the period and that, if there had been a personnel action, the policy or system would have been applied in the alleged discriminatory manner.

**Trivedi's ARB brief – page 44**

"Under a continuing violation theory, a new claimaccrues each day the violation is extant. *Interamericas Investments*, *Ltd*. *v*. *Bd*. *of Governors of the Fed*. *Reserve Sys*., 111 F.3d 376, 382 (5th Cir. 1997)(citing *Hanover Shoe*, *Inc*. *v*. *United Shoe Machinery Corp*., 392 U.S. 481, 502 n.15 (1968)). A continuing violation applies where the conduct is ongoing, rather than a single event. *Id*. When a claim constitutes a continuing violation, the limitations period begins to run at the end of the violation. *Dews v*. *Town of Sunnyvale*, 109 F. Supp. 2d 526, 563 (N.D. Tex. 2000)."

9)  ARBITRATION hearing was held on **May 8, 9 2014** <mark>EXHIBIT 8 & 9)</mark>—and Trivedi filed OSHA complaint on May 3, 2014 – after Trivedi's termination , Trivedi was working on mediation, arbitration, and filed EB1 extra ordinary ability petition with USCIS, DHS on April 2014. While GE attorneys are pointing that Trivedi was not exercising due diligence.

10) GE didn't say that while ALJ never granted Trivedi's motion for discovery and motion for stay pending discovery to answer ALJ McGrath order to show cause. ALJ McGrath was/is literally torturing, harassing, abusing – he was intentionally inflicting torture – thinking that what would Trivedi do- so did entire OSHA food chain and Daniel koh trashing Trivedi's thousands of pages of OALJ filing -––

**11)** I have already wrote – that in 2014 Tamara- on phone threatened Trivedi for immigration. Read everything 70 MB of OALJ filings please…

## 7   Trivedi's lawsuit against GE alleged in complaint about attorney code of conduct Section 307 of SOX and recent statement by SEC.gov commissioner bout NEED to establish minimum standards for lawyers practicing before the Commission, instead of the "goal-directed reasoning"

---

**ECF 51** Page 88

17 CFR § 205 and (15 U.S.C. 7245) Case 3:15-cv-02356-JCS Document 132 SEC  amicus brief on attorney code of conduct Section **307 of** the Sarbanes-Oxley Act of 2002 (the "Act") (15 U.S.C. 7245)

**It was GE counsel's legal duty to report SEC violations but Sean Scullen-quarles and Bradley, Neil and all others teamed up to cover-they should not be practicing law anymore.**

---

## ✓ SEC Commissioner's recent statement  (EXHIBIT 10)

https://www.sec.gov/news/speech/lee-remarks-pli-corporate-governance-030422

https://www.jdsupra.com/legalnews/sec-commissioner-signals-need-to-2553725/

"She stated that, 20 years after its enactment, it is time to revisit the "unfulfilled mandate" of Section 307 of the Sarbanes-Oxley Act of 2002 and establish minimum standards for lawyers practicing before the Commission.  …. she called the "goal-directed reasoning" of some securities lawyers—that is, focusing primarily on the outcome sought by executives, rather than the impact on investors and the market as a whole.  Such lawyering, Commissioner Lee observed, has a host of negative consequences, including encouraging non-disclosure of material information, harming investors and market integrity, and stymying deterrence.  The solution, Commissioner Lee opined, is to fulfill the mandate of Section 307, which empowered the Commission to "issue rules, in the public interest and for the protection of investors, setting forth minimum standards of professional conduct for attorneys appearing and practicing before the Commission in any way in the representation of issuers."

✓ **Point here of Trivedi is- defense attorneys behaving this way to SEC.gov= then as Trivedi has complained about GE attorneys misconduct. Well, GE attorneys misconduct is criminal and is aiding and abetting.**

# 8  Under Administrative Procedure Act  706 – court review under abuse of discretion , under De novo review, chevron review and Skidmore review – to review decision of administrative agency - Judges are subject to criminal prosecution (exhibit 4)

Various other standard – finding and decision of administrative agency – and does not take judicial notice- which judge Kelley did – by citing OSHA 2014 –dismissal letter – ALJ McGrath was , by law required to review 2014 and 2021 OSHA complaint under SOX – on his own – and it is illegal for ALJ McGrath to cite judge Kelley's R&R..when neither at OSHA in 2014 & 2021 - when OSHA asked GE's response--..and neither at district court any hearing, discovery, or even reading pleading without corruption happened…ALL judges , GE deserve jail.

**I thought judge Kelley would review entire OSHA record FRESH – that's what courts are supposed to do- and that's why De novo review, chevron review and Skidmore review – exist –** to review decision of administrative agency--and – none of that happened – GE and judge used OSHA 2014 dismissal as weapon – and As I already wrote – Alexandria Horne also filed OSHA SOX complaint with OSHA Midwest – so after her OSHA complaint- I came back to OSHA again..all this is written in OSHA 2021 and OALJ filings- OSHA investigator in 2021 nor ALJ McGrath read it..and now egregious GE attorneys are misleading ARB without perjury and false facts, statement

# 9  Contra non valentem = Tolling

Tunstall v. Daigle, Civil Action 20-2773-JVM, at *14 (E.D. La. Aug. 10, 2021) ("Contra non valentem prevents the running of the prescriptive period in four situations:      (4) where the cause of action is neither known nor reasonably knowable by the plaintiff. ")

# 10  Fair opportunity legal argument…..

**How come district court cite OSHA 2014 ( when in 2014 Trivedi didn't get full and fair opportunity  to litigate- there were no statement from GE, witnesses, discovery, hearing – OSHA complaint was not even docketed) and in CIRCLE ALJ cite district court .**

Full and Fair Opportunity to Litigate-OSHA never asked GE's statement, nor conducted discovery, hearing, calling witness, nor a well-reasoned opinion…it was just corrupt investigator like judge Kelley -- – Trivedi filed her complaint on May 3, 2014 – on June 6, 2014 – OSHA closed her complaint and sent administratively closed letter on July 2014… but OSHA investigator manual itself says that Complaint may not be closed administratively under SOX – unless complainant withdraws –in Trivedi's case – Trivedi didn't withdraw. OSHA violated their own manual rules – thinking that Trivedi won't find out and they can continue do this.

Trivedi's contact with USCIS and FDA were  the "precise statutory claim in issue" filed in the wrong forum to justify tolling either the SOX 180-day filing deadlines." ) (**18 U.S.C. § 1514A(b)2(D); 29 C.F.R. § 1980.103(d)**)—but as per OSHA investigator manual above ; it says

complaint filed under SOX may not be closed administratively….even though complaint I untimely or doesn't present prima facie case…

**Isn't this Corrupt and OXYMORON ?**

Feldman-Boland v. Stanley, 15cv6698, at *7-8 (S.D.N.Y. July 13, 2016) ("B. Full and Fair Opportunity to Litigate Even if there were an identity of issues, Plaintiffs did not have a full and fair opportunity to litigate the issue before the NYCCHR. In Kosakow, the court reviewed the SDHR procedures and noted that "there was no record of any discovery being conducted, nor is there any record of any interviews of witnesses [nor a hearing.] It appears that the no-probable cause determination was based primarily, if not exclusively, upon a review of the papers submitted." Kosakow, 274 F.3d at 734-36. Accordingly, the court concluded that "the issue of whether Kosakow was terminated for legitimate business reasons was not 'adequately tested' or 'fully aired' at the DHR proceeding." Kosakow, 274 F.3d at 736 ("By contrast, in Tice, the Third Circuit concluded that there was a full and fair opportunity to litigate where "[t]he prior administrative proceeding was of a judicial nature, consisting of full discovery, testimony under oath by witnesses, cross-examination of witnesses, oral arguments and briefs presented by competing sides, and a reasoned opinion written by an administrative law judge." Tice, 325 F. App'x at 117 (quoting Tice v. Bristol-Myers Squibb Co., 515 F. Supp. 2d 580, 600 (W.D. Pa. 2007)). ")[NONE OF THAT HAPPENED in TRIVEDI' case – despite ALJ took note of district court case– it was dismissed- Judge should be arrested for doing this and spend one year in jail.

## 11  From first circuit filings -

*A court always has jurisdiction to determine its own jurisdiction, The Third Circuit found that the cited cases were "all merely 'drive-by jurisdictional rulings' that easily 'miss the critical differences between true jurisdictional conditions and nonjurisdictional limitations on causes of action.'* **Muchnick, 559 U.S. at 161**

> **ECF 51 page 186** Once Madhuri realized amount of defects and performance/maintenance issues  Insite Exc was having which was violation of FDA rule, quality code, HIPPA and HITECH violations and risk to public health and safety –patient data; it was a fraud and conspiracy to continue release/ integrate those Insite Exc agents on products like Surgery OEC

## 12  President Biden, On March 3, 2022, signed the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 (" Act ") into law.

Though for OSHA SOX claim – it does not matter. But OSHA investigator and OSHA agency (via fax) had my arbitration statement filed with AAA on November 5, 2013. GE has cited arbitration in ARB brief page 7 – and recent development shows that Trivedi's arbitration – conflicts with policy not to favor arbitration and judge in other case also applying new bill signed by president Biden RETROACTIVELY>

Judge Kelley in ECF 135 has USED word "Arbitration" 10 times… arbitrator -4 times, arbitrator's -3 times….taking arbitration processing and arbitrator ruling as carved into STONE, holy and eleventh commandment…

### 12.1  Supreme court has ruled on May 23, 2022 by vote of 9-0 – that "The federal policy is about treating arbitration contracts like all others, not about fostering arbitration"

It is start of a good turning point from the highest court – where for years and for 1000s of case; Employers have took advantage of employees by forcing arbitration. In Trivedi's case-she didn't even know that she has signed arbitration contact…When Mr. Goldman from Cambridge, MA- immigration attorney sent a letter in 2013 to GEHC services CEO- then GE labor attorney replied that Trivedi has signed forced arbitration contracts – Courts and judges are HIGHLY CORRUPT too, as Trivedi's case shows evidence of their corruption. Though Morgan case is about prejudice and waiver; but it is still a beacon of light from higher court ( In DHS lawsuit, Trivedi has asked ONE CERTIORARI QUESTION about FORCED ARBITRATION) that this first circuit en banc to look at Trivedi's WHOLE arbitration mess.

*Morgan v. Sundance, Inc.*, No. 21-328, at *1 (May 23, 2022) **("Accordingly, a court must hold a party to its arbitration contract just as the court would to any other kind.** But a court may not devise novel rules to favor arbitration over litigation. See *Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 218-221. The federal policy is about treating arbitration contracts like all others, not about fostering arbitration. ")

MCI Telecommunications Corp. v. Exalon Indus., Inc.,138 F.3d 426(1st Cir. 1998) Arbitration agreements can be enforced as with other contracts, but not more so.

*Morgan v. Sundance, Inc.*, No. 21-328, at *2-3 (May 23, 2022) ("We granted certiorari to decide whether the FAA authorizes federal courts to create such an arbitration-specific procedural rule. We hold it does not.")

### 12.2  Corp Couns Gd to ADR Techniques § 2:93 –(Corporate Counsel's Guide to Alternative Dispute Resolution Techniques)The arbitration award in the

**courts—Concerns about the arbitrator—Arbitrator misconduct, (The general rule is that refusal by arbitrators to hear pertinent and material evidence is sufficient misconduct to justify vacating an award.) AND**

– as Trivedi already filed in District of Massachusetts and first circuit court filings 10 times, that- **arbitrator didn't include deposition of Madhuri Trivedi and GE architect Bill Barbiuax into EVIDENCE as hearing; along with other material. Arbitrator also didn't enter into evidence exhibit 57– futility of stack ranking (details about it &NYTIMES author book below) Enough to grant en banc & put all in jail.**

(A fair hearing involves notice, an opportunity to present relevant and material evidence and the arbitrators were not infected with bias.)… Hearing transcript that PROVES that depositions were not entered; has already been part of first circuit and district of Massachusetts court record. But none of the judges CARES>>>this is bullying, bias, and intentional harassment where JUDGES OMISSIONS, **Overlook, IGNORE, not mention – crucial evidence that would lead to denial of GE's motion to dismiss. That's why these judges should be in jail. Because they** are intentionally being corrupt- thinking that there is NO ONE ABOVE THEM…

**As GE choose private arbitrator** mentioning that public arbitrator Peter David from Wisconsin Workforce development who works for government hence arbitration record will become public so GE doesn't want Peter Davis to be an arbitrator and choose a PRIVATE ARBITRATOR…Email from GE attorney Sean Scullen CONFIRMING that GE won't allow public arbitrator is already part of this courts' case RECORD –but who cares..

## 13  Trivedi's arguments similar to Sylvester v. Paraxel ARB case – about company policy – submitted in lawsuit complaint is trashed. ALJ McGrath – under bias, hatred – didn't read anything

Below is screenshot Trivedi signed before joining GE – GE policies ( this was the same letter in which, forced arbitration was stated) – and by law was required to report violations…That's why I wrote to bring criminal charges against ALJ.

> 2. I acknowledge that I have received the guide to GE policies, *The Spirit & The Letter*. I will sign and return the acknowledgment form, or complete such other process as determined by my business, constituting my acknowledgment of receipt of that guide and my personal commitment to comply with the policies described in that guide. When I have a concern about a possible violation of GE policy, I will report the concern to a manager, a compliance resource within my business, Company legal counsel, an ombudsperson or another contact listed in the guide.

**FROM ECF 51- copied here.as EXHIBIT 5**

1. GE is required by SEC rule to include code of business conduct and ethics

including in its Annual report form. And comply with it. **17 CFR § 229.406 -Code of ethics.**

2. **GE's breach of an anti-retaliation policy in a Code of Ethics give rise to a**

**breach of contract claim.** *Federal district court held that an employer's anti-retaliation policy created* [1] *legally enforceable rights.*

## 14  CONCLUSION

ARB to reverse ALJ's corrupt dismissal, make Trivedi whole again. This whole fight is insane. As GE attorneys are fighting, doing perjury – FDA has issued ( Note- I have presented details about remote connectivity platform for ventilator Carespace series in my ARB opening brief – this issue is related to batteries – but point is quality- GE is sending attorneys to court, agencies – to lie – why doing shitty product/service development) and retaliating.

**U.S. FDA classifies recall of GE's ventilator batteries as most serious. (June 28, 2022)**

https://www.msn.com/en-us/money/companies/us-fda-classifies-recall-of-ges-ventilator-batteries-as-most-serious/ar-AAYXMnZ?fromMaestro=true

(Reuters) - U.S. health regulators on Tuesday classified the recall of some backup batteries of GE Healthcare's ventilators, which the company had initiated in mid-April, as the most serious type, saying that their use could lead to injuries or death.

The CARESCAPE R860 ventilator's backup batteries, including replacement backup batteries, were recalled as they were running out earlier-than-expected, which could cause the device to shut down preventing the patient from receiving breathing support, the U.S. Food and Drug Administration said.

**NOTE- At the end of this brief – as EXHIBIT 11 – I have attached OALJ objections by Trivedi filed on September 2021( some duplicate files are removed)— There are so many files on EFS system at DOL ..this would be better to have everything in one PDF.**

---

[1] https://www.zuckermanlaw.com/code-of-ethics-whistleblower-protection-lawyer/

Respectfully Submitted,
Madhuri Trivedi
/s/Madhuri Trivedi
Phone: (650) 242-5135
Email: orangeinc@protonmail.com

➢ **World summit on innovation and Entrepreneurship** – THE WSIE summit speaker invite– Great presenter 2019 - https://thewsie.com/presenters-2019/

➢ **My cybersecurity whistleblower profile on whistleblowers.org**

https://www.whistleblowers.org/whistleblowers/madhuri-trivedi/

➢ **Linkedin:** - linkedin.com/in/trivedim

# Certificate of service

The filing of this document through EFS will constitute filing of document on those registered parties.

## 15 EXHIBIT Listing

| | | |
|---|---|---|
| 1 AND 7 | Jeff Goldman -Immigration attorney from Cambridge, MA.. His letter to GE CEO..GE attorneys wrote that Trivedi had two law firms in August 2013 & no one advised Trivedi about OSHA – referring to Mr. Goldman. But Mr. Goldman was immigration attorney- This argument has been presented 6 times before –despite GE attorneys, OSHA and ALJ refer to two law firms. All should be arrested immediately. | 2 |
| 2 | Cross Law firm retainer in August 2013; stating that law firm will not represent Trivedi in arbitration (law firm will represent ONLY for Mediation). And also, law firm has not agreed to file any complaint with any agency or court. Trivedi has presented this argument 6 times – and OSHA, ALJ , GE continuously harassing Trivedi –despite Trivedi wrote about retainer. Thus Triveid has valid, solid TORT claism against ALJ, OSHA and all including GE should be in jail for misleading and more | |
| 3 | Some GE history | |
| 4 | Judges are subject to criminal prosecution | |
| 5 | Trivedi district court complaint – GE policies violations | |
| 6 | GE fraud culture | |
| 8 | Arbitration hearing | |
| 9 | Arbitration hearing | |
| 10 | SEC commissioner Lee- attorney conduct[And it wasn't just during the Enron era that we saw lapses in the gatekeeping role] | |
| 11 | Trivedi OALJ objections, September 2021 | |

## 16 EXHIBIT 1 Jeff Goldman Immigration attorney, Trivedi didn't know she signed arbitration agreement

**From:** Jeff Goldman [mailto:Jeff@jeffgoldmanimmigration.com]
**Sent:** Friday, August 16, 2013 9:43 AM
**To:** Madhuri Trivedi (madhuritrivedi@hotmail.com)
**Subject:** FW: Madhuri Trivedi

Hi Madhuri, I was out of the office for two days and I am just seeing this email response from GE Healthcare. As we discussed from the beginning, I am certain that this case is beyond my ability to help—it is filled with employment law issues and I am not an employment law attorney. I really must insist that you retain employment counsel. The lawyer in Milwaukee with whom I spoke offered to speak to you if you call him. I have never worked with him and I know nothing about him, but his website seems to show he is very accomplished at representing employees in disputes with employers. His name is Alan Olson:
http://www.employee-advocates.com/

As I cannot assist with this matter, I am going to close my file and want to make it clear that I will not be representing you further.

Sincerely,

Jeff Goldman

Jeff Goldman, Esq.
Law Offices of Jeff Goldman LLP
Cambridge Innovation Center
One Broadway (Kendall Square)
Cambridge, MA 02142
    All correspondence goes to:
125 Washington Street, Suite 204
Salem, MA 01970
TEL:      (978) 219-5040
DIRECT: (978) 219-5055
FAX:      (617) 977-0928
www.jeffgoldmanimmigration.com

**From:** Stekloff, Neil (GE Healthcare) [mailto:Neil.Stekloff@ge.com]
**Sent:** Wednesday, August 14, 2013 11:51 AM
**To:** Jeff Goldman
**Subject:** RE: Madhuri Trivedi

**CONFIDENTIAL – FOR SETTLEMENT PURPOSES ONLY**

Mr. Goldman:
I am in receipt of your letter to Mike Swinford regarding Madhuri Trivedi. As I suspect you are aware given that I was cc'd on your e-mail, I am labor & employment counsel for GE Healthcare. You can direct all further correspondence regarding this matter to me.

Ms. Trivedi's factual allegations regarding her termination are completely unfounded. This is a rather straightforward performance management case. Ms. Trivedi was put on notice after her first several months on the job that she was having significant performance issues. These issues were brought to her attention by multiple managers, documented in writing, and resulted in a formal Performance Improvement Plan (PIP). Rather than make a legitimate effort to meet the requirements of the PIP, Ms. Trivedi initially refused to attend the PIP meetings altogether – and, when she did later attend, she spent more time disputing the requirements than attempting to meet them. Ms. Trivedi was ultimately terminated after she did not pass the PIP. She certainly has the right to disagree with the Company's assessment of her performance, but there is nothing unlawful about that.

Ms. Trivedi's allegation that she was somehow retaliated against for raising problems with the software she was working on does not make any sense. It was her job as a software engineer to identify and resolve these problems in a test environment, before the software went into production. Everybody knew this, and thus there is no reason she would be "punished" for raising issues she was being called upon to resolve. I would also add that Ms. Trivedi's allegations of discrimination and retaliation were raised to the GEHC Ombudsperson before she left, investigated by an independent HR Manager from another GEHC business, and determined to be unfounded. Once again, this boils down to a disagreement about performance between a short-serving employee and the Company.

For these reasons, we are not willing to reinstate Ms. Trivedi. I also must point out that Ms. Trivedi agreed, as a condition of employment, to GE's alternative dispute resolution (ADR) process, called Solutions. See her signed Solutions acknowledgment, attached, which requires binding arbitration as its last step (Level IV). The step before arbitration, Level III, is non-binding mediation before a neutral mediator – which GE pays for. Ms. Trivedi already has pursued her Solutions claim through Level II (let me know if she has not provided you with her Solutions submission and the Company's response and I will do so; I also can send you the full Solutions policy if she hasn't provided it). Thus, mediation of Ms. Trivedi's claims via the Solutions process is the next step before Ms. Trivedi may pursue arbitration. We have repeatedly advised Ms. Trivedi of this.

I hope this information assists you in discussing this matter with Ms. Trivedi, and I am happy to discuss with you further at your convenience. My complete contact information is below.

Neil Stekloff
**Neil B. Stekloff**
Senior Counsel, Labor & Employment
GE Healthcare
9900 W. Innovation Drive
NOTE NEW MAIL STOP:  RP-2169
Wauwatosa, WI  53226
T:  414.721.2297
F:  414.918.8899
C:  414.379.5762

D:  *805-2297
Neil.Stekloff@ge.com

**NOTE:**  The information in this message is confidential and may be legally privileged.  It is intended solely for the addressee.  Access to this message by anyone else is unauthorized.  If you are not the intended recipient, any disclosure, copying or distribution of the message, or any action or omission taken by you in reliance on it, is prohibited and may be unlawful.  Please immediately contact the sender if you have received this message in error.  Thank you.

**From:** Jeff Goldman [mailto:Jeff@jeffgoldmanimmigration.com]
**Sent:** Monday, August 12, 2013 12:18 PM
**To:** Swinford, Michael J (GE Healthcare)
**Cc:** Elario, David (GE Healthcare); Stekloff, Neil (GE Healthcare)
**Subject:** Madhuri Trivedi

Mr. Swinford, please see the attached demand letter regarding your former employee Ms. Madhuri Trivedi.  The same letter is being sent by overnight mail as well.   We look forward to a prompt response.

Sincerely,

Jeff Goldman

Jeff Goldman, Esq.
Law Offices of Jeff Goldman LLP
Cambridge Innovation Center
One Broadway (Kendall Square)
Cambridge, MA 02142
 All correspondence goes to:
125 Washington Street, Suite 204
Salem, MA 01970
TEL:      (978) 219-5040
DIRECT: (978) 219-5055
FAX:      (617) 977-0928
www.jeffgoldmanimmigration.com

## 17  EXHIBIT 2 Cross law firm retainer



**CROSS LAW FIRM, S.C.**

**CROSS LAW FIRM, S.C.**

505 Arcadian Ave
Waukesha, WI 53186
262-548-0001

**Satellite Offices:**

215 Grand Avenue
Wausau, WI 54403
715-849-5200

111 East Wacker Suite 2600
Chicago, IL 60601

August 20, 2013

**RE:**  **Legal Representation**

Dear Ms. Trivedi:

Thank you for choosing Cross Law Firm. It was a sincere pleasure meeting with you in Waukesha this morning, and I look forward to working with you to achieve your goals. During our consultation, we discussed generally your employment with GE Healthcare. Specifically, we discussed the fact that you believe you were unjustly terminated after your extraordinary performance resulted in the detection of issues

At the end of our initial consultation, Cross Law Firm agreed to represent you with regard to your GE Healthcare Solutions Level III Mediation, should your request for one be granted. Cross Law Firm further agreed to continue investigating your

Ms. Madhuri Trivedi
August 20, 2013
Page 2

potential claims. As indicated above, Cross Law Firm has not agreed to file any complaint with any court or agency.

Very truly yours,
**CROSS LAW FIRM, S.C.**

*Daniel L. Rosenow*

Daniel L. Rosenow
Attorney at Law
drosenow@crosslawfirm.com
DLR/rng
Encls. (2)



**CROSS LAW FIRM, S.C.**

CROSS LAW FIRM, S.C.

September 12, 2013

*EMPLOYMENT &*
*BUSINESS LAW*

*Via US Mail and E-mail*
*madhuritrivedi@hotmail.com*

WWW.CROSSLAWFIRM.COM

Ms. Madhuri Trivedi
1405 Rock Ridge Road Apt 351
Waukesha, WI 53188

Lawyers' Building
845 North 11th St.
Milwaukee, WI 53233
414-224-0000

505 Arcadian Ave
Waukesha, WI 53186
262-548-0001

RE:     **Madhuri Trivedi v. GE Healthcare**

Dear Ms. Trivedi:

any variation thereon at this point. As you know, the next step in the Solutions process is arbitration. Prior to moving to that step, we must complete the mediation step. Please recall that Cross Law Firm has not agreed to represent you at GE

Ms. Madhuri Trivedi
September 12, 2013
Page 3

Healthcare's Solutions Level IV Arbitration, should it be necessary for you pursue that step.

Very truly yours,
**CROSS LAW FIRM, S.C.**

Daniel L. Rosenow
Attorney at Law
drosenow@crosslawfirm.com
DLR

## 18  EXHIBIT 3 Some GE history

At that time in 2010 - at GE Boston ( Foxborough, MA)- at GE intelligent platforms-GE grid management software even though was inside GE network - had little to no cybersecurity protection....it was connected to LIVE pilot customers GRIDS....Ward Bowman himself told me when I was standing in front of me  that there is no cybersecurity in this solution...--no one wanted to do anything with cybersecurity and there was no TASKS, time given for that..but I didn't say anything or my opinion because they already knew...

I was observing all that..all passwords hardcoded...no privilege and stoneage( passwords, privilege all that was done already before I started job there...and after being NEW -If I point out faults about all these --it was going to end badly with me loosing job---..and there was so much push to get everything out..GE transportation's asset management proof of concept I developed from ground up -- there were some common library that I used..

At that time, internet of things - proof of concept for GE pilot customers - GE gas enginee, GE water tank, GE transportation, GE aviation ( I have put screenshot of GE aviation bug fix that I did then -in my lawsuit and to SEC filings -- but judges are so corrupt - they don't even read anything written in english - )..anyway-- I was doing everything ( at that time for two and half months GE kept my offer hanging as they took bail out money under TARP - and my

grandmother with whom I was close had died in INDIA- so I was in so much pain- because GE was lingering. At the end - GE manager Reema Poddar ( **GE filed my H1 LCA with department of labor for GE transportation client ( Reema was abusing me-**- when They see MIT sloan and MIT engineering on my resume -- they get irritated...they can bring lot cheaper person( don't give a damn to quality) - working out of GE intelligent platforms --department of labor approved it -- when DOL approved it -GE HR manager emailed me that with my married name --I changed that name after I got divorce and went  back to my maiden name - Trivedi-- way back when I worked at United Technologies- I was full time there -first on student visa and then on H1 B-  so I response to GE HR that this is not my last name anymore..----then GE HR manager Mellanie - emailed me --about my marital status....and I emailed back that I am divorced..and next day -- there was a demo -- with GE transportation CTO- Mr. Adler -- CTO liked asset management solution - which I developed from scratch - CTO gave mock ups and I developed...at that time-- I was also doing deployments..and running pilot customers servers -
  all the way to ROOT servers - which connected all other servers - for all GE assets --under pilot. And GE was selling at that time -- even though it was at early stage -- more than $1 million per year revenue kind -- general manger himself told me that..

...anyway - after presentation with GE transportation CTO- who agreed to buy solution I developed -- in a 2 person engineering team -- Next day Ward said that GE is terminating my contract-- and I didn't fight...( after that - GE again hired me at GE healthcare.................I was a fool to join them)

Ken Paiva who was a program manager - would come to my desk and few times intentionally stared at my "B*o*bs" standing in front of me..did chit chat.....This happened after I developed transportation asset management solution....I was so mad..

Ward Bowman - GE boston manager - while bragging that I am not fit kind aka I am soft hearted( he started talking this on his own -- I never mentioned anything-- I used to talk less --as My H1 was hanging...)....of because what GE fanuc automation do is to automate -- every time GE automates - GE employees lose their job...

I was supposed to travel to Erie, Pennsylvania - at GE transportation and get workflow from GE people - so we can automate what they do manually -- so - Ward said that people don't give information to us because in return they loose job..-----------------I was working nights and weekends......

At GE healthcare in Wisconsin – entire GE medical devices database – was located at one palce in Wisconsin – data center – after GE blamed me as not a team player – they tried to put this database – into geographically distributed way—don't know what they actually did – after I left..

Also GE systems guys – used password – admin –admin – cybersecurity guy has already made NICE powerpoint slide – about all the passwords- hardcoded ones- that GE Use…including

Bigguy..His powerpoint slide of GE hardcoded passwords that was reported and cisa.gov and department of homeland security - also issued alert for… has been celebrated well on twitter…It also has Insite EXC hardcoded passwords – for full remote control of GE medical device computer and device – telnet , VNC( virtual network computing)  -- GE had these hardcoded passwords…and Scott Erven – who is now a partner at PWC – found out – he told me on phone- that one day he took – manual..and started looking into it..and found out all this mess—after Scott informed GE – GE –nor cisa.gov or DHS – did anything for 4 years…and somehow in 2018 – cisa.gov issued alert..

when I moved to GE healthcare –in Wisconsin --- Jeff Immelt was OBAMA's job czar – overseeing creating jobs- and actually he didn't create jobs at GE …GE people who were seeing I was being abused then – were talking to me that Immelt is just creating some contract jobs – for six months – and showing that jobs are created at GE… some were even for outsourcing ….it was all fake… – – actual number of jobs created even after taking taxpayers free bail out money …..was not happening…I am such a fool to join GE healthcare- one year after—after I left GE intelligent platforms in Boston..that is also in totally remote , rural wisconsin..Waukesha..

Don't know - but how come DOL also not notice that actual full time jobs are not created..and these are manipulated numbers-- -- Revolving door is reality....so nobody cared...individuals in position of power looked at their own career prospects, networking , connections...nobody cared - nor obama administrtion, DOL - or anyone...On top of that...in 2020 - Trump's Steve Mnuchin treasury secretary said that Cares acts was created for bailing out GE and Boeing...and they have set aside billions for GE and BOEING- if they need- ( indeed taxpayers' free money )...

https://www.chicagobusiness.com/government/us-treasury-weighs-safeguarding-17-billion-aid-boeing-ge

"The loan program was created under the $2.2 trillion Cares Act with the two defense giants specifically in mind, according to Treasury Secretary Steven Mnuchin."

GE has spent billions in lobbying - so it pays off -- totally insane....

Actually Jeff Immelt job creation - of six months contracts- job czar - all those information -my GE co worker sent me in GE internal messaging / chat app..we were working together on a project......he was very frustrated the way things were....shortly after that he left GE...

## 19  EXHIBIT 4 Judges are subject to criminal prosecution

### 19.1 More than a century old case law- "Ex Parte Virginia, 100 U.S. 339 (1880)", supreme court stated that judges are not immune from criminal prosecution

When an unreconstructed Virginia county judge excluded jurors on the basis of race, judicial immunity did not protect the judge in Ex Parte Virginia case. And a century later, when an Illinois county judge fired a parole officer because she was a woman (Forrester, 221), judicial immunity did not protect the judge (Id., 231).

Trivedi has alleged at least 35 plus times, in her court cases that she is treated like this because of GE's connections, Trivedi's race, immigration, not white , woman, divorced…Trivedi is a prefect material to execute Intentional, conspiratorial conduct – for which these judges get SADISTIC PLEASURE Ex Parte Virginia, 100 U.S. 339 (1880)(It is idle, therefore, to say that the act of Congress is unconstitutional because it inflicts penalties upon State judges for their judicial action. It does no such thing. ..Upon the whole, as we are of opinion that the act of Congress upon which the indictment against the petitioner was founded is constitutional, and that he is correctly held to answer it, and as, therefore, no object would be secured by issuing a writ of habeas corpus, the petitions are Denied.)

Mireles v. Waco, 502 U.S. 9, 10, 112 S. Ct. 286, 287, 116 L. Ed. 2d 9 (1991) AND Footnote 6 in this case --Levine v. Lawrence, No. 03-CV-1694(DRH ETB), 2005 WL 1412143, at *5 (E.D.N.Y. June 15, 2005) (The Court, however, has recognized that a judge is not absolutely immune from criminal liability, *Ex parte Virginia,* 100 U.S. 339, 348–349, 25 L.Ed. 676 (1880))

*A State acts by its legislative, its executive, or its judicial authorities. It can act in no other way.*

### 19.2 Tort by judges, sadistic pleasure.

Statutory violations establish prima facie case for negligence per se – in Trivedi's case it applies to both GE and judges. Judges are fine with GE's statutory violations; but concerned that it is untimely ( in their own corrupt interpretation) and/or Trivedi failed to file administrative claims with agency, or that for securities fraud- Trivedi should not have relied on GE's claims –if Trivedi knew that GE was doing fraud – for putting all these in their ORDER – all all to be PUT in a JAIL at least for ONE YEAR.

Trivedi has been intentionally not given/afforded a 'full and fair opportunity' to litigate her claims in PUBLIC FORUM.

Restatement (Second) of Torts § 286 (1965). In Estate of Kelly v. Falin, 127 Wn.2d 31, 896 P.2d 1245 (1995), the court held that a violation of a criminal statute constitutes evidence of negligence only if the statute was intended to protect both the person bringing the action and the

particular interest involved. The violation of a statute, ordinance, or administrative rule is actionable only if it was a proximate cause of the accident or injury in question. Ward v. Zeugner, 64 Wn.2d 570, 392 P.2d 811 (1964). If there is a prima facie causal connection and if the requirements of Restatement (Second) of Torts section 286 (1965) are met, the proximate cause question is for the jury. Kness v. Truck Trailer Equip. Co., 81 Wn.2d 251, 501 P.2d 285 (1972).

## 20  EXHIBIT 5 GE policies

3.   GE is required by SEC rule to include code of business conduct and ethics

including in its Annual report form. And comply with it. **17 CFR § 229.406 -Code of ethics.**

4.   **A.  Rules enacted by the major stock exchange NYSE**

 The NYSE requires each publicly traded company to publish a Code of Business Conduct and Ethics promising not to retaliate against employees.

5.   GE is a publicly traded company –on NYSE stock exchange.

6.   First, the stock ex-changes, NYSE require their listing issuers to adopt a Code that

applies to all employees.  Second, the Code must provide for an enforcement mechanism to encourage prompt, internal reporting of violations of the Code.( *See* NYSE LISTING MANUAL § 303A.10) .The NYSE listing requirements specifically mandate that the Code include corporate assurances that it will not retaliate against an employee for reporting violations of the Code(*See* NYSE LISTING MANUAL § 303A.10);NYSE requires that companies protect employees who make reports in "good faith,"

*( See NYSE LISTING MANUAL § 303A.10 )Encouraging the reporting of any illegal*

*or unethical behavior. The listed company should proactively promote ethical behavior. The listed company should encourage employees to talk to supervisors, managers or other appropriate personnel when in doubt about the best course of action in a particular situation. Additionally, employees should report violations of laws, rules, regulations or the code of business conduct to appropriate personnel. To encourage employees to report such violations, the listed company must ensure that employees know that the listed company will not allow retaliation for reports made in good faith.*

NOTE:General policies about whistleblowing are not enough; these corporate governance standards require *promises* not to retaliate (In the context of attempting to provide contractual protection against sexual orientation discrimination, Ian Ayres and Jennifer Gerarda Brown note

the importance of obtaining contractual promises of nondiscrimination rather than merely unenforceable nondiscrimination policies.  ).

7. **The NYSE listing rules require GE to promise broad whistleblower protection;** protect employees/plaintiff Trivedi who made whistleblower disclosures in "good faith,", fair dealing as well.

8. **B. Plaintiff Trivedi signed as a condition of employment at the time of joining GE(EXHIBIT 28 & EXHIBIT 29 ) GE policies-The Spirit and the letter**

The Spirit and the letter  ( letter is also part of SEC filing DEF 14A)( also available on GE website)— it states that *"You do not need to be certain that a violation has occurred. At the same time, you have an obligation to promptly raise a concern when you see a situation in which our integrity principles or policies are not being followed. "*

*"RESPONSIBILITIES OF EMPLOYEES*

✓ *Know and comply with the laws and regulatory requirements that affect your job responsibilities.*

✓ *Be the Voice of Integrity and promptly escalate any potential issues that may lead to a regulatory compliance breach."*

**NOTE- GE has itself done so much fraud, scandals, cooked account books and more** that these policies spirit. Policy Letter is merely a letter new employee required to read and sign and follow but company itself is not following.

9. Because a corporate Code always applies to the company GE and its employees

(plaintiff Trivedi), enforcing a Code promise often avoids a debate about whether a worker-plaintiff Trivedi is a "covered employee." The anti-retaliation promise contained in GE corporate Code protects employees (plaintiff Trivedi) as a covered employee. GE Corporate Code, on the other hand, also promised to protect an employee who discloses *any* illegal or unethical activity occurring within the corporation; hence such claims to go forward under a breach of contract theory based on the employer GE 's anti-retaliation policy as it stated on **GE policies-The Spirit and the letter** page 13 "GE absolutely prohibits retaliation".

10. **C. Plaintiff Trivedi fulfilled her "Duty to Report Violations,"** which stated in

GE policies: The spirit and the letter(SEC filing DEF 14A):*" Penalties for violations >>Employees and leaders who violate the spirit or letter of GE's policies are subject to disciplinary action up to and including termination of employment. Misconduct that may result in discipline includes: • Violating GE policy, Failure to promptly raise a known or suspected violation of GE policy , Retaliation against another, employee for reporting an integrity*

*concern,• Failure to demonstrate leadership and diligence to ensure compliance with GE policies and law.*

11. *GE SEC filing DEF 14A-Code of Conduct. All directors, officers and employees of GE must act ethically at all times and in accordance with the policies comprising GE's code of conduct set forth in the company's integrity policy, The Spirit & The Letter, which is published on GE's website at www.ge.com/files/usa/citizenship/pdf/english.pdf.*

12. GE's Anti-retaliation Promise as an Express Contract as well==also answer to

GE's defense that it was at-will employment.

13. **These anti-retaliation protections supersede any private ordering between**

**parties GE and plaintiff Trivedi, including an at-will arrangement, that would permit an employer GE to fire or otherwise retaliate against a plaintiff Trivedi for reporting misconduct.**

14. **D. Implied contract**

15. Plaintiff had an implied contract of employment for so long as Plaintiff performed

Plaintiff's job in a satisfactory manner.

16. Trivedi performed her job in a satisfactory manner. Even in her performance

appraisal(EXHIBIT 10) –GE manager rated her performance as "meeting expectations" but made up that it is her communication skills, relationship skills which needs to be improved and as a result of PRETENSE/made up false/retaliatory.

17. **E. GE made Good faith implied job contract that GE will do H1, yearly extension of H1 and her greencard**

As plaintiff was on her sixth year of H1B..After SIXTH year on H1B unless employer timely files greencard paperwork ,H1 B can't be extended nor can one work for another employer/change job..That's what exactly GE did.

18. Also despite several requests during mediation, a arbitration and a letter to CEO

of GEHC by immigration attorney Jeff Goldman(EXHIBIT 12) –GE didn't file I 140 which would have allowed her to extend her H1B and leave GE and work for another employer.

19. We requested at that time that GE keep me on leave without pay and just do

paperwork. But GE didn't care. It is also illegal to cancel H1 B while mediation and arbitration is pending because without H1 B I had no way to be in country legally which was a weakness –GE and arbitrator used that (H1 B cancellation ) **(EXHIBIT 12)**as tools.

20. Defendant breached its contract with Plaintiff by: Terminating Plaintiff in breach

of the promises made to Plaintiff; terminating plaintiff in violations of public policy ,state and federal statutes, regulatory agencies including but not limited to DOD, FDA, SEC, DOL rules and regulations. Also in violation of all other anti-retaliation, whistleblower protection laws .Cause of action claim -----stated here. Terminating Plaintiff without good cause as she did meet her performance (technical performance as well) (EXHIBIT 10)

21. The company induced Ms. Trivedi; and that GEHC would make good faith efforts

to pursue permanent residency **(EXHIBIT 23)**for her, only to fall far short on this promise. What is particularly frustrating is the fact that GEHC did get past the most difficult part of the green card process—the US Department of Labor did certify a Labor Certification Application for her ( Immigration has approved Ms. Trivedi's petition as a person with exceptional ability/advanced degree individual).

" **Federal Court cases have clearly faulted employers for this kind of inducement and failure to use good faith in following up with this process. (EXHIBIT 23)**Also, the company **neglected to file the PERM labor certification on timely manner (despite Ms. Trivedi requesting) (EXHIBIT 12 ), which has resulted in that she could not work for other employer(**preemptive) **in US**.

22. Ms. Trivedi had emailed both ;Manager Dave Mehring and lead Nate Davis mentioning this even before joining GEHC(EXHIBIT 21) .So, they are not letting Ms. Trivedi go on with her own life. Knowing these matters from beginning.  Also by cancelling H1  B so I can't proceed in arbitration or any other court.( preemptive)"

23. **Breach of contract**

*See Leyden v. Am. Accreditation Healthcare Comm'n, 83 F. Supp. 3d 241, 247–48 (D.D.C. 2015). In Leyden, the trial court held that the plaintiff had a valid claim based on the employer's alleged violation of its internal anti-retaliation policy.*

*In Leyden, The defendant then terminated the plaintiff's employment. The defendant moved to dismiss the complaint, arguing in relevant part that the anti-retaliation policy did not create contractual rights. Even if it did, the defendant contended, it had disclaimed any such rights in its employee handbook.***Court held that The anti-retaliation policy created an implied contract.** *Strass v. Kaiser Foundation Health Plan, a case holding that an employee handbook created an implied contract. Id. at 247 (citing Strass v. Kaiser Found. Health Plan, 744 A.2d 1000 (D.C. 2000)). The court discussed how a manual could create rights, and how an employer could*

*effectively* disclaim *those rights.  The court also rejected the defendant's argument about the disclaimer, noting that a disclaimer that was "rationally at odds" with the other language in the document may not cut off an implied contract.*

*In finding an implied contract, the court focused on the employer's invitation to report "Improper Activities" internally and on the language of the anti-retaliation policy.  The court also concluded that the employer's disclaimer, which was found in a different document, was rationally at odds with the anti-retaliation policy. .*

24. **I**mplied covenant of good faith and fair dealing to GE and plaintiff's implied contract.

*Rely upon "breach of implied contract" or "promissory estoppel" theories to examine*

*handbook promises to enforce anti-retaliation promises found in GE corporate Codes, utilizing the "handbook doctrine," an exception to the at-will rule for employer GE promises in employee handbooks or manuals. Similarly, under a promissory estoppel theory, specific promises*

*within a handbook increase the likelihood that a court will find that the employee Trivedi reasonably relied upon the statement.*

25. As stated above;Trivedi and GE created contractual rights, Trivedi relied on anti-

retaliation promise in the GE policies letter (which had **GE anti-retaliation policy which created an implied contract.**) she SIGNED as an condition of employment and followed duty to report violations as expressed in GE policy, federal , state laws and rules, along with other courses at GE that she was required to take as GE was in regulated environment.

26. Madhuri Trivedi protected under the whistleblower protection policies in corporate codes of ethics as she was following that.

27. **An employer GE has a fiduciary duty to the employee Trivedi**

28. A fiduciary relationship may be created by agreement of the parties. Trivedi and

GE created such relationship at the time Trivedi joined GE and when Trivedi signed letter stating that as long as Trivedi does her JOB, performs duty as shown in her JOB OFFER , follows "GE Policies" as mandates by NYSE –New York stock exchange ---when any of violations that Trivedi beilevs and had proof that violated laws, statutes, regulations as stated in cuase of actions in this complaint along with violation of "GE Polices"; Trivedi objected, wrote to management , told them in=person…While GE defendants ,Fragomen defendants BREACHED such fiduciary duty.

29. See EBC I, Inc. v. Goldman, Sachs & Co., 5 N.Y.3d 11, 20 (2005). Rather, the

actual relationship between the parties determines the existence of a fiduciary duty (e.g., the second type of fiduciary relationship). Id.In Meinhard v. Salmon, 164 N.E. 545, 546 (N.Y. 1928), Justice Cardozo provided the "classic formulation" of a fiduciary duty:

New York Court of Appeals has described the duty as arising from a relationship "'between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation.'" See EBC I, 5 N.Y.3d at 19, quoting Restatement (Second) of Torts § 874, Comment a

30. courts have long recognized that when an employee is in a position of

management and conducts the business of an employer, he owes that employer a fiduciary duty.(holding that employees "vested with policy-making authority [with]the ability to make decisions which bind the company" owe a fiduciary duty). This fiduciary duty encompasses a duty of care, loyalty, and good faith. [Trivedi and defendants here apply in this analogy]

31. GE argument that Trivedi had POOR soft skills is not anything but PRETEXT

and bullying that management did ; GE falsely generated some emails and selectively solicited inputs from few GEHC employees(these employees themselves where involved in Insite EXC fraud and were failing TECHNICALLY either to FIX INSITE EXC OR to DEVELOP new platform that would replace INSITE EXC) who would say Trivedi had soft skill issues ..GEHC management never solicited/took into consideration/account feedback from DAVE SALLIS, JOE PURCELL, BARRY, MOHEDDINE and several other managers, technical leads who were happy with Trivedi's technical as well as SOFT SKILLS.

32. The breach is actionable as there is proof that the plaintiff  Trivedi suffered damages as a result of the breach any failure on part of the fiduciary to act ..a breach of fiduciary duty can be any behavior that is not in the best interest of the client;

33. **GE violated/breached this code of ethics NYSE requirement by doing what they did to plaintiff Trivedi.**

34. **GE's breach of an anti-retaliation policy in a Code of Ethics give rise to a**

**breach of contract claim.** *Federal district court held that an employer's anti-retaliation policy created [2]legally enforceable rights.*

---

[2] https://www.zuckermanlaw.com/code-of-ethics-whistleblower-protection-lawyer/

## 21  EXHIBIT 6

### 21.1  Jack's Magic -- Part II (Dec. 26, 2005)  -GE earning management -Was the unit blind-sided or was it straining to deliver the double-digit earnings growth Welch always expected? Was anything illegal done?

https://www.barrons.com/articles/SB113538493672231014

# Dec. 26, 2005 12:01 am ET But, like many stars, his celebrity seems to have

depended as much on appearances as performance. Without the ERC smoke machine, GE's 1997-2001 numbers would have been far less lustrous……Under Welch, GE Capital delivered double-digit earnings gains, year in and year out, regardless of what was going on in the financial markets……To some observers, GE Capital was always something of a black box during its glory years. **-the free-wheeling culture at GE Capital**

## Different Eras, Different Tactics

From 1997 through 2001, the last years of the Jack Welch era, GE's reported earnings per share rose by 65 cents, or 90.2%, from the 1996 level. But if its reinsurance unit had been fully reserved—meaning that it had funds on hand to meet all of the claims it could have expected, based on subsequent actuarial analysis—profits would have risen by just 4 cents, or 5.6%.

### Welch's Final Years

Diluted Earnings Per Share



| | 1996 | 1997 | 1998 | 1999 | 2000 | 2001* | TOTAL |
|---|---|---|---|---|---|---|---|
| Earnings Gains | | $0.10 | 0.11 | 0.14 | 0.20 | 0.10 | $0.65 |
| Percent Increase | | 14.00% | 13.40 | 15.00 | 18.70 | 7.90 | 90.20% |

*Welch retired on Sept. 7

## The Immelt Era

Under Welch's successor, Jeffrey Immelt, GE has been hamstrung by the need to bolster the reinsurance unit with billions of dollars that could have been added into earnings or used for other purposes. Nonetheless, Immelt has been able to boost per-share earnings by 24 cents, or 17.5%, in his three years at the helm, and the company is expected to report a good 2005 and 2006.

Diluted Earnings Per Share



| | 2001 | 2002 | 2003 | 2004 | 2005E | 2006E | TOTAL GAIN** |
|---|---|---|---|---|---|---|---|
| Earnings Gains | | $0.04 | 0.10 | 0.10 | 0.11 | 0.16 | $0.61 |
| Percent Increase | | 2.90% | 7.10 | 6.60 | 6.80 | 15.10 | 44.50% |

**Assuming 2005 and 2006 forecasts prove accurate  E=estimate

### Additions to Reserves



**To complete bolstering of reserves to facilitate sale of reinsurance unit to Swiss Re.  E=estimate

Sources: Bloomberg; Company reports

- 18 -



## 21.2  Since 2002, GE has been subject of manufactured earning

https://archive.fortune.com/magazines/fortune/fortune_archive/2002/03/04/319114/index.htm

better.

To relate another anecdote from Jack: In April 1994 the escapades of rogue Kidder Peabody trader Joseph Jett left GE with a $350 million hole in its earnings. "The response of our business leaders to the crisis was typical of the GE culture," Welch recalls in the book. "Even though the books had closed on the quarter, many immediately offered to pitch in to cover the Kidder gap. Some said they could find an extra $10 million, $20 million, and even $30 million from their businesses to offset the surprise."

Immelt has continued the tradition. He explains that when it became clear last year that GE's "short-cycle" businesses like appliances and light bulbs weren't going to meet their targets because of the weak economy, he asked the "long-cycle" businesses (power systems, medical systems) to "do better." What did Immelt mean by "do better"? "They sold more CT scanners, they sold more turbines, they cut costs harder, they had the opportunity to grow faster in China. You don't ask a little elf to go in and stir the pot, and out comes ten million bucks." Or, to quote a favorite phrase of former CEO Welch: "We don't manage earnings, we manage businesses."

Well, actually, they manage both. It's long-standing practice at GE, whenever the company makes a big gain from the sale of a subsidiary or another asset, to come up with some sort of big discretionary investment or a restructuring charge in the same quarter--which keeps net earnings rising smoothly instead of jumping around from quarter to quarter. In the fourth quarter of 2001, for example, GE made a $642 million gain on a satellite partnership and conveniently took a $656 million charge for exiting unprofitable businesses and marking down unsuccessful investments (including an $84 million loss on Enron bonds).

Immelt and CFO Keith Sherin don't deny this at all. They just find it incomprehensible that anyone would want them to report 30% earnings growth one quarter and 3% the next if they can avoid it. "It just doesn't make any sense to us in managing a business," Sherin says.

## EXHIBIT 22



**Re:Domestic violence, fraud -EY Mukul Shukla**
From:entreprenuer@protonmail.com <Entreprenuer@protonmail.com>
To:william.miller@ey.com <william.miller@ey.com>ed.mobley@ey.com
<ed.mobley@ey.com>Maria Molina Monroy
<maria.molinamonroy@ey.com>carmine.disibio@ey.com
<carmine.disibio@ey.com>Kelly.Grier@ey.com
<Kelly.Grier@ey.com>Michael.Solender@ey.com
<Michael.Solender@ey.com>entreprenuer@protonmail.com
<entreprenuer@protonmail.com>mrapoport1015@gmail.com
<mrapoport1015@gmail.com>CC:mckenna@american.edu
<mckenna@american.edu>mukul.shukla@ey.com
<mukul.shukla@ey.com>entreprenuer@protonmail.com <entreprenuer@protonmail.com>
Date:Thursday, June 10th, 2021 at 6:39 AM
Maria,
Please send me your investigation report so I can send it to police..if Mukul has lied then lie
detector can be used...I will send you redacted version when I send police your report...so you
would just see that it has been sent but won't know to whom and where particularly within..

The point is that Mukul's fmaily took my passport, threatened to cancel spouce visa while we
were marrie, communicating with his current wife Krishna while we were married and he
dropped me in India..When I got back to USA from India-without my ex knowledge in March
2006-- I had to call cops to let me enter and then he left...At that time - I looked at his to do list
diary on table - He was talking to his current wife Krishna-while framed me in India that he will
come to get me back when things cool down..I was jet lagged and it was Friday evening when I
got back from India--and on Monday he emptied bank account and left $10 ..

As I have written before mukul be in jail.


Sent with ProtonMail Secure Email.
Fw: Re: EY director Mukul Shukla
From:entreprenuer@protonmail.com <Entreprenuer@protonmail.com>
To:william.miller@ey.com <william.miller@ey.com>ed.mobley@ey.com
<ed.mobley@ey.com>Maria Molina Monroy
<maria.molinamonroy@ey.com>carmine.disibio@ey.com
<carmine.disibio@ey.com>Kelly.Grier@ey.com
<Kelly.Grier@ey.com>Michael.Solender@ey.com
<Michael.Solender@ey.com>entreprenuer@protonmail.com <entreprenuer@protonmail.com>
Date:Saturday, March 20th, 2021 at 4:18 AM
Maria,
You have stonewalled me..and ignoring to reply.  The only things you ant to reply is is answer to
lawsuit it looks like.............please reply next week...It is still a crime--and those who cover crime
is guilty by association..I am not going to write all criminal statures and violations here..
And now after consulting with people...It has become obvious that Mukul would have sexual
intercourse with his mom because his mom herself admitted that Mukul is coming to him( as her
body was like a soft dunlop mattress than my body body which Mukul wanted soft body)

Sent with [ProtonMail](#) Secure Email.
------- Original Message -------
<mark>Email 2</mark>

------- Original Message -------
On Thursday, January 24, 2019 12:34 PM, Entreprenuer <[Entreprenuer@protonmail.com](#)>
Received: **Thursday, January 24, 2019 12:37 PM**
From: **Madhuri [Entreprenuer@protonmail.com](#)**
To: **[Mark.Weinberger@ey.com](#) [Mark.Weinberger@ey.com](#), [Norman.Lonergan@ey.com](#)
[Norman.Lonergan@ey.com](#), [Kelly.Grier@ey.com](#) [Kelly.Grier@ey.com](#),
[Michael.Solender@ey.com](#) [Michael.Solender@ey.com](#), [entreprenuer@protonmail.com](#)
[entreprenuer@protonmail.com](#), [trent.henry@ey.com](#) [trent.henry@ey.com](#)**
[Michael.Solender@ey.com](#) [trent.h.henry@ey.com](#)


 Dear Mr. Mark Weinberger, Mr. Solender, Kelly Grier and Norman Lonergan,
I am ex wife of your manager/director Mukul Shukla.
I recently came to know that he still works for EY. I met a common contact who met him last
year and mentioned about him.
We were married from 2003-March 2006 , divorced 2006.
Mukul was/is an animal and needs to be in jail. So much so that police chief signed a criminal
domestic violence report against him. I was late to do so otherwise police would have jailed him
and deported him to India. But at that time I was new to USA and lacked knowledge. He also
bribed my divorce attorney who at that time instead of filing case in domestic violence court
,filed it in domestic relations court and also didn't do much for the case..
Mukul is criminally minded, corrupt, unethical person who enjoys watching porn and bad sex
videos,  bad porn sex talks to friends.
He hit me and I ended up in emergency with swollen red purple eye and was almost unconscious.
He told doctor that I fell down but doctor was not convinced and he called police and mukul begged
to me that I don't tell police that he hit me otherwise he would be arrested and deported. I
was unconscious almost and didn't say much to police..He also deviated my septum in my nose.
Later his abuse continued and increased...But later I did filed a police report.
When we were married , his parents visited USA from India. Parents had a separate room in
apartment. Usually when three of them are in the room, I knock the door and then go inside. One
day I came from school as I was doing my masters and I got A grade so I was in my thoughts and
forgot to knock on the door and just opened it...I saw that Mukul was sleeping on top of her
Mom..As indian women wear three pieces -blouse, chaniya and sari--Mukul was sleeping on top
of her mom-her mom had blouse(top) half open and no sari. When I entered- Mukul got off her
mom..Next day her mom told/ taunted me that because I am so thin and bony -(and she had fat
which made her body not bony) ;Mukul is coming to her as they like body on which they can be
on -have soft body to be on instead of thin bones. I haven't seen mukul and his mom having
sexual intercourse but it is not unlikely that they didn't do that...they can have had that -but I
didn't see so I can't confirm.. Mukul gave me and my family tremendous trauma..Mukul will call
my parents and grandfather at midnight India time and tell them abusive things ,wake them up
and fight..
Since I came to know that he works for EY -I have lost all respect about EY..what kind of people
EY have==disgraceful to know that...When We were married ; Mukul used to work for EY then

also..His father and mukul used to say that because mukul's EY boss is torturing him and giving hard time-he can't handle and that is also a reason of his abusive behavior ,tension and fear of immigration benefit lost and getting deported to India.

**I am in middle of things so I will write more later.**

I never think of Mukul and have ZERO contact with him after March 2006...But he and his mom scene was so gross that I had to speak up..plus he is a criminal, criminally minded, unethical, immoral person who would play games and I have to take action in this regards.

Regards,

Madhuri

Cell: 650-242-5135

## ==Email== 3

**Re: Mukul Shukla**

Received: **Thursday, January 31, 2019 8:19 AM**

From: **Madhuri** Entreprenuer@protonmail.com

To: **Maria Molina Monroy** maria.molinamonroy@ey.com, **Michael.Solender@ey.com Michael.Solender@ey.com**, entreprenuer@protonmail.com entreprenuer@protonmail.com

Hello Maria,

Michael is a General counsel so it makes sense that I copy him-what do you think so he is in loop...Michael just read this sexual description as a lawyer --as you wrote it took me lots of courage and swimming against current to write this....I appreciate that you understand it...Mukul did a conspiracy and I was a naive to not see all that..may be I did a wishful thinking while he and his family did a criminal conspiracy/actions. It shows -mens rea and actus reus -- intentions  and actions --premeditated one...

His sister has a genetic congenital disorder that she doesn't have a seventh layer on skin and she gets blood blisters every 15 days -month etc..she has that from birth...few other women in their family also has it and female child in their family can get that ...he and his family didn't disclose this- didn't tell  us untill after the ceremony was done (where my father invited hundreds of people)...my father was suspicious about her look in photos they showed and asked several time why she looks like this and they avoided....

After ceremony when we strongly asked they said this--so he and his family framed me-...-I lost trust from him after this incident..

During marriage we went to see OBGYN and she asked any family history for family planning related--I told him to tell about his sister--he said that to doctor -doctor said that now you can do fetal genetic test and if you child has that disorder do abortion since it is best interest for all...After coming home-mukul beat me up, said that if our child would have that disorder -he won't allow abortion ===told me that he is kicking me out and called his family that he is kicking me out...I replied that it is doctor who said that and I haven't met her before so it was not me who gave her this idea and it was her medical expert opinion....he should be shacked in chain and jailed.

They knew that they can bring some woman from poor country india as a second marriage while played with me..woman die to come to US on marriage to get greencard and his current wife was in contact with mukul while we were married.

Mukul also has a physical defect in which he can't open his mouth full/more than somewhat degree due to facial palsy. So He was feeling inferior.

So now--since when we went through divorce ; mukul was at EY--so EY would have some knowledge of what he did to me- divorce--...it is mind boggling that they harbor such kind of  con, gross and immoral person...he is a disgrace to society.

Mukul took me to india and took my passport and came back to USA within a week( while left me saying that he will call me back when things calm down)--he threatened that he has cancelled my spouse visa so I must not come..how come he cancel without giving me divorce--he can't divorce on phone or via email- need to go through divorce process..I came to USA without his knowledge- and then called police - He emptied our joint account and left $20 --we filed for divorce...
..

He can't have a lip kiss due to his facial palsy that made him physical inferior,  and incompetent..He also made me wear handcuffs (sex toy) and made me lying down ( like police/cops do) and then he would do sex as he enjoyed that..I don't know why I allowed that...

.Now looking back I feel that divorce is not a bad thing and I wouldn't have gone through all this. When he took me to India to dump me there--on that day as we were leaving for India he threw handcuff sex toy into garbage..Still seeing that my eyes didn't open to recognize his conspiracy why he is taking me india( he was talking to his current wife then and his greencard filing was about to happen so he wanted to get rid of me asap so he can remarry and they can get greencard). He would insist that I use butt plug on anus so it gets bigger so he can have anal sex - I said that from front -vaginal one is fine and anal is for Gay men.

At the same day time when i saw he and his mother in bed; I would have called police that same day when they were in bed and filed complain (police would have arrested /charged he and his mother) but I never even imagined or heard this before--and again didn't know what to do..may be I gave benefit of doubt. Second time- Police would have arrested him at hospital or in that week when I was recovering ---
His weekend morning started with watching porn emails , sharing them and reading/sending porn jokes /video clips in their friend chat--

Now, for addressing this matter -monetary one makes sense...

Sent with ProtonMail Secure Email.


------- Original Message -------
On Tuesday, February 9, 2021 5:25 PM, Madhuri Trivedi <Entreprenuer@protonmail.com> wrote:

Hi All,

I see that Maria- lady at EY who wrote to me that she is investigating ; has done best to cover up...when Mukul was sleeping on top of his mom in a sexual position and also have done violence, fraudulently bribing ..
Reply to this email please

Sent with ProtonMail Secure Email.

------- Original Message -------Re: EY director Mukul Shukla

---

Received: **Tuesday, February 9, 2021 5:16 PM**
From: **Madhuri Trivedi** Entreprenuer@protonmail.com
To: **Maria Molina Monroy** maria.molinamonroy@ey.com, carmine.disibio@ey.com
carmine.disibio@ey.com, entreprenuer@protonmail.com entreprenuer@protonmail.com,
Michael.Solender@ey.com Michael.Solender@ey.com, Norman.Lonergan@ey.com
Norman.Lonergan@ey.com, Kelly.Grier@ey.com Kelly.Grier@ey.com,
Felice.Persico@ey.com Felice.Persico@ey.com, Beth.BrookeMarciniak@ey.com
Beth.BrookeMarciniak@ey.com
On Tuesday, February 9, 2021 5:16 PM, Madhuri Trivedi <Entreprenuer@protonmail.com> wrote:

Instead of taking action action Mukul- you have promoted it--it is violation of human right and people who advocate this and other illegal activities would not tolerate it--certainly not me..what it means is "you are encouraging it"   ----

Sent with ProtonMail Secure Email.

------- Original Message -------
On Tuesday, February 9, 2021 4:22 PM, Madhuri Trivedi <Entreprenuer@protonmail.com> wrote:

Hi Maria, you have stonewalled me. I have forwarded our email communication to police.
I am also planning lawsuit in near future if you don't reply.

Sent with ProtonMail Secure Email.

------- Original Message -------
On Monday, June 1, 2020 10:55 AM, Madhuri Trivedi <Entreprenuer@protonmail.com> wrote:

Maria, I was busy and I just checked today that EY has a new CEO. I forwarded our emails to police last year..Anything from your side..'
Thanks
Sent with ProtonMail Secure Email.

------- Original Message -------

On Tuesday, March 26, 2019 6:46 PM, Maria Molina Monroy <maria.molinamonroy@ey.com> wrote:

Madhuri – as I mentioned previously, I am not able to disclose or discuss my review of this matter. Thank you for your understanding.

**From:** Madhuri [mailto:Entreprenuer@protonmail.com]
**Sent:** Tuesday, March 26, 2019 12:52 AM
**To:** Maria Molina Monroy <maria.molinamonroy@ey.com>
**Subject:** Re: Received your emails

Hello Maria,
How's your looking into matter going on- is it going to take long or finish soon? Please let me know..
 Thanks and regards
He already would know I believe most likely through common contact as I mentioned in email below( I haven't talked to that person after telling this and asked if that information was relayed to mukul or not-so I don't know if that person told mukul or not)-- Indian culture is male dominated-- even all/most religious sanskrit mantra/chants have saying that " by chanting this mantra woman becomes mother of a "SON"..for 4-5 thousand year heritage...though things are changing these days but still --
 Sent with ProtonMail Secure Email.
 ------- Original Message -------
On Monday, February 18, 2019 3:39 PM, Maria Molina Monroy <maria.molinamonroy@ey.com> wrote:

Hello Madhuri – I received your voicemail message and I am confirming that I received your emails. I'm looking into this as appropriate.  As a third-party/non EY person, I'm not able to discuss my review of this matter with you.   Thank you.
_____------- Original Message -------
On Tuesday, January 29, 2019 3:48 AM, Maria Molina Monroy <maria.molinamonroy@ey.com> wrote:
 Hello Madhuri – I am a Talent Director at EY and am in receipt of your email regarding Mukul Shukla.  I understand this a very personal and private matter which took courage to share. Having said that, I will serve as your primary point of contact and ask that you direct any and all communication regarding Mukul directly to my attention.
Thank you.
MMM

 Maria Molina Monroy | Talent Director | National Advisory
 Ernst & Young LLP
725 South Figueroa Street, Los Angeles, CA 90017, United States of America
Office: +1 213 240-7552 | maria.molinamonroy@ey.com
EY/Comm: 6166654
Website: http://www.ey.com
Lonnada Green | Phone: | lonnada.green@ey.com

EXHIBIT 23

# United States Court of Appeals
## For the First Circuit
_____
No. 20-1862

MADHURI TRIVEDI

Plaintiff - Appellant

v.

GENERAL ELECTRIC COMPANY; GE HEALTHCARE; H. LAWRENCE
CULP, JR., CEO of GE in his individual and official capacity; GE BOARD OF
DIRECTORS; FRAGOMEN, DEL REY, BERNSEN AND LOEWY, LLP;
JENNY SCHRAGER, Partner at Frogomen, Del Rey, Bernsen & Loewy, LLP, in
her individual and official capacity; MIKE SWINF ORD, former CEO of GEHC
services, in his official and individual capacity; CARL CONRATH, Senior
Engineering Manager, GE healthcare in his official and individual capacity;
NICOLE BOYLE, Program Manager, GEHL; NATHAN DAVIS, Architect,
GEHC; WILLIAM BARBIAUX, Architect, GEHC; JOHN DINEEN, former CEO
of GE and former CEO of GEHC; DAVID ELARIO, General Manager of GEHC
services; SUSAN HOCKFIELD, former Director of GE; ADAM HOLTON, senior
HR Manager, GEHC; JEFFREY IMMELT, Former CEO of GE; AYESHA
KHAN, HR Manager, GEHC; TIMOTHY KOTTAK, CTO of GEHC services;
DAVID MEHRING, Engineering Manager GEHC; DIPTI PATEL, Project lead,
GEHC; DIANE SMITH, HR Manager, GEHC; GREGORY STRATTON , Lead
System Integrator, GEHC; ROBERT SWIERINGA, former Board of Director of
GE; MICHAEL TRUMAN, HR Manager, GEHC; REEMA PODDAR, Senior
Leader of GE intelligent platforms; WARD BOWMAN, Engineering Manager, GE
intelligent platforms; MIKE HARSH, Former CTO of GEHC

Defendants - Appellees

FOLEY AND MANSFIELD LAW FIRM

Defendant

Dear chief judge Jeffrey R. Howard, William J. Kayatta, Jr. , Bruce M. Selya , Sandra L. Lynch
I know your time is important but please read this whole letter. Since three circuit judges had
dismissed my interlocutory appeal –they are familiar with my matter ; and I had contacted chief
judge Howard in past; so he is also familiar with my matter.. …sending a quick letter..I hope we
resolve at First circuit otherwise I will have to go to supreme court again.

1) Today monoclonal antibody market is $120 billion and it is supposed to grow to $320 billion by 2025..But I have left healthcare..

2) I believe in God and that God sees everything, all injustices done to me.

3) Since my illegal termination from GE; I had spent enormous time, effort and resources to pitch about artificial protein vaccine, my startup , how I was illegally fired and more.

4) Since my startup press release visibility report says- it would reach 50 million potential readers- means it was making impact.

5) It clearly proves total anarchy and corruption. May be GE is one of the largest employer in MA, now that GE has HQ in Boston. That doesn't mean that Madhuri to be deprived from justice.

6) **There is ZERO CONINCIDENCE that FDA approved total 50 monoclonal antibody from 2015 till today. But it is surely my work- it was like**

   **"I/Madhuri was selling it , as a startup CEO –**
   **an idea for a new way to treat diseases…."**

7) **FDA is inspired to go for my pitch and started approving it; while I am still not getting any justice. Total kangaroo court.**

8) And even for my startup **press release (attached here)I had mentioned those words .. Now as you know — for corona some of the vaccines are monoclonal antibody / aka artificial or synthetic protein .. At that time** I was passionate to work on that research with other bright people - but off course NOT ANYMORE.

https://www.prnewswire.com/news-releases/orangehealth-seeking-investors-for-mobile-app-peer-to-peer-platform-for-managing-diabetes-other-health-conditions-300477365.html

Below paragraph from startup Press release-

==**OrangeHealth Seeking Investors for Mobile App Peer-to-Peer Platform for Managing Diabetes, Other Health Conditions**==

NEWS PROVIDED BY
OrangeHealth
Jun 21, 2017, 08:45 ET
☐
SAN FRANCISCO, June 21, 2017 /PRNewswire/ -- Madhuri Trivedi, an engineer, scientist,
entrepreneur and immigrant, has launched her new company OrangeHealth ……

**"She wrote heavily about precision medicine in April 2104, received a job offer in 2014 with**
==**Harvard Medical to create a cancer vaccine, artificial protein.**== **President Obama in the 2015 State of Union Address, launched precision medicine initiative. Trivedi has been unable to take the Harvard position because of immigration denials and challenges. While at General Electric,Trivedi's labor certificate for immigration was approved as "a person of exceptional**

ability" EB2 category. GE, however, didn't file the next step so she could work in the U.S. "

**9) Some Corona / Covid19 vaccines are based on monoclonal antibody. The cocktail that Trump got was a monoclonal antibody.**

10) As this nature magazine chart shows- FDA approved total 100 monoclonal antibodies/artificial proteins...and 50 of them were approved from 2014 till today..

The FDA approved its 1st monoclonal antibody in 1986, its 50th in 2015 and its 100th last month. For new modalities, this is the timeline to beat. For a look at the first 100 antibodies by target, format and more, see https://nature.com/articles/d41573-021-00079-7 in @NatRevDrugDisc

https://twitter.com/AsherMullard/status/1389977940671311878/photo/1



Fig. 1 | **The FDA's first 100 antibody approvals, by year.** Antibodies that span multiple formats have been classified on the basis of their primary functionality. Amgen's blinatumomab, for example, is classified as a bispecific rather than as a fragment. Fragments include antigen-binding fragments, single-chain variable region constructs and domain antibodies. Other includes radiolabelled antibodies and antibody–immunotoxins. See Fig. 2 for more discussion of the formats. Sources: The Antibody Society, *Nature Reviews Drug Discovery*.

11) **So in March 2015 ; I moved to Silicon Valley from Wisconsin....I opened a ticket through USCIS- emailed USCIS- united states citizenship and immigration services director Donald Nuefeld**( I had emailed him week before my arbitration hearing in May 2014 and he had replied my email to call 800 number ; so he knew it and he acknowledged it)

In my ticket in email to Donald and also email to service center in Texas where my EB1 immigration case was pending( in which I had touted my monoclonal antibody / artificial protein job at Harvard medical / wyss institute )---- I told them that I am moving to California next week --and my case was pending for than 10 months-usually processing time is six months and they were not moving my case at all---anyway--- next day that I landed in San Francisco --USCIS sent a denial notice( I also got an email about denial decision)--so it was not a coincidence but intentional. They didn't want me to go join Harvard medical nor succeed in my startup orangehealth since I just moved to San Francisco that day...what it tell.. I immediately called FBI supervisor who had told me in 2014 that it was false claims act -civil fraud- Mr Clayton Wible- I had told him also week before than I am moving to CA..I cried on phone when I spoke with him...he said think that where will your startup succeed etc etc---but then I knew that no matter what I do there is something that they just don't want me succeed.

12) I had spoken with FDA top brass on phone in 2013-2014--2015and director of radiology devices was fired from her job( her boss said that that he will fire her)..and even HHS secretary Tom in 2016 himself spoke with me on phone( I found out his cell phone on a phone directory) and sent a letter..and soon Tom resigned as HHS secretary..Anyway... Harvard medical-Wyss institute director created job to support my immigration and I submitted paper work to immigration in 2014..I also sent that to FDA....

13) In my lawsuit against DHS- filed March 2016 -in my complaint I wrote below **"My whole life is on Hold right now. Harvard medical school - where they make artificial protein /DNA and which is cutting edge have offered me a job as a lead engineer since April 2014 "**

14) Letter I sent to chief justice Roberts in Washington DC ; in Feb 2016, also had above artificial protein paragraph...

15) On March 2017, as a volunteer , I organized an event at Stanford auditorium in silicon valley..Andrew Allen –CEO of Gritstone Oncology met me for one hour in San Francisco Café; to discuss his startup and was pitching to me why his startup should be selected as a panel member for below event I was organizing. He almost begged to me to be selected as a PANEL for below event. but Andrew did say to me that "it is mainly for MONEY, business while there is a little done for a greater good for society.." (Gritstone has gone public after that event and Andrew Allen didn't care to return any favor or even a smallest gratitude after I selected him to pitch below. ).

# Immunotherapy: Hacking How the Body Fights Disease
# March 21, 2017 6:00 p.m. to 8:30 p.m.

https://vlab.org/events/immunotherapy-hacking-body-fights-disease/

Immunotherapy researchers are applying new insights into how the immune system works to unleash its power on cancer and fight autoimmune diseases like diabetes, MS and rheumatoid arthritis. Private investors, VCs, and pharmaceutical companies are investing hundreds of millions of dollars into groundbreaking immunotherapies, and clinicians are scrambling to identify and test the most promising treatments.

In spite of the huge expense, time-consuming research, rigorous clinical testing, and FDA approval requirements, startups, non-profit organizations, and established companies alike are racing to bring the next immunotherapy to market. Radically different approaches will stand alone, be combined, or fail in crunch time. According to market research firm MarketsandMarkets, the global immunotherapy market is expected to grow at a CAGR of 13.5%, reaching $201B by 2021, promising huge returns.

Biopharma companies like Merck, Novartis, Roche and BMS are all-in. With high barriers to entry, are startups able to compete? What strategies are companies taking to be the first to market? Will cancer, allergies, and autoimmune disease someday be a thing of the past?

#ImmunoTherapy

Moderator

Tito Serafini, President and CEO, Founder, Atreca

Panelists

Jonathan MacQuitty, CEO, Forty Seven Inc.

Karin Jooss, Executive Vice President of Research & Chief Scientific Officer, Gritstone Oncology

Edgar Engleman, Professor of Pathology and of Medicine, Stanford University

Jackie Benson, Vice President, Immunology Scientific Innovation,
Johnson & Johnson

Event Team
Brian Taylor, Lynne Sopchak, June Power, **Trivedi Madhuri,**
Joellen Brown, Michael Chen, KY Narasimhan, Shibu Gangadharan,
Fred Stein, Souradeep Sen

16) So much for the "historic" approval by @US_FDA
of an Alzheimer's drug that has questionable evidence for efficacy: "The data included in the
applicant's submission were highly complex and left residual uncertainties regarding clinical
benefit"

**F.D.A. Approves Alzheimer's Drug Despite Fierce Debate Over Whether It Works**

https://www.nytimes.com/2021/06/07/health/aduhelm-fda-alzheimers-drug.html

17) Since SEC chairman Gary Gensler teaches at MIT and I am MIT alumni..I have emailed
Mr. Gensler , this monoclonal antibody story..I am not naming it a conspiracy but a story.

18)    BELOW IS my appeal-it has good arguments-so please read it.
_____

**Dear Clerk of First circuit,**
**Since district judge has issued order on May 27, 2021.**

**Here's my whistleblower profile on whistleblowers.org**

https://www.whistleblowers.org/whistleblowers/madhuri-trivedi/

# U.S. DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **Madhuri Trivedi**<br><br>          Plaintiff,<br><br>   v.<br><br>**General Electric et al.** | Case No.:<br><br>  **1:19-cv-11862-PBS**<br><br>**Notice of appeal** to United States Court of Appeals For the First |

| Defendants. | Circuit for the Order Dated May 27, 2021 |

## NOTICE OF APPEAL

Notice is hereby given that Madhuri Trivedi, the plaintiff in the above-named matter, hereby

appeals to the United States Court of Appeals for the First Circuit from the order

The following transaction was entered on 5/27/2021 at 4:50 PM EDT and filed on 5/27/2021
**Case Name:**   Trivedi v. General Electric Company et al
**Case Number:** 1:19-cv-11862-PBS

**Docket Text:**
**Judge Patti B. Saris: ORDER adopting [136] Report and Recommendations; adopting [135] Report and Recommendations; adopting [137] Report and Recommendations and denying [150] Motion for Preliminary Injunction, MOTION for Injunctive Relief, and MOTION to Lift Administrative Stay. (Baker, Casey)**

Above order adopts magistrate judge's report and recommendations, grants defendants motion to

dismiss. It is total miscarriage of justice that, district judge hasn't cared to even present legal

arguments, case laws, rules, statues, constitution behind adopting R&R. This is totally lawless

and a kangaroo court. Just writing one line for adopting everything corrupt defendants are

presenting and so far denying everything plaintiff has filed; is worse than being lawless and

harassment. At least provide some explanation why Judge Saris adopted R&R and why

plaintiff's Trivedi claims and motions are denied…I am willing to go to Supreme Court for such

kind of lawlessness, corruption, anarchy. But I hope that First circuit judges resolve this issues;

as supreme court says that what is lower court doing- you have a case and it is to be dealt by

lower courts.

1.

·····················································································

Below is email I sent to SEC- security and exchange commission attorney right now. I spoke with that SEC agency attorney about below email on Monday..

▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪
------- Original Message -------
On Friday, May 28, 2021 6:54 AM, Madhuri Trivedi < > wrote: To ***** @sec.gov

I told you about someone speaking from back that "He is gone" about my father's death on this Monday.
You can show this email to people in your food chain..

Sent with ProtonMail Secure Email.

..
But as this below event started -my phone rang-my family from india called- I didn't put my phone on silence and it was fully packed DARK auditorium...panels were introduced..and as phone was ringing--someone from back raw(it was a guy's voice ) said that "he is gone".....these sentence makes me so restless. so someone knew that my father is dying and is dead in india while event for exposing GE was ongoing...I left the event , talked with my family on phone and went to home crying ........

At that event GE manager from San Ramon was also there as she met me along with other before event started..
**Below events I did as a volunteer at vlab- several known companies pitched at vlab when they were new/smaller such as google, Tesla( to give idea about vlab)**

I volunteered at vlab. Since GE harassed me and messed up with me because GE was recklessly putting medical devices on internet. And recklessly putting technically incompetent people on -IOT platform

**My father died on Feb 22, 2017 in India/ in forest when he went for pilgrimage. He was traveling in a BUS not by foot though..**

**. On Feb 21 2017 in USA, I had organized in a team IOT security high stake of billions of devices event as shown below at 6 pm PST (event was fully packed.).As event started my family called me from India and informed me that my father has died--so this same date of IoT event and my father's death is mind boggling.**

## IoT Security: High Stakes for Billions of Devices

**February 21, 2017 6:00 p.m. to 8:30 p.m.** https://vlab.org/events/iot-security-high-stake-billions-devices/

**2.** In this lawsuit  Sjunde Ap-Fonden and The Cleveland  Bakers and Teamsters Pension Fund, individually  and on behalf of all others  similarly  situated  v. General Electric Company (1:17-cv-08457)
 District  Court, S.D. New York

CIVIL CASE MANAGEMENT PLAN AND SCHEDULING  conference  held on Feb 25, 2021 –

GE attorneys  argued  that "GE likes to do NOVEL LITIGATION…so  despite in any case law- as

it has never happened  before that a separate loss –causation  discovery  and merit  discovery  to be

allowed  in the case..Because GE attorneys  said they like to do NOVEL litigation-  and despite

plaintiff  attorneys  arguing  that there is no precedent of such separate discovery-  Judge has said

that "so be it- I will  allowed  it"..and such novel litigation  techniques  are allowed..

So for my Trivedi  case- why even case laws are not presented…this  is illegal,  and shows that

judiciary  is also corrupt.


Respectfully  Submitted,    Dated: June 10 ,2021

Madhuri  Trivedi
/s/Madhuri  Trivedi
Fax: 708-778-4859 Phone: (650) 242-5135
Email:  orangeinc@protonmail.com
Linkedin:-  linkedin.com/in/trivedim
Twitter:-  @madhuritrivd
607 Boylston  Street, PMB 334 - Lower Level
Boston, MA 02116

## CERTIFICATE  OF SERVICE

The CM/ECF system sends notification  of filing  to all the parties.  **Therefore, when this document  is docketed on ECF; t**he ECF system will  then email all parties –registered  to receive such service, notifying  them that I have filed a document. Those parties will  then be able to get a copy of the document.  This process for docketing  on ECF is deemed to be service under Rule 5(b) of the Federal Rules of Civil  Procedure**.**
/s/Madhuri  Trivedi